CASE NO. 14-15700

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

S. ROWAN WILSON,

Petitioner-Appellant,

v.

ERIC HOLDER, as Attorney General of the United States; THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; B. TODD JONES, as Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; ARTHUR HERBERT, as Assistant Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; and THE UNITED STATES OF AMERICA,

Respondents-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT,
DISTRICT COURT OF NEVADA

OPENING BRIEF OF PETITIONER S. ROWAN WILSON

Rainey Legal Group PLLC
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone: +1.702.425.5100
Facsimile: +1.888.867.5734
Attorneys for Plaintiff/Appellant

# TABLE OF CONTENTS

**Page:**

The United States' Motion to Dismiss or, in the Alternative,
for Summary Judgment (Filed February 3, 2012 Doc No. 10)...........................................1

Plaintiff's Response to the United States' Motion to Dismiss or,
in the Alternative for Summary Judgment, and Plaintiff's
Crossmotion for Summary Judgment (Filed March 9, 2012 Doc No. 17) .......................46

Defendants' Reply in Support of their Motion to Dismiss or,
in the Alternative, for Summary Judgment, and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
(Filed March 30, 2012 Doc No. 20)....................................................................................79

First Amended Complaint (Filed December 17, 2012 Doc No. 34)...............................110

Transcript of Hearing on Motion to Dismiss
(Filed January 18, 2013 Doc No. 35)...............................................................................127

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint
or, in the Alternative, For Summary Judgment
(Filed January 31, 2013 Doc No. 37)...............................................................................201

Response to Defendants' Motion to Dismiss Plaintiff's First Amended
Complaint or, in the Alternative, for Summary Judgment
(Filed February 25, 2013 Doc No. 41)...............................................................................257

Order (Filed March 12, 2013 Doc No. 49) ......................................................................301

Full Case History (Printed July 21, 2014) ......................................................................328

1   TONY WEST
    Assistant Attorney General

2   DANIEL G. BOGDEN
3   United States Attorney

    SANDRA SCHRAIBMAN
4   Assistant Director, Federal Programs Branch

5   ALICIA N. ELLINGTON
    JOHN K. THEIS
6   Trial Attorneys, Federal Programs Branch
    United States Department of Justice, Civil Division
7   20 Massachusetts Ave., N.W., Rm. 7226
    Washington, D.C.  20530
8   Telephone: (202) 305-8550
    Facsimile: (202) 616-8460
9   John.K.Theis@usdoj.gov
    Alicia.N.Ellington@usdoj.gov
10
    *Attorneys for Defendants the United States of America,*
11  *ATF, U.S. Attorney General Eric Holder,*
    *Acting ATF Director B. Todd Jones, and*
12  *Assistant ATF Director Arthur Herbert,*
    *in their official capacities (collectively, the United States)*
13

14

15              **UNITED STATES DISTRICT COURT**
                     **DISTRICT OF NEVADA**
16

17  S. ROWAN WILSON,                        )
                                            )
18          Plaintiff,                      )
                                            )
19      v.                                  )   Case No.: 2:11-CV-1679-GMN-(PAL)
                                            )
20  ERIC HOLDER, Attorney General of the    )
    United States et al.,                   )
21                                          )
            Defendants.                     )
22                                          )
    _____)
23
            **THE UNITED STATES'S MOTION TO DISMISS OR,**
24       **IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

25          Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, Defendants the

26  United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and

27

28

the individual defendants in their official capacities (collectively, the United States), by their

undersigned counsel, hereby move this Court to dismiss Plaintiff's Complaint or, in the

alternative, to enter summary judgment for Defendants.  A Memorandum of Points and

Authorities accompanies this motion, along with an Appendix of Secondary Material and a

Statement of Undisputed Material Facts.

Dated: February 3, 2012                      Respectfully submitted,

                                             TONY WEST
                                             Assistant Attorney General

                                             DANIEL G. BOGDEN
                                             United States Attorney

                                             SANDRA SCHRAIBMAN
                                             Assistant Director

                                             */s/ Alicia N. Ellington*
                                             ALICIA N. ELLINGTON
                                             JOHN K. THEIS
                                             Trial Attorneys
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Ave., N.W., Rm. 7226
                                             Washington, D.C.  20530
                                             Telephone: (202) 305-8550
                                             Facsimile: (202) 616-8460
                                             Alicia.N.Ellington@usdoj.gov
                                             John.K.Theis@usdoj.gov

                                             *Attorneys for Defendants the United States of*
                                             *America, ATF, U.S. Attorney General Eric Holder,*
                                             *Acting ATF Director B. Todd Jones, and*
                                             *Assistant ATF Director Arthur Herbert,*
                                             *in their official capacities (collectively, the United*
                                             *States)*

2

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ...................................................................................................................2

BACKGROUND .....................................................................................................................3

I.      THE GUN CONTROL ACT AND THE CONTROLLED SUBSTANCES ACT.............3

II.     NEVADA'S LAW REGARDING THE MEDICAL USE OF MARIJUANA .................5

III.    ATF'S SEPTEMBER 2011 OPEN LETTER TO FFLS ...................................................8

IV.     PLAINTIFF'S COMPLAINT .......................................................................................10

ARGUMENT ........................................................................................................................11

I.      PLAINTIFF'S SECOND AMENDMENT RIGHTS HAVE NOT BEEN
        VIOLATED .....................................................................................................................11

        A.      As Applied to Plaintiff, 18 U.S.C. § 922(g)(3), as Implemented and
                Interpreted by ATF, Does Not Violate the Second Amendment .........................12

                1.      Plaintiff's Second Amendment Challenge to § 922(g)(3) Is
                        Foreclosed By the Ninth Circuit's Decision in Dugan ..............................12

                2.      Unlawful Drug Users Fall Outside the Scope of the Second
                        Amendment as Understood at the Adoption of the Bill of Rights .............15

                3.      In Any Event, As Applied to Marijuana Users, 18 U.S.C.
                        § 922(g)(3) Substantially Relates to the Important
                        Governmental Interest in Protecting Public Safety and
                        Combating Violent Crime ..........................................................................20

        B.      As Applied to Plaintiff, 18 U.S.C. § 922(d)(3), as Implemented and
                Interpreted by ATF, Does Not Violate the Second Amendment .........................27

II.     PLAINTIFF'S RIGHT TO EQUAL PROTECTION HAS NOT BEEN
        VIOLATED .....................................................................................................................29

III.    PLAINTIFF MAY NOT PURSUE CLAIMS FOR MONETARY RELIEF
        AGAINST THE UNITED STATES, ATF, OR THE INDIVIDUAL
        DEFENDANTS IN THEIR OFFICIAL CAPACITIES. ...................................................30

IV.     PLAINTIFF'S CONSPIRACY CLAIM AGAINST THE UNITED STATES
        MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.........31

CONCLUSION....................................................................................................................33

i

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                                                    **PAGE(S)**

3

Azpilcueta v. State of Nev. ex rel. Transp. Auth.,
   2010 WL 2871073 (D. Nev. 2010) ...................................................................... 33

4

Balser v. Department of Justice, Office of U.S. Trustee,
   327 F.3d 903 (9th Cir. 2003) .............................................................................. 30

5

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ........................................................................................... 33

6

Bolling v. Sharpe,
   347 U.S. 497 (1954) ........................................................................................... 29

7

8

Boorman v. Nev. Mem'l Cremation Soc'y, Inc.,
   772 F. Supp. 2d 1309 (D. Nev. 2011) ............................................................... 33

9

Buzz Stew, LLC v. City of N. Las Vegas,
   181 P.3d 670 (Nev. 2008) .................................................................................. 33

10

11

City of Cleburne v. Cleburne Living Center, Inc.,
   473 U.S. 432 (1985) ........................................................................................... 29

12

Dep't of Army v. Blue Fox, Inc.,
   525 U.S. 255 (1999) ........................................................................................... 30

13

14

Dickerson v. New Banner Inst.,
   460 U.S. 103 (1983) ............................................................................................. 4

15

District of Columbia v. Heller,
   554 U.S. 570 (2008) ..................................................................................... passim

16

17

Dyer v. U.S.,
   166 F. App'x 908 (9th Cir. 2006) ...................................................................... 31

18

Fire Equip. Mfrs. Ass'n v. Marshall,
   679 F.2d 679 (7th Cir. 1982) ............................................................................. 29

19

20

GES, Inc. v. Corbitt,
   21 P.3d 11 (Nev. 2001) ...................................................................................... 33

21

Gonzales v. Raich,
545 U.S. 1 (2005).................................................................................5, 15

22

23

Gonzalez-Medina v. Holder,
   641 F.3d 333 (9th Cir. 2011) ......................................................................... 29,30

24

Hamrick v. Brusseau,
   80 F. App'x 116, 116 (D.C. Cir. 2003) .............................................................. 31

25

26

ii

27

28

Heller v. District of Columbia ("Heller II"),
    __F.3d __, 2011 WL 4551558 (D.C. Cir. Oct. 4, 2011) ................................................. 19, 21

Huddleston v.United States,
    415 U.S. 814 (1974) ........................................................................................................ 22, 23

Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety,
    110 P.3d 30 (Nev. 2005) ........................................................................................................ 32

Lane v. Pena,
    518 U.S. 187 (1996) ............................................................................................................... 31

Levin v. United States,
    663 F.3d 1059 (9th Cir. 2011) ......................................................................................... 30, 32

Marin Alliance for Medical Marijuana v. Holder,
    __ F.2d __, 2011 WL 5914031 (N.D. Cal. Nov. 28, 2011) ................................................... 30

McDonald v. City of Chicago,
    130 S. Ct. 3020 (2010) .......................................................................................................... 13

Mont. Caregivers Ass'n v. United States,
    2012 WL 169771(D. Mont. Jan. 20, 2012) ............................................................................ 15

Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales,
    468 F.3d 826 (D.C. Cir. 2006) ............................................................................................... 28

Nixon v. Shrink Mo. Gov't PAC,
    528 U.S. 377 (2000) ...............................................................................................................22

Nordyke v. King,
    644 F.3d 776 (9th Cir. 2011) .................................................................................................. 20

Peruta v. Cnty. of San Diego,
    758 F. Supp. 2d 1106 (S.D. Cal. 2010).....................................................................................21

Raich v. Gonzales ("Raich II"),
    500 F.3d 850 (9th Cir. 2007) .................................................................................................. 14

Robertson v. Baldwin,
    165 U.S. 275 (1897) ............................................................................................................... 16

Rutan v. Republican Party of Ill.,
    497 U.S. 62 (1990) ................................................................................................................. 16

Schall v. Martin,
    467 U.S. 253 (1984) ............................................................................................................... 21

State v. Shelby,
    90 Mo. 302 (Mo. 1886) .......................................................................................................... 19

iii

5

Stormans, Inc. v. Selecky,
    586 F.3d 1109 (9th Cir. 2009) ............................................................... 21

Tucson Airport Authority v. General Dynamics Corp.,
    136 F.3d 641 (9th Cir. 1998) ................................................................. 31

Turner Broad. Sys. v. FCC,
    512 U.S. 622 (1994) .......................................................................... 22, 26

United States v. 12 200-Foot Reels of Super 8 mm
    413 U.S. 123 (1973) ................................................................................ 27

United States v. Carter,
    __ F.3d __ No. 09-5074, slip op. at 7–8 (4th Cir. Jan. 23, 2012) ................... passim

United States v. Chafin,
    423 F. App'x 342 (4th Cir. Apr. 13, 2011) ............................................ 27

United States v. Chester,
    628 F.3d 673 (4th Cir. 2010) ............................................................... 19

United States v. Dugan,
    657 F.3d 998 (9th Cir. 2011) ........................................................... passim

United States v. Hendrix,
    2010 WL 1372663 (W.D. Wis. Apr. 6, 2010) .................................... 13, 19

United States v. Korbe,
    2010 WL 2404394 (W.D. Pa. June 9, 2010)……………………………………13

United States v. Miller,
    604 F. Supp. 2d 1162 (W.D. Tenn. 2009) ........................................... 26

United States v. Oakland Cannabis Buyers' Coop.,
    532 U.S. 483 (2001) ................................................................................ 5

United States v. Patterson,
    431 F.3d 832 (5th Cir. 2005) ............................................................... 13

United States v. Reese,
    627 F.3d 792 (10th Cir. 2010) ............................................................. 21

United States v. Rene E.,
    583 F.3d 8 (1st Cir. 2009)) .................................................................. 19

United States v. Richard,
    350 F. App'x 252 (10th Cir. 2009) ..................................................... 13

United States v. Salerno,
    481 U.S. 739 (1987) ............................................................................. 21

iv

**6**

United  States v. Seay,
    620 F.3d 919 (8th Cir. 2010) ........................................................................ 13

United States v. Skoien,
    614 F.3d 638 (7th Cir. 2010) .......................................................... 16, 18, 26

United States v. Smith,
    499 U.S. 160 (1991) .................................................................................... 32

United States v. Stacy,
    2010 WL 4117276 (S.D. Cal. Oct. 18, 2010) ............................................ 15

United States v. Tooley,
    717 F. Supp. 2d 580 (S.D. W.Va. 2010) ...................................... 17, 18, 26

United States v. Vongxay,
    594 F.3d 1111 (9th Cir. 2010) .................................................................. 19

United States v. Yancey,
    621 F.3d 681 (7th Cir. 2010) .............................................................. passim

Wilson v. Drake,
    87 F.3d 1073 (9th Cir. 1996)…………………………………………………..32

### UNITED STATES CONSTIUTION

U.S. Const. amend. II ................................................................................... 12

U.S. Const. amend. XIV, § 1 ....................................................................... 29

### STATUTES

5 U.S.C. § 702 ............................................................................................. 31

18 U.S.C. § 922(d)(3) ............................................................................ passim

18 U.S.C. § 922(g) ................................................................................... 3,13

18 U.S.C. § 922(g)(3) ............................................................................ passim

21 U.S.C. § 802 ........................................................................................... 4,5

21 U.S.C. § 802(6) ........................................................................................ 23

21 U.S.C. § 812 ............................................................................................... 4

21 U.S.C. § 812(b)(1) ............................................................................... 5, 14

v

21 U.S.C. § 812(c) .................................................................................................. 5

21 U.S.C. § 823(f) .................................................................................................. 5

21 U.S.C. § 829 ................................................................................................. 5,14

21 U.S.C. § 844(a) ............................................................................................ 5,15

28 U.S.C. § 2675(a) .............................................................................................. 32

28 U.S.C. § 2679(d)(1) .......................................................................................... 32

28 U.S.C. 2680(a) ................................................................................................. 33

The Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220 .......................... 3

Firearm Owners' Protection Act, Pub. L. 99-308, 100 Stat. 449, 452 (1986) ............................ 23

## RULES AND REGULATIONS

27 C.F.R. § 478.11 ........................................................................................... passim

27 C.F.R. § 478.124 ................................................................................................ 9

Notice of Denial of Petition, 76 Fed. Reg 40552 (July 8, 2011) ..................................... 5

## STATE LAWS

Ala. Code § 13A-11-72(b)………………………………………………………23

Ark. Code Ann. § 5-73-309(7), (8) ........................................................................ 23

Cal. Penal Code § 12021(a)(1) ............................................................................. 23

Colo. Rev. Stat. § 18-12-203(1) ........................................................................... 23

Del. Code Ann. tit. 11, § 1448(a)(3) ...................................................................... 23

D.C. Code § 22-4503(a)(4) ................................................................................... 23

Fla. Stat. § 790.25(2)(b)(1) .................................................................................. 23

Ga. Code Ann. § 16-11-129(b)(2)(F), (I), (J) ........................................................... 23

Haw. Rev. Stat. § 134-7(c)(1) ............................................................................... 23

Idaho Code Ann. § 18-3302(1)(e) .......................................................................... 23

720 Ill. Comp. Stat. 5/24-3.1(a)(3) ........................................................................ 23

Ind. Code § 35-47-1-7(5) ..................................................................................... 23

vi

Kan. Stat. Ann. § 21-4204(a)(1) ................................................................. 23

Ky. Rev. Stat. Ann. § 237.110(4)(d), (e) ...................................................... 23

Md. Code Ann., Public Safety, 5-133(b)(4), (5) ............................................23

Mass. Gen. Laws ch. 140, § 129B(1) ............................................................ 23

Minn. Stat. § 624.713(1)(10)(iii) .................................................................. 23

Mo. Rev. Stat. § 571.070(1)(1) ..................................................................... 23

Nev. Rev. Stat. § 202.360(1)(c)......................................................................6, 23

Nev. Rev. Stat. § 202.360(3)(a)......................................................................6, 23

Nev. Rev. Stat. §§ 453.336..............................................................................5

Nev. Rev. Stat. Ch. 453A................................................................................6

Nev. Rev. Stat. § 453A.050.............................................................................7

Nev. Rev. Stat. § 453A.200(1)(f).....................................................................6

Nev. Rev. Stat. § 453A.200(3)..........................................................................6

Nev. Rev. Stat. § 453A.210(2).........................................................................25

Nev. Rev. Stat. § 453A.210(2)(a)....................................................................6, 7, 25

Nev. Rev. Stat. § 453A.220(4).................................................................................7

Nev. Rev. Stat. § 453A.230......................................................................................7

Nev. Rev. Stat. § 453A.240......................................................................................7

Nev. Rev. Stat. § 453A.300(1)........................................................................6

N.H. Rev. Stat. Ann. § 159:3(b)(3) ............................................................23

N.J. Stat. Ann. § 2C:58-3(c)(2) ...................................................................23

N.C. Gev. Stat. § 14-404(c)(3) ....................................................................23

Ohio Rev. Code Ann. § 2923.13(A)(4)..........................................................23

R.I. Gen. Laws § 11-47-6.............................................................................23

S.C. Code Ann. § 16-23-30(A)(1) ................................................................23

vii

S.D. Codified Laws § 23-7-7.1(3) ........................................................................... 23

W. Va. Code § 61-7-7(a)(2), (3)…………………………………………………………23

**LEGISLATIVE MATERRIAL**

114 Cong. Rec. 21657, 21784 (1968) ..................................................................... 23

H.R. Rep. No. 90-1577, at 7 (1968), <u>reprinted in</u> 1968 U.S.C.C.A.N. 4410, 4411 ..................... 22

S. Rep. No. 90-1501, at 22 (1968) ......................................................................... 22

**MISCELLANEOUS**

1 W. & M., c. 2, § 7, in 3 Eng. Stat. at Large 441 (1698)........................................17

2 Bernard Schwartz, <u>The Bill of Rights: A Documentary History</u> 665 (1971) ..........................17

Joyce Lee Malcolm, <u>To Keep and Bear Arms</u> 123 (1994)     17

Bureau of Justice Statistics, <u>Drugs and Crime Facts</u> at 3 ................................................ 24

National Institute of Drug Abuse, <u>Topics in Brief: Marijuana</u>, at 1 (Dec. 2011) ...................... 25

Nev. State Health Div., <u>Important Notice</u>  (Feb. 12, 2009),
http://health.nv.gov/PDFs/MMP/ImportantNotice.pdf ...............................................................7

Nev. State Health Div., <u>Program Facts</u> (Feb. 12, 2009),
http://health.nv.gov/PDFs/MMP/ProgramFacts.pdf .................................................................8

Nev. State Health Div., <u>Medical Marijuana, Frequently Asked Questions</u>, No. 8,
http://health.nv.gov/MedicalMarijuana_FAQ.htm .................................................................8

ONDCP, <u>ADAM II 2010 Annual Report</u>, at 20........................................................... 24

ONDCP, <u>Fact Sheet: Marijuana Legalization</u>, at 1 (Oct. 2010) ................................... 24

Robert E. Shalhope, <u>The Armed Citizen in the Early Republic</u>, 49 Law & Contemp. Probs.
   125, 130 (1986)................................................................................................... 18

Don B. Kates, Jr., <u>The Second Amendment: A Dialogue</u>, 49 Law & Contemp. Probs. 143,
   146 (1986)........................................................................................................... 19

Eugene Volokh, <u>Implementing the Right to Keep and Bear Arms for Self-Defense: An
   Analytical Framework and Research Agenda</u>, 56 UCLA L. Rev.
   1443, 1497 (2009)................................................................................................ 18

Patrick J. Charles, "<u>Arms for Their Defence</u>"?: An Historical, Legal, and Textual Analysis
   <u>of the English Right to Have Arms and Whether the Second Amendment
   Should Be Incorporated in McDonald v. City of Chicago</u>, 57 Clev. State L.
   Rev. 351, 373, 376, 382-83, 405 (2009) ............................................................... 17

viii

1   TONY WEST
    Assistant Attorney General

2
    DANIEL G. BOGDEN
3   United States Attorney

4   SANDRA SCHRAIBMAN
    Assistant Director, Federal Programs Branch

5
    ALICIA N. ELLINGTON
6   JOHN K. THEIS
    Trial Attorneys, Federal Programs Branch
7   United States Department of Justice, Civil Division
    20 Massachusetts Ave., N.W., Rm. 7226
8   Washington, D.C.  20530
    Telephone: (202) 305-8550
9   Facsimile: (202) 616-8460
    John.K.Theis@usdoj.gov
10  Alicia.N.Ellington@usdoj.gov

11  *Attorneys for Defendants the United States of America,*
    *ATF, U.S. Attorney General Eric Holder,*
12  *Acting ATF Director B. Todd Jones, and*
    *Assistant ATF Director Arthur Herbert,*
13  *in their official capacities (collectively, the United States)*

14

15                    **UNITED STATES DISTRICT COURT**
16                        **DISTRICT OF NEVADA**

17  S. ROWAN WILSON,                    )
                                        )
18            Plaintiff,                )
                                        )
19        v.                            )   Case No.: 2:11-CV-1679-GMN-(PAL)
                                        )
20  ERIC HOLDER, Attorney General of the )
    United States et al.,               )
21                                      )
              Defendants.               )
22                                      )
                                        )
23  _____ )

24           **MEMORANDUM IN SUPPORT OF THE UNITED STATES'S**
    **MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
25

26

27

28

                                 *11*

**INTRODUCTION**

One provision of the Gun Control Act of 1968, as amended—18 U.S.C. § 922(g)(3)—prohibits an unlawful user of a controlled substance from possessing a firearm, while another provision—18 U.S.C. § 922(d)(3)—makes it unlawful to sell a firearm while knowing or having reasonable cause to believe that the purchaser is an unlawful user of a controlled substance. Under the Controlled Substances Act, marijuana is classified as a Schedule I controlled substance that cannot be lawfully prescribed and that the general public may not lawfully possess. Although a number of states, including Nevada, have exempted from state criminal prosecution certain individuals who use marijuana for medical purposes,[1] these state laws do not alter the fact that marijuana possession remains prohibited under federal law. To advise federal firearms licensees ("FFLs") of this basic fact, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") issued an Open Letter to all FFLs on September 21, 2011, stating that "any person who uses . . . marijuana, regardless of whether his or her State has passed legislation authorizing marijuana use for medicinal purposes, is an unlawful user of . . . a controlled substance, and is prohibited by Federal law from possessing firearms or ammunition." See Compl., Ex. 2-B. The Open Letter further informed FFLs that "if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and "you may not transfer firearms or ammunition to the person." Id. (quoting 18 U.S.C. § 922(d)(3)).

Alleging that she possesses a medical marijuana registry card issued by the State of Nevada and has been prevented from purchasing a handgun, Plaintiff S. Rowan Wilson claims that 18 U.S.C. § 922(g)(3), 18 U.S.C. § 922(d)(3), an ATF regulation defining certain statutory

---

[1] As discussed herein, see infra at 5, the federal government does not recognize a medical use for marijuana. Any use in this memorandum of terms such as "medical use" or "for medical purposes" should not be read to suggest otherwise.

2

1  terms, and ATF's September 2011 Open Letter "prohibit[] a certain class of law-abiding,

2  responsible citizens from exercising their right to keep and bear arms" and therefore violate the

3  Second Amendment and the equal protection component of the Fifth Amendment's Due Process

4  Clause. Compl. ¶ 3.  Plaintiff seeks a declaratory judgment, a permanent injunction, and

5  monetary damages, but she has failed to state a claim for which relief can be granted.

6      First, Plaintiff's claim that § 922(g)(3) violates her Second Amendment rights must fail

7  because the Ninth Circuit has already rejected a Second Amendment challenge to this provision,

8  see United States v. Dugan, 657 F.3d 998 (9th Cir. 2011), and that constitutional analysis is not

9  altered when the provision is applied to prohibit firearm possession by someone who uses

10  marijuana in accordance with state law but in violation of federal law.  Second, because it is

11  consistent with the Second Amendment to prohibit any and all unlawful drug users from

12  possessing firearms and because the Second Amendment does not convey a right to sell firearms,

13  there can be no Second Amendment violation as a result of § 922(d)(3)'s ban on selling firearms

14  to someone the seller knows or has reasonable cause to believe is an unlawful drug user,

15  including those who possess a state-issued medical marijuana card as a result of having

16  affirmatively registered to use marijuana.  Third, Plaintiff's equal protection claim fails because

17  she is not similarly situated to persons who are not violating federal law by using marijuana.

18  And finally, even if Plaintiff had stated a claim against the federal government, no waiver of

19  sovereign immunity allows her to recover monetary damages from the United States, whether for

20  her constitutional damages claims or her conspiracy claim.   Accordingly, the Complaint should

21  be dismissed in its entirety.

22                                **BACKGROUND**

23  **I.     THE GUN CONTROL ACT AND THE CONTROLLED SUBSTANCES ACT**

24      The Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220, included a

25  provision—now codified at 18 U.S.C. § 922(g)—designed "to keep firearms out of the hands of

26  presumptively risky people," including felons, the mentally ill, fugitives from justice, and

27

28

                                    3

unlawful drug users.  <u>Dickerson v. New Banner Inst., Inc.</u>, 460 U.S. 103, 112 n.6 (1983).

Specifically, as applied to unlawful drug users, § 922(g)(3) provides that

> [i]t shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)) . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(3).  To help effectuate the firearm exclusions in § 922(g), Congress also banned selling firearms to the same categories of presumptively risky people; as relevant here, § 922(d)(3) makes it

> unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)).

<u>Id.</u> § 922(d)(3).

In addition to challenging the constitutionality of these two provisions, Plaintiff also targets 27 C.F.R. § 478.11, a regulation issued by ATF to define certain statutory terms. Specifically, the regulation defines an "[u]nlawful user of or addicted to any controlled substance" as

> [a] person who uses a controlled substance and has lost the power of self-control with reference to the use of the controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.  Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.  A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm.  An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time . . . .

27 C.F.R. § 478.11.  Additionally, the regulation echoes §§ 922(g)(3) and 922(d)(3) by providing that a "controlled substance" is "[a] drug or other substance, or immediate precursor, as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 802."  <u>Id.</u>

4

1    Section 102 of the Controlled Substances Act, in turn, defines "controlled substance" as

2    "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of

3    part B of this subchapter [21 U.S.C. § 812]."  21 U.S.C. § 802(6).  Since the enactment of the

4    Controlled Substances Act, marijuana (also known as cannabis) has been classified as a Schedule

5    I drug.  21 U.S.C. § 812(c), Schedule I(c)(10).  By classifying marijuana as a Schedule I drug,

6    Congress has determined that marijuana "has a high potential for abuse," that it "has no currently

7    accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted

8    safety for use of [marijuana] under medical supervision."  Id. § 812(b)(1).[2]  As such, Schedule I

9    drugs, including marijuana, cannot be legally prescribed for medical use.  See 21 U.S.C. § 829;

10   see also United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001) ("Whereas

11   some other drugs can be dispensed and prescribed for medical use, . . . the same is not true for

12   marijuana.").  Additionally, it is generally unlawful for any person to knowingly or intentionally

13   possess marijuana.  See 21 U.S.C. § 844(a).  For Schedule I drugs like marijuana, the only

14   exception to this ban on possession is for a federally approved research project.  See id. § 823(f);

15   see also Gonzales v. Raich, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I

16   drug, as opposed to listing it on a lesser schedule, the . . . possession of marijuana became a

17   criminal offense, with the sole exception being use of the drug as part of a Food and Drug

18   Administration preapproved research study.").

19   **II.    NEVADA'S LAW REGARDING THE MEDICAL USE OF MARIJUANA**

20        Separate and apart from federal law, the State of Nevada also criminalizes the possession

21   of marijuana.  See Nev. Rev. Stat. § 453.336.  In 2000, however, Nevada's Constitution was

---

[2] The Controlled Substances Act delegates authority to the Attorney General to reschedule
controlled substances after consulting with the Secretary of Health and Human Services.  Id.
§ 811.  The Department of Justice's Drug Enforcement Agency ("DEA") has repeatedly denied
petitions to have marijuana removed from schedule I, most recently in 2011.  See Notice of
Denial of Petition, 76 Fed. Reg. 40552 (July 8, 2011); see also Gonzales v. Raich, 545 U.S. 1, 15
& n.23 (2005).  Based largely on scientific and medical evaluations prepared by the Department
of Health and Human Services, DEA has consistently found that marijuana continues to meet the
criteria for schedule I control.  See 76 Fed. Reg. at 40552.

5

1   amended by initiative petition to add the following provision regarding the medical use of

2   marijuana:

> The legislature shall provide by law for . . . [t]he use by a patient, upon the advice
> of his physician, of a plant of the genus Cannabis for the treatment or alleviation
> of cancer, glaucoma, acquired immunodeficiency syndrome; severe, persistent
> nausea of cachexia resulting from these or other chronic or debilitating medical
> conditions; epilepsy and other disorders characterized by seizure; multiple
> sclerosis and other disorders characterized by muscular spasticity; or other
> conditions approved pursuant to law for such treatment.

7   Nev. Const. art. IV, § 38(1)(a).  Pursuant to this constitutional amendment, Nevada enacted

8   legislation in 2001 that exempts the medical use of marijuana from state prosecution in certain

9   circumstances.  See Nev. Rev. Stat. Ch. 453A.  Subject to certain exceptions, the law provides

10  that "a person who holds a valid registry identification card . . . is exempt from state prosecution

11  for . . . [a]ny . . . criminal offense in which the possession, delivery or production of marijuana

12  . . . is an element."  Nev. Rev. Stat. § 453A.200(1)(f).[3]  This exemption only applies to the extent

13  that the holder of a registry identification card (i) engages in "the medical use of marijuana in

14  accordance with the provisions of this chapter as justified to mitigate the symptoms or effects of

15  the person's chronic or debilitating medical condition;" and (ii) "[d]o[es] not, at any one time,

16  collectively possess, deliver or produce more than . . . [o]ne ounce of usable marijuana[,] [t]hree

17  mature marijuana plants[,] and [f]our immature marijuana plants."  Id. § 453A.200(3).

18      The law also specifies who is eligible to receive a state-issued registry identification card,

19  requiring applicants to provide, inter alia, "[v]alid, written documentation from the person's

20  attending physician stating that . . . [t]he person has been diagnosed with a chronic or debilitating

21  medical condition."  Id. § 453A.210(2)(a)(1).[4]  The applicant must also provide documentation

22

23  [3] The statute specifies, however, that cardholders are not exempt from state prosecution for a
    number of other crimes related to marijuana use.  Id. § 453A.300(1).  In addition, a separate

24  provision of Nevada law specifies that "[a] person shall not own or have in his or her possession
    or under his or her custody or control any firearm if the person . . . [i]s an unlawful user of, or

25  addicted to, any controlled substance," and defines the term "controlled substance" by reference
    to the federal Controlled Substances Act.  Nev. Rev. Stat. § 202.360(1)(c), (3)(a).

26  [4] The statute defines the term "chronic or debilitating medical condition" to include AIDS,

27  cancer, and glaucoma, as well as "[a] medical condition or treatment for a medical condition that
    (Footnote continued on following page.)

28

6

1 from his or her physician stating that "[t]he medical use of marijuana may mitigate the symptoms

2 or effects of that condition" and that "[t]he attending physician has explained the possible risks

3 and benefits of the medical use of marijuana."  Id. § 453A.210(2)(a)(2)–(3).  The state-issued

4 registry identification card is valid for one year and must be renewed by annually submitting

5 updated written documentation from the cardholder's attending physician, including proof that

6 the individual continues to suffer from a chronic or debilitating medical condition.  Id.

7 §§ 453A.220(4), 453A.230.  If a cardholder is "diagnosed by the person's attending physician as

8 no longer having a chronic or debilitating medical condition, the person . . . shall return the[]

9 registry identification card[] to the [State] within 7 days after notification of the diagnosis."  Id.

10 § 453A.240.

11      Nevada's law governing the medical use of marijuana does not purport to "legalize"

12 medical marijuana, but rather specifies the limited circumstances under which the possession of

13 limited amounts of marijuana for medical use is exempt from state prosecution.  This fact is

14 evidenced by the overall structure of the statute, as well as by the act's inclusion of a directive

15 instructing the next session of the Nevada legislature to "review statistics provided by the

16 legislative counsel bureau with respect to . . . [w]hether persons exempt from state prosecution

17 [under] this act have been subject to federal prosecution for carrying out the activities concerning

18 which they are exempt from state prosecution pursuant to [the act]."  Act of June 14, 2001

19 (Assembly Bill 453), ch. 592, § 48.5.  Along these lines, a one-page "Important Notice" posted

20 on the State of Nevada's Department of Health and Human Services, Health Division's website

21 advises the public that "**ISSUANCE OF A STATE OF NEVADA MEDICAL MARIJUANA**

22 **REGISTRY CARD DOES NOT EXEMPT THE HOLDER FROM PROSECUTION**

23 **UNDER FEDERAL LAW**."  See Nev. State Health Div., Important Notice (Feb. 12, 2009),

24

25

_____

26 produces, for a specific patient," one or more of the following symptoms: (i) cachexia, (ii) persistent muscle spasms, (iii) seizures, (iv) severe nausea, or (v) severe pain.  Id. § 453A.050.

27

28

1   http://health.nv.gov/PDFs/MMP/ImportantNotice.pdf (emphasis in original) [App.[5] at Tab 1]; see

2   also Nev. State Health Div., Program Facts 2 (Feb. 12, 2009),

3   http://health.nv.gov/PDFs/MMP/ProgramFacts.pdf [App. at Tab 2] (stating, in a two-page

4   document posted on the Health Division's website, that "[t]he Medical Marijuana law is a state

5   law, offering protection from state law enforcement only" and that "[t]he federal government

6   does not recognize the state law and is not bound by it").  A section of the Nevada Health

7   Division's website answering frequently asked questions also informs the public that cardholders

8   cannot fill a prescription for medical marijuana at a pharmacy because "[t]he federal government

9   classifies marijuana as a Schedule I drug, which means licensed medical practitioners cannot

10  prescribe it."  Nev. State Health Div., Medical Marijuana, Frequently Asked Questions, No. 8,

11  http://health.nv.gov/MedicalMarijuana_FAQ.htm (last updated Sept. 29, 2011) [App. at Tab 3].

12  The frequently asked questions page also specifies that a patient may withdraw from the program

13  by submitting a written statement indicating that he or she wishes to withdraw and by returning

14  the individual's registry identification card.  Id., No. 12.

15  **III.    ATF'S SEPTEMBER 2011 OPEN LETTER TO FFLS**

16          On September 21, 2011, ATF issued an "Open Letter to All Federal Firearms Licensees."

17  See Compl., Ex. 2-B.  The Open Letter first notes that ATF "has received a number of inquiries

18  regarding the use of marijuana for medicinal purposes and its applicability to Federal firearms

19  laws" and that the "purpose of this open letter is to provide guidance on the issue and to assist

20  [FFLs] in complying with Federal firearms laws and regulations."  Id.  The Open Letter then

21  observes that "[a] number of States have passed legislation allowing under State law the use or

22  possession of marijuana for medicinal purposes" and that "some of these States issue a card

23  authorizing the holder to use or possess marijuana under State law."  Id.  The Open Letter

24  proceeds to summarize the relevant provisions of federal law, noting (i) that "18 U.S.C.

25  _____

26  [5] Pursuant to Local Rule 7-3, the United States has concurrently filed an appendix to this memorandum containing secondary materials cited herein.

27

28

8

1    § 922(g)(3)[] prohibits any person who is an 'unlawful user of or addicted to any controlled

2    substance . . .' from shipping, transporting, receiving or possessing firearms or ammunition;" (ii)

3    that the Controlled Substances Act lists marijuana as a Schedule I controlled substance and that

4    "there are no exceptions in Federal law for marijuana purportedly used for medicinal purposes,

5    even if such use is sanctioned by State law;" (iii) that "18 U.S.C. § 922(d)(3)[] makes it unlawful

6    for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing

7    or having reasonable cause to believe that such person is an unlawful user of or addicted to a

8    controlled substance;" and (iv) that, under 27 C.F.R. § 478.11, "'an inference of current use may

9    be drawn from evidence of a recent use or possession of a controlled substance or a pattern of

10   use or possession that reasonable covers the present time.'"  Compl., Ex. 2-B (emphasis in

11   original).  The Open Letter then interprets these provisions to draw two conclusions: first, "any

12   person who uses or is addicted to marijuana, regardless of whether his or her State has passed

13   legislation authorizing marijuana use for medicinal purposes, is an unlawful user of or addicted

14   to a controlled substance, and is prohibited by Federal law from possessing firearms or

15   ammunition."  Id.  Second, if an FFL is "aware that the potential transferee is in possession of a

16   card authorizing the possession and use of marijuana under State law, then [the FFL] ha[s]

17   'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and

18   "may not transfer firearms or ammunition to the person."  Id.  This conclusion holds, the Open

19   Letter notes, even if the potential transferee answered "no" to Question 11(e) on ATF Form

20   4473,[6] which asks, "Are you an unlawful user of, or addicted to, marijuana, or any depressant,

21   stimulant, or narcotic drug, or any other controlled substance?"  Id.; see also Compl., Ex. 2-C.

22

23

24

25   _____

26   [6] ATF Form 4473 is a firearms transaction record that all potential purchasers are required to
     complete before receiving a firearm from an FFL.  See 27 C.F.R. § 478.124.

27

28

1      **IV.    PLAINTIFF'S COMPLAINT**

2              According to the Complaint,[7] Plaintiff applied for a medical marijuana registry card from

3      the State of Nevada in October 2010.  Compl. ¶ 35.  Since the age of ten, Plaintiff has

4      experienced severe menstrual cramps, which she describes as "sometimes debilitating, even

5      leading to further painful side effects, such as severe nausea and cachexia."  Compl., Ex. 1, ¶ 20.

6      As part of her application for a registry identification card, Plaintiff "obtained a doctor's

7      recommendation for the use of medical marijuana."  Compl. ¶ 36.  On May 12, 2011, Nevada

8      issued a registry identification card to Plaintiff.  Id. ¶ 37; see also Compl., Ex. 1-B.

9              Approximately five months later, on October 4, 2011, Plaintiff visited Custom Firearms

10     & Gunsmithing, a federally licensed gun store in Moundhouse, Nevada, to purchase a handgun.

11     In order to effect the transaction, Plaintiff began to complete ATF Form 4473, but left Question

12     11(e) blank.  See Compl., Ex. 1-C.  Plaintiff alleges that her "natural inclination" was to answer

13     "no" to Question 11(e), but that Mr. Frederick Hauseur, IV, the store's proprietor, informed her

14     that ATF had "promulgated a policy whereby any person holding a medical marijuana registry

15     card is automatically considered an 'unlawful user of, or addicted to marijuana.'"  Compl. ¶ 42.

16     She states that she decided to leave the question blank because she "holds a valid medical

17     marijuana registry card issued by the State of Nevada, but is clearly not an unlawful user of or

18     addicted to marijuana."  Id. ¶ 43.  When Plaintiff provided the form to Mr. Hauseur, he informed

19     her that he was prohibited from selling her any firearm or ammunition.  Compl., Ex. 1, ¶ 32.  Mr.

20     Hauseur and Plaintiff had known each other for nearly a year, and Mr. Hauseur was previously

21     aware that Plaintiff possessed a state-issued medical marijuana registry card.  Id.; Compl., Ex. 2,

22     ¶ 11.  With that knowledge and having received notice of ATF's Open Letter, Mr. Hauseur

23     determined he could not sell Plaintiff a firearm without jeopardizing his status as a FFL.  Compl.,

24     Ex. 2, ¶ 12.  Plaintiff alleges more generally that she "presently intends to acquire a functional

25     ───────────────────

26     [7] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the United
       States's Motion to Dismiss.

27

28

                                                    10

1  handgun for use within her home for self-defense but is prevented from doing so" by federal law,

2  as implemented by ATF.  Compl. ¶ 6.

3          On October 18, 2011, Plaintiff filed a three-count Complaint against the United States,

4  ATF, U.S. Attorney General Eric Holder, ATF Acting Director B. Todd Jones, and ATF

5  Assistant Director Arthur Herbert.[8]  In Count One, Plaintiff alleges that 18 U.S.C. § 922(g)(3),

6  18 U.S.C. § 922(d)(3), 27 C.F.R. § 478.11, and ATF's September 2011 Open Letter violate her

7  right to keep and bear arms under the Second Amendment.  Compl. ¶¶ 46–51.  In Count Two,

8  Plaintiff alleges that these same "laws and policies" violate her Fifth Amendment right to equal

9  protection.  Id. ¶¶ 52–57.  In Count Three, Plaintiff raises a conspiracy claim, alleging that "[t]he

10  Defendants, and each of them, acted in concert to deprive the Plaintiff of her Second and Fifth

11  Amendment rights by enacting and enforcing the unconstitutional laws, policies, practices and/or

12  procedures complained of in this action."  Id. ¶ 59.  For relief, Plaintiff seeks a declaration "that

13  18 U.S.C. §§ 922(g)(3) and 922(d)(3) and derivative regulations, such as 27 C.F.R. § 478.11,"

14  violate the Second Amendment and the Due Process Clause of the Fifth Amendment, as well as

15  an injunction preventing the enforcement of these laws and regulations.  Compl., Prayer for

16  Relief, ¶¶ 1–3.  She also seeks compensatory and punitive damages.  Id. ¶ 4.

17                                    **ARGUMENT**

18  **I.    PLAINTIFF'S SECOND AMENDMENT RIGHTS HAVE NOT BEEN VIOLATED**

19          The Ninth Circuit has held that Congress did not violate the Second Amendment by

20  prohibiting unlawful drug users from possessing firearms.  See United States v. Dugan, 657 F.3d

21  998 (9th Cir. 2011).  This binding holding applies to all unlawful drug users, even those whose

22  marijuana use is not a crime as a matter of state law.  Even if the Ninth Circuit had not already

23  upheld 18 U.S.C. § 922(g)(3) against a Second Amendment challenge, Plaintiff's claim against

24

_____

25  [8] Plaintiff names Defendants Holder, Jones, and Herbert in both their official and their individual
    capacities.  A separate, contemporaneously-filed motion to dismiss by the individual defendants
26  addresses the specific reasons why Plaintiff's claims against these defendants in their individual
    capacities must fail.

27

28

                                          11

1   that provision would still fail because it proscribes activity that falls outside the scope of the

2   Second Amendment's protections.  In any event, because prohibiting possession of firearms by

3   unlawful drug users, including marijuana users, substantially relates to the important

4   governmental interests in combatting violent crime and protecting public safety, 18 U.S.C.

5   § 922(g)(3) does not violate Plaintiff's Second Amendment rights.  Plaintiff's challenge to

6   § 922(d)(3) and to ATF's interpretation of that provision in the September 2011 Open Letter

7   similarly fails.  The Second Amendment does not protect a right to sell firearms.  Moreover,

8   because § 922(g)(3)—which prohibits unlawful drug users' firearm possession—does not violate

9   the Second Amendment, the fact that § 922(d)(3) might prevent unlawful drug users from

10  acquiring firearms does not render that provision constitutionally suspect.

11  **A.      As Applied to Plaintiff, 18 USC. § 922(g)(3), as Implemented and
12            Interpreted by ATF, Does Not Violate the Second Amendment.**

13              **1.      Plaintiff's Second Amendment Challenge to § 922(g)(3) Is Foreclosed
                         By the Ninth Circuit's Decision in <u>Dugan</u>.**

14          The Second Amendment provides: "A well regulated Militia, being necessary to the

15  security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

16  U.S. Const. amend. II.  In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), after determining

17  that the Second Amendment confers an individual right to keep and bear arms, <u>id.</u> at 595, the

18  Supreme Court held that "the District's ban on handgun possession in the home violates the

19  Second Amendment, as does its prohibition against rendering any lawful firearm in the home

20  operable for the purpose of immediate self defense," <u>id.</u> at 635.  The Court's holding was narrow

21  and addressed only the "core" right of "<u>law-abiding, responsible</u> citizens to use arms in defense

22  of hearth and home."  <u>Id.</u> at 634–35 (emphasis added).

23          The Supreme Court also took care to note that, like other constitutional rights, the right to

24  keep and bear arms is "not unlimited."  <u>Id.</u> at 626.  Although the Supreme Court declined to

25  "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it

26  cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding

27

28

1    prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing

2    conditions and qualifications on the commercial sale of arms." Id. at 626–27.  The Court

3    clarified that it was "identify[ing] these presumptively lawful regulatory measures only as

4    examples" and that its list was not "exhaustive."  Id. at 627 n.26; see also McDonald v. City of

5    Chicago, 130 S. Ct. 3020, 3047 (2010).

6           Following Heller, numerous Second Amendment challenges have been raised against

7    § 922(g)(3), and not one has succeeded.  See, e.g., United States v. Yancey, 621 F.3d 681, 683,

8    687 (7th Cir. 2010) (holding that § 922(g)(3) was "equally defensible" as, and analogous to, the

9    categorical bans described as presumptively lawful in Heller and that "Congress acted within

10   constitutional bounds by prohibiting illegal drug users from firearm possession because it is

11   substantially related to the important governmental interest in preventing violent crime"); United

12   States v. Seay, 620 F.3d 919, 925 (8th Cir. 2010) ("find[ing] that § 922(g)(3) is the type of

13   'longstanding prohibition[] on the possession of firearms' that Heller declared presumptively

14   lawful"); United States v. Richard, 350 F. App'x 252, 260 (10th Cir. 2009) (unpublished);

15   United States v. Korbe, Criminal No. 09-05, 2010 WL 2404394, at *3–4 (W.D. Pa. June 9,

16   2010); United States v. Hendrix, No. 09-cr-56-bbc, 2010 WL 1372663, at *3 (W.D. Wis. Apr. 6,

17   2010); see also United States v. Patterson, 431 F.3d 832, 835–36 (5th Cir. 2005) (holding, pre-

18   Heller, that although the Fifth Circuit recognized an individual right to bear arms, a criminal

19   defendant's Second Amendment challenge to § 922(g)(3) was unavailing).[9]

_____

20   [9] United States v. Carter, __ F.3d __, No. 09-5074, 2012 WL 207067 (4th Cir. Jan. 23, 2012), is
     not to the contrary.  There, the Fourth Circuit found that the government had failed to meet its
21   burden of establishing a record showing a reasonable fit between § 922(g)(3) and the
     government's important interest in public safety, and it therefore remanded to allow the
22   government an opportunity to substantiate the record.  Carter, 2012 WL 207067, at *7–8.  In
     doing so, however, the Fourth Circuit noted that the record necessary to justify § 922(g)(3) "need
23   not be as fulsome as that necessary to justify" other sub-sections of § 922(g) because, unlike the
     other sub-sections, § 922(g)(3) "only applies to persons who are currently unlawful users or
24   addicts."  Id. at *6.  Indeed, the court proceeded to observe that the government's burden on
     remand "should not be difficult to satisfy in this case, as the government has already asserted in
25   argument several risks of danger from mixing drugs and guns" and noted that the Seventh Circuit
     in Yancey had "identified a number of studies demonstrating 'the connection between chronic
26   drug abuse and violent crime.'"  Id. at *7–8.

27

28

                                                    13

1       The Ninth Circuit similarly upheld § 922(g)(3) against a Second Amendment challenge in

2 <u>Dugan</u>.  Like the other courts to have considered the issue, the Ninth Circuit found significant

3 <u>Heller</u>'s language indicating that § 922(g)(1)'s prohibition on firearm possession by felons and

4 § 922(g)(4)'s prohibition on firearm possession by the mentally ill were presumptively lawful.

5 <u>Dugan</u>, 657 F.3d at 999.  The court found that "the same amount of danger" is presented by

6 allowing habitual drug users to possess firearms because "[h]abitual drug users, like career

7 criminals and the mentally ill, more likely will have difficulty exercising self-control,

8 particularly when they are under the influence of controlled substances."  <u>Id.</u>  The court also

9 found an important distinction between § 922(g)(3) and the two prohibitions declared

10 presumptively lawful by <u>Heller</u> that actually favored § 922(g)(3)'s constitutionality—namely,

11 that "an unlawful drug user may regain his right to possess a firearm simply by ending his drug

12 abuse," whereas those individuals who have been convicted of a felony or committed to a mental

13 institution generally face a lifetime ban.  <u>Id.</u>  The court therefore concluded that "[b]ecause

14 Congress may constitutionally deprive felons and mentally ill people of the right to possess and

15 carry weapons, . . . Congress may also prohibit illegal drug users from possessing firearms."  <u>Id.</u>

16 at 999–1000.

17       Although not evident from the face of the opinion, Dugan, like Plaintiff, possessed a

18 state-issued card exempting him from state prosecution for using marijuana for medical

19 purposes.  <u>See</u> Brief for Appellant at 59, <u>Dugan</u>, 657 F.3d 998 (No. 08-10579), ECF No. 57

20 ("Here, Mr. Dugan was . . . licensed to grow and use medical marijuana.").  Indeed, the central

21 argument in Dugan's Second Amendment challenge was that "millions of Americans peacefully

22 engage in the unlawful use of marijuana—and millions more do so legally under state medical

23 marijuana laws—without engaging in any behavior that would provide a legitimate basis for

24 excluding them from the reach of the Second Amendment."  <u>Id.</u> at 57.  The Ninth Circuit,

25 however, treated Dugan's status as a medical marijuana cardholder as irrelevant to his Second

26 Amendment claim—and rightly so.  Congress has determined that marijuana "has no currently

27

28

14

1  accepted medical use in treatment in the United States," 21 U.S.C. § 812(b)(1)(B), and has

2  accordingly specified that it may not be validly prescribed or lawfully possessed, id. §§ 829,

3  844(a).  Although several states, including Nevada, have taken a different view of marijuana's

4  potential medical benefits, it is well settled that Congress has authority under the Commerce

5  Clause to criminalize marijuana possession, even if such possession is not also illegal under state

6  law.  See Gonzales v. Raich, 545 U.S. 1 (2005); see also Raich v. Gonzales ("Raich II"), 500

7  F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the Supreme Court, that there is no

8  Ninth Amendment or substantive due process right to use marijuana for claimed medical

9  purposes); Mont. Caregivers Ass'n v. United States, __ F. Supp. 2d __, No. CV 11-74-M-DWM,

10 2012 WL 169771 (D. Mont. Jan. 20, 2012).  All users of marijuana are therefore unlawful users

11 of a controlled substance, and Dugan's holding that Congress may "prohibit illegal drug users

12 from possessing firearms" without violating the Second Amendment applies equally to them all.

13 657 F.3d at 999–1000; see also United States v. Stacy, No. 09cr3695 BTM, 2010 WL 4117276,

14 at *7 (S.D. Cal. Oct. 18, 2010) (noting, in the course of rejecting a Second Amendment challenge

15 to § 922(g)(3), that "[t]he fact that this particular case involves the alleged lawful use of

16 marijuana under state law does not have any bearing on the presumptively lawful nature of the

17 restriction").  As such, Plaintiff's claim that her Second Amendment rights have been violated by

18 § 922(g)(3), as interpreted by ATF, must fail.

19              **2.      Unlawful Drug Users Fall Outside the Scope of the Second
                          Amendment as Understood at the Adoption of the Bill of Rights.**
20

21              Even if Plaintiff's Second Amendment challenge to § 922(g)(3) were not foreclosed by

22 Dugan, it would still fail because unlawful drug users are not within the class of law-abiding,

23 responsible citizens historically protected by the Second Amendment.  As noted earlier, Heller's

24 holding was relatively narrow, recognizing only the "core" right of "law-abiding, responsible

25 citizens to use arms in defense of hearth and home."  554 U.S. at 634–35 (emphasis added).

26 Given this, as well as the Court's recognition that categorical prohibitions on firearm possession

27

28

                                      15

1  by felons and the mentally ill are presumptively lawful, it is clear that <u>Heller</u>'s determination that

2  the Second Amendment confers an individual right to keep and bear arms cannot be

3  misconstrued as recognizing a right for <u>all</u> individuals to possess firearms, no matter the

4  circumstances.  Rather, <u>Heller</u>'s carefully crafted articulation of the right at the core of the

5  Second Amendment acknowledges that the Anglo-American right to arms that was incorporated

6  into the Bill of Rights was subject to certain well-recognized exceptions.[10]  Given the relatively

7  recent history of federal enactments disqualifying felons and the mentally ill from possessing

8  weapons,[11] <u>Heller</u> also teaches that "exclusions [from the right to bear arms] need not mirror

9  limits that were on the books in 1791," when the Second Amendment was enacted.  <u>United</u>

10  <u>States v. Skoien</u>, 614 F.3d 638, 641 (7th Cir. 2010) (en banc); <u>see also id.</u> at 640 ("[<u>Heller</u>] tell[s]

11  us that statutory prohibitions on the possession of weapons by some persons are proper—and . . .

12  that the legislative role did not end in 1791.  That <u>some</u> categorical limits are proper is part of the

13  original meaning, leaving to the people's elected representatives the filling in of details.").

14  Nevertheless, the history of the right to arms as it developed in England and the American

15  colonies is consistent not only with the disarmament of convicted felons and the mentally ill, but

16  also more broadly supports Congress's authority to prohibit firearm possession by non-law-

17  abiding citizens, including those who violate drug laws.

18  _____

19  [10] It is "perfectly well settled" that the Bill of Rights embodies "certain guaranties and
immunities which we had inherited from our English ancestors," and "which had, from time

20  immemorial, been subject to certain well-recognized exceptions, arising from the necessities of
the case."  <u>Robertson v. Baldwin</u>, 165 U.S. 275, 281 (1897).  The Court similarly recognized that
"[i]n incorporating these principles into the fundamental law, there was no intention of

21  disregarding the exceptions, which continued to be recognized as if they had been formally
expressed."  <u>Id.</u>; <u>see also</u> <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 95-96 (1990) (Scalia, J.,

22  dissenting) ("The provisions of the Bill of Rights . . . did not create by implication novel
individual rights overturning accepted political norms.").

23

24  [11] <u>See</u> <u>Skoien</u>, 614 F.3d at 640–41 ("The first federal statute disqualifying felons from possessing
firearms was not enacted until 1938 . . . . [T]he ban on possession by <u>all</u> felons was not enacted

25  until 1961. . . . Moreover, legal limits on the possession of firearms by the mentally ill also are of
20th Century vintage; § 922(g)(4), which forbids possession by a person 'who has been

26  adjudicated as a mental defective or who has been committed to a mental institution,' was not
enacted until 1968." (citations omitted)).

27

28

1    <u>Heller</u> identified the right protected by the 1689 English Declaration of Rights as "the

2    predecessor to our Second Amendment."  554 U.S. at 593.  This document provided, "That the

3    subjects which are Protestants may have arms for their defense suitable to their conditions and <u>as</u>

4    <u>allowed by law</u>."  <u>Id.</u> (quoting 1 W. & M., c. 2, § 7, in 3 Eng. Stat. at Large 441 (1689))

5    (emphasis added).  It is undisputed that both before and after its adoption, the English

6    government retained the power to disarm individuals it viewed as dangerous.  <u>Id.</u> at 582.

7    Moreover, "like all written English rights," this right to arms "was held only against the Crown,

8    not Parliament," <u>id.</u> at 593, and thus its scope was only "as allowed by law."  Significantly, the

9    English Declaration of Rights did <u>not</u> repeal the 1662 Militia Act, which authorized lieutenants

10   of the militia (appointed by the King) to disarm "any person or persons" judged "<u>dangerous to</u>

11   <u>the Peace of the Kingdome</u>,"  13 & 14 Car. 2, c. 3, § 1 (1662) (Eng.) (emphasis added), and "was

12   to remain in force with only insignificant changes for many years to come," Joyce Lee Malcolm,

13   <u>To Keep and Bear Arms</u> 123 (1994) [App. at Tab 4]; <u>accord</u> Patrick J. Charles, "<u>Arms for Their</u>

14   <u>Defence</u>"?: <u>An Historical, Legal, and Textual Analysis of the English Right to Have Arms and</u>

15   <u>Whether the Second Amendment Should Be Incorporated in McDonald v. City of Chicago</u>, 57

16   Clev. State L. Rev. 351, 373, 376, 382–83, 405 (2009).  Since the act was employed against

17   those viewed as "disaffected or dangerous," Charles, 57 Clev. State L. Rev. at 376–78,

18   individuals could be disarmed without any adjudication of wrongdoing.

19           The documentary record surrounding the adoption of the Constitution similarly confirms

20   that the right to keep and bear arms was limited to "law-abiding and responsible" citizens.  In

21   other words, "it is clear that the colonists, at least in some manner, carried on the English

22   tradition of disarming those viewed as 'disaffected and dangerous.'"  <u>United States v. Tooley</u>,

23   717 F. Supp. 2d 580, 590 (S.D. W.Va. 2010).  Notably, "<u>Heller</u> identified as a 'highly

24   influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the

25   Minority of the Convention of the State of Pennsylvania to Their Constituents," which "asserted

26   that citizens have a personal right to bear arms '<u>unless for crimes committed, or real danger of</u>

27

28

17

1   public injury from individuals.'"  Skoien, 614 F.3d at 640 (quoting Heller, 554 U.S. at 604; 2

2   Bernard Schwartz, The Bill of Rights: A Documentary History 665 (1971) (emphasis added)).

3   "One reason for considering this proposal 'highly influential,' is that it represents the view of the

4   Anti-federalists – the folk advocating . . . for a strong Bill of Rights."  Tooley, 717 F. Supp. 2d at

5   590.  This proposal demonstrates that, at the time the Constitution was adopted, even ardent

6   supporters of guaranteeing an individual right to keep and bear arms recognized that criminals

7   and other dangerous individuals should not enjoy its benefits.  Although the Second Amendment

8   itself proved more "succinct[]" than the Pennsylvania proposal, Heller, 554 U.S. at 659 (Stevens,

9   J., dissenting), the latter remains probative of how the Amendment's supporters viewed the

10  balance between public security and the right to keep and bear arms.  See id. at 605 (reaffirming

11  that "the Bill of Rights codified venerable, widely understood liberties").

12          The Pennsylvania proposal, moreover, supports the view that "the right to arms does not

13  preclude laws disarming the unvirtuous citizens (i.e., criminals) or those who, like children or the

14  mentally unbalanced, are deemed incapable of virtue."  Don B. Kates & Clayton E. Cramer,

15  Second Amendment Limitations and Criminological Considerations, 60 Hastings L.J. 1339, 1360

16  (2009); see also Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-

17  Defense: An Analytical Framework and Research Agenda, 56 UCLA L. Rev. 1443, 1497 (2009)

18  ("[A]ny textual or original-meaning limitations on who possesses the right will often stem from

19  the perception that certain people aren't trustworthy enough to possess firearms."); id. at 1510

20  (opining that "those whose judgment is seen as compromised by mental illness, mental

21  retardation, or drug or alcohol addiction have historically been seen as less than full

22  rightholders"); Saul Cornell & Nathan DeDino, A Well Regulated Right: The Early American

23  Origins of Gun Control, 73 Fordham L. Rev. 487, 492 (2004); Robert E. Shalhope, The Armed

24  Citizen in the Early Republic, 49 Law & Contemp. Probs. 125, 130 (1986).  Additional historical

25  support for this understanding of the right is found in nineteenth-century cases upholding state

26  legislation restricting firearm possession by certain classes of people perceived to be dangerous.

27

28

1   For example, the Missouri Supreme Court held in 1886 that a state law prohibiting intoxicated

2   persons from carrying firearms did not violate the state constitutional right to keep and bear

3   arms.  State v. Shelby, 2 S.W. 468, 468–69 (Mo. 1886).

4       Courts interpreting the Second Amendment following Heller have recognized the

5   importance of the Amendment's historical limitations.  See, e.g., Heller v. District of Columbia

6   ("Heller II"), __F.3d __, 2011 WL 4551558, at *5 (D.C. Cir. Oct. 4, 2011); United States v.

7   Chester, 628 F.3d 673 (4th Cir. 2010).  Indeed, the First Circuit recently relied, in part, on

8   historical sources in holding that the right to keep arms does not extend to juveniles.  United

9   States v. Rene E., 583 F.3d 8, 15-16 (1st Cir. 2009), cert. denied, 130 S. Ct. 1109 (Jan. 11, 2010).

10  The Ninth Circuit has recognized this history as well, noting that "most scholars of the Second

11  Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a

12  'virtuous citizen[ry]' . . . and that 'the right to bear arms does not preclude laws disarming the

13  unvirtuous citizens (i.e. criminals)."  United States v. Vongxay, 594 F.3d 1111, 1118 (9th Cir.

14  2010) (quoting Don B. Kates, Jr., The Second Amendment: A Dialogue, 49 Law & Contemp.

15  Probs. 143, 146 (1986)).

16      This history is sufficient to resolve Plaintiff's challenge to § 922(g)(3).  Simply put,

17  unlawful drug users—a category that includes all marijuana users—are outside the class of "law-

18  abiding, responsible" citizens historically protected by the Second Amendment.  Because the

19  right to keep arms does not extend to those who are actively engaged in illegal activity,

20  § 922(g)(3), as interpreted by ATF, cannot violate the Second Amendment.  See Hendrix, 2010

21  WL 1372663, at *3 ("Preventing criminal users of controlled substances from possessing guns is

22  not a restriction on the values that the Second Amendment protects, which, to repeat, is the right

23  of law-abiding citizens to possess handguns in their homes for self-protection.").

24

25

26

27

28

19

3.    **In Any Event, As Applied to Marijuana Users, 18 U.S.C. § 922(g)(3) Substantially Relates to the Important Governmental Interest in Protecting Public Safety and Combating Violent Crime.**

Even if the Court declines to reach the issue of whether unlawful drug users fell outside the scope of the Second Amendment as understood at the time of its adoption, it should still uphold § 922(g)(3), as applied to all marijuana users, because the statute easily survives heightened review.  In <u>Heller</u>, the Supreme Court did not specify which standard of review should be applied in Second Amendment cases, other than to rule out use of rational-basis scrutiny.  554 U.S. at 628 & n.27.  This question is still unsettled in the Ninth Circuit: a panel of that court recently took a step towards resolving the issue, holding that "only regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny under the Second Amendment," although declining to decide "precisely what type of heightened scrutiny applies to laws that substantially burden Second Amendment rights."  <u>Nordyke v. King</u>, 644 F.3d 776, 786 & n.9 (9th Cir. 2011).  The Ninth Circuit has decided to rehear that case <u>en banc</u>, however, and the panel opinion has been stripped of precedential force.  <u>Nordyke</u>, No. 07-15763, 2011 WL 5928130 (9th Cir. Nov. 28, 2011).  The other courts of appeals that have addressed the standard-of-review issue have uniformly concluded that this type of regulation is, at most, subject to intermediate scrutiny.  The Fourth Circuit, for example, recently declined to decide whether firearm possession by unlawful drug users was understood to be within the scope of the Second Amendment's guarantee at the time of ratification, but then rejected the defendant's claim that strict scrutiny should apply to his challenge because he purchased the guns at issue for self-defense in the home.  <u>United States v. Carter</u>, __ F.3d __, No. 09-5074, 2012 WL 207067, at *4 (4th Cir. Jan. 23, 2012).  Instead, the court applied intermediate scrutiny, explaining that "[w]hile we have noted that the application of strict scrutiny is important to protect the core right of self-defense identified in <u>Heller</u>, that core right is only enjoyed, as <u>Heller</u> made clear, by 'law-abiding, responsible citizens,'" which unlawful drug users "cannot claim to be."  <u>Id.</u>  The court noted that it was "join[ing] the other courts of appeals that have rejected the application of strict

20

1   scrutiny in reviewing the enforcement of § 922(g)(3), or, for that matter, any other subsection of

2   § 922(g)."  Id. at *5; see also Yancey, 621 F.3d at 683 (applying intermediate scrutiny to a §

3   922(g)(3) challenge); cf. United States v. Reese, 627 F.3d 792, 802 (10th Cir. 2010) (applying

4   intermediate scrutiny to challenge to § 922(g)(8)); Heller II, 2011 WL 4551558, at *9 (applying

5   intermediate scrutiny to review novel gun registration laws).  Given this weight of authority,

6   intermediate scrutiny is the highest standard of review that should potentially apply here.

7        There can be no doubt that § 922(g)(3), as applied to marijuana users, satisfies

8   intermediate scrutiny.  Under intermediate scrutiny, "a regulation must be substantially related to

9   an important governmental objective."  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1134 (9th Cir.

10  2009).  An important—indeed, compelling—governmental interest is at stake here—namely, the

11  government's interest in protecting public safety and preventing violent crime.  See United States

12  v. Salerno, 481 U.S. 739, 748, 750 (1987) (noting that the Supreme Court has "repeatedly held

13  that the Government's regulatory interest in community safety can, in appropriate circumstances,

14  outweigh an individual's liberty interest" and that the "[g]overnment's general interest in

15  preventing crime is compelling"); Schall v. Martin, 467 U.S. 253, 264 (1984) ("The 'legitimate

16  and compelling state interest' in protecting the community from crime cannot be doubted."); see

17  also Carter, 2012 WL 207067, at *5 ("We readily conclude in this case that the government's

18  interest in 'protecting the community from crime' by keeping guns out of the hands of dangerous

19  persons is an important governmental interest."); Yancey, 621 F.3d at 684 ("The broad objective

20  of § 922(g)—suppressing armed violence—is without doubt an important one.").

21       In terms of evaluating the fit between the indisputably important objectives at stake and

22  the prohibition in § 922(g)(3), there are several relevant considerations that affect the analysis.

23  First, intermediate scrutiny, "by definition, allows [the government] to paint with a broader

24  brush" than strict scrutiny.  Peruta v. Cnty. of San Diego, 758 F. Supp. 2d 1106, 1117 (S.D. Cal.

25  2010) (internal quotation marks and citation omitted).  Second, in order to advance its

26  compelling interests in combating crime and protecting public safety, Congress may need to

27

28

21

1   make "predictive judgments" about the risk of dangerous behavior.  <u>Turner Broad. Sys. v. FCC</u>,

2   512 U.S. 622, 665 (1994).  Such judgments are entitled to "substantial deference" by the courts

3   because Congress is "far better equipped than the judiciary" to collect, weigh, and evaluate the

4   relevant evidence and to formulate appropriate firearms policy in response.  <u>Id.</u> at 665–66.

5   Third, "the nature and quantity of any showing required by the government 'to satisfy heightened

6   judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility

7   of the justification raised.'"  <u>Carter</u>, 2012 WL 207067, at *6 (quoting <u>Nixon v. Shrink Mo. Gov't</u>

8   <u>PAC</u>, 528 U.S. 377, 391 (2000)).  Since it is hardly novel—and entirely plausible—that mixing

9   guns and drugs poses a severe risk to public safety, the government's burden here is relatively

10  low.  Finally, the government may carry its burden by relying on "a wide range of sources, such

11  as legislative text and history, empirical evidence, case law, and common sense, as

12  circumstances and context require."  <u>Id.</u>

13         All of these sources point inexorably to the conclusion that a substantial relationship

14  exists between § 922(g)(3) as applied to marijuana users and Congress's goals of protecting

15  public safety and combatting violent crime.  Congress enacted the precursor to what is now

16  § 922(g)(3) in the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213.  Congressional

17  action was prompted by the "increasing rate of crime and lawlessness and the growing use of

18  firearms in violent crime."  H.R. Rep. No. 90-1577, at 7 (1968), <u>reprinted in</u> 1968 U.S.C.C.A.N.

19  4410, 4412.  To meet this growing problem, Congress banned certain classes of individuals from

20  receiving firearms shipped in interstate commerce based on Congress's determination that access

21  to guns by those groups of people was generally contrary to the public interest.  <u>See</u> <u>Huddleston</u>

22  <u>v. United States</u>, 415 U.S. 814, 824 (1974) ("The principal purpose of the federal gun control

23  legislation . . . was to [curb] crime by keeping 'firearms out of the hands of those not legally

24  entitled to possess them because of age, criminal background, or incompetency.'" (quoting S.

25  Rep. No. 90-1501, at 22 (1968))).  As the House manager stated during debate on the legislation:

26         [W]e are convinced that a strengthened [firearms control system] can significantly
           contribute to reducing the danger of crime in the United States.  No one can

27

28
                                              22

1
2

dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons.

3   114 Cong. Rec. 21657, 21784 (1968) (quoted in Huddleston, 415 U.S. at 828; Yancey, 621 F.3d

4   at 686). Moreover, Congress evidenced a particular concern with marijuana use: "[w]hile the

5   statute swept in users of several different categories of drugs, marijuana was the only drug

6   specifically listed by name." Carter, 2012 WL 207067, at *5 (citing 82 Stat. 1213, 1220–21,

7   which prohibited receipt of firearms by any person who is "'an unlawful user of or addicted to

8   marihuana or any depressant or stimulant drug . . . or narcotic drug'"). [12]

9          Significantly, Congress is not the only legislative body to draw the conclusion that guns

10   and drugs do not mix. Rather, as the court in Yancey found significant, "many states have

11   restricted the right of habitual drug abusers or alcoholics to possess or carry firearms." 621 F.3d

12   at 684. [13] Indeed, Nevada is among the states that have codified an analogue to § 922(g)(3); the

13   state legislature amended a pre-existing provision in 2003 to specify that "[a] person shall not

14   own or have in his or her possession or under his or her custody or control any firearm if the

15   person . . . [i]s an unlawful user of, or addicted to, any controlled substance." Nev. Rev. Stat.

16   § 202.360(1)(c). Like § 922(g)(3), the state statute further provides that "'controlled substance'

17   has the meaning ascribed to it in 21 U.S.C. § 802(6)." Id. § 202.360(3)(a). Taken together, the

18

19   [12] As Carter notes in recounting § 922(g)(3)'s legislative history, the "the 1968 enactment . . . contained a number of loopholes." Id. at *6. The provision took its current shape with the enactment of the Firearm Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449, 452 (1986).

20

21   [13] See Ala. Code § 13A-11-72(b); Ark. Code Ann. § 5-73-309(7), (8); Cal. Penal Code § 12021(a)(1); Colo. Rev. Stat. § 18-12-203(1)(e), (f); Del. Code Ann. tit. 11, § 1448(a)(3); D.C. Code § 22-4503(a)(4); Fla. Stat. § 790.25(2)(b)(1); Ga. Code Ann. § 16-11-129(b)(2)(F), (I), (J); Haw. Rev. Stat. § 134-7(c)(1); Idaho Code Ann. § 18-3302(1)(e); 720 Ill. Comp. Stat. 5/24-3.1(a)(3); Ind. Code § 35-47-1-7(5); Kan. Stat. Ann. § 21-4204(a)(1); Ky. Rev. Stat. Ann. § 237.110(4)(d), (e); Md. Code Ann., Public Safety, 5-133(b)(4), (5); Mass. Gen. Laws ch. 140, § 129B(1)(iv); Minn. Stat. § 624.713(1)(10)(iii); Mo. Rev. Stat. § 571.070(1)(1); Nev. Rev. Stat. § 202.360(1)(c); N.H. Rev. Stat. Ann. § 159:3(b)(3); N.J. Stat. Ann. § 2C:58-3(c)(2); N.C. Gev. Stat. § 14-404(c)(3); Ohio Rev. Code Ann. § 2923.13(A)(4); R.I. Gen. Laws § 11-47-6; S.C. Code Ann. § 16-23-30(A)(1); S.D. Codified Laws § 23-7-7.1(3); W. Va. Code § 61-7-7(a)(2), (3).

22

23

24

25

26

27

28

23

1    state legislation "demonstrate[s] that Congress was not alone in concluding that habitual drug

2    abusers are unfit to possess firearms."  Yancey, 621 F.3d at 684.

3         This shared legislative judgment is amply supported by academic research and empirical

4    studies demonstrating the heightened risk to the public safety posed by the possession of firearms

5    by marijuana users.  According to the Bureau of Justice Statistics, a 2004 survey found that

6    "32% of state prisoners and 26% of federal prisoners said they had committed their current

7    offense while under the influence of drugs."  Bureau of Justice Statistics, Drugs and Crime Facts,

8    http://bjs.ojp.usdoj.gov/content/dcf/duc.cfm [App. at Tab 5].  Marijuana, moreover, was the most

9    frequent drug of choice: a 2002 survey of convicted jail inmates found that marijuana was the

10   most common drug used at the time of the offense, and similar results were found among

11   probationers.  Id.  Moreover, the Office of National Drug Control Policy's ("ONDCP's") arrestee

12   drug abuse monitoring program, which collects data in 10 cities from males 18 years and older at

13   the point of their involvement in the criminal justice system, found that "[m]arijuana was the

14   most commonly detected drug in all of the . . . sites in 2010."  ONDCP, ADAM II 2010 Annual

15   Report, at 20 (2010), available at http://www.whitehouse.gov/sites/default/files/ondcp/policy-

16   and-research/adam2010.pdf [App. at Tab 6].  In the ten years that ONDCP has been collecting

17   data, "the proportion of arrestees testing positive for marijuana has never been less than 30

18   percent of the sample in any of the current 10 sites."  Id.  Indeed, "[i]n 2010, in 9 of the 10 sites,

19   40 percent or more of the arrestees reported [marijuana] use in the prior 30 days."  Id. at 22.

20        This correlation between marijuana use and crime should be no surprise given the well-

21   documented deleterious effects regular marijuana use has on an individual.  Marijuana use is

22   associated with impaired cognitive functioning, dependence, mental illness, and poor motor

23   performance.  See ONDCP, Fact Sheet: Marijuana Legalization, at 1 (Oct. 2010), available at

24   http://www.whitehouse.gov/sites/default/files/ondcp/Fact_Sheets/marijuana_legalization_fact_sh

25   eet_3-3-11.pdf [App. at Tab 7].  Marijuana intoxication "can cause distorted perceptions,

26   difficulty in thinking and problem solving," and "[s]tudies have shown an association between

27

28

24

1   chronic marijuana use and increased rates of anxiety, depression, suicidal thoughts, and

2   schizophrenia." Id. at 2; see also National Institute of Drug Abuse, Topics in Brief: Marijuana,

3   at 1 (Dec. 2011), available at https://www.drugabuse.gov/sites/default/files/marijuana_3.pdf

4   [App. at Tab 8] (noting that marijuana can have wide-ranging effects, including impaired short

5   term memory, slowed reaction time and impaired motor coordination, altered judgment and

6   decision-making, and altered mood); id. at 2 ("Population studies reveal an association between

7   cannabis use and increased risk of schizophrenia and, to a lesser extent, depression and

8   anxiety.").

9          The potential risks posed by the firearm possession of someone who uses this mind-

10  altering substance are clear.  Moreover, nothing in these studies indicates that the effects of

11  marijuana that make it dangerous for a user to possess a firearm are somehow mitigated when a

12  doctor has indicated that "use of marijuana may mitigate the symptoms or effects of [a chronic or

13  debilitating medical] condition."  Nev. Rev. Stat. § 453A.210(2)(a)(2).  The documented effects

14  of marijuana use thus corroborate the substantial relationship between § 922(g)(3) and

15  Congress's goal of protecting the public's safety.  See Yancey, 621 F.3d at 685 (recognizing that

16  "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-

17  control, making it dangerous for them to possess deadly firearms.").

18         In addition, the limited temporal reach of § 922(g)(3) helps ensure that it bears a

19  reasonable fit to the ends that it serves.  Unlike most of § 922(g)'s other firearm exclusions,

20  which may operate as lifetime bans, § 922(g)(3) only applies to those who are currently unlawful

21  users.  See 27 C.F.R. § 478.11 (defining "unlawful user" so that any unlawful use must have

22  "occurred recently enough to indicate that the individual is actively engaged in such conduct").

23  Through this feature, "Congress tailored the prohibition to cover only the time period during

24  which it deemed such persons to be dangerous."  Carter, 2012 WL 207067, at *7.  Moreover,

25  § 922(g)(3) "enables a drug user who places a high value on the right to bear arms to regain that

26  right by parting ways with illicit drug use."  Id.  The choice is the user's, and nothing in the

27

28

25

1    Second Amendment "require[s] Congress to allow [the unlawful user] to simultaneously choose

2    both gun possession and drug abuse." Yancey, 621 F.3d at 687.

3         Especially given the "substantial deference" afforded to "predictive judgments" made by

4    Congress in order to advance the nation's interests, Turner Broad. Sys., 512 U.S. at 665, these

5    sources demonstrate that § 922(g)(3), as applied to marijuana users, satisfies intermediate

6    scrutiny.  That Plaintiff has registered to use marijuana for purported medical purposes, as

7    opposed to recreational purposes, does nothing to change the result.  Plaintiff may attempt to

8    argue that § 922(g)(3) is unconstitutional as applied to her because she is a responsible marijuana

9    user who poses no genuine threat to public safety.  But such an argument is clearly precluded by

10   the Supreme Court's recognition in Heller that "some categorical disqualifications are

11   permissible" and that "Congress is not limited to case-by-case exclusions of persons who have

12   been shown to be untrustworthy with weapons."  Skoien, 614 F.3d at 641 (emphasis added); see

13   also Tooley, 717 F. Supp. 2d at 597 ("Section 922(g)(9) is of course overbroad in the sense that

14   not every domestic violence misdemeanant who loses his or her right to keep and bear arms

15   would have misused them against a domestic partner or other family member.  Under

16   intermediate scrutiny, however, the fit does not need to be perfect, but only be reasonably

17   tailored in proportion to the important interest it attempts to further.  As such, intermediate

18   scrutiny tolerates laws that are somewhat overinclusive." (citations omitted)); United States v.

19   Miller, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009) ("[T]he nature of the threat posed by gun

20   violence makes narrowing the scope of gun regulation impracticable.").  Nor can Plaintiff

21   succeed on a Second Amendment challenge by "disagree[ing] with Congress' policy decision to

22   link the firearms prohibition in § 922(g)(3) to the Controlled Substances Act." Carter, 2012 WL

23   207067, at *8.  As the Fourth Circuit recognized, "[i]n enacting § 922(g)(3), Congress could

24   have chosen to reexamine the foundations of national drug policy and to identify precisely what

25   kinds of drug users ought to be prohibited from possessing firearms.  Instead, it opted, quite

26   reasonably, to connect § 922(g)(3)'s prohibition on the carefully studied and regularly updated

27

28

1  list of substances contained in the Controlled Substances Act." <u>Id.</u>  Given that § 922(g)(3)'s

2  means need only be reasonably tailored to its ends, this reasonable legislative judgment is

3  entirely consistent with the Second Amendment.

4       In sum, a variety of sources, including legislative text and history, empirical evidence,

5  case law, and common sense, demonstrate that § 922(g)(3), as applied to marijuana users, is

6  substantially related to the indisputably important government interest in protecting public safety

7  and preventing crime.  It therefore satisfies the requirements of intermediate-scrutiny review,

8  providing yet another reason why Plaintiff's constitutional challenge to § 922(g)(3), as

9  interpreted by ATF, must fail.

10       **B.**     **As Applied to Plaintiff, 18 U.S.C. § 922(d)(3), as Implemented and**
                  **Interpreted by ATF, Does Not Violate the Second Amendment.**

11

12       Given that § 922(g)(3) is consistent with the Second Amendment, Plaintiff's challenge to

13  § 922(d)(3), as interpreted by ATF in the September 2011 Open Letter, is similarly unavailing.

14  First, it is important to note that § 922(d)(3)'s restriction is directed toward firearm sellers, not

15  the putative purchaser.  Nothing in <u>Heller</u> suggests that individuals have a right to sell firearms;

16  indeed, <u>Heller</u>'s language, indicating that "nothing in our opinion should be taken to cast doubt

17  on . . . laws imposing conditions and qualifications on the commercial sale of arms," strongly

18  suggests otherwise.  554 U.S. at 626–27.  Along these lines, only one court to date appears to

19  have considered a Second Amendment challenge to § 922(d)(3), and it found that there was no

20  authority indicating that, "at the time of its ratification, the Second Amendment was understood

21  to protect an individual's right to <u>sell</u> a firearm."  <u>United States v. Chafin</u>, 423 F. App'x 342, 344

22  (4th Cir. Apr. 13, 2011) (unpublished).  Additionally, the right of "law-abiding, responsible

23  citizens to use arms in defense of hearth and home" that is at the "core" of the Second

24  Amendment, <u>Heller</u>, at 634–35, "does not necessarily give rise to a corresponding right to sell a

25  firearm," <u>Chafin</u>, 423 F. App'x at 344; <u>cf. United States v. 12 200-Foot Reels of Super 8 mm.</u>

26  <u>Film</u>, 413 U.S. 123, 128 (1973) ("We have already indicated that the protected right to possess

27

28

1    obscene material in the privacy of one's home does not give rise to a correlative right to have

2    someone sell or give it to others.").

3        This is not to say that restrictions on the sale of firearms can never implicate Second

4    Amendment concerns.  Yet, even assuming that to be the case, § 922(d)(3) still cannot run afoul

5    of the Second Amendment because, for all the reasons discussed above, the unlawful drug users

6    who are precluded from acquiring firearms by the statute's operation may constitutionally be

7    prohibited from possessing firearms.  In other words, given that it is consistent with the Second

8    Amendment for § 922(g)(3) to prohibit unlawful drug users from <u>possessing</u> firearm, § 922(d)(3)

9    cannot violate the Second Amendment simply because it blocks that same group from <u>acquiring</u>

10   firearms.

11       To be sure, in addition to banning the sale of firearms to individuals who are known

12   unlawful drug users, § 922(d)(3) also prohibits the sale of firearms to individuals who the seller

13   has reasonable cause to believe are unlawful drug users, including individuals like Plaintiff who

14   have affirmatively registered to use marijuana.  Nothing in this restriction, however, violates the

15   Second Amendment.  Those who hold state-issued medical marijuana cards are either unlawful

16   drug users or are holding cards that serve them no purpose.  Plaintiff has a choice: she can either

17   retain her Nevada-issued medical marijuana card and forfeit the right to acquire a firearm, or she

18   can refrain from using marijuana, return her card to the State, and regain the right to acquire a

19   firearm.  Given that Plaintiff has chosen to keep her card, it is reasonable to infer that she has

20   done so in order to use marijuana.  Having made that decision, the "Second Amendment . . . does

21   not require Congress to allow [her] to simultaneously choose . . . gun possession."  <u>Yancey</u>, 621

22   F.3d at 687.[14]  As a result, Plaintiff has failed to state a Second Amendment claim against either

23   § 922(d)(3) or ATF's interpretation of that provision.

24   _____

25   [14] Indeed, because Plaintiff's inability to acquire a firearm stems from her own decision to retain her medical marijuana registry card, any injury she suffers is traceable not to Defendants, but to her own decisionmaking, and is therefore insufficient to confer standing to prosecute her claims.

26   <u>See</u> <u>Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales</u>, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[S]elf-inflicted harm doesn't satisfy the basic requirements for standing."); <u>Fire</u>

27   <span style="float:right">(<i>Footnote continued on following page.</i>)</span>

28

                                    28

1  **II.      PLAINTIFF'S RIGHT TO EQUAL PROTECTION HAS NOT BEEN VIOLATED.**

2          The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state

3  shall. . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const.

4  amend. XIV, § 1.  Although this clause expressly applies only to the States, the Supreme Court

5  has found that its protections are encompassed by the Due Process Clause of the Fifth

6  Amendment and therefore apply to the federal government.  Bolling v. Sharpe, 347 U.S. 497

7  (1954).  Count II of the Complaint challenges §§ 922(g)(3) and 922(d)(3), as implemented and

8  interpreted by ATF, under the equal protection component of the Due Process Clause, Compl.

9  ¶¶ 52–57, but this claim is also without merit.

10          The equal protection component of the Due Process Clause "is essentially a direction that

11  all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr.,

12  Inc., 473 U.S. 432, 439 (1985).  As a result, "[t]o establish an equal protection violation, [the

13  plaintiff] must show that she is being treated differently from similarly situated individuals."

14  Gonzalez-Medina v. Holder, 641 F.3d 333, 336 (9th Cir. 2011).  Plaintiff's equal protection

15  claim appears to be premised on the theory that the United States is treating holders of medical

16  marijuana registry cards differently from other law-abiding citizens.  See Compl. ¶ 3 (alleging

17  that "Defendants have prohibited a certain class of law-abiding, responsible citizens from

18  exercising their right to keep and bear arms"); id. ¶ 4 ("Based on the Defendants' interpretation

19  of Section 922(g)(3) of the federal criminal code, the law prohibits law-abiding adults who have

20  obtained medical marijuana cards pursuant to state law from lawfully purchasing" firearms).

21  Yet, Plaintiff's characterization to the contrary, the class of individuals holding state-issued

22  medical marijuana registry cards is not similarly situated to law-abiding citizens.  It is entirely

23  reasonable for the government to infer that those individuals who have affirmatively registered to

24

25  Equip. Mfrs. Ass'n v. Marshall, 679 F.2d 679, 682 n.5 (7th Cir. 1982) ("[P]etitioners cannot
   allege an injury from one of the options where they can choose another which causes them no
26  injury").

27

28

                                                        29

                                                        **39**

1  use marijuana on the basis of chronic medical conditions are, in fact, marijuana users.  And

2  because all users of marijuana are violating federal law, they are not similarly situated to those

3  citizens who are not violating federal law.  See Marin Alliance for Med. Marijuana v. Holder, __

4  F.2d __, 2011 WL 5914031, at *13 (N.D. Cal. Nov. 28, 2011) (finding that those whose drug use

5  violates the Controlled Substances Act are not similarly situated to those whose use is permitted

6  by that law).  As a result, Plaintiff's Complaint does not allege that she has been "treated

7  differently from similarly situated individuals," Gonzalez-Medina, 641 F.3d at 336, and it

8  therefore fails to state an equal protection claim.

9  **III.    PLAINTIFF MAY NOT PURSUE CLAIMS FOR MONETARY RELIEF
       AGAINST THE UNITED STATES, ATF, OR THE INDIVIDUAL DEFENDANTS**

10  **     IN THEIR OFFICIAL CAPACITIES.**

11          To the extent that Plaintiff asserts claims against the United States for monetary relief,

12  such claims must be dismissed, as the waiver of sovereign immunity claimed by Plaintiff does

13  not apply to actions for money damages.  In seeking monetary relief, Plaintiff does not appear to

14  distinguish between the claims against the individual Defendants in their personal capacities and

15  the claims against the United States, ATF, and the individual Defendants in their official

16  capacities.  See Compl. ¶¶ 50, 56 (alleging that Plaintiff has suffered damages "[a]s a direct and

17  proximate result of the foregoing law, policy, practice and/or procedure, as enacted and

18  promulgated by the Defendants"); ¶ 59 ("The Defendants, and each of them, acted in concert to

19  deprive the Plaintiff of her Second and Fifth Amendment rights . . . ." (emphasis added)); ¶ 60

20  ("As a direct and proximate result of the Defendants' above-described actions, the Plaintiff has

21  suffered and continues to suffer damages . . . .").  Nor does she identify the specific parties from

22  whom she seeks "compensatory and punitive damages" in her prayer for relief.  Id. at 10, ¶ 4.

23          The United States, as a sovereign, is immune from suit unless it has waived its immunity.

24  Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999); Levin v. United States, 663 F.3d

25  1059, 1061 (9th Cir. 2011).  The immunity applies regardless of whether a plaintiff sues the

26  United States, one of its agencies, or one of its officers acting in an official capacity.  See Balser

27

28

1  v. Dep't of Justice, Office of U.S. Tr., 327 F.3d 903, 907 (9th Cir. 2003) ("In sovereign

2  immunity analysis, any lawsuit against an agency of the United States or against an officer of the

3  United States in his or her official capacity is considered an action against the United States.").

4  In particular, the United States has not waived its sovereign immunity for damages claims based

5  on constitutional violations.  See Dyer v. United States, 166 F. App'x 908, 909 (9th Cir. 2006)

6  ("To the extent [plaintiff] sought damages from the United States for allegedly violating his

7  constitutional rights, his claim was barred by sovereign immunity."); Hamrick v. Brusseau, 80 F.

8  App'x 116, 116 (D.C. Cir. 2003) ("[T]he United States has not waived sovereign immunity with

9  respect to actions for damages based on violations of constitutional rights by federal officials,

10  whether brought against the United States directly . . . or against officers sued in their official

11  capacities . . . .") (internal citations omitted).  "A waiver of the Federal Government's sovereign

12  immunity must be unequivocally expressed in statutory text." Lane v. Peña, 518 U.S. 187, 192

13  (1996).

14  　　　　Plaintiff seeks to avail herself of the waiver of sovereign immunity contained in Section

15  702 of the Administrative Procedure Act.  Compl. ¶ 11 (alleging that the United States "is a

16  proper defendant in this action pursuant to 5 U.S.C. § 702").  But this waiver only applies to

17  constitutional claims for non-monetary relief.  See 5 U.S.C. § 702 ("An action in a court of the

18  United States seeking relief other than monetary damages . . ." (emphasis added)); Tucson

19  Airport Auth. v. Gen. Dynamics Corp., 136 F.3d 641, 645 (9th Cir. 1998) ("By its own terms,

20  § 702 does not apply to claims for 'money damages . . . .'").  Accordingly, all claims seeking

21  monetary relief from the United States, ATF, or the individual defendants in their official

22  capacity must be dismissed.

23  **IV.  PLAINTIFF'S CONSPIRACY CLAIM AGAINST THE UNITED STATES MUST**
    **BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**
24

25  　　　　In addition, to the extent that Plaintiff intends to pursue a common-law conspiracy claim

26  against the United States, this Court should dismiss the claim for Plaintiff's failure to exhaust her

27

28

31

**41**

1   administrative remedies, as well as under the "due care" exception to the Federal Torts Claim

2   Act's waiver of sovereign immunity.  Plaintiff asserts a claim for "conspiracy" under Nevada tort

3   law.  See Comp. ¶¶ 58-61.  Though Plaintiff's claim is against "all Defendants," only the United

4   States will remain as a party to the conspiracy claim following substitution under the Federal

5   Employees Liability Reform and Tort Compensation Act (the "Westfall Act").  As set forth in

6   the accompanying memorandum by the individual defendants, see Memo of Individual

7   Defendants at 13-14, under the Westfall Act, once the Attorney General or his designee certifies

8   that an employee was acting within the scope of employment when the claim arose, the action

9   against the employee in his or her individual capacity "shall be deemed an action against the

10  United States . . . , and the United States shall be substituted as the party defendant."  28 U.S.C.

11  § 2679(d)(1).  The Attorney General's designee in this case has made this certification.  See Att.

12  A to Memo of Individual Defendants.  Therefore, the only remaining party to Plaintiff's tort

13  claim is the United States.

14          This Court should dismiss the conspiracy claim for lack of subject matter jurisdiction

15  once the United States is substituted as a party. [15]  Under the Federal Torts Claim Act, a plaintiff

16  cannot proceed in tort against the United States without first seeking administrative resolution of

17  the claim.  28 U.S.C. § 2675(a).  The exhaustion requirement of § 2675(a) is a jurisdictional

18  limitation.  See Wilson v. Drake, 87 F.3d 1073, 1076 (9th Cir. 1996).  Here, Plaintiff does not

19  allege that she exhausted her administrative remedies.  Therefore, Plaintiff's conspiracy claim

20  against the United States must be dismissed for lack of subject matter jurisdiction.  Id. (finding

21  jurisdiction lacking where plaintiff failed to exhaust administrative remedies in tort claim against

22  the United States as Westfall Act substitute).  In addition, to the extent that Plaintiff's conspiracy

23  claim challenges the enforcement of 18 U.S.C. §§ 922(d)(3) and (g)(3) and the accompanying

24  provisions of the Code of Federal Regulations, Plaintiff's claim is expressly excluded from

25  _____

26  [15] The fact that a claim against the United States must immediately fail following substitution
    under the Westfall Act does not preclude substitution.  See United States v. Smith, 499 U.S. 160,
    165-66 (1991); Levin v. United States, 663 F.3d 1059, 1064 (9th Cir. 2011).

27

28

1  coverage under the "due care" exception to the FTCA's waiver of sovereign immunity.  See 28

2  U.S.C. 2680(a) (preserving immunity for "[a]ny claim based upon an act or omission of an

3  employee of the Government, exercising due care, in the execution of a statute or regulation,

4  whether or not such statute or regulation be valid").[16]

5  **CONCLUSION**

6  For the reasons stated herein, Plaintiff's Complaint should be dismissed in its entirety or,

7  in the alternative, summary judgment should be entered in the favor the United States on all of

8  Plaintiff's claims.

9  Dated: February 3, 2012                    Respectfully submitted,

10                                            TONY WEST
                                             Assistant Attorney General

11                                            DANIEL G. BOGDEN

12                                            United States Attorney

13                                            SANDRA SCHRAIBMAN
                                             Assistant Director

14

15                                            */s/ Alicia N. Ellington*
                                             ALICIA N. ELLINGTON

16                                            JOHN K. THEIS
                                             Trial Attorneys

17                                            United States Department of Justice
                                             Civil Division, Federal Programs Branch

18                                            20 Massachusetts Ave., N.W., Rm. 7226

19  _____
    [16] Beyond the jurisdictional bar, Plaintiff's claim must fail under Nevada tort law.  In Nevada, a
    conspiracy requires "the commission of an underlying tort."  Boorman v. Nev. Mem'l Cremation

20  Soc'y, Inc., 772 F. Supp. 2d 1309, 1315 (D. Nev. 2011) (citing Jordan v. State ex rel. Dep't of
    Motor Vehicles & Pub. Safety, 110 P.3d 30, 51 (Nev. 2005) (per curiam), abrogated on other

21  grounds by Buzz Stew, LLC v. City of N. Las Vegas, 181 P.3d 670, 672 n.6 (Nev. 2008)).  As
    demonstrated herein, see supra at Argument Parts I-II, and in the individual defendants'

22  memorandum, neither the United States nor any of its employees have committed any actionable
    constitutional tort.  In addition, under Nevada law, a plaintiff must prove "an explicit or tacit

23  agreement between the tortfeasors." Azpilcueta v. State of Nev. ex rel. Transp. Auth., 2010 WL
    2871073, at *3 (D. Nev. 2010) (citing GES, Inc. v. Corbitt, 21 P.3d 11, 15 (Nev. 2001)).  Here,

24  Plaintiff has not alleged any facts to support her conclusory assertion that the Defendants "acted
    in concert to deprive Plaintiff of her [constitutional] rights." Compl. ¶ 59. The claim fails to rise

25  above mere speculation and accordingly must be dismissed.  See Bell Atlantic Corp. v.
    Twombly, 550 U.S. 544, 555 (2007).

26

27

28

33

1    Washington, D.C.  20530
     Telephone: (202) 305-8550
2    Facsimile: (202) 616-8460
     Alicia.N.Ellington@usdoj.gov
3    John.K.Theis@usdoj.gov

4    *Attorneys for Defendants the United States of
     America, ATF, U.S. Attorney General Eric Holder,*
5    *Acting ATF Director B. Todd Jones, and*
     *Assistant ATF Director Arthur Herbert,*
6    *in their official capacities (collectively, the United
     States)*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

1

## <u>PROOF OF SERVICE</u>

2

I, Alicia N. Ellington, Trial Attorney with the United States Department of Justice, certify

3
that the following individuals were served with **THE UNITED STATES' MOTION TO**
**DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** on this date by

4
the below identified method of service:

5

**<u>Electronic Case Filing</u>**:

6

Charles C. Rainey
7
Rainey Devine, Attorneys at Law
2245 W. Horizon Ridge Pkwy., Ste. 110
8
Henderson, NV 89052
9
chaz@raineydevine.com

10
*Attorney for Plaintiff*

11

12
Zachary Richter
Trial Attorney, Constitutional Torts Staff
13
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
14
Washington, D.C. 20044
15
Zachary.Richter@usdoj.gov

16
*Attorney for Defendants Eric Holder, B. Todd Jones,*
17
*and Arthur Herbert in their individual capacities*

18

19
DATED this 3rd day of February 2012.

20
                                         */s/ Alicia N. Ellington*
21
                                         ALICIA N. ELLINGTON
                                         Trial Attorney
22
                                         United States Department of Justice

23

24

25

26

27

28

1 | CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
2 | RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
3 | Henderson, Nevada 89052
Telephone:  (702) 425.5100
4 | Facsimile:  (888) 867.5734
chaz@raineydevine.com
5 | *Attorney for Plaintiff*

6 | **UNITED STATES DISTRICT COURT**

7 | **DISTRICT OF NEVADA**

8 |

9 | S. ROWAN WILSON, an individual,          Case No.  2:11-cv-1679-GMN-(PAL)

10 |                      Plaintiff,

11 | v.

12 | ERIC HOLDER, Attorney General of the United    **PLAINTIFF'S RESPONSE TO THE UNITED**
States, et al.,                                  **STATES' MOTION TO DISMISS OR, IN**
**THE  ALTERNATIVE  FOR  SUMMARY**
13 |                      Defendants.              **JUDGMENT, AND PLAINTIFF'S CROSS-**
**MOTION FOR SUMMARY JUDGMENT**

14 |

15 |         COMES NOW Plaintiff S. ROWAN WILSON (the "Plaintiff") by and through her counsel

16 | Charles C. Rainey of the THE LAW FIRM OF RAINEY DEVINE, and hereby submits her OPPOSITION TO

17 | THE  UNITED  STATES'S  MOTION  TO  DISMISS  OR,  IN  THE  ALTERNATIVE,  FOR  SUMMARY

18 | JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT. This Opposition and

19 | Cross-motion is made and based upon the Memorandum of Points and Authorities attached

20 | hereto, the pleadings and papers on file herein, and any arguments to be had at the hearing of

21 | this matter.

22 | DATED: March 9, 2012.

23 |                                        Respectfully submitted:
THE LAW FIRM OF RAINEY DEVINE

24 |                      By:    /s/ *Chaz Rainey*

25 |                                        Charles C. Rainey, Esq.
Nevada Bar No. 10723
26 |                                        8915 South Pecos Road, Ste. 20
Henderson, Nevada 89052
27 |                                        Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
chaz@raineydevine.com
28 |                                        *Attorney for Plaintiff*

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ......................................................................................... i

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

LEGAL STANDARDS ............................................................................................. 2

ARGUMENT ......................................................................................................... 3

I.    DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS. ........................ 3

    A.   Defendants Have Violated Plaintiff's Right to Procedural Due Process by Depriving her of a Fundamental Constitutional Right Without Any Notice, Hearing or Opportunity to Comment.................................................................. 3

    B.   Defendants Have Violated Plaintiff's Right to Substantive Due Process Because the Government's Interest is Outweighed by the Plaintiff's Right to Treat her Medical Condition in Accordance with her Doctor's Recommendation . ................................................................................... 5

II.   DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION BY TREATING HER DIFFERENTLY THAN SIMILARY SITUATED INDIVIDUALS.................... 8

III.  DEFENDANTS HAVE VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS. ......... 10

    A.   Plaintiff is Not an "Unlawful User" of or "Addicted To" a Controlled Substance Because Congress Did Not Intend to Include Medical Cannabis Patients in those Categories. .......................................................... 10

    B.   18 U.S.C. § 922(g)(3) is Unconstitutional. ..................................... 14

        1.   The Ninth Circuit's Opinion in *Dugan* is Wrong and Must be Overturned ....................................................................... 16

        2.   The Constitutionality of 18 U.S.C. § 922(g)(3) Must be Examined Under a Strict Scrutiny Standard Because it Seeks to Deprive Individuals of a Fundamental Constitutional Right ........................... 17

        3.   18 U.S.C. § 922(g)(3) is Unconstitutional, Under a Strict Scrutiny Standard, Because the Law is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals. .................................. 19

        4.   Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. § 922(g)(3) is Unconstitutional, Because the Expansive Scope of the Law, Covering More than Half of the U.S. Population, is Not Substantially Related to Any Important Government Interest. .......... 20

    C.   18 U.S.C. § 922(d)(3) is Similarly Unconstitutional Under Both a Strict Scrutiny or Intermediate Scrutiny Analysis.. ................................... 24

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-i-

IV.    PLAINTIFF'S MAIN PURPOSE IN THIS ACTION IS TO PROCURE DECLARATORY AND INJUNCTIVE RELIEF RATHER THAN MONETARY DAMAGES. ...........................25

CONCLUSION...............................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-ii-

**TABLE OF AUTHORITIES**

**U.S. SUPREME COURT CASES**                                                           PAGE

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................................ 6

*Armstrong v. Manzo*, 380 U.S. 545 (1965). ......................................................... 4

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986). ...................................... 2

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ................................................................ 8

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) ............ 8

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557(1980) ....... 21

*Clark v. Jeter*, 486 U.S. 456 (1988) ..................................................................... 18

*Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530 (1980). ..................... 21

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ...................................... 6

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) ........... 6,7

*Dickerson v. New Banner, Inc.,* 460 U.S. 103 (1983). ..................................... 19

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). .......................... *passim*

*Ex Parte Wall*, 107 U.S. 265 (1883). .................................................................... 3

*Goldberg v. Kelly*, 397 U.S. 254 (1970). .............................................................. 4

*Gonzalez v. Raich*, 545 U.S. 1 (2005) ................................................................. 12

*Graham v. Richardson Sailer v. Leger*, 403 U.S. 365 (1971) ......................... 18

*Grannis v. Ordean*, 234 U.S. 385 (1914). ........................................................... 4

*Griswold v. Connecticut*, 381 U.S. 479 (1965). ............................................ 5,19

*Huddleston v. United States*, 415 U.S. 814 (1974). ......................................... 11

*Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123 (1951). ...... 3,4

*Kramer v. Union Free School District*, 395 U. S. 621 (1969) ......................... 19

*Lawrence v. Texas*, 539 U.S. 558 (2003)............................................................ 5,6

*Margan v. United States*, 304 U.S. 1 (1938)....................................................... 4

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) ................................. 17, 20

*Meyer v. Nebraska*, 262 U.S. 390 (1923)............................................................. 5

*Mills v. Rogers*, 457 U.S. 291 (1982) .................................................................. 6

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   *Nordlinger v. Hahn*, 505 U.S. 1 (1992) ......................................................... 8

2   *Opp Cotton Mills v. Administrator*, 312 U.S. 126 (1941).  ...................................... 3, 4

3   *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).......................................................... 5

4   *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992).............................. 6, 18

5   *Poe v. Ullman*, 367 U.S. 497 (1961).......................................................... 6

6   *Robertson v. Baldwin*, 165 U. S. 275 (1897) ......................................................... 17, 18

7   *Roe v. Wade*, 410 U.S. 113 (1973).......................................................... 18, 19

8   *Schneider v. State*, 308 U.S. 147 (1939). ......................................................... 18

9   *Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960)............ 18

10   *United States v. Oakland Cannabis Buyer's Cooperative*, 532 U.S. 483 (2001)........................ 12

11   *United States v. Virginia*, 518 U.S. 515 (1996) ......................................................... 18

12   *Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950)......................................................... 4

13   *Youngberg v. Romeo*, 457 U.S. 307 (1982).......................................................... 6

14   **FEDERAL CIRCUIT COURT CASES**

15   *Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726 (9th Cir. 1994) ..................... 20, 21

16   *Compassion in Dying v. State of Washington*, 79 F.3d 790 (9th Cir. 1996). ........................ 6, 15

17   *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991)................................... 20, 21

18   *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037 (9th Cir. 2002)........................................ 8

19   *Jacobs v. Clark County School Dist.,* 526 F.3d 419 (9th Cir. 2008)................................. 21

20   *United States v. Dugan.*  657 F.3d 998 (9th Cir 2011). ..........................................*passim*

21   *United States v. Oakland Cannabis Buyer's Cooperative*, 190 F.3d 1109 (9th Cir. 1999)............ 12

22   *United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001) ........................................... 11, 12

23   *United States v. Seay*, 620 F.3d 919 (8th Cir 2010) ........................................... 17, 20

24   *United States. v Yancey*, 621 F.3d 681 (7th Cir 2010). ........................................ 17, 20

25   **FEDERAL DISTRICT COURT CASES**

26   *United States v. Williams*, 216 F.Supp.2d 568 (E.D. Va. 2002)................................. 12

27   **STATE CASES**

28   *Willis v. Winters*, 350 Or. 299, 253 P.3d 1058 (Or. 2011). ....................................... 13

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-iv-

**UNITED STATES CONSTITUTION**

U.S. Const. Amend. II ..................................................................................................*passim*

U.S. Const. Amend. V ..................................................................................................*passim*

U.S. Const. Amend. XIV ..............................................................................................*passim*

**STATUTES**

5 U.S.C § 702 ....................................................................................................................... 25

18 U.S.C. § 922(g)(3). ...............................................................................................*passim*

18 U.S.C. § 922(d)(3). ...............................................................................................*passim*

21 U.S.C. § 802(1)......................................................................................................*passim*

21 U.S.C. § 802(6)................................................................................................................ 14

21 USC § 812. ...................................................................................................................... 15

28 U.S.C. § 2412 .................................................................................................................. 25

**FEDERAL RULES AND REGULATIONS**

27 C.F.R. § 478.11. ........................................................................................................ 10, 16

21 C.F.R. §§ 1308.01 – 1308.49.......................................................................................... 15

Fed. R. Civ. Pro. 12(d) .......................................................................................................... 2

Fed. R. Civ. Pro. 12(b)(1). ..................................................................................................... 2

Fed. R. Civ. Pro. 12(b)(6) ...................................................................................................... 2

Fed. R. Civ. Pro. 56 ............................................................................................................... 2

**LEGISLATIVE MATERIAL**

132 Cong. Rec. H1689-03 (April 9, 1986) ...................................................................... 10, 11

Firearms Owners' Protection Act, H.R. Rep. No. 495, 99th Cong., 2d Sess, 1986....................... 11

Firearms Owners' Protection Act, Pub. L. 99-308 § 102(6)(B) (H.R. 4332, 99th Congress).......... 11

S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968) ...................................................... 11

U.S. Code Cong. & Admin. News 1968 p. 4410 .............................................................. 11

**MISCELLANEOUS**

16 Legal Medical Marijuana States and DC – Laws, Fees, and Possession Limits
(http://medicalmarijuana.procon.org/view.resource.php?resourceID=000881 ......................... 7

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

18 States with Pending Legislation to Legalize Medical Marijuana (as of Mar. 8, 2012)
(http://medicalmarijuana.procon.org/view.resource.php?resourceID=002481) ...................... 7

2010 United States Health Report, as compiled by the National Center for Health
Statistics (http://www.cdc.gov/nchs/data/hus/hus10.pdf) ....................................... 14

American Law Institute Model Penal Code, Commentary (1955)................................. 6

FBI Violent Crime Report http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-
u.s/2010/crime-in-the-u.s.-2010/violent-crime/violent-crime.................................. 20

"Medical" Marijuana – The Facts (www.justice.gov/dea/ongoing/marinol.html) ..................... 7

Memorandum of Deputy Attorney General David W. Ogden
(http://blogs.usdog.gov/archives/192).......................................................... 13

National Institute on Alcohol Abuse and Alcoholism No. 38 October 1997, available at
http://pubs.niaaa.nih.gov/publications/aa38.htm ................................................ 21

Order List: 565 U.S. (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf) ..... 13

Types of Illicit Drug Use in Lifetime, Past Year, and Past Month - Table 1.1A, compiled in
2010 by the Substance Abuse and Mental Health Services Administration
(http://www.samhsa.gov/data/NSDUH/2k10ResultsTables/Web/HTML/Sect1peTabs1to
46.htm#Tab1.1A) ................................................................... 14, 15, 23

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Granting the Defendant's current motion would undermine the fundamental individual liberties guaranteed by the United States Constitution and merely serve to bolster the ignorant misperceptions and prejudices held against medical cannabis patients.

The Defendants admit to deliberately seeking to deprive all medical cannabis patients of their constitutional right to keep and bear arms. The Defendants admit that BATFE issued a letter to each and every federally licensed firearms dealer, specifically banning the sale of firearms to any person possessing a state issued medical marijuana registry card.  This letter was issued without providing any notice to or consultation with medical marijuana patients. The Defendants provided no hearing to adjudicate whether the Plaintiff, or any other medical cannabis patient, was, in fact, an "unlawful user" of a controlled substance.  The Defendants failed to provide any meaningful opportunity for the Plaintiff or any other medical cannabis patent to be heard on the matter.  Instead, the Government simply denied the Plaintiff her constitutional rights.

The Government has taken the untenable position that even within a State like Nevada, where a patient's right to grow and use medical cannabis is guaranteed by the State's Constitution, any law-abiding holder of a state-issued medical marijuana registry card is automatically prohibited from exercising her Second Amendment rights.

The Defendants violated the Plaintiffs right to procedural due process, depriving her of her constitutional rights without any notice, hearing or opportunity to comment. The Defendants violated the Plaintiff's right to equal protection, by treating her and others with certain medical ailments differently than similarly situated persons. The Defendant violated the Plaintiff's Second Amendment rights by wrongfully categorizing her as an "unlawful user" of a controlled substance and refusing her the right to purchase or possess a firearm. Meanwhile, the very law that the Defendants seek to promulgate is itself an unconstitutional abuse of individual rights.

The facts of this case are not in dispute; and the Plaintiff is entitled to judgment as a matter of law.   Therefore, the Plaintiff respectfully requests that this Court DENY the

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-1-

1  Defendants' motion to dismiss, DENY the Defendant's motion for summary judgment, and

2  properly GRANT summary judgment for the Plaintiff.

3  **STATEMENT OF FACTS**

4      There are no material facts in dispute in this matter. The Defendants' Motion does not

5  dispute any of the factual allegations contained in Plaintiff's Complaint. Instead, the

6  Defendants' Motion only argues the legal conclusions reached in Plaintiff's Complaint. A

7  statement of undisputed facts is filed concurrently herewith.

8  **LEGAL STANDARDS**

9      The Defendants' Motion purports to be a Motion to Dismiss made pursuant to Federal

10  Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6) and, in the alternative, a Motion for Summary

11  Judgment made pursuant to Federal Rule of Civil Procedure 56. However, Defendants' Motion

12  does not contain a statement of the legal standards applicable to either Rule 12(b) motions to

13  dismiss or Rule 56 motions for summary judgment.

14      Rules 12(b)(1) and 12(b)(6) provide, respectively, that defenses of lack of subject matter

15  jurisdiction and failure to state a claim upon which relief can be granted can be raised by

16  motion before a responsive pleading is filed. Fed. R. Civ. Pro. 12(b). Generally, in considering a

17  Rule 12(b)(6) motion to dismiss, the Court may only look to the face of the plaintiff's complaint

18  and must accept all factual allegations as true and draw all reasonable inferences in favor of

19  plaintiff. "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to

20  and not excluded by the court, the motion must be treated as one for summary judgment

21  under Rule 56." Fed. R. Civ. Pro. 12(d).

22      Rule 56 provides that "[a] party may move for summary judgment, identifying each

23  claim or defense . . . on which summary judgment is sought." Fed. R. Civ. Pro. 56(a). Rule 56

24  further provides that "[t]he court shall grant summary judgment if the movant shows that there

25  is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

26  of law." *Id*. Material facts are only those facts "that might affect the outcome of the suit under

27

28  [1] The only claim to which Rule 12(b)(1) applies is Plaintiff's conspiracy claim. As will be discussed subsequently,
Plaintiff will agree to the dismissal of her conspiracy claim.

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-2-

1   the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247, 106 S.Ct. 2505 (1986).

2   Disputes as to non-material facts and disputes as to legal questions cannot preclude summary

3   judgment. *See id*.

4        Here, the Defendants' Motion should be considered as a motion for summary judgment

5   rather than a motion to dismiss because the Defendants rely on matters outside of the

6   Complaint throughout the Motion. These extrinsic matters cannot be separated from the

7   Motion so as to allow the Court to consider the Motion under Rule 12(b). Furthermore, the

8   Defendants Motion does not even attempt to argue that Plaintiff's Complaint is deficient on its

9   face; the Motion only argues that Defendants are entitled to judgment as a matter of law based

10  on previous court decisions. As such, the Defendants' Motion is, for all intents and purposes, a

11  motion for summary judgment and not Rule 12(b)(6).

12                                    **ARGUMENT**

13  I.      **DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS.**

14        The Fifth Amendment of the United States Constitution provides, in relevant part

15  that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."

16  U.S. Const. Amend. V. Although the Defendants' Motion only addresses the Plaintiff's Equal

17  Protection claims, the Plaintiff's Complaint also sets forth both procedural and substantive due

18  process claims pursuant to the Fifth Amendment.

19        **A.  Defendants Have Violated Plaintiff's Right to Procedural Due Process by
                Depriving her of a Fundamental Constitutional Right Without Any Notice,**
20              **Hearing or Opportunity to Comment.**

21        The United States Constitution requires that whenever a governmental body acts to

22  injure an individual, that act must be consonant with due process of law. The minimum

23  procedural requirements necessary to satisfy due process depend upon the circumstances and

24  the interests of the parties involved. "In all cases, that kind of procedure is due process of law

25  which is suitable and proper to the nature of the case, and sanctioned by the established

26  customs and usages of the courts." *Ex Parte Wall*, 107 U.S. 265, 289 (1883).[2]  With respect to

27  _____

28  [2] Justice Frankfurter's concurring opinion in *Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123, 163
    (1951), further elaborated upon this understanding as follows:

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-3-

1    action taken by administrative agencies, the Supreme Court has held that notice must be given
2    and a hearing must be held before a final order becomes effective. *Opp Cotton Mills v.*
3    *Administrator*, 312 U.S. 126, 152, 153 (1941).

4           For example, the Supreme Court has held that "due process requires an adequate
5    hearing before termination of welfare benefits." *Goldberg v. Kelly*, 397 U.S. 254, 261 (1970).
6    "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v.*
7    *Ordean*, 234 U.S. 385, 394 (1914). When the Constitution requires a hearing, the hearing must
8    be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552
9    (1965). Generally, these provisions require that the hearing be held before a tribunal which
10   meets currently prevailing standards of impartiality and a party must be given an opportunity
11   not only to present evidence, but also to know the claims of the opposing party and to meet
12   them. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950); *see also Goldberg*, 397 U.S. at 267-
13   268. Furthermore, those who are brought into contest with the government in a quasi-judicial
14   proceeding aimed at control of their activities are entitled to be fairly advised of what the
15   government proposes and to be heard upon the proposal before the final command is issued.
16   *Margan v. United States*, 304 U.S. 1, 18-19 (1938).

17          Here, the Defendants have deprived the Plaintiff of a fundamental right without any
18   notice or opportunity to be heard. The Defendants have adopted and are enforcing a policy,
19   through their Open Letter, whereby a distinct group of individuals are automatically precluded
20   from exercising their fundamental rights under the U.S. Constitution based solely upon an FFLs
21   reasonable belief that these persons are exercising their State granted rights. As will be
22   discussed in more detail below, the Supreme Court recently held that the Second Amendment
23   includes a fundamental individual right to possess a handgun in one's home for self-defense.
24   *See District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). The Defendants have conclusively

25

---

26           "The precise nature of the interest that has been adversely affected, the manner in
             which this was done, the reasons for doing it, the available alternatives to the procedure
27           that was followed, the protection implicit in the office of the functionary whose conduct
             is challenged, the balance of hurt complained of and good accomplished - these are
28           some of the considerations that must enter into the judicial judgment."

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-4-

1  determined that the mere fact that an FFL is aware a "potential transferee is in possession of a

2  card authorizing the possession and use of marijuana under State law, then [the FFL has]

3  'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and

4  **must** deny the transfer of firearms or ammunition to that person. *Open Letter*.

5         However, as will be discussed in more detail subsequently, medical marijuana users

6  do not fit the intended definition of "unlawful users." Here, the Plaintiff obtained a valid state

7  medical marijuana registry card in May of 2011, approximately four months before the

8  Defendants issued their Open Letter. Prior to the issuance of the Open Letter, Plaintiff was not

9  given any opportunity to comment on the policy set forth in the Open Letter. Additionally,

10 Defendants have not even provided a post-termination procedure whereby persons who hold

11 medical marijuana registry cards can argue that they are not "unlawful users of or addicted to"

12 a controlled substance. While the exact number of medical marijuana users is uncertain, it is

13 estimated that roughly 600,000 persons in the U.S. are using medical marijuana in the nine

14 states where registration is mandatory. By virtue of their issuance and enforcement of the

15 policy set forth in the Open Letter, the Defendants have willfully deprived a large class of U.S.

16 citizens, including the Plaintiff, of their fundamental rights in direct violation of the procedural

17 requirements of the Due Process Clause.

18         **B.  Defendants Have Violated Plaintiff's Right to Substantive Due Process Because**
           **the Government's Interest is Outweighed by the Plaintiff's Right to Treat her**
19         **Medical Condition in Accordance with her Doctor's Recommendation.**

20         The right to substantive due process concerns the right to "liberty" under the Fifth and

21 Fourteenth Amendments. Essentially, the question of substantive due process asks whether a

22 person is free to engage in certain conduct in the exercise of their liberty under the Due Process

23 Clause. *See Lawrence v. Texas*, 539 U.S. 558, 564 (2003). The broad substantive reach of liberty

24 under the Due Process Clause has been noted in a number of U.S. Supreme Court Cases. *Id*.; *see*

25 *also Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923);

26 and *Griswold v. Connecticut*, 381 U.S. 479 (1965). "[T]he Due Process Clause has a substantive

27 dimension of fundamental significance in defining the rights of the person." *Lawrence*, 539 U.S.

28 at 565. "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . is not a series

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-5-

of isolated points. . . . It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Albright v. Oliver*, 510 U.S. 266, 287 (1994) (concurring opinion), *quoting Poe v. Ullman*, 367 U.S. 497, 543 (1961) (internal quotations omitted).

The U.S. Supreme Court has found that:

> "[Matters] involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."

*Lawrence*, 539 U.S. at 574, *quoting Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). "History and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry." *Id.* at 572, *quoting County of Sacramento v. Lewis*, 523 U.S. 833, 857 (1998) (Kennedy, J., concurring). For example, in 1955 the American Law Institute's Model Penal Code made it clear its position that criminal penalties should not be imposed on consensual sexual relations conducted in private. *Id.* The ALI based its decision on the grounds that: "(1) [t]he prohibitions undermined respect for the law by penalizing conduct many people engaged in; (2) the statutes regulated private conduct not harmful to others; and (3) the laws were arbitrarily enforced and thus invited the danger of blackmail." *Id. quoting* ALI, Model Penal Code, Commentary 277-280 (Tent. Draft No. 4, 1955).

"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance the liberty of the individual and the demands of organized society." *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982) *see also Mills v. Rogers*, 457 U.S. 291, 299, (1982). "[T]he ultimate question is whether sufficient justification exists for the intrusion by the government into the realm of a person's 'liberty, dignity, and freedom.'" *Compassion in Dying v. State of Washington*, 79 F.3d 790, 799 (9th Cir. 1996), *quoting Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 287, 289, 110 S.Ct. 2841, 2856, 2857 (1990) (O'Connor, J., concurring). "If the balance favors the state, then the given statute--whether it regulates the exercise of a due process liberty interest or prohibits that exercise to some

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-6-

degree--is constitutional. If the balance favors the individual, then the statute--whatever its justifications--violates the individual's due process liberty rights and must be declared unconstitutional, either on its face or as applied." *Id*.

Here, the Plaintiff has a substantive right to treat her medical condition in the manner recommended by her physician and which she and her physician agree is the beat course of treatment for her. The right to choose a course of medical treatment is one of the most intimate and personal choices a person can make. Furthermore, the ability to choose a course of medical treatment is central to the fundamental rights of personal dignity and autonomy. Although the Defendants will argue that cannabis has no accepted medical value and thus is not a treatment option available to Plaintiff, a majority of states have adopted or are in the process of adopting legislation which recognizes the medicinal values of cannabis and legalizes its use for the treatment of various health conditions. Currently, sixteen (16) states and the District of Columbia have legalized the use of medical cannabis.[3] As of February 13, 2012, an additional eighteen (18) states have pending legislation that would legalize the use of medicinal cannabis.[4] Despite the Defendants' refusal to recognize the medical benefits of cannabis, the growing trend indicates that physicians believe cannabis has medicinal value and the public believes medical cannabis is a viable course of treatment. Even the Drug Enforcement Agency has admitted that the active ingredient in marijuana, THC, is valuable for relieving nausea and vomiting and providing pain management.[5] Marinol, a pharmaceutical derived from cannabis, is available by prescription in the U.S. *Id*. The federal government even assisted in the research on Marinol. Marinol, which has been available since 1985, was originally classified as a Schedule II substance but was moved to Schedule III in 1999. Based upon the FDA and DEA's approval of the use of Marinol, the argument that cannabis has no medical use is without merit. Pursuant to the substantive liberty rights imparted by the Due Process Clause, the Defendants cannot deny the Plaintiff her right to choose a viable course of treatment recommended by her

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

---

[3] *See* 16 Legal Medical Marijuana States and DC – Laws, Fees, and Possession Limits, available at http://medicalmarijuana.procon.org/view.resource.php?resourceID=000881.
[4] *See* 18 States with Pending Legislation to Legalize Medical Marijuana (as of Mar. 8, 2012), available at http://medicalmarijuana.procon.org/view.resource.php?resourceID=002481.
[5] *See* "Medical" Marijuana – The Facts, available at www.justice.gov/dea/ongoing/marinol.html.

-7-

physician.

Additionally, the same factors that militated against the criminalization private consensual sexual conduct of adults support the understanding that a person's fundamental rights should not be deprived based solely upon her use of a medical treatment prescribed by her physician. The policies adopted and implemented by the Defendants, as set forth in their Open Letter undermined respect for the law by penalizing conduct many people engage in. As noted above, it is estimated that roughly 600,000 were using medical marijuana as of January 2009. The policies also regulate private conduct not harmful to others. It does not appear that there is any scientific research indicating that persons using medical marijuana are any more likely that non-users to commit any crimes, let alone gun crimes. Indeed, Defendants have cited to no evidence indicating that holders of medical marijuana registry cards are likely to commit the types of crimes the Gun Control Act seeks to prevent or any other crimes for that matter. The Defendants policies are also arbitrarily enforced and thus invited the danger of blackmail, among other things. An organized society does not require that all holders of medical marijuana registry cards be prohibited from purchasing firearms and ammunition. The Defendants have failed to show that sufficient justification exists for the intrusion by the government into the realm of Plaintiff's liberty, dignity, and freedom to follow a course of medical treatment recommended by her physician. As such, the Defendants policies violate the Plaintiff's substantive liberty interests granted by the Due Process Clause of the Fifth Amendment.

## II.   DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION BY TREATING HER DIFFERENTLY THAN SIMILARLY SITUATED INDIVIDUALS.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the law." This provision of the Fourteenth Amendment has been held by the United States Supreme Court to apply to the federal government by virtue of the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693 (1954). The equal protection component of the Due Process Clause "is essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-8-

alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.") It does not appear that any federal appellate court has yet determined whether users of drugs which are lawful pursuant to state law but unlawful pursuant to federal law are similarly situated to person who use drugs other than those prohibited by the federal law.

Here, Defendants have violated Plaintiff's equal protection rights by treating Plaintiff differently from persons to whom she is similarly situated. The Plaintiff is similarly situated to other law-abiding citizens who are attempting to follow a course of treatment prescribed by their doctors for a chronic medical condition. Defendants attempt to argue that the class of individuals holding state-issued medical marijuana registry cards is not similarly situated to other law abiding citizens because the government may infer that holders of medical marijuana registry cards are "unlawful users of or addicted to" illegal substances. However, persons who obtain a valid state registry card by obtaining a physician's recommendation and use medicinal marijuana solely as recommended by the physician and within the limitations of state law are fundamentally different that other unlawful drug users. Additionally, medical marijuana registry cardholders should be considered as similarly situated to users of the FDA-approved drug Marinol, which contains the same active ingredient as marijuana. It does not appear that the Defendants have issued any letters to FFLs indicating that an awareness that a person is taking Marinol is grounds for the denial of the purchase of a firearm or ammunition.

Furthermore, even if medical marijuana registry cardholders are not considered similarly situated to non-registry cardholders because of presumption that registry cardholders are violating federal law, it is undeniable that registry cardholders are similarly situated to persons using medical marijuana in states where registry is not required. Several states, such as California, have provided for the legal use of medicinal marijuana without the necessity of registering with the state or obtaining a state-issued registry identification card. The Defendants' policy set forth in the Open Letter thus discriminates against persons who live in a state that requires a registry identification card because any knowledge of the person's

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-9-

1  possession of that card can be used as conclusive evidence to deny their attempt to purchase

2  firearms and/or ammunition. Meanwhile, persons using medical marijuana in a state that does

3  not issue registry identification cards will avoid the policies set forth in the Open Letter simply

4  because their state does not issue registry identification cards. As such, the policies adopted

5  and promulgated by the Defendants, as set forth in the Open Letter, violate the Plaintiff's right

6  to equal protection.

7  **III.   DEFENDANTS HAVE VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS.**

8          **A.   Plaintiff is Not an "Unlawful User" of or "Addicted To" a Controlled Substance
              Because Congress Did Not Intend to Include Medical Cannabis Patients in those**

9          **Categories.**

10         Persons holding validly issued state registry cards do not fall within the meaning of

11  "unlawful user of or addicted to" a controlled substance as that phrase was understood by

12  Congress. The Controlled Substances Act, 21 U.S.C. § 802, defines the term "addict" as "any

13  individual who habitually uses any narcotic drug so as to endanger the public morals, health,

14  safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the

15  power of self-control with reference to his addiction." 21 U.S.C. § 802(1). However, the

16  Controlled Substances Act does not define the term "unlawful user." *See* 21 U.S.C. § 802. The

17  ATF has adopted a regulation, codified at 27 C.F.R. § 478.11, which defines the term "unlawful

18  user" and which also attempts to expand the definition of "addict." However, the text and

19  context of the statute itself are insufficient to provide the necessary explanation for the term.

20  As such, it is appropriate to review the legislative history to discern the intent of the legislature.

21         Nothing in the legislative history of the Controlled Substances Act specifically addresses

22  whether medical cannabis patients were intended to be considered "unlawful users." However,

23  the prevention of crime theme that is prevalent in the legislative history of 18 U.S.C. § 922(g)

24  indicates that Congress did not intend for law-abiding medical cannabis patients to be included

25  in the definition of "unlawful user." Congress enacted the Gun Control Act in 1968 with the

26  explicit purpose of "provid[ing] support to Federal, State, and local law enforcement officials in

27  their fight against crime and violence." The Gun Control Act, Pub.L. 90-618, Sec. 101 (1968).

28  Specifically, the Act and its subsequent amendments were aimed at combating gun crimes and

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-10-

narcotics trafficking. To achieve this end, Congress intended to prevent drug addicts and other criminals from having access to firearms. *See* e.g. 132 Cong. Rec. H1689-03 (April 9, 1986) ("What the bill will do is make it a little harder for drug addicts, muggers, deranged individuals, and other criminal elements to procure handguns."). Congress has also made it very clear that the purpose of this legislation is not to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms. The Gun Control Act, Pub.L. 90-618, Sec. 101 (1968). As such, an interpretation of 18 U.S.C. § 922(d) and (g) that extends the firearm prohibition to lawful medical cannabis use violates Congressional intent.

"The principal purpose of the federal gun control legislation . . . was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston v. United States*, 415 U.S. 814, 824 (1974), quoting S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968). U.S. Code Cong. & Admin. News 1968, p. 4410. Prior to amendment in 1986, subsection (g)(3) against possessing firearms or ammunition applied to a person "who is an unlawful user of or addicted to marijuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 473(a) of the Internal Revenue Code of 1954." In 1986, the 99th Congress emended the language of subsection (g)(3) as part of the Firearms Owners' Protection Act, Pub.L. 99-308, § 102(6)(B) (H.R. 4332, 99th Congress), removing the provision's direct reference to "marijuana" and made subsection (g)(3) applicable to a person "who is an unlawful user of or addicted to a controlled substance as defined in the Controlled Substances Act." The House Judiciary Committee Report details the purpose of this change. Firearms Owners' Protection Act, H.R. Rep. No. 495, 99th Cong., 2nd Sess, 1986 (Mar. 14, 1986). Congress "modernized" 18 U.S.C. § 922(g) by closing loopholes for users of new drugs that had become prevalent in the 1980s.

Federal courts have not yet ruled on whether a medical marijuana patient may possess a handgun. However, the Ninth Circuit has held that in order to sustain a conviction under 18 U.S.C. § 922(g)(3), the government must prove "that the defendant took drugs with regularity,

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-11-

over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 812-813 (9th Cir. 2001). In *Purdy*, the defendant had used cocaine, non-medicinal marijuana, and methamphetamines over the course of four years and contemporaneously with his possession of a firearm. *Id*. at 810-11.  In *United States v. Williams*, 216 F.Supp.2d 568 (E.D. Va. 2002), the defendant was found to have possessed a firearm after smoking half of a marijuana cigarette, which was also in his possession. The court concluded that Williams was not guilty of violating 18 U.S.C. 922(g) even though he had obviously used a controlled substance at the same time that he had possessed a firearm because the government must prove that a defendant has a pattern of use, continuous use, or prolonged use of a controlled substance while in possession of a firearm. *Id*. at 576. The  court concluded that the government must prove that, while in possession of a firearm, the defendant used narcotics so frequently that his use was an addiction and in such quantities as to lose the power of self-control and pose a danger to the public. *Id*. at 573.

In *Gonzalez v. Raich*, the United States Supreme Court held that application of the Controlled Substances Act's provisions criminalizing the manufacture, distribution, or possession of marijuana to intrastate growers and users of marijuana for medical purposes does not violate the Commerce Clause. 545 U.S. 1, 125 S.Ct. 2195 (2005). As such, *Raich* merely ruled on the narrow issue of whether the federal government had the power to regulate intrastate activity under the Commerce Clause. In *United States v. Oakland Cannabis Buyer's Cooperative*, the Ninth Circuit reversed an injunction of distribution of medical cannabis under the Controlled Substances Act holding that the distributors had a medical necessity defense. 190 F.3d 1109 (1999). Although the Supreme Court ultimately reversed the Ninth Circuit, the concurring opinion points out that "[m]ost notably, whether the defense might be available to a seriously ill patient for whom there is no alternative means of avoiding starvation or extraordinary suffering is a difficult issue that is not presented here." *United States v. Oakland Cannabis Buyer's Cooperative*, 532 U.S. 483, 501 (2001).

Furthermore, the Federal Government has conceded that persons complying with state medical marijuana laws are not "unlawful users" and Defendants are estopped from asserting

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1    otherwise. On October 19, 2009, United States Deputy Attorney General David W. Ogden issued

2    a memorandum to all United States attorneys in those Federal Districts where the States have

3    enacted medical marijuana laws entitled "Investigations and Prosecutions in States Authorizing

4    the Medical Use of Marijuana."[6] The Ogden memorandum, which was specifically issued to

5    Defendant B. Todd Jones, states in relevant part that the attorneys "should not focus federal

6    resources in [their] States on individuals whose actions are in clear and unambiguous

7    compliance with existing state laws providing for the medical use of marijuana." Subsequently,

8    then Attorney General Ashcroft relied upon the position set forth in the Ogden memorandum

9    to reach a stipulation and dismissal in a case filed by the County of Santa Cruz, California.

10   Having asserted that the federal government would no longer interfere with medical cannabis

11   patients who are in compliance with state medical marijuana laws in that case, the federal

12   government would be estopped from claiming otherwise here.

13        Additionally, the United States Supreme Court recently denied certiorari to the Oregon

14   case of *Willis v. Winters*, 350 Or. 299, 253 P.3d 1058 (Or. 2011). *See* Order List: 565 U.S.[7]. In

15   *Willis*, the Oregon Supreme Court found that Oregon sheriffs could not deny concealed

16   handgun permits to medical marijuana users despite 18 U.S.C. § 922. The Supreme Court's

17   decision not to review this decision indicates that the Oregon court's decision and reasoning

18   should stand.

19        The overwhelming majority of the evidence indicates that Plaintiff, as a holder of a

20   medical marijuana registry card issued by her state, is not the type of person intended to be

21   precluded from obtaining a firearm under 18 U.S.C. § 922(g)(3). Plaintiff is not a dangerous

22   criminal, but rather a woman who has suffered from chronic and debilitating pain for the last

23   thirty (30) years. Plaintiff cannot automatically be presumed to be an "unlawful user of or

24   addicted to" a controlled substance. The mere fact that the Plaintiff possesses a state issued

25   marijuana registry card issued by her state does not meet the government's burden of proof for

26   a criminal conviction yet alone a deprivation of her fundamental rights. Even if the Defendants

28   [6] Available at http://blogs.usdoj.gov/blog/archives/192.
     [7] Available at (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf)

-13-

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  met the required level of prove and showed that Plaintiff took illegal drugs with regularity, over

2  an extended period of time, and contemporaneously with her purchase or possession of a

3  firearm, the Defendants should be estopped from asserting their position that her registry card

4  deems her an "unlawful user of or addicted to marijuana" based upon the federal government's

5  affirmation of the Ogden memorandum in a previous case. As such, Plaintiff should not be

6  considered an unlawful user of or addicted to a controlled substance.

7      **B.   18 U.S.C. § 922(g)(3) is Unconstitutional.**

8      18 USC § 922(g)(3) is an exceptionally over-broad statute that, if actually enforced to its

9  full effect, would preclude roughly half of adult-aged US citizens (more than one hundred fifty

10 million people) from possessing, purchasing, transporting or even receiving any firearm or

11 ammunition.[8]  In effect, the law, if fully enforced, would deprive more than half of our adult-

12 aged citizens of their fundamental constitutional right to keep and bear arms.   The

13 extraordinary breadth of this law renders it unenforceable and wholly unconstitutional.

14     18 USC § 922(g)(3) reads as follows:

15         (g) It shall be unlawful for any person—
           [...]
16              (3) who is an unlawful user of or addicted to any
                controlled substance (as defined in section 102 of the
17              Controlled Substances Act (21 USC § 802));
           [...]
18         to ship or transport in interstate or foreign commerce, or possess
           in or affecting commerce, any firearm or ammunition; or to
19         receive any firearm or ammunition which has been shipped or
           transported in interstate or foreign commerce.

20     Meanwhile, 21 USC § 802(6), the law defining "controlled substances," reads as follows:

21

22         The term "controlled substance" means a drug or other
           substance, or immediate precursor, included in schedule I, II, III,
23         IV, or V of part B of this subchapter. The term does not include
           distilled spirits, wine, malt beverages, or tobacco, as those terms

24

---

25 [8] *See* TABLE 1.1A – TYPES OF ILLICIT DRUG USE IN LIFETIME, PAST YEAR, AND PAST MONTH, compiled in 2010 by the Substance
   Abuse and Mental Health Services Administration, available at:
26 http://www.samhsa.gov/data/NSDUH/2k10ResultsTables/Web/HTML/Sect1peTabs1to46.htm#Tab1.1A
   *See* (states that 38,806,000 Americans had taken illicit drugs within the last twelve months and 119,508,000
27 Americans had taken illicit drugs within the last twelve months); *see also* 2010 UNITED STATES HEALTH REPORT, as
   compiled by the National Center for Health Statistics, available at http://www.cdc.gov/nchs/data/hus/hus10.pdf
28 (reporting that nearly half of all persons within the United States have taken prescription drugs within the last 30
   days).

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-14-

are defined or used in subtitle E of the Internal Revenue Code of
1986.

Accordingly, under 18 USC § 922(g)(3), any person that is an "unlawful user of or addicted to" any drug within Schedules I, II, III, IV or V is prohibited from exercising his/her Second Amendment rights. Those schedules encompass not only illegal narcotics, but also ANY prescription drug and even some over the counter medicines, such as Robitussin. *See* 21 USC § 812; *see also* 21 CFR §§ 1308.01 – 1308.49.

The phrase "unlawful user of or addicted to" is disturbingly broad and fails to state with reasonable particularity the specific group of persons targeted.  If carried to its extreme, the phrase could include roughly half of the US population.  Even if narrowly read, the category of person includes, at the very least, thirty-eight million people,[9] more than twelve percent of the total United States population.

Moreover, the statutory definition of "addict," already broadly drawn under 21 USC § 802(1), is stretched to its absolute limits through ATF regulation.  Under 21 USC § 802(1), the term "addict" is defined as any individual who either (1) habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or (2) who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction. Notice that the second category of "addict" is actually quite broad and could even include persons addicted to lawfully prescribed medicines.  For instance, a person taking Ritalin to treat his/her Attention Deficit Disorder would likely fall within this category.  Ritalin is a physically addictive substance that may be prescribed for daily ongoing use.[10]  If taken for a prolonged period of time, the physical addiction to Ritalin could be such that the person taking the drug is no longer able to control the addiction, thereby falling within the second category of addict, defined under 21 USC § 802(1).  As evidenced by the Ritalin example above, this definition of "addict" can be very broadly interpreted to include many tens of millions of Americans who lawfully take prescribed pharmaceuticals.

---

[9] *Id.*

[10] Methylphenidate, the systematic name for Ritalin, is a Schedule II controlled substance, due to its high likelihood for addictive potential. *See* 21 CFR §§ 1308; Data reported by the DEA, and collected by IMS Health (a national prescription auditing firm) shows that as of 2000, doctors in the United States were writing approximately 11 million prescriptions for Ritalin annually.

Rainey • Devine
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-15-

Surprisingly, the ATF's regulations employ this much broader definition of addiction from§ 802(1), then go even further to deliberately push the interpretation of the definition as far as it can go.  Under 27 C.F.R. § 478.11, the term "[u]nlawful user of or addicted to any controlled substance" is defined as follows:

> A person who uses a controlled substance and has lost the power of self-control with reference to the use of the controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time […].

In the following pages, the Plaintiff will provide the analysis necessary to demonstrate that the expansive scope of 18 U.S.C. § 922(g)(3) renders it unenforceable and unconstitutional. First, the Plaintiff will highlight the deeply flawed aspects of *United States v. Dugan*, the case principally relied on by the Defendants.  Second, the Plaintiff will show how existing Supreme Court case law requires that § 922(g)(3) be analyzed under a strict scrutiny analysis.  Then, in applying that strict scrutiny analysis, the Plaintiff will demonstrate how the subject law falls far short of being constitutional.    Finally, the Plaintiff will demonstrate how, even if this Court were to apply the lesser intermediate scrutiny, § 922(g)(3) still fails to pass constitutional muster.

### 1.   The Ninth Circuit's Opinion in *Dugan* is Wrong and Must be Overturned.

In seeking to validate the constitutionality of § 922(g)(3), the Defendants rely heavily, almost exclusively, upon the Ninth Circuit case *United States v. Dugan*.  657 F.3d 998 (9th Cir 2011). However, *Dugan* is a deeply flawed opinion that must be overturned.  Consisting of just four short paragraphs, *Dugan* makes the sweeping assertion that § 922(g)(3) is constitutional, without even bothering to examine the law under a strict scrutiny, intermediate scrutiny or even rational basis analysis. Indeed, *Dugan* provides no substantive analysis of the law's

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

constitutionality and appears to base its entire decision upon two similarly brief and similarly flawed opinions from sister circuit courts.[11]

Meanwhile, the facts of *Dugan* are so prejudicial that they fail to provide a proper framework for analyzing the constitutionality of § 922(g)(3).  In *Dugan,* the party challenging the law's constitutionality, Kevin Dugan, was arrested during a domestic violence complaint, when officers discovered an illegal marijuana "operation" in Mr. Dugan's home.  Mr. Dugan was the very sort of person that § 922(g)(3) was designed for—a dangerous criminal.  Based on the facts represented in the *Dugan* opinion, Kevin Dugan was possibly a wife beating, drug dealing, drug using, arms dealer.  As the old saying goes: "Bad facts make bad law."

Indeed, § 922(g)(3) doesn't just affect the rights of the Kevin Dugans of this world; this law threatens the fundamental constitutional rights of nearly half of the U.S. population.[12] Even though § 922(g)(3) is intended to keep guns out of the hands of a small subset of the population, the law radically over-reaches such that it poses a substantial threat to any person who is a chronic user of any drug, from marijuana to Robitussin, a group of people that constitute anywhere from twelve percent (12%) to fifty percent (50%) of the total U.S. population. For the foregoing reasons, the *Dugan* Opinion is simply wrong and MUST be overturned.[13]

### 2. The Constitutionality of 18 U.S.C. § 922(g)(3) Must be Examined Under a Strict Scrutiny Standard Because it Seeks to Deprive Individuals of a Fundamental Constitutional Right.

In *DC v. Heller*, the Supreme Court finally made clear that the Second Amendment is a "fundamental" individual right. *District of Columbia v. Heller,* 554 US 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008).[14]  Recently considering the applicability of the Second Amendment to the States, the Supreme Court reiterated this notion in *McDonald v. City of Chicago*, where it stated

---

[11] *Dugan* cites to only two cases in support of its proposition that 922(g)(3) is constitutional, *U.S v. Seay*, 620 F.3d 919 (8th Cir 2010), and *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).

[12] *Supra* note 8.

[13] The Plaintiff acknowledges and understands that, in accordance with the principle of *stare decisis*, this Court is somewhat limited in its ability to overturn *Dugan*.  Nevertheless, in the event of any appeal of this matter, the Plaintiff will be seeking to overturn the *Dugan* decision.

[14] Specifically, the Court stated that "By the time of the founding [of the United States], the right to have arms had become fundamental for English subjects" then further states that the Second Amendment was "a codified right 'inherited from our English ancestors,'" 128 S. Ct. 2783  (*quoting  Robertson v. Baldwin*, 165 U. S. 275, 281 (1897)).

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-17-

1 "[i]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to

2 keep and bear arms among those <u>fundamental</u> rights necessary to our system of ordered

3 liberty." 130 S.Ct. 3020, 3042 (2010) (*emphasis added*).

4     Although the *Heller* court failed to state the specific standard of analysis, prior Court

5 precedent makes clear that where the government seeks to deprive individuals of a

6 fundamental right, as is the case with § 922 (g)(3), the constitutionality of the law must be

7 examined under a strict scrutiny analysis, ensuring that the law is narrowly tailored to

8 effectuate a compelling government interest and that no less restrictive means exists. *See e.g.,*

9 *Graham v. Richardson Sailer v. Leger*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Roe v.*

10 *Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Southeastern*

11 *Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Clark v. Jeter*, 486

12 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *United States v. Virginia*, 518 U.S. 515, 116

13 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (*Scalia dissenting* notes that "strict scrutiny will be applied to

14 the deprivation of whatever sort of right we consider 'fundamental.'"). "Even though the

15 governmental purpose [may] be legitimate and substantial, that purpose cannot be pursued by

16 means that broadly stifle fundamental personal liberties when the end can be more narrowly

17 achieved." *Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

18 "Where legislative abridgment of 'fundamental personal rights and liberties' is asserted, 'the

19 courts should be astute to examine the effect of the challenged legislation." *Id.* (*quoting*

20 *Schneider v. State*, 308 U.S. 147, 161, 60 S.Ct. 146, 151 (1939). "Mere legislative preferences or

21 beliefs respecting matters of public convenience may well support regulation directed at other

22 personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital

23 to the maintenance of democratic institutions.'" *Schneider*, 308 U.S. at 161.

24     Here, 18 USC § 922(g)(3) seeks to deprive individuals of their Second Amendment right

25 to keep and bear arms. This federal criminal statute renders it a crime for any person that is an

26 "unlawful user of or addicted to" a "controlled substance" to possess a firearm.  It is a direct

27 attack on a fundamental constitutional right.  As such, the law's constitutionality must be

28 examined under a strict scrutiny standard.

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-18-

**3. 18 U.S.C. § 922(g)(3) is Unconstitutional, Under a Strict Scrutiny Standard, Because the Law is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals.**

18 USC § 922(g)(3) plainly fails to survive a strict scrutiny analysis.  To survive a strict scrutiny analysis, the law must:

(1) further a compelling government interest;

(2) be narrowly tailored to achieve that compelling government interest; and

(3) be the least restrictive means for achieving that compelling government interest.

*See e.g. Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 395 U. S. 627 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 485 (1965).

Section 922(d)(3) fails on prongs two and three of the above-cited test: the law is not narrowly tailored to achieve the intended government interest, nor is it the least restrictive means of achieving the intended government interest.

As noted by the Defendants, in their most recent Motion, § 922(d)(3) was drafted with the intent of keeping firearms "out of the hands of presumptively risky people." DEF MOTION TO DISMISS, p. 3, line 24 (*quoting Dickerson v. New Banner, Inc.,* 460 U.S. 103, 112, n. 6 (1983).  At the heart of § 922(g)(3) is a desire to keep firearms out of the hands of dangerous individuals – individuals that might use guns in a dangerous manner that could harm others.  However, in its attempt to deter firearm possession amongst dangerous persons, § 922(g)(3) takes a scorched earth approach, seeking to deprive Second Amendment rights to a phenomenally large contingent of the American population.

18 USC § 922(g)(3) is just too impossibly broad to survive strict scrutiny (or intermediate scrutiny for that matter).  The law aims to deprive tens of millions of people of their constitutional right to keep and bear arms, just to target an infinitesimal subset of potentially dangerous individuals.  Even if § 922(g)(3) was solely concerned with illicit substance abuse (which it is not) and even if we were to assume that every single person who committed a violent crime within the last year was an illicit substance abuser (which is a quantum leap of an

-19-

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   assumption), the violent persons targeted by § 922(g)(3) would <u>still</u> only account for 3.2% of the

2   total people affected by § 922(g)(3).[15]   This is like leveling the entire rainforest just to take

3   down a single tree.

4         This law seeks to deprive an extraordinary number of people of their fundamental

5   constitutional rights, without the remotest attempt at narrowly tailoring the scope of its

6   impact.  As evidenced by the statistical analysis provided above and further supported by the

7   accompanying footnote, a basic examination of drug use and violent crime in this country

8   shows that this law attacks the constitutional rights of more than thirty times the number of

9   people that it is intended to affect. This law is flawed at its very core and must be declared

10  unconstitutional.

11                    **4.   Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. § 922(g)(3) is
                           Unconstitutional Because the Expansive Scope of the Law, Covering**
12                         **More than Half of the U.S. Population, is Not Substantially Related to
                           Any Important Government Interest.**
13

14         Even though the United States Supreme Court has made it clear in its opinions from

15  *Heller* and *McDonald* that the Second Amendment is a "fundamental" individual right, some

16  Circuit Courts have erroneously sought to apply an intermediate scrutiny standard in their

17  examinations of the constitutionality of § 922(g)(3). *See U.S v. Seay*, 620 F.3d 919 (8th Cir 2010);

18  *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).   While the fundamental nature of Second

19  Amendment Rights calls for and requires a strict scrutiny analysis, even when properly analyzed

20  under intermediate scrutiny, the law fails to pass constitutional muster.

21         To overcome intermediate scrutiny, the asserted governmental interest must be

22  "substantial," rather than "compelling," and the regulation adopted must "be a direct,

23  substantial relationship between the objective and the means chosen to accomplish the

24  ――――――――――――――――――

25  [15] This statistic is based on a combination of two statistical sources.  First, and as noted earlier, the Substance
    Abuse and Mental Health Services Administration calculates that 38,806,000 Americans had taken illicit drugs
26  within the last twelve months. *Supra* at note 20. Second, statistics compiled by the Federal Bureau of Investigation
    estimate that in that same year there were approximately 1,240,000 instances of violent crime. *See* CRIME IN THE
27  UNITED   STATES,   available   at   http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-
    2010/violent-crime/violent-crime.   Taken together, if we assume that each instance of violent crime was
28  committed by a separate and distinct individual, and that each and every violent assailant was an illicit drug user,
    then only 3.2% of illicit drug users account for all violent crimes committed in the United States.

                                          -20-

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   objective." *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991); *See also Association of*

2   *Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v.*

3   *Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980);

4   *Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530, 540, 100 S.Ct. 2326,

5   2334-35, 65 L.Ed.2d 319 (1980).   As noted by the Ninth Circuit, "[i]ntermediate scrutiny's

6   precise contours vary slightly depending upon which constitutional right is at issue." *Jacobs v.*

7   *Clark County School Dist.,* 526 F.3d 419, fn 23 (9th Cir. 2008).   Neither the Ninth Circuit, nor the

8   Supreme Court has set down a system of intermediate scrutiny as applied to Second

9   Amendment issues.

10           Here, the Plaintiff does not argue or even question whether § 922(g)(3) is intended to

11   further a "substantial" government interest.   As previously noted, the underlying purpose of §

12   922(g)(3) is to keep firearms out of the hands of potentially dangerous people.   This underlying

13   goal is perfectly valid and addresses a genuine policy concern.   However, due to the

14   extraordinary breadth and scope of § 922(g)(3), the law fails to provide a direct, substantial

15   relationship between the law's objective and the means chosen to accomplish that objective.

16           As noted earlier, § 922(g)(3) takes a scorched earth approach, seeking to deprive huge

17   swaths of the American populace of their Second Amendment rights in an over zealous attempt

18   to curtail gun ownership amongst a much smaller subset of individuals.   The overwhelming

19   impact of the law falls on the shoulders of non-violent, harmless individuals, depriving those

20   individuals of a fundamental constitutional right to keep and bear arms.   The law does not

21   merely apply to thieving, violent scoundrels.   As written, § 922(g)(3) prohibits the sick, the

22   elderly[16], and millions others.

23           Meanwhile, the law allows a specific exception for alcohol abuse.   Curiously, alcoholism,

24   a condition that is widely known to increase aggression and violent tendencies[17] is exempted

25   from prosecution under § 922(g)(3).   If the law were truly constructed for the purpose of

26

27   [16] *See supra* note 8 (90.1% of persons over the age of 65 report having taken prescription medications within the last thirty days).

28   [17] *See* NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM NO. 38 OCTOBER 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-21-

1   curtailing the ownership of firearms amongst potentially violent people, then why would it

2   provide a specific exclusion for alcoholics?  In a 1997 report from the National Institute of

3   Health, it was noted that, as a direct effect of the consumption of alcohol, "[a]lcohol may

4   encourage aggression or violence by disrupting normal brain function."[18]   Nevertheless, §

5   922(g)(3), a law allegedly designed to keep firearms out of the hands of potentially dangerous

6   people makes no attempt to keep guns from alcoholics.

7       Meanwhile, there is no viable evidence to suggest that marijuana use is correlated with

8   violent crime (or any other crime beyond illegal drug use). While the Government makes a

9   feeble attempt to tie drug use to criminal behavior, the statistics that the Government points to

10  fail to take into account the large number of non-criminal drug users.  The statistics cited by the

11  Government merely analyze the number of prison inmates who admit to having been on

12  narcotic substances at the time of arrest.  However, those individuals account for a miniscule

13  fraction of the total number of drug users in the United States.

14      At the end of 2010, state and federal prison populations totaled 1,518,104. Correctional

15  Population in the United States, 2011. Bureau of Justice Statistics. This figure equals

16  approximately 0.5% of the U.S. population. *Id.*; 2010 Census. Federal prisons housed 206,968

17  prisoners while state prisons housed 1,311,136. The 2004 DOJ study relied upon by Defendants

18  indicates that 32% of state prisoners and 26% of federal prisoners committed their current

19  offense while under the influence of drugs.[19] However, only 15% of state prisoners and 14% of

20  federal prisoners used marijuana at the time of their offense.[20] Thus, approximately 196,670

21  state inmates and 28,975 federal inmates committed their crimes while using marijuana.  This

22  equates to approximately 0.07% of the U.S. population having committed a crime while under

23  the influence of marijuana. When this number is compared with the total number of Americans

24  who report using marijuana, it is clear that marijuana use has no causal link to crime.

25  Approximately 106,232,000 Americans (or 34.4% of the total U.S. population) report having

26

27  _____

28  [18] *Id.*
    [19] *See* http://bjs.ojp.usdoj.gov/content/dcf/duc.cfm.
    [20] *Id.*

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-22-

using marijuana in their lifetime.[21] Approximately 17,373,000 Americans (or 5.6% of the total U.S. population) report having used marijuana in the past month. Thus, the number of incarcerated persons who were using marijuana at the time of their crime equals only 0.2% of all persons who have used marijuana and 1.2% of all persons who are habitual users of marijuana.

Additionally, the 2004 DOJ study reports that violent offenders were less likely than other offenders to have used drugs in the month prior to their offense.[22] The report states "Violent offenders in State prison (50%) were less likely than drug (72%) and property (64%) offenders to have used drugs in the month prior to their offense." *Id* at p. 1.

The Defendants also rely on a 2010 report by the Office of National Drug Control Policy. However, this report is not a good indicator of any supposed link between marijuana and crime because it only reports incidents of marijuana use in males arrested in 10 cities. Additionally, the ONDCP is not an independent research organization but rather a cabinet level component of the Executive Office with the stated objective of eradicating drug use. As such, any studies conducted by the ONDCP are inherently biased.

There is no viable link between the use of cannabis and violent behavior; meanwhile, there is clear and well-established evidence that alcohol is directly linked with violent behavior. Nevertheless, 18 USC § 922(g)(3) arbitrarily precludes users of cannabis (or any other controlled substance for that matter) from exercising their fundamental constitutional rights. Section 922(g)(3) does not provide a direct, substantial relationship between the law's objective and the means chosen to accomplish the objective.   As such, the law must be declared unconstitutional.

/ / /

/ / /

/ / /

/ / /

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

---

[21] *See* http://www.samhsa.gov/data/NSDUH/2k10ResultsTables/Web/HTML/Sect1peTabs1to46.htm#Tab1.1A.
[22] *See* http://bjs.ojp.usdoj.gov/content/pub/pdf/dudsfp04.pdf.

-23-

**C. 18 U.S.C. § 922(d)(3) is Similarly Unconstitutional Under Both a Strict Scrutiny or Intermediate Scrutiny Analysis.**

18 USC § 922(d)(3), drafted as a counterpart to 18 USC § 922(g)(3), is similarly unconstitutional under both a strict and intermediate scrutiny analysis, since § 922(d)(3) is neither narrowly tailed to effect a compelling government interest, nor directly related to a substantial government interest.

18 USC § 922(d)(3) reads as follows:

> (d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> [...]
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))

Much of the analysis devoted to § 922(g)(3) can be equally applied to § 922(d)(3), since the provisions virtually mirror each other.  However, there is another distinct consideration with § 922(d)(3) – the law places an exceptional burden and liability upon firearms sellers. Unlike a ban on the sale of firearms to felons, this ban is generally difficult, if not impossible to police.   A simple background check will typically reveal whether a person is a convicted felon. However, the standard imposed by § 922(d)(3), if effectively policed, would require gun sellers to conduct an extensive investigation of the private behaviors and habits of their customers (an investigation that might itself violate the privacy protections of the Constitution).

Meanwhile, the law raises a multitude of nearly unanswerable questions: To what extent is the seller required to investigate the drug habits of the buyer? If the seller knows that the buyer once took an illicit substance, is that a complete bar to any sale of a firearm?  What if the instance of substance abuse was a year ago?  What if it was six months ago?  How long ago must the drug use be in order to allow the sale of a firearm?  What if the buyer only smoked marijuana once at a party?  What if the party was last week?  What if the buyer is a recovered drug addict, who has relapsed numerous times?  What if the last relapse was a year ago?  What if the last relapse was ten years ago?  Where do we draw the line?

This law is untenable, unenforceable, unconstitutional and utterly unrealistic.

/ / /

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

IV.     **PLAINTIFF'S PRIMARY PURPOSE IN THIS ACTION IS TO PROCURE DECLARATORY AND INJUNCTIVE RELIEF RATHER THAN MONETARY DAMAGES.**

As noted above, Plaintiff has voluntarily dismissed her claims against the Defendants in their individual capacities. Plaintiff does not dispute that 5 U.S.C § 702 does not provide for monetary damages against the United States, the ATF or the individual Defendants in their official capacities. The primary purpose of Plaintiff's Complaint is, and has always been, to obtain declaratory and injunctive relief against the Defendants. To the extent that the Prayer for Relief contained in Plaintiff's Complaint seeks monetary damages, Plaintiff agrees that 5 U.S.C § 702 does not provide for such damages. Further, based upon the Plaintiff's prior dismissal of the Defendants in their individual capacities, the Plaintiff does not object to the dismissal of her conspiracy claim. Notwithstanding the foregoing, Plaintiff does not waive her right to pursue various fees and costs associated with pursuing this case as provided for in 28 U.S.C. § 2412 and similar statutes.

**CONCLUSION**

As set forth above, there are no disputed material facts in this matter. Based upon the authorities set forth herein, Plaintiff is entitled to summary judgment on her claims for violations of the Second and Fifth Amendment against the Defendants. Plaintiff respectfully requests that Defendants' Motion be DENIED as to the Plaintiff's Second and Fifth Amendment claims and that summary judgment be GRANTED in Plaintiff's favor as to these claims.

Dated this 9th day of March 2012.

Respectfully Submitted by:

RAINEY DEVINE, ATTORNEYS AT LAW

By:  /s/ Chaz Rainey

Charles C. Rainey, Esq.
Nevada Bar No. 10723
2445 W. Horizon Ridge Pkwy, Ste. 110
Henderson, Nevada 89052
Telephone: +1.702.425.5100
Facsimile: +1.888.867.5734
*Attorney for Plaintiff*

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-25-

**PROOF OF SERVICE**

I, Jennifer J. Hurley, an employee of The Law Firm of Rainey Devine, certify that the following individuals were served with PLAINTIFF'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, on this date by the below identified method of service:

**Electronic Case Filing**

TONY WEST
DANIEL G. BOGDEN
SANDRA SCHRAIBMAN
ALICIA N. ELLINGTON
JOHN K. THEIS
Trial Attorneys, Federal Programs Branch
United States Department of Justice, Civil Division
20 Massachusetts Ave, N.W. Rm 7226
Washington, DC 20530

Zachary Richter
Trial Attorney, Constitutional Torts Staff
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044

DATED this 9th day of March 2012.

/s/Jennifer J. Hurley
An employee of The Law Firm of Rainey Devine.

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-26-

1   STUART F. DELERY
    Acting Assistant Attorney General

2   DANIEL G. BOGDEN
3   United States Attorney

4   SANDRA M. SCHRAIBMAN
    Assistant Director, Federal Programs Branch

5   JOHN K. THEIS
6   Trial Attorney, Federal Programs Branch
    United States Department of Justice, Civil Division
7   20 Massachusetts Ave., N.W., Rm. 6701
    Washington, D.C.  20530
8   Telephone: (202) 305-7632
    Facsimile: (202) 616-8460
9   John.K.Theis@usdoj.gov

10  *Attorneys for Defendants the United States of America,*
    *ATF, U.S. Attorney General Eric Holder,*
11  *Acting ATF Director B. Todd Jones, and*
    *Assistant ATF Director Arthur Herbert,*
12  *in their official capacities (collectively, the United States)*

13

14          **UNITED STATES DISTRICT COURT**
                **DISTRICT OF NEVADA**
15

16  S. ROWAN WILSON,                       )
                                           )
17              Plaintiff,                 )
                                           )
18          v.                             )   Case No.: 2:11-CV-1679-GMN-(PAL)
                                           )
19  ERIC HOLDER, Attorney General of the   )
    United States et al.,                  )
20                                         )
                Defendants.                )
21                                         )
    _____    )

22  **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE
23  ALTERNATIVE, FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S
         CROSS-MOTION FOR SUMMARY JUDGMENT**

24              **(HEARING REQUESTED)**

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................2

I.    DEFENDANTS HAVE MOVED TO DISMISS UNDER RULE 12(b)(6),
      OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT. ........................3

II.   PLAINTIFF HAS NOT ESTABLISHED A SECOND AMENDMENT
      VIOLATION.............................................................................4

      A.   United States v. Dugan, Which Is Controlling, Requires Dismissal of
           Plaintiff's Second Amendment Claim. ........................................4

      B.   Unlawful Drug Users, Including Those Who Comply with State Medical
           Marijuana Laws, Fall Outside the Scope of the Second Amendment ..........5

           1.   Federal Law Does Not Recognize "Law-Abiding" Users of
                Marijuana, and § 922(g)(3) Plainly Prohibits Use of
                Marijuana for "Medical Purposes." .....................................7

           2.   The Ogden Memo Does Not Estop the Government from
                Treating Medical Marijuana Users as Violators of Federal Law.....9

      C.   Under an Independent Constitutional Analysis, Section 922(g)(3)
           Survives the Appropriate Level of Scrutiny. ..............................12

           1.   No More than Intermediate Scrutiny Should Apply. ...................12

           2.   Section 922(g)(3) Substantially Relates to the Important
                Government Interest in Protecting Public Safety and
                Combating Violent Crime.............................................13

III.  SECTION 922(d)(3), AS APPLIED TO PLAINTIFF, DOES NOT
      VIOLATE THE SECOND AMENDMENT ...........................................17

IV.   PLAINTIFF'S EQUAL PROTECTION CLAIM MUST FAIL............................17

V.    DEFENDANTS HAVE NOT VIOLATED PLAINTIFF'S RIGHT TO
      SUBSTANTIVE OR PROCEDURAL DUE PROCESS. ....................................20

      A.   There is No Substantive Due Process Right to Use Marijuana for
           Medical Purposes...................................................................20

      B.   Plaintiff's Procedural Due Process "Claim" Must Fail, as She Has Not
           Been Deprived of a Constitutionally-Protected Liberty or Property
           Interest..............................................................................22

VI.   PLAINTIFF'S CONSPIRACY AND DAMAGES CLAIMS SHOULD BE
      DISMISSED ...........................................................................23

CONCLUSION...................................................................................24

i

1

2

**TABLE OF AUTHORITIES**

**CASES**

Albright v. Oliver,
    510 U.S. 266 (1994) ...................................................................................20

Alt. Cmty. Health Care Coop., Inc. v. Holder,
    No. 11cv2585-DMS (BGS), 2012 WL 707154 (S.D. Cal. March 5, 2012) ...........17

Am. Rivers v. FERC,
    201 F.3d 1186 (9th Cir. 1999) ......................................................................8

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ...........................................................3

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .....................................................................................3

Broam v. Bogan,
    320 F.3d 1023 (9th Cir. 2003) ................................................................18, 20

Buckley v. Valeo,
    424 U.S. 1 (1976) .......................................................................................16

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
    467 U.S. 837 (1984) .....................................................................................9

Citizens for Better Forestry v. USDA,
    567 F.3d 1128 (9th Cir. 2009) ......................................................................5

City of Ladue v. Gilleo,
    512 U.S. 43 (1994) .....................................................................................16

Clark K. v. Willden,
    616 F. Supp. 2d 1038 (D. Nev. 2007) ...........................................................23

District of Columbia v. Heller,
    554 U.S. 570 (2008) ........................................................................6, 14, 17

Erickson v. United States,
    67 F.3d 858 (9th Cir. 1995) .........................................................................23

Ezell v. City of Chicago,
    651 F.3d 684 (7th Cir. 2011) ....................................................................5, 13

Ferguson v. Skrupa,
    372 U.S. 726 (1963) ....................................................................................16

Freeman v. City of Santa Ana,
    68 F.3d 1180 (9th Cir. 1995) .......................................................................18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

Gonzales v. Raich,
   545 U.S. 1 (2005) ...................................................................................................7

Gonzalez-Medina v. Holder,
   641 F.3d 333 (9th Cir. 2011) ...........................................................................17

Graham v. Connor,
   490 U.S. 386 (1989) ..........................................................................................20

Hearn v. W. Conference of Teamsters Pension Trust Fund,
   68 F.3d 301 (9th Cir. 1995) ................................................................................8

Heckler v. Cmty. Health Servs., Inc.,
   467 U.S. 51 (1984) ............................................................................................10

Heller v. District of Columbia,
   698 F. Supp. 2d 179 (2010) ..............................................................................14

Heller v. District of Columbia,
   --- F.3d ----, 2011 WL 4551558 (D.C. Cir. Oct. 4, 2011).......................5, 6, 12, 13

Hopfmann v. Connolly,
   471 U.S. 459 (1985) ............................................................................................8

Kildare v. Saenz,
   325 F.3d 1078 (9th Cir. 2003) .........................................................................23

Kyung Park v. Holder,
   572 F.3d 619 (9th Cir. 2009) ...........................................................................17

Lamie v. U.S. Trustee,
   540 U.S. 526 (2004) ............................................................................................8

Marin Alliance for Med. Marijuana v. Holder,
   --- F. Supp. 2d ---, No. C 11-05349-SBA, 2011 WL 5914031
   (N.D. Cal. Nov. 28, 2011)...........................................................................11, 22

McDonald v. City of Chicago,
   130 S. Ct. 3020 (2010) ......................................................................................12

Montana Caregivers Ass'n, LLC v. United States,
   --- F.Supp.2d ----, No. CV 11-74-M-DWM, 2012 WL 169771
   (D. Mont. Jan. 20, 2012) ...................................................................................11

New Hampshire v. Maine,
   532 U.S. 742 (2001) ..........................................................................................11

Olympic Arms v. Buckles,
   301 F.3d 384 (6th Cir. 2002) ...........................................................................16

Peruta v. County of San Diego,
   758 F. Supp. 2d 1106 (S.D. Cal. 2010) ...........................................................12

iii

Raich v. Gonzales,
    500 F.3d 850 (9th Cir. 2007) .............................................................21, 22

Ruiz v. Laguna,
    No. 05-CV-1871, 2007 WL 1120350 (S.D. Cal. March 28, 2007) .................18, 20

Richards v. Cnty. Of Yolo.,
    ---F. Supp. 2d---, No. 2:09-CV-01235, 2011 WL 1885641 (E.D. Cal. May 16, 2011)..........20

S.F. Baykeeper v. Cargill Salt Div.,
    481 F.3d 700 (9th Cir. 2007) .................................................................9

Sabri v. United States,
    541 U.S. 600 (2004) .........................................................................6

Sacramento Nonprofit Collective v. Holder,
    No. 2:11-cv-02939, 2012 WL 662460 (E.D. Cal. Feb. 28, 2012) .........................11

Schall v. Martin,
    467 U.S. 253 (1984) ........................................................................13

Stormans, Inc. v. Selecky,
    586 F.3d 1109 (9th Cir. 2009) ..............................................................13

Suzlon Energy Ltd. V. Microsoft Corp.,
    ---F.3d---, No. 10-35793, 2011 WL 4537843, (9th Cir. Oct. 3, 2011) ....................8

Town of Castle Rock, Colo. v. Gonzales,
    545 U.S. 748 (2005) .........................................................................5

Turner Broad. Sys. v. FCC,
    512 U.S. 622 (1994) ........................................................................16

United States v. Carter,
    669 F.3d 411 (4th Cir. 2012) .................................................11, 12, 13, 14

United States v. Chafin,
    423 F. App'x 342 (4th Cir. 2011) ..........................................................17

United States v. Chester,
    628 F.3d 673 (4th Cir. 2010) ............................................................5, 12

United States v. Dugan,
    657 F.3d 998 (9th Cir. 2011) .........................................................2, 3, 4

United States v. Hendrickson,
    664 F. Supp. 2d 793 (E.D. Mich. 2009)....................................................19

United States v. Katz,
    No. 09-50619, 2010 WL 183863 (9th Cir. Jan. 19, 2010) ..................................7

iv

*United States v. Lanier,*
  520 U.S. 259 (1997) ............................................................................................20

*United States v. Lewitzke,*
  176 F.3d 1022 (7th Cir. 1999) ...........................................................................16

*United States v. Marzzarella,*
  614 F.3d 85 (3d Cir. 2010)...........................................................................6, 12

*United States v. Masciandaro,*
  638 F.3d 458 (4th Cir. 2011) ...............................................................................6

*United States v. Oakland Cannabis Buyers' Coop.,*
  190 F.3d 1109 (1999) ...........................................................................................8

*United States v. Oakland Cannabis Buyers' Coop.,*
  532 U.S. 483 (2001) .........................................................................7, 8, 15, 22

*United States v. Purdy,*
  264 F.3d 809 (9th Cir. 2001) ............................................................................11

*United States v. Reese,*
  627 F.3d 792 (10th Cir. 2010) .....................................................................6, 12

*United States v. Salerno,*
  481 U.S. 739 (1987) ......................................................................................6, 13

*United States v. Scarmazzo,*
  554 F. Supp. 2d 1102 (E.D. Cal. 2008).............................................................7

*United States v. Skoien,*
  614 F.3d 638 (7th Cir. 2010) .......................................................................6, 14

*United States v. Stacy,*
  No. 09-cr-3695, 2010 WL 4117276 (S.D. Cal. Oct. 18, 2010) ....................5, 9, 11

*United States v. Tooley,*
  717 F. Supp. 2d 580 (S.D. W. Va. 2010)..........................................................14

*United States v. Virginia,*
  518 U.S. 515 (1996)............................................................................................15

*United States v. Weaver,*
  No. 2:09-cr-00222, 2012 WL 727488 (S.D. W. Va. March 6, 2012) ......................6

*United States v. Yancey,*
  621 F.3d 681 (7th Cir. 2010) .............................................................12, 13, 14

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ...........................................................................................12

v

Washington v. Glucksberg,
    521 U.S. 702 (1997) ........................................................................... 21

Wash., Dep't of Ecology v. U.S. EPA,
    752 F.2d 1465 (9th Cir. 1985) ............................................................. 9

Willis v. Winters,
    253 P.3d 1058 (Or. 2011) ..................................................................... 8

**STATUTES**

27 C.F.R. § 478.11 ................................................................................. 2, 15

18 U.S.C. § 922(g)(3) ........................................................................ 2, 5, 6, 15

18 U.S.C. §§ 922(d)(3) ................................................................................ 2

21 U.S.C. § 802 .......................................................................................... 8

21 U.S.C. § 812(b)(1) ............................................................................ 9, 22

21 U.S.C. § 829 ......................................................................................... 15

**LEGISTLATIVE MATERIAL**

H.R. Rep. No. 99-495 (1986) ...................................................................... 8

**MISCELLANEOUS**

Adam Winkler, Scrutinizing the Second Amendment,
    105 Mich. L. Rev. 683, 697-98, 700 (2007) ...................................... 12

vi

**INTRODUCTION**

As explained in Defendants' opening brief, Plaintiff's constitutional challenges to 18 U.S.C. §§ 922(d)(3) and (g)(3), 27 C.F.R. § 478.11, and the September 2011 Letter issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") have no merit.  The Ninth Circuit's decision in United States v. Dugan squarely forecloses Plaintiff's Second Amendment claim.  Even if the Court were to engage in the independent Second Amendment analysis that Plaintiff seeks, Plaintiff's claim would fail, as unlawful drug users are not within the class of law-abiding, responsible citizens historically protected by the Second Amendment, and § 922(g)(3) survives any level of scrutiny.  In addition, § 922(d)(3) does not violate Plaintiff's Second Amendment rights, as there is no recognized constitutional right to sell firearms. Plaintiff's equal protection claim fails to allege a proper classification of a group against whom Defendants have discriminated.  Plaintiff's responsive brief does nothing to diminish these arguments.  Furthermore, Plaintiff's procedural and substantive due process claims—raised for the first time in her response—must fail, as Plaintiff cannot amend her Complaint by adding new claims in her opposition brief.  Even if the Court were to address these "claims," there is no substantive due process right to use marijuana for medical purposes, and Defendants have not deprived Plaintiff of a constitutionally-protected liberty or property interest.  Accordingly, this Court should dismiss this action (or enter judgment for Defendants) and deny Plaintiff's cross-motion for summary judgment.[1]

_____

[1] Plaintiff voluntarily dismissed her claims against the named defendants in their individual capacities.  See Stipulation of Dismissal of Individual Defendants (Dkt. 14).  The remaining defendants are the United States, ATF, and U.S. Attorney General Eric Holder, Acting ATF Director B. Todd Jones, and Assistant ATF Director Arthur Herbert in their official capacities.

2

**I.      DEFENDANTS HAVE MOVED TO DISMISS UNDER RULE 12(b)(6), OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.**

Plaintiff misconstrues the posture of Defendants' motion.  Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6),[2] which requires dismissal if the Complaint fails to state a claim upon which relief can be granted.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  As argued in Section I.A.1 of Defendants' Motion, Plaintiff's Second Amendment claim should be dismissed under United States v. Dugan because it fails to state a claim, even assuming the facts alleged in the Complaint are true.  The Court need not reach any other arguments to dismiss the Second Amendment claim.  However, in Sections I.A.2 and I.A.3 of the Motion, Defendants argued that the Second Amendment claim should be dismissed because unlawful drug users fall outside the scope of the Second Amendment as understood at the adoption of the Bill of Rights, and that § 922(g)(3) survives intermediate scrutiny.  See Memorandum in Support of the United States's Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Def. Mot.") at 15-27 (Dkt. 10).  In the course of that argument, Defendants presented some extrinsic sources that the Court may consider, such as a government report on the association between cognitive functioning and marijuana use.  If the Court determines that it can only dismiss the Complaint by relying on those extrinsic sources, then the Court should treat Defendants' motion as a Motion for Summary Judgment under Rule 56.  To facilitate that, Defendants attached to their motion a Statement of Undisputed Facts in compliance with Local Rule 56-1.

Rather than responding to Defendants' Rule 56 Statement, Plaintiff baldly asserts that Defendants failed to dispute the factual allegations in the Complaint, and then submits her own Rule 56 statement (Dkt. 17-1).  This Statement should be rejected.  The majority of the asserted

---

[2] Defendants also moved to dismiss the common law conspiracy claim for lack of subject matter jurisdiction under Rule 12(b)(1).  Plaintiff has agreed to dismiss the conspiracy claim in its entirety.  See Plaintiff's Response to the United States' Motion to Dismiss or, in the Alternative for Summary Judgment, and Plaintiff's Cross-Motion for Summary Judgment ("Pl's Op."), at 2, 25 (Dkt. 17).

3

1   "facts" in the Statement fail to comply with Local Rule 56-1's requirement that each material

2   fact contain a citation to the "particular portions of any pleading, affidavit, deposition,

3   interrogatory, answer, admission, or other evidence upon which the party relies." See Dkt. 17-1,

4   ¶¶ 1-28.  The Statement also contains multiple conclusions of law, which do not qualify as

5   "facts."  See, e.g., id. at ¶ 29 ("No evidence exists that Ms. Wilson has ever been an 'an unlawful

6   user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other

7   controlled substance' and Plaintiff maintains that she is not an unlawful user of or addicted to

8   marijuana or any other controlled substance."); see also ¶¶ 2, 16, 42.  In any event, Plaintiff's

9   Statement essentially restates the allegations in her Complaint.  To be clear, the facts alleged in

10  Plaintiff's Complaint are accepted as true for purposes of the Motion to Dismiss only.  See Def.

11  Mot. at 10 n.7.  Defendants dispute many facts in the Complaint, but those disputes are

12  immaterial to the arguments being raised before the Court in Defendants' Motion.

13  **II.    PLAINTIFF HAS NOT ESTABLISHED A SECOND AMENDMENT VIOLATION**

14          A.    **United States v. Dugan, Which Is Controlling, Requires Dismissal of**
                 **Plaintiff's Second Amendment Claim.**
15

16          Plaintiff's Second Amendment claim is foreclosed by United States v. Dugan, 657 F.3d

17  998 (9th Cir. 2011).  There, the Ninth Circuit upheld § 922(g)(3) against a Second Amendment

18  challenge, holding that "[b]ecause Congress may constitutionally deprive felons and mentally ill

19  people of the right to possess and carry weapons, . . . Congress may also prohibit illegal drug

20  users from possessing firearms."  Id. at 999-1000.  Dugan, who was licensed to grow and use

21  medical marijuana, argued that many marijuana users, including those in compliance with state

22  medical marijuana laws, do not "engag[e] in any behavior that would provide a legitimate basis

23  for excluding them from the reach of the Second Amendment."  See Brief for Appellant at 59,

24  United States v. Dugan, 657 F.3d 998 (2011) (No. 08-10579), ECF No. 57.  In rejecting Dugan's

25  challenge, the court of appeals did not distinguish between Dugan's status as a medical

26  marijuana cardholder and any other user of marijuana.  Dugan's holding—that the prohibition on

27
                                                    4
28

1   illegal drug users from possessing firearms does not violate the Second Amendment—applies

2   equally to all unlawful users of marijuana.  See United States v. Stacy, No. 09-cr-3695, 2010 WL

3   4117276, at *7 (S.D. Cal. Oct. 18, 2010) (noting, in the course of rejecting a Second Amendment

4   challenge to § 922(g)(3), that "[t]he fact that this particular case involves the alleged lawful use

5   of marijuana under state law does not have any bearing on the presumptively lawful nature of the

6   restriction").  Accordingly, under Dugan, Plaintiff's Second Amendment challenge to § 922(g)(3)

7   must fail.

8        In response, Plaintiff argues that Dugan "is a deeply flawed opinion that must be

9   overturned."  Pl's Op. at 16.  Of course, Dugan is binding authority on this Court, and this Court

10  is not empowered to overrule the Ninth Circuit's decision.  See, e.g., Citizens for Better Forestry

11  v. USDA, 567 F.3d 1128, 1134 (9th Cir. 2009) (court of appeals precedent is binding on district

12  court).  Plaintiff's grounds for overturning Dugan—the alleged brevity of the court's analysis and

13  an allegation that the "facts of Dugan are so prejudicial that they fail to provide a proper

14  framework for analyzing the constitutionality of § 922(g)(3)" (Pl's Op. at 16-17)—even if true,

15  are not proper grounds for ignoring Ninth Circuit precedent.

16       **B.   Unlawful Drug Users, Including Those Who Comply with State Medical
17            Marijuana Laws, Fall Outside the Scope of the Second Amendment.**

18       Because Dugan resolves Plaintiff's Second Amendment claim, the Court need not

19  undergo an "independent" constitutional analysis of § 922(g)(3).  See Town of Castle Rock,

20  Colo. v. Gonzales, 545 U.S. 748, 778 (2005) (longstanding doctrine of constitutional avoidance

21  cautions courts to avoid making unnecessary constitutional determinations).  Nonetheless, were

22  the Court to engage in such an analysis, Plaintiff's claim would still fail.  As set forth in

23  Defendants' Motion (Def. Mot. at 15-27), several courts have established a two-step approach to

24  Second Amendment challenges to federal statutes and regulations.  See, e.g., Heller v. District of

25  Columbia, --- F.3d ----, 2011 WL 4551558, at *5 (D.C. Cir. Oct. 4, 2011) ("Heller II"); Ezell v.

26  City of Chicago, 651 F.3d 684, 701–04 (7th Cir. 2011); United States v. Chester, 628 F.3d 673,

27

28

1   680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800–01 (10th Cir. 2010); United

2   States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010).  Under this approach, "[w]e ask first

3   whether a particular provision impinges upon a right protected by the Second Amendment; if it

4   does, then we go on to determine whether the provision passes muster under the appropriate level

5   of constitutional scrutiny."  Heller II, 2011 WL 4551558 at *5.  Plaintiff's claim fails both parts

6   of the analysis, as unlawful drug users are not within the class of law-abiding, responsible

7   citizens historically protected by the Second Amendment, and § 922(g)(3) survives the

8   appropriate level of scrutiny.[3]

9        In the opening brief, Defendants demonstrated that unlawful drug users fall outside the

10  scope of the Second Amendment as understood at the adoption of the Bill of Rights.  Def. Mot.

11  at 15-20.  Heller recognized the "core" Second Amendment right of "law-abiding, responsible

12  citizens to use arms in defense of hearth and home."  District of Columbia v. Heller, 554 U.S.

13  570, 634-35 (2008) (emphasis added).  This articulation acknowledges that the Anglo-American

14

_____

15  [3] Plaintiff appears to frame her Second Amendment argument as an overbreadth challenge.  See
    Pl's Op. at 16 ("[Plaintiff's Second Amendment analysis will] demonstrate that the expansive

16  scope of 18 U.S.C. § 922(g)(3) renders it unenforceable and unconstitutional."); see also id. at 14
    ("18 USC § 922(g)(3) is an exceptionally over-broad statute . . ."); id. ("The extraordinary

17  breadth of this law renders it unenforceable and wholly unconstitutional.").  This is not a proper
    Second Amendment challenge.  The overbreadth doctrine permits courts to relax the usual rules

18  of standing in the First Amendment context and in a few other settings.  Sabri v. United States,
    541 U.S. 600, 609-10 (2004); see also United States v. Salerno, 481 U.S. 739, 745 (1987) ("[W]e

19  have not recognized an 'overbreadth' doctrine outside the limited context of the First
    Amendment.").  Plaintiff has identified no basis on which that doctrine could be applied here.

20  See United States v. Masciandaro, 638 F.3d 458, 474 (4th Cir. 2011) (rejecting a Second
    Amendment overbreadth challenge); United States v. Weaver, No. 2:09–cr–00222, 2012 WL

21  727488, at *9-10 (S.D. W. Va. March 6, 2012) (finding no authority to extend the overbreadth

22  doctrine to the Second Amendment).  This is because in the Second Amendment context, "[a]
    person to whom a statute properly applies can't obtain relief based on arguments that a

23  differently situated person might present."  United States v. Skoien, 614 F.3d 638, 645 (7th Cir.

24  2010) (en banc) (citing Salerno, 481 U.S. at 745).  Because Plaintiff cannot bring a constitutional
    challenge that asserts the rights of others, any argument based on the alleged "overbreadth" of

25  § 922(g)(3) must be rejected.

26

27

28                                          6

1  right to arms incorporated into the Second Amendment excluded certain categories of

2  individuals, including non-law-abiding citizens.   Def. Mot. at 15-19.  Therefore, violators of the

3  Controlled Substances Act fall outside of the Second Amendment's scope.  Plaintiff apparently

4  does not dispute this point.  She does not offer any historical analysis of the Second Amendment

5  and effectively concedes that violators of the law are disqualified from exercising their Second

6  Amendment rights.

      **1.  Federal Law Does Not Recognize "Law-Abiding" Users of Marijuana,**
7               **and § 922(g)(3) Plainly Prohibits Use of Marijuana for "Medical**
8               **Purposes."**

9        Plaintiff instead contends that users of medical marijuana are not "unlawful users" of a

10  controlled substance.  Pl's Op. at 10-14.  According to Plaintiff, "Congress did not intend for

11  law-abiding medical cannabis patients to be included in the definition of 'unlawful user.'"  Id. at

12  10.  The underlying assumption of Plaintiff's argument—indeed, the apparent central contention

13  of her entire case—is that users of medical marijuana do not violate federal law.  But there are no

14  "law-abiding medical cannabis patients" under federal law.  See Gonzales v. Raich, 545 U.S. 1,

15  27 (2005) (explaining that even if marijuana is used "for personal medical purposes on the

16  advice of a physician," it is still considered contraband under the CSA, which designates

17  marijuana as contraband "for any purpose") (emphasis in original); United States v. Oakland

18  Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001) ("Whereas some other drugs can be

19  dispensed and prescribed for medical use, . . . the same is not true for marijuana."); United States

20  v. Katz, No. 09-50619, 2010 WL 183863, at * 1 (9th Cir. Jan. 19, 2010) (vacating pretrial

21  detention order, which modified defendant's bond order to permit defendant to use and possess

22  marijuana for medical purposes in compliance with California law, because it is illegal to possess

23  marijuana under federal law); United States v. Scarmazzo, 554 F. Supp. 2d 1102, 1105 (E.D.

24  Cal. 2008) ("The use of medical marijuana remains unlawful [under federal law].").[4]

25  _____

26  [4] Plaintiff's attempts to distinguish Raich and Oakland Cannabis fall flat.  Pl's Op. at 12.  Raich
did indeed rule on whether Congress could, under the Commerce Clause, criminalize the

27                                         *(Footnote continued on following page.)*

7

28

1    Notwithstanding this well-settled law, Plaintiff contends that the legislative history of

2  § 922(g)(3) reflects an intent to exclude medical marijuana users from the statute's reach.  But

3  the plain language of the statute is clear on its face, which means that this Court need not delve

4  into § 922(g)(3)'s legislative history and policies, although they may still be instructive.  See

5  Suzlon Energy Ltd. v. Microsoft Corp., --- F.3d ----, No. 10-35793, 2011 WL 4537843, at *1

6  (9th Cir. Oct. 3, 2011) (citing Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (finding it

7  "unnecessary to rely on the legislative history" when the plain language of the statute was clear,

8  but finding it an "instructive" way to "lend support" to its holding)); Am. Rivers v. FERC, 201

9  F.3d 1186, 1204 (9th Cir. 1999) ("[W]e are mindful that this Court steadfastly abides by the

10  principle that 'legislative history—no matter how clear—can't override statutory text.'")

11  (quoting Hearn v. W. Conference of Teamsters Pension Trust Fund, 68 F.3d 301, 304 (9th Cir.

12  1995)).[5]  Section 922(g)(3) references an "unlawful user of . . . any controlled substance" as

13

---

14  manufacture, distribution, or possession of marijuana by intrastate growers and users of
   marijuana for medical purposes.  But in so doing, the court observed that "[b]y classifying
15  marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture,
   distribution, or possession of marijuana became a criminal offense, with the sole exception being
16  use of the drug as part of a Food and Drug Administration preapproved research study."  545
   U.S. at 14 (citing the CSA and Oakland Cannabis, 532 U.S. at 490).  As for Oakland Cannabis,
17  Plaintiff's reference to the reversed Ninth Circuit opinion, 190 F.3d 1109 (1999), and Justice
   Stevens's concurrence notwithstanding, the majority expressly held that marijuana cannot be
18  prescribed for medical use under federal law.  532 U.S. at 491.  Nor can Plaintiff rely on the
   Supreme Court's denial of certiorari from Willis v. Winters, 253 P.3d 1058 (Or. 2011).  Pl's Op.
19  at 13 ("The Supreme Court's decision not to review this decision indicates that the Oregon
   court's decision and reasoning should stand.").  A denial of certiorari has no precedential effect,
20  see Hopfmann v. Connolly, 471 U.S. 459, 461 (1985), and the holding of the Court—that
   § 922(g)(3) does not preempt a state concealed handgun licensing statute—has no bearing on this
21  case.

22  [5] Regardless, Plaintiff draws untenable conclusions from the legislative history.  Plaintiff

23  suggests that by removing the direct reference to "marijuana" in 1986, Congress somehow
   sanctioned its use.  As noted in Defendants' Motion (Def. Mot. at 23, n.12), Congress passed the
24  amendment in 1986 to close a loophole and to expand the category of those prohibited.  See H.R.
   Rep. No. 99-495, at 23 (1986) ("Current law does not include hallucinogenic drugs that were
25  controlled by the Controlled Substances Act, including the violence-inducing drug phencyclidine

26

27                                                          (Footnote continued on following page.)

28                                            8

---

1   defined by the Controlled Substances Act (CSA) (21 U.S.C. § 802).  Under the terms of the

2   CSA, marijuana "has no currently accepted medical use in treatment in the United States," and

3   "[t]here is a lack of accepted safety for use of [marijuana] under medical supervision." 21

4   U.S.C. § 812(b)(1).  Under a plain reading of the text, if an individual uses marijuana in violation

5   of the CSA, he would qualify as an "unlawful user" under § 922(g)(3).  See Stacy, 2010 WL

6   4117276, at *6 ("Because § 922(g)(3) is a *federal* statute that refers to being an unlawful user of

7   any controlled substance as defined by the *federal* Controlled Substances Act, the Court

8   concludes that an ordinary person would understand that if he used marijuana in violation of

9   federal law, he would qualify as an 'unlawful user' within the meaning of § 922(g)(3), regardless

10   of whether he could be prosecuted under state law." (emphasis in original)).[6]

11
12
          **2.   The Ogden Memo Does Not Estop the Government from Treating Medical Marijuana Users as Violators of Federal Law.**

13        In her opposition, Plaintiff erroneously attempts to invoke the equitable doctrine of

14   judicial estoppel to contend that Defendants are estopped from arguing that persons complying

15   with state medical marijuana laws are "unlawful users" of a controlled substance.  Pl's Op. at 12-

16

---

17   (PCP), various tranquilizers, designer drugs and other substances that have been added to the

18   schedules of controlled substances.").

19   [6]  To the extent that Plaintiff may be challenging ATF's interpretation of the term "unlawful

20   user," this interpretation should be entitled to deference.  "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of

21   an agency."  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984);

22   Wash., Dep't of Ecology v. U.S. EPA, 752 F.2d 1465, 1469 (9th Cir. 1985) (finding that an agency's reasonable interpretation of a statute is entitled to deference "even if [the court] would

23   have reached a different result had [it] construed the statute initially").  This principle applies

24   with particular force where, as here, "statutory construction involves reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation

25   (depends) upon more than ordinary knowledge respecting the matters subjected to agency regulations."  S.F. Baykeeper v. Cargill Salt Div., 481 F.3d 700, 705 (9th Cir. 2007) (quoting

26   Wash., Dep't of Ecology, 752 F.2d at 1469)).

27
28                        9

13.  In doing so, Plaintiff appears to rely on the Joint Stipulation of Dismissal Without Prejudice, filed in January 2010 by the parties to another case, <u>County of Santa Cruz et al. v. Holder et al.</u>, No. 03-1802 (N.D. Cal.), to suggest that the "Federal Government has conceded that persons complying with state medical marijuana laws are not 'unlawful users.'"  Pl's Op. at 12.

The government has made no such concession.  The stipulation in <u>Santa Cruz</u> incorporates a guidance memorandum issued by then-Deputy Attorney General David Ogden to U. S. Attorneys (the "Ogden Memo"), indicating that, in order to make "efficient and rational use of [the Department's] limited investigative and prosecutorial resources," federal prosecutors "should not," as a general matter, "focus federal resources . . . on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana"—such as "individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen consistent with applicable state law," or their caregivers who, consistent with state law, provide them with marijuana for medicinal purposes.  <u>See</u> Ogden Mem. (<u>attached hereto as</u> Exhibit A), at 1-2.  However, the memorandum further states that "[t]he prosecution of significant traffickers of illegal drugs, <u>including marijuana</u> . . . continues to be a core priority" of the Department.  <u>Id.</u> at 1 (emphasis added).  By its express terms, the memorandum "d[id] not alter in any way the Department's authority to enforce federal law," "d[id] not 'legalize' marijuana or provide a legal defense to a violation of federal law," and did not "create any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or witness in any administrative, civil, or criminal matter." <u>Id.</u> at 2.  Instead, the memorandum made clear that it was "intended solely as a guide to the exercise of investigative and prosecutorial discretion." <u>Id.</u>

Contrary to Plaintiff's assertions, the doctrine of judicial estoppel has no application in this case.[7]  Judicial estoppel only applies if "a party's later position [is] 'clearly inconsistent'

---

[7] It is unlikely that the doctrine of estoppel would apply to Defendants, given the policy questions presented here.  <u>See</u> <u>Heckler v. Cmty. Health Servs., Inc.</u>, 467 U.S. 51, 60 (1984) ("[I]t is well settled that the Government may not be estopped on the same terms as any other

(<i>Footnote continued on following page.</i>)

10

with its earlier position." New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001).  As courts have repeatedly recognized, nothing in the Ogden Memo made marijuana possession legal or prevented the federal government from enforcing the CSA as it sees fit.  See Sacramento Nonprofit Collective v. Holder, No. 2:11-cv-02939, 2012 WL 662460, at *9 (E.D. Cal. Feb. 28, 2012) ("A reasonable person, having read the entirety of the Ogden Memo, could not conclude that the federal government was somehow authorizing the production and consumption of marijuana for medical purposes.  Any suggestion to the contrary defies the plain language of the Memo.") (quoting Montana Caregivers Ass'n, LLC v. United States, --- F.Supp.2d ----, No. CV 11-74-M-DWM, 2012 WL 169771, at *1-2 (D. Mont. Jan. 20, 2012)); see also United States v. Stacy, 734 F. Supp. 2d 1074, 1080-81 (S.D. Cal. 2010) (recognizing that the memo "provid[es] 'guidance regarding resource allocation' and 'does not 'legalize' marijuana or provide a legal defense to a violation of federal law'") (quoting Ogden Memo).  Therefore, because the federal government has never taken an inconsistent position on this issue, Plaintiff's estoppel argument should be rejected.  See Marin Alliance for Medical Marijuana v. Holder, --- F. Supp. 2d ---, No. C 11-05349-SBA, 2011 WL 5914031, at *8-9 (N.D. Cal. Nov. 28, 2011); Sacramento Nonprofit, 2012 WL 662460, at *8-9.[8]

---

litigant."); New Hampshire v. Maine, 532 U.S. 742, 755 (2001) ("[B]road interests of public policy may make it important to allow a change of positions that might seem inappropriate as a matter of merely private interests.") (citation and internal quotation marks omitted).

[8] Plaintiff can also not avail herself of the burden of proof for a criminal prosecution under § 922(g)(3) to argue that marijuana registry cardholders are not "unlawful users" of a controlled substance.  See Pl's Op. at 12-13 (citing United States v. Purdy, 264 F.3d 809 (9th Cir. 2001)).  That burden is not relevant to Plaintiff's constitutional challenge.

11

**C.    Under an Independent Constitutional Analysis, Section 922(g)(3) Survives the Appropriate Level of Scrutiny.**

**1.    No More than Intermediate Scrutiny Should Apply.**

As set forth in Defendants' opening brief (Def. Mot. at 20-27), though the Ninth Circuit has not directly addressed the question of the appropriate level of scrutiny applicable to Second Amendment claims, other courts of appeals to reach this issue have uniformly applied intermediate scrutiny.  See United States v. Carter, 669 F.3d 411, 416 (4th Cir. 2012) (applying intermediate scrutiny in evaluating challenge to § 922(g)(3)); United States v. Yancey, 621 F.3d 681, 683 (7th Cir. 2010) (same); see also Marzzarella, 614 F.3d at 96-97 (applying intermediate scrutiny to challenge to § 922(k)); United States v. Reese, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to challenge to § 922(g)(8)); Heller II, 2011 WL 4551558, at *9 (applying intermediate scrutiny to review novel gun registration laws).  The weight of this authority confirms that, if Plaintiff's Second Amendment claim is to be reviewed independently by the Court, no more than intermediate scrutiny should apply.

Plaintiff contends that strict scrutiny should apply because the right protected by the Second Amendment has been held to be a fundamental right.  Pl's Op. at 17-18.  "The [Supreme] Court has not said, however, and it does not logically follow, that strict scrutiny is called for whenever a fundamental right is at stake."  Heller II, 2011 WL 4551558, at *8 (citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Marzzarella, 614 F.3d at 96; United States v. Chester, 628 F.3d 673, 682 (4th Cir. 2010); and Adam Winkler, Scrutinizing the Second Amendment, 105 Mich. L. Rev. 683, 697-98, 700 (2007)).  Therefore, that the Second Amendment protects rights that are "fundamental," McDonald v. City of Chicago, 130 S. Ct. 3020, 3036-42 (2010), does not mandate application of strict scrutiny to Plaintiff's claim.  See Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 1115-16 (S.D. Cal. 2010) (applying intermediate scrutiny to a Second Amendment challenge, as "fundamental constitutional rights are not invariably subject to strict scrutiny").

12

1    Applying intermediate scrutiny is especially appropriate in the present case.  Plaintiff, as

2  an unlawful user of a controlled substance, does not fall into the category of "law-abiding,

3  responsible citizens" whose rights are at the core of the Second Amendment.  See Carter, 669

4  F.3d at 416 (rejecting the application of strict scrutiny to § 922(g)(3), as "[an unlawful drug user]

5  cannot claim to be a law-abiding citizen, and therefore his asserted Second Amendment claim

6  cannot be a core right"); Ezell, 651 F.3d at 703 (level of scrutiny "will depend on how close the

7  law comes to the core of the Second Amendment right and the severity of the law's burden on

8  the right").  In addition, because Plaintiff can avoid the restriction of § 922(g)(3) by simply

9  relinquishing her marijuana registry card and refraining from using marijuana, the severity of the

10  restriction is not particularly substantial.  See Heller II, 2011 WL 4551558, at *9 ("[A] regulation

11  that imposes a substantial burden upon the core right of self-defense protected by the Second

12  Amendment must have a strong justification, whereas a regulation that imposes a less substantial

13  burden should be proportionately easier to justify."); Yancey, 621 F.3d at 687-688 ("[A]s §

14  922(g)(3) prohibits only current drug users from possessing firearms, it is far less restrictive than

15  [the 1968 Act's] provision affecting felons and the mentally ill.") (emphasis in original).

16          **2.  Section 922(g)(3) Substantially Relates to the Important Government
              Interest in Protecting Public Safety and Combating Violent Crime.**

17

18    Under intermediate scrutiny, "a regulation must be substantially related to

19  an important governmental objective."  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1134 (9th Cir.

20  2009).  Applying intermediate scrutiny, the law restricting the possession of firearms by

21  unlawful drug users relates substantially to the important government objective of reducing

22  violent crime and protecting public safety.  See Def. Mot. at 20-27.

23    Plaintiff concedes that § 922(g)(3) is intended to further a "substantial government

24  interest" in "keep[ing] firearms out of the hands of potentially dangerous people."  Pl's Op. at

25  21.  Indeed, the Supreme Court has characterized the relevant interest as "compelling."  Salerno,

26  481 U.S. at 750; Schall v. Martin, 467 U.S. 253, 264 (1984).  However, Plaintiff contends that

27

28                                            13

1    the law fails to provide a direct, substantial relationship between the objective and the chosen

2    means.  Plaintiff is incorrect.  In the Defendants' opening brief (Def. Mot. at 22-27), Defendants

3    presented a wide range of sources supporting the conclusion that a substantial relationship exists

4    between § 922(g)(3) as applied to drug users and Congress's goal of protecting public safety and

5    combating violent crime, including the legislative history of § 922(g)(3), similar state

6    restrictions, and academic and empirical studies.  In addition, the limited temporal scope of the

7    statute—tailoring the restriction to <u>current</u> unlawful users—ensures that the statute bears a

8    reasonable fit to the end it serves.  <u>See</u> <u>Carter</u>, 669 F.3d at 419; <u>Yancey</u>, 621 F.3d at 687 ("[T]he

9    Second Amendment . . . does not require Congress to allow [an unlawful user] to simultaneously

10   choose both gun possession and drug abuse.").  In response, Plaintiff makes three primary

11   arguments as to why § 922(g)(3) is not substantially related to the government interest in

12   protecting public safety, each of which is baseless.

13        First, Plaintiff contends that § 922(g)(3) bears no substantial relationship to its end

14   because of the statute's "extraordinary breadth and scope."  Pl's Op. at 21-22.  According to

15   Plaintiff, "[t]he overwhelming impact of the law falls on the shoulders of non-violent, harmless

16   individuals."  <u>Id.</u> at 21.  However, the fact that certain individuals who may theoretically pose a

17   lesser threat to public safety fall within the ambit of § 922(g)(3) does not render the statute

18   unconstitutional.  This is implicit in <u>Heller</u>'s recognition of the validity of categorical limitations

19   on the Second Amendment's scope.  554 U.S. at 626-27, n.26; <u>see also</u> <u>Skoien</u>, 614 F.3d at 641;

20   <u>Tooley</u>, 717 F. Supp. 2d at 597.  Moreover, "intermediate scrutiny, by definition, permits

21   legislative bodies to paint with a broader brush than strict scrutiny. . . . As a consequence, the

22   degree of fit between [§ 922(g)(3)] and the well-established goal of promoting public safety need

23   not be perfect; it must only be substantial."  <u>Heller II</u>, 698 F. Supp. 2d at 191 (citations and

24   internal punctuation omitted).  Plaintiff nevertheless argues that "huge swaths of the American

25   populace" are deprived of their Second Amendment rights by § 922(g)(3) and the ATF

26   regulation, because, according to Plaintiff, the restriction applies to all individuals who have

27

28
                                          14

1    reported using marijuana at some point in their lifetime and individuals who use prescription

2    drugs. Pl's Op. at 21. Plaintiff misreads the statute. The vast majority of these individuals are

3    not restricted by § 922(g)(3). Congress tailored § 922(g)(3) by focusing on only "current" users

4    of controlled substances, not individuals who have admitted to using marijuana at some point in

5    their past. As for prescription drugs, 27 C.F.R. § 478.11 defines "unlawful user of or addicted to

6    any controlled substance" as the use of a controlled substance "in a manner other than as

7    prescribed by a licensed physician."[9] Lawful prescription drug users are therefore not "unlawful

8    users" of controlled substances.

9        Second, Plaintiff mistakenly contends that the fact that § 922(g)(3) does not prohibit

10   users or abusers of alcohol from possessing firearms renders the statute unconstitutional. This

11   underinclusivity argument has been expressly rejected by at least one court of appeals. See

12   Carter, 669 F.3d at 421 ("Carter faults § 922(g)(3) for its under-inclusiveness by targeting

13   irresponsible users of some mind altering substances, such as marijuana, but not users of other

14   substances, such as alcohol. But this argument simply amounts to a disagreement with

15   Congress' policy decision to link the firearms prohibition in § 922(g)(3) to the Controlled

16   Substances Act, 21 U.S.C. § 802."). Additionally, the underinclusivity doctrine applies primarily

17   in the First Amendment context, and Plaintiff cites no authority for the proposition that the

18   doctrine should apply to her claim. Because it is used in strict scrutiny analysis, the First

19   Amendment underinclusivity doctrine is a poor fit to the Second Amendment issue here. See

20   United States v. Virginia, 518 U.S. 515, 573 (1996) (Scalia, J., dissenting) ("Intermediate

21   scrutiny has never required a least-restrictive-means analysis, but only a 'substantial relation'

22   between the classification and the state interests that it serves."). Furthermore, because the

23   doctrine's purpose is to prevent "governmental attempt[s] to give one side of a debatable public

24   question an advantage in expressing its views to the people" or government attempts to "select

25   ───────────
     [9] As noted, marijuana, a Schedule I drug, cannot be legally prescribed for medical use. See 21
26   U.S.C. § 829; Oakland Cannabis, 532 U.S. at 491.

27

28                                           15

the permissible subjects for public debate and thereby to control the search for political truth," City of Ladue v. Gilleo, 512 U.S. 43,  51 (1994) (internal citations and punctuation omitted), it is difficult to apply outside the First Amendment context, where content-based regulations of expression receive the most exacting scrutiny.[10]

Third, Plaintiff attempts to cast doubt on Congress's determination that marijuana use is linked to crime.  Pl's Op. at 22-23 ("There is no viable link between the use of cannabis and violent behavior.").  Plaintiff's argument is policy-based, and is intended to support her opinion that the majority of marijuana users are "non-violent, harmless individuals."  Id. at 21. Plaintiff's contentions would be better addressed to a legislative body, as "[u]nder the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation."  Ferguson v. Skrupa, 372 U.S. 726, 729 (1963); see also Turner Broad. Sys. v. FCC, 512 U.S. 622, 665-66 (1994) (noting that "Congress is far better equipped than the judiciary to 'amass and evaluate the vast amounts of data' bearing upon" complex and dynamic issues).  In any event, there are sound reasons why Plaintiff's policy arguments are not persuasive here.  See Def. Mot. at 23-25.

In sum, § 922(g)(3) does not violate the Second Amendment, as it is substantially related to the compelling government interest of reducing violent crime and protecting public safety.

---

[10] Moreover, in analyzing the constitutional propriety of the limitations of a statute, courts are "guided by the familiar principles that a statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind."  Buckley v. Valeo, 424 U.S. 1, 105 (1976) (internal citations and punctuation omitted); see also United States v. Lewitzke, 176 F.3d 1022, 1027 (7th Cir. 1999) (Congress did not act irrationally in imposing firearms disability solely upon persons convicted of domestic violence misdemeanors, despite the fact that "persons convicted of other sorts of misdemeanors [may] pose a danger to society if armed," because "Congress is free to take 'one step at a time'"); Olympic Arms v. Buckles, 301 F.3d 384, 390 (6th Cir. 2002) (rejecting argument that import ban of certain semi-automatic weapons was irrational because it prohibited firearms with more than one of four enumerated features, but allowed weapons with one of the features, because "Congress may work incrementally in protecting public safety" and its "decision first to target weapons commonly used for criminal activity or, likewise, those most heavily loaded with dangerous features is within their legislative authority").

16

III.   **SECTION 922(d)(3), AS APPLIED TO PLAINTIFF, DOES NOT VIOLATE THE SECOND AMENDMENT.**

Plaintiff's challenge to § 922(d)(3)'s restriction on the sale of firearms is similarly meritless.  Heller neither recognized a right to sell firearms nor called into question "laws imposing conditions and qualifications on the commercial sale of arms."  554 U.S. at 626–27.  In addition, for the same reasons that the Second Amendment does not preclude Congress from forbidding unlawful drug users from possessing firearms, Congress may also forbid that same group from acquiring firearms.  See Def. Mot. at 27-28; United States v. Chafin, 423 F. App'x 342, 344 (4th Cir. Apr. 13, 2011) (unpublished).

Plaintiff's only argument in rebuttal is that § 922(d)(3) allegedly "places an exceptional burden and liability upon firearms sellers" and is therefore unenforceable.  Pl's Op. at 24.  But Plaintiff lacks standing to challenge the burden on federal firearms licensees ("FFLs").  Kyung Park v. Holder, 572 F.3d 619, 625 (9th Cir. 2009) ("As a general rule, a third party does not [have] standing to bring a claim asserting a violation of someone else's rights.") (citation omitted).  Even if she did have standing, the alleged "burden" on FFLs is irrelevant here.  The only relevant burden in this case would be a burden on a constitutional right, and as stated, there is no constitutional right to sell a firearm.  See Def. Mot. at 27-28; Chafin, 423 F. App'x at 344.

IV.   **PLAINTIFF'S EQUAL PROTECTION CLAIM MUST FAIL.**

Plaintiff has also failed to adequately articulate an equal protection claim because users of marijuana for medical purposes are not, as Plaintiff claims, "law-abiding citizens."  Pl's Op. at 9; Compl. at ¶ 3-4.  In order to state an equal protection claim, Plaintiff "must show that she is being treated differently from similarly situated individuals."  Gonzalez-Medina v. Holder, 641 F.3d 333, 336 (9th Cir. 2011).  Despite Plaintiff's repeated assertions that she is a "law-abiding citizen," federal law does not recognize a difference between medical marijuana users and other marijuana users.  See Alternative Community Health Care Co-op., Inc. v. Holder, 2012 WL 707154, at *5 (S.D. Cal. March 5, 2012) (finding that users of marijuana for medicinal purposes

17

1   in violation of the Controlled Substances Act are not similarly situated to law-abiding citizens);

2   see also supra at 7-9 and Def. Mot. at 5, 29-30.  Because it is reasonable for the government to

3   infer that individuals holding state-issued medical marijuana registry cards use marijuana, and

4   because marijuana users violate federal law, Plaintiff fails to identify any similarly situated to

5   citizens who do not violate federal law.[11]

6        Plaintiff also claims—for the first time in her opposition brief—that "registry cardholders

7   are similarly situated to persons using medical marijuana in states where registry is not

8   required."  Pl's Op. at 9.  Plaintiff argues that because some states allow medical marijuana use

9   without issuing registry identification cards, some medical marijuana users will be able to buy

10  guns more easily than people who live in states that require medical marijuana registry cards.

11  Pl's Op. at 10.  This argument fails to state a claim and should be dismissed as well.

12       As an initial matter, the facts underlying this argument were not set forth in the

13  Complaint and therefore are not properly before this Court.  See Broam v. Bogan, 320 F.3d

14  1023, 1026 n.2 (9th Cir. 2003) (noting that a court may not look beyond the complaint to

15  plaintiff's briefs when determining the propriety of a motion to dismiss for failure to state a

16  claim); Ruiz v. Laguna, No. 05-CV-1871, 2007 WL 1120350, at *26 (S.D. Cal. March 28, 2007)

17  ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion

18  to dismiss.") (citation and internal quotation marks omitted).  In particular, Plaintiff provides no

19  citation or support for the bare assertion in her Opposition that "[s]everal states, such as

20  California, have provided for the legal use of medical marijuana without the necessity of

21  registering with the state or obtaining a state-issued registry identification card."  Pl's Op. at 9.

22

23

_____

24  [11] Plaintiff also erroneously argues that she is similarly situated to "users of the FDA-approved
    drug Marinol, which contains the same active ingredient as marijuana."  Pl's Op. at 9.  But
25  Marinol is not a Schedule I controlled substance under the CSA, and therefore its use with a
    prescription does not violate federal law.
26

27                                                18

28

1      Even if the Court overlooks this pleading defect, Plaintiff does not claim (because she

2  cannot) that the "law is applied in a discriminatory manner or imposes different burdens on

3  different classes of people."  Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995).

4  The law applies equally to all users of medical marijuana, and nothing in § 922(g)(3), 27 C.F.R.

5  § 478.11, or the Open Letter suggests otherwise.  Instead, Plaintiff's argument is that medical

6  marijuana users in certain states may more easily evade the law by purchasing firearms without

7  notifying sellers that they use marijuana.  This is not a proper equal protection claim, as the law

8  facially applies to every marijuana user, even if some people are able—through deceit or fraud—

9  to avoid prosecution or obtain a firearm.  See United States v. Hendrickson, 664 F. Supp. 2d 793,

10  798 (E.D. Mich. 2009) ("There is no right under the Constitution to have the law go unenforced

11  against you, even if you are the first person against whom it is enforced . . . . The law does not

12  need to be enforced everywhere to be legitimately enforced somewhere." (internal quotation

13  omitted)).

14      Furthermore, a marijuana registration card is only one of many pieces of evidence that an

15  FFL located in any state can consider in determining whether a particular buyer is an "unlawful

16  user of or addicted to a controlled substance."  As set forth in the Open Letter, it is incumbent

17  upon FFLs to consider "evidence of a recent use or possession of a controlled substance" during

18  a potential sale of a firearm.  The Letter notes that § 922(d)(3) "makes it unlawful for any person

19  to sell or otherwise dispose of any firearm or ammunition to any persons knowing or **having**

20  **reasonable cause to believe** that such person is an unlawful user of or addicted to a controlled

21  substance." See Compl., Ex. 2-B. (emphasis in original).  Citing 27 C.F.R. § 478.11, the Letter

22  further states that "[a]n inference of current use may be drawn from evidence of a recent use or

23  possession of a controlled substance or a pattern of use or possession that reasonably covers the

24  present time." Id.  A marijuana registry card is simply an example of the evidence that the FFL

25  may consider, regardless of the state in which the sale takes place.  Id.

19

**V.   DEFENDANTS HAVE NOT VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE OR PROCEDURAL DUE PROCESS.**

Plaintiff argues in her opposition brief that Defendants have violated her right to procedural and substantive due process.  Pl's Op. at 3-10.  Neither of these claims was properly set forth in her Complaint.  Though Plaintiff brings a claim under the Due Process Clause of the Fifth Amendment, this claim is unambiguously an equal protection claim, and not a claim based on procedural or substantive due process.  See Compl. ¶¶ 52-57; Compl. Prayer for Relief, ¶ 2 (seeking a declaration that §§ 922(g)(3) and 922(d)(3) violate the Due Process Clause "by denying equal protection of the laws to law-abiding, qualified adults").  Accordingly, the Court should not address these "claims."  See Broam, 320 F.3d at 1026 n.2; Ruiz, 2007 WL 1120350, at *26.

**A.  There is No Substantive Due Process Right to Use Marijuana for Medical Purposes.**

In the event that the Court addresses the substantive or due process claims raised for the first time in Plaintiff's opposition brief, these claims have no merit.  Plaintiff posits that she has a "substantive right to treat her medical condition in the manner recommended by her physician and which she and her physician agree is the [best] course of treatment for her."  Pl's Op. at 7. Plaintiff appears to aim her substantive due process challenge at the Controlled Substances Act and its classification of marijuana as a Schedule I drug.[12]  21 U.S.C. § 812(c), Schedule I(c)(10).

_____

[12] To the extent that Plaintiff's substantive due process "claim" may be read to implicate her Second Amendment rights, such a claim should be rejected.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim."  Albright v. Oliver, 510 U.S. 266, 266 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  Accordingly, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272, n.7 (1997); see also Richards v. County of Yolo, --- F.Supp.2d ----, No. 2:09-CV-01235, 2011 WL 1885641, at *6 n.8 (E.D. Cal. May 16, 2011) ("Though the right to keep and bear arms for self-defense is a

(*Footnote continued on following page.*)

20

1   No matter how Plaintiff attempts to frame the right that she seeks to vindicate, the argument is
2   foreclosed by <u>Raich v. Gonzales</u>, 500 F.3d 850, 861-66 (9th Cir. 2007) ("<u>Raich II</u>"), in which the
3   Ninth Circuit rejected a nearly identical attempt to establish a fundamental right to use marijuana
4   for medical reasons.

5          Substantive due process protects asserted rights only if they are "'deeply rooted in this
6   Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither
7   liberty nor justice would exist if they were sacrificed.'" <u>Id.</u> at 864 (quoting <u>Washington v.</u>
8   <u>Glucksberg</u>, 521 U.S. 702, 720-21 (1997)).  Under <u>Glucksberg</u>, a court is obligated to "carefully
9   formulat[e]" a "narrow definition of the interest at stake," instead of accepting a plaintiff's broad
10  rhetorical flourishes, before deciding whether substantive due process protects that interest.  <u>Id.</u>
11  at 863.

12         Here, though Plaintiff attempts to describe the substantial right at issue in terms of the
13  right to seek medical treatment, she omits the central component of the right she seeks to
14  vindicate: the use of <u>marijuana</u> in the course of her treatment.  Plaintiff's articulation of her right
15  is similar to the alleged right that the <u>Raich II</u> plaintiff sought to establish.  <u>Id.</u> at 864 (noting that
16  plaintiff's "carefully crafted interest" was "a fundamental right to 'mak[e] life-shaping medical
17  decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain,
18  and preserve her life'").  The Ninth Circuit held that Raich's framing of the fundamental right
19  was inaccurate because "[c]onspicuously missing from Raich's asserted fundamental right is its
20  centerpiece: that she seeks the right to use <u>marijuana</u> to preserve her bodily integrity, avoid pain,
21  and preserve her life." <u>Id.</u> (emphasis in original).  As in <u>Raich II</u>, the right Plaintiff seeks to
22  vindicate in this case is the right to use marijuana as the course of medical treatment.

23         With this interest in mind, Plaintiff fails the second part of the <u>Glucksberg</u> test, as the
24  Ninth Circuit has rejected the existence of a fundamental right to use marijuana for medical

----

fundamental right, that right is more appropriately analyzed under the Second Amendment.")
(citation and internal quotations omitted).

25

26

27

28

1    reasons.  The right to use marijuana, even by persons who claim they need to use it to alleviate

2    serious medical symptoms, does not meet the exacting standards required for the recognition of a

3    new substantive due process right.  The <u>Raich II</u> court, in analyzing whether the asserted right

4    was "deeply rooted in this nation's history and tradition" and "implicit in the concept of ordered

5    liberty," concluded that "federal law does not recognize a fundamental right to use medical

6    marijuana prescribed by a licensed physician to alleviate excruciating pain and human

7    suffering." <u>Id.</u> at 866; <u>see also</u> <u>Marin Alliance</u>, 2011 WL 5914031, at *11 ("Finally—and

8    significantly—it is difficult to reconcile the purported existence of a fundamental right to use

9    marijuana for medical reasons with Congress' pronouncement that 'for purposes of the [CSA],

10   marijuana has no currently accepted medical use at all.'" (citing <u>United States v. Oakland</u>

11   <u>Cannabis</u>, 532 U.S. at 491)).  Accordingly, even had Plaintiff adequately raised a substantive due

12   process claim, the claim must be dismissed.[13]

13        **B.  Plaintiff's Procedural Due Process "Claim" Must Fail, as She Has Not Been**
          **Deprived of a Constitutionally-Protected Liberty or Property Interest.**
14

15        Plaintiff further argues for the first time in her opposition brief that Defendants "deprived

16   [her of her] fundamental rights in direct violation of the procedural requirements of the Due

17   Process clause."  Pl's Op. at 5.  In the event the Court addresses this claim, Plaintiff fails to state

18   a prima facie case to establish a procedural due process claim, which requires that Plaintiff allege

19   facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and

20

     ---

21   [13] Plaintiff cites a perceived "growing trend" in the number of states that have legalized the use
     of marijuana for medical purposes in an effort to show that "physicians believe cannabis has
22   medicinal value and the public believes medical cannabis is a viable course of treatment."  Pl's
     Op. at 7.  Plaintiff's characterization of what physicians or the public believe notwithstanding,
23   under federal law, marijuana "has no currently accepted medical use in treatment in the United
     States." 21 U.S.C. § 812(b)(1).  More to the point, decriminalization measures in various states
24   cannot retroactively create a "deeply rooted" history and tradition of a constitutional right to use
     marijuana, nor do those measures establish that a right to use marijuana is necessary to ensure
25   that "liberty [and] justice would exist."  <u>See</u> <u>Raich II</u>, 500 F.3d at 864.
26

27                                            22
28

---

(2) a denial of adequate procedural protections." <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1085 (9th Cir. 2003).  Plaintiff's claim cannot survive the threshold inquiry, as she has not been deprived of a constitutionally-protected liberty or property interest.  <u>See</u> <u>Erickson v. United States</u>, 67 F.3d 858, 861 (9th Cir. 1995) (finding that the guarantee of procedural due process applies only when a constitutionally protected liberty or property interest is at stake).  As stated, users of marijuana for medical purposes, like all users of controlled substances in violation of federal law, fall outside of the scope of the Second Amendment.  Plaintiff, therefore, has not shown that the government has deprived her of any constitutionally-protected liberty or property interest.  <u>See</u> <u>Clark K. v. Willden</u>, 616 F. Supp. 2d 1038, 1041-42 (D. Nev. 2007) (dismissing procedural due process claims where plaintiffs failed to set forth a proper constitutionally-protected interest).

**VI.    PLAINTIFF'S CONSPIRACY AND DAMAGES CLAIMS SHOULD BE DISMISSED.**

Defendants moved to dismiss Plaintiff's conspiracy claim for lack of subject matter jurisdiction.  Def. Mot. at 31-33.  Plaintiff consents to the dismissal of this claim, Pl's Op. at 25 ("Plaintiff does not object to the dismissal of her conspiracy claim."), and it accordingly should be dismissed.  In addition, to the extent that the Complaint could be construed otherwise, Plaintiff concedes that she may not pursue monetary damages against the United States.  Def. Mot. at 30-31; Pl's Op. at 25.

*                    *                    *

23

1

## **CONCLUSION**

2       For the reasons stated above and in Defendants' opening brief, the Court should grant

3   Defendants' motion to dismiss (or in the alternative, enter summary judgment for Defendants),

4   and deny Plaintiff's cross-motion for summary judgment.

5

Dated: March 30, 2012                    Respectfully submitted,

6

7                                        STUART F. DELERY
                                         Acting Assistant Attorney General
8
                                         DANIEL G. BOGDEN
9                                        United States Attorney

10                                       SANDRA M. SCHRAIBMAN
                                         Assistant Director
11
                                         /s/ John K. Theis
12                                       JOHN K. THEIS
                                         Trial Attorney
13                                       United States Department of Justice
                                         Civil Division, Federal Programs Branch
14                                       20 Massachusetts Ave., N.W., Rm. 6701
                                         Washington, D.C.  20530
15                                       Telephone: (202) 305-7632
                                         Facsimile: (202) 616-8460
16                                       John.K.Theis@usdoj.gov

17                                       *Attorneys for Defendants the United States of*
                                         *America, ATF, U.S. Attorney General Eric Holder,*
18                                       *Acting ATF Director B. Todd Jones, and*
                                         *Assistant ATF Director Arthur Herbert,*
19                                       *in their official capacities (collectively, the United*
                                         *States)*
20

21

22

23

24

25

26

27                                              24

28

**108**

**PROOF OF SERVICE**

    I, John K. Theis, Trial Attorney with the United States Department of Justice, certify that the following individual was served with **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** on this date by the below identified method of service:

**Electronic Case Filing**:

Charles C. Rainey Esq. (Bar No. 10723)
The Law Firm of Rainey Devine
8915 S. Pecos Road, Suite 20
Henderson, NV 89074
chaz@raineydevine.com

*Attorney for Plaintiff*

DATED this 30th day of March 2012.

                     /s/ *John K. Theis*
                     JOHN K. THEIS
                     Trial Attorney
                     United States Department of Justice

1  CHARLES C. RAINEY, ESQ.
   Nevada Bar No. 10723
2  Chaz@raineydevine.com
   JENNIFER J. HURLEY, ESQ.
3  Nevada Bar No. 11817
   Jennifer@raineydevine.com
4  RAINEY DEVINE, ATTORNEYS AT LAW
   8915 S. Pecos Road, Ste. 20A
5  Henderson, Nevada 89074
   Telephone:  (702) 425.5100
6  Facsimile:  (888) 867.5734

7  *Attorneys for Plaintiff*

8

9              UNITED STATES DISTRICT COURT

10                  DISTRICT OF NEVADA

11

12  S. ROWAN WILSON, an individual,       Case No.  2:11-cv-1679

        Plaintiff,
13
    v.
14
    ERIC HOLDER, as Attorney General of   **FIRST AMENDED COMPLAINT**
15  the United States; THE U.S. BUREAU OF
    ALCOHOL,    TOBACCO,    FIREARMS
16  AND EXPLOSIVES; B. TODD JONES, as
    Acting Director of the U.S. Bureau of
17  Alcohol,   Tobacco,   Firearms   and
    Explosives;   ARTHUR   HERBERT,   as
18  Assistant Director of the U.S. Bureau of
    Alcohol,   Tobacco,   Firearms   and
19  Explosives; and THE UNITED STATES
    OF AMERICA,
20
        Defendants.
21

22        COMES NOW Plaintiff S. ROWAN WILSON (the "Plaintiff" or "Ms. Wilson") by

23  and through her counsel Charles C. Rainey and Jennifer J. Hurley of the THE LAW FIRM

24  OF RAINEY DEVINE, and hereby submits her Complaint against the Defendants

25  ATTORNEY  GENERAL  ERIC  HOLDER,  THE  U.S.  BUREAU  OF  ALCOHOL,

26  TOBACCO, FIREARMS AND EXPLOSIVES, ACTING DIRECTOR B. TODD JONES,

27  ASSISTANT  DIRECTOR  ARTHUR  HERBERT,  and  THE  UNITED  STATES  OF

28  AMERICA (collectively, the "Defendants"), inclusive, alleging as follows:

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-1-

**INTRODUCTION**

1. This is an action to uphold the Constitutional right to keep and bear arms, which extends to all law-abiding adult citizens of the United States, and includes the right to acquire such arms.

2. The Second Amendment "guarantee[s] the individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 2797, 2821 (2008).

3. However, in contravention of this fundamental constitutional right, the Defendants have prohibited a certain class of law-abiding, responsible citizens from exercising their right to keep and bear arms; the Defendants have enacted laws, policies, procedures and customs with the specific intent of denying the Second Amendment rights of persons who have registered to use medical marijuana pursuant to and in accordance with state law. The Defendants have deliberately banned such persons from purchasing handguns, or firearms of any kind, from federally licensed firearms dealers without providing any means of due process prior to depriving these persons of their rights.

4. Based on the Defendants' interpretation of Section 922(g)(3) of the federal criminal code, the law prohibits law-abiding adults who have obtained medical marijuana cards pursuant to state law from lawfully purchasing what the Supreme Court has called "the quintessential self-defense weapon" and "the most popular weapon chosen by Americans for self-defense in the home." *Heller*, 128 S.Ct. at 2818.

5. This blanket ban violates the constitutional rights of thousands of responsible, law-abiding American citizens and is thus invalid under the Second and Fifth Amendments.

**THE PARTIES**

6. Plaintiff S. ROWAN WILSON is a natural person and a citizen of the United States and of the State of Nevada. Ms. Wilson presently intends to acquire a functional

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-2-

*111*

1   handgun for use within her home for self-defense but is prevented from doing so by
2   Defendants' active enforcement of the unconstitutional policies complained of in this
3   action. Ms. Wilson fears arrest, criminal prosecution, incarceration, and a fine if she
4   were to acquire the aforementioned handgun. Indeed, Ms. Wilson has been unable to
5   do so.

6       7.  Defendant ATTORNEY GENERAL ERIC HOLDER heads the United States
7   Department of Justice, which is the agency of the United States government responsible
8   for enforcement of federal criminal laws. Defendant Holder, in his capacity as Attorney
9   General, is responsible for executing and administering laws, customs, practices, and
10  policies of the United States and is presently enforcing the laws, customs, practices and
11  policies complained of in this action. Defendant Holder has ultimate authority for
12  supervising all of the operations and functions of the Department of Justice.

13      8.  Defendant U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
14  EXPLOSIVES ("BATFE") is an arm of the Department of Justice responsible for the
15  investigation and prevention of federal offenses involving the use, manufacture, and
16  possession of firearms. The BATFE also regulates, via licensing, the sale, possession,
17  and transportation of firearms and ammunition in interstate commerce. The BAFTE is
18  authorized to implement and enforce the federal law challenged in this case. BATFE is
19  currently enforcing the laws, customs, practices and policies complained of in this
20  action in Plaintiff's jurisdiction.

21      9.  Defendant B. TODD JONES is the Acting Director of the BATFE and, in that
22  capacity, is presently enforcing the laws, customs, practices and policies complained of
23  in this action.

24      10. Defendant ARTHUR HERBERT is the Assistant Director of the BATFE and, in
25  the capacity, is presently enforcing the laws, customs, practices and policies complained
26  of in this action.

27      11. Defendant UNITED STATES OF AMERICA is a proper defendant in this action
28  pursuant to 5 U.S.C. § 702.

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-3-

**JURISDICTION AND VENUE**

12. This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

13. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 2412. Therefore, jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States.

14. The Defendants, including the BATFE, are subject to suit for relief other than money damages pursuant to 5 U.S.C. § 702.

15. This Court has authority to award costs and attorneys fees pursuant to 28 U.S.C. § 2412.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

**COMMON ALLEGATIONS**

17. On October 4, 2011, Plaintiff S. Rowan Wilson ("Ms. Wilson"), an adult-aged, law-abiding, responsible citizen, sought to purchase a handgun to use for self-defense in her home. *See* **DECLARATION OF S. ROWAN WILSON**, attached hereto as Exhibit "**1**" and incorporated herein by reference.

18. That day, Ms. Wilson visited Custom Firearms & Gunsmithing in Moundhouse, Nevada, hoping to purchase a Smith & Wesson model 686 chamber in 0.357" magnum (hereinafter referred to as the "Firearm"). *Id*. at 4:26.

19. However, when Ms. Wilson began to fill out her application paperwork for the purchase of a gun, the gun shop's proprietor, Frederick Hauser ("Mr. Hauseur"), stopped Ms. Wilson from completing question 11.e on the application.

20. Question 11.e asked whether the applicant was addicted to or an unlawful user of a controlled substance.

21. Ms. Wilson's natural inclination was to answer Question 11.e as "no."

22. However, Mr. Hauseur explained to Ms. Wilson that because Ms. Wilson was the holder of a state-issued medical marijuana registry card, Ms. Wilson was automatically deemed an unlawful user of a controlled substance and therefore not someone that he

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

could sell a firearm to.

23. Mr. Hauseur further informed Ms. Wilson that he could not sell her a firearm without jeopardizing his federal firearms license. *Id.* at 5:32; *see* **DECLARATION OF FREDERICK JOHN HAUSEUR, IV**, attached hereto as Exhibit "**2**" and incorporated herein by reference.

24. Mr. Hauseur explained to Ms. Wilson that because of the mere fact that he was aware Ms. Wilson possessed a state-issued medical marijuana registry card he was prohibited from selling her the Firearm, any other firearm, or even any ammunition. Exhibit 1 at 5:32; Exhibit 2 at 3:12-14.

25. Roughly a week prior to Ms. Wilson's visit to Custom Firearms & Gunsmithing, Mr. Hauseur received notice of a letter dispatched by the BATFE to all federal firearms licensees, in which the BATFE specifically forbade the sale of any firearms or ammunition to any person possessing a state-issued medical marijuana registry card. *See* Exhibit 2-B.

26. Mr. Hauseur's refusal to sell Ms. Wilson the Firearm is the direct result of laws, policies, procedures and/or customs initiated and promulgated by the Defendants. *See* Exhibit 2 at 2:7-8; Exhibit 2-B; *see also* 18 USC 922(g)(3).

27. Ms. Wilson is a medical professional, who has, for some time, researched and studied the use of cannabis for medical purposes. *See* Exhibit 1 at 2-3.

28. Approximately three years ago, Ms. Wilson learned from a friend, who was suffering from severe endometriosis, that the use of cannabis can substantially mitigate, or even eliminate, the pain caused by persistent muscle spasms and other detrimental medical conditions. *Id.* at 2:14. Since that time, Ms. Wilson has extensively researched the efficacy of using cannabis as a medical treatment, including conducting interviews with a number of licensed physicians. *Id.* at 2:15. Most recently, Ms. Wilson met with Dr. Alan Shackelford, a practicing physician in Colorado and former fellow with the Harvard University School of Medicine, to discuss the use of cannabis as a medical treatment. *Id.* at 3:16-17.

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-5-

29. Ms. Wilson is currently a resident of Carson City, Nevada, and has resided in the State of Nevada since September 2006. Exhibit 1 at 2:4-5.

30. Ms. Wilson holds a bachelor's degree from the University of Texas, Austin, and a master's degree from Jones International University of Colorado. *Id.* at 2:6-8.

31. For the past year, Ms. Wilson has worked as a professional caregiver and medical technician, most recently accepting a position with Carson Valley Residential Care. *Id.* at 2:8.

32. For the past few months, Ms. Wilson has been actively researching medical schools and has met with and shadowed a series of doctors, as she plans to pursue a doctor of osteopathy. *Id.* at 2:9-12.

33. Ms. Wilson has additionally met with dozens of patients that have communicated to her their positive experiences with medical cannabis. *Id.* at 3:18.

34. Most of these individuals are elderly persons suffering from serious ailments, who find substantial relief and curative benefits from the use of cannabis. *Id.* Most of the individuals Ms. Wilson has encountered certainly do not fit the commonly portrayed, narrow-minded stereotype of a marijuana user. *Id.* at 3:19.

35. Ms. Wilson's interest in the medical efficacy of cannabis stems, in part, from her own struggles with severe dysmenorrhea (also referred to as severe menstrual uterine contractions), and the possible treatment options that cannabis offers. *Id.* at 3:20. Since the age of ten (10), Ms. Wilson has suffered from severe dysmenorrhea, which is often debilitating, even leading to further painful side effects, such as severe nausea and cachexia. *Id.*

36. In the fall of 2010, Ms. Wilson decided to apply for a Nevada medical marijuana registry card. *Id.* at 3:21.

37. The Nevada State Constitution states, in relevant part, at Article 4, Section 38:
> "The legislature shall provide by law for: (a) The use by a patient, upon the advice of his physician, of a plant of the genus Cannabis for the treatment or alleviation of cancer, glaucoma, acquired immunodeficiency syndrome; severe, persistent nausea of cachexia resulting from these or other chronic or debilitating medical conditions; epilepsy and other disorders characterized by seizure; multiple sclerosis

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-6-

and other disorders characterized by muscular spasticity; or other conditions approved pursuant to law for such treatment."

38. Furthermore, Chapter 453A of the Nevada Revised Statutes provides a statutory framework specifically authorizing the issuance of medical marijuana registry cards to persons that have a doctor's recommendation for the use of medical marijuana.

39. In October 2010, in full compliance with Nevada law, Ms. Wilson obtained and submitted an application for a Nevada State-issued medical marijuana registry card. Exhibit 1 at 3:21-24; *see also* Exhibit 1-B.

40. Ms. Wilson obtained a doctor's recommendation for the use of medical marijuana, as required by Nevada law and submitted all of the appropriate paperwork to the State. *Id*. at 3:22.

41. On May 12, 2011, Ms. Wilson was issued a medical marijuana registry card from the State of Nevada. *Id*. at 3:24; *see also* Exhibit 1-B.

42. Approximately five months later, on October 4, 2011, when Ms. Wilson attempted to purchase the Firearm, the owner of the gun store, Fred Hauseur, denied Ms. Wilson's right to purchase the Firearm based solely on the fact that she possessed a valid State of Nevada medical marijuana registry card. Exhibit 2 at 3:12-13.

43. In denying Ms. Wilson's attempted purchase of the Firearm, Mr. Hauseur reasonably relied on the instructions directly provided by the BATFE. On or about September 21, 2011, the BATFE issued an open letter to all federal firearms licensees in which the BATFE specifically instructed firearms licensees to deny the sale of firearms or ammunition to any person whom the licensee is aware possesses a card authorizing such person to possess and use marijuana under state law. *Id*. at 2:7-8; *see also* Exhibit 2-B.

44. Mr. Hauseur received the BATFE open letter on or about October 1, 2011. *Id*. at 2:7. As a direct result of the open letter, Mr. Hauseur was compelled to deny Ms. Wilson's attempt to purchase the Firearm. *Id*. At 2:12-14.

45. Furthermore, each purchase of a firearm requires that the purchaser complete Form 4473, as provided by the BATFE. Question 11(e) of Form 4473 asks, "Are you an

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-7-

unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance?" Exhibit 1 at 4:29.

46. While Ms. Wilson's natural inclination would be to answer "No" to question 11(e), Ms. Wilson was informed by Mr. Hauseur that the BATFE has promulgated a policy whereby any person holding a medical marijuana registry card is automatically considered an "unlawful user of, or addicted to marijuana." *Id.* at 4:30.

47. Because Ms. Wilson holds a valid medical marijuana registry card issued by the State of Nevada, but is clearly not an unlawful user of or addicted to marijuana, Ms. Wilson elected to leave question 11(e) on Form 4473 blank. *Id.* at 4:31.

48. Nevertheless, when Ms. Wilson provided Form 4473 to Mr. Hauseur, Mr. Hauser informed her that, even with Question 11(e) left blank, he could not sell her a firearm without jeopardizing his federal firearms license, since he had actual knowledge that Ms. Wilson possesses a state-issued medical marijuana registry card. *Id.* at 5:32; Exhibit 2 at 3:12-14.

49. Ms. Wilson has never been charged with or convicted of any drug-related offense, or any criminal offense for that matter. Indeed, no evidence exists that Ms. Wilson has ever been an "an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance." Ms. Wilson maintains that she is not an unlawful user of or addicted to marijuana or any other controlled substance. Nonetheless, Ms. Wilson was denied her Second Amendment right to keep and bear arms based solely on her possession of a valid State of Nevada medical marijuana registry card.

## I.

## FIRST CAUSE OF ACTION

## (VIOLATION OF 2nd AMENDMENT)

50. Plaintiff hereby incorporates by reference paragraphs one (1) through forty-nine (49) as though fully set forth herein.

51. Title 18, Sections 922(g)(3) and 922(d)(3) and Title 27, Section 478.11 of the Code

-8-

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

of Federal Regulations ban federally licensed firearms dealers from selling firearms to any person "who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."

52. The Defendants have implemented and are enforcing a policy whereby any person who possesses a medical marijuana card validly issued pursuant to State law or any person who a federally licensed firearms dealer "reasonably suspects" possesses a medical marijuana card validly issued pursuant to State law is summarily and conclusively deemed to be "an unlawful user of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."

53. Thus, any person who possesses a medical marijuana card validly issued by pursuant to State law may not purchase a firearm from any federally licensed firearms dealer without committing a federal offense under Title 18, Section 922(g)(3) and Title 27, Section 478.11, and a federally licensed firearms dealer may not sell a firearm to any person who he knows or "reasonably suspects" possesses a medical marijuana card validly issued pursuant to State law without committing a federal offense under Title 18, Section 922(d)(3).

54. As a result of Title 18, Sections 922(g)(3) and 922(d)(3) and Title 27, Section 478.11 of the Code of Federal Regulations and the Defendants' ruling that any person who possesses a medical marijuana card validly issued pursuant to State law is conclusively deemed to be "an unlawful user of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act" the Plaintiff has been denied her Second Amendment right to obtain and possess a handgun.

55. These laws and policies infringe upon, and impose an impermissible burden upon, the Plaintiff's right to keep and bear arms under the Second Amendment to the United States Constitution.

56. As a direct and proximate result of the foregoing law, policy, practice and/or procedure, as enacted and promulgated by the Defendants, the Plaintiff has suffered and continues to suffer damages.

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

57. The Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

## II.

## SECOND CAUSE OF ACTION

## (VIOLATION OF EQUAL PROTECTION CLAUSE OF THE 5th AMENDMENT)

58. Plaintiff hereby incorporates by reference paragraphs one (1) through fifty-seven (57) as though fully set forth herein.

59. Title 18, Sections 922(g)(3) and 922(d)(3) and Title 27, Section 478.11 of the Code of Federal Regulations ban federally licensed firearms dealers from selling firearms to any person "who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."

60. The Defendants have implemented and are enforcing a policy whereby any person who possesses a medical marijuana card validly issued pursuant to State law is automatically and conclusively deemed to be "an unlawful user of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."

61. As a result of Title 18, Sections 922(g)(3) and 922(d)(3) and Title 27, Section 478.11 of the Code of Federal Regulations, and the Defendants' policy regarding persons who possesses a valid medical marijuana card issued pursuant to state law, the Plaintiff is being treated differently from similarly situated individuals.

62. Specifically, Plaintiff is being treated differently from persons who are prescribed medical marijuana in states where the obtainment of a state-issued medical marijuana registry card is not required. Because Plaintiff lives in a state where she is required to obtain a medical marijuana card prior to invoking any of the rights or benefits set forth in her state's statutes regarding medical marijuana and Plaintiff has followed such laws, she is automatically determined by Defendants to be an "unlawful user" of marijuana by Defendants regardless of whether or not she actually uses marijuana, and based on the Defendants' conclusory determination is denied her second amendment rights.

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-10-

1   Meanwhile, a person who lives in a state where a registration card is not required who

2   is prescribed marijuana by his or her doctor is not automatically presumed to be an

3   "unlawful user" of marijuana by the Defendants. Thus, Plaintiff is being treated

4   differently from similarly situated persons.

5   63. Plaintiff is also being treated differently from similarly situated persons with

6   similar medical conditions to those of the Plaintiff. The Plaintiff has been denied her

7   right to purchase a handgun based on the Defendants' classification of Plaintiff as an

8   "unlawful user" of marijuana simply because she has followed state laws for the

9   obtainment of a method of treatment for her medical condition. Other similarly situated

10  individuals who likewise pursue different methods of treatment for medical conditions

11  have not been denied their ability to obtain handguns.

12  64. These laws and policies violate the Plaintiff's right to equal protection of the laws

13  guaranteed under the Equal Protection Clause of the Fifth Amendment to the United

14  States Constitution.

15  65. As a direct and proximate result of the foregoing law, policy, practice and/or

16  procedure, as enacted and promulgated by the Defendants, the Plaintiff has suffered

17  and continues to suffer damages.

18  66. The Plaintiff has incurred attorney's fees and costs as a direct result of

19  prosecuting the present court action.

20              **III.**

21         **THIRD CAUSE OF ACTION**

22  **(VIOLATION OF PROCEDURAL DUE PROCESS CLAUSE OF 5th AMENDMENT)**

23  67. Plaintiff hereby incorporates by reference paragraphs one (1) through sixty-six

24  (66) as though fully set forth herein.

25  68. Plaintiff possesses a protected liberty interest, namely, her right to possess a

26  firearm under the Second Amendment.

27  69. The Defendants took legislative action by adopting a policy whereby any person

28  who possesses a medical marijuana card validly issued pursuant to State law is

-11-

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

automatically and conclusively deemed to be "an unlawful user of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" and therefore such a person cannot purchase a handgun from a federally licensed firearms dealer without committing a federal offence under Title 18, Sections 922(g)(3) and Title 27, Section 478.11 of the Code of Federal Regulations. Such policy is not merely interpretive.

70. Defendants deprived the Plaintiff of her protected liberty interest through their promulgation of their policy whereby any person who possesses a medical marijuana card validly issued pursuant to State law is automatically and conclusively deemed to be "an unlawful user of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" and therefore such a person cannot purchase a handgun from a federally licensed firearms dealer without committing a federal offence under Title 18, Sections 922(g)(3) and Title 27, Section 478.11 of the Code of Federal Regulations.

71. The Defendants have denied the Plaintiff adequate procedural protections before depriving her of her right to purchase and possess a firearm. Defendants did not issue any notice or hold any hearing prior to depriving the Plaintiff of her right. Defendants also have not offered any means for the Plaintiff to reclaim her right. In violation of the Plaintiff's right to procedural due process, the Defendants have unilaterally and conclusively determined without any reason or supporting evidence that the Plaintiff is an "unlawful user" of marijuana simply because the State of Nevada has conferred on her the right to use medical marijuana.

72. As a direct and proximate result of the Defendants' above-described actions, the Plaintiff has suffered and continues to suffer damages.

73. The Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

/ / /

/ / /

RAINEY   •   DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-12-

## IV.

## FOURTH CAUSE OF ACTION

## (VIOLATION OF SUBSTANTIVE DUE PROCESS CLAUSE OF 5th AMENDMENT)

74. Plaintiff hereby incorporates by reference paragraphs one (1) through seventy-three (73) as though fully set forth herein.

75. The Plaintiff's right to possess a handgun under the Second Amendment is objectively deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed.

76. While it has been recognized that the Second Amendment is not unlimited and restrictions prohibiting felons from possessing firearms are valid, the Plaintiff's mere possession of a validly issued state medical marijuana card does not make her a felon nor does it mean that the Plaintiff has ever even used marijuana.

77. At the same time, Plaintiff possesses a fundamental right to free speech under the First Amendment which includes certain non-verbal speech which, in this case, is the possession of a medical marijuana registry card validly issued pursuant to state law.

78. Through Title 18, Sections 922(g)(3) and 922(d)(3) and Title 27, Section 478.11 of the Code of Federal Regulations, and their policy whereby any person who possesses a medical marijuana card validly issued pursuant to State law is automatically and conclusively deemed to be "an unlawful user of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" and thereby prohibited from purchasing a handgun from a federally licensed firearms dealer without committing a federal offence, Defendants have deprived Plaintiff of her substantive due process.

79. As a direct and proximate result of the Defendants' above-described actions, the Plaintiff has suffered and continues to suffer damages.

80. The Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

-13-

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

# V.

## **FIFTH CAUSE OF ACTION**

## (VIOLATION OF 1st AMENDMENT)

81. Plaintiff hereby incorporates by reference paragraphs one (1) through eighty (80) as though fully set forth herein.

82. Under the First Amendment, Plaintiff possesses a fundamental right to free expression in the forms of freedom of association and free speech including certain non-verbal speech and communicative conduct, which, in this case, includes, without limitation, the acquisition, possession, and acknowledgment of possession of a medical marijuana registry card validly issued pursuant to state law.

83. The legalization of marijuana for medicinal purposes has been for years, and continues to be, a matter of political debate throughout the United States,

84. Largely as a result of voter initiatives, eighteen (18) states and the District of Columbia have legalized the use of marijuana for medical purposes.

85. By acquiring, possessing, and acknowledging possession of a medical marijuana registry card, Plaintiff is exercising her First Amendment right to free speech.

86. By acquiring, possessing, and acknowledging possession of a medical marijuana registry card, Plaintiff is expressing her support for and advocacy of legalization of medical marijuana.

87. Her medical marijuana registry card is a tangible symbol of her belief and opinion that marijuana should be legal for medical use, and a symbol of her belief and opinion that her fellow citizens of Nevada were correct to have forced changes to Nevada law legalizing marijuana for medical use.

88. Her political and personal opinions about medical marijuana are inherent in her discussions with others about the fact that she has a medical marijuana card.

89. By acquiring, possessing, and acknowledging possession of a medical marijuana registry card, Plaintiff was exercising her First Amendment right to freely associate with others who support and advocate the legalization of marijuana for medical use.

-14-

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

90. The Plaintiff's medical marijuana registry card is a facial and express statement of her association with a group – medical marijuana cardholders - that embodies the belief and opinion that citizens in each state have a right to decide whether marijuana should be legal for medical purposes.

91. By acquiring, possessing, and acknowledging possession of a medical marijuana registry card, Plaintiff expresses her support for medical marijuana and her deeply held beliefs that marijuana should be legal for medical use.

92. The Plaintiff is, literally, a card-carrying advocate for medical marijuana, who is associated with a distinct group, identifiable by their inclusion in the medical marijuana registry.

93. Under the First Amendment, a citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights and also has the right to be free from governmental action taken to deter the citizen from exercising those rights in the future.

94. By implementing and enforcing a policy that forbids a federally licensed firearms dealer from selling a firearm to any person who possesses a medical marijuana card or to any person who a federally licensed firearms dealer "reasonably suspects" possesses a medical marijuana card, Defendants are retaliating against Plaintiff's exercise of her First Amendment rights by denying her Second Amendment right.

95. Further, Defendants are also attempting to deter her from exercising her First Amendment rights in the future by requiring that she give up her First Amendment rights in exchange for her Second Amendment rights.

96. As a direct and proximate result of the Defendants' above-described actions, the Plaintiff has suffered and continues to suffer damages.

97. The Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

/ / /

/ / /

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the court enter judgment in her favor and against Defendants as follows:

1. Declare that 18 U.S.C. §§ 922(g)(3) and 922(d)(3) and all derivative regulations, such as 27 C.F.R. § 478.11, and the policy set forth in the Defendants' open letter to federally licensed firearms dealers dated September 21, 2011, violate the right to keep and bear arms as secured by the Second Amendment to the United States Constitution.

2. Declare that 18 U.S.C. §§ 922(g)(3) and 922(d)(3) and all derivative regulations, such as 27 C.F.R. § 478.11, and the policy set forth in the Defendants' open letter to federally licensed firearms dealers dated September 21, 2011, violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

3. Declare that 18 U.S.C. §§ 922(g)(3) and 922(d)(3) and all derivative regulations, such as 27 C.F.R. § 478.11, and the policy set forth in the Defendants' open letter to federally licensed firearms dealers dated September 21, 2011, violate the Equal Protection Clause of the Fifth Amendment to the United States Constitution.

4. Declare that 18 U.S.C. §§ 922(g)(3) and 922(d)(3) and all derivative regulations, such as 27 C.F.R. § 478.11, and the policy set forth in the Defendants' open letter to federally licensed firearms dealers dated September 21, 2011, violate the right to free speech secured by the Second Amendment to the United States Constitution.

5. Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 18 U.S.C. §§ 922(g)(3) and 922(d)(3) and any and all derivative regulations, such as 27 C.F.R. § 478.11, and the policy set forth in the Defendants' open letter to federally licensed firearms dealers dated September 21, 2011, and provide such further declaratory relief as is consistent with the injunction.

6. Award the Plaintiff compensatory and punitive damages.

7. Award costs and attorneys fees and expenses to the extent permitted under 28 U.S.C. § 2412.

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-16-

8.  Grant such other and further relief as the Court deems just and proper.

Dated this 17th day of December 2012.

Respectfully Submitted by:

RAINEY DEVINE, ATTORNEYS AT LAW

By:   /s/ Chaz Rainey

Charles C. Rainey, Esq.
Nevada Bar No. 10723
Chaz@raineydevine.com
Jennifer J. Hurley, Esq.
Nevada Bar No. 11817
Jennifer@raineydevine.com
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
*Attorneys for Plaintiff*

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-17-

TRANSCRIBED FROM DIGITAL RECORDING                1

1                **UNITED STATES DISTRICT COURT**

2                    **DISTRICT OF NEVADA**

3      **THE HON. GLORIA M. NAVARRO, U.S. DISTRICT JUDGE, PRESIDING**

4

5   S. Rowan Wilson,                    )

6                Plaintiff,             )           **Case No.**
                                        )      **2:11-cv-01679-GMN-PAL**
7          vs.                          )
                                        )       **Motion Hearing**
8   Eric H. Holder, Jr., et al.,        )
                                        )
9                Defendants.            )      <u>**CERTIFIED COPY**</u>
    ————————————————————————————————————)

10

11

12

13

14

15              **TRANSCRIPTION OF PROCEEDINGS**

16                Friday, November 2, 2012

17

18

19

20   APPEARANCES:                    See Next Page

21   DIGITALLY RECORDED:             9:13:52 a.m. to 10:43:20 a.m.

22   TRANSCRIBED BY:                 ELLEN L. FORD
                                     (702)366-0635
23

24

25   **Proceedings recorded by electronic sound recording, transcript
     produced by mechanical stenography and computer.**

TRANSCRIBED FROM DIGITAL RECORDING                2

```
 1  APPEARANCES:

 2  For the Plaintiff:

 3          CHARLES C. RAINEY, ESQ.
            The Law Firm of Rainey Devine
 4          8915 South Pecos Road
            Suite 20
 5          Henderson, Nevada  89074
            (702) 425-5100
 6          email: chaz.rainey@raineylegal.com

 7

 8  For the Defendant:

 9          JOHN KENNETH THEIS, ESQ.
            U.S. Department of Justice
10          Federal Programs Branch
            20 Massachusetts Avenue NW
11          Washington, DC  20530
            (202) 350-7632
12          email: john.k.theis@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      **LAS VEGAS, NEVADA; Friday, November 2, 2012; 9:13:52 a.m.**

2                              **--o0o--**

3                        **P R O C E E D I N G S**

4           THE COURT:  Thank you.  You may be seated.

5           DEPUTY CLERK:  Now calling the case of S. Rowan Wilson

6  versus Eric Holder.  Case number 2:11-cv-1679-GMN-PAL,

7  regarding motion hearing.

8           Counsel, please note your appearances for the record.

9           MR. THEIS:  Go ahead.

10          MR. RAINEY:  Chaz Rainey here on behalf of the

11 Plaintiff, S. Rowan Wilson.

12          THE COURT:  And good morning, Mr. Rainey.  And good

13 morning, Miss Wilson.

14          MR. THEIS:  John Theis on behalf of the Defendants.

15          THE COURT:  And good morning, Mr. Theis.  So it's

16 Theis?

17          MR. THEIS:  Theis.

18          THE COURT:  Not T-h, not this (phonetic).  It's

19 spelled T-h, but it's pronounced with a T.

20          MR. THEIS:  That's correct.

21          THE COURT:  All right.  Thank you, Mr. Theis.  Good

22 morning.  And did you come in from Washington, D.C.?

23          MR. THEIS:  I did.

24          THE COURT:  Okay.  Well, we're glad we were able to

25 have you here with us.  We weren't sure there for a while with

1  the hurricane if you were going to be able to be here.  So I'm

2  glad to see that you're safe and sound.

3       I appreciate that you all probably are prepared to

4  present oral arguments to me.  I'm hoping that it would be

5  helpful to you for me to explain -- go ahead and be seated --

6  my inclinations at this point.

7       I still have an open mind.  I want to know whether you

8  agree or disagree with my initial thoughts on the matter.

9  There has been some changes in the law since you all finished

10  the briefing, so that might be important for you to explain to

11  me how you think that does or does not affect your position in

12  this case.

13       So I'll just go over very briefly -- obviously, we're

14  talking about the Federal Gun Control Act and two particular

15  sections of Title 18 of the United States Code § 922(g)(3) and

16  (d)(3).

17       As to the CFR, the Code of Federal Regulation, that's

18  at issue at Title 27 § 478.11.

19       It's important to me to figure out which one of the

20  two inferences of current use apply and, of course, the ATF

21  Open Letter.

22       So first of all, looking at the Administrative

23  Procedures Act at Title 5 of the United States Code § 553,

24  which says, "Any proposed rule must undergo notice and comment

25  unless the rule is interpretative."

1            I want to know your thoughts and whether you think
2   that the particular rule at issue is interpretative.  And the
3   one we're speaking of is at Federal code -- the Federal
4   regulation that states that, "An inference of current use may
5   be drawn from evidence of a recent use or possession of a
6   controlled substance, or a pattern of use or possession that
7   reasonably covers the present time."  And so that is the
8   definition of "unlawfully user" as used in the Federal Gun
9   Control Act.
10           It appears that the question might turn on whether or
11  not this rule issued by the ATF Letter and whether it's an
12  interpretation.  Is it an interpretative rule or is it a
13  legislative rule?  If it is a legislative rule, if it's
14  something that Congress has delegated power to the Agency, and
15  the Agency is intending to use that power to promulgate the
16  rule at issue, then, obviously, it would be a legislative rule
17  and then it would require comment and notice.
18           However, if, in fact, that rule is issued by the
19  Agency just to advise the public of its own interpretation and
20  construction of the statute which -- in regards to the rule
21  which it administers, then it is an interpretative rule, and in
22  that case would not be subject to notice and comment.  It's
23  just reflecting on the construction of the statute, and it's a
24  statute which has been entrusted to the Agency to administer.
25           So looking at the Firearms Import/Export Roundtable

 1  Trade Group versus Jones case, which is the D.C. District Court

 2  case in 2012 recently, it -- they did determine that a

 3  different ATF Letter -- not this Open Letter but a different

 4  ATF Letter -- was interpretative and, thus, did not require

 5  comment and notice.  So if you think that that case applies or

 6  doesn't apply here in some way, please let me know.

 7          I would like for, if possible, for the Plaintiff to

 8  clarify whether or not she is challenging only the statute, the

 9  two subsections of the statute, or also the regulation itself.

10  Is she seeking review of that ATF stated policy in the Open

11  Letter only, or is she also challenging the statutes?

12          Because I'm not -- I'm not sure they're all the same

13  thing.  You know.  They could be different things.  You could

14  say, well, the statute may be constitutional, but this

15  interpretation doesn't apply.  I don't want to put words in

16  your mouth, but I want to make sure that I'm clear on what your

17  position is.

18          If it's only the policy's affect on those two statutes

19  in the regulation that keeps her from procuring the gun, then I

20  want to know if that's -- if that's what your position is.

21          Also, if the ATF Open Letter requires notice and

22  comment or not.  Is it an interpretative rule or is it a

23  legislative rule?

24          How much deference should the Court give to the ATF's

25  interpretation?  It's their interpretation.  How binding is

1  that?  Does it have any precedential affect at all?

2          Do the answers to, you know, all of these questions

3  that I'm kind of throwing at you for the first time -- and I

4  appreciate if you can't answer them right now -- but how does

5  that affect my determination of the merits of the action?  And,

6  of course, then there's the question of jurisdiction.

7          Looking more specifically at Section 922(g)(3) which

8  is the portion of the Federal Gun Control Act that makes it

9  unlawful for users of controlled substances to actually possess

10  the guns, looking at that specifically, and the Dugan case,

11  which is a Ninth Circuit case recently in 2011 that was decided

12  after the Heller case, the Supreme Court Heller case.  In Dugan

13  they upheld Congress' ability to prohibit illegal drug users

14  from possessing firearms.

15          So it appears to me that, regardless of the state law

16  on the issue of medical marijuana, marijuana does still remain

17  unlawful under the Federal law, so it seems like this claim

18  would be barred by that Ninth Circuit precedent as issued by

19  Dugan.

20          So tell me if you disagree or why that may not be --

21  maybe that is not a complete -- doesn't completely prevent me

22  from considering the issue if there's another way for me to

23  look at it.  But it does seem to me that that is a bar.

24          As to the 922(d)(3), which is the section that

25  prohibits firearm sales to persons that the firearm seller

 1  knows or has reason to believe -- reasonable cause to believe

 2  is an unlawful user, that one is perhaps a little easier in a

 3  sense that under the Fourth Circuit's Chavin case --

 4  C-h-a-v-i-n -- the Court did know that, "The challenged law

 5  will only impose a burden on the conduct that is falling within

 6  the scope of the Second Amendments' guarantee if the conduct

 7  was understood to be within that scope at the initial time, at

 8  the original time of its ratification."

 9         And so with that in mind, the Fourth Circuit

10  determined -- they analyzed that at the time of the

11  ratification of the Second Amendment, they weren't intending to

12  protect an individual's right to sell firearms as opposed to

13  possess firearms.  And so it does appear that, because Congress

14  can constitutionally preclude illegal drug users -- the key

15  there being illegal -- drug users from possessing a firearm,

16  Congress likewise could prevent sellers from selling a firearm.

17         So it looks to me -- I'm inclined to believe that the

18  Second Amendment probably does not include a right to sell

19  firearms and ammunition.  So is that a complete bar or, again,

20  is there another way of looking at it?

21         Also, I'm not sure as to that particular subsection

22  whether there's a standing question there that needs to be

23  addressed.

24         As to the constitutional analysis, obviously, we need

25  to decide which one of the levels of scrutiny apply.  Is it

1 rational?  Is it intermediate?  Is it strict?

2        So the Government is arguing that it's the

3 intermediate scrutiny, and the Plaintiff is arguing it's strict

4 scrutiny.

5        The Government did rely on a series of cases,

6 including the Nordyke case that was prior to the En Banc

7 decision.  So now we've had the En Banc decision at Nordyke, so

8 I'd like you to explain to me how that does or doesn't change

9 your position.

10        Let's see.  I did look at U.S. v Carter, which is a

11 Fourth Circuit's 2012 case finding that intermediate scrutiny,

12 not strict scrutiny, applied.

13        I'm not sure that I'm persuaded that it's strict

14 scrutiny.  Most of the cases I believe do point towards

15 intermediate scrutiny.  Of course, there is that Nordyke case

16 which found that it was actually a rational basis, but it was

17 county -- that was the County Code violation for possessing the

18 firearms or ammunition on County property.  Not everywhere, but

19 just on County property.  So maybe that's the distinction.  You

20 can let me know what you think I should do or not do in regards

21 to how Nordyke affects the issues here today.

22        Let's see.  Substantive due process.  The Fifth

23 Amendment claims.  There's the substantive due process or

24 procedural due process and the equal protection as to the

25 substantive due process.

1            I think looking at the Raich -- and I'll spell that

2    for the record, R-a-i-c-h -- v Gonzales case, which is the

3    Ninth Circuit 2007 case, it does appear that the Ninth

4    Circuit's already held that there's no constitutionally

5    protected right to use marijuana for medical purposes.

6            I know there's the litany of right to abortion under

7    the Planned Parenthood case, right to use contraceptives under

8    the Eisenstadt case, right to refuse lifesaving hydration and

9    nutrition under the Cruzan case.  But the Raich case is a Ninth

10   Circuit case, so it does have direct precedential value on

11   my -- my court, you know, my jurisdiction.  As opposed to if

12   it's a different district, it's something I consider and give

13   preferential treatment to but not necessarily directly

14   controlling.  But a Ninth Circuit case is directly controlling

15   on this Court.  So tell me why you think that can be

16   distinguished, if you think it can.

17           Also, the questions regarding procedural due process

18   and equal protection.  I just think those are very weak.  If

19   you think that there's -- you know, I want you to use your time

20   wisely.  So if you think that you still want to convince me

21   that those are issues that should -- that you can explain

22   sufficiently to survive a Motion to Dismiss, go ahead and tell

23   me.  But if you don't want to spend too much time on those and

24   just spend more time on the others that seem to be probably

25   more viable at this point, that's up to you.

1        The conspiracy claim also was dismissed already

2    voluntarily by the Plaintiff so we don't need to go into that

3    at all.

4        That's kind of my inclination and those are my

5    questions.  And since this is the Defendant's Motion to

6    Dismiss, we'll go ahead and allow the defense to go ahead and

7    speak first, and then we'll have a response from the Plaintiff,

8    and then a reply from the Government, because it is your

9    motion.

10       And then I most likely will not render a decision

11   today.  I think this is as much of a decision as you probably

12   will get today as far as my -- what my inclinations are.  I'll

13   take it under submission at the end and issue a written ruling

14   as soon as I can.

15       All right.  So go ahead, Mr. Theis.

16       MR. THEIS:  All right.  Thank you, Your Honor.

17       At the outset, on your concerns about what I would

18   call sort of the APA type concerns.  Much of this issue is not

19   fully presented in the -- in the Complaint or in the briefing

20   that was submitted to the Court.  So I will give sort of our

21   initial impression to the questions that the Court's raised,

22   but if possible, I'd like to reserve -- and if the Court would

23   like this, we'd be happy to do this -- the opportunity to

24   submit for the briefing on this particular question and answer

25   the specific questions that the Court has on that issue.

TRANSCRIBED FROM DIGITAL RECORDING                    12

1              So if I can put that to the side for the moment and

2    talk about the constitutional claims which are before the

3    Court, if that -- if that works for Your Honor.

4              THE COURT:  So which particular issue do you want to

5    supplement?

6              MR. THEIS:  What you first addressed.  The question of

7    whether or not this particular regulation and the Open Letter

8    qualifies as an interpretative rule, what level of deference is

9    required for this particular -- for the letter.

10             Those issues were -- the 7-0 -- though the APA was

11   mentioned in the Complaint, it's only the waiver of sovereign

12   immunity element of this, so there's no APA claim brought

13   before the Court in this Complaint, so that's why this issue

14   was not fully fleshed out.

15             And so that's why I'd like to hold on that particular

16   question just for now.  And in the course of this, if we get

17   further answers on this, I'd be happy to give them.

18             THE COURT:  All right.  And there's a standing issue,

19   as well.

20             MR. THEIS:  That's correct.

21             THE COURT:  Because she's not a seller, she's a

22   buyer -- a potential buyer not a seller.  So --

23             MR. THEIS:  That's correct.

24             THE COURT:  -- there's a standing question, too.

25             MR. THEIS:  On that, Your Honor, I believe there's --

TRANSCRIBED FROM DIGITAL RECORDING                13

1  we did not, you know, specifically raise that individual

2  question.  But yes, that is something that, obviously, the

3  Court needs to look to its jurisdiction first, and if that's

4  something that the Court can't find, that she is not -- doesn't

5  have standing to raise this issue, then that's -- that's where

6  we are.

7          To the constitutional issues.  First, as -- as the

8  Court correctly pointed out, the use of marijuana is prohibited

9  under Federal law.  Though certain states have -- such as

10 Nevada issued past laws that suggest that the use may be used

11 for medical purposes under state law, that is not recognized

12 under Federal law.

13         So the individual registry card that she has here,

14 which is the core of this case, does not prohibit her from

15 any -- from -- that does not give her the right to use

16 marijuana.

17         And that -- that concept sort of applies to several

18 different issues in the claims that she's raised, and so we

19 wanted to make that in the outset.

20         And as Your Honor points out, on 922(g)(3), the

21 possession of -- of a controlled substance, we believe that is

22 foreclosed by Dugan.  There's no further need to engage in

23 another constitutional analysis based on that.  It's -- Dugan

24 squarely held that Congress may prohibit the legal drug users

25 from possessing firearms and that doesn't -- the Second

TRANSCRIBED FROM DIGITAL RECORDING                    14

1  Amendment does not change that analysis, and so that's where we

2  are on that.

3          On the independent constitutional analysis that -- the

4  Court does need to take that second step, we agree, as we

5  pointed out in our briefs, that intermediate scrutiny is

6  appropriate.

7          As to Nordyke, the original panel hearing was vacated

8  by the En Banc decision.  And so it's -- it's not exactly clear

9  where the Ninth Circuit stands on this on the level of

10 scrutiny, but I will say that every Court to address both the

11 level of scrutiny required for 922(g)(3) and for every other

12 section of 922(g) has held that intermediate scrutiny applies,

13 and that's why we've argued in our brief that intermediate

14 should apply.

15         And the reasons behind that are, one, that the level

16 of burden that we're talking about here for 922(g)(3) is

17 relatively low.  An individual who is prohibited from

18 purchasing a firearm by the -- it's a temporal scope to what is

19 included in 922(g)(3).  And so an individual can just stop

20 using unlawful drugs and that would then allow them to -- to

21 purchase a firearm.

22         Because of that temporal scope, because there's not as

23 great a burden as there would be, some courts have said that

24 that's a reason to use definitely less than strict scrutiny,

25 but that intermediate scrutiny is appropriate.

TRANSCRIBED FROM DIGITAL RECORDING                15

1        And then, two, the actual constitutional analysis

2   itself, this statute has the compelling Government interest of

3   protecting against public safety and preventing violent crime.

4   And that's -- as we've demonstrated in our brief, there's

5   reasonable fit between that compelling interest and the

6   regulations that are at issue here.

7        We cite a wide variety of sources that demonstrate

8   this -- that between those -- the interest and the regulation,

9   including the legislative history, the fact that the majority

10  of states have made the same determination, which the Yangtze

11  Court in the Seventh Circuit found important for this question.

12  And finally, the academic and empirical studies that we've

13  cited that show this connection between crime and the use of

14  marijuana.

15       So all of that in connection with the temporal scope

16  point to -- this is the reason why all these courts have used

17  intermediate scrutiny in the Court.  If it does an independent

18  constitutional analysis, it should use that, as well.

19     On (d)(3), we agree that Chavin forecloses this.  This

20  is -- no Court has recognized -- and it is clear from the

21  nature of the right -- that the laws imposing conditions and

22  qualifications on the commercial sale of arms, that there's --

23  that there's no corresponding restriction for the sale of -- or

24  I'm sorry -- protection for the sale of firearms.

25     Heller articulated the right as -- the core right as the

TRANSCRIBED FROM DIGITAL RECORDING                16

1  right of law abiding, responsible citizens to use firearms in

2  the hearth and home.  There's no -- as Chavin pointed out,

3  there's no corresponding right to sell firearms in that case.

4  So we -- on the substantive issue, separate from the standing

5  issue, that we agree with that -- or that's the position that

6  the Court should take.

7       Your Honor asked about two other -- the Fifth Amendment

8  claims.  First on the -- it's our position the Complaint does

9  not lay out a Fifth Amendment substantive or procedural due

10  process claim, as we pointed out in our briefs.  This was

11  raised for the first time in the opposition to our Motion to

12  Dismiss, and Plaintiff can't amend their Complaint to add these

13  different claims.

14      But even if the Court were to address those claims, as the

15  Court properly pointed out, Raich -- the Ninth Circuit opinion

16  of Raich 2, has held that there is no substantive due process

17  right to use marijuana, even if it's for medical purposes,

18  under state law.  And that -- and that squarely forecloses the

19  substantive due process claim.

20      So those are the --

21           THE COURT:  Can we go back to the 922(d)(3) claim,

22  though?  Because I'm not sure if you addressed whether or not

23  you believe that the Plaintiff has standing to raise that

24  claim.

25           MR. THEIS:  If I could, Your Honor, I'd like to hold

TRANSCRIBED FROM DIGITAL RECORDING                    17

1    on answering that specific question.  We didn't address that in

2    our briefs because there are cases that have held that the

3    denial of the right to possess -- or to use firearms and

4    possess firearms, that that right alone gives you -- that that

5    denial gives you standing, and I -- I'd like to confirm that

6    that's been used in the same context of the 922(d)(3) for the

7    sale.  So that's why we didn't raise a specific standing

8    argument in our briefs, and that's why we didn't put that as

9    our first point that we would make in this case.

10            But -- but obviously, if Plaintiff is -- so I'd like

11   to hold off and take a brief look at some notes that I have on

12   that particular question because I want to give the Court the

13   correct answer on the standing issue, essentially.

14            THE COURT:  Why don't you take a look now, because

15   that's important to me.

16            MR. THEIS:  And other -- other than those particular

17   issues, I believe I've addressed everything other than, again,

18   that APA issue which we discussed at the outset.

19            THE COURT:  Just a minute.  I just want him to have a

20   chance to look at --

21            MR. RAINEY:  Oh, I'm sorry.

22            THE COURT:  You weren't all -- were you completely

23   done, Mr. Theis, or --

24            MR. THEIS:  Other than the standing issue and the APA

25   issue which we've -- I would like to do a bit more digging on

1  that particular question.  I think we're done with the rest of

2  our argument, though.

3          THE COURT:  Okay.  Well, but before we go over to

4  Plaintiff --

5          MR. THEIS:  Okay.

6          THE COURT:  -- please go ahead and take a look at your

7  thoughts on standing.

8              (Pause in the proceedings.)

9          THE COURT:  Mr. Theis, since you're going to be --

10 I'll go ahead and grant your motion -- your oral motion to have

11 supplemental pleadings on the Administrative Procedures Act

12 issue.  If -- if you're going to already be doing that anyhow,

13 perhaps we'll -- I'll go ahead and allow more briefing on the

14 standing issue and that will give Plaintiff an opportunity, as

15 well, to be able to do a little research and guide the Court as

16 to whether you think that, under the APA, you know, which

17 states that if there's a rule that's proposed by an agency, if

18 it's an interpretative rule -- and I'll spell that for the

19 record again, i-n-t-e-r-p-r-e-t-a-t-i-v-e -- if it's an

20 interpretative rule -- doesn't roll off the tongue very easily,

21 does it? -- then there need not be any comment and notice.  But

22 if it is a legislative rule then there does need to be.

23          And so I think that's important to look at, and so

24 I'll go ahead and allow both parties to provide further

25 briefing on that issue, and on the issue of standing -- of the

1   Plaintiff's standing.

2           And we'll set a briefing schedule after we're done

3   here so that my -- my clerk can have a -- have some time to do

4   that calculation.

5           So is there anything else, Mr. Theis, that you want to

6   say?  And I don't mean to rush you at all.  In fact, I have the

7   entire morning set aside for this.  So I expected this would be

8   more in-depth and would take longer.  So feel free, if you have

9   other things that you want to get into.

10          MR. THEIS:  Nothing further, Your Honor, but I would

11  like to reserve any time, obviously, to rebut any specific

12  points that were made.  But we've made the majority that we'd

13  like for now, and we'll rest on our briefs on the rest.

14          THE COURT:  All right.  Thank you.  All right.

15  Mr. Rainey?

16          MR. RAINEY:  One moment, Your Honor.  Good morning,

17  Your Honor.

18          THE COURT:  Good morning.  I was very intrigued by the

19  issue.

20          MR. RAINEY:  Yes, it's a fun one.

21          THE COURT:  Yes, it is a fun one.  And there isn't

22  really anything directly on point in any other of the circuits.

23          MR. RAINEY:  No.

24          THE COURT:  So it is a very interesting one, and I

25  think a very important question.

TRANSCRIBED FROM DIGITAL RECORDING                    20

1           MR. RAINEY:  Mm-hmm.

2           THE COURT:  So I am interested to hear what -- what

3   else you have to add to this so far beyond what has already

4   been provided in the briefings.

5           MR. RAINEY:  Well, Your Honor, I want to begin by --

6   by making it clear that we are challenging, not just the

7   letter, and not just the regulation, but also the statute.

8           Now, we -- as we do that, we recognize that

9   challenging the statute is a -- an uphill battle.  It's a

10  long-established -- sorry -- long-established statute.  We're

11  not -- we're not trying to deny that.

12          However, we have to begin from the fundamental

13  preposition -- proposition that, under D.C. v Heller, the

14  Second Amendment was interpreted as an individual fundamental

15  right, and that was reiterated later by the U.S. Supreme Court.

16          And prior to that -- and I think we all can agree --

17  that prior to that it was very much up in the air as to how the

18  Supreme Court would interpret the Second Amendment.  And so

19  from there we have a very different proposition.

20          THE COURT:  Well, the Court specifically held that the

21  right was not unlimited.

22          MR. RAINEY:  That's correct.

23          THE COURT:  They did say that the Government can

24  prohibit possession of weapons in some scenarios without

25  running afoul of the Second Amendment.

1          MR. RAINEY:  Mm-hmm.

2          THE COURT:  For example, prohibiting the possession of

3    firearms by felons or mentally ill persons.

4          MR. RAINEY:  Mm-hmm.

5          THE COURT:  So it sounds like this is an as-applied

6    constitutional challenge?

7          MR. RAINEY:  Mm-hmm, yes.  So the question here is, as

8    applied in those two statutes, as applied in the corresponding

9    regulations and, of course, as applied in that letter, the ATF

10   Letter, was that a constitutional application a valid

11   restriction on the right to own and purchase firearms?

12         I'd like to sort of take -- while I know that we are

13   going to do a separate briefing on the standing issue, I want

14   to point out, though -- the standing, it's not about the

15   constitutional right to sell firearms.  The problem is we're in

16   a regulated profession where there's only one way to buy a

17   firearm.  If you want one, you have to go through a Federally

18   licensed firearms -- Federally -- Federal firearms licensee.

19   And if that's the only avenue, and then you're telling, through

20   statute, that you're not allowed to sell any firearms to anyone

21   who has this card, well, you have essentially a prior restraint

22   issue where those people are now completely shut off from their

23   Second Amendment right, even though they were kind of kept out

24   of the equation all together.

25         The -- the most important thing that we have to focus

TRANSCRIBED FROM DIGITAL RECORDING                22

1    on here is that we're not talking about someone who has been

2    determined a user of medical marijuana, we're talking about

3    somebody who has a card that, under state law, says they have a

4    right to the use of the medical marijuana.  And that's a huge

5    distinction.

6            What the ATF is saying is that anyone who is a card

7    carrying member of the medical marijuana party must

8    automatically give up their Second Amendment rights.  That

9    they're not allowed to have a gun.

10           And as I say that, I realize, too, that there may be a

11   real dire need to amend or maybe refile the case to include a

12   First Amendment claim.  Because really, that card is a form of

13   political speech, and that's also reinforced by the cases that

14   you have here in the State court determining that there's no

15   real means of commercial access to medical marijuana, so it's

16   very possible -- in fact, it's very likely -- that most people

17   who have these cards aren't even users of medical marijuana

18   because they have no means of accessing or of acquiring it.

19   All the card says is that you have the right under state law to

20   possess a certain amount and to grow the plant.

21           THE COURT:  Okay.  Well, if you are trying to add a

22   First Amendment claim, that wouldn't be an issue on the Motion

23   to Dismiss.  The Motion to Dismiss essentially is looking at

24   the face of the Complaint --

25           MR. RAINEY:  Right.

```
 1            THE COURT:  -- what has actually been pled -- not what
 2    maybe you would have wanted to plead or might want to plead
 3    later or add -- but what is actually pled and whether or not
 4    any of those --
 5            MR. RAINEY:  Mm-hmm.
 6            THE COURT:  -- claims should be allowed to proceed,
 7    whether or not they are valid or invalid.
 8            MR. RAINEY:  Right, your Honor.  But actually, also
 9    in --
10            THE COURT:  So I'd stick to those.  Maybe you'll amend
11    later, and maybe --
12            MR. RAINEY:  Right.
13            THE COURT:  -- it'll be dismissed and you'll want
14    to --
15            MR. RAINEY:  I understand it, but I think that also I
16    want to point out that it's really that -- that that cause of
17    action comes out of their defense.  Because what they're saying
18    is, look, it's not a big deal.  If you just get rid of the
19    card, we'll let you buy a gun again.  It's sort of saying,
20    look, you get to either have the card or you get to have the
21    gun, you don't get to have both.  You -- that's where --
22            Because there's no actual restraint on speech at this
23    point, it's just saying, you know, everybody's allowed to get
24    the card, but they're saying that once you get it, you're not
25    allowed to have any of these rights.
```

 1          THE COURT:  Okay.  Well, this isn't what we're talking

 2  about the "they", "they", "they" without really being more

 3  specific.  "They" is not Congress, this is not something that's

 4  been enacted by Congress --

 5          MR. RAINEY:  Right, by the ATF.

 6          THE COURT:  -- this is an ATF Open Letter.

 7          MR. RAINEY:  Mm-hmm.

 8          THE COURT:  So it either is a new rule that they are

 9  either enacting under the authority of Congress, in which case

10  then you would, you know, consider it --

11          MR. RAINEY:  Right.

12          THE COURT:  -- just like a Congressional law, or is it

13  just their interpretation of how they are going to be applying

14  the law, in which case it is open to notice and comment and

15  does have a different standard that's applied, it is a

16  different kind of horse.

17          And so -- so I want to understand where it is that --

18  what it is that the Plaintiff thinks about this distinction,

19  that it's not directly from Congress --

20          MR. RAINEY:  Right.

21          THE COURT:  -- we didn't actually have a bill that was

22  proposed and passed --

23          MR. RAINEY:  Mm-hmm.

24          THE COURT:  -- and signed by the President, this is --

25  this is a rule.

TRANSCRIBED FROM DIGITAL RECORDING                25

1          MR. RAINEY:  Right.  Examining the constitutionally of

2   the -- the constitutionality of the ATF Letter.  And if we look

3   at that through the lens of legislative versus interpretative,

4   the -- and again, I reserve the right to brief on this more

5   later because it was not properly briefed in the underlying

6   pleadings -- but the fact is that the letter makes it very

7   clear, you're not to sell firearms to anyone who has this card.

8   Don't do it.

9          And if you're saying that, the ATF is essentially

10  foreclosing any further notice or hearing as to whether or not

11  these individuals are, in fact, illegal drug users.  They're

12  just saying we've made the decision, if you have the card,

13  you're automatically deemed an illegal drug user.  And as an

14  automatically deemed illegal drug user, you're not entitled to

15  a firearm and you can't sell that firearm to that person.  And

16  by making that --

17          THE COURT:  But that wasn't necessarily the rule

18  before the Open Letter was issued.

19          MR. RAINEY:  No.

20          THE COURT:  This is an interpretation analysis by an

21  administrative agency of how it is going to react to the

22  situation that it's faced with with what do we do about this

23  scenario in these particular states where medical marijuana is

24  allowed --

25          MR. RAINEY:  Mm-hmm.

ELLEN L. FORD - (702) 366-0635

**151**

TRANSCRIBED FROM DIGITAL RECORDING                    26

1          THE COURT:  -- what do we want to do about it?

2          MR. RAINEY:  Mm-hmm.

3          THE COURT:  And they decide what they're going to do

4   about it, how they interpret the law, and how it should apply.

5          MR. RAINEY:  Sure.  But it forecloses any further

6   opportunity for these people to acquire a firearm.

7          And if you're a Federal firearms licensee and you read

8   that letter, you know for a fact, I am now prohibited from

9   making any further sales to these individuals.  At that point

10  you've cut off the Second Amendment rights of an entire class

11  of individuals.

12         And you've said that this fundamental individual

13  Second Amendment right is not -- is no longer offered to these

14  people simply because they went and got a card.

15         Again, if you look at the other cases in which this

16  law has been applied, and you look at those other cases, those

17  are cases where people were convicted of criminal acts, cases

18  where people were indicted for --

19         I mean, the Dugan case is a great example.  The Dugan

20  case, which by the way is only, what, two pages long and

21  doesn't really give much analysis at all -- the Dugan case is

22  about somebody who was running, essentially, a drug ring out of

23  their apartment and an illegal firearms business.

24         Where here, we're talking about a woman who went to

25  her physician, got a med -- got a prescription, essentially,

ELLEN L. FORD - (702) 366-0635

**152**

1   for medical marijuana, went to the Government and got a

2   State-issued card, and now says, just because you got that

3   card, you can't own a gun.

4           That's -- it's a completely night and day example.

5   And it also underscores the fact that we also believe that this

6   Court does have the --

7           THE COURT:  Well, and I do empathize with the

8   situation that she finds herself in.  There are plenty of

9   legal, prescribed medications that may or may not be much more

10  dangerous --

11          MR. RAINEY:  Mm-hmm.

12          THE COURT:  -- than marijuana as far as the scientific

13  world has told us, and what they know about drugs and drug uses

14  and the effects.  You know, morphine comes to mind.  That's

15  something that's prescribed for pain, and I'm told will

16  essentially kill you if you take it for too long, right?

17          But, you know, that's -- that doesn't necessarily

18  negate someone's possession of a gun so long as there's no

19  other -- you know, if they're taking it, obviously, for a

20  mental illness, or if they're a felon, or so forth, then there

21  could be other problems.

22          So I completely sympathize with the situation, and so

23  don't want that to be lost on Miss Wilson, but this is a matter

24  of -- of, not facts, but rather a matter of law, and so we do

25  need to have -- keep that in mind that we look through the --

 1   the recent law and any of the precedent that we have for

 2   guidance --

 3            MR. RAINEY:  Mm-hmm.

 4            THE COURT:  -- and not just act out of sympathy --

 5            MR. RAINEY:  No.

 6            THE COURT:  -- but rather try to be logical about

 7   this.  So I think that your stronger argument is probably as to

 8   this ATF Open Letter.

 9            MR. RAINEY:  Oh, and I agree with that, Your Honor,

10   and we don't question that.  We think that the ATF Letter --

11   that we have a much stronger argument there, and it's a very

12   uphill battle to argue the unconstitutionality of the statute.

13            But I also think that Dugan doesn't really deal with

14   this situation and it's not really on point.  It definitely

15   discusses the statute as applied in that context, but I just

16   don't think that -- and while it does say that the Government

17   has a right -- sort of omnibus right to restrict Second

18   Amendment rights to dangerous people, it doesn't deal with this

19   situation, and it's not directly on point here.

20            And when you start taking the, sort of, broad

21   interpretation that the ATF has taken of the statute, and you

22   start seeing how it kind of gets wider and wider as you go from

23   the -- the regulations -- when you go from the statute to the

24   regulations to the letter, it sort of becomes this -- this

25   giant Pacman that envelopes all of us, where we're suddenly --

TRANSCRIBED FROM DIGITAL RECORDING                29

1  the Second Amendment rights are deprived from just an enormous

2  cross-section of people.

3            And I -- I think that's something that has to be

4  entertained by the courts and dealt with.

5            And when you look at all of these cases that are

6  cited -- and I could read them off here -- I mean, you go

7  through, you know, United States versus Marzzarella in the

8  Third Circuit.  Again, indicted for possession of firearm with

9  an obliterated serial number in violation of 922(k).

10           You have Huddleston v United States which is a

11 previously convicted felon.  You have U.S. v Reese in the 10th

12 Circuit, criminally charged with possessing firearms while

13 subject to Domestic Protection Order.  They're just -- they're

14 all way outside the scope of this.

15           Here we're saying it's a prior restraint before

16 there's been any notice, any hearing onto whether that

17 individual has been an illegal user.

18           And that's where our procedural due process claim

19 comes in, too, is that you're saying, if you're going to deny

20 them the right, you have to have some sort of notice and

21 hearing to say you are deemed an illegal user.  You can't just

22 say we think you're an illegal user.  And as -- because we

23 think that, we're now going to deprive you -- before any sort

24 of hearing or anything -- we're going to deprive you of that

25 right.

```
 1              Now, I know the day sort of --
 2              THE COURT:  Well, what the letter specifically says is
 3  that if a seller believes, you know, knows, or has reasonable
 4  to believe --
 5              MR. RAINEY:  Right.
 6              THE COURT:  -- that she's a cardholder -- and this was
 7  kind of a unique situation where the seller wasn't someone who
 8  was unknown to Miss Wilson, they actually knew each other, and
 9  so he was aware that she was -- that she did have a card for
10  medical marijuana -- I don't think there's a question as to
11  whether or not she actually possesses marijuana, it's just the
12  possession of the card --
13              MR. RAINEY:  Right.
14              THE COURT:  -- at this point --
15              MR. RAINEY:  Right.
16              THE COURT:  -- and maybe that's an issue that's --
17              MR. RAINEY:  Mm-hmm.
18              THE COURT:  -- more important and shouldn't be
19  overlooked than the fact of, you know, whether or not she
20  actually possesses marijuana, she only possesses the card at
21  this point.
22              MR. RAINEY:  And I don't think this is a unique
23  situation.  I mean, Miss -- Miss Wilson is, in fact, I mean, a
24  medical marijuana advocate.  I mean, she's someone who's been
25  politically active in the movement to get more broad medical
```

1  access for patients, she works -- she's worked in the medical

2  profession, she believes that the treatment is helpful to

3  people with various ailments from cancer, to HIV, and other

4  conditions.

5         But she -- and so her presence within the community,

6  just like anybody else who happens to be a medical marijuana

7  activist who is carrying these cards, those people would be

8  known if they went to buy a firearm probably within their

9  community in the same context.  I mean, we're talking about a

10  small community in rural Nevada where everybody knows

11  everybody.  And so I don't think it's that unique a situation.

12         Moreover, I think where this issue came to light

13  through the ATF, and why the ATF felt -- I guess, the reason

14  they wanted to pass this rule was because people were using --

15  because when you see the state-issued cards, they look just

16  like driver's licenses.  I mean, they're state-issued.  And so

17  people would pull them out and use them as identification.

18         THE COURT:  So it sounds like you're going beyond the

19  rule here that is the inference.  I took it to mean that the

20  real concern here was not necessarily whether or not she

21  possesses marijuana or whether she intends to possess marijuana

22  and a gun both together at the same time, but the fact that

23  there's an inference being made by the ATF Letter that, just

24  because she is a card carrying member or has a card -- I guess

25  not a membership -- but carries a card, that that alone allows

TRANSCRIBED FROM DIGITAL RECORDING                    32

1  an inference that she, in fact, is going to possess marijuana,

2  much like someone who might be an advocate for Pro Life --

3          MR. RAINEY:  Mm-hmm.

4          THE COURT:  -- and, you know, doesn't think that

5  abortions should be illegal.  Because, I mean, that person has

6  to be getting an abortion, or has got an abortion, or ever is

7  going to -- it could be a man.  You know?  It could be

8  anybody --

9          MR. RAINEY:  Absolutely.

10         THE COURT:  -- that's -- that's -- so the fact that

11 she has a medical marijuana card, I don't know whether that's

12 maybe the stronger argument here is that it's the

13 interpretation that's being given by the ATF Letter that -- the

14 authority to the seller to make an inference --

15         MR. RAINEY:  Mm-hmm.

16         THE COURT:  -- that she possesses marijuana.  And even

17 if you were to admit that, were she actually to possess

18 marijuana and a gun, that perhaps that would be a different

19 situation, a different argument for another day.  But today's

20 argument --

21         MR. RAINEY:  Mm-hmm.

22         THE COURT:  -- is that the inference itself, that just

23 because she has the card necessarily is, you know, proof

24 positive sufficient for a seller to determine that they are not

25 allowed to legally sell a gun to her.

1          MR. RAINEY:  Right.  And, Your Honor, I think that

2  goes back to, if you look at the typical application of these

3  922 statutes, it's usually in the context of a criminal case

4  where someone's already been found guilty or is being

5  prosecuted for, you know, possession of illegal drugs, you

6  know, we found in his car a kilo of cocaine under the

7  passenger's seat and the gun in the glove box, and they're

8  saying, ah-ha, now I've got an extra charge to throw at him

9  because he's not allowed to have that gun if he's got the

10  cocaine.  And so that's usually the context in which we see

11  these cases.

12          What I think has happened here, and what our argument,

13  is that the ATF has made a politically motivated statement

14  against an entire political movement, and has basically tried

15  deliberately to tweak the law to target this group and start

16  depriving rights.

17          And, of course, outside the scope of this case, there

18  are other issues where they've done similar -- similar acts,

19  but we're focused here just on the Second Amendment violation.

20          And what's happened is they're saying -- they're using

21  922 for the purpose of targeting the medical marijuana law --

22          THE COURT:  I'm not inclined to find that because

23  someone is a marijuana user, regardless whether they have a

24  card or not, that they are allowed to have a gun, when under

25  Federal law marijuana is still illegal.

TRANSCRIBED FROM DIGITAL RECORDING                        34

1          MR. RAINEY:  That's -- and that's not the --

2          THE COURT:  So I'm just probably not going to go

3 there --

4          MR. RAINEY:  Right.  And that's --

5          THE COURT:  -- is what I'm telling you as far as

6 wisely using your time.

7          However, the fact that she has -- there's no proof to

8 the seller that she actually possesses marijuana other than

9 that she has the  medical marijuana card.  But the ATF is

10 telling the seller that's enough.

11          MR. RAINEY:  That's right.

12          THE COURT:  So I think that maybe is more of a concern

13 to the community as far as whether this is overreaching and

14 being applied incorrectly or improperly as opposed to if the

15 seller was to walk -- you know, if she was to walk in to buy a

16 firearm, and she had, you know, a bag of marijuana in one

17 hand --

18          MR. RAINEY:  Right.

19          THE COURT:  -- and the money to pay for the firearm in

20 the other, that would be different, and I think that's

21 something that probably you don't want to argue today --

22          MR. RAINEY:  No, that's not something I want to argue

23 today.

24          THE COURT:  -- because I don't think you're going to

25 win on that argument.  Here we don't know for a fact that she

TRANSCRIBED FROM DIGITAL RECORDING                    35

1   has --

2           MR. RAINEY:  Mm-hmm.

3           THE COURT:  -- any marijuana or -- and I think that's

4   probably your better argument.

5           MR. RAINEY:  Right.  And then when we get to the equal

6   protection argument, the argument there also deals with the

7   card saying that, like, well, in states where they don't

8   require a registry card, those people can just walk in and buy

9   a gun even if they are smoking weed, if they are chronic,

10  addicted users, if it is -- you know, there's medical opinion

11  that says you can't be addicted -- but that aside, even if you

12  had someone who was regularly smoking marijuana and is openly

13  smoking marijuana in that state, they could just walk in and

14  they don't even have the card.  And so the Federal firearms

15  licensee doesn't even have to take that into consideration.

16          Whereas, a similarly-situated person in the State of

17  Nevada, where you have a state-issued driver's license looking

18  card, that person is denied a Federal firearms licensee --

19  Federal firearms purchase if they -- just because of the fact

20  that they have the card.

21          THE COURT:  Okay.  So you were advocating the standard

22  of strict scrutiny.

23          MR. RAINEY:  Yes.

24          THE COURT:  So let's assume for a moment that the

25  Government is correct --

ELLEN L. FORD - (702) 366-0635

TRANSCRIBED FROM DIGITAL RECORDING                    36

1          MR. RAINEY:  Mm-hmm.

2          THE COURT:  -- when they argue that intermediate

3    scrutiny should actually apply.

4          MR. RAINEY:  Mm-hmm.

5          THE COURT:  How -- and so they must show that the

6    regulation is substantially related to an important

7    Governmental objective.

8          MR. RAINEY:  Right.

9          THE COURT:  So how does this regulation not pass

10   muster?

11         MR. RAINEY:  Well, first of all, I wanted to point out

12   that the -- what the -- what the Circuit Court -- just as a

13   preliminary -- what the Circuit Courts have been saying,

14   really, is -- at least in that Seventh Court -- I think it's

15   the Seventh Circuit is the first, I think, to deal with this, I

16   could be wrong -- but what they are saying, sort of, is there's

17   this two-prong test, right?  One is, is there a

18   constitutional -- is there a Second Amendment right being

19   deprived -- which I think in this case is pretty

20   straightforward, it's a gun, you're not allowed to have it --

21   but the second prong is, depending upon the level of the

22   deprivation, what level of scrutiny we apply and the extent to

23   which -- it was sort of this weird sliding scale that I believe

24   was presented in Ezell v City of Chicago?  Is that correct?  I

25   apologize if I'm mispronouncing that.

 1          But it -- but the -- if we were to apply intermediate

 2    scrutiny -- because I recognize that, even though the Ninth

 3    Circuit has this, sort of, strange opinion on En Banc, that

 4    most of the courts have adopted an intermediate scrutiny

 5    standard -- if we're applying that, again, it goes back to the

 6    card versus the usage.

 7          They're saying, if you have a card, you're

 8    automatically a user.  There's no -- it's not substantially

 9    related to any Government purpose at that point.  We're just

10    saying anybody who happens to have a medical condition where

11    their doctor has advised them to do this must be denied a gun.

12          And -- and, I mean, at that point, too, I mean, you've

13    probably got people within this context who just go out, see

14    their doctor, and have no inclination towards smoking marijuana

15    or breaking the law.  And the doctor says, you know what?  I

16    recommended this treatment for you.  And they go and go through

17    the process of getting the card, and we're now going to say,

18    well, you don't get a gun because your doctor made that

19    recommendation.  There's no -- there's not even a rational

20    basis connection there.  It's just sort of saying this is --

21    it's comparing apples and bullets.  It just doesn't make any

22    sense.

23          THE COURT:  So is having a medical marijuana card

24    substantially related -- well, I guess the question is -- is

25    having a medical marijuana card -- and -- is having a medical

TRANSCRIBED FROM DIGITAL RECORDING                    38

1  marijuana card essentially the same as being an unlawful user?

2          Is having a medical marijuana card substantially

3  related to the Governmental objective, the very important

4  Governmental objective, of prohibiting weapons from individuals

5  who may not be of the best judgment in order to exercise

6  control of such a dangerous weapon --

7          MR. RAINEY:  Right.

8          THE COURT:  -- or is it to attenuate it?  Is having

9  the card alone to attenuate it and not the same as possessing

10  the actual marijuana?

11          MR. RAINEY:  Right.  And I think there we have to look

12  at the policy purpose that is adherent to -- I'm sorry --

13  inherent to the 922 statutes.  And the idea there is being like

14  someone who is addicted to a controlled substance has --

15  doesn't have the ability to judge right from wrong, I guess,

16  because they're under the throws of the substance, and then

17  those who are illegal users of a substance, I think the

18  argument there --

19          THE COURT:  Well, there's public safety --

20          MR. RAINEY:  Right.

21          THE COURT:  -- and you want to prohibit crime --

22          MR. RAINEY:  Right.

23          THE COURT:  -- that's violent from -- from --

24          MR. RAINEY:  Right.  But to get there you have to make

25  a connection between unlawful use and violent crime and all of

ELLEN L. FORD - (702) 366-0635

1  these other ills that could be inflicted on society.  And I

2  think in order to get there you say, well, this person's

3  already breaking the law so they're gonna -- they're liable to

4  break the law in other ways.

5           You say that this person is under the influence of the

6  substance, so they're liable to break the law because of the

7  substance.

8           And so I think in this context you have to look at it

9  and say, well, but if we're talking about patients who have

10 been advised by their physicians to do it -- this specific

11 course of treatment -- those aren't -- those aren't law

12 breakers, these are people that are doing what their physician

13 tells them to do.  These are people that are even going the

14 extra step and following the State-implemented Government

15 system to get the appropriate card to follow that treatment.

16          Now, if they -- if they don't follow the treatment

17 afterwards, if they ultimately decide, you know what, I just

18 don't want to do that, I don't want to break the law at that

19 point -- but they haven't broken the law in any way up to the

20 point of application for the card.

21          THE COURT:  But they haven't broken State law, but

22 they have violated Federal law.  That's the issue here is that

23 Heller is saying that there are limitations and --

24          MR. RAINEY:  Right.

25          THE COURT:  -- when someone is breaking the law, then

1 they're an unlawful user as opposed to a lawful user.  So I

2 realize --

3          MR. RAINEY:  Right, but there is --

4          THE COURT:  -- the State law hasn't been broken, but

5 the Federal law, you have to admit, has been broken.

6          MR. RAINEY:  No.  There's no Federal law that says you

7 can't get the card.  The Federal law doesn't say that.  The

8 Federal law says you can't use marijuana, you can't possess

9 marijuana, and it doesn't say you can't get the card.

10          So if we have, an example, a cancer patient who's told

11 by their physician --

12          THE COURT:  So again, the issue here really is the

13 ATF's interpretation of -- and let me go back and read the --

14 the actual language of the statute here in issue.

15          It starts off essentially with the 922(g)(3) portion

16 which is, "It's unlawful for a user of controlled substances to

17 possess firearms."  So it's an unlawful user of controlled

18 substance.

19          MR. RAINEY:  Yes.

20          THE COURT:  And then the 922(d)(3) is where it

21 "prohibits the firearm seller who knows or has reason to

22 believe that the person is an unlawful user".

23          So where the ATF Letter says that, "evidence of a

24 recent use or possession of a controlled substance or

25 pattern" -- I'm sorry -- going back to the definition of

TRANSCRIBED FROM DIGITAL RECORDING                41

 1  unlawful use is one -- "An inference can occur and can be drawn

 2  from evidence of a recent use or possession of a controlled

 3  substance, or a pattern of using or possessing that reasonably

 4  covers..."

 5          So it's actually an inference within an inference at

 6  this point --

 7          MR. RAINEY:  Mm-hmm, yes.

 8          THE COURT:  -- so it's actually a double inference.

 9  So the inferences that if there is a pattern of use or

10  possession, that that could constitute unlawful use, and then

11  the inference as to whether that applies is the Open Letter

12  from the ATF that, "possession of the marijuana card

13  constitutes reasonable cause to believe that the buyer is an

14  unlawful user."

15          MR. RAINEY:  Mm-hmm.  It's really, Your Honor, in that

16  one sentence on the letter, if you read it, it says, "Further,

17  if you are aware that the potential transferee is in possession

18  of a card authorizing the possession and use of marijuana under

19  State law, then you have reasonable cause to believe that the

20  person is an unlawful user of a controlled substance."

21          And it says prior to that that if you have that reason

22  to believe, you are not to sell them a gun.

23          THE COURT:  Okay.  So under intermediate scrutiny, I

24  think we agree that there is an important Governmental

25  objective.  The question is whether or not, when this

TRANSCRIBED FROM DIGITAL RECORDING                    42

1  particular new rule that's issued under the letter is

2  substantially related to that important objective, or is it to

3  attenuate it?

4          MR. RAINEY:  Hmm.

5          THE COURT:  Would you --

6          MR. RAINEY:  That's exact --

7          THE COURT:  -- agree with that --

8          MR. RAINEY:  Yeah.

9          THE COURT:  -- being your position?

10         MR. RAINEY:  That is correct, Your Honor.  Now, as I

11 say that, I don't waive the arguments that if she's --

12         THE COURT:  I know you want me to reach further, but I

13 don't think it's gonna happen.

14         MR. RAINEY:  Right.  But I also say that that is

15 our -- that is our initial proposition is that you can't just

16 say that this card is -- is -- you know, is itself

17 justification.

18         And I think that that concludes our argument here.  If

19 you have any further questions --

20         THE COURT:  And you want to reserve the right to argue

21 standing as well; is that right?

22         MR. RAINEY:  Yes, yes, I do want to -- right.

23         THE COURT:  Let's see what else I have here.  All

24 right.  So we'll allow the parties both to brief the effects of

25 the Nordyke En Banc decision as well as the standing issue.

1           Let's see if there was something else.  I have

2    somewhat of a question about the Court's jurisdiction.  I'm not

3    sure that I've worked myself through it yet --

4           MR. RAINEY:  Mm-hmm.

5           THE COURT:  -- in regards to the fact that she hasn't

6    actually been charged under this statute criminally.

7           MR. RAINEY:  Mm-hmm.

8           THE COURT:  It is more of an issue of her being

9    prevented from obtaining the firearm.

10          But with the understanding that if she were to obtain

11   the firearm --

12          MR. RAINEY:  Mm-hmm.

13          THE COURT:  -- then the Government's position very

14   clearly in regards to the Open Letter is that she would be

15   charged -- or, of course, they have discretion -- prosecutorial

16   discretion -- to decide whether or not to use their funding and

17   their resources and things on --

18          MR. RAINEY:  Right.

19          THE COURT:  -- an individual such as Miss Wilson, or

20   whether they would prefer to use it --

21          MR. RAINEY:  Yeah.  And, Your Honor --

22          THE COURT:  -- on other individuals.  So I'm not sure

23   whether that jurisdictional question is one that is

24   controlling.  But even if you all don't bring it up, that's the

25   Court's duty is to look at jurisdiction.  I'm reminded of the

1  case that went all the way up to the Supreme Court --

2          MR. RAINEY:  Right.

3          THE COURT:  -- many years after the case had been

4  filed, and when it got there, one of the first things the

5  Supreme Court said is this was never a Federal question.

6  There's no jurisdiction here.

7          So I definitely don't want to waste your time, if

8  that's the case, if I don't even have jurisdiction.  But, like

9  I said, I'm not sure that I've worked myself through that yet.

10          MR. RAINEY:  Right.

11          THE COURT:  Is there anything else that you want to

12  add?

13          MR. RAINEY:  You know, and Your Honor, actually, on

14  that point, and I want to point out that I recognize that

15  procedurally what we did as Plaintiffs was a little unorthodox

16  in a Cross-Motion for Summary Judgment, and maybe we were

17  rushing a bit to get this going.  But at the same time,

18  there -- there are clearly issues that you've brought up that

19  were not raised in the underlying briefs that need to be

20  addressed.  And the issue of standing being one of them.

21          The way we interpret, really, the issue of the fact

22  that she hasn't been charged, the fact that she's been deprived

23  of the firearm in the same fashion of the prior restraint case

24  in speech -- the free speech case, it's like saying you're not

25  allowed to even speak on this matter, it's very similar in that

1  sense.

2          And while they have sort of -- the opposing side has

3  made some hay of how we applied First Amendment doctrine, it's

4  clear since D.C. v Heller, when you start looking at these

5  Circuit Court opinions, that they're really starting to apply

6  principles that are borrowed from First Amendment case -- case

7  law.

8          And I think the idea of the Government being able to

9  shut down a person's right to ever acquire a firearm legally

10  is, in and of itself, a violation of that constitutional

11  individual right to own and possess a firearm.

12          So thank you.

13          THE COURT:  And you said you were kind of in a hurry

14  to get -- to get this filed.  So is there some Statute of

15  Limitations that's -- that's --

16          MR. RAINEY:  No, no, Your Honor.

17          THE COURT:  -- an issue or --

18          MR. RAINEY:  I think we -- we were pretty targeted in

19  the way that we pled the case.  And I -- looking back now, I

20  think all these issues being raised, I'm thinking maybe we

21  should have just done an opposition to their Motion to Dismiss,

22  and allow more discovery, and kind of move through the case in

23  normal channels rather than do a Cross-Motion for Summary

24  Judgment.  Because there are issues that, as you sort of --

25  with any constitutional thing -- as you sort of pull at the --

1  the string of the sweater, you start seeing more and more items

2  that you have to address.

3         And the 20 -- what is it -- the 30-page limitation on

4  a motion that's -- doesn't really give us enough time to

5  properly vent all these issues.  So, thank you.

6         THE COURT:  All right.  Thank you.  Mr. Theis?

7         MR. THEIS:  Thank you, Your Honor.  Several points I'd

8  like to address.

9         First, I'd like to try to bring us back to the

10 controlling law and the Complaint that's before the Court,

11 because there are several policy arguments and discussions

12 about amending the Complaint, and I'd like to focus very

13 clearly about what the issues are here and what was pled in the

14 Complaint.

15        What we have here is a -- is a clear understanding

16 of -- a question about what is this inference that a seller who

17 is selling firearms can make about someone's unlawful drug use.

18 That seemed to be something the Court was concerned about.

19        And I think what is clear here is, the Plaintiff is

20 the master of the Complaint, and she's pled several facts that

21 show that she is or intends to violate the law, violate Federal

22 law.

23        As the Court repeatedly said, marijuana is against the

24 law under Federal law.  So when Plaintiff argues that this

25 is -- you know, she's not violating the law, if someone is an

 1  unlawful user, they are violating Federal law, even if it's for

 2  medical purposes under State law.

 3          So what we have here is, if someone possesses a card,

 4  there is -- that specifically allows them to use marijuana

 5  under State law, the logical inference is that they are, in

 6  fact, going to use that card and use marijuana.  So that is a

 7  completely logical inference for a seller to make.

 8          In addition to the plain fact of that, the factual

 9  pieces, what she's alleged in her Complaint make clear that she

10  had to go through several steps to aver to the State of Nevada

11  that she intended to and was going to use marijuana.

12          Those facts include she had to go -- under the statute

13  you're required to go to a physician, the physician is required

14  to diagnose you with one of the various conditions that are --

15  by statute that you can have that allows you to use marijuana

16  for medical purposes under State law.

17          And in particular, the physician also has to warn the

18  individual about the deleterious effects of marijuana, there

19  has to be -- the disease itself has to be chronic and

20  debilitating, and there has to be a clear understanding that,

21  whatever -- the use of marijuana would somehow mitigate the

22  conditions.

23          And so the Plaintiff then had to take that

24  documentation and submit it to the State in order to say, I'm

25  going to use marijuana to alleviate the symptoms of the

1  condition that I have.

2        Taking those two pieces together, it's clear, this is

3  not an unreasonable inference that a person who does that, who

4  goes through those steps to say, I'm going to use marijuana,

5  does, in fact, use marijuana.

6        And again, there's two different -- there's a temporal

7  scope to this.  Every year you have to renew your license.  You

8  have to go back to the State of Nevada and submit more

9  documentation from your physician saying, my physician is

10  telling me I need to continue to use marijuana, and that's, in

11  fact, what she did, and that's what's alleged in the Complaint.

12        So there's no allegation about, you know, these other

13  pieces or questions about why she got the card or the purpose

14  for getting the card, that's not in the Complaint.  What's in

15  the Complaint is that she wanted to use marijuana, she got a

16  card, told the State of Nevada she was going to use marijuana,

17  and then was prohibited from purchasing a firearm because of

18  the possession of the card.

19        So that -- I feel like the logic and the facts in the

20  Complaint get to that inference question that the Court is

21  concerned about.

22        And again, under (d)(3), it's just that someone needs

23  to have reasonable cause -- seller needs to have reasonable

24  cause to believe.  All of these facts show that that was

25  entirely reasonable for someone to believe that she was an

1  unlawful user.

2         I also second wanted to address this -- the

3  independent constitutional analysis.  The two steps got a

4  little bit blurred here and how we were discussing this.

5         The second -- the first step is not whether or not

6  this case generally involves the Second Amendment, but the

7  question is whether or not the restriction at issue here falls

8  within the scope or is within the historical understanding of a

9  type of restriction that the Second Amendment allows.

10         And we've cited a variety of sources in our briefs

11  that point to the understanding of the Second Amendment right,

12  as Heller described it, as reserved for law abiding,

13  responsible citizens.  That's the core right of the Second

14  Amendment.

15         So for individuals who are not law abiding, who are

16  not responsible citizens, who affirmatively tell the State of

17  Nevada that they're going to violate Federal law, the Second

18  Amendment does not apply to them.

19         So that is -- you don't even need to get to the

20  scrutiny position.  The restriction under the analysis of the

21  Second Amendment, it does not apply to those individuals.

22         Second, for the scrutiny piece, we want to make -- and

23  I would just point out on that specific point, Plaintiff

24  doesn't, in her briefs at least, challenge that assertion.  She

25  doesn't suggest that somehow the Second Amendment didn't

 1  include, well, but if people have an exemption for medical

 2  marijuana or medical drug use or somehow had some other

 3  exemptions for violating the law, that that would be fine.

 4  That's not in the briefs.

 5          All that they say is that she doesn't violate State

 6  law.  But again, there is no such thing as a lawful marijuana

 7  user under Federal law.

 8          THE COURT:  So --

 9          MR. THEIS:  Yes.

10          THE COURT:  -- what would be the Governmental

11  objectives that are important and at issue here under strict

12  scrutiny?

13          MR. THEIS:  The Court -- in 922(d)(3), as in all of

14  the Gun Control Act from 1968, the Government objective was to

15  ensure that criminals do not possess firearms.  To make sure

16  that -- there was an interest in protecting public safety.

17          And every Court -- that's a compelling interest.

18  That's beyond -- this is a very substantial interest that the

19  Government has.

20          And 922(g)(3) references the Controlled Substances Act

21  in order to determine what type of drugs and what qualifies as

22  legal and not legal.

23          And that -- within the Controlled Substances Act is

24  various schedules.  Under Schedule I, marijuana has been on

25  Schedule I since the beginning.  It's clear that what -- from

1  the initial putting of marijuana on Schedule I to the continued

2  rejections of the petitions to the Attorney General and to HHS

3  to remove marijuana from Schedule I, that there's a continuing

4  judgment by the Federal Government, by the Attorney General, by

5  HHS, that there is no medical use for marijuana, one, that

6  individuals who use marijuana, as the Duty Court recognized,

7  are more likely to have -- lack self-control.

8          And in addition, there's the pharmacological or other

9  deleterious effects that are -- we point out in our briefs,

10 that someone who is under the influence might more likely

11 engage in activities that would tie back to that violent crime.

12         So that -- that's the fit that we're -- we're looking

13 for in that intermediate scrutiny analysis is between those two

14 different pieces.  So I think that answers the Government's

15 question -- or the Court's question about that particular

16 question.

17         THE COURT:  Well, the earlier cases that the Plaintiff

18 was referring to were the criminal cases where someone's

19 actually been charged with a criminal offense.  We don't have

20 that here.  In those cases, intermediate scrutiny was applied.

21         This is a different case in that she has not yet been

22 charged with a criminal offense because it's more of a -- of

23 a -- like he was saying -- perhaps a prior restraint or, not to

24 use a legal word, but at least she has been prevented from

25 committing what, in the Government's eyes, would be perhaps a

1  criminal offense.

2           So how does that affect the standard that I should

3  apply, or does it?

4           MR. THEIS:  Well, Your Honor, it's -- it supports the

5  argument that this is -- that there's no constitutional

6  violation here.

7           In criminal cases, the burden is squarely on the

8  Government.  And it's a substantial burden, it's beyond a

9  reasonable doubt.  There has to be a wide variety of facts that

10  are submitted that a finder of fact has to determine beyond a

11  reasonable doubt that that person committed this crime.

12           This is a civil pre-enforcement challenge.  The only

13  burden that's relevant here is whether or not a

14  constitutional -- a statute, or regulation, or the letter

15  violates some provision of the constitution.

16           And she has put forth in her complaint, she's averred

17  to this Court and to the State of Nevada that she is --

18  falls -- she is violating the law.  And that -- that -- so

19  that's -- there's no question here about -- you know, there

20  hasn't been a full hearing about whether or not she's an

21  unlawful user.  You don't need to do that because this is --

22  she's the master of her Complaint and she's pled facts that

23  show that she is an unlawful user and violates Federal law.

24           THE COURT:  Well, isn't that the question?  I don't

25  think that she's alleged she's an unlawful user.  If anything,

1  she's alleged that she's not an unlawful user.  What she's

2  alleged is that she has the medical marijuana card issued by

3  the State.  She hasn't admitted that she has any marijuana, or

4  even that she plans to possess any marijuana.

5         I realize that's the inference that the Government is

6  asking the seller to make and, likewise, asking the Court to

7  make now, but I don't think that the Plaintiff has admitted

8  that that inference is correct.  In fact, that's why we're here

9  is to determine whether or not, as you say, it is a logical

10  inference or is it not.

11         MR. THEIS:  Well, and I would again go back to those

12  two points.  That if someone has a card that says you can use

13  marijuana, the inference is that they are using marijuana.  If

14  someone tells the State of Nevada I'm going to use Nevada -- I

15  need to use marijuana in order to alleviate a condition that I

16  have under State law, if I -- if this person goes to the doctor

17  and says, I want to use marijuana, and the doctor prescribes

18  something that's submitted to the State of Nevada, all of

19  those -- those facts build to a very reasonable inference that

20  someone is violating Federal law.

21         THE COURT:  So you're saying, in the application

22  process to get the medical marijuana card, that she has to

23  aver, or sign, or in some way admit or declare that she plans

24  to use marijuana?

25         MR. THEIS:  Well, what the statute says is that you

1  need to have valid, written documentation from the physician

2  stating that, one, they've been diagnosed with a chronic and

3  debilitating medical condition, two, that the use of marijuana

4  may mitigate the symptoms and, three, that the attending

5  physician has explained the risks and benefits of the medical

6  use.  That's --

7          THE COURT:  So she's not declaring she's going to --

8          MR. THEIS:  Well, there's no other inference that can

9  be drawn from that.  If she submits -- she goes to her doctor

10  and asks, I have a debilitating condition, is marijuana

11  something I can use?  And the doctor says yes, and here are the

12  problems with using marijuana, here's this information, submit

13  it to the State, that's -- that's a pretty reasonable inference

14  to say that all of that leads to that one intends to use

15  marijuana to alleviate those conditions.  And that's --

16  that's -- you know --

17          THE COURT:  Are you aware -- and I realize you're from

18  D.C. so maybe you're not -- but in your research, have you

19  determined how long it takes to go through that process of

20  obtaining the medical marijuana card here?

21          MR. THEIS:  I don't, Your Honor.  I know that in this

22  particular case, I believe it was several months that she --

23  between the actual submission of the application to the time

24  that she received her -- and that it was a few months after

25  that that she then attempted to purchase the firearm in this

 1  case.

 2          THE COURT:  So the likelihood that she might be doing

 3  this, getting the card just in case this -- whatever illness

 4  she has becomes intolerable enough that she needs the

 5  marijuana, that she's getting the card now before it's -- it's

 6  too late, is that something that I should consider, or not?

 7          MR. THEIS:  I don't think so, Your Honor.  Because the

 8  statute makes clear that this is something that's about chronic

 9  or debilitating condition.

10          THE COURT:  I mean, if her doctor told her, look, this

11  is only gonna get worse, it's not gonna get better.  I can give

12  you medications.  They're not -- they'll work at first but

13  they're not going to work long-term, and eventually, you're

14  going to need something else, do you want me to write you a

15  prescription for this?  And she says, well, I don't know.  And

16  he says, it's going to take you about seven months to get the

17  medical marijuana card so you may want to go ahead and do it

18  now just in case?

19          I mean, sometimes I go to the doctor, and the doctor

20  will give me a prescription for my son's sore throat and says,

21  if it doesn't get better in a few days, get the prescription

22  filled.  Doesn't mean I'm gonna.  I'm gonna wait and see if

23  that sore throat gets better on its own.  But if it doesn't,

24  I'm gonna get the prescription filled.

25          So is that the scenario -- you know, if that is a

1  scenario we have here, can I even assume that?  Does it matter?

2  Should I just confine myself to the fact that she got the card

3  regardless of how long it took to get the card?

4          MR. THEIS:  I think that's correct, your Honor.

5  Respectfully, all of those suggestions are not before -- this

6  is not pled in the Complaint.  What's pled in the Complaint is

7  she went to a physician, she got the -- submitted the paperwork

8  to the State and got the card.

9          There's nothing to suggest that she's -- nothing to

10  suggest that she's not using marijuana for any particular

11  purposes, nothing to suggest that she stopped using marijuana

12  the day she got the card.  All of -- all that we have is what,

13  again, in the Complaint.  And what is in the Complaint is

14  enough to dismiss the case because there's nothing there

15  that -- that would give her some sort of relief.

16          I would -- a couple of different just quick points

17  that we talked about that were also raised.  The equal

18  protection thing, I'll just very briefly address this.

19          There's this question about whether or not, so the

20  State of Nevada is a registered card, but other states -- that

21  also have recognized medical marijuana under State law, but

22  those states don't, you know, formally have registry cards, and

23  that therefore, they're somehow being treated differently.

24          What that claim really boils down to is that

25  individuals in the State of Nevada, it's more -- it's more

1  difficult for them to evade the law than other states.  Meaning

2  you still have to fill out a form and submit it to the ATF --

3  or submit it to the firearm seller when you're at the firearm

4  licensee.  The question is, are you an unlawful user of drugs,

5  that you have to answer yes or no.

6         And if someone doesn't have a medical marijuana --

7  they're supposed -- if they are an unlawful user of marijuana,

8  meaning if they use marijuana at all under Federal law, they're

9  required to answer yes to that.  But that doesn't -- just

10 because there's two different ways in which the seller can look

11 to -- there's two different ways in which the seller can make

12 the judgment about whether or not the person is an unlawful

13 user of marijuana, but that doesn't create an equal protection

14 claim.  They're treated equally, same.  Two -- the Federal law

15 applies equally to both of those categories and individuals.

16         THE COURT:  Did she fill out the form -- the

17 application form, and did she indicate on the application form

18 that she was a marijuana user?

19         MR. THEIS:  She left that question blank.  And I

20 believe in her Complaint she stated she didn't --

21         THE COURT:  So on that basis alone the seller could --

22         MR. THEIS:  Absolutely.

23         THE COURT:  -- deny her the firearm because --

24         MR. THEIS:  That's correct.

25         THE COURT:  -- it's an incomplete application, no?

1            MR. THEIS:  That's correct.

2            THE COURT:  She might have to apply again and actually

3   indicate on that application and have a successful application

4   before we get to this legal issue, it appears.  I -- I have to

5   think about that.

6            MR. THEIS:  That's correct, your Honor.  And that is

7   certainly -- you know, if she -- that's correct.  That is

8   another grounds or cause to dismiss this present Complaint.

9            THE COURT:  With leave to amend, perhaps.

10           MR. RAINEY:  If I may really quickly, Your Honor, on

11  that point?  If you read the Complaint, it actually says that

12  she went to fill out the question, and she was stopped by

13  Mr. Houser, and he testified that he stopped her from answering

14  the question saying, "You have to answer this yes because I

15  know you have that card."  And that was -- that's why she

16  didn't fill it out.

17           THE COURT:  But he hasn't testified because we had --

18  this is the first hearing I've had on this case --

19           MR. RAINEY:  His -- his --

20           THE COURT:  -- but he's got an Affidavit or a

21  declaration.

22           MR. RAINEY:  It's attached to the Complaint, yeah.

23  And it includes -- and it actually cites -- and so is the

24  application.  And he specifically says that, "I told her not to

25  fill that out because I knew that she was an unlawful user

1  because she had a card."

2          THE COURT:  Okay.  So not only is she prevented from

3  having a firearm, she's prevented from even applying for the

4  firearm.

5          MR. RAINEY:  Essentially, yes.

6          MR. THEIS:  That's -- that's not correct, Your Honor.

7  She could still --

8          THE COURT:  That's not what the ATF, I think, intends,

9  but perhaps it is.  I don't know.

10          MR. THEIS:  Well, no, no.  She can still -- she can

11  still apply for the -- for the -- for a firearm, absolutely.

12  There's -- but until she is --

13          THE COURT:  That's not what the seller understood the

14  letter to say.

15          MR. THEIS:  But the seller -- what the sell -- again,

16  I want -- to go back to --

17          THE COURT:  So was that a misunderstanding?  Should

18  the seller have allowed her to at least complete the

19  application and then make the determination whether or not to

20  approve it?

21          MR. THEIS:  Congress has determined -- and this is the

22  language of (d)(3) -- that, "Any person that the seller knows

23  or has reasonable cause to believe is an unlawful user of a

24  controlled substance, they can deny that person a firearm."

25          But they have almost -- they have wide, wide authority

1  to do so.  And so the question of whether or not she -- you

2  know, she -- he stopped her from answering that question or

3  whether -- that doesn't matter to the -- to the question before

4  the Court, and that is, does that statute, which says you can

5  use reasonable inferences to determine whether or not someone

6  is an unlawful user, that that's all that -- that matters for

7  this case.

8         And so, you know, the fact that -- because this

9  particular seller could use a wide variety of inferences to

10 determine whether or not the person has a reasonable cause to

11 believe that they're an unlawful -- that they're violating

12 Federal law by using marijuana.

13        And sellers, in fact, do that.  There's -- they can do

14 a wide -- they can make any sort of determinations they want in

15 that purchase process regarding this particular issue.

16        I want to just get back -- briefly back, again, to

17 this -- there's this question about -- you know, the Court

18 suggested that there's -- that somehow, because she is using

19 marijuana for medical purposes, or that individuals who use the

20 card -- or have the card use the marijuana for medical

21 purposes, that that's somehow different than other types of

22 marijuana users.

23        And I just want to drive home again that the Federal

24 Government is not taking that position.  The policy, based on

25 years of determinations and analysis of this, is the Federal

TRANSCRIBED FROM DIGITAL RECORDING                61

1  Government looks at marijuana use as exactly the same no matter

2  how one uses it or when one uses it.

3          And so -- but there's no diff -- all of the questions

4  about, well, she's somehow different, that's something that

5  she's welcome to petition Congress about and ask can we change

6  the law and -- or go to the Attorney General or the DEA and

7  say, move marijuana from Schedule I, but that's not the case

8  here.

9          All -- what has -- what has been the standing policy

10 is that marijuana cannot be used no matter what the case, even

11 marijuana for medical purposes.

12         So that's what -- I want to keep focusing in on that

13 particular issue because there's no distinguishing fact between

14 these two types of users of marijuana.

15         THE COURT:  So this medical marijuana card is only

16 good for a year, right?

17         MR. THEIS:  That's correct.

18         THE COURT:  And has to be renewed.  So if hers

19 expires, she doesn't renew it, she goes to the seller, she gets

20 a firearm, and the next day she reapplies for the medical

21 marijuana card, then she wouldn't be afoul of the seller's --

22 the seller wouldn't necessarily be in trouble, he wouldn't be

23 charged under the Gun Control Act for having sold a firearm,

24 but she would still be in the position of both possessing the

25 card and the firearm.  So you're saying then she would still be

1  subject to conviction?

2        MR. THEIS:  So in your hypothetical, the card has

3  expired --

4        THE COURT:  Mm-hmm.

5        MR. THEIS:  -- she no longer has the card, but she

6  goes and tries to purchase the firearm and is denied --

7        THE COURT:  No, no.

8        MR. THEIS:  -- or is not denied --

9        THE COURT:  Not denied.

10        MR. THEIS:  -- she gets the firearm.

11        THE COURT:  She gets the gun, yeah.

12        MR. THEIS:  So for the two different issues here.  The

13  first one is, on the seller's part, all that is incumbent upon

14  the seller is to determine whether or not there's a reasonable

15  basis to believe they're an unlawful user.

16        And hypothetically, you have the -- I don't -- there's

17  nothing that would suggest immediately, from the seller's point

18  of view, this person is a user of marijuana.  So that there's

19  nothing -- there's no issue there.

20        The question -- whether -- the second -- to your

21  second question about the former holder of the card.  All that

22  matters is whether --

23        THE COURT:  So if she was to do it in the reverse, she

24  gets the gun first, then she applies for the medical marijuana

25  card, but she at some point has both the medical marijuana card

1  and a firearm.  So is that the ATF's Open Letter's position

2  that now she is in violation of -- because she is an unlawful

3  user with a firearm?

4          MR. THEIS:  Well --

5          THE COURT:  Because the inference is that she is an

6  unlawful user if she has the medical marijuana card.

7          MR. THEIS:  I want to go back to the text of the

8  letter.  All that the letter is saying is -- first of all, the

9  letter -- the vast majority of the letter, all that it does is

10 restate the law.  It says this is what (d)(3) says.  You know

11 this.  This is what the regulation says.  You know this.

12         THE COURT:  Right.  It's addressed to the seller.

13         MR. THEIS:  And it's addressed to the seller, and it

14 specifically says, any piece of information that you have that

15 you can use is the possession of this card.  And if you know

16 that they have possession of a medical marijuana card, that

17 that's a piece of evidence that you can use to not allow them

18 to possess a firearm.

19         So -- so that that -- that's all that we're focused on

20 as far as the letter is concerned.  The letter is not

21 prescriptively giving any guidance to the Department of Justice

22 or to the public at large about who they're going to prosecute

23 based on possessions of a -- if you have -- if you're --

24         THE COURT:  But the purpose of the letter is to

25 satisfy the important Governmental interest, which is to

TRANSCRIBED FROM DIGITAL RECORDING                64

1  provide safety and prevent violent crimes --

2          MR. THEIS:  Correct.

3          THE COURT:  -- and prevent individuals who have both

4  firearms and a medical marijuana card from possessing both at

5  the same time.  A valid medical marijuana card, not an expired

6  one.  A valid medical marijuana card.

7          So if you can prevent someone from getting the gun,

8  the reason that you want to prevent them from getting the gun

9  is because, if they do get the gun, the Government believes

10 that they will have violated the statute by being an unlawful

11 user in possession, right?

12         MR. THEIS:  I think those are two different analyses.

13 The first is what the letter addresses, and that's only the

14 point of sale.  And that is the focus of the letter, and that

15 letter is fleshing out the -- how to deal with this -- this

16 language in (d)(3) that you have a reasonable cause to believe

17 they're violating the Federal law.

18         THE COURT:  And the letter doesn't address or even

19 intend to address the (g)(3) --

20         MR. THEIS:  Right.  Exactly.  That's not the point --

21         THE COURT:  -- language.  Okay.

22         MR. THEIS:  -- is that that's a separate analysis.  Is

23 if someone is violating (g)(3), you look to whether or not

24 they're an unlawful user of a controlled substance.  And

25 that's -- that's clear.  If you're possessing a gun at the same

1 | time that you're an unlawful user of a controlled substance,

2 | then that -- that you fall within that category.

3 |        Now, I'm not hyp -- you know, making a hypothetical

4 | about this particular Plaintiff, but in the hypothetical that

5 | you set out.  That's -- that's what --

6 |        THE COURT:  Right.  But you're saying the purpose of

7 | advising the seller about what -- how they interpret the

8 | language of (g)(3) is so that the seller doesn't inadvertently

9 | enable a person from violating the -- the other subsection.  So

10 | I'm --

11 |        MR. THEIS:  Yes.  It could be read that way, but I

12 | think it's clearly focused on the seller's own concerns.

13 |        And what animated this, obviously, was seller is

14 | saying there are now these states that have passed marijuana

15 | laws that exempt one from prosecution.  So what do we do with

16 | that fact?  And so that's what this -- the letter was intended

17 | to -- to address was specifically at the point of sale, do you

18 | violate (d)(3) if you know that the person has a medical

19 | marijuana card?

20 |        And so what the -- again, what the ATF said, and which

21 | was completely reasonable and well within the scope of their

22 | interpretation of the statute and the regulation, is that this

23 | is clearly an inference that you can make.  If they've averred

24 | to the State of Nevada that they are going to use marijuana and

25 | they have a card that allows them to use marijuana, that's

1  information that you could use in your determination of whether

2  or not this person is an unlawful user of a controlled

3  substance.

4        And so that -- again, that's what that -- the focus of

5  the letter is, and that's what -- that's why the letter was

6  sent, and that's why it addresses the issues of the sellers.

7        THE COURT:  All right.  Well, I appreciate both

8  counsel's comments.  I'm now inclined to look at this more as a

9  prior restraint issue that hasn't actually been claimed yet.

10  So I'm going to take it under advisement, I'm not going to rule

11  now.  I'm thinking perhaps this is a -- the situation where the

12  Government's Motion to Dismiss might be granted with leave to

13  amend, and perhaps it needs to be either pled completely

14  different or not.  But it does sound like we might be a little

15  bit short of an actual -- of the issue that the Plaintiff

16  intended to allege at this point because of the fact that

17  there's -- the four corners of the Complaint is all that I'm

18  looking at, and that's what I'm going base my determination on.

19        And just to -- I suppose just to get on the pulpit for

20  a second and to say, again -- which I -- I find myself saying

21  very often lately -- is that the Court's purpose is not to

22  render rulings based on passions or emotions or what I would do

23  if I were a legislator, because I'm not.  We do have a

24  legislative body, we do have administrative bodies.  They are

25  delegated from time to time with the authority to prescribe

 1 | rules and regulations so that they can effect the purpose of
 2 | the laws that are enacted by Congress and signed into law by
 3 | the President.
 4 |         And so it's not for this Court to say at this point
 5 | whether or not the -- the theories of the Plaintiff I think is
 6 | asking the Court to rule on are correct or not because I
 7 | don't -- I'm not sure that they're properly before the Court at
 8 | this point, and it's a question of whether or not they're
 9 | constitutional, not whether or not I like it or don't like it.
10 |         So I think with that being said, it's -- it's probably
11 | premature, the Complaint, but I will look into it.  I look
12 | forward to the briefing as to the standing issue still, and
13 | also as to whether or not there's a notice and comment that
14 | needs to be provided as to this particular interpretation given
15 | in the Open Letter or not, whether it's interpretative or
16 | whether it's not.
17 |         Mike, do we have a briefing schedule?  Do we want to
18 | just have a -- since we have dual Motions to Dismiss, I think
19 | we can just do the one deadline for both to submit blind briefs
20 | on the standing and issue, as well as the Nordyke issue.  And
21 | then -- I don't know.  What do you all think you need?  Two
22 | weeks or more?  Three weeks?  I don't want to cut you short.
23 |         MR. RAINEY:  Yeah.  You know, Your Honor, I -- I have
24 | a prescheduled trip to Croatia to work from our Croatian office
25 | for the next few weeks.  I'm not going to be back until

1  December 6th.  And I don't think there's a rush on this.  I'd

2  prefer it if we could have something maybe --

3          THE COURT:  I'm sure the Government doesn't have a

4  rush on this because, the way it stands now, Miss Wilson cannot

5  obtain a firearm.  So if anyone has a rush --

6          MR. RAINEY:  Yeah.

7          THE COURT:  -- my understanding is that Miss Wilson

8  would be the one who has --

9          MR. RAINEY:  Yeah.

10         THE COURT:  -- the most to lose from any delay.  So

11 it's up to you all.  I know you want to take your best

12 opportunity to explain everything to me that I need to know

13 rather than rush through it.

14         MR. RAINEY:  Right.  I would prefer it be sometime

15 like mid December, like December 15th, or even December -- you

16 know, before Christmas, but mid December would be nice.

17         THE COURT:  All right.  So Mike, something right

18 before Christmas.  So -- Mr. Theis, I'm just assuming, but I

19 should ask you, if that's all right with you, something mid

20 December before Christmas?

21         DEPUTY CLERK:  45 days, Your Honor, would be

22 December 17th, 2012.

23         THE COURT:  All right.  So December 17th at, we'll

24 say, 4:00 p.m. so that we can get it -- so 4:00 p.m. on

25 December 17th.  What day of the week is that?

1      DEPUTY CLERK:  That is a Monday, Your Honor.

2      THE COURT:  On a Monday.  So you even have an extra

3 weekend there to work on it.  So Monday, 4:00 p.m.  Go ahead

4 and --

5      I'm hoping that you'll just stick to -- you know, the

6 issues that I really need to know is the Nordyke, and the

7 standing issue, and whether or not it's an interpretative rule

8 or not that requires -- whether it requires comment and notice

9 or not.

10      MR. THEIS:  If I might briefly, Your Honor.  So I

11 understand the second point, the notice and comment.

12      The first comment as I understood was -- and correct

13 me if I'm wrong -- is that -- is whether there's standing to

14 bring (d)(3) because she is not a seller.  Is that what

15 we're -- the focus of the standing question is?  Or -- I'm

16 sorry.  Or in your order were you --

17      THE COURT:  That was the only one originally that I

18 thought was an issue.  Now I'm not so sure whether the --

19 there's -- there's a standing question because she didn't

20 complete the application.  But the representation is that she

21 was also prevented from completing the application.  So maybe

22 there's not a standing issue as to that regard, but there does

23 seem to be as to the seller's statute, that section.

24      MR. THEIS:  And the -- the Nordyke question?  So is

25 that a separate --

1            THE COURT:  So the Nordyke question is, is it a

2    rational basis?  Because that's what the En Banc Court decided,

3    and all the other cases seem to indicate that intermediate

4    scrutiny is correct, but we still have the Plaintiff asking for

5    the strict scrutiny.

6            So how do I reconcile all that, keeping in mind that

7    the other cases are not Ninth Circuit cases, and the Nordyke

8    case is a Ninth Circuit case, which has direct precedential

9    value on this Court.

10            MR. THEIS:  So those are the three issues that we

11    then -- as we understand -- okay.

12            THE COURT:  Yeah.  And if you think of something else,

13    file leave to amend -- I mean -- leave to supplement, rather,

14    if there's something else that you think I need to know that

15    we -- that aren't -- isn't contained in those three.

16            But I'd prefer if you can -- if you stick to those

17    three, keeping in mind, if you didn't put it in the Complaint,

18    it's probably not something that needs to be argued now.  And

19    if there is no Statute of Limitations issue, then you probably

20    can raise it later, or she could always apply again and see

21    what happens there.  That would be, I believe, a whole new

22    cause of action and then --

23            MR. RAINEY:  Your Honor, if I may.  Given the

24    discussion today, would it be appropriate for me to file a

25    Motion to Amend at this time?

TRANSCRIBED FROM DIGITAL RECORDING                    71

```
 1          THE COURT:  Say that again?
 2          MR. RAINEY:  Would it appropriate for me to file a
 3  Motion to Request Leave to Amend the Complaint at this time?
 4          THE COURT:  Well, I was thinking about that, but you
 5  hadn't made that motion.
 6          MR. RAINEY:  I'd be happy to make that motion.
 7          THE COURT:  You could make that motion.  I don't know
 8  if I'll address it before or after the Motion to Dismiss.
 9          MR. RAINEY:  Right.
10          THE COURT:  I usually do address both at the same
11  time --
12          MR. RAINEY:  Okay.
13          THE COURT:  -- but --
14          MR. RAINEY:  I will try to get you that motion right
15  away, and I'll also talked to my opposing counsel here and see
16  if there's any sort of stipulation --
17          THE COURT:  A stipulation is always --
18          MR. RAINEY:  -- or agreement that we can --
19          THE COURT:  -- something that's easier for me to sign
20  within a day or two, obviously, yes.
21          MR. RAINEY:  Okay.  And I guess if that happened, then
22  we would have to restart -- jump start everything over again.
23          THE COURT:  Okay.  If you want to address whether the
24  issue that she raises is even ripe or not, you can go ahead
25  and --
```

TRANSCRIBED FROM DIGITAL RECORDING                72

1          MR. RAINEY:  Ripeness.

2          THE COURT:  -- and address that, I suppose, since the

3   issue of her application is a ripeness question, but probably

4   can be addressed along with standing.

5          My understanding is that what she's asserting is that

6   she would have completed the application had she been allowed

7   to, but that the seller did not allow her to, and that there is

8   a declaration from the seller that justifies her position.

9          I can't tell you honestly right now, I can't remember

10  off the top of my head if it actually says that or not.  But --

11         So if you go back and look at it and that's not what

12  it says and you want to argue ripeness, obviously, that's

13  something that the Court would be interested in.  But I -- I'm

14  taking the Plaintiff at this point at his word as an Officer of

15  the Court that that's, in fact, what the declaration says.  If

16  you find otherwise, you probably want to address that.

17         Anything else that you think that we should be

18  thinking about addressing in these supplemental briefs or -- it

19  always helps to have these hearings to help us all focus on

20  what the actual issues are here.

21         So I'll just leave it at that, that those are the

22  issues to be addressed.  If you do find other issues that you

23  want to address, please file leave to supplement and address

24  separately, as a separate motion, and then address anything

25  else that's not included in those limitations.  All right.

TRANSCRIBED FROM DIGITAL RECORDING                73

```
 1          MR. THEIS:  And that could be before we submit the --
 2  move to file leave to supplement?
 3          THE COURT:  You can just do it together.
 4          MR. THEIS:  Right, okay.
 5          THE COURT:  If I grant it then I consider it, so you
 6  would actually brief it, as well.  Kind of like when you do a
 7  Motion to Amend the Complaint and you have to attach the
 8  Complaint as amended, as well, you know, do that.  That way
 9  I'll have it all together.
10          MR. THEIS:  All right.
11          THE COURT:  Okay?  Any questions?  All right.  So
12  that's the date.  I didn't write it down.  Mike, I'm sorry,
13  could you repeat it?
14          DEPUTY CLERK:  It's December 17th, 2012 at 4:00 p.m.
15          THE COURT:  Okay.  So Monday, December 17th at
16  4:00 p.m., 2012, obviously.
17          If anyone has a need to extend that deadline for
18  whatever reason, and you can agree to a different deadline and
19  file a stipulation, I'll sign that.  It's --
20          You know, like I said, from my point of view, it's the
21  Plaintiff's concern to get this done quicker rather than later.
22  So if you all have a stipulation, I'll go ahead and sign that.
23          All right?  Thank you very much counsel for coming in
24  today.  Court's in recess.
25                  (Proceedings concluded at 10:43:20 a.m.)
```

ELLEN L. FORD - (702) 366-0635

**199**

1                    **C E R T I F I C A T E**

2

3  I, Ellen L. Ford, court-approved transcriber, certify that the

4  foregoing is a correct transcript transcribed from the official

5  electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8   /s/ ELLEN L. FORD                    January 11, 2013
        Ellen L. Ford                           Date
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    STUART F. DELERY
     Principal Deputy Assistant Attorney General
2
     DANIEL G. BOGDEN
3    United States Attorney

4    DIANE KELLEHER
     Assistant Director, Federal Programs Branch
5
     JOHN K. THEIS
6    Trial Attorney, Federal Programs Branch
     United States Department of Justice, Civil Division
7    20 Massachusetts Ave., N.W., Rm. 6701
     Washington, D.C. 20530
8    Telephone: (202) 305-7632
     Facsimile: (202) 616-8460
9    John.K.Theis@usdoj.gov

10   *Attorneys for Defendants*

11                     **UNITED STATES DISTRICT COURT**
                             **DISTRICT OF NEVADA**
12

13   S.  ROWAN WILSON,

14                 Plaintiff,

15          v.

16   ERIC HOLDER, Attorney General of the        Case No.: 2:11-cv-1679-GMN-(PAL)
     United States, *et al*.,
17                                                **HEARING REQUESTED**
                   Defendants.
18

19        **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
          COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
20

21          Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, Defendants, the

22   United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the

23   individual defendants in their official capacities, by their undersigned counsel, hereby move this

24   Court to dismiss Plaintiff's First Amended Complaint or, in the alternative, to enter summary

25   judgment for Defendants.  A Memorandum of Points and Authorities accompanies this motion,

26   along with an Appendix of Secondary Material and a Statement of Undisputed Material Facts.

27

28

                                                 1

1  Dated: January 31, 2013                    Respectfully submitted,

2                                             STUART F. DELERY
                                              Principal Deputy Assistant Attorney General
3
                                              DANIEL G. BOGDEN
4                                             United States Attorney

5                                             DIANE KELLEHER
                                              Assistant Director
6
                                              /s/ John K. Theis
7                                             JOHN K. THEIS
                                              Trial Attorney
8                                             United States Department of Justice
                                              Civil Division, Federal Programs Branch
9
                                              Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

STATUTORY AND REGULATORY BACKGROUND ..............................................3

   I.     THE GUN CONTROL ACT AND THE CONTROLLED
          SUBSTANCES ACT  ..................................................................3

   II.    NEVADA'S LAW REGARDING THE USE OF MARIJUANA ..................5

   III.   ATF'S SEPTEMBER 2011 OPEN LETTER TO FFLS .........................8

PROCEDURAL HISTORY .........................................................................................9

ARGUMENT ...........................................................................................................11

   I.     PLAINTIFF LACKS STANDING TO CHALLENGE THE STATUTES, THE
          REGULATION, AND ATF'S OPEN LETTER ......................................11

      A. Plaintiff Cannot Establish the "Injury in Fact" Requirement Because She
          Lacks a Valid Medical Marijuana Card.............................................12

      B. Plaintiff Cannot Satisfy the Traceability Elements of Standing Because Her
          Injury is Self-Inflicted....................................................................13

      C. Plaintiff Cannot Satisfy the Traceability or Redressability Elements of
          Standing Because She Has Not Challenged Nevada's Prohibition on the
          Possession of a Firearm by an "Unlawful User" ...............................13

   II.    PLAINTIFF'S SECOND AMENDMENT RIGHTS HAVE NOT BEEN
          VIOLATED...................................................................................15

      A. 18 U.S.C. § 922(g)(3), as Implemented and Interpreted by ATF, Does Not
          Violate the Second Amendment.. ....................................................16

          1.  Plaintiff's Second Amendment Challenge to § 922(g)(3) is Foreclosed
              by the Ninth Circuit's Decision in *Dugan*.. .........................................16

          2.  Even if *Dugan* Did Not Foreclose Plaintiff's Challenge, Her Claim
              Would Still Fail, Because Unlawful Drug Users, Including Those Who
              Comply with State Medical Marijuana Laws, Fall Outside the Scope of
              the Second Amendment.. ........................................................19

          3.  In Any Event, 18 U.S.C. § 922(g)(3) Substantially Relates to the
              Important Governmental Interest in Protecting Public Safety and
              Combating Violent Crime.. .................................................23

      B. 18 U.S.C. § 922(d)(3), as Implemented and Interpreted by ATF, Does Not
          Violate the Second Amendment. .....................................................31

      C. 27 C.F.R. § 478.11 Does Not Violate the Second Amendment. .....................31

      D. The Open Letter Does Not Violate the Second Amendment. ......................32

i

III.   PLAINTIFF'S FIRST AMENDMENT RIGHTS HAVE NOT BEEN
       VIOLATED ......................................................................................................35

IV.    PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE
       DISMISSED AS DUPLICATIVE OF HER CLAIMS UNDER THE FIRST AND
       SECOND AMENDMENTS ................................................................................38

V.     PLAINTIFF'S PROCEDURAL DUE PROCESS MUST BE DISMISSED
       BECAUSE SHE HAS NOT BEEN DEPRIVED OF A CONSTITUTIONALLY-
       PROTECTED LIBERTY INTEREST ...................................................................39

VI.    PLAINTIFF'S EQUAL PROTECTION MUST BE DISMISSED BECAUSE SHE
       HAS NOT IDENTIFIED SIMILARLY SITUATED INDIVIDUALS THAT
       DEFENDANTS HAVE TREATED DIFFERENTLY ...........................................40

VII.   AS PLAINTIFF PREVIOUSLY CONCEDED, SHE CANNOT SEEK
       MONETARY DAMAGES AGAINST THE UNITED STATES ..........................42

CONCLUSION ..............................................................................................................43

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

**TABLE OF AUTHORITIES**

<u>CASES</u>                                                                                                          <u>PAGE(S)</u>

*Albright v. Oliver*,
    510 U.S. 266 (1994) ........................................................................................38

*Allen v. Wright*,
    468 U.S. 737 (1984) ........................................................................................14

*Auer v. Robbins*,
    519 U.S. 452 (1997) ........................................................................................35

*Bolling v. Sharpe*,
    347 U.S. 497 (1954) ........................................................................................40

*Christensen v. Harris County*,
    529 U.S. 576 (2000) ........................................................................................35

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985) ........................................................................................40

*Clark K. v. Willden*,
    616 F. Supp. 2d 1038 (D. Nev. 2007) .........................................................39

*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011) .............................................................11, 42

*Denney v. DEA*,
    508 F. Supp. 2d 815 (E.D. Cal. 2007) .......................................................38

*Dep't of Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999) ........................................................................................42

*Dickerson v. New Banner Institute*,
    460 U.S. 103 (1983) ..........................................................................................4

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .............................................................................. *passim*

*Dyer v. United States*,
    166 F. App'x 908 (9th Cir. 2006) ...............................................................42

*Erickson v. United States*,
    67 F.3d 858 (9th Cir. 1995) ........................................................................39

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ......................................................................19

*Ferguson v. Skrupa*,
    372 U.S. 726 (1963) ........................................................................................32

*Fire Equip. Manufacturers Association v. Marshall*,
    679 F.2d 679 (7th Cir. 1982) ......................................................................13

*Fontana v. Haskin,*
    262 F.3d 871 (9th Cir. 2001) ................................................................38

*Freeman v. City of Santa Ana,*
    68 F.3d 1180 (9th Cir. 1995) ..............................................................41

*Friends of the Earth, Inc. v. Laidlaw Environmental Services Inc.,*
    528 U.S. 167 (2000) ............................................................................11

*Gallegos v. State,*
    123 Nev. 289 (Nev. 2007) ...................................................................14

*Gonzales v. Raich,*
    545 U.S. 1 (2005) ........................................................................ *passim*

*Gonzalez-Medina v. Holder,*
    641 F.3d 333 (9th Cir. 2011) ........................................................40, 42

*Graham v. Connor,*
    490 U.S. 386 (1989) ............................................................................38

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) .................................................. *passim*

*Johnston v. Port Authority of New York and New Jersey,*
    2011 WL. 3235760 (E.D.N.Y. July 28, 2011) ...................................36

*Kachalsky v. Cnty. of Westchester,*
    701 F.3d 81 .................................................................................26, 34

*Kendall v. Emps. Retirement Plan of Avon Products,*
    561 F.3d 112 (2d Cir. 2009) ...............................................................13

*Kildare v. Saenz,*
    325 F.3d 1078 (9th Cir. 2003) ............................................................39

*Lacey v. Maricopa Co.,*
    693 F.3d 896 (9th Cir. 2012) ..............................................................35

*Lane v. Holder,*
    2012 WL. 6734784 (4th Cir. Dec. 31, 2012) ....................................12

*Lane v. Pena,*
    518 U.S. 187 (1996) ............................................................................42

*Levin v. United States,*
    663 F.3d 1059 (9th Cir. 2011) ............................................................42

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ..............................................................................12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................12, 14

iv

*Marin Alliance for Medical Marijuana v. Holder*,
  866 F. Supp. 2d 1142 (2011) ...............................................39, 41, 42

*McDonald v. City of Chicago*,
  130 S. Ct. 3020 (2010) .....................................................17, 21

*Midwest Media Prop. L.L.C. v. Symmes Twp.*,
  503 F.3d 456 (6th Cir. 2007) ..................................................15

*Mora-Meraz v. Thomas.*,
  601 F.3d 933 (9th Cir. 2010) .................................................15

*Nat'l Family Planning & Reproductive Health Association v. Gonzales*,
  468 F.3d 826 (D.C. Cir. 2006) ................................................13

*Nordyke v. King*,
  319 F.3d 1185 (9th Cir. 2003) ................................................36

*Nordyke v. King*,
  644 F.3d 776 (9th Cir. 2011) .................................................22

*Nordyke v. King*,
  681 F.3d 1041 (9th Cir. 2012) (*en banc*) ...................................9, 24

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976) ..........................................................13

*Peruta v. Cnty. of San Diego*,
  758 F. Supp. 2d 1106 (S.D. Cal. 2010) ........................................26

*Pohlabel v. State*,
  268 P.3d 1264 (Nev. 2012) ....................................................14

*Price v. Stevedoring Services of America, Inc.*,
  697 F.3d 820 (9th Cir. 2012) .................................................35

*Pritikin v. Department of Energy*,
  254 F.3d 791 (9th Cir. 2001) .............................................14-15

*Raich v. Gonzales*,
  500 F.3d 850 (9th Cir. 2007) ..........................................18, 38, 39

*Richards v. Cnty. of Yolo*,
  821 F. Supp. 2d 1169 (E.D. Cal. 2011) ....................................38, 39

*Robertson v. Baldwin*,
  165 U.S. 275 (1897) ..........................................................20

*Romer v. Evans*,
  517 U.S. 620 (1996) ..........................................................42

*Rutan v. Republican Party of Ill.*,
  497 U.S. 62 (1990) ...........................................................20

v

*San Diego Cnty. Gun Rights Committee v. Reno,*
 98 F.3d 1121 (9th Cir. 1996) ..................................................12, 14, 15

*Schall v. Martin,*
 467 U.S. 253 (1984) ...................................................................25

*Shaw v. Terhune*
 380 F.3d 473 (9th Cir. 2004) ......................................................11

*Skidmore v. Swift & Co.,*
 323 U.S. 134 (1944) ...................................................................35

*Spence v. Washington,*
 418 U.S. 405 (1974) ...............................................................36, 37

*State v. Shelby,*
 2 S.W. 468 (Mo. 1886) ...............................................................22

*Steel Co. v. Citizens for a Better Environment,*
 523 U.S. 83 (1998) .....................................................................12

*Stormans, Inc. v. Selecky,*
 586 F.3d 1109 (9th Cir. 2009) ....................................................25

*Texas v. Johnson,*
 491 U.S. 397 (1989) ...............................................................36, 37

*Town of Castle Rock, Colo. v. Gonzales,*
 545 U.S. 748 (2005) ...................................................................19

*Turner Broad. System v. FCC,*
 512 U.S. 622 (1994) ..............................................................*passim*

*United States v. Carter,*
 669 F.3d 411 (4th Cir. 2012) ..................................................*passim*

*United States v. Carter,*
 2012 WL 5935710 (S.D. W. Va. Nov. 27, 2012).............................17

*United States v. Chafin,*
 423 F. App'x 342, 344 .................................................................31

*United States v. Dugan,*
 657 F.3d 998 (9th Cir. 2011) ..................................................*passim*

*United States v. Hendrickson,*
 664 F. Supp. 2d 793 (E.D. Mich. 2009) .......................................41

*United States v. Hendrix,*
 2010 WL 1372663 (W.D. Wis. Apr. 6, 2010) ................................23

*United States v. Jae Gab Kim,*
 449 F.3d 933 (9th Cir. 2006) ......................................................33

vi

*208*

*United States v. Johal*,
    428 F.3d 823 (9th Cir. 2005) ........................................................................33

*United States v. Lanier*,
    520 U.S. 259 (1997).......................................................................................38

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) .....................................................................19, 25

*United States v. Miller*,
    604 F. Supp. 2d 1162 (W.D. Tenn. 2009).....................................................34

*United States v. O'Brien*,
    391 U.S. 367 (1968).......................................................................................37

*United States v. Oakland Cannabis Buyers' Cooperative*,
    532 U.S. 483 (2001)...................................................................................5, 39

*United States v. Patterson*,
    431 F.3d 832 (5th Cir. 2005).........................................................................17

*United States v. Reese*,
    627 F.3d 792 (10th Cir. 2010)..................................................................19, 25

*United States v. Rene E.*,
    583 F.3d 8 (1st Cir. 2009) .............................................................................23

*United States v. Richard*,
    350 F. App'x 252, 260 (10th Cir. 2009).........................................................17

*United States v. Salerno*,
    481 U.S. 739 (1987)..................................................................................25, 32

*United States v. Seay*,
    620 F.3d 919 (8th Cir. 2010) .........................................................................17

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ................................................................. *passim*

*United States v. Stacy*,
    2010 WL. 4117276 (S.D. Cal. Oct. 18, 2010) ...............................................19

*United States v. Tooley*,
    717 F. Supp. 2d 580 (S.D. W. Va. 2010) ............................................. *passim*

*United States v. Vongxay*,
    594 F.3d 1111 (9th Cir. 2010) .......................................................................23

*United States v. Yancey*,
    621 F.3d 681 (7th Cir. 2010) ................................................................. *passim*

*Vacco v. Quill*,
    521 U.S. 793 (1997).......................................................................................40

vii

*White v. United States*,
    2009 WL. 173509 (S.D. Ohio Jan. 26, 2009) ..................................................15

## UNITED STATES CONSTITUTION

U.S. Const. amend. II..............................................................................................16

U.S. Const. amend. XIV, § 1 .................................................................................41

## FEDERAL STATUTES

5 U.S.C. § 702 .........................................................................................................5

18 U.S.C. § 922(d)(3) .....................................................................................*passim*

18 U.S.C. § 922(g) .............................................................................................24, 25

18 U.S.C. § 922(g)(1) .............................................................................................17

18 U.S.C. § 922(g)(3) .....................................................................................*passim*

18 U.S.C. § 922(g)(4) .............................................................................................17

18 U.S.C. § 922(g)(8) .............................................................................................25

18 U.S.C. § 922(k) ..................................................................................................25

21 U.S.C. § 802 ..................................................................................................4, 14

21 U.S.C. § 812 ........................................................................................................4

21 U.S.C. § 812(b) ..............................................................................................5, 18

21 U.S.C. § 812(c) ...................................................................................................5

21 U.S.C. § 823(f) ...................................................................................................5

21 U.S.C. § 829 ..................................................................................................5, 18

21 U.S.C. § 844(a) .............................................................................................5, 18

28 U.S.C. § 2201 ....................................................................................................12

Firearm Owners' Protection Act,
    Pub. L. No. 99-308, 100 Stat. 449, 452 (1986) .............................................27

Gun Control Act of 1968,
    Pub. L. No. 90-618, 82 Stat. 1213 .............................................................3, 26

## RULES AND REGULATIONS

27 C.F.R. § 478.11 .........................................................................................*passim*

27 C.F.R. § 478.124 .................................................................................................9

viii

Notice of Denial of Petition, 76 Fed. Reg. 40552 (July 8, 2011) ...................................................5

**STATE STATUTES**

720 Ill. Comp. Stat. 5/24-3.1(a)(3) ...........................................................................27

Ind. Code § 35-47-1-7(5) ...............................................................................27

Ala. Code § 13A-11-72(b) ...............................................................................27

Ark. Code Ann. § 5-73-309(7), (8) ...........................................................................27

Cal. Penal Code § 12021(a)(1) ...............................................................................27

Colo. Rev. Stat. § 18-12-203(1) ...............................................................................27

Del. Code Ann. tit. 11, § 1448(a)(3) ...........................................................................27

D.C. Code § 22-4503(a)(4) ...............................................................................27

Fla. Stat. § 790.25(2) ...............................................................................27

Ga. Code Ann. § 16-11-129(b)(2)(F) ...........................................................................27

Haw. Rev. Stat. § 134-7(c)(1) ...............................................................................27

Idaho Code Ann. § 18-3302(1) ...............................................................................27

Ind. Code § 35-47-1-7(5) ...............................................................................27

Kan. Stat. Ann. § 21-4204(a)(1) ...............................................................................27

Ky. Rev. Stat. Ann. § 237.110(4) ...............................................................................27

Md. Code Ann., Public Safety, 5-133(b)(4), (5) ...............................................................27

Mass. Gen. Laws ch. 140, § 129B(1)...........................................................................27

Minn. Stat. § 624.713(1)(10)(iii) ...............................................................................27

Mo. Rev. Stat. § 571.070(1)(1) ...............................................................................27

Nev. Rev. Stat. § 202.360(1) ...............................................................................27

N.H. Rev. Stat. Ann. § 159:3(b)(3) ...........................................................................27

N.J. Stat. Ann. § 2C:58-3(c)(2) ...............................................................................27

N.C. Gev. Stat. § 14-404(c)(3) ...............................................................................27

Ohio Rev. Code Ann. § 2923.13(A)(4) ...........................................................................27

R.I. Gen. Laws § 11-47-6...............................................................................27

Nev. Rev. Stat. § 202.360(1) ...........................................................................*passim*

Nev. Rev. Stat. § 453.336 ..................................................................................5, 27

Nev. Rev. Stat. § 453A ......................................................................................6, 27

Nev. Rev. Stat. § 453A.050 ..........................................................................6, 27, 33

Nev. Rev. Stat. § 453A.200 ...............................................................................6, 27

Nev. Rev. Stat. § 453A.210 ......................................................................27, 29, 33

Nev. Rev. Stat. § 453A.220 ..........................................................................27, 33

Nev. Rev. Stat. § 453A.240 ..........................................................................27, 33

Nev. Rev. Stat. § 453A.300 ....................................................................................6

S.C. Code Ann. § 16-23-30(A)(1) ...........................................................................27

S.D. Codified Laws § 23-7-7.1(3) ...........................................................................27

W. Va. Code § 61-7-7(a)(2), (3) .............................................................................27

## LEGISLATIVE MATERIAL

114 Cong. Rec. 21657, 21784 (1968) .....................................................................27

H.R. Rep. No. 90-1577, at 7 (1968), reprinted in 1968 U.S.C.C.A.N. 4410, 4412. .....................26

S. Rep. No. 90-1501, at 22 (1968) ..........................................................................27

## MISCELLANEOUS

Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339 (2009) ...................................................22

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self- Defense: An Analytical Framework and Research Agenda*, 56 UCLA L. Rev. 1443 (2009).................22

Joyce Lee Malcolm, *To Keep and Bear Arms* 123 (1994) ...........................................21

Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143 (1986) ...........23

National Institute of Drug Abuse, *Topics in Brief: Marijuana* (Dec. 2011) .....................28

Nev. State Health Div., *Medical Marijuana, Frequently Asked Questions*, No. 8 .........................7

Nev. State Health Div., *Program Facts* 2 (Feb. 12, 2009) ..........................................7

ONDCP, *ADAM II 2010 Annual Report*, at 20 (2010)...................................................28

ONDCP, *Fact Sheet: Marijuana Legalization*, at 1 (Oct. 2010)...................................28

Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125, 130 (1986)...................................................................................21

x

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004)....................................................22

Patrick Charles, "*Arms for Their Defence?: An Historical, Legal, and Textual Analysis of the English Right to Have Arms and Whether the Second Amendment Should Be Incorporated in* McDonald v. City of Chicago, 57 Clev. State L. Rev. 351 (2009) .........21

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. Rule of Civ. Pro. 12(b)(1) .....................................................................................10

Fed. Rule of Civ. Pro. 12(b)(6) .....................................................................................10

Fed. Rule of Civ. Pro.56.................................................................................................10

1 | STUART F. DELERY
Principal Deputy Assistant Attorney General

2 | DANIEL G  BOGDEN
United States Attorney

3 |

4 | DIANE KELLEHER
Assistant Director, Federal Programs Branch

5 | JOHN K. THEIS
Trial Attorney, Federal Programs Branch

6 | United States Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Rm.  6701

7 | Washington, D.C.  20530
Telephone: (202) 305-7632

8 | Facsimile: (202) 616-8460
John.K.Theis@usdoj.gov

9 | *Attorneys for Defendants*

10 | **UNITED STATES DISTRICT COURT**

11 | **DISTRICT OF NEVADA**

12 |

13 | S. ROWAN WILSON,

14 |                     Plaintiff,

15 |          v.

16 | ERIC HOLDER, Attorney General of the
United States, *et al*.,                     Case No.: 2:11-cv-1679-GMN-(PAL)

17 |                     Defendants.

18 |

19 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT OR,**

20 | **IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

21 |          As explained in Defendants' first motion to dismiss, 18 U.S.C. § 922(g)(3) prohibits an

22 | unlawful user of a controlled substance from possessing a firearm, while § 922(d)(3) prohibits

23 | the sale of firearms by a person who knows or has reasonable cause to believe that the purchaser

24 | is an unlawful user of a controlled substance.  The Controlled Substances Act classifies

25 | marijuana as a Schedule I controlled substance that cannot be lawfully prescribed and that the

26 | general public may not lawfully possess.  Although a number of states, including Nevada, have

27 | exempted from state criminal prosecution certain individuals who use marijuana for medical

28 |

1

1    purposes,[1] these state laws do not alter the fact that marijuana possession remains prohibited

2    under federal law.  To advise federal firearms licensees ("FFLs") of this basic fact, the Bureau of

3    Alcohol, Tobacco, Firearms and Explosives ("ATF") issued an Open Letter to all FFLs on

4    September 21, 2011 (the "Open Letter"), stating that "any person who uses . . . marijuana,

5    regardless of whether his or her State has passed legislation authorizing marijuana use for

6    medicinal purposes, is an unlawful user of . . . a controlled substance, and is prohibited by

7    Federal law from possessing firearms or ammunition."  *See* First Amended Complaint ("FAC"),

8    Dkt. No. 34, Ex. 2-B.  The Open Letter further informed FFLs that "if you are aware that the

9    potential transferee is in possession of a card authorizing the possession and use of marijuana

10   under State law, then you have 'reasonable cause to believe' that the person is an unlawful user

11   of a controlled substance" and "you may not transfer firearms or ammunition to the person."  *Id.*

12   (quoting 18 U.S.C. § 922(d)(3)).

13           Plaintiff S. Rowan Wilson's First Amended Complaint cannot correct the deficiencies that

14   doomed her original Complaint, and her newly asserted claims fare no better.  Plaintiff alleges

15   that she possesses a medical marijuana card issued by the State of Nevada and has been

16   prevented from purchasing a handgun.  She claims that Defendants—through § 922(g)(3),

17   § 922(d)(3), an ATF regulation defining certain statutory terms, and the Open Letter—have

18   prohibited her from exercising her Second Amendment rights.  She also challenges Defendants'

19   actions under the First Amendment, as well as the Due Process and Equal Protection clauses of

20   the Fifth Amendment.  Plaintiff seeks a declaratory judgment, a permanent injunction, and

21   monetary damages, but she has failed to state a claim for which relief can be granted.

22           As a preliminary matter, Plaintiff lacks standing.  The medical marijuana registry card

23   issued by the State of Nevada attached to Plaintiff's FAC expired on March 10, 2012.  She

24   therefore cannot challenge any of the laws or policies that would inhibit a holder of a valid

25   registry card from obtaining a firearm, mandating dismissal of the amended pleading.  Even if

26

27   _____
     [1] As discussed herein, *see infra* at 4-5, the federal government does not recognize a medical use
     for marijuana.  Any use in this memorandum of terms such as "medical marijuana," "medical
28   use," or "for medical purposes" should not be read to suggest otherwise.

1   she had a valid card, she cannot satisfy the traceability or redressability elements of standing

2   because her harm is self-inflicted and her conduct would still be prohibited under Nevada law.

3        Even if the Court were to reach the merits of the FAC, each claim would fail.  The Ninth

4   Circuit's decision in *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011), squarely forecloses

5   Plaintiff's Second Amendment challenge to § 922(g)(3) and imperils the remainder of the Second

6   Amendment challenge she asserts.  Moreover, if this Court were to engage in an independent

7   Second Amendment analysis, dismissal would still be warranted, as unlawful drug users are not

8   within the class of law-abiding, responsible citizens historically protected by the Second

9   Amendment, and § 922(g)(3) survives any level of scrutiny in any event.  Section 922(d)(3)

10  survives for the same reasons, along with the fact there is no recognized constitutional right to

11  sell firearms.  And ATF's regulation and the Open Letter survive for all of the reasons that

12  § 922(g)(3) and § 922(d)(3) survive.

13       Plaintiff's other constitutional challenges must similarly be dismissed.  Plaintiff's First

14  Amendment claim fails because possessing a medical marijuana card cannot be considered

15  "expressive conduct" equivalent with speech, and in any event, any limitation on First

16  Amendment freedoms are incidental to the important government interest underlying the

17  restrictions on the sale of firearms to illegal drug users.  Plaintiff's substantive and procedural

18  due process claims merge with the First and Second Amendment claims, and do not adequately

19  set forth any due process violation.  Plaintiff's equal protection claim fails to allege a proper

20  classification of a group against whom Defendants have discriminated.  Finally, even if Plaintiff

21  had stated a claim against the Defendants, no waiver of sovereign immunity allows her to

22  recover monetary damages from the United States, as Plaintiff conceded earlier in this litigation.

23  The Court should therefore dismiss the FAC in its entirety.

24                **STATUTORY AND REGULATORY BACKGROUND**

25  **I.     THE GUN CONTROL ACT AND THE CONTROLLED SUBSTANCES ACT**

26       The Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220, included

27  a provision—now codified at 18 U.S.C. § 922(g)—designed "to keep firearms out of the hands

28  of presumptively risky people," including felons, the mentally ill, fugitives from justice, and

3

1  unlawful drug users. *Dickerson v. New Banner Inst.*, 460 U.S. 103, 112 n.6 (1983). Specifically,

2  as applied to unlawful drug users, § 922(g)(3) provides that

3      [i]t shall be unlawful for any person . . . who is an unlawful user of or addicted to
       any controlled substance (as defined in section 102 of the Controlled Substances
4      Act (21 U.S.C. § 802)) . . . to . . . possess in or affecting commerce, any firearm or
       ammunition; or to receive any firearm or ammunition which has been shipped or
5      transported in interstate or foreign commerce.

6  18 U.S.C. § 922(g)(3). To help effectuate the firearm exclusions in § 922(g), Congress also

7  banned selling firearms to the same categories of presumptively risky people. As relevant here,

8  § 922(d)(3) makes it

9      unlawful for any person to sell or otherwise dispose of any firearm or ammunition
       to any person knowing or having reasonable cause to believe that such person . . .
10     is an unlawful user of or addicted to any controlled substance (as defined in
       section 102 of the Controlled Substances Act (21 U.S.C. § 802)).

11

12  *Id*. § 922(d)(3).

13      In addition to challenging the constitutionality of these two provisions, Plaintiff also

14  targets 27 C.F.R. § 478.11, a regulation issued by ATF to define certain statutory terms.

15  Specifically, the regulation defines an "[u]nlawful user of or addicted to any controlled

16  substance" as

17     [a] person who uses a controlled substance and has lost the power of self-control
       with reference to the use of the controlled substance; and any person who is a
18     current user of a controlled substance in a manner other than as prescribed by a
       licensed physician. Such use is not limited to the use of drugs on a particular day,
19     or within a matter of days or weeks before, but rather that the unlawful use has
       occurred recently enough to indicate that the individual is actively engaged in such
20     conduct. A person may be an unlawful current user of a controlled substance even
       though the substance is not being used at the precise time the person seeks to
21     acquire a firearm or receives or possesses a firearm. An inference of current use
       may be drawn from evidence of a recent use or possession of a controlled substance
22     or a pattern of use or possession that reasonably covers the present time . . . .

23  27 C.F.R. § 478.11. Additionally, the regulation echoes §§ 922(g)(3) and 922(d)(3) by

24  providing that a "controlled substance" is "[a] drug or other substance, or immediate

25  precursor, as defined in . . . 21 U.S.C. § 802." *Id.*

26      Section 102 of the Controlled Substances Act, in turn, defines "controlled substance" as

27  "a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV, or V or

28  part B of this title [21 U.S.C. § 812]." 21 U.S.C. § 802(6). Since the enactment of the

4

1   Controlled Substances Act, marijuana (also known as cannabis) has been classified as a Schedule

2   I drug. 21 U.S.C. § 812(c), Schedule I(c)(10).  By classifying marijuana as a Schedule I drug,

3   Congress has determined that marijuana "has a high potential for abuse," that it "has no currently

4   accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted

5   safety for use of [marijuana] under medical supervision."  *Id*. § 812(b)(1)(A)-(C).[2]  As such,

6   Schedule I drugs, including marijuana, cannot be legally prescribed for medical use.  *See* 21

7   U.S.C. § 829; *see also United States v. Oakland Cannabis Buyers' Coop*., 532 U.S. 483, 491

8   (2001) ("Whereas some other drugs can be dispensed and prescribed for medical use, . . . the

9   same is not true for marijuana.").  Additionally, it is generally unlawful for any person to

10  knowingly or intentionally possess marijuana.  *See* 21 U.S.C. § 844(a).  For Schedule I drugs like

11  marijuana, the only exception to this ban on possession is for a federally approved research

12  project.  *See* 21 U.S.C. § 823(f); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By

13  classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the . . .

14  possession of marijuana became a criminal offense, with the sole exception being use of the drug

15  as part of a Food and Drug Administration pre-approved research study.").

16  **II.    NEVADA'S LAW REGARDING THE USE OF MARIJUANA**

17          Separate and apart from federal law, the State of Nevada also criminalizes the possession

18  of marijuana.  *See* Nev. Rev. Stat.  §§ 453.336.  In 2000, however, Nevada's Constitution was

19  amended by initiative petition to add the following provision regarding the medical use of

20  marijuana:

21          The legislature shall provide by law for . . . [t]he use by a patient, upon the advice
            of his physician, of a plant of the genus Cannabis for the treatment or alleviation
22          of cancer, glaucoma, acquired immunodeficiency syndrome; severe, persistent
            nausea of cachexia resulting from these or other chronic or debilitating medical
23          conditions; epilepsy and other disorders characterized by seizure; multiple

24  _____

[2] The Controlled Substances Act delegates authority to the Attorney General to reschedule
25  controlled substances after consulting with the Secretary of Health and Human Services.  *Id*.
    § 811.  The Department of Justice's Drug Enforcement Agency ("DEA") has repeatedly denied
26  petitions to have marijuana removed from Schedule I, most recently in 2011.  *See* Notice of
    Denial of Petition, 76 Fed. Reg. 40552 (July 8, 2011); *see also Gonzales v. Raich*, 545 U.S. 1, 15
27  & n.23 (2005).  Based largely on scientific and medical evaluations prepared by the Department
    of Health and Human Services, DEA has consistently found that marijuana continues to meet the
28  criteria for Schedule I control.  *See* 76 Fed. Reg. at 40552.

5

sclerosis and other disorders characterized by muscular spasticity; or other conditions approved pursuant to law for such treatment.

Nev. Const. art. IV, § 38(a).  Pursuant to this constitutional amendment, Nevada enacted legislation in 2001 that exempts the use of marijuana from state prosecution in certain circumstances.  *See* Nev. Rev. Stat. § 453A.  Subject to certain exceptions, the law provides that "a person who holds a valid registry identification card . . . is exempt from state prosecution for . . . [a]ny . . . criminal offense in which the possession, delivery or production of marijuana . . . is an element."  Nev. Rev. Stat. § 453A.200(1)(f).[3]  This exemption only applies to the extent that the holder of a registry identification card:  (i) engages in "the medical use of marijuana in accordance with the provisions of this chapter as justified to mitigate the symptoms or effects of the person's chronic or debilitating medical condition;" and (ii) "do[es] not, at any one time, collectively possess, deliver or produce more than . . . one ounce of usable marijuana, three mature marijuana plants, and four immature marijuana plants."  *Id*. § 453A.200(3).

The law also specifies who is eligible to receive a state-issued registry identification card, requiring applicants to provide, *inter alia*, "[v]alid, written documentation from the person's attending physician stating that . . . [t]he person has been diagnosed with a chronic or debilitating medical condition."  *Id*. § 453A.210(2)(a)(1).[4]  An applicant must also provide documentation from his or her physician stating that "[t]he medical use of marijuana may mitigate the symptoms or effects of that condition" and that "[t]he attending physician has explained the possible risks and benefits of the medical use of marijuana."  *Id*. § 453A.210(2)(a)(2)–(3).  The state-issued registry identification card is valid for one year and must be renewed by annually submitting updated written documentation from the cardholder's attending physician, including proof that the individual continues to suffer from a chronic or debilitating medical condition.  *Id*. §§ 453A.220(4), 453A.230.  If a cardholder is "diagnosed by the person's attending physician as

---

[3] The statute specifies, however, that cardholders are not exempt from state prosecution for a number of other crimes related to marijuana use.  *Id*. § 453A.300(1).

[4] The statute defines the term "chronic or debilitating medical condition" to include AIDS, cancer, and glaucoma, as well as "[a] medical condition or treatment for a medical condition that produces, for a specific patient," one or more of the following symptoms: (i) cachexia, (ii) persistent muscle spasms, (iii) seizures, (iv) severe nausea, or (v) severe pain.  Nev. Rev. Stat. § 453A.050.

6

1    no longer having a chronic or debilitating medical condition, the person . . . shall return the[]

2    registry identification card[] to the [State] within 7 days after notification of the diagnosis." *Id.*

3    § 453A.240.

4         Nevada's law governing the medical use of marijuana does not purport to "legalize"

5    medical marijuana, but rather specifies the limited circumstances under which the possession of

6    limited amounts of marijuana for purported medical use is exempt from state prosecution.  This

7    fact is evidenced by the overall structure of the statute and by the act's inclusion of a directive

8    instructing the next session of the Nevada legislature to "review statistics provided by the

9    legislative counsel bureau with respect to . . . [w]hether persons exempt from state prosecution

10   [under] this act have been subject to federal prosecution for carrying out the activities concerning

11   which they are exempt from state prosecution pursuant to [the act]."  Act of June 14, 2001

12   (Assembly Bill 453), ch. 592, § 48.5.  Along these lines, a one-page "Important Notice" posted

13   on the State of Nevada's Department of Health and Human Services, Health Division's website

14   advises the public that "**ISSUANCE OF A STATE OF NEVADA MEDICAL MARIJUANA**

15   **REGISTRY CARD DOES NOT EXEMPT THE HOLDER FROM PROSECUTION**

16   **UNDER FEDERAL LAW**."  *See* Nev. State Health Div., *Important Notice* (Feb. 12, 2009),

17   http://health.nv.gov/PDFs/MMP/ImportantNotice.pdf (emphasis in original) [App.[5] at Tab 1];

18   Nev. State Health Div., *Program Facts* 2 (Feb. 12, 2009), http://health.nv.gov/PDFs/MMP/

19   ProgramFacts.pdf [App. at Tab 2] (stating, in a two-page document posted on the Health

20   Division's website, that "[t]he Medical Marijuana law is a state law, offering protection from

21   state law enforcement only" and that "[t]he federal government does not recognize the state law

22   and is not bound by it.").  A section of the Nevada Health Division's website answering

23   frequently asked questions also informs the public that cardholders cannot fill a prescription for

24   medical marijuana at a pharmacy because "[t]he federal government classifies marijuana as a

25   Schedule I drug, which means licensed medical practitioners cannot prescribe it."  Nev. State

26   Health Div., *Medical Marijuana, Frequently Asked Questions*, No.  8, http://health.nv.gov/

27   _____
     [5] Pursuant to Local Rule 7-3, the United States has concurrently filed an appendix to this
28   memorandum containing secondary materials cited herein.

7

***220***

MedicalMarijuana_FAQ.htm (last updated January 17, 2013) [App. at Tab 3].  The frequently asked questions page also specifies that a patient may withdraw from the program by submitting a written statement indicating that he or she wishes to withdraw and by returning the individual's registry identification card.  *Id.*, No. 12.

**III.    ATF'S SEPTEMBER 2011 OPEN LETTER TO FFLS**

On September 21, 2011, ATF issued an "Open Letter to All Federal Firearms Licensees." *See* FAC, Ex. 2-B.  The Open Letter first notes that ATF "has received a number of inquiries regarding the use of marijuana for medicinal purposes and its applicability to Federal firearms laws" and that the "purpose of this open letter is to provide guidance on the issue and to assist [FFLs] in complying with Federal firearms laws and regulations." *Id.* The Open Letter then observes that "[a] number of States have passed legislation allowing under State law the use or possession of marijuana for medicinal purposes" and that "some of these States issue a card authorizing the holder to use or possess marijuana under State law." *Id.*  The Open Letter summarizes the relevant provisions of federal law, noting:  (i) that "18 U.S.C. § 922(g)(3)[] prohibits any person who is an 'unlawful user of or addicted to any controlled substance . . .' from shipping, transporting, receiving or possessing firearms or ammunition;" (ii) that the Controlled Substances Act lists marijuana as a Schedule I controlled substance and that "there are no exceptions in Federal law for marijuana purportedly used for medicinal purposes, even if such use is sanctioned by State law;" (iii) that "18 U.S.C. § 922(d)(3)[] makes it unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is an unlawful user of or addicted to a controlled substance;" and (iv) that, under 27 C.F.R. § 478.11, "'an inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time.'"  FAC, Ex. 2-B.

The Open Letter draws two conclusions from these provisions: first, "any person who uses or is addicted to marijuana, regardless of whether his or her State has passed legislation authorizing marijuana use for medicinal purposes, is an unlawful user of or addicted to a controlled substance, and is prohibited by Federal law from possessing firearms or ammunition."

8

1   *Id.* Second, if an FFL is "aware that the potential transferee is in possession of a card authorizing

2   the possession and use of marijuana under State law, then [the FFL] ha[s] 'reasonable cause to

3   believe' that the person is an unlawful user of a controlled substance" and "may not transfer

4   firearms or ammunition to the person." *Id.* This holds even if the potential transferee answered

5   "no" to Question 11(e) on ATF Form 4473,[6] which asks, "Are you an unlawful user of, or

6   addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled

7   substance?" *Id.*; *see also* FAC., Ex. 2-C.

8                                    **PROCEDURAL HISTORY**

9          Plaintiff filed her original complaint on October 18, 2011. Dkt. No. 1. Defendants

10   moved to dismiss on February 3, 2012. Dkt. No. 10. The Court held a hearing on Defendants'

11   motion on November 2, 2012. After the hearing, the parties filed a stipulation allowing Plaintiff

12   to file a First Amended Complaint.[7] Plaintiff filed the amended pleading on December 17, 2012.

13   Dkt. No. 34.

14          The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the

15   Defendants' Motion to Dismiss. According to the First Amended Complaint, Plaintiff applied for

16   a medical marijuana registry card from the State of Nevada in October 2010. FAC ¶ 39. Since

17   the age of ten, Plaintiff has experienced severe menstrual cramps, which she describes as

18   "sometimes debilitating, even leading to further painful side effects, such as severe nausea and

19   cachexia." FAC, Ex. 1, ¶ 20. As part of her application for a medical marijuana registry card,

20   Plaintiff obtained a recommendation from her doctor to use marijuana. FAC ¶ 40; Ex. 2.

21   Plaintiff then submitted that recommendation, along with the appropriate paperwork, to the State

---

22   [6] ATF Form 4473 is a firearms transaction record that all potential purchasers are required to
23   complete before receiving a firearm from an FFL. *See* 27 C.F.R. § 478.124.

24   [7] At the November 2, 2012 hearing, the Court granted the parties' request for supplemental
     briefing on four issues. Because the parties agreed to allow Plaintiff to amend her complaint, the
     Court ordered the parties to address these issues in the motion to dismiss briefing. *See* Dkt No.
25   33. Defendants have addressed the questions in the present memorandum as follows: the level of
     scrutiny for Second Amendment challenges after *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012)
26   (*en banc*) is addressed at page 24; the level of deference that should be afforded to the Open
     Letter, and whether the Letter is interpretive or legislative, is addressed at page 35; whether
27   Plaintiff has standing to assert a claim challenging § 922(d)(3) is addressed at page 11, n.9; and
     whether Plaintiff's claim is "ripe" because she did not answer the question on the ATF Form
28   4473 asking whether she was an unlawful drug user is addressed at page 11, n.9.

1  of Nevada.  Ex. 1 ¶ 22.  On May 12, 2011, Nevada issued a registry identification card to

2  Plaintiff.  FAC ¶ 41; *see also* FAC, Ex. 1-B.

3      On October 4, 2011, Plaintiff visited Custom Firearms & Gunsmithing, a federally

4  licensed gun store in Moundhouse, Nevada, to purchase a handgun.  In order to effect the

5  transaction, Plaintiff began to complete ATF Form 4473, but did not answer Question 11(e) ("Are

6  you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug,

7  or any other controlled substance?").  *See* FAC, Ex. 1-C.  Plaintiff alleges that her "natural

8  inclination" was to answer "no" to Question 11(e), FAC ¶ 46, but that "it had been brought to

9  [her] attention that ATF had "promulgated a policy whereby any person holding a medical

10  marijuana registry card is automatically considered an 'unlawful user of, or addicted to

11  marijuana.'"  FAC Ex. 1 ¶ 30.  For that reason, she left Question 11(e) blank.  FAC Ex. 1 ¶ 31.

12  When Plaintiff provided the form to Mr. Frederick Hauseur, the store's proprietor, he informed

13  her that he was prohibited from selling her any firearm or ammunition.  FAC Ex. 1, ¶ 32.  Mr.

14  Hauseur and Plaintiff had known each other for nearly a year, and Mr.  Hauseur was previously

15  aware that Plaintiff possessed a state-issued medical marijuana registry card.  *Id*.; FAC Ex. 2,

16  ¶ 11.  With that knowledge, Mr. Hauseur "refused to sell Ms. Wilson the firearm that she

17  requested on the grounds that she was an 'unlawful user of a controlled substance.'"  FAC Ex. 2,

18  ¶ 13.  Plaintiff alleges that she "presently intends to acquire a functional handgun for use within

19  her home for self-defense but is prevented from doing so" by federal law, as implemented by

20  ATF.  FAC ¶ 6.

21      Defendants have moved to dismiss the FAC under Federal Rule of Civil Procedure

22  12(b)(1) because Plaintiff lacks standing.  *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136,

23  1040 (9th Cir. 2003).  If the Court were to reach the merits, Defendants have moved to dismiss

24  under Rule 12(b)(6), which requires dismissal if the Complaint fails to state a claim upon which

25  relief can be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[8]

26  ─────────────────

27  [8] If the Court determines that it can only dismiss the Complaint by relying on the extrinsic sources referenced in Parts II.A.2. and II.A.3., *infra*, then the Court should treat Defendants' motion as a Motion for Summary Judgment under Rule 56.  To facilitate that, Defendants attach

28  a Statement of Undisputed Facts in compliance with Local Rule 56-1.

**ARGUMENT**

**I.     PLAINTIFF LACKS STANDING TO CHALLENGE THE STATUTES, THE REGULATION, AND ATF'S OPEN LETTER**

To establish standing under Article III, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180–81 (2000). Plaintiff fails to establish each of the requirements.[9]  The FAC should accordingly be dismissed in its entirety, and the Court need not reach Plaintiff's constitutional claims. *Shaw v. Terhune* 380 F.3d 473, 478 (9th Cir. 2004) (noting the "canonical admonition" that courts must "avoid considering constitutionality if an issue may be resolved on narrower grounds").

---

[9] At the November 2, 2012 hearing on Defendants' motion to dismiss the original complaint, the Court asked the parties to brief whether Plaintiff, as an attempted purchaser and not a *seller* of firearms, had standing to challenge § 922(d)(3).  Plaintiff lacks standing to challenge § 922(d)(3) for the three reasons set forth in this Section.  But if she overcame these hurdles, the standing doctrine would likely not preclude Plaintiff's challenge to § 922(d)(3).  Though the statute is directed primarily at sellers, the scope of the prohibition on sales to unlawful drug users is a mirror image of the prohibition on receipt and possession of firearms by unlawful drug users in § 922(g)(3).  At least one court has found that in that circumstance, where a statutory scheme effectively prohibits an individual from receiving and a seller from selling a firearm, a plaintiff may have standing to challenge both statutes.  *See, e.g., Dearth v. Holder*, 641 F.3d 499, 500-03 (D.C. Cir. 2011) (finding that plaintiff had standing to challenge both § 922(a)(9), which prohibits a non-resident from receiving a firearm, and § 922(b)(3), which prohibits the sale of a firearm to a non-resident).

The Court also asked the parties to address whether the fact that Plaintiff failed to answer Question 11e on Form 4473 means that the case is not ripe.  Tr. at 72:2-4.  At the hearing, counsel for Plaintiff represented (incorrectly) that Mr. Hauser had stated in his declaration that he had "stopped" Plaintiff from answering Question 11e on Form 4473.  *See* Tr.  at 58:10-59:1.  In fact, Mr. Hauseur's declaration—identical versions of which are attached to Plaintiff's original complaint and the FAC—contains no such statement.  Rather, Mr.  Hauseur states that he knew that Plaintiff possessed a registry card, and therefore "refused to sell Ms. Wilson the firearm that she requested *on the grounds that she was an 'unlawful user of a controlled substance.'"*  FAC Ex. 2 ¶ 13 (emphasis added).  That said, whether or not Mr. Hauseur stopped her from answering the question is immaterial to the ripeness question in this case.  The Open Letter states that "if you are aware that the potential transferee is in possession of a [medical marijuana registry card], then you have 'reasonable cause to believe' that the person is an unlawful user" of illegal drugs.  FAC Ex. 2-B.  Mr.  Hauseur knew that Plaintiff had a card, and as a result, he denied her attempt to purchase a firearm.  The answer (or lack thereof) to Question 11e is therefore irrelevant in this case and does not pose a ripeness problem.

11

1   **A. Plaintiff Cannot Establish the "Injury in Fact" Requirement Because She Lacks a Valid Medical Marijuana Card**

2

3       Each of Plaintiff's causes of action rests on a common allegation: that Plaintiff, as a

4   holder of a state-issued medical marijuana registry card, cannot obtain a firearm.  But according

5   to the documents attached to Plaintiff's declaration, Plaintiff does not currently possess a valid

6   medical marijuana registry card.  That card expired on March 10, 2012.  *See* FAC Ex. 1 at 10.

7       In order to satisfy the "injury in fact" requirement for standing in cases such as this,

8   where declaratory and injunctive relief are sought, Plaintiff must show that she is suffering an

9   ongoing injury or faces an immediate threat of injury.  *See Los Angeles v. Lyons*, 461 U.S. 95,

10  105 (1983); 28 U.S.C. § 2201 (proceeding under the Declaratory Judgment Act requires "a case

11  of actual controversy").  Past wrongs are insufficient to confer standing for purposes of obtaining

12  injunctive relief.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998).  Because the

13  only apparent impediment to Plaintiff's ability to obtain a firearm has been removed since March

14  2012, Plaintiff is not suffering an ongoing injury, and the operative pleading lacks an "actual

15  controversy."  Plaintiff therefore lacks standing to challenge the statutes, regulation, and the

16  Open Letter, and the First Amended Complaint should be dismissed in its entirety.[10]

17

18  _____

19  [10] Plaintiff cannot cure this standing defect by arguing that an FFL could use the months-expired registration card as evidence of "current use" of marijuana.  If an FFL were to do so, the injury

20  would then be traceable to the FFL, and not the Government.  In addition to establishing injury in fact, a plaintiff bears the burden of establishing a causal connection between the injury and the

21  conduct complained of, as well as a likelihood that the injury would be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61.  The Open Letter states that an FFL who is "aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana

22  under State Law" has "reasonable cause to believe" that the person is an unlawful user.  FAC, Ex. 2-B.  An expired card is not "a card authorizing the possession and use of marijuana."  If an

23  FFL used the expired card to justify the denial of sale, Plaintiff's injury would stem from the actions of the FFL, not the Government.  *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98

24  F.3d 1121, 1130 (9th Cir. 1996) (holding that plaintiff lacked standing to challenge legislation that, by banning certain guns, resulting in dealers raising prices on guns the plaintiffs wanted to

25  purchase, because "nothing in the Act directs manufacturers or dealers to raise the price of regulated weapons") (citing *Lujan*, 504 U.S. at 560); *Lane v. Holder*, 2012 WL 6734784, at *4

26  (4th Cir. Dec. 31, 2012) (finding that any harm to potential firearms purchasers created by transfer fees imposed by FFLs "result[] from the actions of third parties not before this court,

27  [and as such] plaintiffs are unable to demonstrate traceability").  Because the purported injury would not be directly linked to Defendants' actions, the causation and redressability prongs of

28  Article III standing would not be met.

**B. Plaintiff Cannot Satisfy the Traceability Elements of Standing Because Her Injury is Self-Inflicted**

Even if Plaintiff had a valid registry card, she would still lack standing because her injury is self-inflicted. Because Plaintiff's past inability to acquire a firearm stemmed from her own decision to retain her card, any injury she suffers is traceable not to Defendants, but to her own decisionmaking, and is therefore insufficient to confer standing to prosecute her claims. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding that "self-inflicted injuries" failed to meet causation element of standing); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[S]elf-inflicted harm doesn't satisfy the basic requirements for standing."); *cf. Yancey*, 621 F.3d at 687 (because § 922(g)(3) extends only to current users, "[defendant] himself controls his right to possess a gun; the Second Amendment, however, does not require Congress to allow him to simultaneously choose both gun possession and drug abuse"). The existence of a viable alternative to the alleged injury is significant, because "Article III standing ultimately turns on whether a plaintiff gets something other than moral satisfaction if the plaintiff wins." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 122 (2d Cir. 2009) (internal citation and punctuation omitted); *Fire Equip. Mfrs. Ass'n v. Marshall*, 679 F.2d 679, 682 n.5 (7th Cir. 1982) ("[P]etitioners cannot allege an injury from one of the options where they can choose another which causes them no injury."). Individuals who hold valid state-issued medical marijuana cards are either unlawful drug users or are holding cards that serve them no purpose. These individuals have a choice: they can either retain their Nevada-issued medical marijuana card and forfeit the right to acquire a firearm, or they can refrain from using marijuana, return their card to the State, and regain the right to acquire a firearm. Either way, individuals such as Plaintiff cannot seek an injunction or declaratory relief against the Government for an injury entirely of their own design.

**C. Plaintiff Cannot Satisfy the Traceability or Redressability Elements of Standing Because She Has Not Challenged Nevada's Prohibition on the Possession of a Firearm by an "Unlawful User"**

Under Nevada law, "[a] person shall not own or have in his or her possession or under his or her custody or control any firearm if the person . . . [i]s an unlawful user of, or addicted to,

13

1   any controlled substance." Nev. Rev. Stat. § 202.360(1)(c).[11]  Like § 922(g)(3), the Nevada

2   statute defines "controlled substance" in terms of the Controlled Substances Act.  *Id.*

3   § 202.360(3)(a) (citing 21 U.S.C. § 802(6)).  FFLs are prohibited from selling a firearm to an

4   individual "where the purchase *or possession* by such person of such firearm would be in

5   violation of any State law."  18 U.S.C. § 922(b)(2) (emphasis added).  Thus, if § 922(g)(3), §

6   922(d)(3), 27 C.F.R. § 478.11, and the Open Letter were all found unconstitutional, Plaintiff still

7   could not possess a firearm under Nevada law or purchase a firearm from an FFL under §

8   922(b)(2).  Plaintiff therefore cannot show that her alleged harm is caused by operation of the

9   challenged federal laws.  Nor would a favorable decision by this Court redress Plaintiff's claimed

10  Second Amendment injury.[12]

11          First, Plaintiff's injury—the inability to obtain a firearm—is not "fairly traceable" to

12  Defendants' conduct.  In analyzing traceability, courts must determine whether "the line of

13  causation between the illegal conduct and injury [is] too attenuated."  *Allen v. Wright*, 468 U.S.

14  737, 752 (1984).  As relevant here, both Federal and Nevada law prohibit possession of a firearm

15  by an "unlawful user" of a controlled substance.  The state law prohibition undercuts the

16  argument that Plaintiff's injury is traceable strictly to the challenged federal laws and not "th[e]

17  result [of] the independent action of some third party not before the court."  *Lujan v. Defenders*

18  *of Wildlife*, 504 U.S. 555, 560 (1992); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121,

19  1130 (9th Cir. 1996) (the presence of state law banning conduct similar to conduct addressed by

20  a federal law undermined traceability);[13] *see also Pritikin v. Department of Energy*, 254 F.3d 791,

---

[11] *Gallegos v. State*, 163 P.3d 456 (Nev. 2007), invalidated paragraph b of NRS 202.360(1) as
unconstitutionally vague because it did not define "fugitive from justice."  That holding does not
affect the section at issue here, NRS 202.360(1)(c).  *See Pohlabel v. State*, 268 P.3d 1264, 1265
n.1 (Nev. 2012) (recognizing that paragraphs within NRS 202.360(1) other than NRS
202.360(1)(b) were not invalidated by *Gallegos*).

[12] According to the Supreme Court, the "fairly traceable" and "redressability" components of
standing are two distinct "facets of a single causation requirement." *Allen v. Wright*, 468 U.S.
737, 753 n.19 (1984).  "To the extent there is a difference, it is that the former examines the
causal connection between the assertedly unlawful conduct and the alleged injury, whereas the
latter examines the causal connection between the alleged injury and the judicial relief
requested."  *Id.*

[13] Though *San Diego County Gun Rights Committee* predates *Heller*, the Ninth Circuit's
conclusion that the plaintiffs' alleged injuries were not "fairly traceable" to the challenged
federal law, 98 F.3d at 1130, is unaffected by *Heller*'s analysis.

14

797 (9th Cir. 2001) (private citizen suing the Department of Energy and individual governmental officers to compel funding of medical monitoring program failed to meet Article III standing on the traceability and redressability prongs because another agency, not before the court, decides whether to implement the program).

Second, an order from this Court granting Plaintiff's requested relief would not redress Plaintiff's alleged injuries. If the Court invalidated the federal statutes, the regulation and the Open Letter, the Nevada law prohibiting possession of a firearm by an "unlawful user" would remain intact, as would the requirement that FFLs could not sell a firearm to someone violating state law. *See White v. United States*, 2009 WL 173509 at *5 (S.D. Ohio Jan. 26, 2009) (holding that plaintiffs' injury was not caused by the Animal Welfare Act, as cockfighting was banned in all fifty states); *see also Midwest Media Prop. L.L.C. v. Symmes Twp.*, 503 F.3d 456, 461-63 (6th Cir. 2007) (finding that plaintiffs failed to establish redressability when they challenged township's zoning regulations prohibiting off-premises signs, because plaintiffs' rejected applications for off-premises signs had been, or could have been, rejected for violations of township's height/size restrictions and plaintiffs had not challenged those restrictions); *cf. San Diego County Gun Rights*, 98 F.3d at 1130. Because there is an additional barrier to Plaintiff possessing or purchasing a handgun, the Court cannot redress her alleged injury in this lawsuit.

## II.     PLAINTIFF'S SECOND AMENDMENT RIGHTS HAVE NOT BEEN VIOLATED

Even if Plaintiff had standing to bring her claims, each would fail. Her Second Amendment claims fail because the Ninth Circuit has held that Congress did not violate the Second Amendment by prohibiting unlawful drug users from possessing firearms. *See United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). This binding holding applies to all unlawful drug users, even those whose marijuana use is exempt from state prosecution. Even if the Ninth Circuit had not already upheld 18 U.S.C. § 922(g)(3) against a Second Amendment challenge, Plaintiff's challenge to this provision would still fail because it proscribes activity that falls outside the scope of the Second Amendment's protections. In any event, because prohibiting possession of firearms by unlawful drug users, including marijuana users, substantially relates to the important governmental interests in combatting violent crime and protecting public safety, 18

15

1  U.S.C. § 922(g)(3) does not violate Plaintiff's Second Amendment rights.  Plaintiff's challenge

2  to § 922(d)(3) similarly fails, as the Second Amendment does not protect a right to sell firearms.

3  Moreover, because § 922(g)(3)—which prohibits unlawful drug users' firearm *possession*—does

4  not violate the Second Amendment, the fact that § 922(d)(3) might prevent unlawful drug users

5  from *acquiring* firearms does not render that provision constitutionally suspect.  Finally, for the

6  same reasons that § 922(g)(3) and § 922(d)(3) do not violate the Second Amendment, ATF's

7  regulation defining terms in the two statutes and the agency's interpretation of the laws in the

8  Open Letter are also constitutional.  In particular, the interpretation of these statutes as set forth

9  in the Open Letter is entirely reasonable and properly tailored to the compelling government

10  interests at issue here.

### A. 18 U.S.C. § 922(g)(3), as Implemented and Interpreted by ATF, Does Not Violate the Second Amendment.

#### 1. Plaintiff's Second Amendment Challenge to § 922(g)(3) is Foreclosed by the Ninth Circuit's Decision in *Dugan*.

14  The Second Amendment provides: "A well-regulated Militia, being necessary to the

15  security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

16  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), after determining

17  that the Second Amendment confers an individual right to keep and bear arms, *Id*. at 595, the

18  Supreme Court held that "the District's ban on handgun possession in the home violates the

19  Second Amendment, as does its prohibition against rendering any lawful firearm in the home

20  operable for the purpose of immediate self-defense."  *Id*. at 635.  The Court's holding was

21  narrow and addressed only the "core" right of "law-abiding, responsible citizens to use arms in

22  defense of hearth and home." *Id*. at 634–35 (emphasis added).

23  The Supreme Court also took care to note that, like other constitutional rights, the right to

24  keep and bear arms is "not unlimited." *Id*. at 626.  Although the Supreme Court declined to

25  "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it

26  cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding

27  prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing

28  conditions and qualifications on the commercial sale of arms." *Id*. at 626-27.  The Court clarified

16

1    that it was "identify[ing] these presumptively lawful regulatory measures only as examples" and

2    that its list was not "exhaustive." *Id*. at 627 n.26; *see also McDonald v. City of Chicago*, 130 S.

3    Ct. 3020, 3047 (2010).

4         Following *Heller*, numerous Second Amendment challenges have been raised against

5    § 922(g)(3), and not one has succeeded. *See, e.g.*, *United States v. Yancey*, 621 F.3d 681, 683,

6    687 (7th Cir. 2010) (holding that § 922(g)(3) was "equally defensible" as, and analogous to, the

7    categorical bans described as presumptively lawful in *Heller* and that "Congress acted within

8    constitutional bounds by prohibiting illegal drug users from firearm possession because it is

9    substantially related to the important governmental interest in preventing violent crime."); *United*

10   *States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010) ("find[ing] that § 922(g)(3) is the type of

11   'longstanding prohibition[] on the possession of firearms' that Heller declared presumptively

12   lawful"); *United States v. Richard*, 350 F. App'x 252, 260 (10th Cir. 2009) (unpublished); *see*

13   *also United States v. Patterson*, 431 F.3d 832, 835–36 (5th Cir. 2005) (holding, pre-*Heller*, that

14   although the Fifth Circuit recognized an individual right to bear arms, a criminal defendant's

15   Second Amendment challenge to § 922(g)(3) was unavailing).[14]

16        The Ninth Circuit similarly upheld § 922(g)(3) against a Second Amendment challenge in

17   *Dugan*.  Like other courts that have considered the issue, the Ninth Circuit found significant

18   *Heller*'s language describing the presumptive lawfulness of  § 922(g)(1)'s prohibition on firearm

19   possession by felons and § 922(g)(4)'s prohibition on firearm possession by the mentally ill.

20   *Dugan*, 657 F.3d at 999.  The Ninth Circuit found that "the same amount of danger" is presented

21   by allowing habitual drug users to possess firearms because "[h]abitual drug users, like career

22   criminals and the mentally ill, more likely will have difficulty exercising self-control,

23

24   [14] *United States v. Carter*, 669 F.3d 411 (4th Cir. 2012), is not to the contrary.  There, the Fourth
     Circuit found that the government had failed to meet its burden of establishing a record showing

25   a reasonable fit between § 922(g)(3) and the government's important interest in public safety,
     and it therefore remanded to allow the government an opportunity to substantiate the record.  The

26   Court said that to do so "should not be difficult." *Id*. at 419.  On remand, the United States
     "shouldered its burden of establishing that section 922(g)(3) is reasonably fitted to achieve the

27   substantial government objective of protecting the community from crime by keeping guns out
     of the hands of those impaired by their use of controlled substances." *United States v. Carter*,

28   2012 WL 5935710, at *7 (S.D. W. Va. Nov. 27, 2012).

17

1    particularly when they are under the influence of controlled substances." *Id*.  The court also

2    found an important distinction between § 922(g)(3) and the two prohibitions declared

3    presumptively lawful by *Heller* that actually favored § 922(g)(3)'s constitutionality—namely,

4    that "an unlawful drug user may regain his right to possess a firearm simply by ending his drug

5    abuse," whereas those individuals who have been convicted of a felony or committed to a mental

6    institution generally face a lifetime ban.  *Id*.  The court therefore concluded that "[b]ecause

7    Congress may constitutionally deprive felons and mentally ill people of the right to possess and

8    carry weapons . . . Congress may also prohibit illegal drug users from possessing firearms." *Id*.

9         Although it is not evident from the face of the opinion, Dugan, like Plaintiff, raised

10   arguments relating to his possession of a state-issued card exempting him from state prosecution

11   for using marijuana for medical purposes.  *See* Brief for Appellant at 59, *Dugan*, 657 F.3d 998

12   (No.  08-10579), ECF No.  57 ("Here, Mr.  Dugan was . . . licensed to grow and use medical

13   marijuana.").  Indeed, Dugan's central argument in his Second Amendment challenge was that

14   "millions of Americans peacefully engage in the unlawful use of marijuana—and millions more

15   do so legally under state medical marijuana laws—without engaging in any behavior that would

16   provide a legitimate basis for excluding them from the reach of the Second Amendment." *Id*. at

17   57.  The Ninth Circuit, however, treated Dugan's status as a medical marijuana cardholder as

18   irrelevant to his Second Amendment claim—and rightly so.  Congress has determined that

19   marijuana "has no currently accepted medical use in treatment in the United States," 21 U.S.C.

20   § 812(b)(1)(B), and has accordingly specified that it may not be validly prescribed or lawfully

21   possessed, *Id*. §§ 829, 844(a).  Although several states, including Nevada, have taken a different

22   view of marijuana's potential medical benefits, it is well settled that Congress has authority

23   under the Commerce Clause to criminalize marijuana possession, even if such possession is not

24   also illegal under state law.  *See Gonzales v. Raich*, 545 U.S. 1 (2005); *see also Raich v.*

25   *Gonzales* ("*Raich II*"), 500 F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the

26   Supreme Court, that there is no Ninth Amendment or substantive due process right to use

27   marijuana for claimed medical purposes).  All marijuana users are therefore unlawful users of a

28   controlled substance, and *Dugan*'s holding that Congress may "prohibit illegal drug users from

18

possessing firearms" without violating the Second Amendment applies equally to all marijuana users.  657 F.3d at 999–1000; *see also United States v. Stacy*, 2010 WL 4117276, at *7 (S.D. Cal. Oct. 18, 2010) (noting, in the course of rejecting a Second Amendment challenge to § 922(g)(3), that "[t]he fact that this particular case involves the alleged lawful use of marijuana under state law does not have any bearing on the presumptively lawful nature of the restriction").  Accordingly, Plaintiff's claim that her Second Amendment rights have been violated by § 922(g)(3) must fail.

> **2.  Even if *Dugan* Did Not Foreclose Plaintiff's Challenge, Her Claim Would Still Fail, Because Unlawful Drug Users, Including Those Who Comply with State Medical Marijuana Laws, Fall Outside the Scope of the Second Amendment.**

Because *Dugan* resolves Plaintiff's Second Amendment challenge to § 922(g)(3), the Court need not undertake an "independent" constitutional analysis of the statute.  *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 778 (2005) (doctrine of constitutional avoidance cautions courts to avoid making unnecessary constitutional determinations).  Nonetheless, even if the Court were to engage in such an analysis, Plaintiff's claim would still fail.

Several courts have established a two-step approach to Second Amendment challenges to federal statutes and regulations.  *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1252-53 (D.C. Cir. 2011) ("*Heller II*"); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).  Under this approach, "[w]e ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny."  *Heller II*, 670 F.3d at 1253.  Plaintiff's claim fails both parts of the analysis because unlawful drug users are not within the class of law-abiding, responsible citizens historically protected by the Second Amendment, and because, in any event, § 922(g)(3) survives the appropriate level of scrutiny.

As noted earlier, *Heller*'s holding was relatively narrow, recognizing only the "core" right of "*law-abiding*, responsible citizens to use arms in defense of hearth and home."  554 U.S. at

19

1  634–35 (emphasis added).  Given this narrow holding, as well as the Court's recognition that

2  categorical prohibitions on firearm possession by felons and the mentally ill are presumptively

3  lawful, it is clear that *Heller*'s determination that the Second Amendment confers an individual

4  right to keep and bear arms cannot be misconstrued as recognizing a right for all individuals to

5  possess firearms under any circumstances.  Rather, *Heller*'s carefully crafted articulation of the

6  right at the core of the Second Amendment acknowledges that the Anglo-American right to arms

7  that was incorporated into the Bill of Rights was subject to certain well-recognized exceptions.[15]

8  Given the relatively recent history of federal enactments disqualifying felons and the mentally ill

9  from possessing weapons,[16] *Heller* also teaches that "exclusions [from the right to bear arms]

10  need not mirror limits that were on the books in 1791," when the Second Amendment was

11  enacted.  *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*); *see also id*. at 640

12  ("[*Heller*] tell[s] us that statutory prohibitions on the possession of weapons by some persons are

13  proper—and . . . that the legislative role did not end in 1791.  That *some* categorical limits are

14  proper is part of the original meaning, leaving to the people's elected representatives the filling

15  of details.") (emphasis in original).  Nevertheless, the history of the right to bear arms as it

16  developed in England and the American colonies is consistent not only with the disarmament of

17  convicted felons and the mentally ill, but also more broadly supports Congress's authority to

18  prohibit firearm possession by non-law-abiding citizens, including those who violate drug laws.

19

20

---

21  [15] It is "perfectly well settled" that the Bill of Rights embodies "certain guaranties and
immunities which we had inherited from our English ancestors," and "which had, from time
22  immemorial, been subject to certain well-recognized exceptions, arising from the necessities of
the case." *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897).  The Court similarly recognized that
23  "[i]n incorporating these principles into the fundamental law, there was no intention of
disregarding the exceptions, which continued to be recognized as if they had been formally
24  expressed." *Id*.; *see also Rutan v. Republican Party of Ill*., 497 U.S. 62, 95-96 (1990) (Scalia, J.,
dissenting) ("The provisions of the Bill of Rights . . . did not create by implication novel
25  individual rights overturning accepted political norms.").

26  [16] *See Skoien*, 614 F.3d at 640–41 ("The first federal statute disqualifying felons from possessing
firearms was not enacted until 1938 . . . .  [T]he ban on possession by all felons was not
27  enacted until 1961. . . .  Moreover, legal limits on the possession of firearms by the mentally ill
also are of 20th Century vintage; § 922(g)(4), which forbids possession by a person 'who has
28  been adjudicated as a mental defective or who has been committed to a mental institution,' was
not enacted until 1968." (citations omitted)).

1    *Heller* identified the right protected by the 1689 English Declaration of Rights as "the

2    predecessor to our Second Amendment." 554 U.S. at 593.  This document provided, "That the

3    subjects which are Protestants may have arms for their defense suitable to their conditions and *as*

4    *allowed by law*." *Id*. (quoting 1 W. & M., c. 2, § 7, in 3 Eng. Stat. at Large 441 (1689))

5    (emphasis added).  It is undisputed that both before and after its adoption, the English

6    government retained the power to disarm individuals it viewed as dangerous.  *Id*. at 582.

7    Moreover, "like all written English rights," this right to arms "was held only against the Crown,

8    not Parliament," *id*. at 593, and thus its scope was only "as allowed by law."  Significantly, the

9    English Declaration of Rights did not repeal the 1662 Militia Act, which authorized lieutenants

10   of the militia (appointed by the King) to disarm "any person or persons" judged "*dangerous to*

11   *the Peace of the Kingdome*," 13 & 14 Car. 2, c. 3, § 1 (1662) (Eng.) (emphasis added), and "was

12   to remain in force with only insignificant changes for many years to come," Joyce Lee Malcolm,

13   *To Keep and Bear Arms* 123 (1994) [App. at Tab 4]; *accord* Patrick J.  Charles, "*Arms for Their*

14   *Defence"?: An Historical, Legal, and Textual Analysis of the English Right to Have Arms and*

15   *Whether the Second Amendment Should Be Incorporated in* McDonald v. City of Chicago, 57

16   Clev. State L.  Rev. 351, 373, 376, 382–83, 405 (2009).  Since the act was employed against

17   those viewed as "disaffected or dangerous," Charles, 57 Clev. State L.  Rev. at 376–78,

18   individuals could be disarmed without any adjudication of wrongdoing.

19         The documentary record surrounding the adoption of the Constitution similarly confirms

20   that the right to keep and bear arms was limited to "law-abiding and responsible" citizens.  In

21   other words, "it is clear that the colonists, at least in some manner, carried on the English

22   tradition of disarming those viewed as 'disaffected and dangerous.'"  *United States v. Tooley*, 717

23   F. Supp. 2d 580, 590 (S.D. W. Va. 2010).  Notably, "*Heller* identified as a 'highly influential'

24   'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the

25   Convention of the State of Pennsylvania to Their Constituents" (the "Pennsylvania proposal"),

26   which "asserted that citizens have a personal right to bear arms '*unless for crimes committed*, or

27   *real danger of public injury from individuals*.'"  *Skoien*, 614 F.3d at 640 (quoting *Heller*, 554

28   U.S. at 604; 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 665 (1971)

21

(emphasis added)).  "One reason for considering this proposal 'highly influential,' is that it represents the view of the Anti-federalists – the folk advocating . . . for a strong Bill of Rights." *Tooley*, 717 F. Supp. 2d at 590.  This proposal demonstrates that, at the time the Constitution was adopted, even ardent supporters of guaranteeing an individual right to keep and bear arms recognized that criminals and other dangerous individuals should not enjoy its benefits.  Although the Second Amendment itself proved more "succinct[]" than the Pennsylvania proposal, *Heller*, 554 U.S. at 659 (Stevens, J., dissenting), the latter remains probative of how the Amendment's supporters viewed the balance between public security and the right to keep and bear arms.  *See id*. at 605 (reaffirming that "the Bill of Rights codified venerable, widely understood liberties").

The Pennsylvania proposal, moreover, supports the view that "the right to arms does not preclude laws disarming the unvirtuous citizens (i.e., criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue."  Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1360 (2009); *see also* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and Research Agenda*, 56 UCLA L. Rev. 1443, 1497 (2009) ("[A]ny textual or original-meaning limitations on who possesses the right will often stem from the perception that certain people aren't trustworthy enough to possess firearms."); *id*. at 1510 (opining that "those whose judgment is seen as compromised by mental illness, mental retardation, or drug or alcohol addiction have historically been seen as less than full rightholders"); Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L.  Rev. 487, 492 (2004); Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125, 130 (1986).  Additional historical support for this understanding of the right is found in nineteenth-century cases upholding state legislation restricting firearm possession by certain classes of people perceived to be dangerous.  For example, the Missouri Supreme Court held in 1886 that a state law prohibiting intoxicated persons from carrying firearms did not violate the state constitutional right to keep and bear arms.  *State v. Shelby*, 2 S.W. 468, 468–69 (Mo. 1886).

22

1      Courts interpreting the Second Amendment after *Heller* have recognized the importance

2  of the Amendment's historical limitations. *See, e.g.*, *Heller II*, 670 F.3d at 1252. For example,

3  the First Circuit relied, in part, on historical sources in holding that the right to keep arms does

4  not extend to juveniles. *United States v. Rene E.*, 583 F.3d 8, 15-16 (1st Cir. 2009), *cert. denied*,

5  130 S. Ct. 1109 (Jan. 11, 2010). The Ninth Circuit has recognized this history as well, noting

6  that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably

7  . . . tied to' the concept of a 'virtuous citizen[ry]' . . . and that 'the right to bear arms does not

8  preclude laws disarming the unvirtuous citizens (*i.e.*, criminals)." *United States v. Vongxay*, 594

9  F.3d 1111, 1118 (9th Cir. 2010) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*,

10  49 Law & Contemp. Probs. 143, 146 (1986)). This history is sufficient to resolve Plaintiff's

11  challenge to § 922(g)(3). Simply put, unlawful drug users—a category that includes *all*

12  marijuana users—are outside the class of "law-abiding, responsible" citizens historically

13  protected by the Second Amendment. Because the right to keep arms does not extend to those

14  who are actively engaged in illegal activity, § 922(g)(3), as interpreted by ATF, cannot violate the

15  Second Amendment. *See United States v. Hendrix*, 2010 WL 1372663, at *3 (W.D. Wis. Apr. 6,

16  2010) ("Preventing criminal users of controlled substances from possessing guns is not a

17  restriction on the values that the Second Amendment protects, which, to repeat, is the right of

18  law-abiding citizens to possess handguns in their homes for self-protection.").

19         **3.  In Any Event, 18 U.S.C. § 922(g)(3) Substantially Relates to the Important**

20            **Governmental Interest in Protecting Public Safety and Combating Violent Crime.**

21      Even if the Court were to find that § 922(g)(3) impinges upon a right protected by the

22  Second Amendment (or declines to reach the issue), it should still uphold § 922(g)(3), as applied

23  to all marijuana users, because the statute easily survives heightened review. In *Heller*, the

24  Supreme Court did not specify which standard of review should be applied in Second

25  Amendment cases, other than to rule out the use of rational-basis scrutiny. 554 U.S. at 628 &

26  n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis,

27  the Second Amendment would be redundant with the separate constitutional prohibitions on

28  irrational laws, and would have no effect."). The question of the proper standard of

23

1    constitutional scrutiny is still unsettled in the Ninth Circuit.  A panel of the Ninth Circuit moved

2    towards resolving this issue by holding that "only regulations which substantially burden the

3    right to keep and to bear arms trigger heightened scrutiny under the Second Amendment,"

4    although declining to decide "precisely what type of heightened scrutiny applies to laws that

5    substantially burden Second Amendment rights."  *Nordyke v. King*, 644 F.3d 776, 786 & n.9 (9th

6    Cir. 2011).  However, that decision was vacated by a subsequent *en banc* decision.  681 F.3d

7    1041 (9th Cir. 2012).  The *en banc* decision specifically declined to adopt a specific level of

8    scrutiny.  *Id*. at 1044-45; *see id*. at 1045 (O'Scannlain, J., concurring in judgment) (noting that

9    the majority "fails to explain the standard of scrutiny" under which it evaluated the Second

10   Amendment challenge).[17]

11          The other courts of appeals that have addressed the standard-of-review issue have

12   uniformly concluded that this type of regulation is, at most, subject to intermediate scrutiny.  The

13   Fourth Circuit, for example, declined to decide whether firearm possession by unlawful drug

14   users was understood to be within the scope of the Second Amendment's guarantee at the time of

15   ratification, but then rejected the defendant's claim that strict scrutiny should apply to his

16   challenge because he purchased the guns at issue for self-defense in the home.  *United States v.*

17   *Carter*, 669 F.3d 411, 416-17 (4th Cir. 2012).  Instead, the court applied intermediate scrutiny,

18   explaining that "[w]hile we have noted that the application of strict scrutiny is important to

19   protect the core right of self-defense identified in *Heller* . . . that core right is only enjoyed, as

20   *Heller* made clear, by 'law-abiding, responsible citizens,'" which unlawful drug users "cannot

21   claim to be." *Id*. at 416.  The court noted that it was "join[ing] the other courts of appeals that

22   have rejected the application of strict scrutiny in reviewing the enforcement of § 922(g)(3), or,

23   for that matter, any other subsection of § 922(g)."  *Id*. at 417.  *See Yancey*, 621 F.3d at 683

24   (applying intermediate scrutiny to uphold § 922(g)(3) against a Second Amendment challenge);

25

26   _____
     [17] The *en banc* opinion arguably held that strict scrutiny would not apply.  As noted by Judge
     O'Scannlain's concurrence, strict scrutiny "requires the government to show that it has taken the
27   least restrictive means to serve a compelling government interest."  *Id*. at 1045 n.2.  Because the
     Government did not have the opportunity to make such a showing, the majority could not have
28   applied strict scrutiny.  *Id*.

1     *see also Marzzarella*, 614 F.3d at 96-97 (applying intermediate scrutiny to 922(k)); *Reese*, 627

2     F.3d at 802 (applying intermediate scrutiny to § 922(g)(8)); *Heller II*, 670 F.3d at 1257 (applying

3     intermediate scrutiny to review novel gun registration laws).

4           Notably, intermediate scrutiny is appropriate here because Plaintiff can avoid the

5     restriction of § 922(g)(3) simply by relinquishing her marijuana registry card and refraining from

6     using marijuana.  The severity of the restriction is therefore not particularly substantial.  *See*

7     *Heller II*, 670 F.3d at 1257 ("[A] regulation that imposes a substantial burden upon the core right

8     of self-defense protected by the Second Amendment must have a strong justification, whereas a

9     regulation that imposes a less substantial burden should be proportionately easier to justify.");

10    *Yancey*, 621 F.3d at 686-87 (because § 922(g)(3) prohibits only *current* drug users from

11    possessing firearms, it is "far less onerous than those affecting felons and the mentally ill").  The

12    weight of this authority confirms that if the Court deems it necessary to apply a constitutional

13    means-end analysis, it should apply no more than intermediate scrutiny.

14          There can be no doubt that § 922(g)(3), as applied to marijuana users, satisfies

15    intermediate scrutiny.  Under intermediate scrutiny, "a regulation must be substantially related to

16    an important governmental objective."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1134 (9th Cir.

17    2009).  An important—indeed, compelling—governmental interest is at stake here—namely, the

18    government's interest in protecting public safety and preventing violent crime.  *See United States*

19    *v. Salerno*, 481 U.S. 739, 748, 750 (1987) (noting that the Supreme Court has "repeatedly held

20    that the Government's regulatory interest in community safety can, in appropriate circumstances,

21    outweigh an individual's liberty interest" and that the "[g]overnment's general interest in

22    preventing crime is compelling"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The 'legitimate

23    and compelling state interest' in protecting the community from crime cannot be doubted."); *see*

24    *also Carter*, 669 F.3d at 417 ("We readily conclude in this case that the government's interest in

25    'protecting the community from crime' by keeping guns out of the hands of dangerous persons is

26    an important governmental interest."); *Yancey*, 621 F.3d at 684 ("The broad objective of § 922(g)

27    —suppressing armed violence—is without doubt an important one.").

28          In evaluating the fit between the indisputably important objectives at stake and the

1  prohibition in § 922(g)(3), several relevant considerations affect the analysis.  First, intermediate

2  scrutiny, "by definition, allows [the government] to paint with a broader brush" than strict

3  scrutiny.  *Peruta v. Cnty. of San Diego*, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) (internal

4  quotation marks and citation omitted).  Second, in order to advance its compelling interests in

5  combating crime and protecting public safety, Congress may need to make "predictive

6  judgments" about the risk of dangerous behavior.  *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 665

7  (1994).  Such judgments are entitled to "substantial deference" by the courts because Congress is

8  "far better equipped than the judiciary" to collect, weigh, and evaluate the relevant evidence and

9  to formulate appropriate firearms policy in response.  *Id.* at 665–66; *Kachalsky v. Cnty. of*

10 *Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (legislatures are better equipped to make sensitive

11 policy judgments concerning the "dangers in carrying firearms and the manner to combat those

12 risks").  Third, "the nature and quantity of any showing required by the government 'to satisfy

13 heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and

14 plausibility of the justification raised.'"  *Carter*, 669 F.3d at 418 (quoting *Nixon v. Shrink Mo.*

15 *Gov't PAC*, 528 U.S. 377, 391 (2000)).  Since it is hardly novel—and entirely plausible—that

16 mixing guns and drugs poses a severe risk to public safety, the government's burden here is

17 relatively low.  Finally, the government may carry its burden by relying on "a wide range of

18 sources, such as legislative text and history, empirical evidence, case law, and common sense, as

19 circumstances and context require."  *Id.*

20      All of these sources point inexorably to the conclusion that a substantial relationship

21 exists between § 922(g)(3), as applied to marijuana users, and Congress's goals of protecting

22 public safety and combatting violent crime.  Congress enacted the precursor to what is now §

23 922(g)(3) in the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213.  Congressional

24 action was prompted by the "increasing rate of crime and lawlessness and the growing use of

25 firearms in violent crime."  H.R. Rep. No. 90-1577, at 7 (1968), *reprinted in* 1968 U.S.C.C.A.N.

26 4410, 4412.  To meet this growing problem, Congress banned certain classes of individuals from

27 receiving firearms shipped in interstate commerce based on its determination that access to guns

28 by these individuals was generally contrary to the public interest.  *See Huddleston v. United*

1   *States*, 415 U.S. 814, 824 (1974) ("The principal purpose of the federal gun control legislation . .

2   . was to [curb] crime by keeping 'firearms out of the hands of those not legally entitled to

3   possess them because of age, criminal background, or incompetency.'" (quoting S. Rep.  No.  90-

4   1501, at 22 (1968))).  As the House manager stated during debate on the legislation:

5              [W]e are convinced that a strengthened [firearms control system] can significantly
             contribute to reducing the danger of crime in the United States.  No one can dispute the
6              need to prevent drug addicts, mental incompetents, persons with a history of mental
             disturbances, and persons convicted of certain offenses from buying, owning, or
7              possessing firearms.  This bill seeks to maximize the possibility of keeping firearms out
             of the hands of such persons.
8
9   114 Cong. Rec. 21657, 21784 (1968) (quoted in *Huddleston*, 415 U.S. at 828; *Yancey*, 621 F.3d

10   at 686).  Moreover, Congress evidenced a particular concern with marijuana use: "[w]hile the

11   statute swept in users of several different categories of drugs, marijuana was the only drug

12   specifically listed by name."  *Carter*, 669 F.3d at 417 (citing 82 Stat. 1213, 1220-21, which

13   prohibited receipt of firearms by any person who is "'an unlawful user of or addicted to

14   marihuana or any depressant or stimulant drug . . . or narcotic drug'").[18]

15          Congress is not the only legislative body to draw the conclusion that guns and drugs do

16   not mix.  Rather, as the court in *Yancey* found significant, "many states have restricted the right

17   of habitual drug abusers or alcoholics to possess or carry firearms."  621 F.3d at 684.[19]  As noted

18   previously, Nevada is among the states that have codified an analogue to § 922(g)(3).  *See* Nev.

19   Rev. Stat. § 202.360(1)(c).  The state legislation "demonstrate[s] that Congress was not alone in

20   concluding that habitual drug abusers are unfit to possess firearms."  *Yancey*, 621 F.3d at 684.

---

21   [18] As *Carter* notes in recounting § 922(g)(3)'s legislative history, the "the 1968 enactment . . .
22   contained a number of loopholes." *Id*. at 417.  The provision took its current shape with the
     enactment of the Firearm Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449, 452 (1986).

23   [19] *See* Ala. Code § 13A-11-72(b); Ark. Code Ann. § 5-73-309(7), (8); Cal. Penal Code
     § 12021(a)(1); Colo. Rev. Stat. § 18-12-203(1)(e), (f); Del. Code Ann. tit. 11, § 1448(a)(3); D.C.
24   Code § 22-4503(a)(4); Fla. Stat. § 790.25(2)(b)(1); Ga. Code Ann. § 16-11-129(b)(2)(F), (I), (J);
     Haw. Rev. Stat. § 134-7(c)(1); Idaho Code Ann. § 18-3302(1)(e); 720 Ill. Comp. Stat.
25   5/24-3.1(a)(3); Ind. Code § 35-47-1-7(5); Kan. Stat. Ann. § 21-4204(a)(1); Ky. Rev. Stat. Ann.
     § 237.110(4)(d), (e); Md. Code Ann., Public Safety, 5-133(b)(4), (5); Mass. Gen. Laws ch. 140,
26   § 129B(1)(iv); Minn. Stat. § 624.713(1)(10)(iii); Mo. Rev. Stat. § 571.070(1)(1); Nev. Rev. Stat.
     § 202.360(1)(c); N.H. Rev. Stat. Ann. § 159:3(b)(3); N.J. Stat. Ann. § 2C:58-3(c)(2); N.C. Gev.
27   Stat. § 14-404(c)(3); Ohio Rev. Code Ann. § 2923.13(A)(4); R.I. Gen. Laws § 11-47-6; S.C.
     Code Ann. § 16-23-30(A)(1); S.D. Codified Laws § 23-7-7.1(3); W. Va. Code § 61-7-7(a)(2),
28   (3).

27

1     This shared legislative judgment is amply supported by academic research and empirical

2  studies demonstrating the heightened risk to the public safety posed by the possession of firearms

3  by marijuana users.  According to the Bureau of Justice Statistics, a 2004 survey found that

4  "32% of state prisoners and 26% of federal prisoners said they had committed their current

5  offense while under the influence of drugs."  Bureau of Justice Statistics, *Drugs and Crime*

6  *Facts*, *available at* http://www.bjs.gov/content/pub/pdf/dcf.pdf [App.  at Tab 5].  Marijuana,

7  moreover, was the most frequent drug of choice: a 2002 survey of convicted jail inmates found

8  that marijuana was the most common drug used at the time of the offense, and similar results

9  were found among probationers.  *Id*.  Moreover, the Office of National Drug Control Policy's

10  ("ONDCP's") arrestee drug abuse monitoring program, which collects data in 10 cities from

11  males 18 years and older at the point of their involvement in the criminal justice system, found

12  that "[m]arijuana was the most commonly detected drug in all of the . . . sites in 2010."  ONDCP,

13  *ADAM II 2010 Annual Report*, at 20 (2010), *available at* http://www.whitehouse.gov/sites/

14  default/files/ondcp/policyand-research/adam2010.pdf [App.  at Tab 6].  In the ten years that

15  ONDCP has been collecting data, "the proportion of arrestees testing positive for marijuana has

16  never been less than 30 percent of the sample in any of the current 10 sites."  *Id*. Indeed, "[i]n

17  2010, in 9 of the 10 sites, 40 percent or more of the arrestees reported [marijuana] use in the

18  prior 30 days."  *Id*. at 22.  This correlation between marijuana use and crime is unsurprising

19  given the well-documented deleterious effects regular marijuana use has on an individual.

20  Marijuana use is associated with impaired cognitive functioning, dependence, mental illness, and

21  poor motor performance.  *See* ONDCP, *Fact Sheet: Marijuana Legalization*, at 1 (Oct.  2010),

22  *available at* http://www.whitehouse.gov/sites/default/files/ondcp/Fact_Sheets/

23  marijuana_legalization_fact_sheet_3-3-11.pdf [App. at Tab 7].  Marijuana intoxication "can

24  cause distorted perceptions, difficulty in thinking and problem solving," and "[s]tudies have

25  shown an association between chronic marijuana use and increased rates of anxiety, depression,

26  suicidal thoughts, and schizophrenia."  *Id*. at 2; *see also* National Institute of Drug Abuse, *Topics*

27  *in Brief: Marijuana*, at 1 (Dec.  2011), *available at* https://www.drugabuse.gov/sites/default/

28  files/marijuana_3.pdf [App.  at Tab 8] (noting that marijuana can have wide-ranging effects,

1   including impaired short term memory, slowed reaction time and impaired motor coordination,

2   altered judgment and decision-making, and altered mood); *Id*. at 2 ("Population studies reveal an

3   association between cannabis use and increased risk of schizophrenia and, to a lesser extent,

4   depression and anxiety.").

5        The potential risks posed by the possession of a firearm by someone who uses this mind-

6   altering substance are clear.  Moreover, nothing in these studies indicates that the effects of

7   marijuana that make it dangerous for a user to possess a firearm are somehow mitigated when a

8   doctor has indicated that "use of marijuana may mitigate the symptoms or effects of [a chronic or

9   debilitating medical] condition." Nev. Rev. Stat. § 453A.210(2)(a)(2).  The documented effects

10   of marijuana use thus corroborate the substantial relationship between § 922(g)(3) and

11   Congress's goal of protecting the public's safety.  *See Yancey*, 621 F.3d at 685 (recognizing that

12   "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-

13   control, making it dangerous for them to possess deadly firearms.").

14        In addition, the limited temporal reach of § 922(g)(3) helps ensure that it bears a

15   reasonable fit to the ends that it serves.  Unlike most of § 922(g)'s other firearm exclusions,

16   which may operate as lifetime bans, § 922(g)(3) only applies to those who are currently unlawful

17   users.  *See* 27 C.F.R. § 478.11 (defining "unlawful user" so that any unlawful use must have

18   "occurred recently enough to indicate that the individual is actively engaged in such conduct").

19   Through this feature, "Congress tailored the prohibition to cover only the time period during

20   which it deemed such persons to be dangerous." *Carter*, 669 F.3d at 419.  Moreover, §

21   922(g)(3) "enables a drug user who places a high value on the right to bear arms to regain that

22   right by parting ways with illicit drug use." *Id*.  The choice is the user's, and nothing in the

23   Second Amendment "require[s] Congress to allow [the unlawful user] to simultaneously choose

24   both gun possession and drug abuse." *Yancey*, 621 F.3d at 687.

25        Given the "substantial deference" afforded to "predictive judgments" made by Congress

26   in order to advance the nation's interests, *Turner Broad. Sys.*, 512 U.S. at 665, these sources

27   demonstrate that § 922(g)(3), as applied to marijuana users, satisfies intermediate scrutiny.  That

28   Plaintiff has registered to use marijuana for purported medical purposes, as opposed to

1   recreational purposes, does nothing to change the result.  Plaintiff may attempt to argue (and did

2   so in response to Defendants' first Motion to Dismiss) that § 922(g)(3) is unconstitutional as

3   applied to her because she is a responsible marijuana user who poses no genuine threat to public

4   safety.  But such an argument is clearly precluded by the Supreme Court's recognition in *Heller*

5   that "some categorical disqualifications are permissible" and that "Congress is not limited to

6   case-by-case exclusions of persons who have been shown to be untrustworthy with weapons."

7   *Skoien*, 614 F.3d at 641 (emphasis added); *see also Tooley*, 717 F. Supp. 2d at 597 ("Section

8   922(g)(9) is of course overbroad in the sense that not every domestic violence misdemeanant

9   who loses his or her right to keep and bear arms would have misused them against a domestic

10  partner or other family member.  Under intermediate scrutiny, however, the fit does not need to

11  be perfect, but only be reasonably tailored in proportion to the important interest it attempts to

12  further.  As such, intermediate scrutiny tolerates laws that are somewhat overinclusive."

13  (citations omitted)).

14      Nor can Plaintiff succeed on a Second Amendment challenge by "disagree[ing] with

15  Congress' policy decision to link the firearms prohibition in § 922(g)(3) to the Controlled

16  Substances Act."  *Carter*, 669 F.3d at 421.  As the Fourth Circuit recognized, "[i]n enacting

17  § 922(g)(3), Congress could have chosen to reexamine the foundations of national drug policy

18  and to identify precisely what kinds of drug users ought to be prohibited from possessing

19  firearms.  Instead, it opted, quite reasonably, to connect § 922(g)(3)'s prohibition on the carefully

20  studied and regularly updated list of substances contained in the Controlled Substances Act."  *Id*.

21  Given that § 922(g)(3)'s means need only be reasonably tailored to its ends, this reasonable

22  legislative judgment is entirely consistent with the Second Amendment.

23      In sum, a variety of sources, including legislative text and history, empirical evidence,

24  case law, and common sense, demonstrate that § 922(g)(3), as applied to marijuana users,

25  substantially relates to the indisputably important government interest in protecting public safety

26  and preventing crime.  It therefore satisfies the requirements of intermediate-scrutiny review.

27  Consequently, even if the Court deems it necessary to apply a constitutional means-end analysis,

28  Plaintiff's challenge to § 922(g)(3), as interpreted by ATF, must fail.

30

### B.  18 U.S.C. § 922(d)(3), as Implemented and Interpreted by ATF, Does Not Violate the Second Amendment.

Given that § 922(g)(3) is consistent with the Second Amendment, Plaintiff's challenge to § 922(d)(3) is similarly unavailing.  First, § 922(d)(3)'s restriction is directed toward firearm sellers, not the putative purchaser.  Nothing in *Heller* suggests that the Constitution protects a right to sell firearms; indeed, *Heller*'s language, indicating that "nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms," strongly suggests otherwise.  554 U.S. at 626–27.  Only one court to date appears to have considered a Second Amendment challenge to § 922(d)(3), and it found that there was no authority indicating that, "at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm."  *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. Apr. 13, 2011) (unpublished).  Second, the right of "law-abiding, responsible citizens to use arms in defense of hearth and home" that is at the "core" of the Second Amendment, *Heller*, at 634–35, "does not necessarily give rise to a corresponding right to sell a firearm," *Chafin*, 423 F. App'x at 344.

This is not to say that restrictions on the sale of firearms could never implicate Second Amendment concerns.  But § 922(d)(3) cannot not run afoul of the Second Amendment because, for all the reasons discussed above, unlawful drug users who are precluded from acquiring firearms by the statute's operation may constitutionally be prohibited from possessing firearms.  In other words, because § 922(g)(3)'s prohibition of the *possession* of firearms by unlawful drug users is consistent with the Second Amendment, § 922(d)(3)'s prohibition of the *acquisition* of firearms by these same individuals is equally consistent.

### C.  27 C.F.R. § 478.11 Does Not Violate the Second Amendment

Similarly, nothing in the ATF's definition of the term "unlawful user of or addicted to any controlled substance" contained in 27 C.F.R. § 478.11 runs afoul of the Second Amendment.  The regulation survives for all of the reasons that the statutes survive—that is, *Dugan*'s reasoning applies, users of medical marijuana fall outside the historical understanding of the Second Amendment, and the regulation survives intermediate scrutiny.  *See* Parts II.A.-II.B.

31

**D.  The Open Letter Does Not Violate the Second Amendment**

Finally, for the same reasons that defeat Plaintiff's Second Amendment challenge to the firearm laws, Plaintiff's challenge to the Open Letter must also fail.  As an initial matter, the Open Letter does not create any "new" restrictions on the possession or sale of firearms, but rather summarizes the interplay between state medical marijuana laws and the applicable federal firearm laws (§ 922(g)(3), § 922(d)(3), and 27 C.F.R. § 478.11).  The Letter restates the existing law and provides guidance to FFLs in their application of the laws to new circumstances.  Accordingly, all of the reasons that support the constitutionality of the firearm laws apply with equal force to the Letter.  *See supra* Parts II.A.-II.C.

Even if the court were to treat the letter as an agency action independent of the statutes and the regulation, it would survive a Second Amendment challenge.  Applying intermediate scrutiny, the Letter is "substantially related to an important government objective."  *Stormans*, 586 F.3d at 1134.  The purpose of the Letter (as with the statutes and the regulation) is the important government interest in protecting public safety and preventing violent crime in general, and in particular, "keeping guns out of the hands of dangerous persons."  *Carter*, 669 F.3d at 417.[20]  Protecting public safety is a "compelling" interest, *Salerno*, 481 U.S. at 748, and is not in any way diminished by the fact that the particular marijuana users addressed by the letter do so in compliance with state law.

The Letter is "substantially related" to that objective for several reasons.  First, the Letter preserves the temporal scope of § 922(g)(3) and § 922(d)(3)—effectively limiting the restriction to cardholders who currently possess a valid card—which several courts have found persuasive in the intermediate scrutiny analysis.  *See Carter*, 669 F.3d at 418; *Yancey*, 621 F.3d at 687.  In order to obtain a firearm, a holder of a medical marijuana registry card need only surrender the

---

[20] To the extent that Plaintiff intends to challenge the policy judgment regarding the use of firearms by marijuana users, as she did earlier in this case, her contentions would be better addressed to Congress, as "[u]nder the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963); *see also Turner Broad. Sys.*, 512 U.S. at 665-66 (noting that "Congress is far better equipped than the judiciary to 'amass and evaluate the vast amounts of data' bearing upon" complex and dynamic issues).

32

1  card.  If the cardholder uses marijuana, then he cannot possess a firearm; if the cardholder does

2  not use marijuana, then he possesses a useless card, and can immediately surrender the card in

3  order to obtain the firearm.  This limiting feature—which is entirely within the individual's

4  control—keeps the prohibitory sweep exceedingly narrow.

5       Second, ATF's interpretation of the firearm laws expressed in the Letter is reasonable and

6  furthers the underlying goals of the statutes in a sufficiently targeted manner.  Section 922(d)(3)

7  requires that a seller cannot sell a firearm to an individual "knowing *or having reasonable cause*

8  *to believe*" that the individual is an unlawful user of a controlled substance.  Congress did not

9  define "knowing" or "having reasonable cause to believe."  Reasonable cause "is often proven

10 largely through circumstantial evidence and inferences," *United States v. Jae Gab Kim*, 449 F.3d

11 933, 943 (9th Cir. 2006) (emphasis omitted), and as used in § 922(d)(3) does not require "actual,

12 subjective knowledge of the purchaser's intended illegal use."  *United States v. Johal*, 428 F.3d

13 823, 827 (9th Cir. 2005).  Section 478.11 provides that current use can be *inferred* from

14 "evidence of a recent use or possession" or a "pattern of use or possession that reasonably covers

15 the present time[.]"  With that background in mind, possession of a medical marijuana card gives

16 rise to a seller's "reasonable cause to believe" that the potential buyer is a "current user" of

17 marijuana because:  (1) the card is only issued to persons who have a "chronic or debilitating

18 medical condition," Nev. Rev. Stat. § 453A.050, which implies a consistent pattern of use; (2)

19 the cardholder must obtain from her physician documentation stating that the "[t]he medical use

20 of marijuana may mitigate the symptoms or effects of [the patient's] condition" and that "[t]he

21 attending physician has explained the possible risks and benefits of the medical use of

22 marijuana," and then submit that documentation to Nevada, Nev. Rev. Stat. § 453A.210(a)(2)-

23 (3), indicating an intent to use marijuana to alleviate the symptoms of the condition; (3) the card

24 is only valid for one year, Nev. Rev. Stat. § 453A.220(4), which implies recent use; and (4) if the

25 cardholder no longer has the "chronic and debilitating" condition, the cardholder must return the

26 card to the State of Nevada within seven days, Nev. Rev. Stat. § 453A.240, which means that a

27 valid cardholder has an immediate justification for using marijuana (under Nevada law).  For

28

these reasons, the Letter supports the underlying purpose of § 922(g)(3) and § 922(d)(3).[21]

       To the extent that the Open Letter might be considered overinclusive—in the sense that not every possessor of a medical marijuana card will use marijuana and then, under the influence, recklessly use a firearm—intermediate scrutiny does not require a perfect fit.  The fit need only be tailored in proportion to the interest it attempts to further; in other words, intermediate scrutiny tolerates a certain level of overinclusivity.  *See, e.g.*, *Tooley*, 717 F. Supp. 2d at 597 (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 490 (1989)).  This is especially the case with firearm laws, which are necessarily predictive.  *See Kachalsky*, 701 F.3d at 97 ("In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks.") (quoting *Turner Broad. Sys.*, 512 U.S. at 665); *United States v. Miller*, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009) ("[T]he nature of the threat posed by gun violence makes narrowing the scope of gun regulation impracticable.").  "Sound policymaking often requires legislators to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable."  *Turner Broad. Sys.*, 512 U.S. at 665.  Congress has made the reasoned judgment that combining firearm possession with marijuana use—*any* marijuana use—will inevitably lead to heightened risk of acts of violence and threats to public safety.  This "predictive judgment" is "accord[ed] substantial deference."  *Id.*; *see also Skoien*, 614 F.3d at 640 ("That some categorical limits are proper is part of the original meaning [of the Second Amendment], leaving to the people's elected representatives the filling in of details.").  The Open Letter furthers that purpose by ensuring that federally-licensed sellers are not

---

[21] Because this is a civil pre-enforcement action brought by plaintiff rather than a criminal prosecution brought by the Government, whether Plaintiff actually uses marijuana is irrelevant for the purposes of Defendants' motion to dismiss.  What *is* relevant is whether it was appropriate for Mr. Hauseur to rely on Plaintiff's possession of a medical marijuana card in determining that he had "reasonable cause to believe" that Plaintiff was an "unlawful user."  Mr. Hauesur knew that Plaintiff possessed the card and therefore "refused to sell Ms. Wilson the firearm that she requested on the grounds that she was 'an unlawful user of a controlled substance.'"  FAC Ex. 2, ¶ 13.  That judgment was entirely reasonable, because possession of a card that allows one to use marijuana to treat a chronic condition certainly gives rise to a "reasonable cause to believe" that the person does, in fact, use marijuana.

34

1   erroneously transferring firearms to certain types of marijuana users, and does so without

2   overextending the scope of the statutes and regulation.

3        Finally, as a more general matter, ATF's interpretation of § 922(g)(3), § 922(d)(3) and 27

4   C.F.R. § 478.11, as set forth in the Open Letter, is entitled to deference under *Skidmore v. Swift &*

5   *Co.*, 323 U.S. 134, 140 (1944). The Open Letter merely clarifies or explains the law already in

6   existence, and therefore is considered an "interpretative rule." *See Mora-Meraz v. Thomas*, 601

7   F.3d 933, 939-40 (9th Cir. 2010).[22] Such interpretations are "entitled to respect" under *Skidmore*,

8   to the extent that it has the "power to persuade." *Christensen v. Harris County*, 529 U.S. 576,

9   587 (2000). As noted above, the agency's interpretation is well-considered and reasonable, and

10  should be entitled to *Skidmore* deference. In addition, the Open Letter also interprets the

11  application of 27 C.F.R. § 478.11, and an agency's interpretation of its own regulation is entitled

12  to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997). *See Price v. Stevedoring Servs. of*

13  *Am., Inc.*, 697 F.3d 820, 828-29 (9th Cir. 2012) ("[S]ubstantial deference must be given to an

14  agency's construction of its own regulations.") (citing *Martin v. Occupational Safety and Health*

15  *Review Comm'n*, 499 U.S. 144, 154-55 (1991)). For all of these reasons, the Open Letter does

16  not violate the Second Amendment.

17  **III.   PLAINTIFF'S FIRST AMENDMENT RIGHTS HAVE NOT BEEN VIOLATED**

18       Plaintiff's First Amendment claim must also be dismissed. Plaintiff contends that she has

19  a right to exercise "certain non-verbal and communicative conduct," including the acquisition

20  and possession of a medical marijuana card, and that Defendants actions have deterred her from

21  exercising that right. FAC ¶ 82, 94.[23] But this conduct can hardly be considered expressive

22

---

23  [22] Though Plaintiff alleges in the FAC that the Letter is legislative, not interpretive, FAC ¶ 69,
    the Letter more accurately falls into the latter category. For purposes of this case, the distinction
24  is only relevant in determining the amount of deference afforded to the Open Letter.

    [23] Plaintiff incorrectly suggests that her claim may be considered to be a First Amendment
25  "retaliation claim." *See* AC ¶ 93-94 (apparently alleging that Defendants retaliated against
    Plaintiff for her possession of her medical marijuana card). Such claims typically arise in the
26  retaliatory prosecution or the § 1983 context. *See, e.g.*, *Lacey v. Maricopa Co.*, 693 F.3d 896
    (9th Cir. 2012). Those contexts do not apply here. Needless to say, Plaintiff has not set forth
27  facts adequate to suggest that the passage of § 922(g)(3), § 922(d)(3), the promulgation of 27
    C.F.R. § 478.11, or the distribution of the Open Letter, was motivated by a retaliation for any
28  communicative conduct by Plaintiff.

1    conduct protected by the First Amendment, and even if it were, any free speech limitation is

2    incidental to the compelling government interests underlying the statutes, the regulation, and the

3    Open Letter.

4         The Supreme Court has "rejected the view that an apparently limitless variety of conduct

5    can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express

6    an idea." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation and internal quotation marks

7    omitted).  However, certain conduct "may be sufficiently imbued with elements of

8    communication to fall within the scope of the First and Fourteenth Amendments." *Id*. (citation

9    and internal quotation marks omitted).  Conduct is analyzed as speech under the First

10   Amendment if "[1] [a]n intent to convey a particularized message [is] present, and [2] [whether]

11   the likelihood [is] great that the message would be understood by those who viewed it." *Spence*

12   *v. Washington*, 418 U.S. 405, 410-11 (1974).

13        Under the first of the two *Spence* factors, Plaintiff has not adequately alleged an intent to

14   convey a particularized message through the mere acquisition and possession of her registry

15   card.  As a preliminary matter, acquisition or possession of an item does not typically suggest

16   expressive conduct, though the use of that item in a particular context might.  For example,

17   acquiring or possessing an American flag or a draft card is not typically conduct that rises to the

18   level of speech.  But publicly waving—or burning—the flag or the card could amount to

19   expressive conduct.  *See Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003) (citing *Johnson*,

20   491 U.S. at 404-06); *see also Johnston v. Port Authority of New York and New Jersey*, 2011 WL

21   3235760, at *11 (E.D.N.Y. July 28, 2011) (mere possession of an identification card did not

22   demonstrate an "intent to convey a particularized message").  Plaintiff must show more than

23   mere acquisition or possession of her registry card to bring the conduct into the realm of

24   protected speech.

25        In a similar vein, Plaintiff has not alleged that the act of acquiring or possessing a card

26   was "conveyed" to any third party.  Though she states that she has shared the fact that she has the

27   card "with others," FAC at ¶ 88, that is not sufficient to establish that the acquisition or

28   possession was a communicative act.  Moreover, at no point in Plaintiff's declaration does she

1    contend that she obtained her card in order to convey a particular message.  *See generally* FAC

2    Ex. 1.  Rather, Plaintiff states that she suffered from severe and debilitating cramps that could be

3    treated by cannabis, and sought a doctor's recommendation to obtain a medical marijuana

4    registry card.  *Id*. at ¶¶ 20-22.  Though Plaintiff alleges in the FAC that she is "expressing her

5    support for and advocacy of legalization of medical marijuana" through acquisition and

6    possession of the card, FAC ¶ 86, that allegation cannot trump the intention of her conduct

7    expressed in her declaration.

8            As for the second of the *Spence* factors, it is far from likely that a person who learned that

9    Plaintiff possessed a medical marijuana card would understand any political message to be

10   inherent in that conduct.  A person who learned that Plaintiff possessed the registry card would

11   be more likely to assume exactly what Plaintiff set forth in her declaration—that she possesses

12   the card in order to treat a medical condition as allowed under state law—rather than to assume

13   that Plaintiff is an advocate for medical marijuana.

14           But even if the acquisition and possession of a medical marijuana card did constitute

15   "expressive conduct," Plaintiff's First Amendment claim would fail under the appropriate

16   analysis.  If the "regulation is related to the suppression of free expression"—that is, if it

17   "proscribe[s] particular conduct *because* it has expressive elements"—strict scrutiny applies.

18   *Johnson*, 491 U.S. at 403, 406.  If not, courts apply the less stringent standard from *United States*

19   *v. O'Brien*, 391 U.S. 367, 377 (1968).  The statute, regulation, and Open Letter were all aimed at

20   reducing the threat caused by gun violence, not at suppressing advocacy of legalization of

21   medical marijuana or any other form of speech.  Accordingly, the *O'Brien* test applies.

22           "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct,

23   a sufficiently important governmental interest in regulating the nonspeech element can justify

24   incidental limitations on First Amendment freedoms."  *O'Brien*, 391 U.S. at 376.  In particular:

25           a government regulation is sufficiently justified [1] if it is within the constitutional power of
         the Government; [2] if it furthers an important or substantial governmental interest; [3] if the

26       governmental interest is unrelated to the suppression of free expression; and [4] if the
         incidental restriction on alleged First Amendment freedoms is no greater than is essential to

27       the furtherance of that interest."

28   *Id*. at 377.  All of these factors are met here.  First, it is indisputable that the United States has the

                                                          37

power to regulate the possession and sale of firearms.  Second, the provisions further the compelling government interest in protecting public safety and preventing violent crime.  Third, that interest is unrelated to suppressing speech.  Finally, to the extent Plaintiff's First Amendment freedoms have been restricted, any restriction would be *de minimis* and would be outweighed by the Government's interest in keeping firearms out of the hands of unlawful drug users.

## IV.   PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE DISMISSED AS DUPLICATIVE OF HER CLAIMS UNDER THE FIRST AND SECOND AMENDMENTS

Plaintiff previously based her substantive due process claim on a purported fundamental right to use marijuana for medical reasons, which was expressly foreclosed by *Raich v. Gonzales*, 500 F.3d 850, 861-66 (9th Cir. 2007).  In her new complaint, Plaintiff now appears to ground her substantive due process claim in her purported "right to possess a handgun under the Second Amendment" and the "fundamental right to free speech under the First Amendment."  FAC ¶ 77. This latest iteration of her claim fares no better, as any infringement of Plaintiff's First and Second Amendment rights cannot provide the basis for a violation of substantive due process.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Accordingly, "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001).  Since Plaintiff appears to base her substantive due process claim on rights protected by the First and Second Amendments, the claim amounts to a retread of her claims alleging violations of these specific amendments, and therefore must be dismissed. *See Denney v. DEA*, 508 F. Supp. 2d 815, 834 (E.D. Cal. 2007) (dismissing substantive due process claim "[s]ince the First Amendment provides explicit protection for the right to free speech . . . [and therefore] plaintiff may not additionally base a due process claim on a violation of his right to free speech."); *cf. Richards v. Cnty. of Yolo*, 821 F.

1  Supp. 2d 1169, 1177 n.8 (E.D. Cal. 2011) ("Though the right to keep and bear arms for self-

2  defense is a fundamental right, that right is more appropriately analyzed under the Second

3  Amendment.") (citation and internal quotations omitted).

4  **V.     PLAINTIFF'S PROCEDURAL DUE PROCESS MUST BE DISMISSED
         BECAUSE SHE HAS NOT BEEN DEPRIVED OF A CONSTITUTIONALLY-
5         PROTECTED LIBERTY INTEREST**

6          Plaintiff further claims that Defendants "deprived Plaintiff of her protected liberty

7  interest" in a "right to possess a firearm under the Second Amendment."  Plaintiff fails to state a

8  prima facie case to establish a procedural due process claim, which requires that Plaintiff allege

9  facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and

10 (2) a denial of adequate procedural protections."  *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir.

11 2003).

12         Plaintiff's claim cannot survive the threshold inquiry, as she has not been deprived of a

13 constitutionally-protected liberty or property interest.  *See Erickson v. United States*, 67 F.3d 858,

14 861 (9th Cir. 1995) (finding that the guarantee of procedural due process applies only when a

15 constitutionally protected liberty or property interest is at stake).  Plaintiff does not have a

16 constitutional right to use marijuana.  *Raich II*, 500 F.3d 850, 861-66; *see also Marin Alliance for*

17 *Medical Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1157 (2011) ("Finally—and significantly—

18 it is difficult to reconcile the purported existence of a fundamental right to use marijuana for

19 medical reasons with Congress' pronouncement that 'for purposes of the [CSA], marijuana has

20 no currently accepted medical use at all.'" (citing *Oakland Cannabis*, 532 U.S. at 491)).

21 Moreover, as stated, users of marijuana for medical purposes, like all users of controlled

22 substances in violation of federal law, fall outside of the scope of the Second Amendment.

23 Plaintiff, therefore, has not shown that the government has deprived her of any constitutionally-

24 protected liberty or property interest, and the claim must be dismissed.  *See Clark K. v. Willden*,

25 616 F. Supp. 2d 1038, 1041-42 (D. Nev. 2007) (dismissing procedural due process claims where

26 plaintiffs failed to set forth a proper constitutionally-protected interest).

27

28

1   **VI.   PLAINTIFF'S EQUAL PROTECTION MUST BE DISMISSED BECAUSE SHE
        HAS NOT IDENTIFIED SIMILARLY SITUATED INDIVIDUALS THAT
2       DEFENDANTS HAVE TREATED DIFFERENTLY**

3           Plaintiff's equal protection claim is also meritless.  Plaintiff alleges that §§ 922(g)(3) and

4   922(d)(3), as implemented and interpreted by ATF, violate the equal protection component of the

5   Due Process Clause.  FAC ¶¶ 58-66.  The Equal Protection Clause provides that "[n]o state shall

6   . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const.

7   amend. XIV, § 1.  Although this clause expressly applies only to the States, the Supreme Court

8   has found that its protections are encompassed by the Due Process Clause of the Fifth

9   Amendment and therefore apply to the federal government.  *Bolling v. Sharpe*, 347 U.S. 497

10  (1954).  Congress is presumed to act within its powers when it passes legislation, however, and

11  federal statutes challenged for denial of equal protection are entitled to deferential review as long

12  as the "legislative classification or distinction 'neither burdens a fundamental right nor targets a

13  suspect class.'"  *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (quoting *Romer v. Evans*, 517 U.S.

14  620, 631 (1996)).

15          In evaluating an equal protection challenge, a court must first determine whether a

16  plaintiff is being treated differently from similarly situated individuals.  *Gonzalez-Medina v.*

17  *Holder*, 641 F.3d 333, 336 (9th Cir. 2011).  The equal protection component of the Due Process

18  Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City*

19  *of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  As a result, "[t]o establish

20  an equal protection violation, [the plaintiff] must show that she is being treated differently from

21  similarly situated individuals."  *Gonzalez-Medina*, 641 F.3d at 336.

22          Plaintiff first claims that she is similarly situated to "persons who are prescribed medical

23  marijuana in states where the obtainment of a state-issued medical marijuana card is not

24  required."  FAC ¶ 62.  According to Plaintiff, because some states allow medical marijuana use

25  without issuing registry identification cards, those medical marijuana users will be able to buy

26  firearms more easily than people who live in states that require medical marijuana registry cards.

27  *Id.*  This claim cannot proceed.  As a threshold matter, Plaintiff has not supported these

28  conclusory allegations with any facts regarding the supposed (easier) registration requirements in

40

1   other states.  *See Marin Alliance For Medical Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1158-

2   59 (N.D. Cal. 2011) (rejecting equal protection claim where, *inter alia*, Plaintiff failed to present

3   facts supporting allegations regarding differences in state medical marijuana laws).

4        In any event, even if Plaintiff could overcome this pleading defect, the claim would still

5   fail.  Plaintiff does not claim (because she cannot) that the "law is applied in a discriminatory

6   manner or imposes different burdens on different classes of people."  *Freeman v. City of Santa*

7   *Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).  The law applies equally to all users of medical

8   marijuana, and nothing in § 922(g)(3), 27 C.F.R. § 478.11, or the Open Letter suggests

9   otherwise.  Instead, Plaintiff's argument is that medical marijuana users in certain states may

10   more easily evade the law by purchasing firearms without notifying sellers that they use

11   marijuana.  This is not a proper equal protection claim, as the law facially applies to every

12   marijuana user, even if some people are able—through deceit or fraud—to avoid prosecution or

13   obtain a firearm.  *See United States v. Hendrickson*, 664 F. Supp. 2d 793, 798 (E.D. Mich.

14   2009) ("There is no right under the Constitution to have the law go unenforced against you, even

15   if you are the first person against whom it is enforced . . . . The law does not need to be enforced

16   everywhere to be legitimately enforced somewhere." (internal quotation omitted)).[24]

17        Plaintiff also claims that she is "being treated differently from similarly situated persons

18   with similar medical conditions to those of the Plaintiff."  FAC ¶ 63.  According to Plaintiff,

19   individuals who pursue methods of treatment other than the use of marijuana "have not been

20   denied their ability to obtain handguns."  *Id*.  But the class of citizens that use marijuana pursuant

21   to state law are not similarly situated to law-abiding individuals, including those who seek

22   treatment in compliance with federal law.  It is entirely reasonable for the government to infer

23   that those individuals who have affirmatively registered to use marijuana on the basis of chronic

24   medical conditions are, in fact, marijuana users.  And because all users of marijuana are violating

25   federal law, they are not similarly situated to those citizens who seek medical treatment in a

26

27   ─────────────

[24] Furthermore, a marijuana registration card is only one of many pieces of evidence that an FFL
located in any state can consider in determining whether a particular buyer is an "unlawful user
28   of or addicted to a controlled substance," regardless of the state in which the sale takes place.  *Id*.

1   manner that does not violate federal law.  *See Marin Alliance*, 866 F. Supp. 2d at 1158-59

2   (finding that individuals whose drug use violates the Controlled Substances Act are not similarly

3   situated to those whose use is permitted by that law).  Because Plaintiff does not adequately

4   allege that she has been "treated differently from similarly situated individuals," *Gonzalez-*

5   *Medina*, 641 F.3d at 336, she fails to state an equal protection claim.[25]

6   **VII.   AS PLAINTIFF PREVIOUSLY CONCEDED, SHE CANNOT SEEK MONETARY**
    **DAMAGES AGAINST THE UNITED STATES**

7
        Plaintiff's First Amended Complaint purports to seek claims against the United States for

8   monetary relief, even though Plaintiff previously conceded that claims for damages cannot

9
    proceed.  *See* FAC  ¶¶ 56, 65, 72, 79, 96 (alleging that Plaintiff has suffered damages "[a]s a

10  direct and proximate result" of Defendants' actions); Prayer for Relief ¶ 6 (seeking an award of

11  "compensatory and punitive damages").

12
        The waiver of sovereign immunity claimed by Plaintiff does not apply to actions for

13  money damages.  The United States, as a sovereign, is immune from suit unless it has waived its

14  immunity.  *Dep't of Army v. Blue Fox, Inc*., 525 U.S. 255, 260 (1999); *Levin v. United States*, 663

15  F.3d 1059, 1061 (9th Cir. 2011).  The United States has not waived its sovereign immunity for

16  damages claims based on constitutional violations.  *See Dyer v. United States*, 166 F. App'x 908,

17  909 (9th Cir. 2006) ("To the extent [plaintiff] sought damages from the United States for

18  allegedly violating his constitutional rights, his claim was barred by sovereign immunity.").  "A

19  waiver of the Federal Government's sovereign immunity must be unequivocally expressed in

20  statutory text."  *Lane v. Peña*, 518 U.S. 187, 192 (1996).

21

22

23  _____

    [25] Even if Plaintiff could establish that she is being treated differently from other similarly-
24  situated individuals, her equal protection claim would still fail because she cannot show that
    Defendants' actions were irrational.  Because the purported classifications do not target a suspect
    class, only rational basis would apply.  *Romer*, 517 U.S. at 631.  Under rational basis review, a
25  law must be rationally related to the furtherance of a legitimate governmental interest.  *Id*.  As
    explained above, the challenged government actions satisfy the requirements of intermediate
26  scrutiny.  *See supra* Part II.A.3.  By definition, then, they also satisfy the more relaxed standards
    of rational basis review.  *See Dearth v. Holder*, --- F. Supp. 2d ----, 2012 WL 4458447, at *12
27  (D.D.C. Sep. 12, 2012) (finding that because the challenged restriction survived a Second
    Amendment challenge under intermediate scrutiny, the restriction also survived an equal
28  protection challenge under rational basis review).

                                            42

1   Plaintiff seeks to avail herself of the waiver of sovereign immunity contained in Section

2   702 of the Administrative Procedure Act. FAC ¶ 11 (alleging that the United States "is a proper

3   defendant in this action pursuant to 5 U.S.C. § 702"). But this waiver only applies to

4   constitutional claims for non-monetary relief. *See* 5 U.S.C. § 702 ("An action in a court of the

5   United States seeking relief *other than monetary damages* . . ." (emphasis added)). Plaintiff

6   previously conceded that she could not seek money damages against the United States. *See*

7   Reply to Def. Mot. to Dismiss (Dkt. 17) at 25 ("To the extent that the Prayer for Relief contained

8   in Plaintiff's Complaint seeks monetary damages, Plaintiff agrees that 5 U.S.C. § 702 does not

9   provide for such damages."). Accordingly, any claims seeking monetary relief from the United

10  States, ATF, or the individual defendants in their official capacity must be dismissed.

11                                    **CONCLUSION**

12   For the reasons stated herein, Plaintiff's First Amended Complaint should be dismissed in

13  its entirety, or, in the alternative, summary judgment should be entered in the favor of the United

14  States on all of Plaintiff's claims.

15  Dated: January 31, 2013                      Respectfully submitted,

16                                               STUART F. DELERY
                                                 Principal Deputy Assistant Attorney General
17
                                                 DANIEL G. BOGDEN
18                                               United States Attorney

19                                               DIANE KELLEHER
                                                 Assistant Director
20
                                                 /s/ John K. Theis
21                                               JOHN K. THEIS
                                                 Trial Attorney
22                                               United States Department of Justice
                                                 Civil Division, Federal Programs Branch
23
                                                 *Attorneys for Defendants*
24

25

26

27

28

43

CHARLES C. RAINEY
Nevada Bar No. 10723
DC Bar No. 989628
chaz@raineydevine.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineydevine.com
RAINEY DEVINE, ATTORNEYS AT LAW
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89052
Telephone: (702) 425.5100
Facsimile: (888) 867.5734

*Attorneys for Plaintiff Rowan S. Wilson*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| S. ROWAN WILSON, an individual,<br><br>     Plaintiff,<br><br>v.<br><br>ERIC HOLDER, Attorney General of the United States, et al.,<br><br>     Defendants. | Case No. 2:11-cv-1679-GMN-(PAL)<br><br>**RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>**HEARING REQUESTED** |

   COMES NOW Plaintiff S. ROWAN WILSON (the "Plaintiff") by and through her counsel Charles C. Rainey of the THE LAW FIRM OF RAINEY DEVINE, and hereby submits her RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

/ / /

/ / /

/ / /

/ / /

/ / /

1       This Response is made and based upon the Memorandum of Points and Authorities

2  attached hereto, the pleadings and papers on file herein, and any arguments to be had at the

3  hearing of this matter.

4  DATED: February 25, 2013.         Respectfully submitted:

THE LAW FIRM OF RAINEY DEVINE

5                         By:    /s/ Chaz Rainey

6                              Charles C. Rainey, Esq.
   Nevada Bar No. 10723

7                              chaz@raineydevine.com
   Jennifer J. Hurley, Esq.

8                              Nevada Bar No. 11817
   Jennifer@raineydevine.com

9                              8915 South Pecos Road, Ste. 20A
   Henderson, Nevada 89052

10                             Telephone:  +1.702.425.5100
   Facsimile:  +1.888.867.5734

11                             *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................i

INTRODUCTION ...........................................................................................................1

STATEMENT OF FACTS .................................................................................................1

PROCEDURAL HISTORY ...............................................................................................2

LEGAL STANDARDS ....................................................................................................2

LEGAL ARGUMENT3

I.     DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1) MUST BE DENIED BECAUSE THE PLAINTIFF HAS ARTICLE III STANDING ON EACH OF HER CLAIMS. ..................................................4

     A.  Plaintiff has Suffered, and is Continuing to Suffer, an "Injury in Fact" ................5

     B.  Plaintiff Meets the Traceability Element as Her Harm is Not "Self-Inflicted" ......7

     C.  Plaintiff's Harm Will be Redressed by the Relief Requested.................................8

II.    DEFENDANTS VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS ...............................................................................................9

     A.  The ATF's Issuance of the Open Letter Violated the APA Because it Made Substantive Changes to the Law Without the Requisite Notice and Comment Period.. ..................................................................................9

     B.  If the ATF's Letter Was Merely Interpreting Existing Law, Then the Underlying Law Violates the Second Amendment. ...........................................13

          1.  The ATF's Overbroad Interpretation of 18 U.S.C. §§ 922(d)(3) and (g)(3) Unconstitutionally Violates Second Amendment Rights, Failing Under Both Strict Scrutiny and Intermediate Scrutiny Analysis ..........................................................................14

              a.  The Applicable Standard of Scrutiny for Second Amendment cases is Unclear and Unsettled .........................................15

              b.  The ATF's Interpretation of §§ 922(d)(3) and (g)(3) Fails Under a Strict Scrutiny Analysis Because it is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals ..........................................................................17

              c.  Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. §§ 922(d)(3) and (g)(3) is Unconstitutional Because the Expansive Scope of the Law, Covering More than Half of the U.S. Population, is Not Substantially Related to Any Important Government Interest........................................19

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-i-

        d.  *United States v. Dugan* does Not Foreclose a Constitutional Challenge to 18 U.S.C §§ 922(d)(3) and (g)(3)................................22

III.   DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS.............................................................................................23

    A. The Constitutionality of the ATF's Enforcement Actions, as Applied to the First Amendment, Should be Examined Under a Strict Scrutiny Standard........................................................................................24

    B. The ATF's Enforcement Actions, as Set Forth in the Open Letter, Fail to Meet Strict Scrutiny Standards ..........................................26

    C. Even Examined Under the Less Restrictive O'Brien Test, the ATF's Universal Ban on the Sale of Firearms to Registry Cardholders Amounts to an Unconstitutional Restriction on Free Speech. ..........27

IV.   DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE DUE PROCESS...........................................................................28

V.   DEFENDANTS VIOLATED PLAINTIFF'S RIGHT OT PROCEDURAL DUE PROCESS...........................................................................30

VI.   DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION ...............................................................................32

VII.  PLAINTIFF DOES NOT SEEK MONETARY DAMAGES AGAINST THE UNITED STATES, OTHER THAN COSTS AND FEES ALLOWED, BUT INSTEAD SEEKS DECLARATORY AND INJUNCTIVE RELEIF.................34

CONCLUSION............................................................................................35

RAINEY / DEVINE
8915 S. Pecos Road. Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

# <u>TABLE OF AUTHORITIES</u>

**U.S. SUPREME COURT CASES**                                                    <u>PAGE</u>

*Albright v. Oliver*, 510 U.S. 266 (1994) .......................................................29

*Allen v. Wright*, 468 U.S. 737, 751 (1984) ......................................................4

*Armstrong v. Manzo*, 380 U.S. 545 (1965)..................................................31

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986)..................................3

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ........................................................32

*Celotex Corp. v. Catrett*, 47 U.S. 317 (1986) ................................................3

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557(1980).....................19

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985)....................32

*Clark v. Jeter*, 486 U.S. 456 (1988)..............................................................16

*Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530 (1980). ...................19

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) ............................30

*Dickerson v. New Banner, Inc.*, 460 U.S. 103 (1983). ..........................................18

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008)........................................16

*Ex Parte Wall*, 107 U.S. 265 (1883). ...........................................................30

*Goldberg v. Kelly*, 397 U.S. 254 (1970). .......................................................31

*Graham v. Richardson Sailer v. Leger*, 403 U.S. 365 (1971) ....................................16

*Grannis v. Ordean*, 234 U.S. 385 (1914). ......................................................31

*Griswold v. Connecticut*, 381 U.S. 479 (1965)...............................................17, 29

*Hein v. Freedom From Religion Found.*, 551 U.S. 587 (2007)......................................4

*Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123 (1951). ..............................30

*Kramer v. Union Free School District*, 395 U. S. 621 (1969)......................................17

*Lawrence v. Texas*, 539 U.S. 558 (2003)........................................................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992).....................5, 7, 9

*Margan v. United States*, 304 U.S. 1 (1938). ...................................................31

*Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270 (1941) ..........................4

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) .............................................16

-iii-

*Meyer v. Nebraska*, 262 U.S. 390 (1923). ...................................................................29

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ......................................................................32

*Opp Cotton Mills v. Administrator*, 312 U.S. 126 (1941). ..........................................31

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ......................................................29

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). ...........16, 29

*Poe v. Ullman*, 367 U.S. 497 (1961)...........................................................................29

*Robertson v. Baldwin*, 165 U. S. 275 (1897) .............................................................16

*Roe v. Wade*, 410 U.S. 113 (1973) .......................................................................*passim*

*Schneider v. State*, 308 U.S. 147 (1939)....................................................................17

*Secretary of State v. Hoseph H. Munson Co.*, 467 U.S. 947 (1984).............................5

*Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87 (1995).....................................10

*Shelton v. Tucker Carr v. Young*, 364 U.S. 479 (1960)..............................................17

*Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269 ...................................5, 7, 9

*United States v. Virginia*, 518 U.S. 515 (1996) .........................................................16

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988); ............................5

*Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950).....................................................31

**FEDERAL CIRCUIT COURT CASES**

*American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106 (D.C.Cir.1993) .......................................................................................................10, 11

*Appalachian Power Co v. Envtl. Protection Agency*, 208 F.3d 1015 (D.C. Cir., 2000) ..............13

*Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726 (9th Cir. 1994) ..............................19

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011)..............................................4

*Chief Prob. Officers of California v. Shalala*, 118 F.3d 1327, 1329 (9th Cir.1997). ...................10

*Compassion in Dying v. State of Washington*, 79 F.3d 790 (9th Cir. 1996)...................................29

*Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991)...................................................19

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)........................................................4

*Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2004)...................................................................10

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1999). ..................................................3

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

*Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082 (9th Cir., 2003). .......... 10, 11

*Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037 (9th Cir. 2002). ................................... 32

*Jacobs v. Clark County School Dist.*, 526 F.3d 419 (9th Cir. 2008). ....................... 19, 24

*San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ............................... 5

*Sequoia Orange Co. v. Yeutter*, 973 F.2d 752 (9th Cir.1992) ...................................... 10

*United States v. Carter*, 669 F.3d 411 (4th Cir. 2012) ........................................ 16

*United States v. Dugan*, 657 F.3d 998 (9th Cir 2011). ..................................... *passim*

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) ............................ 16

*United States v. Seay*, 620 F.3d 919 (8th Cir 2010) ....................................... 22

*United States. v Yancey*, 621 F.3d 681 (7th Cir 2010). ................................... *passim*

**FEDERAL DISTRICT COURT CASES**

*Mirin v. Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976) ............... 3, 4

**UNITED STATES CONSTITUTION**

U.S. Const. Amend. I ........................................................................... *passim*

U.S. Const. Amend. II .......................................................................... *passim*

U.S. Const. Amend. V .......................................................................... *passim*

**STATUTES**

5 U.S.C § 553 ..................................................................................... 10

5 U.S.C § 702 ..................................................................................... 34

18 U.S.C. § 922(g)(3). ...................................................................... *passim*

18 U.S.C. § 922(d)(3). ...................................................................... *passim*

21 U.S.C. § 802 ............................................................................. 11, 14

28 U.S.C. § 2412 ................................................................................. 34

**FEDERAL RULES AND REGULATIONS**

27 C.F.R. § 478.11 ........................................................................ *passim*

Fed. R. Civ. Pro. 12(d). ......................................................................... 3

Fed. R. Civ. Pro. 12(b)(1). ................................................................... 3, 4, 5

Fed. R. Civ. Pro. 12(b)(6) ................................................................... *passim*

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Fed. R. Civ. Pro. 56 ........................................................................................................3

**MISCELLANEOUS**

2010 United States Health Report, as compiled by the National Center for Health
Statistics (http://www.cdc.gov/nchs/data/hus/hus10.pdf)............................................14

National Institute on Alcohol Abuse and Alcoholism No. 38 October 1997, available at
http://pubs.niaaa.nih.gov/publications/aa38.htm .........................................................20

National Survey on Drug Use and Health, 2010, Substance Abuse & Mental Health
Death Archive, available at http://www.icpsr.umich.edu/cgi-
bin/file?comp=none&study=32722&ds=1&file_id=1094507 .............................14, 21

Order List: 565 U.S. (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf)............13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Defendants' Motion to Dismiss attempts to bury the fundamental and meritorious issues of this case inside a myriad of irrelevant facts and arguments. Plaintiff does not dispute that the possession of marijuana remains prohibited under federal law despite a growing number of states legalizing the possession and use of marijuana for the treatment of medical conditions. Nor is Plaintiff, by this case, attempting to claim that Defendants may not advise federal firearms licensees ("FFLs") that possession of marijuana remains illegal under federal law. Instead, Plaintiff is asserting that the Defendants' explicit direction to FFLs that they "may not transfer firearms or ammunition to [a] person" who "is in possession of a card authorizing the possession and use of marijuana under State law," is unconstitutional. *See* First Amended Complaint ("FAC"), Dkt. No. 34, Ex. 2-B. The mere fact that a person possesses a document, validly issued under the laws of his or her state and authorizing some act not compatible with federal law, without more, cannot constitute grounds for the deprivation of fundamental constitutional rights.

The Defendants have deprived the Plaintiff of her fundamental constitutional rights. Through 18 U.S.C. §§ 992(d)(3), 922(g)(3), and their Open Letter to all FFLs, the Defendants have deprived the Plaintiff of her rights under the First, Second, and Fifth Amendments. Dismissal of Plaintiff's claims is unwarranted as Plaintiff properly alleges each required element of her claims. Defendants' Motion to Dismiss sets forth virtually no arguments concerning Plaintiff's alleged failure to state a claim for which relief can be granted, but instead argues almost exclusively that summary judgment is appropriate because, the Defendants contend, Plaintiff's claims fail as a matter of law under *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). *Dugan*, however, is factually distinguishable from the present case in a number of important respects, which Defendants fail to address. Furthermore, summary judgment is inappropriate as genuine issues of fact remain in dispute regarding Plaintiff's claims. Therefore, Defendants' Motion must be denied and this case must be allowed to move forward.

**STATEMENT OF FACTS**

In connection with their Motion to Dismiss, Defendants' filed a Statement of Undisputed Facts (the "Statement"). Dkt. No. 37-2. Plaintiff does not dispute the Statement to the extent that

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

it sets forth the laws governing this dispute; however, Plaintiff does dispute several other items set forth in the Statement. First, Paragraph 4 of the Statement alleges that "marijuana cannot be legally prescribed for medical use." *Id*. at p. 3, line 3. Plaintiff agrees that marijuana cannot be legal prescribed for medical use under federal law but asserts that marijuana can be legally prescribed under many state laws. Second, Plaintiff disagrees with Paragraph 5 of the Statement to the extent that it implies Nevada's statutes regarding medical marijuana only apply when the Registry Cardholder actually "engages in the medical use of marijuana." *Id*. at p. 3, lines 8-10. There is no requirement in the Nevada statutes that a Registry Cardholder ever use or possess marijuana; nor is there any determination that a Cardholder will in fact obtain and use marijuana.

Additionally, further factual disputes exist in this matter. Specifically, factual disputes exist as to the Defendants' intent in issuing the Open Letter and Plaintiff's intent in obtaining a Registry Card. Plaintiff contends that by issuing the Open Letter, Defendants intended to curtail certain speech and to damage the political movement regarding the legalization of medical marijuana. Defendants' contend that there was no such intent, alleging instead that the sole purpose in issuing the Open Letter was preventing the threat of gun crime caused by persons possessing Registry Cards. There is further dispute as to Plaintiff's intent in obtaining her Registry Card. Plaintiff alleges that she obtained the Registry Card as part of her advocacy for the use of medical marijuana, while Defendants claim that Plaintiff obtained the Registry Card solely for medical reasons.

**PROCEDURAL HISTORY**

Plaintiff does not dispute the procedural history set forth in Defendants' Motion. In regards to the four issues which the Court requested be briefed by the parties during the November 2, 2012 hearing, Plaintiff addresses such issues as follows: the level of scrutiny for Second Amendment challenges is addressed at page 16; whether the Open Letter is legislative or interpretive is addressed at page 11; whether Plaintiff has standing to challenge 922(d)(3) is addressed at page 4, note 1; and whether Plaintiff's claim is "ripe" is addressed at page 4, note 1.

**LEGAL STANDARDS**

Defendants' Motion purports to be a Motion to Dismiss made pursuant to F.R.C.P.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

12(b)(1) and 12(b)(6) and, in the alternative, a Motion for Summary Judgment made pursuant to F.R.C.P. 56. Rules 12(b)(1) and 12(b)(6) provide, respectively, that defenses of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted can be raised by motion before a responsive pleading is filed. Fed. R. Civ. Pro. 12(b). In considering a motion under Rule 12(b)(1) or 12(b)(6), the Court must accept all factual allegations as true and draw all reasonable inferences in favor of plaintiff. *Mirin v. Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Additionally, "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d).

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). Material facts are only those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247, 106 S.Ct. 2505 (1986). The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 47 U.S. 317, 325 106 S.Ct. 2548 (1986).

Here, Defendants' Motion should be considered as a motion for summary judgment rather than a motion to dismiss under Rule 12(b)(6) because the Defendants rely on matters outside of the FAC throughout the Motion. These extrinsic matters cannot be separated from the Motion so as to allow the Court to consider the Motion under Rule 12(b)(6). Defendants' Motion only seeks dismissal under Rule 12(b)(1) in that it claims Plaintiff lacks standing under Article III. As such, the Defendants' Motion is, for all intents and purposes, a motion for summary judgment and not a motion for dismissal under Rule 12(b)(6).

## LEGAL ARGUMENT

Defendants' Motion must be denied on each and every ground set forth therein. First, Plaintiff has clearly satisfied the requirement to establish Article III standing. Second, Defendants' fail to establish that there are no genuine disputes of material fact and that they are entitled to summary judgment as a matter of law. Defendants are not entitled to summary

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-3-

1 judgment because they have violated Plaintiff's Second and Fifth Amendment rights and, at the

2 very least, a question of fact exists as to whether Defendants have violated Plaintiff's First

3 Amendment rights.

**I. DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1) MUST BE DENIED BECAUSE PLAINTIFF HAS STANDING TO CHALLENGE THE STATUTES, THE REGULATION, AND THE OPEN LETTER.**

6 Plaintiff possesses standing under Article III because she has suffered an injury in fact

7 that is fairly traceable to the Defendants' conduct and likely to be redressed by the relief

8 requested in this case.[1] In order to satisfy the requirement of standing, "[a] plaintiff must allege

9 personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

10 redressed by the requested relief." *Hein v. Freedom From Religion Found.*, 551 U.S. 587, 127

11 S.Ct. 2553 (2007), *quoting Allen v. Wright*, 468 U.S. 737, 751 (1984). The question of standing

12 is "a factual one in which we view the facts pled in the light most favorable to Plaintiff." *Mirin v.*

13 *Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976), citing *Maryland*

14 *Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).

15 Furthermore, the Supreme Court has instructed lower courts to take a broad view of

16 constitutional standing in civil rights case, especially where private enforcement suits are the

17 primary method of obtaining redress. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 93

18 S.Ct. 364 (1972); *see Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008); *Chapman v.*

19 *Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).

20 Here, the facts pled, when viewed in the light most favorable to the Plaintiff and in light

21 of the broad view of standing dictated by the Supreme Court, demonstrate that Plaintiff clearly

22 has standing under Article III. As discussed in further detail below, Plaintiff suffered an injury

23 through the Defendants' implementation of the policy set forth in the Open Letter, which

---

[1] At the November 2, 2012 hearing, the Court asked the parties to brief whether Plaintiff has standing to challenge 18 U.S.C. § 922(d)(3). In their Motion to Dismiss, Defendants admit that if Plaintiff has standing under § 922(g)(3), she also has standing under § 922(d)(3). DEF MOTION TO DISMISS, p. 11, n. 9, citing *Dearth v. Holder*, 641 F.3d 499, 500-03 (D.C. Cir. 2011). For the reasons set forth in this section, Plaintiff has standing under § 922(g)(3) and thus also has standing to challenge § 922(d)(3). Defendants have also admitted that this case is ripe. DEF MOTION TO DISMISS, p. 11, n. 9. Plaintiff agrees with the Defendants assertion that there is no ripeness problem in this case regardless of any incomplete information on Form 4473 because Mr. Hauseur denied the Plaintiff's purchase of the firearm based on his knowledge that Plaintiff possessed a Registry Card and the explicit instruction in the Open Letter than he was prohibited from transferring a firearm to anyone he knew possessed a Registry Card.

-4-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

conclusively and irrefutably labels Plaintiff as an unlawful user of a controlled substance and thereby prohibits Plaintiff from exercising her Second Amendment right to purchase and possess a handgun. In the same respect, Plaintiff also suffered injury to her First Amendment right to free speech and Fifth Amendment right to due process. These injuries are directly traceable to the Defendants' actions complained of in the FAC and can only be redressed by the granting of the relief requested by Plaintiff. Therefore, Defendants' Motion to Dismiss under Rule 12(b)(1) must be denied as Plaintiff has Article III standing.

**A. Plaintiff has Suffered, and is Continuing to Suffer, an "Injury in Fact."**

The first element of Article III standing is "an injury in fact (i.e. a 'concrete and particularized' invasion of a 'legally protected interest.'" *Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992). The Supreme Court has recognized that in First Amendment challenges, "chilling effect [is] an adequate injury for establishing standing because the alleged danger . . . is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129, *quoting Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, 108S.Ct. 636, 643 (1988) (internal quotations omitted); *see also Secretary of State v. Hoseph H. Munson Co.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2847 (1984) ("when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statutes challenged").

As a preliminary matter, Defendants' argument that Plaintiff is suffering no injury because her Registry Card expired is cut off by the fact that Plaintiff did renew her Registry Card and currently possesses an unexpired Registry Card. *See* **RENEWED REGISTRY CARD**, attached hereto as Exhibit "**A**" and incorporated herein by reference. The Registry Card attached to the FAC is the card Plaintiff possessed when she was initially denied her right to purchase a handgun, which was valid at the time of the attempted purchase and at the time of the filing of

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

the Complaint.[2] Plaintiff has at all times relevant hereto possessed a valid and unexpired Registry Card and will continue to possess such a Card. The fact that the unexpired Registry Card was not attached to the FAC does not mean that the Plaintiff has failed to allege an injury in fact.

Even if Plaintiff's Registry Card had expired, she would still have sufficiently alleged an injury in fact. Where an issue is "capable of repetition, but evading review," standing exists even if the injury may be seen as not continuing at some point in the case. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705 (1973). In *Roe v. Wade*, a pregnant woman, Roe, challenged the constitutionality of Texas laws criminalizing abortion. *Id.* at 120. In both the district court and on appeal it was argued that Roe did not have standing because her pregnancy had naturally ended before the case was decided. On appeal, the Supreme Court upheld the district court's finding that Roe had standing because Roe could potentially become pregnant again; thus the same issue would be presented again but, because the normal human gestation period is so short, the pregnancy would again end before the appellate process could be completed. *Id.* at 124-25.

Here, even if Plaintiff had not maintained a valid Registry Card, the harm suffered by Plaintiff is capable of repetition but evading review. Under Nevada law, a Registry Card is only valid for a period of one year, which is a much shorter time period than what is typically required to litigate a case of this nature. N.R.S. 453A.220(4). Even if Plaintiff let her Registry Card expire, she would still have an injury in fact giving rise to standing because she could potentially obtain a new Registry Card in the future and again be denied the purchase of a firearm as a result of her possession of the Card. Under *Roe*, the mere possibility that the harm will continue but

---

[2] The card was valid until March 10, 2012. The purchase was attempted on October 4, 2011 and the Complaint was filed on October 18, 2011. While not applicable to the facts of the present case, Defendants argue that if an FFL used an expired registration card to deny the purchase of a firearm, "Plaintiff's injury would stem from the actions of the FFL, not the Government." However, the Defendants' Open Letter does not at any point inform the FFL that it may not use an expired registration card to deny the transfer of a handgun. In fact, the Open Letter actually states that "if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law . . . the person is an unlawful user of a controlled substance . . . [and] you may not transfer firearms or ammunition to the person." A reasonable FFL would take the Open Letter to mean that it cannot transfer a firearm or ammunition to a person who possesses a Registry Card, regardless of whether the card has recently expired. This seems especially clear in light of the definition of "unlawful user" set forth in 27 CFR 478.11, which provides that the use giving rise to a determination that a person is a current unlawful user of a controlled substance "is not limited to . . . use . . . within a matter of days or weeks before, but rather . . . use [that] has occurred recently enough to indicate that the individual is actively engaged in such conduct . . . [and an] inference of current use may be drawn from evidence of a recent use or possession . . . or a pattern of use or possession that reasonably covers the present time." Thus, FFLs would understand the Open Letter and regulation to mean that they could not transfer a firearm or ammunition to someone who they were aware possessed a recently expired Registry Card.

-6-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

evade review is sufficient to satisfy the "injury in fact" element of standing.

Plaintiff was and continues to be denied her right to purchase a firearm as a result of her possession of a Registry Card. Through the Open Letter, Defendants have deemed the possession of a Registry Card to be conclusive and irrefutable evidence that the holder is an "unlawful user" of marijuana and have directed all FFLs not to sell firearms to anyone possessing such a card. Plaintiff has been injured by the denial of her Second Amendment right to purchase and possess a handgun. Furthermore, Plaintiff has experienced a chilling effect on her free speech as a result of the Defendants' actions. Specifically, Plaintiff's possession of the Registry Card is a form of protected speech, the exercise of which has led to the denial of her Second Amendment rights. The harm suffered by Plaintiff is a concrete and particularized invasion of a legally protected interest as Defendants deprived Plaintiff of her constitutional rights based solely on the fact that she possesses a Registry Card. Moreover, the harm suffered by Plaintiff is capable of repetition but evading review. As such, the Court should find that Plaintiff has alleged an injury in fact that will continue regardless of whether Plaintiff maintains her Registry Card.

**B. Plaintiff Meets the Traceability Element as Her Harm is Not "Self-Inflicted."**

The second element of standing is that there be "a 'fairly . . . traceable' connection between the alleged injury in fact and the alleged conduct of the defendant." *Sprint Commc'ns Co*. *v*. *APCC Servs*., *Inc*. 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v*. *Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992).

Here, a fairly traceable connection clearly exists between the Plaintiff's alleged injury in fact and the alleged conduct of the Defendants. By issuing the Open Letter, Defendants deprived Plaintiff of her Second Amendment right to acquire a firearm and other related constitutional rights. Defendants argue that Plaintiff's injury does not stem from their actions but rather from Plaintiff's own decision making, i.e., Plaintiff's decision to obtain a Registry Card in accordance with the rights provided by her State's constitution and statutes. Defendant's argument is analogous to arguing that a pregnant woman may not challenge laws restricting access to abortions because the woman's own decision making is what caused her to become pregnant. Defendants' allegation that Plaintiff can simply chose an option that causes her no harm by

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-7-

relinquishing her Registry Card fails in two respects: (1) it fails to address the harm that would then be caused to Plaintiff by the loss of her state law rights and (2) it fails to address the very real possibility that even if she relinquished her Registry Card, the Defendants' actions would still prevent Plaintiff from obtaining a firearm.[3]

Through their actions, Defendants are attempting to force Plaintiff to choose between her state law right to possess a Registry Card and her federal right to possess a firearm. However, there is no actual conflict between these rights as there is no federal law making it illegal to possess a Registry Card. The only conflict between the rights is the Defendants' unilateral determination, as set forth in the Open Letter, that the mere possession of a Registry Card constitutes conclusive and irrefutable evidence of unlawful drug use. Defendants completely foreclose the possibility that persons may possess a Registry Card and yet not use or possess marijuana, claiming that these persons would be "holding cards that serve them no purpose." DEF MOTION TO DISMISS at p. 13, lines 19-20. Defendants' opinion that no one would possess a Registry Card without also consistently invoking the corresponding right to possess and use marijuana is not based in reality and cannot be used as a grounds to deny the Plaintiff her Constitutional rights.

Furthermore, Defendants' argument that Plaintiff's injury is self-inflicted, and therefore not traceable to Defendants, is disingenuous. Initially, the "self-inflicted" harm standard set forth in Defendants' Motion is found almost exclusively in cases dealing with disputes between two states.[4] Defendants also rely on *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010). However, *Yancey* is inapplicable because Yancey actually was in possession of marijuana and confessed that he had smoked marijuana daily for about 2 years.[5] In the present case, Plaintiff's harm is clearly and directly traceable to the Defendants' actions.

### C. Plaintiff's Harm Will Be Redressed by the Relief Requested.

The third element of standing is whether it is "'likely' and not 'merely speculative' that

---

[3] As set forth in Note 2 above, it appears that if Plaintiff relinquished her Registry Card, she would still be denied her right to purchase and possess a handgun based on the definition of an "unlawful user" set forth in 27 C.F.R. 478.11 and the policy set forth in the Open Letter.
[4] *See e.g.*, *Pennsylvania v. New Jersey*, 426 U.S. 660, 96 S.Ct. 2333.
[5] Moreover, *Yancey* did not even consider the issue of whether Yancey had standing to challenge 922(g)(3).

-8-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992). Defendants' assertion that Plaintiff does not satisfy the redressability element of standing is without merit. The redressability element only requires that it is 'likely' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit. The remedy sought by Plaintiff in this matter is to declare 922(d)(3), 922(g)(3), 27 CFR 478.11, and the Open Letter unconstitutional as they violate the First Amendment, Second Amendment, and Fifth Amendment. If they are declared unconstitutional, Plaintiff will be able to purchase and possess a firearm.

Defendants argue that even if 922(d)(3), 922(g)(3), 27 CFR 478.11, and the Open Letter were all declared unconstitutional, Plaintiff still would be unable to purchase a handgun under Nevada law because they contend Plaintiff would still be an unlawful user of, or addicted to, a controlled substance. This argument is fundamentally flawed and, indeed, evidences the same flaw running through most of Defendants' arguments – that is, the unilateral, conclusive, and irrefutable determination that Plaintiff is an unlawful user of a controlled substance based solely on her possession of a card that gives her a right to possess and use marijuana if she chooses. There is no provision of Nevada law that deems Plaintiff an unlawful user of or addicted to a controlled substance based on her possession of a Registry Card. The Nevada laws only affect Plaintiff to the extent that they incorporate the federal laws challenged by Plaintiff in this suit. If the federal laws were removed, Nevada laws would not pose a barrier to Plaintiff obtaining and possessing a handgun.

## II. DEFENDANTS VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS.

### A. The ATF's Issuance of the Open Letter Violated the APA, Because it Made Substantive Changes to the Law Without the Requisite Notice and Comment Period.

The ATF's Issuance of the Open Letter was an unlawful abuse of authority, given that the Letter made substantive changes to existing law and did so without the requisite period for notice and comment, as required under the Administrative Procedure Act (the "APA"). The APA

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-9-

requires agencies to advise the public through a notice in the Federal Register of the terms or substance of a proposed substantive rule, allowing the public a period to comment. *See* 5 U.S.C. § 553(b) and (c). This is termed the "notice and comment" requirement of the APA. "Th[e] requirement is designed to give interested persons, through written submissions and oral presentations, an opportunity to participate in the rulemaking process." *Chief Prob. Officers of California v. Shalala* ["*Probation Officers*"], 118 F.3d 1327, 1329 (9th Cir.1997). Generally, "[t]he procedural safeguards of the APA help ensure that government agencies are accountable and their decisions are reasoned." *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 758 (9th Cir.1992); *Erringer v. Thompson*, 371 F.3d 625 at 629-630. The only instances where agency rulings don't require notice and an opportunity for public comment are where such rulings are merely "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A); *see also Erringer*, 371 F.3d 625 at 629.

In the present case, the Defendant seeks to justify the ATF's failure to follow the APA's Notice and Comment Requirement by asserting that the Open Letter was merely interpretive. However, the mere fact that an agency claims that its rule is interpretive does not by itself render the law interpretive. *Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1088 (9th Cir., 2003). Not surprisingly, the Defendants fail to apply the appropriate legal standard in determining whether the Open Letter was interpretive. If the Defendants had applied the proper standard, as set forth in the Ninth Circuit case *Hemp Industries*, the Defendants would have had no choice but to acknowledge that the Open Letter was, indeed, a substantive agency ruling, clearly subject to the Notice and Comment Requirement.

In *Hemp Industries*, the Ninth Circuit adopted the framework previously set down by the DC Circuit, noting that an agency ruling is "legislative," as opposed to "interpretive" whenever the rule is delivered with the "force of law." *Id.* at 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993); *see also Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99, 115 S.Ct. 1232 (1995). The Court then identified the following three circumstances in which a rule has the "force of law":

        (1)    when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action;

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

(2) when the agency has explicitly invoked its general legislative authority; or

(3) when the rule effectively amends a prior legislative rule.

*Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993).

Here, the Open Letter was issued with the force of law, because: (a) without the Open Letter, there is no legislative basis for enforcing a blanket ban on the sale of firearms to Registry Cardholders and (b) the Open Letter effectively amended ATF's prior regulation on this matter, codified at 27 CFR 478.11. Despite the Defendants' somewhat forced attempt to paint the Open Letter as "interpretive," the simple fact is this: were it not for the Open Letter, there would be no legal basis for holding FFLs criminally liable under Section 922(d)(3) for selling a firearm to a Registry Cardholder. Indeed, after an exhaustive search of federal cases dating back to the original passage of Section 922(d)(3), the Plaintiff was unable to find a single case anywhere in the United States where an FFL was charged, let alone convicted, of violating Section 922(d)(3) for selling a firearm to a Registry Cardholder. Such a criminal charge has never occurred because, neither the statute nor the corresponding regulation provide any basis for such a charge.

Section 922(d)(3) reads in relevant part:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
[....]
(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

While the statute does point to a definition for the term "Controlled Substances," citing 21 U.S.C 802, the statute fails to provide any definition for the term "unlawful user." Taken on its plain meaning, the logical definition of the term "unlawful user" would mean an individual convicted of unlawfully using a Controlled Substance (whether convicted of a felony or a misdemeanor). However, the ATF took a somewhat broader interpretation of the term, when it in enacted 27 CFR 478.11, in which the agency provided the following definition of "unlawful user or addicted to a Controlled Substance":

A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person

-11-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  who is a current user of a controlled substance in a manner other than as
   prescribed by a licensed physician […].

2  27 CFR 478.11.

3      The foregoing regulation immediately contradicts the language of the Open Letter, since

4  the Open Letter specifically prohibits the sale of firearms to Registry Cardholders, who would

5  have by necessity consulted a licensed physician prior to obtaining a Registry Card. As already

6  pointed out in this brief, the process of obtaining a Registry Card requires under State Law a

7  recommendation from a licensed physician. Meanwhile, 27 CFR 478.11 specifically defines

8  "unlawful user" as a person who failed to obtain a prescription from a physician. This plain

9  reading of the regulation would provide a simple and decisive defense for any firearms licensee

10  wrongfully charged with a violation of Section 922(d)(3). However, the Open Letter changes the

11  rule, providing the force of law necessary to charge and even convict any FFL that sells a firearm

12  to a Registry Cardholder.

13      While this obvious distinction between the regulation and the Open Letter is sufficient

14  grounds for triggering the Notice and Comment Requirements of the APA, a further reading of

15  the entire regulation 27 CFR 478.11 gives us even more cause for concern.   27 CFR 478.11

16  includes a further explanation of the term "unlawful use," along with a list of illustrative

17  examples, none of which would come close to justifying a blanket ban on the sale of firearms to

18  Registry Cardholders.  27 CFR 478.11 further states:

19          [Unlawful use] is not limited to the use of drugs on a particular day, or
            within a matter of days or weeks before, but rather that the unlawful use
20          has occurred recently enough to indicate that the individual is actively
            engaged in such conduct. A person may be an unlawful current user of a
21          controlled substance even though the substance is not being used at the
            precise time the person seeks to acquire a firearm or receives or possesses
22          a firearm. An inference of current use may be drawn from evidence of a
            recent use or possession of a controlled substance or a pattern of use or
23          possession that reasonably covers the present time, e.g., a conviction for
            use or possession of a controlled substance within the past year; multiple
24          arrests for such offenses within the past 5 years if the most recent arrest
            occurred within the past year; or persons found through a drug test to use a
25          controlled substance unlawfully, provided that the test was administered
            within the past year. For a current or former member of the Armed Forces,
26          an inference of current use may be drawn from recent disciplinary or other
            administrative action based on confirmed drug use, e.g., court-martial
27          conviction, nonjudicial punishment, or an administrative discharge based
            on drug use or drug rehabilitation failure.

28  27 CFR 478.11

-12-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Nothing within the foregoing regulation states or even suggests that a Registry Cardholder would be automatically and irrefutably deemed an "unlawful user" and therefore denied her Second Amendment Rights. All of the examples provided above presume some level of fact-finding due process carried out to determine whether the person is, in fact, an unlawful user: "a conviction for use or possession […]; multiple arrests within the past 5 years […]; a drug test […]; court-martial conviction." *Id*. Each and every one of these bases for an "inference" requires some level of investigation or due process. However, the Open Letter simply makes the blanket assertion that any person with a Registry Card is *per se* a criminal and therefore shall be automatically deprived of her constitutionally guaranteed rights, without any notice, without any hearing, and without any due process.

The Open Letter represents a substantive change in the law, amending a prior regulation and creating criminal liability for FFLs where such liability did not previously exist. Yet, the Defendant failed to provide any opportunity for the public to review and comment upon this proposed rule, as required under the APA. Accordingly, the Open Letter is an unlawful abuse of the ATF's authority and must be declared invalid.

### B. If the ATF's Letter was Merely Interpreting Existing Law, Then the Underlying Law Violates the Second Amendment.

A quote from the DC Circuit seems especially relevant to this case:

> The phenomenon we see in this case is familiar. Congress passes a broadly worded statute. The agency follows with regulations containing broad language, open-ended phrases, ambiguous standards and the like. Then as years pass, the agency issues circulars or guidance or memoranda, explaining, interpreting, defining and often expanding the commands in the regulations.

*Appalachian Power Co v. Envtl. Protection Agency*, 208 F.3d 1015, 1020 (D.C. Cir., 2000).

Here, we have an instance where a federal agency has so broadly interpreted a federal statute as to render that statute unconstitutional. If this Court were to accept the extraordinary breadth with which the ATF has interpreted § 922(d)(3), and by implication § 922(g)(3), then between 10% and 50% of adult-aged US citizens would be precluded from possessing,

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-13-

purchasing, transporting or even receiving any firearm or ammunition.[6]  In effect, the law, if

enforced to the extent argued by the ATF, could deprive half of our adult-aged citizens of their

fundamental constitutional right to keep and bear arms.  Moreover, the ATF's interpretation of

these statutes, as espoused in the Open Letter, seeks to create a means of automatically labeling

entire groups of people with medical conditions as criminals, without any notice, without any

hearing, and without any means of refuting or overturning what is, in effect, a criminal

punishment.

### 1. The ATF's Overbroad Interpretation of §§ 922(d)(3) and (g)(3) Unconstitutionally Violates Second Amendment Rights, failing under both a strict scrutiny and an intermediate scrutiny analysis.

18 U.S.C § 922(d)(3) reads as follows:

> (d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> […]
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))

Meanwhile, 21 U.S.C § 802(6), the law defining "controlled substances," reads as follows:

> The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

If § 922(d)(3) were narrowly construed, such that the definition of an "unlawful user"

encompassed only persons recently convicted of drug-related crimes (both misdemeanors and

felonies), then the statute would satisfy constitutional standards.  Similarly § 922(g)(3), which

imposes criminal liability upon "unlawful users" who acquire or possess firearms, is

constitutionally sound, if we assume that the determination of whether a person is an "unlawful

---

[6] According to data from the Substance Abuse and Mental Health Services Administration, dated 2011, out of a random sample of 58,397 people surveyed, 11.5% admitted to smoking marijuana within the last 12 months and an additional 30.4% admitted to smoking marijuana at some point preceding the last 12 months; as a representative statistic of the entire United States, this indicates that  approximately 29.6 million people within the United States have used marijuana within the last year, while an additional 78.3 million people have smoked marijuana within their lifetimes  (http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=34481&ds=1&file_id=1098647);  *see also* 2010 UNITED STATES HEALTH REPORT, as compiled by the National Center for Health Statistics, available at http://www.cdc.gov/nchs/data/hus/hus10.pdf (reporting that nearly half of all persons within the United States have taken prescription drugs within the last 30 days).

-14-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

user" requires some level of judicial review (i.e., the criminal charges and proceedings filed against the accused party).

However, the ATF has deliberately sought to broaden the definition of "unlawful user" to include, not only persons with prior drug-related criminal convictions, but also any person that an FFL may by inference think is an "unlawful user." As already noted, under 27 C.F.R. § 478.11, the ATF broadly defines the term "[u]nlawful user of or addicted to any controlled substance." *See full definition at p. 12, infra.* Then, in the Open Letter, the ATF further expanded the meaning of "unlawful user" to include any person with a Registry Card, dictating to all FFLs "if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance. As such, you may not transfer firearms or ammunition to the person."

The definition of "unlawful user" is disturbingly over-broad, attempting to circumvent all judicial review of alleged "unlawful" activity and merely labeling large groups of people as automatically and irrefutably engaged in criminal conduct, so as to deprive those individuals of their Second Amendment rights and do so without providing any notice, hearing or other procedural due process. This is a constitutionally untenable position, which is especially concerning, given the political underpinnings of the Government's action.[7] This overbroad "interpretation" of §§ 922(d)(3) and (g)(3) is simply far too overreaching to pass constitutional muster, regardless of the level of scrutiny applied by this Court.

a. **The Applicable Standard of Scrutiny for Second Amendment Cases is Unclear and Unsettled.**

As noted by the Defendant, neither the US Supreme Court nor the Ninth Circuit has adopted a specific standard of scrutiny for Second Amendment cases. DEF MOTION TO DISMISS at pp. 36-37. While other Circuits have addressed this issue, the Defendants offer only a cursory analysis of those court opinions and makes the broad assertion that all circuits have uniformly

---

[7] As referenced in the introduction and addressed in more detail in Section III below, it is the Plaintiff's position that the Open Letter was issued as a means of suppressing a growing pro-cannabis political movement and not actually aimed at the same policy issues that gave rise to the legislative enactment of §§ 922(d)(3) and (g)(3).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

decided that Intermediate Scrutiny applies. *Id*. p. at 37, lines 11-12. While some circuits have openly adopted an intermediate scrutiny standard, most circuits have elected a more nuanced, case-by-case approach. *See e.g., United States v. Yancey*, 621 F.3d 681, 683 (7th Cir., 2010) (court applied intermediate scrutiny to the case at hand, but expressly stated that a different level of scrutiny may be applicable to other Second Amendment cases); *see also United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir., 2010) (court noted that Second Amendment cases should be treated similarly to first amendment cases, in that, different levels of scrutiny may apply depending upon the threat posed to the right); *see also United States v. Carter*, 669 F.3d 411 (4th Cir., 2012) (referencing the same standard enunciated by the Seventh Circuit, suggesting that different levels of scrutiny shall apply, depending upon the extent to which the Second Amendment right is curtailed under the law).[8]

Moreover, the wholesale adoption of an intermediate scrutiny standard for all Second Amendment cases is deeply problematic given that the Supreme Court has made clear that the Second Amendment is a "fundamental" personal right. *District of Columbia v. Heller*, 554 US 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)[9]; *see also McDonald v. City of Chicago*, 130 S.Ct. 3020, 3042 (2010) ("It is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty"). If the Second Amendment is a "fundamental" right, as posited by the Supreme Court, then our nation's case law directs that the Strict Scrutiny standard is the appropriate standard for analyzing laws aimed at stripping individuals of these rights. *See e.g., Graham v. Richardson Sailer v. Leger*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *United States v. Virginia*,

---

[8] It should also be noted that, while there is a debate as to whether strict or intermediate scrutiny applies to Second Amendment cases, the Supreme Court did rule out the rational basis standard of scrutiny. *DC v. Heller*, 554 US 570, n. 27, 628, 128 S. Ct. 2783, n. 27, 2783 (2008); *see also US v. Carter*, 669 F.3d 411, 415 (4th Cir., 2012) (acknowledging the Supreme Court's foreclosure of rational basis scrutiny in Second Amendment cases).

[9] Specifically, the Court stated that "By the time of the founding [of the United States], the right to have arms had become fundamental for English subjects" then states that the Second Amendment was "a codified right 'inherited from our English ancestors.'" 128 S. Ct. 2783 (*quoting Robertson v. Baldwin*, 165 U. S. 275, 281 (1897)).

-16-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (J. Scalia *dissenting* notes that "strict scrutiny will be applied to the deprivation of whatever sort of right we consider 'fundamental'"). "Even though the governmental purpose [may] be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). "Where legislative abridgment of 'fundamental personal rights and liberties' is asserted, 'the courts should be astute to examine the effect of the challenged legislation." *Id*. (*quoting Schneider v. State*, 308 U.S. 147, 161, 60 S.Ct. 146, 151 (1939).

Nevertheless, regardless of which standard this Court ultimately decides to employ, §§ 922(d)(3) and (g)(3), as interpreted and promulgated by the ATF, fail to pass constitutional muster under any applicable standard. As explained in more detail below, the ATFs overbroad construction of §§ 922(d)(3) and (g)(3) is impossibly expansive, to the point that it utterly fails to comport with constitutional standards.

**b. The ATF's Interpretation of §§ 922(d)(3) and (g)(3) Fails Under a Strict Scrutiny Analysis because it is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals.**

18 U.S.C §§ 922(d)(3) and (g)(3), as interpreted by the Defendants, plainly fail to survive a strict scrutiny analysis. To survive a strict scrutiny analysis, the law must: (1) further a compelling government interest; (2) be narrowly tailored to achieve that compelling government interest; and (3) be the least restrictive means for achieving that compelling government interest. *See e.g. Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 395 U. S. 627 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 485 (1965).

The ATF's broad interpretation of the term "unlawful user," as embodied in 27 C.F.R. § 478.11, causes §§ 922(d)(3) and (g)(3) to fail on prongs two and three of the above-cited test: the law is <u>not</u> narrowly tailored to achieve the intended government interest, nor is it the least restrictive means of achieving the intended government interest. As noted by the Defendants, in their most recent Motion, §§ 922(d)(3) and (g)(3) were enacted with the intent of keeping firearms "out of the hands of presumptively risky people." DEF MOTION TO DISMISS, p. 3, lines

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-17-

27-28 (*quoting Dickerson v. New Banner, Inc.*, 460 U.S. 103, 112, n. 6 (1983)).  However, in its attempt to deter firearm possession amongst these presumptively risky people, the ATF takes a scorched earth approach, seeking to deprive Second Amendment rights to a phenomenally large contingent of the American population – any and all persons that *may* have a physical addiction to any Controlled Substance and any all persons that *may* have taken a Controlled Substance without a physician's prescription.  Based on numbers from the Centers for Disease Control and the Substance Abuse and Mental Health Services Administration, this accounts for roughly rough fifty percent (50%) of all adults in the United States.[10]

18 U.S.C §§ 922(d)(3) and (g)(3), as interpreted by the ATF, are just too impossibly broad to survive strict scrutiny (or intermediate scrutiny for that matter).  The law aims to deprive over one hundred million people of their constitutional right to keep and bear arms, just to target an infinitesimal subset of potentially dangerous individuals.  Even if §§ 922(d)(3) and (g)(3) were solely concerned with illicit substance abuse (which they are not) and even if we were to assume that every single person who committed a violent crime within the last year was an illicit substance abuser (which is a quantum leap of an assumption), the violent persons targeted by §§ 922(d)(3) and (g)(3) would <u>still</u> only account for 3.2% of the total people actually affected by the law,[11] meaning that the law attacks the constitutional rights of more than thirty times the number of people that it is intended to affect. This is like leveling the entire rainforest just to take down a single rotting tree.

What's more, it is Plaintiff's contention that the Open Letter fails to even satisfy the first prong of the strict scrutiny standard; the Plaintiff asserts that the Open Letter, unlike the underlying statute, was <u>not</u> issued to further a compelling government interest, but rather was issued as a means of putting down a growing grassroots political movement.  The Open Letter was part of an effort within the federal government to undermine the increasing groundswell of

---

[10] *Supra* at note 5.

[11] This statistic is based on a combination of two statistical sources.  First, the Substance Abuse and Mental Health Services Administration calculates that 38,806,000 Americans had taken illicit drugs in 2010. Second, statistics compiled by the Federal Bureau of Investigation estimate that in that same year there were approximately 1,240,000 instances of violent crime. *See Crime in the United States*, available at http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/violent-crime/violent-crime.  Taken together, if we assume that each instance of violent crime was committed by a separate and distinct individual, and that each and every violent assailant was an illicit drug user, then only 3.2% of illicit drug users account for all violent crimes committed in the United States.

-18-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

state-level support for the legalization of medical marijuana. The Open Letter was a straightforward abuse of agency authority, aimed at undermining the constitutional rights of our citizens. The Open Letter must be struck down as unconstitutional, together with the ATF's unconstitutionally broad interpretation of §§ 922(d)(3) and (g)(3)

    **c. Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. §§ 922(d)(3) and (g)(3) is Unconstitutional Because the Expansive Scope of the Law, Covering More than Half of the U.S. Population, is Not Substantially Related to Any Important Government Interest.**

  To overcome intermediate scrutiny, the asserted governmental interest must be "substantial," rather than "compelling," and the regulation adopted must have "a direct, substantial relationship between the objective and the means chosen to accomplish the objective." *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991); *see also Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530, 540, 100 S.Ct. 2326, 2334-35, 65 L.Ed.2d 319 (1980). As noted by the Ninth Circuit, "[i]ntermediate scrutiny's precise contours vary slightly depending upon which constitutional right is at issue." *Jacobs v. Clark County School Dist.*, 526 F.3d 419, n. 23 (9th Cir. 2008). Neither the Ninth Circuit, nor the Supreme Court has set down a system of intermediate scrutiny as applied to Second Amendment issues.

  While the Plaintiff agrees that §§ 922(d)(3) and (g)(3) were enacted to further a "substantial" government interest, the Plaintiff contends that the Open Letter was not enacted for such a purpose. As previously noted in this brief, it is the Plaintiff's contention that the Open Letter was specifically authorized and issued for the purposes of suppressing a growing political movement. The DOJ, and by extension the ATF, endeavored to quash the medical cannabis movement by manipulating the enforcement of existing law to curtail the constitutional rights of individuals involved in the movement. This is a material factual allegation that precludes any summary judgment on this matter.

  Moreover, due to the extraordinary breadth and scope with which the ATF has interpreted §§ 922(d)(3) and (g)(3), even prior to the issuance of the Open Letter, the law fails to provide a

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-19-

direct, substantial relationship between the law's objective and the means chosen to accomplish that objective. As previously noted, the ATF has taken a scorched earth approach in its interpretation of these laws, seeking to stretch §§ 922(d)(3) and (g)(3) beyond the boundaries of constitutionality and deprive Second Amendment rights to as many people as possible. The overwhelming impact of the law, as interpreted by the ATF, falls on the shoulders of non-violent, harmless individuals, depriving those individuals of their Second Amendment rights. The law does not merely apply to thieving, violent scoundrels. As applied by the ATF, §§ 922(d)(3) and (g)(3) prohibits the sick, the elderly,[12] and tens of millions others.

Meanwhile, the law allows a specific exception for alcohol abuse. Curiously, alcoholism, a condition that is widely known to increase aggression and violent tendencies[13] is exempted from prosecution under § 922(d)(3). If the law were truly constructed for the purpose of curtailing the ownership of firearms amongst potentially violent people, then why would it apply to all suspected drug users, but specifically exclude alcoholics? In a 1997 report from the National Institute of Health, it was noted that, as a direct effect of the consumption of alcohol, "[a]lcohol may encourage aggression or violence by disrupting normal brain function."[14] Nevertheless, § 922(d)(3), a law allegedly designed to keep firearms out of the hands of potentially dangerous people makes no attempt to keep guns from alcoholics.

Inversely, there is no viable evidence to suggest that marijuana use is correlated with violent crime (or any other crime beyond illegal drug use). While the Government makes a feeble attempt to tie drug use to criminal behavior, the statistics that the Government points to fail to take into account the large number of non-criminal drug users. The statistics cited by the Government merely analyze the number of prison inmates who admit to having been on narcotic substances at the time of arrest. However, those individuals account for a miniscule fraction of the total number of drug users in the United States.

At the end of 2010, state and federal prison populations totaled 1,518,104. Correctional

---

[12] *See supra* note 5 (90.1% of persons over the age of 65 report having taken prescription medications within the last thirty days).

[13] *See* NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM NO. 38 OCTOBER 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm

[14] *Id.*

-20-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Population in the United States, 2011. Bureau of Justice Statistics. This figure equals approximately 0.5% of the U.S. population. *Id*.; 2010 Census. Federal prisons housed 206,968 prisoners while state prisons housed 1,311,136. The 2004 DOJ study relied upon by Defendants indicates that 32% of state prisoners and 26% of federal prisoners committed their current offense while under the influence of drugs.[15] However, only 15% of state prisoners and 14% of federal prisoners used marijuana at the time of their offense.[16] Thus, approximately 196,670 state inmates and 28,975 federal inmates committed their crimes while using marijuana. This equates to approximately 0.07% of the U.S. population having committed a crime while under the influence of marijuana. When this number is compared with the total number of Americans who report using marijuana, it is clear that marijuana use has no causal link to crime. Approximately 106,232,000 Americans (or 34.4% of the total U.S. population) report having using marijuana in their lifetime.[17] Approximately 17,373,000 Americans (or 5.6% of the total U.S. population) report having used marijuana in the past month. Thus, the number of incarcerated persons who were using marijuana at the time of their crime equals only 0.2% of all persons who have used marijuana and 1.2% of all persons who are habitual users of marijuana.

Additionally, the 2004 DOJ study reports that violent offenders were less likely than other offenders to have used drugs in the month prior to their offense.[18] The report states "Violent offenders in State prison (50%) were less likely than drug (72%) and property (64%) offenders to have used drugs in the month prior to their offense."

The Defendants also rely on a 2010 report by the Office of National Drug Control Policy. However, this report is not a good indicator of any supposed link between marijuana and crime because it only reports incidents of marijuana use in males arrested in 10 cities. Additionally, the ONDCP is not an independent research organization but rather a cabinet level component of the Executive Office with the stated objective of eradicating drug use. As such, any studies conducted by the ONDCP are inherently biased.

There is no viable link between the use of cannabis and violent behavior; meanwhile,

---

[15] *See* http://bjs.ojp.usdoj.gov/content/dcf/duc.cfm.
[16] *Id.*
[17] *See* http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=32722&ds=1&file_id=1094507
[18] *See* http://bjs.ojp.usdoj.gov/content/pub/pdf/dudsfp04.pdf.

-21-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

there is clear and well-established evidence that alcohol is directly linked with violent behavior. Nevertheless, the ATF's application of §§ 922(d)(3) and (g)(3) arbitrarily preclude users of cannabis (or any other controlled substance for that matter) from exercising their fundamental constitutional rights. Sections 922(d)(3) and (g)(3), as interpreted by the ATF, fails to provide a direct, substantial relationship between the law's objective and the means chosen to accomplish the objective. The ATF's interpretation of this law is untenable, unenforceable, unconstitutional and utterly unrealistic; it must be declared unconstitutional.

### d. United State v Dugan does not foreclose a constitutional challenge to 18 U.S.C §§ 922(d)(3) and (g)(3).

In seeking to validate the constitutionality of §§ 922(d)(3) and (g)(3), the Defendants rely heavily, almost exclusively, upon the Ninth Circuit case *United States v. Dugan*, 657 F.3d 998 (9th Cir 2011). However, *Dugan* is a deeply flawed opinion, lacking any meaningful legal analysis, and is not, in fact, applicable to the current case. Indeed, the Defendant's discussion of *Dugan* is longer than the actual court opinion.

Consisting of just four short paragraphs, *Dugan* makes the sweeping assertion that § 922(g)(3) is constitutional, without even bothering to examine the law under a strict scrutiny, intermediate scrutiny or even rational basis analysis. Indeed, *Dugan* provides no substantive analysis of the law's constitutionality and appears to base its entire decision upon two similarly brief and similarly flawed opinions from sister circuit courts.[19]

Meanwhile, the facts of *Dugan* are so prejudicial that they fail to provide a proper framework for analyzing the constitutionality of §§ 922(d)(3) or (g)(3). In *Dugan,* the party challenging the law's constitutionality, Kevin Dugan, was arrested during a domestic violence complaint, when officers discovered an illegal marijuana "operation" in Mr. Dugan's home. Mr. Dugan was the very sort of person that § 922(g)(3) was designed for—a dangerous criminal. Based on the facts represented in the *Dugan* opinion, Kevin Dugan was possibly a wife beating, drug dealing, drug using, arms dealer. As the old saying goes: "Bad facts make bad law."

Indeed, §§ 922(d)(3) or (g)(3) don't merely affect the rights of the Kevin Dugans of this

---

[19] *Dugan* cites to only two cases in support of its proposition that 922(d)(3) is constitutional, *U.S v. Seay*, 620 F.3d 919 (8th Cir 2010), and *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).

-22-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

world; these laws, as interpreted by the ATF, threaten the fundamental constitutional rights of nearly half of the U.S. population.[20] Even though §§ 922(d)(3) or (g)(3) are intended to keep guns out of the hands of a small subset of the population, the ATF has radically over-reached the limits of this goal and sought to unilaterally categorize enormous swaths of the population as criminals, without the need for any judge, any jury or any due process.

The *Dugan* opinion does <u>not</u> so much as reference the ATF, let alone address the expansive manner with which this agency has sought to enforce §§ 922(d)(3) or (g)(3). In fact, the *Dugan* opinion pre-dates the Open Letter, so it naturally fails to address the constitutionality of that letter. The *Dugan* opinion does not even address the constitutionality § 922(d)(3), but rather only addresses § 922(g)(3). Meanwhile, it is actually under § 922(d)(3) that the ATF seeks to deprive individuals of their Second Amendment rights.

For the foregoing reasons, the *Dugan* Opinion is a flawed, short-cited opinion that simply does not apply to the current case.

### III. DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS.

The ATF's Blanket prohibition on the sale of firearms to Registry Cardholders violates such cardholders' First Amendment rights to free speech and expression. By automatically labeling the Plaintiff as a criminal (an "unlawful user"), based purely upon her choice to acquire and maintain a State-issued Registry Card, the Defendants have deliberately sought to curtail the Plaintiff's right to free speech. The Plaintiff's procurement and possession of her Registry Card is a form expressive conduct protected under the First Amendment. And yet, the Defendants have endeavored to deter the Plaintiff from exercising those First Amendment Rights. The Defendants have effectively given the Plaintiff a Hobson's Choice between her First and Second Amendment Rights: *you can either exercise your right to free expression, or you can exercise your right to keep and bear arms, but you can't have both*. This is an unacceptable and unconstitutional proposition.

"As a general matter, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v.*

---

[20] *Supra* note 5.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   *Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002).  Nevertheless, in the present case, the ATF

2   sought to do just that.

### A.   The Plaintiff's Procurement and Possession of a Registry Card Constitutes a Form of Speech Protected Under the First Amendment.

It is well settled that the free speech protections of the First Amendment cover more than mere verbal communication. *See, e.g., Jacobs v. Clark Cnty. School Dist.*, 373 F.Supp.2d 1162, 1171 (D. Nev. 2005) ("we have long recognized that [the First Amendment's] protection does not end at the spoken or written word").  If an activity is "sufficiently imbued with elements of communication" it will "fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington,* 418 U.S. 405, 409 (1974). In determining whether conduct falls within the ambit of the First Amendment, the Court should consider "the nature of [the] activity, combined with the factual context and environment in which it was undertaken." *Id.* at 410.

In *Spence v. Washington*, the Supreme Court held that an activity is protected by the First Amendment when "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410-11. Both prongs of the *Spence* test are fact intensive, and both are met in the present case.[21]

Here, the Plaintiff intended to convey a particularized message by possessing a Registry Card and her message was understood by those who viewed it.  The message was: *I am a proponent for the medical use of marijuana*.  The Defendant wrongly tries to portray the Registry Card as a purely utilitarian instrument, merely a reflection of the Plaintiff's medical condition. However, the card is a powerful statement of how the Plaintiff wishes to treat her medical condition.   The Card reflects the Plaintiff's deep seeded belief in the efficacy of medical marijuana, not just for her ailment, but also for a host of ailments.  By undergoing the lengthy application process, the Plaintiff has made an affirmative expression of her belief that cannabis is a viable form of medicine.

The mere fact that the Card has a utilitarian purpose does not foreclose the prospect of the

---

[21] While the Plaintiff asserts that the facts inherent in one's possession of a Registry Card conclusively satisfy the Spence test for speech, the Plaintiff also points out that the fact specific nature

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-24-

Card serving as a form of political speech. On the contrary, the underlying application process and purpose of the Card makes it, in fact, a more potent form of political speech. Obtaining a medical marijuana registry card in the State of Nevada is an exceedingly difficult and lengthy process.[22] Due in large part to the extreme divergent opinions on the efficacy of medical marijuana, the procedure for obtaining a Registry Card requires that the registrant undergo a series of application steps that take many months to complete. The Card is itself a badge of honor that, despite the many close-minded forces intent on taking away her right to possess the card, the Plaintiff endured and successfully navigated this needless bureaucracy.

The Plaintiff's intent to convey a particularized message is irrefutable at this stage of the litigation. Determining the Plaintiff's intent is a subjective inquiry. *See e.g., O.S.C & Assoc. v. Comm'r Of Internal Revenue*, 187 F.3d 1116, 1120 (9th Cir. 1999) (stating "intent is subjective," *citing Elliotts, Inc. v. C.I.R.*, 716 F.2d 1241, 1243 (9th Cir. 1983). The Plaintiff avers that she intended, through her procurement of a Registry Card, and through her informing others that she possessed a Registry Card, to convey a message that marijuana is a valid medical treatment and that the use of medical marijuana for medical purposes should be legal.

Meanwhile, the use of marijuana for medical purposes is, and has been, at all times relevant hereto, a hotly debated political issue with tensions between the states and federal government growing stronger. In such circumstances, anyone who viewed Plaintiff's Registry Card or became aware that Plaintiff possessed the Registry Card, would understand the Plaintiff's intent to message her support for medical marijuana. Thus, Plaintiff's obtainment and possession of the Registry Card is a form of expressive activity protected by the First Amendment.

Moreover, even if Plaintiff's conduct could somehow be labeled as non-expressive activity, she still holds a valid First Amendment claim. "[W]here a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive conduct, the statute may be subject to First Amendment scrutiny." *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996), *quoting Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986)

---

[22] FAC at Ex. 1, ¶¶ 21-24.

-25-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

(internal quotations omitted).  The Open Letter deliberately singles out all Registry Cardholders, a subset of the population that necessarily includes the most zealous and outspoken of medical marijuana advocates, those persons that the law most directly affects: medical marijuana patients. As such, the Open Letter inevitably singles out the medical marijuana lobby and seeks to suppress their outspoken criticism of the government by curtailing their Second Amendment Rights.

### A. The Constitutionality of the ATF's Enforcement Actions, as Applied to the First Amendment, Should be Examined Under a Strict Scrutiny Standard.

Because the Plaintiff's activities in obtaining, possessing and informing others that she possess a Registry Card are protected by the First Amendment, any direct restraint on such activities must meet strict scrutiny. *Texas v. Johnson*, 491 U.S. 397, 406 (1989). "The purpose of the First Amendment is to protect private expression." *United States v. American Library Assn., Inc.*, 539 U.S. 194, 211 (2003), *quoting Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U. S. 94, 139 (1973). Strict scrutiny applies to regulations that are "related to the suppression of free expression." *Johnson*, 491 U.S. at 406.

While the Defendants have argued for the less stringent standard set forth in *United States v. O'Brien*, insisting that the Open Letter was not intended to inhibit speech, the Plaintiff contends that the Open Letter was indeed directly aimed at hindering speech.  It is the Plaintiff's assertion that the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to suppress the growing medical marijuana movement.  It is no coincidence that the Open Letter was issued by a bureau of the same agency that was, at the same time, in the process of coordinating a massive crackdown on medical marijuana growers and dispensaries in multiple states.  It is no coincidence that the Open Letter was issued within days of an IRS' ruling that prohibited marijuana growers and dispensaries from writing off business expenses. It is no coincidence that the Open Letter was issued just a few weeks before the four US Attorneys of California dispatched a series of letters to California dispensaries, giving them 45 days to shut down or face criminal prosecution.  The Open Letter was part of a coordinated effort to intimidate and suppress a political movement.

Given that the Open Letter was squarely aimed at curtailing individuals' freedom of

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-26-

speech and expression, a judicial review of the Letter's constitutionality is subject to a strict scrutiny analysis.

### B. The ATF's Enforcement Actions, as Set Forth in the Open Letter, Fail to Meet Strict Scrutiny Standards.

In order for a law to survive judicial review under a strict scrutiny analysis, the law must be (1) justified by a compelling governmental interest; (2) narrowly tailored to achieve that goal or interest; and (3) the least restrictive means of achieving that interest. *R.A.V. v. City of St Paul, Minnesota*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Here, the Open Letter fails on all three of the foregoing points. First, the letter was NOT issued to serve any compelling government interest, but rather was issued for the purpose of intimidating and suppressing a growing political movement. Second, even if this Court were to believe the Defendants' asserted purpose for the Open Letter, the Letter was not narrowly tailored to effectuate that purpose. Automatically classifying all Registry Cardholders as criminals effectively deprives an enormous cross section of the public of their Second Amendment rights without any real policy justification. Finally, there are a myriad of less restrictive methods of curtailing gun violence and preventing presumptively dangerous people from possessing firearms.

There is no constitutional justification for the Open Letter. The ATF's issuance of the Letter was an abusive of its authority, designed to chill the advocacy efforts of medical marijuana activists.

### C. Even Examined Under the Less Restrictive O'Brien Test, the ATF's Universal Ban on the Sale of Firearms to Registry Cardholders Amounts to an Unconstitutional Restriction on Free Speech.

Even if this Court were to employ the *O'Brien* test, as argued for by the Defendants, the ATF's pronouncement that all Registry Cardholders are *per se* criminals, as set forth in the Open Letter, is still a clear violation of First Amendment rights. *O'Brien* requires that the regulation (1) be "within the constitutional power of the Government," (2) "further an important or substantial government interest," (3) "the government interest is unrelated to the suppression of free expression," and (4) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 367

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-27-

(1968)

In the present case, the ATF's interpretation of §§ 922(d)(3) and (g)(3), as set forth in the Open Letter, does not merely place an incidental restriction on First Amendment freedoms. On the contrary, the Open Letter completely precludes Registry Cardholder's from exercising their right to free speech, unless they are willing to relinquish their right to bear arms. As mentioned earlier, this is an unconstitutional Hobson's Choice, where the Registry Cardholders are forced to decide between Constitutional rights. The ATF's Open Letter was directly related to suppressing a political movement. It did not further any important or substantial government interest. It was merely an attack on the civil liberties of the medical marijuana lobby.

Meanwhile, The restriction placed on First Amendment freedoms was far greater than what was essential to the furtherance of Defendants' alleged purpose of keeping guns out of the hands of potentially dangerous people. While there is very little, if any, meaningful evidence to suggest that marijuana users are more violent than the rest of the community, there is most definitely no evidence to connect Registry Cardholders with gun violence. Examining the final prong of *O'Brien* test, it is plain to see that the ATF's interpretation of §§ 922(d)(3) and (g)(3) posed a far greater threat upon the First Amendment freedoms of Registry Cardholders than it furthered any gun control efforts.

Accordingly, even under the *O'Brien* test, which is less stringent than the strict scrutiny analysis required in this case, the Defendants' universal ban on the sale of firearms to Registry Cardholders is unconstitutional.

## IV.   DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE DUE PROCESS.

Plaintiff has asserted a substantive due process claim and such claim does not merge with Plaintiff's claims under the First and Second Amendments as argued by Defendants. In her Complaint, Plaintiff alleged one cause of action for violation of her 5th Amendment Due Process rights, which contained both a procedural and substantive aspect. As explained in Plaintiff's Response and Cross-Motion (Dkt. No. 17), Plaintiff possesses a liberty right in the ability to choose a course of medical treatment. In the FAC, Plaintiff split her Due Process claim into separate causes of action for the violations of procedural due process and the violations of

-28-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

substantive due process. In the FAC, Plaintiff sets forth under her substantive due process claim that Defendants have deprived her of her First and Second Amendment rights. However, such provisions in the FAC do not waive Plaintiff's previous assertion that she possess a liberty right in the ability to choose a course of medical treatment nor do they merge Plaintiff's substantive due process claim with her First and Second Amendment claims as Defendants allege.[23]

The Fifth Amendment of the United States Constitution provides, in relevant part that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. The right to substantive due process concerns the right to liberty under the Fifth and Fourteenth Amendments. Essentially, the question of substantive due process asks whether a person is free to engage in certain conduct in the exercise of their liberty under the Due Process Clause. *See Lawrence v. Texas*, 539 U.S. 558, 564 (2003). The broad substantive reach of liberty under the Due Process Clause has been noted in a number of U.S. Supreme Court Cases. *Id.*; *see also Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923); and *Griswold v. Connecticut*, 381 U.S. 479 (1965). "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Albright v. Oliver*, 510 U.S. 266, 287 (1994) (concurring opinion), *quoting Poe v. Ullman*, 367 U.S. 497, 543 (1961) (internal quotations omitted). The U.S. Supreme Court has found that:

> "[Matters] involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."

*Lawrence*, 539 U.S. at 574, *quoting Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). "[T]he ultimate question is whether sufficient justification exists for the intrusion by the government into the realm of a person's 'liberty, dignity, and freedom.'" *Compassion in*

---

[23] While Plaintiff maintains her claim that substantive due process protects her right to choose a course of medical treatment without interference from the Government, in the interests of brevity, this Response will not go into a detailed discussion of that right because it is not addressed in Defendants' Motion. However, Plaintiff maintains the right as it is set forth in her Response and Cross-Motion, Dkt. No. 17.

-29-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

*Dying v. State of Washington*, 79 F.3d 790, 799 (9ᵗʰ Cir. 1996), *quoting Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 287, 289, 110 S.Ct. 2841, 2856, 2857 (1990) (O'Connor, J., concurring).

The argument that Plaintiff's substantive due process claim fails because Plaintiff has alleged a deprivation of her First and Second Amendment rights is without merit. A plaintiff may allege both violations of the substantive due process clause and violations of another Constitutional Amendment without losing her substantive due process claim. While the Supreme Court has held that claims against law enforcement officers for use of excessive force must be brought under the Fourth Amendment rather than the substantive due process provision of the Fifth Amendment "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct," it does not follow that no substantive due process claim can ever been had where there is a corresponding violation of another Constitutional Amendment. Here, Plaintiff has alleged a substantive due process claim as a result of Defendants' actions and such claim is not foreclosed by the fact that Plaintiff also alleges violations of her First and Second Amendment rights.

## V. DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS.

The United States Constitution requires that whenever a governmental body acts to injure an individual, that act must be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved. "In all cases, that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts." *Ex Parte Wall*, 107 U.S. 265, 289 (1883).[24]  With respect to action taken by

---

[24] Justice Frankfurter's concurring opinion in *Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123, 163 (1951), further elaborated upon this understanding as follows:

> "The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished - these are some of the considerations that must enter into the judicial judgment."

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-30-

administrative agencies, the Supreme Court has held that notice must be given and a hearing must be held before a final order becomes effective. *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152, 153 (1941). "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). When the Constitution requires a hearing, the hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Generally, these provisions require that the hearing be held before a tribunal which meets currently prevailing standards of impartiality and a party must be given an opportunity not only to present evidence, but also to know the claims of the opposing party and to meet them. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950); *see also Goldberg*, 397 U.S. at 267-268. Furthermore, those who are brought into contest with the government in a quasi-judicial proceeding aimed at control of their activities are entitled to be fairly advised of what the government proposes and to be heard upon the proposal before the final command is issued. *Margan v. United States*, 304 U.S. 1, 18-19 (1938).

Here, the Defendants have deprived the Plaintiff of a fundamental right without any notice or opportunity to be heard. The Defendants have adopted and are enforcing a policy, through their Open Letter, whereby a distinct group of individuals are automatically precluded from exercising their fundamental rights under the U.S. Constitution based solely upon an FFLs reasonable belief that these persons are exercising their State granted rights. The Defendants have conclusively and irrefutably determined that the mere fact that an FFL is aware a "potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then [the FFL has] 'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and must deny the transfer of firearms or ammunition to that person.

However, such a determination that holders of a Registry Card are automatically prohibited from obtaining a firearm deprives the Plaintiff of her Second Amendment rights without any due process. Prior to the issuance of the Open Letter, Plaintiff was not given any opportunity to comment on the policy set forth in the Open Letter. Additionally, Defendants have not even provided a post-termination procedure whereby persons who hold Registry Cards can argue that they are not "unlawful users of or addicted to" a controlled substance. While the exact

-31-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

number of medical marijuana users is uncertain, it is estimated that roughly 600,000 persons in the U.S. are using medical marijuana in the nine states where registration is mandatory. By virtue of their issuance and enforcement of the policy set forth in the Open Letter, the Defendants have willfully deprived a large class of U.S. citizens, including the Plaintiff, of their fundamental rights in direct violation of the procedural requirements of the Due Process Clause. Defendants cannot be allowed, simply on their conclusory opinion that Registry Cardholders are always drug users, to avoid the procedural due process requirements of the Fifth Amendment.

## VI. DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the law." This provision of the Fourteenth Amendment has been held by the United States Supreme Court to apply to the federal government by virtue of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693 (1954). The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.")

Here, Defendants have violated Plaintiff's equal protection rights by treating Plaintiff differently from persons to whom she is similarly situated. The FAC alleges that Plaintiff is being treated differently than similarly situated individuals, which must be accepted as true for purposes of Defendants' Motion. Additionally, the determination of whether Plaintiff is being treated differently than similarly situated persons is inherently an issue of fact. Because there is a genuine dispute as to the material fact of whether Plaintiff is being treated differently than similarly situated persons, Defendants cannot be granted to Defendants on Plaintiff's Equal Protection claim.

In the FAC, Plaintiff specifically alleges that she is being treated differently from persons who are prescribed medical marijuana in states where obtainment of a Registry Card is not

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-32-

required because Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana based solely on her obtainment of a Registry Card as required by her state; Defendants have not issued any directive to FFLs that a person who gains access to medical marijuana in a state where a Registry Card is not required is an "unlawful user" of marijuana. In their Motion, Defendants completely misrepresent the allegations set forth in Plaintiff's FAC and incorrectly assert that Plaintiff's Equal Protection Claim rests on a supposed argument that "because some states allow medical marijuana use without issuing registry identification cards, those medical marijuana users will be able to buy firearms more easily than people who live in states that require medical marijuana registry cards." Motion to Dismiss at p. 40, lines24-26. However, this argument does not appear anywhere in the FAC.

   As additional grounds for her Equal Protection claim, Plaintiff's FAC also alleges that Plaintiff is being treated differently from persons with similar medical conditions. Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana simply because she has followed state laws for the obtainment of treatment for her medical condition; the Defendants have not issued directives to FFLs deeming any person who pursues any method of treatment other than medical marijuana an "unlawful user" of a controlled substance. Defendants, without any basis, allege that it is "entirely reasonable for the government to infer that those individuals who have affirmatively registered to use marijuana on the basis of chronic medical conditions are, in fact, marijuana users."[25] Motion to Dismiss at p. 41. Such conclusion is not "entirely reasonable" and completely ignores the reality that many people may register for a card and then not use or possess marijuana.[26]

   The Defendants' policy set forth in the Open Letter thus discriminates against persons

---

[25] Defendants' assertion that those who "have affirmatively registered to use marijuana . . . are, in fact, marijuana users" actually raises an important question about when a person pursuing the right to use medical marijuana may be deemed an "unlawful user." The Open Letter directs FFLs to deny firearm purchases based on a person's possession of a Registry Card but Defendants assert that a person may be deemed an "unlawful user" from the time they "affirmatively register." In Nevada, and many other states, there are typically many months between the time that a person registers and the time they receive their registration card. In the present case, it took seven (7) months from the time Plaintiff submitted her paperwork until she received her Registry Card. Would Defendants label her an "unlawful user" during those seven months?

[26] For example, many persons obtain Registry Cards prior to their condition becoming so debilitating that the person can no longer deal with the pain without the use of marijuana. The difficulty and length of time required to obtain a Registry Card in Nevada and other states actually encourages that persons prescribed medical marijuana take action to obtain their Registry Card as soon as possible, even if they may not use or possess marijuana in the near future.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

who live in a state that requires a registry identification card because any knowledge of the person's possession of that card can be used as conclusive and irrefutable evidence to deny their attempt to purchase firearms and/or ammunition. Meanwhile, persons entitled to use medical marijuana in a state that does not issue registry identification cards will avoid the policies set forth in the Open Letter simply because their state does not issue registry identification cards. As such, the policies adopted and promulgated by the Defendants, as set forth in the Open Letter, violate the Plaintiff's right to equal protection.

## VII. PLAINTIFF DOES NOT SEEK MONETARY DAMAGES AGAINST THE UNITED STATES, OTHER THAN COSTS AND FEES ALLOWED, BUT INSTEAD SEEKS DECLARATORY AND INJUNCTIVE RELEIF.

Plaintiff does not dispute that 5 U.S.C § 702 does not provide for monetary damages against the United States, the ATF or the individual Defendants in their official capacities. The primary purpose of this case is, and has always been, to obtain declaratory and injunctive relief against the Defendants. Plaintiff has already asserted that she is not seeking monetary relief in this action other than various fees and costs associated with pursuing this case as provided for in 28 U.S.C. § 2412 and similar statutes. The Prayer for Relief contained in Plaintiff's FAC requesting "compensatory and punitive damages" should not be read as requesting a monetary award against Defendants other than a monetary award of costs and fees to which Plaintiff is entitled by statute. 5 U.S.C. § 702 provides that in "[a]n action in a court of the United States seeking relief other than monetary damages . . . [t]he United States may be named as a defendant." Here, the Plaintiff seeks both declaratory and injunctive relief, which is, relief other than monetary damages. Thus, the United States is a proper defendant in this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**CONCLUSION**

Based upon the authorities set forth herein, Defendants are neither entitled to dismissal under F.R.C.P. 12(b)(1) and F.R.C.P. 12(b)(6), nor are they entitled to summary judgment on the causes of action set forth in Plaintiff's First Amended Complaint. Plaintiff therefore respectfully requests that Defendants' Motion be DENIED.

Dated this 25th day of February 2013.

Respectfully Submitted by:

RAINEY DEVINE, ATTORNEYS AT LAW

By:     /s/ Chaz Rainey
        Charles C. Rainey, Esq.
        Nevada Bar No. 10723
        Jennifer J. Hurley, Esq.
        Nevada Bar No. 11817
        8915 S. Pecos Road, Ste. 20A
        Henderson, Nevada 89074
        Telephone: +1.702.425.5100
        Facsimile: +1.888.867.5734
        *Attorney for Plaintiff*

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-35-

1  **PROOF OF SERVICE**

2      I, Jennifer J. Hurley, an employee of The Law Firm of Rainey Devine, certify that the

3  following individuals were served with PLAINTIFF'S RESPONSE TO THE UNITED

4  STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY

5  JUDGMENT, on this date by the below identified method of service:

6      **Electronic Case Filing**

7      TONY WEST
        DANIEL G. BOGDEN
8      SANDRA SCHRAIBMAN
        ALICIA N. ELLINGTON
9      JOHN K. THEIS
        Trial Attorneys, Federal Programs Branch
10     United States Department of Justice, Civil Division
        20 Massachusetts Ave, N.W. Rm 7226
11     Washington, DC 20530

12     Zachary Richter
        Trial Attorney, Constitutional Torts Staff
13     United States Department of Justice, Civil Division
        P.O. Box 7146, Ben Franklin Station
14     Washington, DC 20044

15

16  DATED this 25th day of February 2012.

17

18              /s/ Jennifer J. Hurley
                An employee of The Law Firm of Rainey Devine.

19

20

21

22

23

24

25

26

27

28

-36-

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| S. ROWAN WILSON, an individual,       ) | |
|                  ) | |
|         Plaintiff,      ) | |
|                  ) | |
|     vs.              ) | |
|                  ) | |
| ERIC HOLDER, individually and as Attorney ) | Case No.: 2:11-cv-01679-GMN-PAL |
| General of the United States; THE U.S.    ) | |
| BUREAU OF ALCOHOL, TOBACCO,     ) | **ORDER** |
| FIREARMS, AND EXPLOSIVES; B. TODD  ) | |
| JONES, individually and as Acting Director of ) | |
| the U.S. Bureau of Alcohol, Tobacco,     ) | |
| Firearms, and Explosives; ARTHUR      ) | |
| HERBERT, individually and as Assistant   ) | |
| Director of the U.S. Bureau of Alcohol,   ) | |
| Tobacco, Firearms, and Explosives; and THE ) | |
| UNITED STATES OF AMERICA,      ) | |
|                  ) | |
|         Defendants.    ) | |
|                  ) | |

Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 37) filed by the United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"), U.S. Attorney General Eric Holder, Acting BATFE Director B. Todd Jones, and Assistant BATFE Director Arthur Herbert's (collectively, "Defendants"). Plaintiff S. Rowan Wilson ("Plaintiff") filed a Response (ECF No. 41) and Defendants filed a Reply (ECF No. 47).

**I.    <u>BACKGROUND</u>**

This case arises from an asserted conflict between the right secured by the Second Amendment, certain provisions of the federal Gun Control Act that prohibit the users of controlled substances from procuring firearms, and the recent wave of state legislation legalizing the medical use of marijuana.  In 2001, the Nevada legislature enacted legislation

Page 1 of 27

exempting the medical use of marijuana from state criminal prosecution in certain limited circumstances. *See* Nev. Rev. Stat. § 453A.  Specifically, the legislation permits individuals who obtain a state-issued registry identification card ("state marijuana registry card") to use marijuana for medicinal purposes. Nev. Rev. Stat. § 453A.200(1)(f).

However, under the Controlled Substances Act, marijuana is listed as a controlled substance that cannot be lawfully prescribed and that the general public may not lawfully possess. 21 U.S.C. § 802(6); 21 U.S.C. § 812(c), Sched. I(c)(10).  There is no provision under Federal law that permits any class of the general public to lawfully possess marijuana, including those wishing to use marijuana for medical purposes. *See* 21 U.S.C. § 823(f) (providing an exception to the ban on possession of Schedule I drugs for federally approved research projects); *see also Gonzales v*. *Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the . . . possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration pre-approved research study.").  In contrast, the Controlled Substances Act expressly recognizes that "there is a lack of accepted safety for use of [marijuana] under medical supervision." 21 U.S.C. § 812(b)(1)(A)–(C).  *See* 21 U.S.C. § 829; *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001) ("Whereas some other drugs can be dispensed and prescribed for medical use, . . . the same is not true for marijuana.").

Furthermore, the Federal Gun Control Act of 1968 ("Gun Control Act") prohibits "any person . . . who is an unlawful user of or addicted to any controlled substance . . . [to] possess . . . any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(3).  Additionally, § 922(d)(3) prohibits any person from selling or otherwise disposing of "any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance . . . ." 18 U.S.C. § 922(d)(3).

In September 2011, because of the growing number of states that permit the medicinal use of marijuana, the ATF issued an "Open Letter." Bureau of Alcohol, Tobacco, Firearms and Explosives, Open Letter, *Open Letter to All Federal Firearms Licensees – The use of marijuana for medical purpose and its applicability to Federal firearms laws* (Sept. 26, 2011), *available at* http://www.atf.gov/press/releases/2011/09/ 092611-atf-open-letter-to-all-ffls-marijuana-for-medicinal-purposes.pdf [hereinafter *"ATF Open Letter"*].  Notably, this letter informed all individuals licensed to sell firearms ("Federal Firearms Licensees" or "FFLs") that "if [the seller is] aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance." *Id*.  Thus, the letter advised FFLs and provided them notice that the agency which issues their license (the BATFE) interpreted § 922 as not only criminalizing the *possession* of a firearm by a registry card holder, but also the *sale* of a firearm to a registry card holder.

In the fall of 2010, due to her struggle with severe dysmenorrhea, Plaintiff applied for and obtained a state marijuana registry card. (First Am. Compl. ("FAC") ¶¶ 35–36, ECF No. 34.)  Plaintiff subsequently applied to purchase a firearm at a gun store in Mound House, Nevada. (*Id*. ¶¶ 17–24.)  However, the store's proprietor prevented her from completing her application he knew she carried a state marijuana registry card. (*Id*. ¶ 22.)

As a result, Plaintiff filed this lawsuit in October 2011. (Compl., ECF No. 1.)  In her suit, Plaintiff challenges the constitutionality of the two provisions of the Gun Control Act that effectively criminalize the sale and possession of a firearm by the holder of a registry card: 18 U.S.C. §§ 922(d)(3) and (g)(3). (FAC ¶¶ 51–56.)  Plaintiff also challenges the constitutionality of one of the accompanying regulations, 27 C.F.R. § 478.11, that defines the term "unlawful user of or addicted to any controlled substance" as used in §§ 922(d)(3) and (g)(3). (*Id*.)  Finally, Plaintiff challenges the ATF policy that federal firearms licensees may not sell a

firearm to persons they know are "in possession of a card authorizing the possession and use of marijuana under State law . . .." *ATF Open Letter*.  Plaintiff claims that these provisions, along with the ATF policy, violate her Second Amendment right to "keep and bear Arms"; her First Amendment right to free speech; as well as her rights to substantive due process, procedural due process and equal protection as secured by the Fifth Amendment.

In response to Plaintiff's initiating this action, Defendant filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 10.)  Thereafter, on November 11, 2012, the Court held a hearing at which the Court ordered supplemental briefing on several issues. (Minutes of Proceedings, ECF No. 30.)  Prior to the deadline for filing the supplemental briefing, the parties filed a Joint Motion to Amend/Correct Complaint. (ECF No. 31; *see* First Am. Compl. ("FAC"), ECF No. 34.)  After the Court granted this Motion, the Court denied Defendants' previously filed Motion to Dismiss as moot. (ECF No. 32.)  In response to Plaintiff's First Amended Complaint, (ECF No. 34), Defendants filed the instant Motion to Dismiss (ECF No. 37), which, for the reasons discussed below, the Court grants.

## II.  **JURISDICTION**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Therefore, before a federal court may consider the merits of a case, it must first determine whether it has proper subject matter jurisdiction. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653–54 (9th Cir. 2002); *see also Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

For the reasons discussed below, the Court concludes that Plaintiff has, at this stage of the litigation, adequately established that she has standing to assert these causes of action.  In

addition, the Court determines that this case is not rendered moot by the absence of a currently

valid medical marijuana registry card from the record.  Accordingly, the Court does not lack

jurisdiction to consider the merits of this case.

### A.    Standing

Article III of the United States Constitution limits the power of the judiciary to hear only

"cases" and "controversies." U.S. Const. art. III, § 2; *see also Lujan v. Defenders of Wildlife*,

504 U.S. 555, 559–60 (1992).  Standing is a core component of the Article III case or

controversy requirement and focuses on whether the action was *initiated by* the proper plaintiff.

*See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) (quoting *Friends of Earth,*

*Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[T]he party invoking

federal jurisdiction [must] have standing—the 'personal interest that must exist at the

commencement of the litigation.'"); *see also Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir.

2007) ("Standing ensures that, no matter the academic merits of the claim, the suit has been

brought by a proper party.").  The "irreducible constitutional minimum of standing" requires

that a plaintiff demonstrate three elements. *Lujan*, 504 U.S. at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally
> protected interest which is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical.  Second, there must be a causal
> connection between the injury and the conduct complained of—the injury has to
> be fairly traceable to the challenged action of the defendant, and not the result of
> the independent action of some third party not before the court.  Third, it must be
> likely, as opposed to merely speculative, that the injury will be redressed by a
> favorable decision.

*Id.* at 560–61 (internal quotation marks and citations omitted).

### 1.    *Injury in Fact*

Defendants' argument that Plaintiff has failed to establish an injury in fact rests solely

on the fact that Plaintiff's state marijuana registry card expired during litigation and the absence

of a new non-expired registry card from the record. (Mot. to Dismiss 12:3–16, ECF No. 37.)

Page 5 of 27

*305*

However, the standing inquiry relies upon the facts as they existed when Plaintiff initiated this action.[1] *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (noting that the limits on federal judicial power in Article III require "that the party invoking federal jurisdiction have standing—the personal interest that must exist *at the commencement* of the litigation." (emphasis added) (internal quotation marks omitted)).

In this case, at the time that Plaintiff initiated this action, she held a valid state marijuana registry card. (FAC ¶ 41, ECF No. 34; FAC Ex. 1-B, ECF No. 34-1.)  It is precisely because she held this card that the owner of the firearms store informed Plaintiff that "he could not sell her a firearm without jeopardizing his federal firearms license." (FAC ¶¶ 22–23.)  As a result, Plaintiff claims that she was deprived of several of her constitutional rights. (FAC ¶¶ 50–97.) Therefore, Plaintiff has adequately alleged "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61.

## 2.   *Causal Connection*

The causation element of standing requires that "the injury . . . be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61.  Defendants argue that Plaintiff cannot satisfy the causation requirement of standing because her injury is "self-inflicted." (Mot. to Dismiss 13:3–4.)  The Court disagrees.

True enough, injuries that are truly "self-inflicted" cannot serve as the basis for standing because they are not fairly traceable to any action other than action by the plaintiff. *See, e.g.*, *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (concluding that States that extended tax

---

[1] Defendants' "standing" argument is more appropriately characterized as a mootness argument, which the Court addresses in Section II.B, below. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (observing that the "central question" in a mootness analysis is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief" (quotation marks omitted)).

Page 6 of 27

credits to their residents for income taxes paid in other states were suffering from self-inflicted injuries, "resulting from decisions by their respective state legislatures"). In this case, Defendants assert that their Open Letter advising FFLs to restrict the class of citizens with medical marijuana cards from purchasing firearms is an injury that these citizens are inflicting upon themselves. (Mot. to Dismiss 13:1–24.) Plaintiff alleges that her injury is her inability to purchase a firearm. (FAC ¶ 42, ECF No. 34.) Plaintiff further alleges that this injury resulted solely from the gun store owner's reliance on the BATFE's "open letter . . . [that] instructed firearms licensees to deny the sale of firearms or ammunition to any person whom the licensee is aware possesses a card authorizing such person to possess and use marijuana under state law." (*Id*. ¶¶ 42–43.)

Thus, it appears to the Court that the causal connection between Defendants' actions and Plaintiff's alleged injury remains intact and Defendant has failed to provide the Court with any controlling or adequately persuasive legal authority to support a conclusion that the injury is self-inflicted or an independent action of some third party not before the court. *See, e.g*., *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding a self-inflicted injury when the injury resulted from the plaintiff state's legislature's decision to provide a tax refund for income taxes paid by residents to a different state); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (concluding the injury was self-inflicted when the association could have resolved an alleged conflict between a statute and a regulation by inquiring about the conflict with the agency responsible for administering the regulation); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Center Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.").

### 3.   *Redressability*

Defendant finally argues that Plaintiff's claims would not be redressable by a declaration on the constitutionality of the challenged statutes, regulations and policies because an unchallenged statute, 18 U.S.C.  922(b)(2), would still act to prevent FFLs from selling a firearm to Plaintiff. (Mot. to Dismiss 13:25–14:10, ECF No. 37.)  Specifically, § 922(b)(2) prohibits a FFL from selling a firearm "to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law . . .." 18 U.S.C. § 922(b)(2).

There is a similar state law, § 202.360(1)(c) of the Nevada Revised Statute, which prohibits an individual from possessing a firearm if that individual "[i]s an unlawful user of, or addicted to, any controlled substance." Nev. Rev. Stat. § 202.360(1)(c).  Furthermore, § 202.360 incorporates its definition of "controlled substance" from the federal Controlled Substances Act, which, as discussed above, includes marijuana. Nev. Rev. Stat. § 202.360(3)(a) ("'Controlled substance' has the meaning ascribed to it in 21 U.S.C. § 802(6)."). *See generally* 21 U.S.C. § 802(6) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V . . .."); 21 U.S.C. § 812(b)(1) (defining a Schedule I controlled substance as a "drug or substance [with] a high potential for abuse"; "a drug or substance [that] has no currently accepted medical use in treatment in the United States"; and a drug or substance for which "[t]here is a lack of accepted safety for use . . . under medical supervision"); 21 U.S.C. § 812(b)(1)(Sched. I)(c)(10) (listing "marihuana" as a Schedule I controlled substance).

However, Defendants have failed to provide any Nevada state law or regulation whereby state marijuana registry cardholders have been similarly interpreted to be prohibited from purchasing firearms under state law solely based on the buyer's possession of a registry card. Furthermore, these state statutes fail to address the heart of the issue in this case: whether the

1   BATFE's policy interpreting the possession of a state marijuana registry card as providing an

2   FFL with "reasonable cause to believe" that the holder of the card is a user of a controlled

3   substance, thus prohibiting any sale of firearms or ammunition to Plaintiff, is a violation of her

4   constitutional rights. (*See* FAC ¶¶ 43–44, ECF No. 34; FAC Ex. 2-B, ECF No. 34-2.)

5   Therefore, Defendants argument fails and the Court finds that the relief that Plaintiff seeks in

6   this action would likely remedy her alleged injury.

7       **B.**    **Mootness**

8       Although Defendants presented their jurisdiction-based argument as relating to standing,

9   the Court finds this argument is more properly characterized as one directed to the doctrine of

10  mootness.  The Supreme Court often defines mootness as "the doctrine of standing set in a time

11  frame: The requisite personal interest that must exist at the commencement of the litigation

12  (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v.*

13  *Geraghty*, 445 U.S. 388, 397 (1980) (quotation marks omitted).  When faced with the question

14  of whether a case has been rendered moot, the "central question" is "whether changes in the

15  circumstances that prevailed at the beginning of the litigation have forestalled any occasion for

16  meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007).

17      At first glance, the issues that Plaintiff raises would appear moot because the record

18  lacks a currently valid registry card.  Specifically, the state marijuana registry card that Plaintiff

19  attached to the FAC expired on March 10, 2012. (FAC Ex. 1-B, ECF No. 34-1.)  In an effort to

20  cure this defect, Plaintiff attached a renewed registry card to her Response to Defendants'

21  Motion to Dismiss, however, due to the duration of litigation in this case, that registry card has

22  now also expired as well; it expired on March 10, 2013. (Resp. Ex. A, ECF No. 41-1.)  Plaintiff

23  has failed to further supplement the record with an additional registry card and, thus, there is no

24  valid registry card currently on the record.  Accordingly, this defect would appear to render this

25  case technically moot.

Page 9 of 27

*309*

However, the Supreme Court has established an exception to the general principles of mootness for cases that implicate wrongs that are "capable of repetition yet evad[e] review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–15 (1911); *Weinstein v. Bradford*, 423 U.S. 148–49 (1975). This exception applies when two elements are satisfied: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149.

As discussed below, the Court finds that Plaintiff has established each of the two elements of the "capable of repetition yet evading review" exception.

> ### 1.    *Duration*

To determine whether an issue "evades review," the Ninth Circuit has instructed courts to consider whether "the underlying action is almost certain to run its course before [the federal courts] can give the case full consideration." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999). The Supreme Court has previously held that eighteen months was insufficient time to accommodate complete judicial review. *See First Nat'l Bank v. Belloti*, 435 U.S. 765, 774 (1978). Similarly, the Ninth Circuit has held that the issuance of a two-year permit is sufficiently short in duration to evade review. *Alaska Ctr. For Env't*, 189 F.3d at 855.

Nevada law provides for the issuance of registry cards that expire one year after the issuance. *See* Nev. Rev. Stat. § 453A.230 (providing that a registry card "shall be deemed expired" if the holder fails to, among other things, submit annual updates from the holder's attending physician). Because the duration of the validity of the registry card is too short to allow full litigation before the registry card expires, the Court concludes that the duration element of the exception is satisfied.

### 2.    *Repetition*

"The second prong of the repetition/evasion exception requires some indication that the challenged conduct will be repeated." *Alaska Ctr. For Env't v. U.S. Forest Serv*., 189 F.3d 851, 856 (9th Cir. 1999).  More recently, the Ninth Circuit has articulated that the prong requires a "reasonable expectation that the same party will confront the same controversy again." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks omitted).

In the present case, Plaintiff's FAC alleges sufficient facts from which the Court can conclude that Plaintiff will confront this issue again in the future.  Specifically, the FAC alleges that Plaintiff has exhibited a sincere interest in "the use of cannabis for medical purposes" for at least three years. (FAC ¶¶ 27–28, ECF No. 34.)  The FAC further alleges that Plaintiff first applied for a registry card for treatment of her dysmenorrhea, a condition with which she has struggled since she was ten years of age. (*Id*. ¶ 35.)  Plaintiff has battled this condition for more than three decades. (*See* FAC Ex. 1-B.)  Finally, neither party has provided any indication that Plaintiff's dysmenorrhea has subsided to the point that she no longer qualifies for a state marijuana registry card.

Because Plaintiff's FAC alleges sufficient facts to satisfy both prongs, the Court concludes that this case meets the "capable of repetition yet evading review" exception to the mootness doctrine.  Therefore, the Court finds that the issues presented by this action are not mooted by the expiration of Plaintiff's state marijuana registry card or the absence of a currently valid state marijuana registry card from the record.  The fact that Plaintiff possessed a valid card at the time of the alleged injury and renewed the card for at least one more year is sufficient.  Accordingly, the Court may properly assert subject matter jurisdiction over this action.

1  **III.   MOTION TO DISMISS**

2  **A.   Legal Standard**

3  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim,

4  dismissal is appropriate only when the complaint does not give the defendant fair notice of a

5  legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550

6  U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the

7  Court will take all material allegations as true and construe them in the light most favorable to

8  the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

9  The Court, however, is not required to accept as true allegations that are merely

10  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

11  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

12  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a

13  violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

14  *Twombly*, 550 U.S. at 555) (emphasis added).

15  If the court grants a motion to dismiss, it must then decide whether to grant leave to

16  amend.  The court should "freely give" leave to amend when there is no "undue delay, bad

17  faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by

18  virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman*

19  *v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear

20  that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow*

21  *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

22  **B.   Second Amendment Claim**

23  The Second Amendment protects "the right of the people to keep and bear Arms" from

24  government infringement. U.S. Const. amend. II.  Moreover, the Supreme Court has held that

25  this right is an individual right. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

Page 12 of 27

However, the Court also held that this individual right is "not unlimited" and that, for example, prohibitions on the possession of firearms by felons and the mentally ill are presumptively lawful. *Id*. at 626–27; *see also id*. at 627 n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.").

In this case, Plaintiff challenges both § 922(d)(3) and § 922(g)(3) under the Second Amendment.  The Court analyzes each section individually.

### 1.    Section 922(g)(3)

Section 922(g)(3) prohibits users of a controlled substance from possessing a firearm. 18 U.S.C. § 922(g)(3).  Plaintiff's FAC states that this law infringes upon her right to keep and bear arms under the Second Amendment. (FAC ¶ 54, ECF No. 34.)  However, Plaintiff's FAC fails as a matter of law because the Ninth Circuit has already upheld the constitutionality of § 922(g)(3). *United States v*. *Dugan*, 657 F.3d 998, 999–1000 (9th Cir. 2011).  In *Dugan*, based on the Supreme Court's acknowledgement that the individual right to possess and carry weapons is not unlimited, the Ninth Circuit observed that "[h]abitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances." *Id*. at 999 (citing *Heller*, 554 U.S. at 592).  The court further noted an important distinction between the subsections of § 922 expressly discussed by the Supreme Court in *Heller* and 922(g)(3):

> [U]nlike people who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse. The restriction in § 922(g)(3) is far less onerous than those affecting felons and the mentally ill.

*Dugan*, 657 F.3d at 999.  Therefore, given this distinction and the danger presented by users of controlled substances, the Ninth Circuit joined the Seventh and Eighth Circuits by broadly holding that "Congress may . . . prohibit illegal drug users from possessing firearms." *Id*. at 999–1000.

Page 13 of 27

*313*

Plaintiff first feebly attempts to discredit *Dugan* by stating that *Dugan* "is a deeply flawed opinion, lacking any meaningful legal analysis . . . ." (Resp. 22:11–13, ECF No. 41.) However, *Dugan* remains controlling authority on this Court.  Furthermore, this Court lacks the authority to overrule a Ninth Circuit decision.

Next, Plaintiff unpersuasively attempts to distinguish her case from the facts in *Dugan*. Specifically, Plaintiff argues that "Mr. Dugan was the very sort of person that § 922(g)(3) was designed for—a dangerous criminal." (Resp. 22:22–24.)  Plaintiff argues that this law is overbroad because it affects "nearly half of the U.S. population." (*Id*. 22:26–23:2.)  However, Plaintiff's argument is "deeply flawed."  Whether nearly half of the U.S. population engages in conduct that is illegal under federal law does not affect the illegality of that conduct. *ATF Open Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine); *see also* 21 U.S.C. § 812(b)(1), Sched. I(c)(10) (listing "marihuana" as a Schedule I illegal controlled substance).

Because *Dugan* resolves Plaintiff's Second Amendment attack of § 922(g)(3), the Court need not undergo an independent constitutional analysis.  Therefore, the Court dismisses Plaintiff's Second Amendment challenge to § 922(g)(3).  In light of *Dugan,* any amendment of this claim would be futile and, thus, Plaintiff's Second Amendment challenge to § 922(g)(3) is dismissed with prejudice.

### 2.    *Section 922(d)(3)*

Section 922(d)(3) prohibits the sale of a firearm to any person whom the seller knows or has "reasonable cause to believe . . . is an unlawful user of . . . a controlled substance . . . ." 18 U.S.C. § 922(d)(3).   In addition, the BATFE Open Letter at issue in this case advised that an FFL has "reasonable cause to believe" that a potential buyer is an unlawful user of a controlled substance within the meaning of the Gun Control Act if the FFL is aware that the potential buyer or transferee possesses a registry card. *See ATF Open Letter*.  Thus, under the BATFE's

Page 14 of 27

*314*

interpretation of "reasonable cause to believe," FFLs are prohibited from selling or transferring firearms or ammunition to the holder of a registry card. *ATF Open Letter*; *see also* 18 U.S.C. § 922(d)(3).

In Plaintiff's FAC, she alleges that this law infringes and imposes an impermissible burden on her right to keep and bear arms under the Second Amendment. (FAC ¶¶ 54–55, ECF No. 34.)  The Court recognizes that, in *Dugan*, the Ninth Circuit addressed only the constitutionality of § 922(g)(3). *See Dugan*, 657 F.3d at 999–1000.  However, the reasoning that supports the Court's determination that Plaintiff's FAC fails to state a plausible claim challenging § 922(g)(3) applies equally to Plaintiff's challenge to section (d)(3) of the same statute.  Just as Congress may constitutionally preclude illegal drug users from *possessing* a firearm, Congress likewise may preclude FFLs from *selling* firearms to illegal drug users and thereby prevent such prohibited persons from *acquiring* firearms. *See Dugan*, 657 F.3d at 999-1000.

For these reasons, the Court dismisses Plaintiff's Second Amendment challenge to § 922(d)(3).  Because the Court concludes that amendment of this claim would be futile, Plaintiff's Second Amendment challenge to § 922(d)(3) is dismissed with prejudice.

### 3.    27 C.F.R. 478.11

In addition to challenging the two subsections of § 922, Plaintiff also claims that the BATFE's policies and regulations impermissibly infringe on her Second Amendment right. (FAC ¶¶ 54–55, ECF No. 34.)  Plaintiff identifies 27 C.F.R. § 478.11 and alleges the definition of "unlawful user…" contained therein imposes an impermissible burden on her Second Amendment right.[2]  However, Plaintiff fails to plead any facts establishing that the term

---

[2] 27 C.F.R. § 478.11 expressly defines "[u]nlawful user of or addicted to any controlled substance" as:

    A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful

"unlawful user," as defined in 27 C.F.R. § 478.11, itself, imposes an impermissible burden on

her Second Amendment right. (*See* FAC ¶¶ 54–55.)  Thus, in reality, Plaintiff's FAC appears to

target only the BATFE's Open Letter.  In addition, Plaintiff's Opposition fails to object to

Defendants' assertions that Plaintiff failed to adequately plead a constitutional challenge to

§ 478.11.  Rather, Plaintiff's Opposition merely references alleged contradictions between 27

C.F.R. § 478.11 and the BATFE's Open Letter in her attempt to establish the

unconstitutionality of the policy announced in the Open Letter. (Resp. 11:25–12:28, ECF No.

41.)  For this reason, the Court GRANTS Defendant's Motion to Dismiss as it relates to the

constitutionality of 27 C.F.R. § 478.11.

    Even to the extent that Plaintiff does allege that § 478.11 infringes her Second

Amendment rights, her claim fails because § 478.11 is consistent with 21 U.S.C. § 802, which

provides that the possession and use of marijuana is prohibited by federal law.  Plaintiff

correctly notes that the definition of "unlawful user" excludes any person using a controlled

substance in a manner "as prescribed by a licensed physician." 27 C.F.R. § 478.11.  However,

marijuana is categorized by federal law as a Schedule I controlled substance under 21 U.S.C.

§812(c)(Schedule I )(c)(10).  Controlled substances in Schedule I are defined by statute as

having "no currently accepted medical use in treatment in the United States." 21 U.S.C.

§ 812(b)(1)(B); *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491

---

use has occurred recently enough to indicate that the individual is actively engaged in such
conduct. A person may be an unlawful current user of a controlled substance even though the
substance is not being used at the precise time the person seeks to acquire a firearm or receives
or possesses a firearm. An inference of current use may be drawn from evidence of a recent use
or possession of a controlled substance or a pattern of use or possession that reasonably covers
the present time, e.g., a conviction for use or possession of a controlled substance within the past
year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred
within the past year; or persons found through a drug test to use a controlled substance
unlawfully, provided that the test was administered within the past year. For a current or former
member of the Armed Forces, an inference of current use may be drawn from recent disciplinary
or other administrative action based on confirmed drug use, e.g., court-martial conviction,
nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation
failure.

(2001) (recognizing the statutory determination that "marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project)"). Therefore, a regulation that prohibits any user of marijuana from possessing a firearm or ammunition is also consistent with 18 U.S.C. § 922(g)(3), which, as discussed above in Section III.B.1, the Ninth Circuit has previously found to be constitutional in *Dugan*.  Accordingly, all the reasons that support the constitutionality of the statutes related to the sale and possession of firearms equally apply to 27 C.F.R. § 478.11.

### 4.   BATFE's Open Letter[3]

Plaintiff begins her Response to Defendants' Motion to Dismiss her Second Amendment claims by reciting a string of objections to the BATFE's failure to engage in "notice and comment" prior to issuing the Open Letter. (Resp. 9:26–10:12, ECF No. 41.)  The Court recognizes that citizens may seek review of an agency's action that allegedly violates the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 702 (waiving sovereign immunity and providing a private cause of action for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute").  However, Plaintiff's argument is puzzling given her failure to include a cause of action for violations of the APA in her FAC. (*See* FAC ¶¶ 50–97, ECF No. 34.)  Thus, Plaintiff's assertions based on the APA, including any contradiction between the Open Letter and 27 C.F.R. § 478.11, cannot save her Second Amendment claim; a claim alleging violations of the APA is separate from a claim alleging violations of the right secured by the Second

---

[3] Plaintiff's argument that the policy in the Open Letter violates the Second Amendment because "more than half of the U.S. population" uses marijuana is absurd at best.  The mere fact that many people engage in illegal activity does not alter the illegal nature of the activity.  Furthermore, the fact that the use of marijuana may be legal under the laws in some states does not later the illegality of this use under federal law. *See Gonzales v. Raich*, 545 U.S. 1 (2005) (It is well settled that Congress has authority under the Commerce clause to criminalize marijuana possession, even if such possession is not also illegal under state law); *see also Raich v. Gonzales ("Raich II")*, 500 F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the Supreme Court, that there is no Ninth Amendment or substantive due process right to use marijuana for claimed medical purposes).

1  Amendment.[4]

2  ## C.   First Amendment Claim

3  In Plaintiff's FAC, she asserts that the First Amendment confers a right to exercise

4  "certain non-verbal and communicative conduct, which, in this case, includes, without

5  limitation, the acquisition, possession, and acknowledgment of possession of a medical

6  marijuana registry card validly issued pursuant to state law." (FAC ¶ 82, ECF No. 34.)  Thus,

7  Plaintiff contends that "[b]y acquiring, possessing, and acknowledging possession of a medical

8  marijuana registry card, Plaintiff is exercising her First Amendment right to free speech." (*Id*.

9  ¶ 85.)  Plaintiff alleges that her possession of a registry card is a "tangible symbol" of her

10  "deeply held beliefs that marijuana should be legal for medical use"; her "belief and opinion

11  that her fellow citizens of Nevada were correct to have forced changes to Nevada law legalizing

12  marijuana for medical use"; and her "belief and opinion that citizens in each state have a right

13  to decide whether marijuana should be legal for medical purposes." (*Id*. ¶¶ 87–90.)  Plaintiff

14  further contends that "Defendants are also attempting to deter her from exercising her First

15  Amendment rights in the future by requiring that she give up her First Amendment rights in

16  exchange for her Second Amendment rights."[5] (*Id*. ¶ 95.)

17  _____

18  [4] The Court will not grant leave to amend because the Court holds that amendment would be futile.
Interpretative rules are excepted from the requirement that an agency provide notice and an opportunity for

19  public comment prior to promulgating a rule. 5 U.S.C. § 553(b)–(c).  Because the statements in the Open Letter
are textbook interpretative, notice and comment would not be required. *See Shalala v. Guernsey Mem'l Hosp.*,

20  514 U.S. 87, 88 (1995) (describing an interpretative rule as one "issued by an agency to advise the public of the
agency's construction of the statutes and rules which it administers"); *see also Hepm Indus. Ass'n v. Drug*

21  *Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) ("[I]nterpretive rules merely explain, but do not add
to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other

22  hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by
Congress." (internal citations omitted)).  The Open Letter simply interprets existing law and provides guidance to

23  the FFLs on how the laws, under which the FFLs operate, apply to the new circumstance of states exempting
from prosecution the use of marijuana for medical purposes.  Furthermore, because the use of marijuana is illegal

24  under federal law, regardless of the user's purpose, the Open Letter cannot be said to change existing law.
Accordingly, any attempt to amend the FAC to include a cause of action for failure to engage in notice and

25  comment under 5 U.S.C. § 553 would be futile.  Therefore, the Court declines to grant leave to amend.
[5] Plaintiff's FAC also alleges that "Defendants are retaliating against Plaintiff's exercise of her First Amendment
rights by denying her Second Amendment right." (FAC ¶ 94, ECF No. 34.)  Defendant categorizes this

### 1.   *Applicable Legal Standards*

It is well-established that the First Amendment's protection "does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  Rather, certain conduct "may be sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]." *Id.* (internal quotation marks omitted).  However, the Supreme Court has repeatedly "rejected 'the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

To determine whether conduct possesses sufficient "elements of communication," courts engage in a two-pronged analysis.  First, courts determine "whether 'an intent to convey a particularized message was present.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)).  Second, courts look to "whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 411).

### 2.   *Discussion*

Even assuming that Plaintiff has adequately pleaded the two prongs of the *Spence* test for when conduct is expressive, Plaintiff's claim fails under the analysis applying the correct

---

allegation as a "First Amendment 'retaliation claim.'" (Mot. to Dismiss 35 n.23, ECF No. 37.)  In Plaintiff's Response brief, she seems to indicate that that allegation is more related to a claim under the "unconstitutional condition" doctrine. (Resp. 23:22–25, ECF No. 41 ("The Defendants have effectively given the Plaintiff a Hobson's Choice between her First and Second Amendment Rights: *you can either exercise your right to free expression, or you can exercise your right to keep and bear arms, but you can't have both*.")); *see also Speiser v. Randall*, 357 U.S. 513, 518 (1958) (holding that "[t]o deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for this speech.").  Regardless of how this allegation is characterized, the claim fails.  First, Plaintiff has not set forth facts adequate to suggest that the passage of § 922(g)(3), § 922(d)(3), the promulgation of 27 C.F.R. § 478.11, or the distribution of the Open Letter, was motivated by retaliation for any communicative conduct by Plaintiff.  Additionally, *Speiser* cautions that conditions which "have the effect of coercing the claimants to refrain from the proscribed speech" are suspect. 357 U.S. at 519.  However, in this case, any such "condition" does not affect the actual speech, *i.e.*, promoting the medical benefits of marijuana, but relates only to the underlying conduct of obtaining and possessing a medical marijuana registry card.

1    level of scrutiny.

2          Plaintiff asserts that this Court must apply strict scrutiny to the challenged policy.

3    Plaintiff is mistaken.  Strict scrutiny applies only when the government "proscribe[s] particular

4    conduct *because* it has expressive elements" or enforces a "law *directed* at the communicative

5    nature of conduct."[6] *Texas v. Johnson*, 491 U.S. at 406 (quotation marks omitted).  Similarly,

6    the Ninth Circuit has stated that the *O'Brien* analysis, rather than strict scrutiny, applies

7    whenever the "conduct . . . merely contains an expressive component . . . more akin to . . .

8    burning a draft card (an example of conduct that can be used to express an idea but does not

9    necessarily do so)." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010)

10   (citing *O'Brien*, 391 U.S. at 376).  The acts of obtaining and possessing a marijuana registry

11   card are classic examples of "conduct that can be used to express an idea but does not

12   necessarily do so."  Plaintiff may well have obtained her registry card as a form of expression,

13   but that is not necessarily true of all individuals who obtain a medical marijuana registry card.

14   Accordingly, Plaintiff's assertion that strict scrutiny applies is incorrect; the standard

15   announced by the Supreme Court in *O'Brien* supplies the appropriate standard of review for the

16   statutes, regulation, and policy that Plaintiff challenges.

17         Under *O'Brien*, even after a court determines that the conduct at issue implicates the

18   First Amendment, "it does not necessarily follow that [the conduct at issue] is constitutionally

19   protected activity." 391 U.S. at 376.  "[W]hen 'speech' and 'nonspeech' elements are combined

20   in the same course of conduct, a sufficiently important governmental interest in regulating the

21

22   ───────────────

23   [6] Plaintiff asserts that "the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to
     suppress the growing medical marijuana movement." (Resp. 26:17–19, ECF No. 41.)  For this reason, Plaintiff
24   asserts that the Court must apply strict scrutiny to the challenged policy. (*Id*. 26:28–27:2.)  However, the
     Supreme Court rejected a similar argument in *O'Brien* because "under settled principles the purpose of
25   Congress . . . is not a basis for declaring this legislation unconstitutional." 391 U.S. at 382–83 (rejecting the
     argument that a statute prohibiting the destruction or mutilation of selective service registration certificates was
     unconstitutional because it was the "'purpose' of Congress to 'suppress freedom of speech'").

Page 20 of 27

nonspeech element can justify incidental limitations on First Amendment freedoms." *Id*.  More specifically:

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id*. at 377.

Here, Plaintiff fails to establish that this policy fails the test articulated by the Supreme Court in *O'Brien*.  First, neither party asserts that the Government lacks the constitutional authority to regulate the possession and sale of firearms.  Second, the challenged policy furthers the important governmental interest of protecting public safety and preventing violent crime. *See United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (recognizing the "danger in allowing habitual drug users to traffic in firearms because . . . [they] more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances").  Third, this interest is unrelated to the suppression of free expression.  Finally, any restriction on Plaintiff's First Amendment right is no greater than necessary to further this interest.  Specifically, the policy does not prohibit individuals from advocating for the legalization of marijuana for medicinal purposes.  Similarly, the policy does not prevent any known advocate of the medical benefits of marijuana from obtaining a firearm.  Instead, this policy is tailored to prevent users of marijuana, a controlled substance, from possessing a firearm by presuming that an individual who undertakes the "exceedingly difficult and lengthy process" of obtaining a medical marijuana card, (Resp. 25:2–8), is actually using marijuana. For these reasons, any infringement of Plaintiff's First Amendment right is incidental to an important governmental interest of reducing the threat caused by gun violence.  Plaintiff cannot show that, under *O'Brien*, these statutes, regulation, and policy impermissibly infringe her right

of expression as secured by the First Amendment.  Accordingly, her First Amendment claim

fails and must be dismissed with prejudice.

### D.        Substantive Due Process Claim

Substantive due process refers to the protection of "those fundamental rights and

liberties which are, objectively, deeply rooted in this Nation's history and tradition."

*Washington v. Glucksberg*, 521 U.S. 702, 720–21 (internal quotation marks omitted).  In

Plaintiff's FAC, she asserts that her "right to possess a handgun *under the Second Amendment*

is objectively deeply rooted in the Nation's history and tradition and implicit in the concept of

ordered liberty such that neither liberty nor justice would exist if they were sacrificed." (FAC

¶ 75, ECF No. 34 (emphasis added).)  Similarly, Plaintiff asserts that she "possesses a

fundamental right to free speech *under the First Amendment* which includes certain non-verbal

speech . . .." (*Id*. ¶ 77 (emphasis added).)

The Supreme Court has long foreclosed this type of claim.  For this reason, Plaintiff's

cause of action for violations of the substantive due process clause of the 5th Amendment fails

and must be dismissed.  Specifically, more than two decades ago, the Supreme Court first held

that "[w]here a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these claims."

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395

(1989)) (internal quotation marks omitted).  In fact, the Supreme Court has employed this

principle to countless amendments.  For example, in *Stop the Beach Renourishment, Inc. v.

Florida Department of Environmental Protection*, the Court noted that "[t]he first problem with

using Substantive Due Process to do the work of the Takings Clause is that we have held it

cannot be done." 560 U.S. 702, 721 (2010) (citing *Albright*, 510 U.S. at 273).  Similarly, in

*Turner v. Rogers*, the Court concluded that a criminal defendant could not use the Due Process

Page 22 of 27

*322*

1  Clause to assert a claim for violations of his Sixth Amendment right to appointed counsel. 131

2  S. Ct. 2507, 2522 (2011) ("[W]e do not read a general provision to render a specific one

3  superfluous.").

4         Plaintiff attempts to salvage this claim by arguing that the provisions in her FAC that

5  refer to her First and Second Amendment rights, (FAC ¶¶ 75–77), "such provisions in the FAC

6  do not waive Plaintiff's previous assertion that she possess [sic] a liberty right in the ability to

7  choose a course of medical treatment . . .." (Resp. 29:1–5, ECF No. 41.)  This argument is

8  fatally flawed for at least two reasons.  First, Plaintiff cannot attempt to cure defects in her

9  complaint by including the necessary allegations in her opposition brief. *See Broam v. Bogan*,

10  320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting that a court may not look beyond the complaint

11  to plaintiff's briefs when determining the propriety of a motion to dismiss for failure to state a

12  claim).  Second, the Ninth Circuit's opinion in *Raich v. Gonzales*, forecloses any claim that

13  Plaintiff has a fundamental right to use marijuana for medical reasons.[7] 500 F.3d 850, 861–66

14  (9th Cir. 2007).

15         For these reasons, the Court concludes that Plaintiff has not and cannot state a claim for

16  violations of the substantive due process claim.  Because the Court finds that amendment would

17  be futile, this cause of action is dismissed with prejudice.

18         **E.      Procedural Due Process Claim**

19         In Plaintiff's FAC, she alleges that "Defendants have denied the Plaintiff adequate

20

21  [7] The Supreme Court has recognized that there are fundamental rights associated with choosing one's medical
    treatment. *See Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992) (recognizing a women's right to
22  an abortion); *Eisenstad v. Baird*, 405 U.S. 438 (1972) (recognizing the right to use contraception); *Cruzan v.
    Dir., Mo. Dept. of Health*, 497 U.S. 267, 279 (1990) (recognizing the right to "refuse lifesaving hydration and
23  nutrition").  However, the Court has never recognized an unqualified constitutional right to any medical
    treatment that a patient desires.  In fact, in *Raich v. Gonzales*, the Ninth Circuit held that there was no
24  constitutionally protected right to use marijuana for medicinal purposes. 500 F.3d 850, 864 (9th Cir. 2007)
    (stating that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a
25  licensed physician to alleviate excruciating pain and human suffering").  Thus, the Ninth Circuit's holding in
    *Raich v. Gonzales* effectively precludes Plaintiff's argument that she has a fundamental right to engage in the
    exact course of treatment that she and her physician deem best.

Page 23 of 27

procedural protections before depriving her of her right to purchase and possess a firearm."
(FAC ¶ 71, ECF No. 34.)  However, because Plaintiff has failed to identify a constitutionally
protected liberty or property interest, as required by the Fifth Amendment, her claim fails and
must be dismissed.

The relevant portion of the Fifth Amendment provides that "No person shall . . . be
deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.
To successfully allege a procedural due process claim, plaintiffs must provide sufficient facts
establishing the plausible existence of two elements: "(1) a deprivation of a constitutionally
protected liberty or property interest, and (2) a denial of adequate procedural protections."
*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  The
Court need not reach the second element because Plaintiff has not alleged that Defendants
deprived her of a constitutionally protected liberty or property interest. *See Bd. of Regents v.
Roth*, 408 U.S. 564, 569 (holding that adequate procedural protections are required only when
the plaintiff has been deprived of a liberty or property interest).

In her opposition brief, Plaintiff first asserts that "[t]he United States Constitution
requires that whenever a governmental body acts to injure an individual, that act must be
consonant with due process of law." (Resp. 30:17–18, ECF No. 41.)  Plaintiff concludes that
Defendants' determination that those persons that possess a registry card fit the definition of an
"unlawful user of a controlled substance" deprives her of a right without adequate procedure.
(*Id.* at 31:14–22.)  However, Plaintiff fails to recognize that she must articulate a
"constitutionally protected *liberty* or *property* interest" before her procedural due process claim
may proceed.  Therefore, Plaintiff's discussion of any procedural inadequacies is insufficient to
defeat Defendants' Motion to Dismiss.  Because Plaintiff cannot identify a constitutionally
protected *liberty* or *property* interest, she cannot state a procedural due process claim and the
Court must dismiss her claim with prejudice.

Page 24 of 27

*324*

1    **F.      Equal Protection Claim**

2            The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state

3    shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Although

4    the Fourteenth Amendment applies only to state action, the Due Process Clause of the Fifth

5    Amendment, which does apply to the federal government, encompasses the protections of the

6    Equal Protection Clause. *Bolling v. Sharpe*, 347 U.S. 497 (1954).  The equal protection

7    component of the Due Process Clause is "essentially a direction that all persons similarly

8    situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439

9    (1985).  To state a valid claim under the equal protection component of the Fifth Amendment,

10   Plaintiff "must show that the statute in question results in members of a certain group being

11   treated differently from other persons based on membership in that group." *Sagana v. Tenorio*,

12   384 F.3d 731, 740 (9th Cir. 2004) (internal quotation marks omitted); *see also Gonzalez-*

13   *Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011) ("To establish an equal protection

14   violation, [the plaintiff] must show that she is being treated differently from similarly situated

15   individuals.").

16           Plaintiff's FAC first alleges that she "is being treated differently from persons who are

17   prescribed medical marijuana in states where the obtainment of a state-issued medical

18   marijuana registry card is not required." (FAC ¶ 62, ECF No. 34.)  This statement is

19   insufficient to state an equal protection claim.  The laws, regulation, and policy that Plaintiff

20   challenges are neither "applied in a discriminatory manner," nor does it "impose[] different

21   burdens on different classes of people." *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187

22   (9th Cir. 1995).  Plaintiff's argument simply acknowledges that marijuana users in states that

23   do not require registry cards may more easily evade and violate federal law. *See United States*

24   *v. Hendrickson*, 664 F. Supp. 2d 793, 798 (E.D. Mich. 2009) ("There is no right under the

25   Constitution to have the law go unenforced against you, even if you are the first person against

Page 25 of 27

*325*

whom it is enforced . . . . The law does not need to be enforced everywhere to be legitimately enforced somewhere." (quotation omitted)).

Plaintiff further alleges that she "is also being treated differently from similarly situated persons with similar medical conditions to those of the Plaintiff. . . .   Other similarly situated individuals who likewise pursue different methods of treatment for medical conditions have not been denied their ability to obtain handguns." (*Id*. ¶ 63.)   However, although the use of marijuana for medical purposes may not violate Nevada state law, this same use is still prohibited under federal law. *See e.g*., 21 U.S.C. § 844(a) (prohibiting possession of controlled substances); *see also ATF Open Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine").   The fact remains that, by "follow[ing] state laws for the obtainment of treatment for her medical condition," (Resp. 33:12–16), she is pursuing a course of treatment that violates federal law.   Thus, she is not similarly situated to individuals that avail themselves of treatment methods *that comply with federal law. See Marin Alliance for Med*. *Marijuana v*. *Holder*, 866 F. Supp. 2d 1142, 1158–59 (N.D. Cal. 2011) (concluding that individuals for whom the use of marijuana is prohibited under federal law are not similarly situated to individuals whose use of marijuana is permitted under federal law (in connection with research projects funded by the Government)).   Accordingly, Plaintiff has failed to plead a valid class of persons against whom the government is discriminating in violation of the equal protection component of the Fifth Amendment.[8]

For these reasons, Plaintiff's complaint fails to state a plausible claim under the equal protection component of the Fifth Amendment.   Accordingly, the Court dismisses Plaintiff's

---

[8]  Even if Plaintiff had identified an appropriate class of individuals, she certainly has not established her membership in a "suspect class."   Accordingly, "any differential treatment violates equal protection only if it lacks a 'rational basis.'" *Gonzalez-Medina*, 641 F.3d at 336.   As discussed numerous times above, this policy is rationally related to the Government's legitimate interest in preventing violent crime.

1  equal protection claim with prejudice.

2  **IV.**     **CONCLUSION**

3       **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the First Amended

4  Complaint (ECF No. 37) is **GRANTED** with prejudice.

5       The Clerk of the Court shall enter judgment accordingly.

6       **DATED** this 11th day of March, 2014.

7

8       _____

9       Gloria M. Navarro, Chief Judge
        United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**2:11-cv-01679-GMN-PAL** Wilson v. Holder et al
Gloria M. Navarro, presiding
Peggy A. Leen, referral
**Date filed:** 10/18/2011
**Date terminated:** 03/12/2014
**Date of last filing:** 05/12/2014

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| | *Filed & Entered:* | 10/18/2011 | Assign Judges in Civil Case |
| 1 | *Filed & Entered:* | 10/18/2011 | Complaint |
| 2 | *Filed & Entered:* | 10/18/2011 | Notices re AO 85 Consent to Proceed Before a Magistrate and General Order 2013-1 Short Trial Rules |
| 3 | *Filed & Entered:* | 10/18/2011 | Summons Issued as to USA |
| 4 | *Filed & Entered:* | 10/25/2011 | Certificate of Interested Parties |
| 5 | *Filed & Entered:* | 11/03/2011 | Certificate of Service |
| 6 | *Filed & Entered:* | 01/02/2012 | Certificate of Service |
| 7 | *Filed & Entered:* *Terminated:* | 01/23/2012 01/24/2012 | Motion for Leave to Appear |
| 8 | *Filed:* *Entered:* | 01/24/2012 01/25/2012 | Order on Motion for Leave to Appear |
| 9 | *Filed & Entered:* *Terminated:* | 02/03/2012 06/21/2012 | Motion to Dismiss |
| 10 | *Filed & Entered:* *Terminated:* | 02/03/2012 12/12/2012 | Motion to Dismiss |
| 11 | *Filed & Entered:* *Terminated:* | 02/03/2012 02/06/2012 | Motion for Leave to File Excess Pages |
| 12 | *Filed & Entered:* *Terminated:* | 02/06/2012 02/07/2012 | Motion to Extend Time/Shorten Time regarding Dispositive matter |
| 13 | *Filed:* *Entered:* | 02/06/2012 02/07/2012 | Order on Motion for Leave to File Excess Pages |

| 14 | Filed & Entered: | 02/07/2012 | Stipulation of Dismissal |
|---|---|---|---|
| 15 | Filed: Entered: | 02/07/2012 02/08/2012 | Order on Motion to Extend Time/Shorten Time regarding Dispositive matter |
| 16 | Filed: Entered: | 02/07/2012 02/08/2012 | Order on Stipulation |
| 17 | Filed & Entered: | 03/09/2012 | Response to Motion |
| 18 | Filed & Entered: | 03/24/2012 | Notice of Change of Address |
| 19 | Filed & Entered: | 03/27/2012 | Scheduling Order |
| 20 | Filed & Entered: | 03/30/2012 | Reply to Response to Motion |
| 21 | Filed & Entered: Terminated: | 03/30/2012 04/03/2012 | Unopposed Motion |
| 22 | Filed & Entered: | 04/03/2012 | Order on Unopposed Motion |
| 23 | Filed & Entered: | 04/18/2012 | Status Report |
| 24 | Filed & Entered: | 05/31/2012 | Stipulation |
| 25 | Filed: Entered: | 06/01/2012 06/04/2012 | Order on Stipulation |
| 26 | Filed: Entered: | 06/21/2012 06/22/2012 | Order on Motion to Dismiss |
| 27 | Filed & Entered: | 09/19/2012 | Minute Order Setting Hearing on Motion |
| 28 | Filed & Entered: | 09/24/2012 | Stipulation |
| 29 | Filed: Entered: | 09/25/2012 09/26/2012 | Order on Stipulation |
| 30 | Filed: Entered: | 11/02/2012 11/05/2012 | Motion Hearing |
| 31 | Filed & Entered: Terminated: | 11/16/2012 12/12/2012 | Motion to Amend/Correct Complaint |
| 32 | Filed & Entered: | 12/12/2012 | Order on Motion to Dismiss |
| 33 | Filed & Entered: | 12/12/2012 | Order on Motion to Amend/Correct Complaint |
| 34 | Filed & Entered: | 12/17/2012 | Amended Complaint |

| 35 | Filed & Entered: | 01/18/2013 | Transcript |
|---|---|---|---|
| 36 | Filed & Entered: Terminated: | 01/28/2013 02/19/2013 | Motion for Leave to File Excess Pages |
| 37 | Filed & Entered: Terminated: | 01/31/2013 03/12/2014 | Motion to Dismiss |
| 38 | Filed & Entered: | 02/13/2013 | Stipulation |
| 39 | Filed: Entered: | 02/13/2013 02/14/2013 | Order on Stipulation |
| 40 | Filed & Entered: | 02/19/2013 | Order on Motion for Leave to File Excess Pages |
| 41 | Filed & Entered: | 02/25/2013 | Response to Motion |
| 42 | Filed & Entered: | 02/28/2013 | Stipulation |
| 43 | Filed & Entered: | 02/28/2013 | Order on Stipulation |
| 44 | Filed & Entered: | 03/21/2013 | Stipulation |
| 45 | Filed & Entered: | 03/26/2013 | Order on Stipulation |
| 46 | Filed & Entered: Terminated: | 03/29/2013 01/27/2014 | Motion for Leave to File Excess Pages |
| 47 | Filed & Entered: | 03/29/2013 | Reply to Response to Motion |
| 48 | Filed & Entered: | 01/27/2014 | Order on Motion for Leave to File Excess Pages |
| 49 | Filed & Entered: | 03/12/2014 | Order on Motion to Dismiss |
| 50 | Filed & Entered: | 03/12/2014 | Clerk's Judgment |
| 51 | Filed & Entered: | 04/10/2014 | Notice of Appeal |
| 52 | Filed & Entered: | 04/11/2014 | Transcript Designation and Transcript Order forms |
| 53 | Filed & Entered: | 04/11/2014 | Order for Time Schedule |
| 54 | Filed & Entered: | 05/12/2014 | Transcript Designation |

**PACER Service Center**

## CERTIFICATE OF SERVICES

I, Jennifer J. Hurley, an employee of Rainey Legal Group PLLC, certify that the following individuals were served with the foregoing **PLAINTIFF S. ROWAN WILSON'S EXCERPTS OF RECORD**, on this date by the below identified method of service:

      Electronic Case Filing

      TONY WEST
      DANIEL G. BOGDEN
      SANDRA SCHRAIBMAN
      ALICIA N. ELLINGTON
      JOHN K. THEIS
      Trial Attorneys, Federal Programs Branch
      United States Department of Justice, Civil Division
      20 Massachusetts Ave, N.W. Rm 7226
      Washington, DC 20530

      Zachary Richter
      Trial Attorney, Constitutional Torts Staff
      United States Department of Justice, Civil Division
      P.O. Box 7146, Ben Franklin Station
      Washington, DC 20044

      DATED this 21st day of July 2014.

               /s/Jennifer J. Hurley_____
               An employee of Rainey Legal Group PLLC