CASE NO. 14-15700

---

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

S. ROWAN WILSON,

Plaintiff-Appellant,

v.

ERIC HOLDER, et al.,

Defendants-Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT,
DISTRICT COURT OF NEVADA

---

**OPENING BRIEF OF PLAINTIFF S. ROWAN WILSON**

---

RAINEY LEGAL GROUP PLLC
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone: +1.702.425.5100
Facsimile: +1.888.867.5734
Attorneys for Plaintiff/Appellant

# TABLE OF CONTENTS

**TABLE OF CONTENTS**............................................................................i

**TABLE OF AUTHORITIES**...................................................................v

**JURISDICTIONAL STATEMENT**........................................................1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**..................1

**STATEMENT OF THE CASE**................................................................2

    The Nature of the Case................................................................2

    The Course of the Proceedings...................................................3

    The Disposition Below................................................................5

**RELEVANT FACTS AND PROCEDURAL HISTORY**......................7

**STANDARDS OF REVIEW**....................................................................9

**SUMMARY OF ARGUMENT**..............................................................10

**LEGAL ARGUMENT**...........................................................................13

    I.    THE ATF'S OPEN LETTER VIOLATES THE APA, AS IT

         MADE SUBSTANTIVE CHANGES TO EXISTING LAW

         WITHOUT THE REQUISITE NOTICE AND HEARING...................13

A. Under the FRCP's Well-Established Notice Pleading
Standards, Plaintiff Sufficiently Pled a Violation of the
APA ................................................................................ 17

II. THE ATF'S APPLICATION OF 27 CFR §478.11
VIOLATES THE BASIC TENETS OF PROCEDURAL
DUE PROCESS BY SUMMARILY ADJUDICATING
PERSONS AS UNLAWFUL USERS WITHOUT ANY
NOTICE OR HEARING .......................................................... 19

III. DEFENDANTS' PROHIBITION OF ALL FIREARM
SALES TO REGISTRY CARDHOLDERS VIOLATES
THE FIRST AMENDMENT RIGHT TO FREE
EXPRESSION ....................................................................... 26

A. The Plaintiff's Procurement and Possession of a
Registry Card Constitutes a Form of Speech Protected
Under the First Amendment ........................................... 26

B. Strict Scrutiny Applies to Plaintiff's First Amendment Claim Because Defendants' Actions Proscribe Particular Conduct Due to its Expressive Elements .....................28

C. The Open Letter Fails to Meet Strict Scrutiny Standards Because it is not Justified By a Compelling Governmental Interest, is Not Narrowly Tailored, and is Not the Least Restrictive Means Available ..............................30

D. The *O'Brien* Test Does Not Apply Because the Interest Asserted by the Defendants is Not Implicated on the Facts .....................................................................................32

E. Even Examined Under the *O'Brien* Test, the Open Letter Amounts to an Unconstitutional Restriction on Free Speech.....................................................................................33

IV. PLAINTIFF HAS ALLEGED A SECOND AMENDMENT CLAIM ...............................................................................................37

A.  Plaintiff's Constitutional Challenges to 18 U.S.C §§
    922(d)(3) and (g)(3) are Not Foreclosed by *United
    States v. Dugan* ............................................................38

B.  The Court Should Apply Strict Scrutiny to Plaintiff's
    Second Amendment Claims but Even Applying
    Intermediate Scrutiny, §§922(d)(3), (g)(3), 27 C.F.R.
    §478.11, and the Open Letter Violate the Second
    Amendment...................................................................41

C.  If the Open Letter Merely Interprets 18 U.S.C §§
    922(d)(3) and (g)(3) and 27 C.F.R. § 478.11, then 18
    U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11, and
    the Open Letter Violate the Second Amendment on
    their Faces Under Strict Scrutiny Analysis...................43

D.  If the Open Letter Merely Interprets 18 U.S.C §§ 922(d)(3) and (g)(3) and 27 C.F.R. § 478.11, then 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11 and the Open Letter Violate the Second Amendment as Applied to Plaintiff under Strict Scrutiny Analysis......................46

E.  Even Under an Intermediate Scrutiny Analysis, if the Open Letter Merely Interprets 18 U.S.C §§ 922(d)(3), (g)(3), and 27 C.F.R. § 478.11, then 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11 and the Open Letter are Unconstitutional both Facially and as Applied to Plaintiff under the Second Amendment......................48

V.  DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION ........................................................................50

CONCLUSION...................................................................................55

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

Arcara v. Cloud Books, Inc., 478 U.S. 697 (1986)..................................................27

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................9, 18

Boddie v. Connecticut, 401 U.S. 371 (1971)..........................................................20

Bush v. Gore, 531 U.S. 98 (2000)...........................................................................51

Central Hudson Gas v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557 (1980).............48

City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) ....................50

Conley v. Gibson, 355 U.S. 41 (1957)...............................................................10, 18

Cons. Edison Co. v. Public Service Comm'n of N.Y., 447 U.S. 530 (1980) ..........48

Dickerson v. New Banner, Inc., 460 U.S. 103 (1983)............................................45

District of Columbia v. Heller, 554 U.S. 570 (2008) ......................................*passim*

Ex Parte Wall, 107 U.S. 265 (1883) ......................................................................23

First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765 (1978) ..................................21

Grannis v. Ordean, 234 U.S. 385 (1914)…………………………………………23

Griswold v. Connecticut, 381 U.S. 485 (1965) ......................................................43

Hamdi v. Rumsfeld, 542 U.S. 507 (2004) .................................................................23

Harper v. Va. Bd. Of Elections, 383 U.S. 663 (1966) ............................................51

Kramer v. Union Free School District, 395 U. S. 621 (1969) ................................43

Leatherman v. Tarrant County, 507 U.S. 163 (1993) ........................................ 10, 18

Mathews v. Eldridge, 424 U.S. 319 (1976) ...........................................................23

Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1 (1978)...........................21

Morrissey v. Brewer, 408 U.S. 471 (1972).............................................................23

Nordlinger v. Hahn, 505 U.S. 1 (1992) ..................................................................50

Opp Cotton Mills v. Administrator, 312 U.S. 126 (1941).......................................23

R.A.V. v. City of St Paul, Minnesota, 505 U.S. 377 (1992) ...................................30

Reynolds v. Simms, 377 U.S. 533 (1964) ...............................................................51

Roe v. Wade, 410 U.S. 113 (1973).........................................................................43

Shalala v. Guernsey Memorial Hospital, 514 U.S. 87 (1995) .......................14

Skinner v. Oklahoma, 316 U.S. 535 (1942)............................................................51

Skinner v. Switzer, 562 U.S. ___, 131 S.Ct. 1289 (2011).....................................17

Spence v. State of Wash., 418 U.S. 405 (1974)................................................27, 32

Swierkiewicz v. Sorema N.a., 534 U.S. 506 (2002)................................................18

Texas v. Johnson, 491 U.S. 397 (1989) ........................................ 28, 32, 33

United States v. O'Brien, 391 U.S. 367 (1968) ................................ *passim*

United States v. Robel, 389 U.S. 258 (1967) .......................................... 34

Wilkinson v. Austin, 545 U.S. 209 (2005) .............................................. 23

Withrow v. Larkin, 421 U.S. 35 (1975) .................................................. 20

**United States Court of Appeals Cases**

AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631 (9th Cir. 2012) .............. 10

Am. Civ. Liberties Union of Nevada v. Masto, 670 F.3d 1046 (9th Cir. 2012) ..... 21

Am. Mining Cong. v. Mine Safety & Health Admin.,

      995 F.2d 1106 (D.C.Cir.1993) ....................................................... 14

Association of Nat. Advertisers, Inc. v. Lungren, 44 F.3d 726 (9th Cir. 1994) ...... 48

Brittain v. Hansen, 451 F.3d 982 (9th Cir. 2006) .............................. 23, 24

Brown v. Elec. Arts, Inc., 724 F.3d 1235 (9th Cir. 2013) ....................... 49

Chief Prob. Officers of California v. Shalala, 118 F.3d 1327 (9th Cir. 1997) ........ 14

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969 (9th Cir. 2004) ............................. 9

Comm. for Creative Non-Violence v. Watt, 703 F.2d 586 (D.C. Cir. 1983) .......... 28

Conerly v. Westinghouse Elec. Corp., 623 F.2d 117 (9th Cir. 1980) ...................... 1

*Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991) ...........................48

*Country Classic Dairies, Inc. v. State of Mont., Dept. of Com. Milk*

    *Control Bureau*, 847 F.2d 593 (9th Cir. 1988) .......................................50, 51

*Doughtery v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ...................................9

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1999)...........................9

*Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2004)..............................................14

*Experimental Engineering v. United Technologies*,

    614 F.2d 1244 (9th Cir. 1980) .......................................................................1

*Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir. 1994)....................................19

*Hemp Industries Ass'n v. D.E.A.*, 333 F.3d 1082 (9th Cir. 2003)..........................15

*Hightower v. City of Bos.*, 693 F.3d 61 (1st Cir. 2012) .........................................22

*Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037 (9th Cir. 2002) ..........................50

*Guatay Christian Fellowship v. County of San Diego*,

    670 F.3d 957 (9th Cir. 2011) ........................................................................21

*Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) .........41

*Jewel v. Nat'l Sec. Agency*, 673 F.3d 902 (9th Cir. 2011).....................................11

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).....................................................9

Lee v. County of Los Angeles, 240 F.3d 754 (9th Cir. 2001) .................................10

Mack v. South Bay Beer Distrib., 798 F.2d 1279 (9th Cir. 1986)..........................10

Miller v. Yokohama Tire Corp., 358 F.3d 616 (9th Cir. 2004) ...............................9

NL Indus., Inc. v. Kaplan, 792 F.2d 896 (9th Cir. 1986) .........................................9

O.S.C & Assoc. v. Comm'r of I.R.S, 187 F.3d 1116 (9th Cir. 1999).....................28

Papai v. Harbor Tug & Barge Co., 67 F.3d 203 (9th Cir. 1995) ............................10

Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1998) .................................................10

Portman v. City of Santa Clara, 995 F.2d 898 (9th Cir. 1993)...............................21

Raich v. Gonzales, 500 F.3d 850 (9th Cir. 2007) ......................................................7

Roulette v. City of Seattle, 97 F.3d 300 (9th Cir. 1996)....................................27, 28

Sanders v. Brown, 504 F.3d 903 (9th Cir. 2007).....................................................10

Sierra Lake Reserve v. City of Rocklin, 938 F.2d 951 (9th Cir. 1991)...................19

Sequoia Orange Co. v. Yeutter, 973 F.2d 752 (9th Cir.1992).................................14

Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,

     368 F.3d 1053 (9th Cir. 2004) .......................................................................11

Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002)....................................................9

United States v. Dugan, 657 F.3d 998 (9th Cir. 2011) ....................................*passim*

United States v. Juvenile Male, 670 F.3d 999 (9th Cir. 2012) .........................21, 23

United States v. Zepeda,

    10-10131, 2013 WL 5273093 (9th Cir. Sept. 19, 2013) ..............................10

Vasquez v. Rackauckas, 734 F.3d 1025 (9th Cir. 2013) ........................................21

**United States District Court Cases:**

Mirin v. Justices of Supreme Court of Nev., 415 F.Supp. 1178 (D. Nev. 1976) ......9

**Constitutional Provisions**

U.S. Const. Amend. I .........................................................................*passim*

U.S. Const. Amend. II........................................................................*passim*

U.S. Const. Amend. V........................................................................*passim*

U.S. Const. Amend. XIV ................................................................4, 50

**United States Statutes**

5 U.S.C. § 553 (b)-(c) ........................................................................14

5 U.S.C. § 702 (2012) ..........................................................................1

5 U.S.C. § 2412 (2012) .........................................................................1

18 U.S.C. § 922 (g)(3) (2012).........................................................*passim*

18 U.S.C. § 922 (d)(3) (2012).........................................................*passim*

21 U.S.C. § 802 (2012) ................................................................6

28 U.S.C. § 1291 (2012) ...............................................................1

28 U.S.C. § 1331 (2012) .............................................................1, 51

28 U.S.C. § 1391(e) (2012) ...........................................................1

28 U.S.C. § 2201 (2012) ...............................................................1

28 U.S.C. § 2202 (2012) ...............................................................1

## Federal Rules

Fed. R. App. P. 4(a)(1)(A) .............................................................1

Fed. R. Civ. P. 8(a)(2) ............................................................10, 18

Fed. R. Civ. P. 12(b)(6).........................................................9, 10, 18

Fed. R. Civ. P. 12(d) ..................................................................10

Fed. R. Evid. 201 .....................................................................10

## Federal Regulations

27 C.F.R. § 478.11 (2012) .......................................................*passim*

## Other Authorities

Al Olson, *IRS Ruling Strikes Fear in Medical Marijuana Industry*,

    NBC NEWS, October 5, 2011 .......................................................30

Dave Toplikar, Medical Marijuana Issue Tangled in Courts, Legislature,

    LAS VEGAS SUN, July 9, 2012.........................................................................25

Editorial, *Judge Calls it Right on State Medical Marijuana Law*,

    LAS VEGAS REVIEW JOURNAL, March 6, 2012 ..............................................24

Michael Planty, Ph.D. and Jennifer L. Truman, Ph.D., *Firearm Violence,*

    *1993-2011*, prepared for U.S. Department of Justice, Office of Justice

    Programs, Bureau of Justice Statistics, May 2013. .......................................45

Peter Hecth, *U.S. Attorneys: Marijuana Dispensaries in California*

    *Aren't Legal*, THE SACRAMENTO BEE, October 7, 2011. ...............................29

William Yardley, *New Federal Crackdown Confounds States That*

    *Allow Medical Marijuana*, N.Y. TIMES, May 7, 2011...................................29

Results from the 2012 National Survey on Drug Use and Health:

    Detailed Tables, Prepared for the U.S. Department of Health

    and Human Resources ..................................................................................45

Results from the 2012 National Survey on Drug Use and Health:

    Summary of National Findings, Prepared for the U.S. Department

    of Health and Human Resources ..................................................................45

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

    *Procedure*, §1202 (2d ed. 1990) .................................................................. 18

160 Cong. Rec. 83, E884 (daily ed. May 30, 2014) ............................................. 35

160 Cong. Rec. 95, S3820 (daily ed. June 18, 2014) ........................................... 35

# JURISDICTIONAL STATEMENT

The District Court acquired jurisdiction over this matter based upon federal question jurisdiction under 28 U.S.C. § 1331. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 2412. The Defendants/Appellees are subject to suit for relief other than money damages pursuant to 5 U.S.C. § 702. The District Court had authority to award costs and attorney's fees pursuant to 28 U.S.C. § 2412. Venue was proper in the District Court pursuant to 28 U.S.C. § 1391(e).

This Court's appellate jurisdiction is based upon 28 U.S.C. § 1291, which allows appeals from final judgments of district courts. A dismissal with prejudice constitutes a final appealable judgment.[1] The District Court order from which this appeal is taken was filed on March 12, 2014.[2] Plaintiff filed her Notice of Appeal on April 10, 2014.[3] Therefore, Plaintiff's Notice of Appeal was timely filed in accordance with Fed. R. App. P. 4(a)(1)(A).

---

[1] *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980); *Experimental Engineering v. United Technologies*, 614 F.2d 1244, 1246 (9th Cir. 1980).

[2] EOR at p. 301.

[3] EOR at p. 330.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Whether the Open Letter Violates the APA, as it was Issued Without Any Notice or Comment Period and Re-Defines and Contradicts C.F.R. §478.11?[4]

2.  Whether Defendants Violated the Procedural Due Process Clause of the Fifth Amendment by Summarily Adjudging, Without Any Notice or Hearing, that Plaintiff is an "Unlawful User" of a Controlled Substance, Thereby Depriving her of her First and Second Amendment Rights?

3.  Whether Defendants Violated Plaintiff's First Amendment Rights Where Plaintiff's Obtainment of a Registry Card was Protected Expressive Conduct and Defendants' Deprived Plaintiff of Her Second Amendment Rights Based Solely upon Such Expressive Conduct?

4.  Whether Defendants Violated Plaintiff's Second Amendment Rights Where it is Undisputed that the Open Letter Prevents Plaintiff from

---

[4] For purposes of this Brief, the term "Open Letter" shall mean the "Open Letter to All Federal Firearms Licensees" issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter referred to as the "ATF") on September 21, 2011.

Purchasing a Handgun Based Solely upon Her Possession of a Registry Card?

5. Whether Defendants Violated Plaintiff's Right to Equal Protection Where Defendants Issued a Policy that Arbitrarily Treats Plaintiff Differently than Similarly Situated Persons?

## STATEMENT OF THE CASE

## THE NATURE OF THE CASE

The present case centers on the ATF's issuance of the Open Letter, dictating that if any federal firearms licensee knows or has reasonable cause to believe that a potential purchaser possesses a medical marijuana registry card issued pursuant to state law (hereinafter referred to as a "Registry Card"), the licensee is prohibited from selling a firearm to such person. As a result of the Open Letter, Plaintiff was prevented from purchasing a handgun. The Plaintiff instituted the present action to address the deprivation of her First, Second, and Fifth Amendment rights.

The Open Letter is a substantive change to existing law, issued without the requisite notice and comment period required under the APA. Moreover, Plaintiff asserts that the Open Letter is part of a coordinated effort to curtail the Constitutional rights of all medical marijuana registry card holders (hereinafter referred to as "Registry Cardholders") in a deliberate attempt to quell a political movement. As such, the Open Letter: (1) violates Plaintiff's procedural due process rights as

embodied in the Fifth Amendment by defining her as a criminal and depriving her of certain rights without any notice, hearing or other adjudicative process; (2) violates Plaintiff's substantive due process rights by impinging upon her fundamental rights to free speech, association, and to bear arms; (3) violates Plaintiff's First Amendment rights by punishing her for the mere exercise of those rights; (4) violates Plaintiff's Second Amendment rights by depriving her of the ability to purchase a handgun for self-protection based solely on her possession of a Registry Card; and (5) violates the Equal Protection Clause by treating Plaintiff differently from similarly situated individuals.[5]

## THE COURSE OF THE PROCEEDINGS

Plaintiff filed her Complaint on October 18, 2011.[6] Defendants filed a Motion to Dismiss on February 3, 2012.[7] Plaintiff filed her Response and Cross-Motion for Summary Judgment on March 9, 2012.[8] Defendants filed their Reply and Response on March 30, 2012.[9] A hearing was held on the Motion and Cross-Motion on November 2, 2012.[10] At the hearing, Judge Navarro requested that the parties submit

---

[5] The Supreme Court has held that the Equal Protection Cause of the Fourteenth Amendment is inherent in the due process protections of the Fifth Amendment. *See, e.g. Bolling v. Sharpe*, 347 U.S. 497, 74 (1954).
[6] EOR at p. 328.
[7] EOR at p. 1.
[8] EOR at p. 46.
[9] EOR at p. 79.
[10] EOR at p. 127.

supplemental briefs.[11] However, the Parties subsequently stipulated to allow Plaintiff to file an amended complaint rather than filing supplemental briefs, and the Court approved such stipulation.[12] Plaintiff filed her First Amended Complaint (hereinafter, the "FAC") on December 17, 2012.[13] The FAC alleges claims under the First, Second, and Fifth Amendments.[14] Defendants filed a Motion to Dismiss Plaintiff's FAC on January 31, 2013.[15] Plaintiff filed her Response on February 25, 2013.[16] Defendants' filed their Reply on March 29, 2013.[17] Plaintiff requested that a hearing be set on the Motion, but the Court declined to set the Motion for hearing.[18]

## THE DISPOSITION BELOW

Nearly a year after the Motion was fully briefed, the Court issued its Order on the Motion to Dismiss on March 12, 2014.[19] In its Order, the Court dismissed each and every one of the Plaintiff's claims with prejudice.[20]

First, the Court dismissed with prejudice Plaintiff's Second Amendment challenges to 18 U.S.C §§ 922(g)(3) and (d)(3), relying entirely upon this Court's

---

[11] EOR at p. 144.
[12] EOR at p. 144.
[13] EOR at p. 110.
[14] EOR at p.110, 123.
[15] EOR at p. 201.
[16] EOR at p. 257.
[17] EOR at p. 330.
[18] EOR at p. 257.
[19] EOR at p. 301.
[20] EOR at p. 327.

decision in *U.S. v. Dugan* - a four paragraph opinion that holds §922(g)(3) constitutional as applied to "habitual drug users, like career criminals and the mentally ill."[21] *Dugan* does not address §922(d)(3) or the application of §922(g)(3) as a blanket prohibition against the sale of firearms to Registry Cardholders.[22] Nevertheless, the Court found that it was bound by *Dugan* to hold §§922(g)(3) and (d)(3) constitutional, both facially and as applied to Plaintiff.[23] The Court further dismissed Plaintiff's Second Amendment challenge to 27 C.F.R. §478.11 claiming that §478.11 is constitutional because it is consistent with the federal prohibition against the possession and sale of marijuana.[24] Here, the Court merely accepted the ATF's assumption that a person with a Registry Card is conclusively an "unlawful user" of a controlled substance.[25] The Court also dismissed Plaintiff's Second Amendment challenge to the ATF's Open Letter, incorrectly applying a heightened pleading standard. The District Court found that Plaintiff failed to include in her FAC a claim specifically alleging violations of the Administrative Procedures Act (the "APA") but ignored the FAC's allegation that the Open Letter was "legislative" in nature, which would have been a violation of the APA.[26]

---

[21] EOR at p. 321; *U.S. v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011).
[22] *See U.S. v. Dugan*, 657 F.3d at 999.
[23] *See id*.
[24] EOR at p. 321; *see* 21 U.S.C. § 802.
[25] EOR at p. 321.
[26] EOR at p. 322.

Second, the Court dismissed Plaintiff's First Amendment claim with prejudice, asserting that the ATF's policy was tailored to only affect unlawful users of marijuana.[27] Here, the Court improperly applied the intermediate scrutiny standard and, again, made use of the ATF's deeply flawed logic that a Registry Cardholder is automatically an unlawful user of a controlled substance.[28]

Third, the Court dismissed Plaintiff's claim of a substantive due process violation associated with her fundamental right to support her own course of medical treatment, arguing that (1) this claim was not specifically pled in her FAC and (2) the Ninth Circuit opinion in *Raich v. Gonzales* forecloses any claim that the Plaintiff has a fundamental right to use marijuana for medical reasons.[29] The Court's order again imposes a pleading standard far beyond notice pleading and, moreover, improperly accepts without question that a person who obtains a Registry Card is irrefutably an "unlawful user" of a controlled substance.[30]

Fourth, the Court dismissed Plaintiff's procedural due process claim with prejudice claiming Plaintiff failed to identify a constitutionally protected liberty or property interest.[31] This opinion appears to ignore all of the surrounding pleadings and arguments of the Plaintiff, since Plaintiff had repeatedly alleged that the ATF

_____

[27] EOR at p. 320.
[28] EOR at p. 320.
[29] EOR at p. 322-23.
[30] EOR at p. 326.
[31] EOR at p. 324.

policy causes a deprivation of both her First and Second Amendment rights by summarily labeling her an "unlawful user" without any discernable notice or hearing, or even an opportunity to rebut the allegations.[32]

Fifth, the Court dismissed Plaintiff's equal protection claim with prejudice arguing that the Plaintiff failed to demonstrate that the challenged laws, regulations, and policies are applied in a discriminatory manner or impose different burdens on different classes of people.[33] However, the FAC articulates that Plaintiff is being treated differently from persons who are entitled to use medicinal marijuana under the laws of states which do not issue Registry Cards.[34]

## RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff is a medical professional who has studied the use of cannabis for medical purposes and been an outspoken advocate for the legalization of medical marijuana for some time.[35] In October, 2010, Plaintiff applied for a Nevada Registry Card and received her Registry Card on May 12, 2011.[36] She has since routinely renewed her Registry Card in accordance with Nevada law.[37]

---

[32] EOR at p. 326.
[33] EOR at p. 326.
[34] EOR at p. 120.
[35] EOR at p. 114.
[36] EOR at p. 115-16.
[37] EOR at p. 115-16.

On September 21, 2011, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") issued an open letter to all federal firearms licensees (the "Open Letter") specifically instructing licensees to prohibit the sale of firearms and ammunition to any person whom the licensee is aware possesses a Registry Card.[38]

On October 4, 2011, Plaintiff sought to purchase a handgun to use for self-defense in her home.[39] However, when Plaintiff attempted to purchase the handgun, the salesman informed her that he could not sell her a gun because she is a Registry Cardholder.[40] Under the Open Letter, the Plaintiff, as a Registry Cardholder, is automatically deemed an "unlawful user" of a controlled substance and thus barred from purchasing any firearm or ammunition.[41]

Plaintiff has never been charged with any criminal offense. There is no evidence that Plaintiff has ever even used marijuana, let alone that she is a current "unlawful user." Indeed, Plaintiff maintains that she is not an unlawful user of any controlled substance. Nevertheless, Plaintiff was denied, and continues to be denied, her Constitutional Rights based solely upon her possession of a Registry Card.

---

[38] EOR at p. 114.
[39] EOR at p. 113.
[40] EOR at p. 113-14.
[41] EOR at p.113-14.

## STANDARDS OF REVIEW

This Court reviews a District Court's dismissal for failure to state a claim under Rule 12(b)(6) de novo.[42] In considering a motion to dismiss under Rule 12(b)(6), the Court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party.[43] The Court must also draw all reasonable inferences in favor of the non-moving party.[44] However, conclusory allegations and unwarranted inferences alone are insufficient to defeat a motion to dismiss.[45] When considering a motion to dismiss under Rule 12(b)(6), dismissal is only appropriate where the complaint fails to give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.[46] As the Supreme Court has explained:

> "the liberal system of 'notice pleading" set up by the Federal Rules[,] Rule 8(a)(2) . . . do[es] not require a claimant to set out in detail the facts upon which he bases his claim . . all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[47]

---

[42] *See Doughtery v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 619 (9th Cir. 2004); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).
[43] *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).
[44] *Mirin v. Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999).
[45] *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).
[46] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[47] *Leatherman v. Tarrant County*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2).

In considering a Rule 12(b)(6) motion, the Court typically must not consider matters outside of the complaint. [48] However, a court may consider "material which is properly submitted as part of the complaint" and may take judicial notice of "matters of public record" without converting a motion to dismiss to a motion for summary judgment.[49] Judicial notice may be taken at any stage of proceedings, including on appeal.[50] This Court must also review the District Court's decision to dismiss all claims with prejudice without leave to amend. Dismissal of a complaint without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.[51]

## SUMMARY OF ARGUMENT

Plaintiff states a procedural due process claim because she has identified the plausible existence of both a deprivation of a constitutionally protected liberty or property interest and a denial of adequate procedural protections. The protected liberty or property interest is the right to obtain and possess a handgun, which the

---

[48] Fed. R. Civ. Pro. 12(d).

[49] *Lee v. County of Los Angeles*, 240 F.3d 754, 774 (9th Cir. 2001); *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-6 (9th Cir. 1998); Fed. R. Evid. 201; *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

[50] *United States v. Zepeda*, No. 10-10131, 2013 WL 5273093, at *26 (9th Cir. Sept. 19, 2013) (*quoting Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 (9th Cir. 1995), *rev'd on other grounds*.

[51] *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency,* 673 F.3d 902, 903 n. 3 (9th Cir. 2011); *Thinkit Ink Info Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1061 (9th Cir. 2004).

United States Supreme Court has identified as a fundamental individual right under the Second Amendment. Here, there were absolutely no procedural protections in place to prevent the unjustified deprivation of Plaintiff's fundamental right to obtain and possess a handgun. Instead, the ATF unilaterally concluded that possession of a Registry Card is the same thing as illegally using controlled substances in violation of federal law and without any opportunity for affected persons to respond issued its Open Letter depriving Plaintiff and a large swath of the population from exercising their right to obtain and possess firearms and ammunition.

Plaintiff has stated a substantive due process claim because she has identified a liberty right in the ability to choose a course of medical treatment which is not subsumed by the First and Second Amendments. To the extent that the District Court believed that the necessary allegations were contained in Plaintiff's Response to the Motion to Dismiss but not in the FAC, the District Court should have granted Plaintiff an opportunity to amend her claim.

Plaintiff has stated an equal protection clause claim because the Plaintiff has shown that she is being treated differently from similarly situated individuals. Specifically, Plaintiff is being treated differently from those who have a right to use medical marijuana under the laws of states that do not issue registry identification cards. The ATF's open letter aims solely at persons who live in states where registry identification cards are mandated for the ability to access medical marijuana.

The District Court erred in dismissing Plaintiff's First Amendment claims because (1) the District Court incorrectly declined to apply strict scrutiny and (2) even under the *O'Brien* analysis, the Defendants' policy does not further the important governmental interest of protecting public safety and preventing violent crime. The ATF has not presented any evidence that a Registry Cardholder is more likely than not to actually be using marijuana at all times, nor has the ATF presented any evidence demonstrating that a Registry Cardholder is more likely to engage in violent crime than any non-cardholder.

The District Court erred in dismissing Plaintiff's Second Amendment claims. The District Court's reliance on *United States v. Dugan* to uphold §922(g)(3) is misplaced given the extreme disparity between the facts of *Dugan* and the facts of this case. The District Court's reliance on *Dugan* to uphold §922(d)(3) was similarly misplaced given that *Dugan* did not address §922(d)(3) at all. The District Court further erred in dismissing Plaintiff's claim as to 27 C.F.R. §478.11 because the Court improperly equates possession of a Registry Card to possession of marijuana. Furthermore, the District Court erred in dismissing the Plaintiff's Second Amendment claims as to the ATF's Open Letter because the Open Letter improperly infringes upon the Plaintiff's Second Amendment right to obtain and possess a handgun.

Finally, while Plaintiff maintains that all claims of her FAC are sufficiently pled, the District Court erred in dismissing each of Plaintiff's claims with prejudice because any defect in the Plaintiff's claims could be fixed by amendment. Thus, at the very least, the Court should have provided the Plaintiff with an opportunity to amend her claims after the decision on the Motion to Dismiss was rendered.

## LEGAL ARGUMENT

### I. THE ATF'S OPEN LETTER VIOLATES THE APA, AS IT MADE SUBSTANTIVE CHANGES TO EXISTING LAW WITHOUT THE REQUISITE NOTICE AND HEARING.

The ATF's issuance of the Open Letter was an unlawful abuse of authority, given that the Open Letter made substantive changes to existing law and did so without the requisite period for notice and comment, as required under the Administrative Procedure Act (the "APA").

The APA requires agencies to advise the public through a notice in the Federal Register of the terms or substance of a proposed substantive rule, allowing the public a period to comment.[52] "Th[e] requirement is designed to give interested persons, through written submissions and oral presentations, an opportunity to participate in the rulemaking process."[53] Generally, "[t]he procedural safeguards of the APA help

---

[52] *See* 5 U.S.C. § 553(b) and (c).
[53] *Chief Prob. Officers of California v. Shalala*, 118 F.3d 1327, 1329 (9th Cir.1997).

ensure that government agencies are accountable and their decisions are reasoned."[54] The only instances where agency rulings don't require notice and an opportunity for public comment are where such rulings are merely "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."[55]

In the present case, the Defendant seeks to justify the ATF's failure to follow the APA's Notice and Comment Requirement by asserting that the Open Letter is merely interpretive. However, the mere fact that an agency claims that its rule is interpretive does not by itself render the law interpretive.[56] An agency ruling is "legislative," as opposed to "interpretive," whenever the rule is delivered with the "force of law."[57] A rule has the "force of law" in three instances:

> (1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule.[58]

---

[54] *Sequoia Orange Co. v. Yeutter,* 973 F.2d 752, 758 (9th Cir.1992); *Erringer v. Thompson*, 371 F.3d 625, 629-630 (9th Cir. 2004).

[55] 5 U.S.C. § 553(b)(3)(A); *see also Erringer*, 371 F.3d 625 at 629.

[56] *Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1088 (9th Cir. 2003).

[57] *Id.* at 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993); *see also Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99, 115 S.Ct. 1232 (1995).

[58] *Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993).

Here, the Open Letter was issued with the force of law because it effectively amends 27 CFR §478.11. In fact, the Open Letter not only amends the regulatory definition of "unlawful user," but, in fact, directly contradicts the prior definition laid down in 27 CFR §478.11. The definition of "unlawful user" under 27 CFR §478.11 includes: "any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician." Inversely, the Open Letter states that a person may be deemed an "unlawful user" for purposes of acquiring a firearm or ammunition simply because they possess a Registry Card.

These two definitions of "unlawful user" are entirely incompatible with one another. A doctor's exam and recommendation for the medical use of marijuana is a fundamental prerequisite for the issuance of a Registry Card. In the present case, Plaintiff obtained a doctor's recommendation before even applying for her Registry Card. Indeed, if possession of a Registry Card is evidence of anything, it is evidence that a person is NOT an "unlawful user" as defined under 27 CFR §478.11 because the Registry Card offers state sanctioned proof that the Registry Cardholder has received a doctor's prescription for medical marijuana. Accordingly, even if a Registry Cardholder were consuming marijuana, such consumption would be "as prescribed by a licensed physician" and thus lawful pursuant to 27 CFR §478.11.

Undoubtedly, the Defendants will focus their analysis of §478.11 on its very broadly drawn illustrative examples of unlawful use, as opposed to the actual

definition set forth above.  Nevertheless, a close reading of §478.11 shows that the examples provided under the definition do not somehow transform the actual definition of "unlawful user."  Indeed, the illustrations are merely provided to assist persons in determining when someone can reasonably be held as using a "controlled substance in a manner other than as prescribed by a licensed physician."  As such, none of the examples provided under §478.11 would ever include a Registry Cardholder. Moreover, all of the examples offered under §478.11 assume some level of prior fact-finding procedure to establish that the suspect is in fact an "unlawful user."  The law suggests that an inference of unlawful use may be drawn from:

> a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year.

Each and every one of the foregoing bases for an "inference" requires some level of investigation or due process.  However, the Open Letter simply makes the blanket assertion that any person with a Registry Card is *per se* a criminal and therefore shall be automatically deprived of her constitutionally guaranteed rights, without any notice, without any hearing, and without any due process. The Open Letter represents a substantive change in the law, amending the underlying regulation without providing the public any opportunity to review and comment, as required

under the APA.  Accordingly, the Open Letter is an unlawful abuse of the ATF's authority and must be declared invalid.

### A. Under the FRCP's Well-Established Notice Pleading Standards, Plaintiff Sufficiently Pled a Violation of the APA.

The lower Court dismissed the Plaintiff's claim under the APA, insisting that that the Plaintiff failed to properly plead such a violation in her FAC.  This holding is especially perplexing, given that it was the lower Court, after reading the Plaintiff's initial complaint, that specifically requested that the parties brief this issue of possible APA violations.  Indeed, the Defendants and the Court were well aware of the Plaintiff's claims under the APA.   The Court's reasoning here, and in other places throughout its Order, appear to be applying a heightened standard of pleading that contradicts the long-established notice pleading rules of the FRCP.

"[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiffs claim, not an exposition of his legal argument."[59] Rule 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."[60] "Such a statement must simply 'give the

---

[59] *See Skinner v. Switzer*, 562 U.S. ___, 131 S.Ct. 1289, 1296 (2011) (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure §1219, pp. 277—278 (3d ed. 2004 and Supp. 2010)).
[60] FRCP 8(a)(2).

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[61] "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[62] "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."[63] Moreover, a "Rule 12(b)(6) motion is not 'an appropriate device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint.'"[64]

In the present case, the Plaintiff's FAC made specific mention of how the Open Letter enacts a "legislative" change to existing law,[65] which is both the proximate and direct cause of the Plaintiff's deprivation of her Second Amendment Rights.[66] In her prayer for relief, she repeatedly asks the Court to strike down the

---

[61] *Swierkiewicz v. Sorema N.a.*, 534 U.S. 506, 513 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[62] *Id.*, at 47-48; *see also Leatherman v. Tarrant County,* 507 U.S. 163, 168-169 (1993).

[63] *Swierkiewicz v. Sorema N.a.,* 534 U.S. 506, 513 (2002) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1202, p. 76 (2d ed. 1990)).

[64] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[65] EOR at p. 120.

[66] EOR at p. 114-16.

Open Letter for its numerous defects.[67] The Complaint also specifically alleges a claim for violation of procedural due process, in which it calls out the fact that the Open Letter is "legislative" in nature.[68] It is well settled law in this Circuit that, where a procedural due process claim hinges upon legislative activity, the issue turns upon whether the "legislative body performs its responsibilities in the normal manner prescribed by law."[69] Here, the prescribed law was the APA, which the ATF openly defied in issuing the Open Letter. Indeed, the lower Court even took notice of this issue in its hearing of November 2, 2012, specifically requesting that the parties brief the Court as to whether the Open Letter was compliant with the APA.[70]

To suggest now that the Plaintiff's FAC, failed to place the Defendants on notice of this issue is wholly inaccurate. Moreover, even if the allegations of the Complaint were insufficient to place the Defendants on notice of an APA claim, the Court should have granted the Plaintiff leave to amend her complaint.

## II. THE ATF'S APPLICATION OF 27 CFR §478.11 VIOLATES THE BASIC TENETS OF PROCEDURAL DUE PROCESS BY SUMMARILY ADJUDICATING PERSONS AS UNLAWFUL USERS WITHOUT ANY NOTICE OR HEARING.

---

[67] EOR at p. 120-21.

[68] *EOR at*. 120-21.

[69] *Halverson* at 42 F.3d 1257, 1260 (9th Cir. 1994) (*quoting Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir. 1991).

[70] EOR at p. 144

Alternatively, if this Court were to determine that the Open Letter is not "legislative" in nature, then the Plaintiff asserts a Constitutional challenge to the ATF's application of 27 CFR §478.11 (and by implication, the underlying statutes 18 U.S.C. §922(g)(3) and §922(d)(3)), averring that such application violates the Procedural Due Process rights embedded within the Fifth Amendment. Specifically, the ATF's unilateral determination that thousands of persons be automatically classified as "unlawful users" and accordingly deprived of their Second Amendment Rights, without any notice, hearing or opportunity to rebut such accusations, flies directly in the face of fundamental notions of due process.

"It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'"[71] The concept of procedural due process applies both to courts and government agencies.[72] "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property [or liberty] interest"[73] To obtain relief under a claim of a procedural due process violation, "the plaintiff must establish the existence of '(1) a liberty or property interest protected

---

[71] *Memphis Light*, 436 U.S. 1, 19 (1978) (*citing Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).
[72] *Withrow v. Larkin*, 421 U.S. 35, 46 (1975).
[73] *Memphis Light*, 436 U.S. at 19 (*citing Boddie v. Connecticut*, 401 U.S. 371, 379, (1971))

by the Constitution, (2) a deprivation of the interest by the government, and (3) lack of process."[74]

Turning to the first step of the foregoing analysis, the Plaintiff alleges that the ATF has infringed upon both her First and Second Amendment rights. As a preliminary matter, "[f]reedom of speech and the other freedoms encompassed by the First Amendment always have been viewed as fundamental components of the liberty safeguarded by the Due Process Clause."[75] Meanwhile, *Heller* established that the Second Amendment, particularly the right for an individual to possess a firearm for personal safety, is an individual, fundamental right.[76] And, since *Heller*, Circuit Courts have recognized that due process applies to deprivation of Second Amendment rights.[77] Accordingly, any government deprivation of the liberty interests in question here are well within the purview of Due Process protection.

Turning to the second part of the foregoing test, whether the government has caused a deprivation of those Constitutionally protected rights, the Defendants

---

[74] *Guatay Christian Fellowship v. Co. of San Diego*, 670 F.3d 957, 983 (9th Cir., 2011) (*quoting Portman v. City of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)); *see also Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (*quoting United States v. Juvenile Male,* 670 F.3d 999, 1013 (9th Cir. 2012), *cert. denied,* 133 S. Ct. 234 (2012) (conflates the first and second steps cited in *Guatay* into a single step); *see also American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1058 (9th Cir. 2012).

[75] *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (*quoting First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 780 (1978).

[76] *Dist. of Columbia v. Heller*, 554 U.S. 570, 679 (2008).

[77] *See e.g., Hightower v. City of Bos.*, 693 F.3d 61, 83-84 (1st Cir. 2012).

openly admit that the intended effect of the Open Letter is to prevent the sale of firearms to Registry Cardholders. Indeed, the Open Letter itself plainly states this prohibition.[78] The Defendants will no doubt argue that Plaintiff can merely surrender her Registry Card and thereby gain the right to purchase a firearm.[79] However, this argument reinforces the Plaintiff's claim under the First Amendment. As discussed in more detail below, possession of the Registry Card is a form of expression protected under the First Amendment. The ATF has essentially presented the Plaintiff with a *Hobson's Choice*: you can either have your First Amendment or your Second Amendment, but you can't have both. Our Constitution does not allow such a deprivation without sufficient procedural due process.

This brings us to the third and final step in the foregoing analysis: "'whether the procedures attendant upon [the] deprivation' of Plaintiffs' liberty interests 'were constitutionally sufficient.'"[80] The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved.[81] "The fundamental requisite of due process of law is the opportunity to

---

[78] The Open Letter reads "If you are aware that a potential transferee is in possession of a card authorizing the use and possession of marijuana under State law, then you have the "reasonable cause to believe" that the person is an unlawful user of a controlled substance. As such, you may not transfer firearms or ammunition to that person, even if the person answered "no" to question 11.e on ATF Form 4473."
[79] EOR at p. 226.
[80] *See Juvenile Male,* 670 F.3d at 1013.
[81] *See e.g., Ex Parte Wall*, 107 U.S. 265, 289 (1883); *see also Wilkinson v. Austin,* 545 U.S. 209, 224–25 (2005); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).

be heard."[82] *Mathews v. Eldridge* provides the framework for this further analysis, directing us to examine: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[83] With respect to action taken by administrative agencies, the Supreme Court has held that notice must be given and a hearing must be held before a final order becomes effective.[84] "[T]the risk of erroneous deprivation of a citizen's liberty in the absence of sufficient process...is very real." [85]

In the present case, the Defendants failed to institute **ANY** procedural safeguards.  Instead, the ATF made the blanket assertion that each and every Registry Cardholder is an "unlawful user" and therefore prohibited from purchasing, owning or possessing a firearm or ammunition. Examining this situation through the foregoing test enunciated in *Mathews* (and routinely applied by this Court),[86] it is

---

[82] *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).
[83] *Brittain v. Hansen,* 451 F.3d 982, 1000 (9th Cir. 2006) (quoting *Mathews,* 424 U.S. at 334).
[84] *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152-53 (1941).
[85] *See e.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004).
[86] *See e.g., Brittain v. Hansen,* 451 F.3d 982, 1000 (9th Cir. 2006)

plainly obvious that the ATF failed to afford the Plaintiff (or any other Registry Cardholder) sufficient due process.

Here, the private interests affected by the ATF's Open Letter are substantial - the direct deprivation of fundamental Constitutional rights. Given the stakes at hand, one would expect a comparatively high level of due process, so as to avoid "erroneous deprivation" of rights. However, here, the ATF refused to implement any procedure, instead casting the widest possible net and simply labeling every Registry Cardholder as a criminal. The ATF just assumed, without any research, without any investigation, without any hesitation, that anyone and everyone who possesses a Registry Card must be so socially delinquent and so deranged as to be unfit to exercise his/her Constitutional right to bear arms.

The ATF will, no doubt, glibly argue that there is no risk of erroneous deprivation in this instance, because it is just obvious that a Registry Cardholder would be illegally consuming marijuana. However, this circular reasoning is unavoidably flawed. In fact, in the context of Nevada, where the Registry Card was made so impossibly difficult to obtain,[87] and the State and local government actively

---

[87] See Editorial, *Judge Calls it Right on State Medical Marijuana Law*, LAS VEGAS REVIEW JOURNAL, March 6, 2012, available at http://www.reviewjournal.com/opinion/editorials/judge-calls-it-right-state-medical-marijuana-law

thwarted any attempt to create a feasible system of medical marijuana distribution,[88] the Registry Card was little more than a badge of honor, a symbol of the cardholder's belief in this political movement. The card did not make it any easier to obtain marijuana. There was no state-sanctioned store for these people to purchase from.[89] The card was of minimal value.

The Registry Card is not by any means conclusive, irrefutable evidence of unlawful marijuana use. If anything, it is a signal of one's desire to be law-abiding. If the Plaintiff had merely wanted to consume marijuana, then she should have just gone out into the streets and purchased it from a corner drug dealer. Why go through the trouble of obtaining a doctor's prescription, filling out a complicated set of forms, submitting your information to a state-run database (that was shared with the FBI), and wait several months to receive your Registry Card? There are numerous reasons why a person may decide to obtain a Registry Card, many of which do not implicate an intent to even use marijuana.

The ATF's blanket assumption that all Registry Cardholders should be deprived of their right to bear arms underscores the institution's outdated prejudice and ignorance on this political issue. If the ATF had bothered to put forth even an

---

[88] See Dave Toplikar, Medical Marijuana Issue Tangled in Courts, Legislature, LAS VEGAS SUN, July 9, 2012, *available at* *http://www.lasvegassun.com/news/2012/jul/09/medical-pot-issue-still-tangled-courts/*.
[89] *Id.*

iota of research or investigation, it would have rapidly discovered that these people are not wild-eyed stoners. They are not criminals or vagrants. They are people with serious medical ailments. They are people dying from cancer. They are parents and grandparents. They are a wide, growing cross-section of our country's population. To simply deny each and every one of them their Constitutionally protected rights without even the slightest due process is an absolute, unforgivable injustice.

## III. DEFENDANTS' PROHIBITION OF ALL FIREARM SALES TO REGISTRY CARDHOLDERS VIOLATES THE FIRST AMENDMENT RIGHT TO FREE EXPRESSION.

The Defendants' blanket prohibition on the sale of firearms and ammunition to Registry Cardholders violates Plaintiff's First Amendment rights to free speech and expression. By automatically labeling Plaintiff an unlawful user of a controlled substance based purely upon her choice to acquire and maintain a Registry Card, the Defendants have deliberately sought to curtail the Plaintiff's right to free speech. The Defendants' policy effectively mandates that Plaintiff can either exercise her First Amendment right to free expression or her Second Amendment right to keep and bear arms but cannot exercise both rights simultaneously. The Defendants' infringement of Plaintiff's First Amendment rights is not incidental to an important government interest of reducing gun violence; instead, the Defendants' actions constitute a coordinated effort to stifle a political movement.

## A. The Plaintiff's Procurement and Possession of a Registry Card Constitutes a Form of Speech Protected Under the First Amendment.

It is well-established that the First Amendment's protection "does not end at the spoken or written word." In determining whether conduct falls within the ambit of the First Amendment, the Court should consider "the nature of [the] activity, combined with the factual context and environment in which it was undertaken." In *Spence v. Washington*, the Supreme Court held that an activity is protected by the First Amendment when "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." Even if the *Spence* test is not satisfied, "the statute may be subject to First Amendment scrutiny" if it is "based on a nonexpressive activity [and] has the inevitable effect of singling out those engaged in expressive conduct."[90]

Here, the Plaintiff has alleged sufficient facts in her FAC to satisfy both prongs of the *Spence* test. Plaintiff alleges that she intended to convey the particularized message that she is a proponent for the medical use of marijuana by possessing a Registry Card.[91] Plaintiff further alleges that given the environment in

---

[90] *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996), *quoting Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986) (internal quotations omitted).

[91] Plaintiff's intent to convey a particularized message is irrefutable at this stage of the litigation. *See e.g., O.S.C & Assoc. v. Comm'r Of Internal Revenue*, 187 F.3d 1116, 1120 (9th Cir. 1999).

which the Plaintiff obtained her Registry Card there was a great likelihood that Plaintiff's message would be understood by those who viewed it.[92] The Court must accept these allegations as true for purposes of the Motion to Dismiss. Moreover, even if Plaintiff's conduct could somehow be labeled as non-expressive activity, she still holds a valid First Amendment claim under *Roulette* because the Open Letter inevitably singles out those engaged in expressive conduct. Therefore, Plaintiff's obtainment and possession of a Registry Card is a protected form of speech under the First Amendment.

### B. Strict Scrutiny Applies to Plaintiff's First Amendment Claim Because Defendants' Actions Proscribe Particular Conduct Due to its Expressive Elements.

Strict scrutiny applies to regulations that are "related to the suppression of free expression."[93] The government may not proscribe particular conduct because it has expressive elements.[94] "A law *directed at* the communicative nature of conduct must, like a law directed at speech itself, be justified by the substantial showing of need

---

[92] The use of marijuana for medical purposes is, and has been at all times relevant hereto, a hotly debated political issue with tensions between the states and federal government growing stronger. In such circumstances, anyone who viewed Plaintiff's Registry Card or became aware that Plaintiff possessed the Registry Card would understand the Plaintiff's message that she supports the legal use of marijuana for medical purposes.

[93] *Texas v. Johnson*, 491 U.S. 397, 406 (1989).

[94] *Id.*

that the First Amendment requires." [95]

Here, Defendants' outlawing of the sale of guns to those who legally hold Registry Cards is directed at the communicative nature of the possession of a Registry Card. The Open Letter specifically states that it is directed at those who are "in possession of a card authorizing the possession and use of marijuana under State law."[96] The possession of a Registry Card necessarily conveys the expression that the Registry Cardholder supports the legal use of marijuana for medicinal purposes because no person would obtain a Registry Card unless he or she supported the legal use of marijuana for medicinal purposes.[97]

For purposes of the Motion to Dismiss, the FAC's factual allegation that the Open Letter is directed at the communicative nature of obtaining and maintaining a Registry Card must be taken as true. Sufficient evidence exists to make Plaintiff's allegation that the Open Letter is directed at curtailing expressive conduct related to a political movement plausible. Prior to issuing the Open Letter, Defendants do not appear to have made any investigation into the link between possession of a Registry

---

[95] *Community for Creative Non-Violence v. Watt,* 227 U.S. App. D.C. 19, 55-56, 703 F.2d 586, 622-623 (1983) (Scalia, J., dissenting) (emphasis in original), rev'd *sub nom. Clark v. Community for Creative Non-Violence, supra.*
[96] EOR at p. 304.
[97] The District Court's Order provides that "Plaintiff may well have obtained her registry card as a form of expression but that is not necessarily true of all individuals who obtain a medical marijuana registry card." However, the District Court does not explain how it reaches the conclusion that a Registry Cardholder could obtain and maintain possession of a Registry Card without engaging in expressive conduct.

Card and gun violence. Furthermore, at the time the Open Letter was issued Defendants were in the process of coordinating a massive crackdown on medical marijuana growers and dispensaries in multiple states where medical marijuana is legal.[98] Additionally, the Open Letter was issued within days of an IRS ruling that prohibited medical marijuana growers and dispensaries operating pursuant to state law from writing off business expenses.[99] The Open Letter was also issued just a few weeks before the four US Attorneys of California demanded that all California dispensaries shut down or face criminal prosecution.[100] All of these circumstances support Plaintiff's allegation that the Open Letter is part of a coordinated effort to intimidate and suppress a political movement and that the Open Letter itself is specifically directed at the communicative nature of possessing a Registry Card. Thus, the Open Letter's constitutionality is subject to a strict scrutiny analysis.

C. **The Open Letter Fails to Meet Strict Scrutiny Standards Because it is Not Justified By a compelling governmental interest, is Not narrowly Tailored, and is Not the Least Restrictive Means Available.**

[98] *See* William Yardley, *New Federal Crackdown Confounds States That Allow Medical Marijuana*, N.Y. TIMES, May 7, 2011, *available at* http://www.nytimes.com/2011/05/08/us/08marijuana.html

[99] *See* Al Olson, *IRS Ruling Strikes Fear in Medical Marijuana Industry*, NBC NEWS, October 5, 2011, available at http://business.nbcnews.com/_news/2011/10/05/8153459-irs-ruling-strikes-fear-in-medical-marijuana-industry.

[100] *See* Peter Hecth, *U.S. Attorneys: Marijuana Dispensaries in California Aren't Legal*, THE SACRAMENTO BEE, October 7, 2011, *available at* http://blogs.sacbee.com/crime/archives/2011/10/us-attorneys-marijuana-dispensaries-in-california-arent-legal.html

In order for a law to survive judicial review under a strict scrutiny analysis, the law must be (1) justified by a compelling governmental interest; (2) narrowly tailored to achieve that goal or interest; and (3) the least restrictive means of achieving that interest.[101]

Here, the Open Letter fails on all three of the foregoing points. Firstly, while Plaintiff does not dispute that curtailing gun violence is a compelling governmental interest, there is no evidence that just because a person possesses a Registry Card they are more likely to engage in gun violence than people who don't possess a Registry Card. Thus, the blanket prevention of all Registry Cardholders from purchasing and possessing firearms and ammunition is not justified by a compelling governmental interest. Secondly, even if this Court were to believe Defendants' unsupported assertion that there is a causal connection between possessing a Registry Card and increased gun violence, the Open Letter is not narrowly tailored to achieve reduction of gun violence.

The Open Letter not only prevents Registry Cardholders from exercising their Second Amendment rights to possess a firearm but also automatically makes any Registry Cardholder subject to felony conviction by automatically deeming the Registry Cardholder an "unlawful user of a controlled substance." This is not narrowly tailored to promote the Defendants' purported purpose of reducing gun

---

[101] *R.A.V. v. City of St Paul, Minnesota*, 505 U.S. 377 (1992).

crime and promoting public safety. Thirdly, again assuming arguendo that the Open

Letter is justified by a compelling governmental interest and is narrowly tailored, it

still fails a strict scrutiny analysis because it is not the least restrictive means of

achieving that interest. There are myriad less restrictive methods of curtailing gun

violence allegedly arising from Registry Cardholders, including, but not limited to,

requiring the Registry Cardholder to disclose whether he or she is actually currently

using marijuana. The Open Letter, therefore, fails under a strict scrutiny analysis.

### D. The *O'Brien* Test Does Not Apply Because the Interest Asserted by the Defendants is Not Implicated on the Facts.

In order to decide whether the test set forth in *United States v. O'Brien*, 391

U.S. 367, 376 (1968), applies, a court must first decide whether the government has

asserted an interest in support of the denial of First Amendment rights that is

unrelated to the suppression of expression.[102] If the court finds that an interest

asserted by the government is simply not implicated on the facts before the court,

then the court <u>need not ask whether the *O'Brien* test applies</u>.[103] In *Johnson,* Texas

argued that its statute prohibiting desecration of the U.S. flag was supported by the

state's interest in preventing breaches of the peace.[104] The U.S. Supreme Court,

however, concluded that the state's interest in maintaining order was not implicated

---

[102] *Texas v. Johnson* 491 U.S. 397, 407 (1989).
[103] *Id., and see Spence*, 418 U.S. at 414.
[104] *Johnson*, 491 U.S. at 407.

on the facts of *Johnson,* because:

> [N]o disturbance of the peace <u>actually occurred or threatened to</u>
> <u>occur</u> because of Johnson's burning of the flag. . . The State's
> emphasis on the protestors' disorderly actions prior to arriving at
> City Hall is not only somewhat surprising given that no charges
> were brought on the basis of this conduct, but it also fails to show
> that a disturbance of the peace was a likely reaction to Johnson's
> conduct.[105]

Here, the District Court erred in accepting Defendants' argument that the Open Letter furthers the governmental interest of preventing violent crime and applying the *O'Brien* test because the facts do not support a conclusion that Plaintiff's simultaneous possession of a firearm and a Registry Card actually caused or is likely to cause violent crime. No charges have been brought against Plaintiff on the basis of her legal possession of a Registry Card. The facts as alleged in the FAC, which must be taken as true for purposes of the Motion to Dismiss and which Defendants do not dispute in any material respect, demonstrate that no violent crime or public safety concern has occurred or is likely to occur as a result of Plaintiff's possession of both a Registry Card and a firearm. The Defendants fail to show that a breach of public safety or violent crime will likely result from any Registry Cardholder's exercise of his or her Second Amendment right to keep and bear arms for personal protection.

Therefore, based on *Johnson,* because the interest asserted by the Defendants

---

[105] *Id.*

is simply not implicated on the facts before this Court, this Court should not apply

the *O'Brien* test to Plaintiff's claims.

**E.    Even Examined Under the *O'Brien* Test, the Open Letter Amounts to an Unconstitutional Restriction on Free Speech.**

While the *O'Brien* test is not applicable to the present case under established

Supreme Court precedent, the Open Letter constitutes an impermissible restraint on

Plaintiff's First Amendment rights even when analyzed under the *O'Brien* test. The

*O'Brien* test provides that:

> "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."[106]

**1. The Defendants' Policy Set Forth in the Open Letter is Not Within the Constitutional Power of the Defendants.**

In *United States v. Robel*, the U.S. Supreme Court declared unconstitutional

under the First Amendment a federal law that denied federal employment to

individuals who were members of designated Communist groups.[107] The Court

stressed that the laws created guilt by association because mere membership was

sufficient to deny employment.[108] The statute at issue in *Robel* "quite literally

---

[106] *United States v. O'Brien*, 391 U.S. 367, 377 (1968).
[107] *United States v. Robel*, 389 U.S. 258, 262 (1967).
[108] *Id.* at 265.

establishe[d] guilt by association alone, without any need to establish that an individual's association pose[d] the threat feared by the Government in proscribing it."[109] The Court thus concluded that "[t]he inhibiting effect on the exercise of First Amendment rights [was] clear."

Here, the Open Letter's inhibiting effect on the exercise First Amendment rights is clear because any person who becomes a member of a particular group – Registry Cardholders – is automatically stripped of his or her Second Amendment rights. The Defendants in this case have done exactly what the Supreme Court held unconstitutional in *Robel*; they have established Plaintiff's guilt by association alone, without any need to establish that Plaintiff's possession of both a Registry Card and a firearm posed the threat allegedly feared by Defendants. Therefore, the Defendants' policy that Plaintiff cannot possess a handgun due to her possession of a Registry Card without any need to establish if any threat is actually posed by Plaintiff's possession of a handgun is not within Defendants' constitutional power.

## 2. The Open Letter does Not Further an Important or Substantial Governmental Interest.

Assuming *arguendo* that the issuance of the Open Letter is within the Defendants' constitutional power, the Open Letter does not <u>further</u> an important or substantial government interest. Defendants assert that preventing all Registry

---

[109] *Id*.

Cardholders from obtaining and possessing firearms increases public safety and reduces violent crime. This position is wholly unsupported by any evidence. Moreover, Defendants' position has now been rejected by the U.S. House of Representatives. On May 30, 2014, the House passed an amendment to the 2015 Commerce-Justice-Science appropriations bill preventing the Defendants from spending federal funds to interfere with state medical marijuana programs.[110] A similar amendment has been proposed in the Senate.[111] Despite the Open Letter having been in place for nearly three years, the Defendants have not made public any evidence indicating that the Open Letter has made any contribution to reducing gun crime or improving public safety. Therefore, the Open Letter fails to meet the second requirement of *O'Brien* because it does not further an important or substantial governmental interest.

### 3. The Defendants' Policy Set Forth in the Open Letter is Not Unrelated to the Suppression of Free Expression.

Plaintiff has sufficiently pled that the Defendants' issued the Open Letter to suppress free expression related to medical marijuana. Again, for purposes of the Motion to Dismiss, the Court must take Plaintiff's allegations as true because they are plausible given the events and circumstances surrounding the ATF's issuance of

---

[110] 160 Cong. Rec. 83, E884 (daily ed. May 30, 2014) (Amendment 748 by Rep. Rohrabacher).

[111] 160 Cong. Rec. 95, S3820 (daily ed. June 18, 2014) (Amendment 3285 by Sen. Walsh).

the Open Letter, particularly the heated debate between states governments and the federal government regarding the use of marijuana to treat medical conditions. Therefore, the government interest is not clearly unrelated to the suppression of free expression and thus the Open Letter fails to meet the third *O'Brien* requirement.

### 4. The Defendants' Policy Set Forth in the Open Letter is a Greater Restriction on First Amendment Rights than is Essential to the Furtherance of any Governmental Interest.

Finally, the Open Letter fails to meet the fourth *O'Brien* requirement because the restriction on First Amendment freedoms is greater than is essential to the furtherance of the purported interest of reducing violent crime. The ATF's interpretation of §§ 922(d)(3) and (g)(3), as set forth in the Open Letter, does not merely place an incidental restriction on First Amendment freedoms. On the contrary, the Open Letter completely precludes Registry Cardholder's from exercising their right to free speech, unless they are willing to relinquish their right to bear arms. The Registry Cardholders are entitled to their First <u>and</u> Second Amendment rights and should not be forced to choose one at the expense of the other. The restriction placed on First Amendment freedoms was far greater than what was essential to the furtherance of Defendants' alleged purpose of keeping guns out of the hands of potentially dangerous people. While there is very little, if any, meaningful evidence to suggest that marijuana users are more violent than the rest of the community, there is most definitely no evidence to connect Registry

Cardholders with gun violence. Examining the final prong of *O'Brien* test, it is plain to see that the ATF's interpretation of §§ 922(d)(3) and (g)(3) poses a far greater threat upon the First Amendment freedoms of Registry Cardholders than it furthers any gun control efforts. Accordingly, even under the *O'Brien* test, which is less stringent than the strict scrutiny analysis required in this case, the Defendants' universal ban on the sale of firearms to Registry Cardholders is unconstitutional.

## IV. PLAINTIFF HAS ALLEGED A SECOND AMENDMENT CLAIM.

The Second Amendment protects "the right of the people to keep and bear Arms."[112] The Supreme Court has held that this right is an individual right.[113] While it is true that this individual right is "not unlimited," the challenged laws constitute unconstitutional restrictions on the Plaintiff's Second Amendment rights.

### A. Plaintiff's Constitutional Challenges to 18 U.S.C §§ 922(d)(3) and (g)(3) are Not Foreclosed by *United States v. Dugan*.

In *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011), the Ninth Circuit considered a constitutional challenge to 18 U.S.C § 922(g)(3) brought by Kevin Dugan, who was arrested when police officers discovered him illegally growing and selling marijuana at his home.[114] Dugan also admitted to smoking marijuana regularly.[115] Dugan was convicted of mass growing of marijuana, possession of

---

[112] U.S. Const. Amend. II.
[113] District of Columbia v. Heller, 554 U.S. 570, 626 (2008).
[114] *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011).
[115] *Id.*

marijuana for distribution, and maintaining an illegal establishment for growing marijuana.[116] Dugan was also convicted under 18 U.S.C § 922(g)(3) for shipping and receiving firearms through interstate commerce while using a controlled substance.[117] In a very brief opinion, this Court held that "because [under *Heller*] Congress may constitutionally deprive felons and mentally ill people of the right to possess and carry weapons . . . Congress may also prohibit illegal drug users from possessing firearms."[118] The Court, however, limited its opinion to "habitual drug users," such as Dugan, who admitted to using marijuana regularly and had already been convicted for his drug crimes.[119] This Court further noted that "an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse."[120] *Dugan* does not foreclose challenges to 18 U.S.C §§ 922(d)(3) and (g)(3) on their faces or as applied to Plaintiff for several reasons.[121]

Firstly, *Dugan* was argued and submitted on August 8, 2011, but the Open letter was not issued until September 21, 2011. So, to the extent that the Open Letter merely interprets 18 U.S.C § 922(g)(3), as argued by Defendants, this Court did not have in the *Dugan* case an opportunity to fully evaluate 18 U.S.C § 922(g)(3) as it

---

[116] *See U.S. v. Dugan,* No. CR-03-20010-RMW (N.D. Cal. Jan. 31, 2011).
[117] *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011).
[118] *Id.*
[119] *Id.*
[120] *Id.*
[121] *See id.*

now stands. There is no indication from the *Dugan* opinion that this Court understood 18 U.S.C § 922(g)(3) to prevent persons who possess Registry Cards but are not currently using marijuana from purchasing firearms. *Dugan's* position that an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse certainly seems to support the conclusion that someone who possessed a Registry Card but was not actually abusing drugs would not be within the purview of 18 U.S.C § 922(g)(3).

Secondly, the *Dugan* case makes absolutely no mention of 18 U.S.C § 922(d)(3) so it cannot be said that *Dugan* forecloses constitutional challenges to 18 U.S.C § 922(d)(3).[122] And again, as noted above, even if the *Dugan* Court had considered 18 U.S.C § 922(d)(3) it does not appear that the *Dugan* Court would have understood 18 U.S.C §§ 922(d)(3) to prevent the sale of firearms to persons who merely possess a Registry Card without any further indicia of actual substance abuse.[123]

Thirdly, the *Dugan* case involved facts so divergent from the facts in this case that it cannot reasonably be read to uphold 18 U.S.C §§ 922(d)(3) and (g)(3) as applied to the Plaintiff. As noted above, Dugan was convicted of multiple crimes stemming from his actual possession and distribution of marijuana; he also admitted

---

[122] *See id.*
[123] *See generally id.*

to smoking marijuana regularly.[124] Here, by contrast, Plaintiff has never been arrested for or convicted of any drug crime, or any other crime for that matter. Plaintiff obtained a Registry Card pursuant to state law as part of her advocacy for the legalization of medicinal marijuana. There is no evidence that Plaintiff is using marijuana even though her Registry Card entitled her to do so.

As such, the Court's opinion in *Dugan* does not foreclose the Plaintiff's claims that 18 U.S.C §§ 922(d)(3) and (g)(3) are unconstitutional facially and as applied.

**B. The Court Should Apply Strict Scrutiny to Plaintiff's Second Amendment Claims but Even Applying Intermediate Scrutiny, §§922(d)(3), (g)(3), 27 C.F.R. §478.11, and the Open Letter Violate the Second Amendment.**

The Ninth Circuit has recognized that the appropriate level of scrutiny to apply to a Second Amendment claim varies with the circumstances.[125] To determine the appropriate level of scrutiny, the Court considers: "(1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right."[126] In analyzing how close the law comes to the core of the Second Amendment right, the Court relies on *Heller*'s holding that the Second Amendment has "the core lawful purpose of self-defense" and that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible

---

[124] *Id.* at 999.
[125] *Jackson v. City of San Francisco,* 746 F.3d 953, 960-61 (9th Cir. 2014).
[126] *Id.* (internal quotations omitted).

citizens to use arms in defense of hearth and home."[127] In analyzing the severity of the law's burden on the right, the Court considers whether the law regulates only the manner in which persons may exercise their Second Amendment rights or whether the law imposes such a severe restriction on the core right of self-defense that it amounts to a destruction of the Second Amendment right.[128] "Firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not."[129] "A law that imposes such a severe restriction on the core right of self-defense that it "amounts to a destruction of the [Second Amendment] right," is unconstitutional under any level of scrutiny."[130]

Here, strict scrutiny applies because the challenged statutes and regulations curtail the very core of the Second Amendment right and impose a severe burden on the Second Amendment right. The Open Letter, which Defendants claim is merely interpretation of existing law and which Plaintiff claims is effectively new legislation, prevents any Registry Cardholder from keeping a firearm for the lawful purposes of self-defense and defense of hearth and home. The Open Letter imposes

---

[127] *Id*. at 961, quoting *Heller*, 554 U.S. at 630, 635 (internal citations omitted).
[128] Id. at 960.
[129] *Id.* at 961.
[130] *Id*. at 961; quoting *Heller,* 554 U.S. at 629 (internal quotations omitted).

such a severe restriction of the core right of self-defense that it amounts to a destruction of Plaintiff's Second Amendment right. Under the policies put in place by Defendants, there are no alternative channels for the Plaintiff to obtain a handgun for self-defense as Plaintiff's mere possession of a firearm has been criminalized due to her possession of a Registry Card. As such, strict scrutiny applies. To survive a strict scrutiny analysis, the law must: (1) further a compelling government interest; (2) be narrowly tailored to achieve that compelling government interest; and (3) be the least restrictive means for achieving that compelling government interest.[131] Moreover, even if the Court finds that an intermediate level of scrutiny applies, the laws must still be deemed unconstitutional because they place such a severe restriction on the core right of self-defense that they amount to a destruction of the Second Amendment right and, therefore, cannot survive under any level of scrutiny.

C. **If the Open Letter Merely Interprets 18 U.S.C §§ 922(d)(3) and (g)(3) and 27 C.F.R. § 478.11, then 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11, and the Open Letter Violate the Second Amendment on their Faces Under Strict Scrutiny Analysis.[132]**

---

[131] *See e.g. Roe v. Wade*, 410 U.S. 113, 169-70 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 630 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 479, 485 (1965).

[132] As noted herein above, Plaintiff contends that the issuance of the Open Letter was a legislative action by the Defendants, creating new law, rather than a mere interpretation of existing law as posited by Defendants.

18 U.S.C § 922(g)(3) provides that it is unlawful for any person who is an unlawful user of or addicted to a controlled substance to receive or possess firearms or ammunition. 18 U.S.C §922(d)(3) similarly provides that it is "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance." 27 C.F.R. §478.11 defines "unlawful user of or addicted to a controlled substance" as follows:

> A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. For a current or former member of the Armed Forces, an inference of current use may be drawn from recent disciplinary or other administrative action based on confirmed drug use, e.g.,

> court-martial conviction, nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation failure.

Defendants assert that the Open Letter, deeming all Registry Cardholders unlawful users of a controlled substance, is merely interpreting the provisions of §§922(d)(3), (g)(3), and 27 C.F.R. §478.11, although it is unclear how these laws could possibly require a conclusive determination that a person is an unlawful user of a controlled substance based solely on possession of a Registry Card. Assuming *arguendo* that the Open Letter is merely interpretive, then §§922(d)(3), (g)(3), and 27 C.F.R. §478.11 plainly fail to survive a strict scrutiny analysis because, while they may possibly further a compelling government interest, they are not narrowly tailored to achieve that compelling government interest and are not the least restrictive means for achieving that compelling government interest. §§922(d)(3), (g)(3), and 27 C.F.R. §478.11, on their faces, would deprive between 37 million and 100 million adults in the United States of their Second Amendment rights.[133] These laws aim to deprive at least 37 million people and upwards of 100 million people of

---

[133] *See* Results from the 2012 National Survey on Drug Use and Health: Detailed Tables, Prepared for the U.S. Department of Health and Human Resources and Results from the 2012 National Survey on Drug Use and Health: Summary of National Findings, Prepared for the U.S. Department of Health and Human Resources, available at http://www.samhsa.gov/data/NSDUH/2012SummNatFindDetTables/Index.aspx.

their constitutional right to keep and bear arms, just to target an insignificant subset of potentially risky individuals."[134] When the Open Letter's direction states that a person does not even have to actually have used a controlled substance to be conclusively determined to be an "unlawful user of a controlled substance," then the number of American adults subject to deprivation of their Second Amendment rights is even greater. Generally, while unlawful use of controlled substances has risen over the past 20 or so years, gun crime has been greatly declining over the same period.[135] In 2011, the Bureau of Justice Statistics recorded 414,562 instances of gun crime; even assuming that each such instance was committed by a different person and that each of those offenders was prohibited from possessing a firearm under §§922(d)(3), (g)(3), and 27 C.F.R. §478.11, this means that only a tiny fraction of the people prevented from possessing firearms under §§922(d)(3), (g)(3), and 27 C.F.R. §478.11 actually pose any risk of engaging in gun crime. Destroying the Second Amendment rights of more than 100 million Americans for the sake of preventing a small handful of persons from engaging in gun crime cannot be deemed "narrowly

---

[134] *See Dickerson v. New Banner, Inc.*, 460 U.S. 103, 112 (1983).
[135] *See* Michael Planty, Ph.D. and Jennifer L. Truman, Ph.D., *Firearm Violence, 1993-2011*, prepared for U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, May 2013, available at http://www.nij.gov/topics/crime/gun-violence/Pages/welcome.aspx.

tailored" to achieve the government's legitimate purpose, nor can it be deemed the least restrictive means available. As such, §§922(d)(3), (g)(3), 27 C.F.R. §478.11 and the Open Letter are facially invalid under a strict scrutiny analysis.

**D.** **If the Open Letter Merely Interprets 18 U.S.C §§ 922(d)(3) and (g)(3) and 27 C.F.R. § 478.11, then 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11 and the Open Letter Violate the Second Amendment as Applied to Plaintiff under Strict Scrutiny Analysis.**

Defendants contend that the Open Letter merely interprets 18 U.S.C §§ 922(d)(3) and (g)(3) and 27 C.F.R. § 478.11. If Defendants' position is accepted, then 18 U.S.C §§ 922(d)(3) and (g)(3) and 27 C.F.R. § 478.11 completely deprive the Plaintiff of her right to possess a handgun, as guaranteed by the Second Amendment, without requiring any evidence that Plaintiff has ever used a controlled substance. Instead, 18 U.S.C §§ 922(d)(3) and (g)(3) and 27 C.F.R. § 478.11 require only that Plaintiff's state has authorized her, pursuant to state law, to use a medicine deemed a "controlled substance" by the federal government. Plaintiff has no criminal record - let alone charges for unlawful use of a controlled substance or gun crimes. As applied to the Plaintiff, 18 U.S.C §§ 922(d)(3) and (g)(3), 27 C.F.R. § 478.11, and the Open Letter are not related to a compelling government interest because the government has no legitimate reason to believe that Plaintiff's possession of both a firearm and a Registry Card is likely to lead to an increased risk of Plaintiff committing a gun crime. Furthermore, 18 U.S.C §§ 922(d)(3) and (g)(3),

27 C.F.R. § 478.11, and the Open Letter are neither narrowly tailored to further the government's interest nor the least restrictive means of serving such interest as applied to Plaintiff. As an alternative, and far less restrictive measure, the Defendants could simply require Plaintiff to disclose whether she is actually currently using marijuana as she is authorized to do under Nevada law.

> E. **Even Under an Intermediate Scrutiny Analysis, if the Open Letter Merely Interprets 18 U.S.C §§ 922(d)(3), (g)(3), and 27 C.F.R. § 478.11, then 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11 and the Open Letter are Unconstitutional both Facially and as Applied to Plaintiff under the Second Amendment.**

To overcome intermediate scrutiny, the asserted governmental interest must be "substantial" and the regulation adopted must have "a direct, substantial relationship between the objective and the means chosen to accomplish the objective."[136] While Plaintiff concedes that the government may have had a substantial interest in enacting §§ 922(d)(3) and (g)(3), there is no direct, substantial relationship between the objective and 27 C.F.R. § 478.11 and the Open Letter, as the means chosen to accomplish the objective. Due to the extraordinary breadth and scope of 27 C.F.R. § 478.11 and the Open Letter, the overwhelming impact of 18

---

[136] *Coral Const. Co. v. King County*, 941 F.2d 910, 931 (9th Cir. 1991); *see also Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 566, (1980)); *Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530, 540 (1980).

U.S.C §§ 922(d)(3), (g)(3), and 27 C.F.R. § 478.11, as interpreted by the Defendants, falls on the shoulders of non-violent, harmless individuals, depriving those individuals of their Second Amendment rights. The laws do not merely apply to those likely to engage in gun crime, or even those marginally more likely to engage in gun crime. As previously noted in this brief, Plaintiff contends that in issuing the Open Letter Defendants intentionally endeavored to quash the medical cannabis movement by manipulating the enforcement of existing law to curtail the constitutional rights of individuals involved in the movement; this contention is supported by the circumstances surrounding the issuance of the Open Letter and must be accepted as true for purposes of the Motion to Dismiss.[137] There is no viable evidence to suggest that medicinal marijuana use is correlated with violent crime (or any other crime beyond illegal drug use). Thus, on their faces, 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11, and the Open Letter are unconstitutional under an intermediate level of scrutiny because they do not have a direct and substantial link to any substantial government objective. 18 U.S.C §§ 922(d)(3), (g)(3), 27 C.F.R. § 478.11, and the Open Letter are even more clearly unconstitutional under an intermediate level of scrutiny as applied to the Plaintiff. The complete and total

---

[137] *Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1247 (9th Cir. 2013).

prohibition of the Plaintiff from possessing a handgun for self-protection, which is a fundamental individual right secured by the Second Amendment, based solely on her mere possession of a Registry Card, is an unjustified deprivation of Plaintiff's right unrelated to any legitimate government interest.

## V. DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the law."[138] This provision of the Fourteenth Amendment has been held by the United States Supreme Court to apply to the federal government by virtue of the Fifth Amendment.[139] The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike."[140] The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects alike."[141] "The first step in equal protection analysis is to identify the [defendant's] classification of groups."[142] To accomplish this, a plaintiff can show that the law is applied in a

---

[138] U.S. Const. Amend. XIV.
[139] *Bolling v. Sharpe*, 347 U.S. at 498-99.
[140] *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985).
[141] *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002).
[142] *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988).

discriminatory manner or imposes different burdens on different classes of people.[143] Once the plaintiff establishes governmental classification, it is necessary to identify a "similarly situated" class against which the plaintiff's class can be compared.[144] "The next step ... [is] to determine the level of scrutiny."[145] The U.S. Supreme Court repeatedly has used the equal protection clause to protect fundamental rights.

Here, the prohibition of gun purchase and thereby gun ownership resulting from the Open Letter is applied in a discriminatory manner against a subset of the citizenry – Registry Cardholders. It imposes a different burden on Registry Cardholders than it does on the general population regarding gun purchase and possession – it requires Registry Cardholders to give up their First Amendment rights as a prerequisite to exercise of their Second Amendment rights. The prohibition of gun purchase and thereby gun ownership resulting from the Open Letter also is applied in a discriminatory manner in that it is only applied against advocates of medical marijuana who reside in states where state law includes a Registry Card requirement. For example, residents of California who are medical marijuana advocates and/or medical marijuana users under that state's laws are not

---

[143] *Christy v. Hodel*, 857 F.2d 1324, 1331 (9th Cir.1988), cert. denied, 490 U.S. 1114, (1989).

[144] *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1187 (9th Cir. 1995).

[145] *Country Classic Dairies*, 847 F.2d at 596.

required to be registered or to have a Registry Card. Residents of California who are similarly situated to Plaintiff are not being denied their Second Amendment rights as a result of the Open Letter, despite that there is no sufficient reason to classify both groups in a different manner.

Therefore, here, the Defendants have classified groups by applying the law in a discriminatory manner among similarly situated classes and imposing different burdens on different classes of people. In the FAC, Plaintiff specifically alleges that she is being treated differently from persons who are prescribed medical marijuana in states where obtainment of a Registry Card is not required because Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana based solely on her obtainment of a Registry Card as required by her state; Defendants have not issued any directive to FFLs that a person who gains access to medical marijuana in a state where a Registry Card is not required is an "unlawful user" of marijuana.

As additional grounds for her Equal Protection claim, Plaintiff's FAC also alleges that Plaintiff is being treated differently from persons with similar medical conditions. Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana simply because she has followed state laws for the obtainment of treatment for her medical condition; the Defendants have not issued

directives to FFLs deeming any person who pursues any method of treatment other than medical marijuana an "unlawful user" of a controlled substance. Defendants, without any basis, allege that it is "entirely reasonable for the government to infer that those individuals who have affirmatively registered to use marijuana on the basis of chronic medical conditions are, in fact, marijuana users." Such a conclusion is not "entirely reasonable" and completely ignores the reality that many people may register for a card and then not use or possess marijuana.[146]

The Defendants' policy set forth in the Open Letter thus discriminates against persons who live in a state that requires a registry identification card because any knowledge of the person's possession of that card can be used as conclusive and irrefutable evidence to deny their attempt to purchase firearms and/or ammunition. Meanwhile, persons entitled to use medical marijuana in a state that does not issue registry identification cards will avoid the policies set forth in the Open Letter simply because their state does not issue registry identification cards.

---

[146] For example, many persons obtain Registry Cards prior to their condition becoming so debilitating that the person can no longer deal with the pain without the use of marijuana. The difficulty and length of time required to obtain a Registry Card in Nevada and other states actually encourages that persons prescribed medical marijuana take action to obtain their Registry Card as soon as possible, even if they may not use or possess marijuana in the near future.

Because Defendants are discriminating as to the exercise of a fundamental right – the "right to keep and bear arms" - this infringement is subject to strict scrutiny. Under strict scrutiny, this infringement can only be upheld if the Government proves the infringement is necessary to achieve a compelling government purpose. The Government must not only have a truly significant reason for the infringement, the Government must also show that it cannot achieve its objective in any less discriminatory way.

Here, the Government's stated purpose is protection of public safety and prevention of violent crime, a purpose that can obviously be achieved in a less discriminatory way than denial of a fundamental right to Registry Cardholders. Assuming *arguendo* that medical marijuana advocates and/or medical marijuana users who have guns pose any more danger to public safety than anyone else with a gun (a premise for which the Defendants have not presented any specific evidence or scientific support), the challenged law is under-inclusive in that it only applies to medical marijuana advocates and/or medical marijuana users who are registered and cardholders. Additionally, the policy is over-inclusive in that it broad-brushes all medical marijuana advocates and/or medical marijuana users who are cardholders as public safety risks, and it is also over-inclusive in that it presumes that every person who holds a card is using marijuana. The policy, therefore, is not narrowly

tailored; it is not the least restrictive alternative available to the Government for protecting public safety and preventing violent crime, and the Government could achieve its objective in a less discriminatory way. The Government's infringement on Plaintiff's fundamental right under the Second Amendment fails under the strict scrutiny required here. Therefore, the policies adopted and promulgated by the Defendants, as set forth in the Open Letter, violate the Plaintiff's constitutional right to equal protection.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully requests that this Court REVERSE the lower Court's decision in this matter and REMAND for further trial-level proceedings.

DATED: August 15, 2014.

Respectfully Submitted by:
/s/Charles C. Rainey_____
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone: +1.702.425.5100
Facsimile: +1.888.867.5734
Attorneys for Plaintiff/Appellant

## CERTIFICATE OF COMPLIANCE

I, the undersigned, certify that this Opening Brief is complies with Fed. R. App. P. 32(a)(7) and contains 13,397 words and 1,249 lines of text, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), on 60 pages.

DATED: August 15, 2014.          Respectfully Submitted by:

/s/Charles C. Rainey_____
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
Attorneys for Plaintiff/Appellant

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant states that Appellant is not a publicly-held corporation, does not issue stock and does not have a parent corporation.

      DATED: August 15, 2014.      Respectfully Submitted by:

                        /s/Charles C. Rainey_____
                        CHARLES C. RAINEY, ESQ.
                        Nevada Bar No. 10723
                        Chaz@raineylegal.com
                        JENNIFER J. HURLEY, ESQ.
                        Nevada Bar No. 11817
                        Jennifer@raineylegal.com
                        9340 West Martin Avenue
                        Las Vegas, Nevada 89148
                        Telephone:  +1.702.425.5100
                        Facsimile:  +1.888.867.5734
                        Attorneys for Plaintiff/Appellant

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28–2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, Appellant states that she is unaware of any related cases.


      DATED: August 15, 2014.      Respectfully Submitted by:

                                     /s/Charles C. Rainey_____
                                     CHARLES C. RAINEY, ESQ.
                                     Nevada Bar No. 10723
                                     Chaz@raineylegal.com
                                     JENNIFER J. HURLEY, ESQ.
                                     Nevada Bar No. 11817
                                     Jennifer@raineylegal.com
                                     9340 West Martin Avenue
                                     Las Vegas, Nevada 89148
                                     Telephone:  +1.702.425.5100
                                     Facsimile:  +1.888.867.5734
                                     Attorneys for Plaintiff/Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of August, 2014, an electronic PDF of this Opening Brief was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in this case. Such notice constitutes services on those registered attorneys.

DATED: August 15, 2014.     Respectfully Submitted by:

/s/Charles C. Rainey_____
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
Attorneys for Plaintiff/Appellant