IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

S. ROWAN WILSON,

Plaintiff-Appellant,

v.

ERIC HOLDER, as Attorney General of the United States; THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; B. TODD JONES, as Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; ARTHUR HERBERT, as Assistant Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; and THE UNITED STATES OF AMERICA,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT,
DISTRICT COURT OF NEVADA

EXCERPTS OF RECORD OF APPELLANT S. ROWAN WILSON

VOLUME 2

Rainey Legal Group PLLC
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone: +1.702.425.5100
Facsimile: +1.888.867.5734
Attorneys for Plaintiff/Appellant

# **INDEX**

Document                                                                                    Page:

**Volume 1:**

The United States' Motion to Dismiss or, in the Alternative,
For Summary Judgment (Filed February 3, 2012, Doc. No. 10)…………………………1


Plaintiff's Response to the United States' Motion to Dismiss or,
in the Alternative, For Summary Judgment, and Plaintiff's
Crossmotion for Summary Judgment (filed March 9, 2012, Doc. No. 17)……………..46


Defendants' Reply in Support of their Motion to Dismiss or,
In the Alternative, for Summary Judgment, and Opposition to
Plaintiff's Crossmotion for Summary Judgment (Filed
March 30, 2012, Doc. No. 20)…………………………………………………...........79


First Amended Complaint (Filed December 17, 2012, Doc. No. 34)…………………..110


Transcript of Hearing on Motion to Dismiss
(Filed January 18, 2013, Doc. No. 35)…………………………………………………127


**Volume 2:**

Defendants' Motion to Dismiss Plaintiff's First Amended
Complaint or, in the Alternative, for Summary Judgment
(Filed January 31, 2013, Doc. No. 37)…………………………………………….....201


Response to Defendants' Motion to Dismiss Plaintiff's First
Amended Complaint or, in the Alternative, for Summary Judgment
(Filed February 25, 2013, Doc. No. 41)…………………………………………...257


Order (Filed March 12, 2014, Doc. No. 49)………………………………………301

Notice of Appeal (Filed April 10, 2014, Doc. No. 51)…………………………328

District Court Docket Sheet…………………………………………………….358

1   STUART F. DELERY
    Principal Deputy Assistant Attorney General
2
    DANIEL G. BOGDEN
3   United States Attorney

4   DIANE KELLEHER
    Assistant Director, Federal Programs Branch
5
    JOHN K. THEIS
6   Trial Attorney, Federal Programs Branch
    United States Department of Justice, Civil Division
7   20 Massachusetts Ave., N.W., Rm. 6701
    Washington, D.C. 20530
8   Telephone: (202) 305-7632
    Facsimile: (202) 616-8460
9   John.K.Theis@usdoj.gov

    *Attorneys for Defendants*
10

11                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
12

13   S. ROWAN WILSON,

14                Plaintiff,

15        v.

16   ERIC HOLDER, Attorney General of the        Case No.: 2:11-cv-1679-GMN-(PAL)
     United States, *et al.*,
17                                                **HEARING REQUESTED**
                  Defendants.
18

19        **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
20   **COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

21        Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, Defendants, the

22   United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the

23   individual defendants in their official capacities, by their undersigned counsel, hereby move this

24   Court to dismiss Plaintiff's First Amended Complaint or, in the alternative, to enter summary

25   judgment for Defendants.  A Memorandum of Points and Authorities accompanies this motion,

26   along with an Appendix of Secondary Material and a Statement of Undisputed Material Facts.

27

28

                                              1

*201*

1    Dated: January 31, 2013                Respectfully submitted,

2                                           STUART F. DELERY
                                            Principal Deputy Assistant Attorney General
3
                                            DANIEL G. BOGDEN
4                                           United States Attorney

5                                           DIANE KELLEHER
                                            Assistant Director
6
                                            /s/ John K. Theis
7                                           JOHN K. THEIS
                                            Trial Attorney
8                                           United States Department of Justice
                                            Civil Division, Federal Programs Branch
9
                                            Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

## TABLE OF CONTENTS

2   INTRODUCTION ..........................................................................................................1

3   STATUTORY AND REGULATORY BACKGROUND ...............................................3

4      I.    THE GUN CONTROL ACT AND THE CONTROLLED
             SUBSTANCES ACT ........................................................................3

5      II.    NEVADA'S LAW REGARDING THE USE OF MARIJUANA .....................5

6      III.   ATF'S SEPTEMBER 2011 OPEN LETTER TO FFLS .........................8

7   PROCEDURAL HISTORY ...........................................................................................9

8   ARGUMENT ...............................................................................................................11

9      I.    PLAINTIFF LACKS STANDING TO CHALLENGE THE STATUTES, THE
             REGULATION, AND ATF'S OPEN LETTER ......................................11

10

         A. Plaintiff Cannot Establish the "Injury in Fact" Requirement Because She
11           Lacks a Valid Medical Marijuana Card.............................................12

12        B. Plaintiff Cannot Satisfy the Traceability Elements of Standing Because Her
           Injury is Self-Inflicted.....................................................................13

13
        C. Plaintiff Cannot Satisfy the Traceability or Redressability Elements of
14           Standing Because She Has Not Challenged Nevada's Prohibition on the
           Possession of a Firearm by an "Unlawful User" ..............................13

15      II.    PLAINTIFF'S SECOND AMENDMENT RIGHTS HAVE NOT BEEN
             VIOLATED ...................................................................................15
16

         A. 18 U.S.C. § 922(g)(3), as Implemented and Interpreted by ATF, Does Not
17           Violate the Second Amendment.. ....................................................16

18             1.  Plaintiff's Second Amendment Challenge to § 922(g)(3) is Foreclosed
                 by the Ninth Circuit's Decision in *Dugan*.. ........................16
19
             2.  Even if *Dugan* Did Not Foreclose Plaintiff's Challenge, Her Claim
20                Would Still Fail, Because Unlawful Drug Users, Including Those Who
                Comply with State Medical Marijuana Laws, Fall Outside the Scope of
21                the Second Amendment.. ...................................................19

22             3.  In Any Event, 18 U.S.C. § 922(g)(3) Substantially Relates to the
                 Important Governmental Interest in Protecting Public Safety and
23                Combating Violent Crime.. ................................................23

24         B. 18 U.S.C. § 922(d)(3), as Implemented and Interpreted by ATF, Does Not
           Violate the Second Amendment. .....................................................31

25        C. 27 C.F.R. § 478.11 Does Not Violate the Second Amendment. .....................31

26        D. The Open Letter Does Not Violate the Second Amendment. .........................32

27

28

i

III.   PLAINTIFF'S FIRST AMENDMENT RIGHTS HAVE NOT BEEN
       VIOLATED ........................................................................................................35

IV.    PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE
       DISMISSED AS DUPLICATIVE OF HER CLAIMS UNDER THE FIRST AND
       SECOND AMENDMENTS ...................................................................................38

V.     PLAINTIFF'S PROCEDURAL DUE PROCESS MUST BE DISMISSED
       BECAUSE SHE HAS NOT BEEN DEPRIVED OF A CONSTITUTIONALLY-
       PROTECTED LIBERTY INTEREST ..................................................................39

VI.    PLAINTIFF'S EQUAL PROTECTION MUST BE DISMISSED BECAUSE SHE
       HAS NOT IDENTIFIED SIMILARLY SITUATED INDIVIDUALS THAT
       DEFENDANTS HAVE TREATED DIFFERENTLY ............................................40

VII.   AS PLAINTIFF PREVIOUSLY CONCEDED, SHE CANNOT SEEK
       MONETARY DAMAGES AGAINST THE UNITED STATES ..........................42

CONCLUSION ...............................................................................................................43

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>                                                                                        <u>PAGE(S)</u>

3

*Albright v. Oliver*,
4
    510 U.S. 266 (1994) ......................................................................................38

*Allen v. Wright*,
5
    468 U.S. 737 (1984) ......................................................................................14

6
*Auer v. Robbins*,
    519 U.S. 452 (1997) ......................................................................................35
7

8
*Bolling v. Sharpe*,
    347 U.S. 497 (1954) ......................................................................................40

9
*Christensen v. Harris County*,
    529 U.S. 576 (2000) ......................................................................................35
10

11
*City of Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985) ......................................................................................40

12
*Clark K. v. Willden*,
13
    616 F. Supp. 2d 1038 (D. Nev. 2007) .........................................................39

14
*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011) ..............................................................11, 42

15
*Denney v. DEA*,
16
    508 F. Supp. 2d 815 (E.D. Cal. 2007) .........................................................38

17
*Dep't of Army v. Blue Fox, Inc.*,
    525 U.S. 255 (1999) ......................................................................................42

18
*Dickerson v. New Banner Institute*,
19
    460 U.S. 103 (1983) ........................................................................................4

20
*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................................. passim

21
*Dyer v. United States*,
22
    166 F. App'x 908 (9th Cir. 2006) ................................................................42

23
*Erickson v. United States*,
    67 F.3d 858 (9th Cir. 1995) .........................................................................39

24
*Ezell v. City of Chicago*,
25
    651 F.3d 684 (7th Cir. 2011) .......................................................................19

26
*Ferguson v. Skrupa*,
    372 U.S. 726 (1963) ......................................................................................32

27
*Fire Equip. Manufacturers Association v. Marshall*,
28
    679 F.2d 679 (7th Cir. 1982) .......................................................................13

iii

*Fontana v. Haskin*,
    262 F.3d 871 (9th Cir. 2001) ............................................................38

*Freeman v. City of Santa Ana*,
    68 F.3d 1180 (9th Cir. 1995) ..........................................................41

*Friends of the Earth, Inc. v. Laidlaw Environmental Services Inc.*,
    528 U.S. 167 (2000) ........................................................................11

*Gallegos v. State*,
    123 Nev. 289 (Nev. 2007) ..............................................................14

*Gonzales v. Raich*,
    545 U.S. 1 (2005) ....................................................................... *passim*

*Gonzalez-Medina v. Holder*,
    641 F.3d 333 (9th Cir. 2011) .....................................................40, 42

*Graham v. Connor*,
    490 U.S. 386 (1989) ........................................................................38

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ................................................ *passim*

*Johnston v. Port Authority of New York and New Jersey*,
    2011 WL 3235760 (E.D.N.Y. July 28, 2011) .................................36

*Kachalsky v. Cnty. of Westchester*,
    701 F.3d 81 ...............................................................................26, 34

*Kendall v. Emps. Retirement Plan of Avon Products*,
    561 F.3d 112 (2d Cir. 2009) ...........................................................13

*Kildare v. Saenz*,
    325 F.3d 1078 (9th Cir. 2003) ........................................................39

*Lacey v. Maricopa Co.*,
    693 F.3d 896 (9th Cir. 2012) ..........................................................35

*Lane v. Holder*,
    2012 WL 6734784 (4th Cir. Dec. 31, 2012) ..................................12

*Lane v. Pena*,
    518 U.S. 187 (1996) ........................................................................42

*Levin v. United States*,
    663 F.3d 1059 (9th Cir. 2011) ........................................................42

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..........................................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................12, 14

iv

206

*Marin Alliance for Medical Marijuana v. Holder*,
     866 F. Supp. 2d 1142 (2011) ........................................................39, 41, 42

*McDonald v. City of Chicago*,
     130 S. Ct. 3020 (2010) ......................................................................17, 21

*Midwest Media Prop. L.L.C. v. Symmes Twp.*,
     503 F.3d 456 (6th Cir. 2007) .....................................................................15

*Mora-Meraz v. Thomas.*,
     601 F.3d 933 (9th Cir. 2010) ....................................................................15

*Nat'l Family Planning & Reproductive Health Association v. Gonzales*,
     468 F.3d 826 (D.C. Cir. 2006) ...................................................................13

*Nordyke v. King*,
     319 F.3d 1185 (9th Cir. 2003) ...................................................................36

*Nordyke v. King*,
     644 F.3d 776 (9th Cir. 2011) .....................................................................22

*Nordyke v. King*,
     681 F.3d 1041 (9th Cir. 2012) (*en banc*).................................................9, 24

*Pennsylvania v. New Jersey*,
     426 U.S. 660 (1976) ...................................................................................13

*Peruta v. Cnty. of San Diego*,
     758 F. Supp. 2d 1106 (S.D. Cal. 2010) ....................................................26

*Pohlabel v. State*,
     268 P.3d 1264 (Nev. 2012).........................................................................14

*Price v. Stevedoring Services of America, Inc.*,
     697 F.3d 820 (9th Cir. 2012) .....................................................................35

*Pritikin v. Department of Energy*,
     254 F.3d 791 (9th Cir. 2001) ...............................................................14-15

*Raich v. Gonzales*,
     500 F.3d 850 (9th Cir. 2007) ........................................................18, 38, 39

*Richards v. Cnty. of Yolo*,
     821 F. Supp. 2d 1169 (E.D. Cal. 2011) ...............................................38, 39

*Robertson v. Baldwin*,
     165 U.S. 275 (1897).....................................................................................20

*Romer v. Evans*,
     517 U.S. 620 (1996).....................................................................................42

*Rutan v. Republican Party of Ill.*,
     497 U.S. 62 (1990).......................................................................................20

*San Diego Cnty. Gun Rights Committee v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) ...................................................................12, 14, 15

*Schall v. Martin*,
   467 U.S. 253 (1984) ...................................................................................25

*Shaw v. Terhune*,
   380 F.3d 473 (9th Cir. 2004) .......................................................................11

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ...................................................................................35

*Spence v. Washington*,
   418 U.S. 405 (1974) .............................................................................36, 37

*State v. Shelby*,
   2 S.W. 468 (Mo. 1886) ................................................................................22

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) .....................................................................................12

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .....................................................................25

*Texas v. Johnson*,
   491 U.S. 397 (1989) .............................................................................36, 37

*Town of Castle Rock, Colo. v. Gonzales*,
   545 U.S. 748 (2005) ...................................................................................19

*Turner Broad. System v. FCC*,
   512 U.S. 622 (1994) .............................................................................*passim*

*United States v. Carter*,
   669 F.3d 411 (4th Cir. 2012) .................................................................*passim*

*United States v. Carter*,
   2012 WL 5935710 (S.D. W. Va. Nov. 27, 2012)............................................17

*United States v. Chafin*,
   423 F. App'x 342, 344 ................................................................................31

*United States v. Dugan*,
   657 F.3d 998 (9th Cir. 2011) .................................................................*passim*

*United States v. Hendrickson*,
   664 F. Supp. 2d 793 (E.D. Mich. 2009) ........................................................41

*United States v. Hendrix*,
   2010 WL 1372663 (W.D. Wis. Apr. 6, 2010) ................................................23

*United States v. Jae Gab Kim*,
   449 F.3d 933 (9th Cir. 2006) .......................................................................33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Johal,*
    428 F.3d 823 (9th Cir. 2005) ............................................................................33

*United States v. Lanier,*
    520 U.S. 259 (1997)............................................................................................38

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) ..........................................................................19, 25

*United States v. Miller,*
    604 F. Supp. 2d 1162 (W.D. Tenn. 2009).........................................................34

*United States v. O'Brien,*
    391 U.S. 367 (1968)...........................................................................................37

*United States v. Oakland Cannabis Buyers' Cooperative,*
    532 U.S. 483 (2001).......................................................................................5, 39

*United States v. Patterson,*
    431 F.3d 832 (5th Cir. 2005) ............................................................................17

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010).....................................................................19, 25

*United States v. Rene E.,*
    583 F.3d 8 (1st Cir. 2009) .................................................................................23

*United States v. Richard,*
    350 F. App'x 252, 260 (10th Cir. 2009)............................................................17

*United States v. Salerno,*
    481 U.S. 739 (1987)....................................................................................25, 32

*United States v. Seay,*
    620 F.3d 919 (8th Cir. 2010) ............................................................................17

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) ..................................................................... *passim*

*United States v. Stacy,*
    2010 WL 4117276 (S.D. Cal. Oct. 18, 2010) ..................................................19

*United States v. Tooley,*
    717 F. Supp. 2d 580 (S.D. W. Va. 2010) ...................................................*passim*

*United States v. Vongxay,*
    594 F.3d 1111 (9th Cir. 2010) ..........................................................................23

*United States v. Yancey,*
    621 F.3d 681 (7th Cir. 2010) .....................................................................*passim*

*Vacco v. Quill,*
    521 U.S. 793 (1997)...........................................................................................40

vii

*White v. United States*,
2009 WL. 173509 (S.D. Ohio Jan. 26, 2009) ...................................................15

## UNITED STATES CONSTITUTION

U.S. Const. amend. II.................................................................................................16

U.S. Const. amend. XIV, § 1 .....................................................................................41

## FEDERAL STATUTES

5 U.S.C. § 702 ............................................................................................................5

18 U.S.C. § 922(d)(3) ........................................................................................ *passim*

18 U.S.C. § 922(g) ...............................................................................................24, 25

18 U.S.C. § 922(g)(1) ...............................................................................................17

18 U.S.C. § 922(g)(3) ......................................................................................... *passim*

18 U.S.C. § 922(g)(4) ...............................................................................................17

18 U.S.C. § 922(g)(8) ...............................................................................................25

18 U.S.C. § 922(k) ....................................................................................................25

21 U.S.C. § 802 .....................................................................................................4, 14

21 U.S.C. § 812 ...........................................................................................................4

21 U.S.C. § 812(b) ................................................................................................5, 18

21 U.S.C. § 812(c) ......................................................................................................5

21 U.S.C. § 823(f) ......................................................................................................5

21 U.S.C. § 829 .....................................................................................................5, 18

21 U.S.C. § 844(a) ................................................................................................5, 18

28 U.S.C. § 2201 .......................................................................................................12

Firearm Owners' Protection Act,
Pub. L. No. 99-308, 100 Stat. 449, 452 (1986).................................................27

Gun Control Act of 1968,
Pub. L. No. 90-618, 82 Stat. 1213 ..................................................................3, 26

## RULES AND REGULATIONS

27 C.F.R. § 478.11 ............................................................................................ *passim*

27 C.F.R. § 478.124 ....................................................................................................9

viii

Notice of Denial of Petition, 76 Fed. Reg. 40552 (July 8, 2011) ....................................................5

**STATE STATUTES**

720 Ill. Comp. Stat. 5/24-3.1(a)(3) .............................................................................................27

Ind. Code § 35-47-1-7(5) ............................................................................................................27

Ala. Code § 13A-11-72(b) ..........................................................................................................27

Ark. Code Ann. § 5-73-309(7), (8) .............................................................................................27

Cal. Penal Code § 12021(a)(1) ....................................................................................................27

Colo. Rev. Stat. § 18-12-203(1) ..................................................................................................27

Del. Code Ann. tit. 11, § 1448(a)(3) ...........................................................................................27

D.C. Code § 22-4503(a)(4) ..........................................................................................................27

Fla. Stat. § 790.25(2) ...................................................................................................................27

Ga. Code Ann. § 16-11-129(b)(2)(F) ..........................................................................................27

Haw. Rev. Stat. § 134-7(c)(1) .....................................................................................................27

Idaho Code Ann. § 18-3302(1) ....................................................................................................27

Ind. Code § 35-47-1-7(5) ............................................................................................................27

Kan. Stat. Ann. § 21-4204(a)(1) .................................................................................................27

Ky. Rev. Stat. Ann. § 237.110(4) ...............................................................................................27

Md. Code Ann., Public Safety, 5-133(b)(4), (5) .........................................................................27

Mass. Gen. Laws ch. 140, § 129B(1)..........................................................................................27

Minn. Stat. § 624.713(1)(10)(iii) ................................................................................................27

Mo. Rev. Stat. § 571.070(1)(1) ...................................................................................................27

Nev. Rev. Stat. § 202.360(1) .......................................................................................................27

N.H. Rev. Stat. Ann. § 159:3(b)(3) .............................................................................................27

N.J. Stat. Ann. § 2C:58-3(c)(2) ...................................................................................................27

N.C. Gev. Stat. § 14-404(c)(3) ....................................................................................................27

Ohio Rev. Code Ann. § 2923.13(A)(4) .......................................................................................27

R.I. Gen. Laws § 11-47-6..............................................................................................................27

Nev. Rev. Stat. § 202.360(1) ........................................................................................... *passim*

Nev. Rev. Stat. § 453.336 .................................................................................5, 27

Nev. Rev. Stat. § 453A .....................................................................................6, 27

Nev. Rev. Stat. § 453A.050 ......................................................................6, 27, 33

Nev. Rev. Stat. § 453A.200 ........................................................................6, 27

Nev. Rev. Stat. § 453A.210 ................................................................27, 29, 33

Nev. Rev. Stat. § 453A.220 ......................................................................27, 33

Nev. Rev. Stat. § 453A.240 ......................................................................27, 33

Nev. Rev. Stat. § 453A.300 ..............................................................................6

S.C. Code Ann. § 16-23-30(A)(1) ...................................................................27

S.D. Codified Laws § 23-7-7.1(3) ...................................................................27

W. Va. Code § 61-7-7(a)(2), (3) ......................................................................27

## LEGISLATIVE MATERIAL

114 Cong. Rec. 21657, 21784 (1968) .............................................................27

H.R. Rep. No. 90-1577, at 7 (1968), reprinted in 1968 U.S.C.C.A.N. 4410, 4412. ....................26

S. Rep. No. 90-1501, at 22 (1968) ...................................................................27

## MISCELLANEOUS

Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339 (2009) ...................................................22

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self- Defense: An Analytical Framework and Research Agenda*, 56 UCLA L. Rev. 1443 (2009).................22

Joyce Lee Malcolm, *To Keep and Bear Arms* 123 (1994) ...........................................21

Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143 (1986) ..........23

National Institute of Drug Abuse, *Topics in Brief: Marijuana* (Dec. 2011) .......................28

Nev. State Health Div., *Medical Marijuana, Frequently Asked Questions*, No. 8 ....................7

Nev. State Health Div., *Program Facts* 2 (Feb. 12, 2009) .............................................7

ONDCP, *ADAM II 2010 Annual Report*, at 20 (2010)....................................................28

ONDCP, *Fact Sheet: Marijuana Legalization*, at 1 (Oct. 2010)....................................28

Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125, 130 (1986)..........................................................................21

x

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004)...................................................................22

Patrick Charles, "*Arms for Their Defence?: An Historical, Legal, and Textual Analysis of the English Right to Have Arms and Whether the Second Amendment Should Be Incorporated in* McDonald v. City of Chicago, 57 Clev. State L. Rev. 351 (2009) .........21

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. Rule of Civ. Pro. 12(b)(1) ...................................................................................10

Fed. Rule of Civ. Pro. 12(b)(6) ...................................................................................10

Fed. Rule of Civ. Pro.56..............................................................................................10

xi

STUART F. DELERY
Principal Deputy Assistant Attorney General

DANIEL G BOGDEN
United States Attorney

DIANE KELLEHER
Assistant Director, Federal Programs Branch

JOHN K. THEIS
Trial Attorney, Federal Programs Branch
United States Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Rm. 6701
Washington, D.C. 20530
Telephone: (202) 305-7632
Facsimile: (202) 616-8460
John.K.Theis@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| S. ROWAN WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC HOLDER, Attorney General of the United States, *et al*.,<br><br>    Defendants. | Case No.: 2:11-cv-1679-GMN-(PAL) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

As explained in Defendants' first motion to dismiss, 18 U.S.C. § 922(g)(3) prohibits an unlawful user of a controlled substance from possessing a firearm, while § 922(d)(3) prohibits the sale of firearms by a person who knows or has reasonable cause to believe that the purchaser is an unlawful user of a controlled substance. The Controlled Substances Act classifies marijuana as a Schedule I controlled substance that cannot be lawfully prescribed and that the general public may not lawfully possess. Although a number of states, including Nevada, have exempted from state criminal prosecution certain individuals who use marijuana for medical

1

1  purposes,[1] these state laws do not alter the fact that marijuana possession remains prohibited

2  under federal law.  To advise federal firearms licensees ("FFLs") of this basic fact, the Bureau of

3  Alcohol, Tobacco, Firearms and Explosives ("ATF") issued an Open Letter to all FFLs on

4  September 21, 2011 (the "Open Letter"), stating that "any person who uses . . . marijuana,

5  regardless of whether his or her State has passed legislation authorizing marijuana use for

6  medicinal purposes, is an unlawful user of . . . a controlled substance, and is prohibited by

7  Federal law from possessing firearms or ammunition."  *See* First Amended Complaint ("FAC"),

8  Dkt. No. 34, Ex. 2-B.  The Open Letter further informed FFLs that "if you are aware that the

9  potential transferee is in possession of a card authorizing the possession and use of marijuana

10 under State law, then you have 'reasonable cause to believe' that the person is an unlawful user

11 of a controlled substance" and "you may not transfer firearms or ammunition to the person."  *Id*.

12 (quoting 18 U.S.C. § 922(d)(3)).

13       Plaintiff S. Rowan Wilson's First Amended Complaint cannot correct the deficiencies that

14 doomed her original Complaint, and her newly asserted claims fare no better.  Plaintiff alleges

15 that she possesses a medical marijuana card issued by the State of Nevada and has been

16 prevented from purchasing a handgun.  She claims that Defendants—through § 922(g)(3),

17 § 922(d)(3), an ATF regulation defining certain statutory terms, and the Open Letter—have

18 prohibited her from exercising her Second Amendment rights.  She also challenges Defendants'

19 actions under the First Amendment, as well as the Due Process and Equal Protection clauses of

20 the Fifth Amendment.  Plaintiff seeks a declaratory judgment, a permanent injunction, and

21 monetary damages, but she has failed to state a claim for which relief can be granted.

22       As a preliminary matter, Plaintiff lacks standing.  The medical marijuana registry card

23 issued by the State of Nevada attached to Plaintiff's FAC expired on March 10, 2012.  She

24 therefore cannot challenge any of the laws or policies that would inhibit a holder of a valid

25 registry card from obtaining a firearm, mandating dismissal of the amended pleading.  Even if

26

27 [1] As discussed herein, *see infra* at 4-5, the federal government does not recognize a medical use
   for marijuana.  Any use in this memorandum of terms such as "medical marijuana," "medical
28 use," or "for medical purposes" should not be read to suggest otherwise.

2

1    she had a valid card, she cannot satisfy the traceability or redressability elements of standing

2    because her harm is self-inflicted and her conduct would still be prohibited under Nevada law.

3        Even if the Court were to reach the merits of the FAC, each claim would fail.  The Ninth

4    Circuit's decision in *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011), squarely forecloses

5    Plaintiff's Second Amendment challenge to § 922(g)(3) and imperils the remainder of the Second

6    Amendment challenge she asserts.  Moreover, if this Court were to engage in an independent

7    Second Amendment analysis, dismissal would still be warranted, as unlawful drug users are not

8    within the class of law-abiding, responsible citizens historically protected by the Second

9    Amendment, and § 922(g)(3) survives any level of scrutiny in any event.  Section 922(d)(3)

10   survives for the same reasons, along with the fact there is no recognized constitutional right to

11   sell firearms.  And ATF's regulation and the Open Letter survive for all of the reasons that

12   § 922(g)(3) and § 922(d)(3) survive.

13       Plaintiff's other constitutional challenges must similarly be dismissed.  Plaintiff's First

14   Amendment claim fails because possessing a medical marijuana card cannot be considered

15   "expressive conduct" equivalent with speech, and in any event, any limitation on First

16   Amendment freedoms are incidental to the important government interest underlying the

17   restrictions on the sale of firearms to illegal drug users.  Plaintiff's substantive and procedural

18   due process claims merge with the First and Second Amendment claims, and do not adequately

19   set forth any due process violation.  Plaintiff's equal protection claim fails to allege a proper

20   classification of a group against whom Defendants have discriminated.  Finally, even if Plaintiff

21   had stated a claim against the Defendants, no waiver of sovereign immunity allows her to

22   recover monetary damages from the United States, as Plaintiff conceded earlier in this litigation.

23   The Court should therefore dismiss the FAC in its entirety.

24   **STATUTORY AND REGULATORY BACKGROUND**

25   **I.    THE GUN CONTROL ACT AND THE CONTROLLED SUBSTANCES ACT**

26       The Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220, included

27   a provision—now codified at 18 U.S.C. § 922(g)—designed "to keep firearms out of the hands

28   of presumptively risky people," including felons, the mentally ill, fugitives from justice, and

3

1   unlawful drug users.  *Dickerson v. New Banner Inst.*, 460 U.S. 103, 112 n.6 (1983).  Specifically,

2   as applied to unlawful drug users, § 922(g)(3) provides that

3   > [i]t shall be unlawful for any person . . . who is an unlawful user of or addicted to
   > any controlled substance (as defined in section 102 of the Controlled Substances
4   > Act (21 U.S.C. § 802)) . . . to . . . possess in or affecting commerce, any firearm or
   > ammunition; or to receive any firearm or ammunition which has been shipped or
5   > transported in interstate or foreign commerce.

6   18 U.S.C. § 922(g)(3).  To help effectuate the firearm exclusions in § 922(g), Congress also

7   banned selling firearms to the same categories of presumptively risky people.  As relevant here,

8   § 922(d)(3) makes it

9   > unlawful for any person to sell or otherwise dispose of any firearm or ammunition
   > to any person knowing or having reasonable cause to believe that such person . . .
10  > is an unlawful user of or addicted to any controlled substance (as defined in
   > section 102 of the Controlled Substances Act (21 U.S.C. § 802)).

11

12  *Id*. § 922(d)(3).

13        In addition to challenging the constitutionality of these two provisions, Plaintiff also

14  targets 27 C.F.R. § 478.11, a regulation issued by ATF to define certain statutory terms.

15  Specifically, the regulation defines an "[u]nlawful user of or addicted to any controlled

16  substance" as

17  > [a] person who uses a controlled substance and has lost the power of self-control
   > with reference to the use of the controlled substance; and any person who is a
18  > current user of a controlled substance in a manner other than as prescribed by a
   > licensed physician.  Such use is not limited to the use of drugs on a particular day,
19  > or within a matter of days or weeks before, but rather that the unlawful use has
   > occurred recently enough to indicate that the individual is actively engaged in such
20  > conduct.  A person may be an unlawful current user of a controlled substance even
   > though the substance is not being used at the precise time the person seeks to
21  > acquire a firearm or receives or possesses a firearm.  An inference of current use
   > may be drawn from evidence of a recent use or possession of a controlled substance
22  > or a pattern of use or possession that reasonably covers the present time . . . .

23  27 C.F.R. § 478.11.  Additionally, the regulation echoes §§ 922(g)(3) and 922(d)(3) by

24  providing that a "controlled substance" is "[a] drug or other substance, or immediate

25  precursor, as defined in . . . 21 U.S.C. § 802." *Id*.

26        Section 102 of the Controlled Substances Act, in turn, defines "controlled substance" as

27  "a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV, or V or

28  part B of this title [21 U.S.C. § 812]." 21 U.S.C. § 802(6).  Since the enactment of the

4

**217**

1   Controlled Substances Act, marijuana (also known as cannabis) has been classified as a Schedule

2   I drug.  21 U.S.C. § 812(c), Schedule I(c)(10).  By classifying marijuana as a Schedule I drug,

3   Congress has determined that marijuana "has a high potential for abuse," that it "has no currently

4   accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted

5   safety for use of [marijuana] under medical supervision."  *Id*. § 812(b)(1)(A)-(C).[2]  As such,

6   Schedule I drugs, including marijuana, cannot be legally prescribed for medical use.  *See* 21

7   U.S.C. § 829; *see also United States v. Oakland Cannabis Buyers' Coop*., 532 U.S. 483, 491

8   (2001) ("Whereas some other drugs can be dispensed and prescribed for medical use, . . . the

9   same is not true for marijuana.").  Additionally, it is generally unlawful for any person to

10   knowingly or intentionally possess marijuana.  *See* 21 U.S.C. § 844(a).  For Schedule I drugs like

11   marijuana, the only exception to this ban on possession is for a federally approved research

12   project.  *See* 21 U.S.C. § 823(f); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By

13   classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the . . .

14   possession of marijuana became a criminal offense, with the sole exception being use of the drug

15   as part of a Food and Drug Administration pre-approved research study.").

**II.   NEVADA'S LAW REGARDING THE USE OF MARIJUANA**

17         Separate and apart from federal law, the State of Nevada also criminalizes the possession

18   of marijuana.  *See* Nev. Rev. Stat. §§ 453.336.  In 2000, however, Nevada's Constitution was

19   amended by initiative petition to add the following provision regarding the medical use of

20   marijuana:

21               The legislature shall provide by law for . . . [t]he use by a patient, upon the advice
                of his physician, of a plant of the genus Cannabis for the treatment or alleviation
22               of cancer, glaucoma, acquired immunodeficiency syndrome; severe, persistent
                nausea of cachexia resulting from these or other chronic or debilitating medical
23               conditions; epilepsy and other disorders characterized by seizure; multiple

24   _____

[2] The Controlled Substances Act delegates authority to the Attorney General to reschedule
25   controlled substances after consulting with the Secretary of Health and Human Services.  *Id*.
     § 811.  The Department of Justice's Drug Enforcement Agency ("DEA") has repeatedly denied
26   petitions to have marijuana removed from Schedule I, most recently in 2011.  *See* Notice of
     Denial of Petition, 76 Fed. Reg. 40552 (July 8, 2011); *see also Gonzales v. Raich*, 545 U.S. 1, 15
27   & n.23 (2005).  Based largely on scientific and medical evaluations prepared by the Department
     of Health and Human Services, DEA has consistently found that marijuana continues to meet the
28   criteria for Schedule I control.  *See* 76 Fed. Reg. at 40552.

5

sclerosis and other disorders characterized by muscular spasticity; or other conditions approved pursuant to law for such treatment.

Nev. Const. art. IV, § 38(a).  Pursuant to this constitutional amendment, Nevada enacted legislation in 2001 that exempts the use of marijuana from state prosecution in certain circumstances.  *See* Nev. Rev. Stat. § 453A.  Subject to certain exceptions, the law provides that "a person who holds a valid registry identification card . . . is exempt from state prosecution for . . . [a]ny . . . criminal offense in which the possession, delivery or production of marijuana . . . is an element."  Nev. Rev. Stat. § 453A.200(1)(f).[3]  This exemption only applies to the extent that the holder of a registry identification card:  (i) engages in "the medical use of marijuana in accordance with the provisions of this chapter as justified to mitigate the symptoms or effects of the person's chronic or debilitating medical condition;" and (ii) "do[es] not, at any one time, collectively possess, deliver or produce more than . . . one ounce of usable marijuana, three mature marijuana plants, and four immature marijuana plants."  *Id*. § 453A.200(3).

The law also specifies who is eligible to receive a state-issued registry identification card, requiring applicants to provide, *inter alia*, "[v]alid, written documentation from the person's attending physician stating that . . . [t]he person has been diagnosed with a chronic or debilitating medical condition."  *Id*. § 453A.210(2)(a)(1).[4]  An applicant must also provide documentation from his or her physician stating that "[t]he medical use of marijuana may mitigate the symptoms or effects of that condition" and that "[t]he attending physician has explained the possible risks and benefits of the medical use of marijuana."  *Id*. § 453A.210(2)(a)(2)–(3).  The state-issued registry identification card is valid for one year and must be renewed by annually submitting updated written documentation from the cardholder's attending physician, including proof that the individual continues to suffer from a chronic or debilitating medical condition.  *Id*. §§ 453A.220(4), 453A.230.  If a cardholder is "diagnosed by the person's attending physician as

---

[3] The statute specifies, however, that cardholders are not exempt from state prosecution for a number of other crimes related to marijuana use.  *Id*. § 453A.300(1).

[4] The statute defines the term "chronic or debilitating medical condition" to include AIDS, cancer, and glaucoma, as well as "[a] medical condition or treatment for a medical condition that produces, for a specific patient," one or more of the following symptoms: (i) cachexia, (ii) persistent muscle spasms, (iii) seizures, (iv) severe nausea, or (v) severe pain.  Nev. Rev. Stat. § 453A.050.

6

*219*

1   no longer having a chronic or debilitating medical condition, the person . . . shall return the[]

2   registry identification card[] to the [State] within 7 days after notification of the diagnosis." *Id.*

3   § 453A.240.

4          Nevada's law governing the medical use of marijuana does not purport to "legalize"

5   medical marijuana, but rather specifies the limited circumstances under which the possession of

6   limited amounts of marijuana for purported medical use is exempt from state prosecution.  This

7   fact is evidenced by the overall structure of the statute and by the act's inclusion of a directive

8   instructing the next session of the Nevada legislature to "review statistics provided by the

9   legislative counsel bureau with respect to . . . [w]hether persons exempt from state prosecution

10  [under] this act have been subject to federal prosecution for carrying out the activities concerning

11  which they are exempt from state prosecution pursuant to [the act]."  Act of June 14, 2001

12  (Assembly Bill 453), ch. 592, § 48.5.  Along these lines, a one-page "Important Notice" posted

13  on the State of Nevada's Department of Health and Human Services, Health Division's website

14  advises the public that "**ISSUANCE OF A STATE OF NEVADA MEDICAL MARIJUANA**

15  **REGISTRY CARD DOES NOT EXEMPT THE HOLDER FROM PROSECUTION**

16  **UNDER FEDERAL LAW**."  *See* Nev. State Health Div., *Important Notice* (Feb. 12, 2009),

17  http://health.nv.gov/PDFs/MMP/ImportantNotice.pdf (emphasis in original) [App.[5] at Tab 1];

18  Nev. State Health Div., *Program Facts* 2 (Feb. 12, 2009), http://health.nv.gov/PDFs/MMP/

19  ProgramFacts.pdf [App. at Tab 2] (stating, in a two-page document posted on the Health

20  Division's website, that "[t]he Medical Marijuana law is a state law, offering protection from

21  state law enforcement only" and that "[t]he federal government does not recognize the state law

22  and is not bound by it.").  A section of the Nevada Health Division's website answering

23  frequently asked questions also informs the public that cardholders cannot fill a prescription for

24  medical marijuana at a pharmacy because "[t]he federal government classifies marijuana as a

25  Schedule I drug, which means licensed medical practitioners cannot prescribe it."  Nev. State

26  Health Div., *Medical Marijuana, Frequently Asked Questions*, No.  8, http://health.nv.gov/

27  _____

[5] Pursuant to Local Rule 7-3, the United States has concurrently filed an appendix to this
memorandum containing secondary materials cited herein.

28

7

1     MedicalMarijuana_FAQ.htm (last updated January 17, 2013) [App. at Tab 3].  The frequently

2     asked questions page also specifies that a patient may withdraw from the program by submitting

3     a written statement indicating that he or she wishes to withdraw and by returning the individual's

4     registry identification card.  *Id.*, No. 12.

5     **III.**       **ATF'S SEPTEMBER 2011 OPEN LETTER TO FFLS**

6         On September 21, 2011, ATF issued an "Open Letter to All Federal Firearms Licensees."

7     *See* FAC, Ex. 2-B.  The Open Letter first notes that ATF "has received a number of inquiries

8     regarding the use of marijuana for medicinal purposes and its applicability to Federal firearms

9     laws" and that the "purpose of this open letter is to provide guidance on the issue and to assist

10    [FFLs] in complying with Federal firearms laws and regulations."  *Id*. The Open Letter then

11    observes that "[a] number of States have passed legislation allowing under State law the use or

12    possession of marijuana for medicinal purposes" and that "some of these States issue a card

13    authorizing the holder to use or possess marijuana under State law."  *Id*.  The Open Letter

14    summarizes the relevant provisions of federal law, noting:  (i) that "18 U.S.C. § 922(g)(3)[]

15    prohibits any person who is an 'unlawful user of or addicted to any controlled substance . . .'

16    from shipping, transporting, receiving or possessing firearms or ammunition;" (ii) that the

17    Controlled Substances Act lists marijuana as a Schedule I controlled substance and that "there

18    are no exceptions in Federal law for marijuana purportedly used for medicinal purposes, even if

19    such use is sanctioned by State law;" (iii) that "18 U.S.C. § 922(d)(3)[] makes it unlawful for any

20    person to sell or otherwise dispose of any firearm or ammunition to any person knowing or

21    having reasonable cause to believe that such person is an unlawful user of or addicted to a

22    controlled substance;" and (iv) that, under 27 C.F.R. § 478.11, "'an inference of current use may

23    be drawn from evidence of a recent use or possession of a controlled substance or a pattern of

24    use or possession that reasonably covers the present time.'"  FAC, Ex. 2-B.

25        The Open Letter draws two conclusions from these provisions: first, "any person who

26    uses or is addicted to marijuana, regardless of whether his or her State has passed legislation

27    authorizing marijuana use for medicinal purposes, is an unlawful user of or addicted to a

28    controlled substance, and is prohibited by Federal law from possessing firearms or ammunition."

1   *Id*. Second, if an FFL is "aware that the potential transferee is in possession of a card authorizing

2   the possession and use of marijuana under State law, then [the FFL] ha[s] 'reasonable cause to

3   believe' that the person is an unlawful user of a controlled substance" and "may not transfer

4   firearms or ammunition to the person." *Id*. This holds even if the potential transferee answered

5   "no" to Question 11(e) on ATF Form 4473,[6] which asks, "Are you an unlawful user of, or

6   addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled

7   substance?" *Id*.; *see also* FAC., Ex. 2-C.

8                              **PROCEDURAL HISTORY**

9         Plaintiff filed her original complaint on October 18, 2011. Dkt. No. 1. Defendants

10   moved to dismiss on February 3, 2012. Dkt. No. 10. The Court held a hearing on Defendants'

11   motion on November 2, 2012. After the hearing, the parties filed a stipulation allowing Plaintiff

12   to file a First Amended Complaint.[7] Plaintiff filed the amended pleading on December 17, 2012.

13   Dkt. No. 34.

14         The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the

15   Defendants' Motion to Dismiss. According to the First Amended Complaint, Plaintiff applied for

16   a medical marijuana registry card from the State of Nevada in October 2010. FAC ¶ 39. Since

17   the age of ten, Plaintiff has experienced severe menstrual cramps, which she describes as

18   "sometimes debilitating, even leading to further painful side effects, such as severe nausea and

19   cachexia." FAC, Ex. 1, ¶ 20. As part of her application for a medical marijuana registry card,

20   Plaintiff obtained a recommendation from her doctor to use marijuana. FAC ¶ 40; Ex. 2.

21   Plaintiff then submitted that recommendation, along with the appropriate paperwork, to the State

---

22   [6] ATF Form 4473 is a firearms transaction record that all potential purchasers are required to
23   complete before receiving a firearm from an FFL. *See* 27 C.F.R. § 478.124.

24   [7] At the November 2, 2012 hearing, the Court granted the parties' request for supplemental
briefing on four issues. Because the parties agreed to allow Plaintiff to amend her complaint, the
Court ordered the parties to address these issues in the motion to dismiss briefing. *See* Dkt No.
25   33. Defendants have addressed the questions in the present memorandum as follows: the level of
scrutiny for Second Amendment challenges after *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012)
26   (*en banc*) is addressed at page 24; the level of deference that should be afforded to the Open
Letter, and whether the Letter is interpretive or legislative, is addressed at page 35; whether
27   Plaintiff has standing to assert a claim challenging § 922(d)(3) is addressed at page 11, n.9; and
whether Plaintiff's claim is "ripe" because she did not answer the question on the ATF Form
28   4473 asking whether she was an unlawful drug user is addressed at page 11, n.9.

1   of Nevada.  Ex. 1 ¶ 22.  On May 12, 2011, Nevada issued a registry identification card to

2   Plaintiff.  FAC ¶ 41; *see also* FAC, Ex. 1-B.

3        On October 4, 2011, Plaintiff visited Custom Firearms & Gunsmithing, a federally

4   licensed gun store in Moundhouse, Nevada, to purchase a handgun.  In order to effect the

5   transaction, Plaintiff began to complete ATF Form 4473, but did not answer Question 11(e) ("Are

6   you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug,

7   or any other controlled substance?").  *See* FAC, Ex. 1-C.  Plaintiff alleges that her "natural

8   inclination" was to answer "no" to Question 11(e), FAC ¶ 46, but that "it had been brought to

9   [her] attention that ATF had "promulgated a policy whereby any person holding a medical

10   marijuana registry card is automatically considered an 'unlawful user of, or addicted to

11   marijuana.'"  FAC Ex. 1 ¶ 30.  For that reason, she left Question 11(e) blank.  FAC Ex. 1 ¶ 31.

12   When Plaintiff provided the form to Mr. Frederick Hauseur, the store's proprietor, he informed

13   her that he was prohibited from selling her any firearm or ammunition.  FAC Ex. 1, ¶ 32.  Mr.

14   Hauseur and Plaintiff had known each other for nearly a year, and Mr.  Hauseur was previously

15   aware that Plaintiff possessed a state-issued medical marijuana registry card.  *Id*.; FAC Ex. 2,

16   ¶ 11.  With that knowledge, Mr. Hauseur "refused to sell Ms. Wilson the firearm that she

17   requested on the grounds that she was an 'unlawful user of a controlled substance.'"  FAC Ex. 2,

18   ¶ 13.  Plaintiff alleges that she "presently intends to acquire a functional handgun for use within

19   her home for self-defense but is prevented from doing so" by federal law, as implemented by

20   ATF.  FAC ¶ 6.

21        Defendants have moved to dismiss the FAC under Federal Rule of Civil Procedure

22   12(b)(1) because Plaintiff lacks standing.  *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136,

23   1040 (9th Cir. 2003).  If the Court were to reach the merits, Defendants have moved to dismiss

24   under Rule 12(b)(6), which requires dismissal if the Complaint fails to state a claim upon which

25   relief can be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[8]

26   _____

27   [8] If the Court determines that it can only dismiss the Complaint by relying on the extrinsic
     sources referenced in Parts II.A.2. and II.A.3., *infra*, then the Court should treat Defendants'
     motion as a Motion for Summary Judgment under Rule 56.  To facilitate that, Defendants attach

28   a Statement of Undisputed Facts in compliance with Local Rule 56-1.

10

**ARGUMENT**

**I.  PLAINTIFF LACKS STANDING TO CHALLENGE THE STATUTES, THE REGULATION, AND ATF'S OPEN LETTER**

To establish standing under Article III, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc*. *v*. *Laidlaw Envtl*. *Servs*. *Inc*., 528 U.S. 167, 180–81 (2000). Plaintiff fails to establish each of the requirements.[9]  The FAC should accordingly be dismissed in its entirety, and the Court need not reach Plaintiff's constitutional claims. *Shaw v. Terhune* 380 F.3d 473, 478 (9th Cir. 2004) (noting the "canonical admonition" that courts must "avoid considering constitutionality if an issue may be resolved on narrower grounds").

---

[9] At the November 2, 2012 hearing on Defendants' motion to dismiss the original complaint, the Court asked the parties to brief whether Plaintiff, as an attempted purchaser and not a *seller* of firearms, had standing to challenge § 922(d)(3).  Plaintiff lacks standing to challenge § 922(d)(3) for the three reasons set forth in this Section.  But if she overcame these hurdles, the standing doctrine would likely not preclude Plaintiff's challenge to § 922(d)(3).  Though the statute is directed primarily at sellers, the scope of the prohibition on sales to unlawful drug users is a mirror image of the prohibition on receipt and possession of firearms by unlawful drug users in § 922(g)(3).  At least one court has found that in that circumstance, where a statutory scheme effectively prohibits an individual from receiving and a seller from selling a firearm, a plaintiff may have standing to challenge both statutes. *See, e.g.*, *Dearth v. Holder*, 641 F.3d 499, 500-03 (D.C. Cir. 2011) (finding that plaintiff had standing to challenge both § 922(a)(9), which prohibits a non-resident from receiving a firearm, and § 922(b)(3), which prohibits the sale of a firearm to a non-resident).

The Court also asked the parties to address whether the fact that Plaintiff failed to answer Question 11e on Form 4473 means that the case is not ripe. Tr. at 72:2-4.  At the hearing, counsel for Plaintiff represented (incorrectly) that Mr. Hauser had stated in his declaration that he had "stopped" Plaintiff from answering Question 11e on Form 4473. *See* Tr.  at 58:10-59:1. In fact, Mr. Hauseur's declaration—identical versions of which are attached to Plaintiff's original complaint and the FAC—contains no such statement.  Rather, Mr.  Hauseur states that he knew that Plaintiff possessed a registry card, and therefore "refused to sell Ms. Wilson the firearm that she requested *on the grounds that she was an 'unlawful user of a controlled substance*.'"  FAC Ex. 2 ¶ 13 (emphasis added).  That said, whether or not Mr. Hauseur stopped her from answering the question is immaterial to the ripeness question in this case.  The Open Letter states that "if you are aware that the potential transferee is in possession of a [medical marijuana registry card], then you have 'reasonable cause to believe' that the person is an unlawful user" of illegal drugs. FAC Ex. 2-B.  Mr.  Hauseur knew that Plaintiff had a card, and as a result, he denied her attempt to purchase a firearm.  The answer (or lack thereof) to Question 11e is therefore irrelevant in this case and does not pose a ripeness problem.

11

1 **A. Plaintiff Cannot Establish the "Injury in Fact" Requirement Because She Lacks
2      a Valid Medical Marijuana Card**

3        Each of Plaintiff's causes of action rests on a common allegation: that Plaintiff, as a

4 holder of a state-issued medical marijuana registry card, cannot obtain a firearm.  But according

5 to the documents attached to Plaintiff's declaration, Plaintiff does not currently possess a valid

6 medical marijuana registry card.  That card expired on March 10, 2012.  *See* FAC Ex. 1 at 10.

7        In order to satisfy the "injury in fact" requirement for standing in cases such as this,

8 where declaratory and injunctive relief are sought, Plaintiff must show that she is suffering an

9 ongoing injury or faces an immediate threat of injury.  *See Los Angeles v. Lyons*, 461 U.S. 95,

10 105 (1983); 28 U.S.C. § 2201 (proceeding under the Declaratory Judgment Act requires "a case

11 of actual controversy").  Past wrongs are insufficient to confer standing for purposes of obtaining

12 injunctive relief.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998).  Because the

13 only apparent impediment to Plaintiff's ability to obtain a firearm has been removed since March

14 2012, Plaintiff is not suffering an ongoing injury, and the operative pleading lacks an "actual

15 controversy."  Plaintiff therefore lacks standing to challenge the statutes, regulation, and the

16 Open Letter, and the First Amended Complaint should be dismissed in its entirety.[10]

17

18 _____

19 [10] Plaintiff cannot cure this standing defect by arguing that an FFL could use the months-expired
registration card as evidence of "current use" of marijuana.  If an FFL were to do so, the injury

20 would then be traceable to the FFL, and not the Government.  In addition to establishing injury
in fact, a plaintiff bears the burden of establishing a causal connection between the injury and the

21 conduct complained of, as well as a likelihood that the injury would be redressed by a favorable
decision.  *Lujan*, 504 U.S. at 560-61.  The Open Letter states that an FFL who is "aware that the

22 potential transferee is in possession of a card authorizing the possession and use of marijuana
under State Law" has "reasonable cause to believe" that the person is an unlawful user.  FAC,

23 Ex. 2-B.  An expired card is not "a card authorizing the possession and use of marijuana."  If an
FFL used the expired card to justify the denial of sale, Plaintiff's injury would stem from the

24 actions of the FFL, not the Government.  *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98
F.3d 1121, 1130 (9th Cir. 1996) (holding that plaintiff lacked standing to challenge legislation

25 that, by banning certain guns, resulting in dealers raising prices on guns the plaintiffs wanted to
purchase, because "nothing in the Act directs manufacturers or dealers to raise the price of

26 regulated weapons") (citing *Lujan*, 504 U.S. at 560); *Lane v. Holder*, 2012 WL 6734784, at *4
(4th Cir. Dec. 31, 2012) (finding that any harm to potential firearms purchasers created by

27 transfer fees imposed by FFLs "result[] from the actions of third parties not before this court,
[and as such] plaintiffs are unable to demonstrate traceability").  Because the purported injury

28 would not be directly linked to Defendants' actions, the causation and redressability prongs of
Article III standing would not be met.

**B. Plaintiff Cannot Satisfy the Traceability Elements of Standing Because Her Injury is Self-Inflicted**

Even if Plaintiff had a valid registry card, she would still lack standing because her injury is self-inflicted.  Because Plaintiff's past inability to acquire a firearm stemmed from her own decision to retain her card, any injury she suffers is traceable not to Defendants, but to her own decisionmaking, and is therefore insufficient to confer standing to prosecute her claims.  *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding that "self-inflicted injuries" failed to meet causation element of standing); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[S]elf-inflicted harm doesn't satisfy the basic requirements for standing."); *cf. Yancey*, 621 F.3d at 687 (because § 922(g)(3) extends only to current users, "[defendant] himself controls his right to possess a gun; the Second Amendment, however, does not require Congress to allow him to simultaneously choose both gun possession and drug abuse").  The existence of a viable alternative to the alleged injury is significant, because "Article III standing ultimately turns on whether a plaintiff gets something other than moral satisfaction if the plaintiff wins."  *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 122 (2d Cir. 2009) (internal citation and punctuation omitted); *Fire Equip. Mfrs. Ass'n v. Marshall*, 679 F.2d 679, 682 n.5 (7th Cir. 1982) ("[P]etitioners cannot allege an injury from one of the options where they can choose another which causes them no injury.").  Individuals who hold valid state-issued medical marijuana cards are either unlawful drug users or are holding cards that serve them no purpose.  These individuals have a choice: they can either retain their Nevada-issued medical marijuana card and forfeit the right to acquire a firearm, or they can refrain from using marijuana, return their card to the State, and regain the right to acquire a firearm.  Either way, individuals such as Plaintiff cannot seek an injunction or declaratory relief against the Government for an injury entirely of their own design.

**C. Plaintiff Cannot Satisfy the Traceability or Redressability Elements of Standing Because She Has Not Challenged Nevada's Prohibition on the Possession of a Firearm by an "Unlawful User"**

Under Nevada law, "[a] person shall not own or have in his or her possession or under his or her custody or control any firearm if the person . . . [i]s an unlawful user of, or addicted to,

13

1   any controlled substance." Nev. Rev. Stat. § 202.360(1)(c).[11]  Like § 922(g)(3), the Nevada

2   statute defines "controlled substance" in terms of the Controlled Substances Act.  *Id.*

3   § 202.360(3)(a) (citing 21 U.S.C. § 802(6)).  FFLs are prohibited from selling a firearm to an

4   individual "where the purchase *or possession* by such person of such firearm would be in

5   violation of any State law."  18 U.S.C. § 922(b)(2) (emphasis added).  Thus, if § 922(g)(3), §

6   922(d)(3), 27 C.F.R. § 478.11, and the Open Letter were all found unconstitutional, Plaintiff still

7   could not possess a firearm under Nevada law or purchase a firearm from an FFL under §

8   922(b)(2).  Plaintiff therefore cannot show that her alleged harm is caused by operation of the

9   challenged federal laws.  Nor would a favorable decision by this Court redress Plaintiff's claimed

10   Second Amendment injury.[12]

11         First, Plaintiff's injury—the inability to obtain a firearm—is not "fairly traceable" to

12   Defendants' conduct.  In analyzing traceability, courts must determine whether "the line of

13   causation between the illegal conduct and injury [is] too attenuated."  *Allen v. Wright*, 468 U.S.

14   737, 752 (1984).  As relevant here, both Federal and Nevada law prohibit possession of a firearm

15   by an "unlawful user" of a controlled substance.  The state law prohibition undercuts the

16   argument that Plaintiff's injury is traceable strictly to the challenged federal laws and not "th[e]

17   result [of] the independent action of some third party not before the court."  *Lujan v. Defenders*

18   *of Wildlife*, 504 U.S. 555, 560 (1992); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121,

19   1130 (9th Cir. 1996) (the presence of state law banning conduct similar to conduct addressed by

20   a federal law undermined traceability);[13] *see also Pritikin v. Department of Energy*, 254 F.3d 791,

[11] *Gallegos v. State*, 163 P.3d 456 (Nev. 2007), invalidated paragraph b of NRS 202.360(1) as
unconstitutionally vague because it did not define "fugitive from justice."  That holding does not
affect the section at issue here, NRS 202.360(1)(c).  *See Pohlabel v. State*, 268 P.3d 1264, 1265
n.1 (Nev. 2012) (recognizing that paragraphs within NRS 202.360(1) other than NRS
202.360(1)(b) were not invalidated by *Gallegos*).

[12] According to the Supreme Court, the "fairly traceable" and "redressability" components of
standing are two distinct "facets of a single causation requirement." *Allen v. Wright*, 468 U.S.
737, 753 n.19 (1984).  "To the extent there is a difference, it is that the former examines the
causal connection between the assertedly unlawful conduct and the alleged injury, whereas the
latter examines the causal connection between the alleged injury and the judicial relief
requested."  *Id*.

[13] Though *San Diego County Gun Rights Committee* predates *Heller*, the Ninth Circuit's
conclusion that the plaintiffs' alleged injuries were not "fairly traceable" to the challenged
federal law, 98 F.3d at 1130, is unaffected by *Heller*'s analysis.

14

797 (9th Cir. 2001) (private citizen suing the Department of Energy and individual governmental officers to compel funding of medical monitoring program failed to meet Article III standing on the traceability and redressability prongs because another agency, not before the court, decides whether to implement the program).

Second, an order from this Court granting Plaintiff's requested relief would not redress Plaintiff's alleged injuries. If the Court invalidated the federal statutes, the regulation and the Open Letter, the Nevada law prohibiting possession of a firearm by an "unlawful user" would remain intact, as would the requirement that FFLs could not sell a firearm to someone violating state law. *See White v. United States*, 2009 WL 173509 at *5 (S.D. Ohio Jan. 26, 2009) (holding that plaintiffs' injury was not caused by the Animal Welfare Act, as cockfighting was banned in all fifty states); *see also Midwest Media Prop. L.L.C. v. Symmes Twp.*, 503 F.3d 456, 461-63 (6th Cir. 2007) (finding that plaintiffs failed to establish redressability when they challenged township's zoning regulations prohibiting off-premises signs, because plaintiffs' rejected applications for off-premises signs had been, or could have been, rejected for violations of township's height/size restrictions and plaintiffs had not challenged those restrictions); *cf. San Diego County Gun Rights*, 98 F.3d at 1130. Because there is an additional barrier to Plaintiff possessing or purchasing a handgun, the Court cannot redress her alleged injury in this lawsuit.

## II.   PLAINTIFF'S SECOND AMENDMENT RIGHTS HAVE NOT BEEN VIOLATED

Even if Plaintiff had standing to bring her claims, each would fail. Her Second Amendment claims fail because the Ninth Circuit has held that Congress did not violate the Second Amendment by prohibiting unlawful drug users from possessing firearms. *See United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). This binding holding applies to all unlawful drug users, even those whose marijuana use is exempt from state prosecution. Even if the Ninth Circuit had not already upheld 18 U.S.C. § 922(g)(3) against a Second Amendment challenge, Plaintiff's challenge to this provision would still fail because it proscribes activity that falls outside the scope of the Second Amendment's protections. In any event, because prohibiting possession of firearms by unlawful drug users, including marijuana users, substantially relates to the important governmental interests in combatting violent crime and protecting public safety, 18

15

1 U.S.C. § 922(g)(3) does not violate Plaintiff's Second Amendment rights.  Plaintiff's challenge

2 to § 922(d)(3) similarly fails, as the Second Amendment does not protect a right to sell firearms.

3 Moreover, because § 922(g)(3)—which prohibits unlawful drug users' firearm *possession*—does

4 not violate the Second Amendment, the fact that § 922(d)(3) might prevent unlawful drug users

5 from *acquiring* firearms does not render that provision constitutionally suspect.  Finally, for the

6 same reasons that § 922(g)(3) and § 922(d)(3) do not violate the Second Amendment, ATF's

7 regulation defining terms in the two statutes and the agency's interpretation of the laws in the

8 Open Letter are also constitutional.  In particular, the interpretation of these statutes as set forth

9 in the Open Letter is entirely reasonable and properly tailored to the compelling government

10 interests at issue here.

11     **A.  18 U.S.C. § 922(g)(3), as Implemented and Interpreted by ATF, Does Not Violate the Second Amendment.**

12

13         **1.  Plaintiff's Second Amendment Challenge to § 922(g)(3) is Foreclosed by the Ninth Circuit's Decision in *Dugan*.**

14     The Second Amendment provides: "A well-regulated Militia, being necessary to the

15 security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

16 U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), after determining

17 that the Second Amendment confers an individual right to keep and bear arms, *Id*. at 595, the

18 Supreme Court held that "the District's ban on handgun possession in the home violates the

19 Second Amendment, as does its prohibition against rendering any lawful firearm in the home

20 operable for the purpose of immediate self-defense."  *Id*. at 635.  The Court's holding was

21 narrow and addressed only the "core" right of "law-abiding, responsible citizens to use arms in

22 defense of hearth and home." *Id*. at 634–35 (emphasis added).

23     The Supreme Court also took care to note that, like other constitutional rights, the right to

24 keep and bear arms is "not unlimited." *Id*. at 626.  Although the Supreme Court declined to

25 "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it

26 cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding

27 prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing

28 conditions and qualifications on the commercial sale of arms." *Id*. at 626-27.  The Court clarified

16

1   that it was "identify[ing] these presumptively lawful regulatory measures only as examples" and

2   that its list was not "exhaustive." *Id*. at 627 n.26; *see also McDonald v. City of Chicago*, 130 S.

3   Ct. 3020, 3047 (2010).

4         Following *Heller*, numerous Second Amendment challenges have been raised against

5   § 922(g)(3), and not one has succeeded. *See, e.g.*, *United States v. Yancey*, 621 F.3d 681, 683,

6   687 (7th Cir. 2010) (holding that § 922(g)(3) was "equally defensible" as, and analogous to, the

7   categorical bans described as presumptively lawful in *Heller* and that "Congress acted within

8   constitutional bounds by prohibiting illegal drug users from firearm possession because it is

9   substantially related to the important governmental interest in preventing violent crime."); *United*

10   *States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010) ("find[ing] that § 922(g)(3) is the type of

11   'longstanding prohibition[] on the possession of firearms' that Heller declared presumptively

12   lawful"); *United States v. Richard*, 350 F. App'x 252, 260 (10th Cir. 2009) (unpublished); *see*

13   *also United States v. Patterson*, 431 F.3d 832, 835–36 (5th Cir. 2005) (holding, pre-*Heller*, that

14   although the Fifth Circuit recognized an individual right to bear arms, a criminal defendant's

15   Second Amendment challenge to § 922(g)(3) was unavailing).[14]

16         The Ninth Circuit similarly upheld § 922(g)(3) against a Second Amendment challenge in

17   *Dugan*.  Like other courts that have considered the issue, the Ninth Circuit found significant

18   *Heller*'s language describing the presumptive lawfulness of  § 922(g)(1)'s prohibition on firearm

19   possession by felons and § 922(g)(4)'s prohibition on firearm possession by the mentally ill.

20   *Dugan*, 657 F.3d at 999.  The Ninth Circuit found that "the same amount of danger" is presented

21   by allowing habitual drug users to possess firearms because "[h]abitual drug users, like career

22   criminals and the mentally ill, more likely will have difficulty exercising self-control,

23

---

24   [14] *United States v. Carter*, 669 F.3d 411 (4th Cir. 2012), is not to the contrary.  There, the Fourth
     Circuit found that the government had failed to meet its burden of establishing a record showing

25   a reasonable fit between § 922(g)(3) and the government's important interest in public safety,
     and it therefore remanded to allow the government an opportunity to substantiate the record.  The

26   Court said that to do so "should not be difficult."  *Id*. at 419.  On remand, the United States
     "shouldered its burden of establishing that section 922(g)(3) is reasonably fitted to achieve the

27   substantial government objective of protecting the community from crime by keeping guns out
     of the hands of those impaired by their use of controlled substances."  *United States v. Carter*,

28   2012 WL 5935710, at *7 (S.D. W. Va. Nov. 27, 2012).

17

1   particularly when they are under the influence of controlled substances." *Id*.  The court also

2   found an important distinction between § 922(g)(3) and the two prohibitions declared

3   presumptively lawful by *Heller* that actually favored § 922(g)(3)'s constitutionality—namely,

4   that "an unlawful drug user may regain his right to possess a firearm simply by ending his drug

5   abuse," whereas those individuals who have been convicted of a felony or committed to a mental

6   institution generally face a lifetime ban.  *Id*.  The court therefore concluded that "[b]ecause

7   Congress may constitutionally deprive felons and mentally ill people of the right to possess and

8   carry weapons . . . Congress may also prohibit illegal drug users from possessing firearms." *Id*.

9        Although it is not evident from the face of the opinion, Dugan, like Plaintiff, raised

10  arguments relating to his possession of a state-issued card exempting him from state prosecution

11  for using marijuana for medical purposes.  *See* Brief for Appellant at 59, *Dugan*, 657 F.3d 998

12  (No.  08-10579), ECF No.  57 ("Here, Mr. Dugan was . . . licensed to grow and use medical

13  marijuana.").  Indeed, Dugan's central argument in his Second Amendment challenge was that

14  "millions of Americans peacefully engage in the unlawful use of marijuana—and millions more

15  do so legally under state medical marijuana laws—without engaging in any behavior that would

16  provide a legitimate basis for excluding them from the reach of the Second Amendment." *Id*. at

17  57.  The Ninth Circuit, however, treated Dugan's status as a medical marijuana cardholder as

18  irrelevant to his Second Amendment claim—and rightly so.  Congress has determined that

19  marijuana "has no currently accepted medical use in treatment in the United States," 21 U.S.C.

20  § 812(b)(1)(B), and has accordingly specified that it may not be validly prescribed or lawfully

21  possessed, *Id*. §§ 829, 844(a).  Although several states, including Nevada, have taken a different

22  view of marijuana's potential medical benefits, it is well settled that Congress has authority

23  under the Commerce Clause to criminalize marijuana possession, even if such possession is not

24  also illegal under state law.  *See Gonzales v. Raich*, 545 U.S. 1 (2005); *see also Raich v.*

25  *Gonzales* ("*Raich II*"), 500 F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the

26  Supreme Court, that there is no Ninth Amendment or substantive due process right to use

27  marijuana for claimed medical purposes).  All marijuana users are therefore unlawful users of a

28  controlled substance, and *Dugan*'s holding that Congress may "prohibit illegal drug users from

18

1   possessing firearms" without violating the Second Amendment applies equally to all marijuana

2   users.  657 F.3d at 999–1000; *see also United States v. Stacy*, 2010 WL 4117276, at *7 (S.D. Cal.

3   Oct. 18, 2010) (noting, in the course of rejecting a Second Amendment challenge to § 922(g)(3),

4   that "[t]he fact that this particular case involves the alleged lawful use of marijuana under state

5   law does not have any bearing on the presumptively lawful nature of the restriction").

6   Accordingly, Plaintiff's claim that her Second Amendment rights have been violated by §

7   922(g)(3) must fail.

> **2.  Even if *Dugan* Did Not Foreclose Plaintiff's Challenge, Her Claim Would Still Fail, Because Unlawful Drug Users, Including Those Who Comply with State Medical Marijuana Laws, Fall Outside the Scope of the Second Amendment.**

11      Because *Dugan* resolves Plaintiff's Second Amendment challenge to § 922(g)(3), the

12  Court need not undertake an "independent" constitutional analysis of the statute.  *See Town of*

13  *Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 778 (2005) (doctrine of constitutional avoidance

14  cautions courts to avoid making unnecessary constitutional determinations).  Nonetheless, even

15  if the Court were to engage in such an analysis, Plaintiff's claim would still fail.

16      Several courts have established a two-step approach to Second Amendment challenges to

17  federal statutes and regulations.  *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1252-

18  53 (D.C. Cir. 2011) ("*Heller II*"); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011);

19  *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *United States v. Marzzarella*, 614

20  F.3d 85, 89 (3d Cir. 2010).  Under this approach, "[w]e ask first whether a particular provision

21  impinges upon a right protected by the Second Amendment; if it does, then we go on to

22  determine whether the provision passes muster under the appropriate level of constitutional

23  scrutiny."  *Heller II*, 670 F.3d at 1253.  Plaintiff's claim fails both parts of the analysis because

24  unlawful drug users are not within the class of law-abiding, responsible citizens historically

25  protected by the Second Amendment, and because, in any event, § 922(g)(3) survives the

26  appropriate level of scrutiny.

27      As noted earlier, *Heller*'s holding was relatively narrow, recognizing only the "core" right

28  of "*law-abiding*, responsible citizens to use arms in defense of hearth and home."  554 U.S. at

19

1  634–35 (emphasis added).  Given this narrow holding, as well as the Court's recognition that

2  categorical prohibitions on firearm possession by felons and the mentally ill are presumptively

3  lawful, it is clear that *Heller*'s determination that the Second Amendment confers an individual

4  right to keep and bear arms cannot be misconstrued as recognizing a right for all individuals to

5  possess firearms under any circumstances.  Rather, *Heller*'s carefully crafted articulation of the

6  right at the core of the Second Amendment acknowledges that the Anglo-American right to arms

7  that was incorporated into the Bill of Rights was subject to certain well-recognized exceptions.[15]

8  Given the relatively recent history of federal enactments disqualifying felons and the mentally ill

9  from possessing weapons,[16] *Heller* also teaches that "exclusions [from the right to bear arms]

10  need not mirror limits that were on the books in 1791," when the Second Amendment was

11  enacted.  *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*); *see also id*. at 640

12  ("[*Heller*] tell[s] us that statutory prohibitions on the possession of weapons by some persons are

13  proper—and . . . that the legislative role did not end in 1791.  That *some* categorical limits are

14  proper is part of the original meaning, leaving to the people's elected representatives the filling in

15  of details.") (emphasis in original).  Nevertheless, the history of the right to bear arms as it

16  developed in England and the American colonies is consistent not only with the disarmament of

17  convicted felons and the mentally ill, but also more broadly supports Congress's authority to

18  prohibit firearm possession by non-law-abiding citizens, including those who violate drug laws.

19

20

---

21  [15] It is "perfectly well settled" that the Bill of Rights embodies "certain guaranties and
immunities which we had inherited from our English ancestors," and "which had, from time
22  immemorial, been subject to certain well-recognized exceptions, arising from the necessities of
the case." *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897).  The Court similarly recognized that
23  "[i]n incorporating these principles into the fundamental law, there was no intention of
disregarding the exceptions, which continued to be recognized as if they had been formally
24  expressed." *Id*.; *see also Rutan v. Republican Party of Ill*., 497 U.S. 62, 95-96 (1990) (Scalia, J.,
dissenting) ("The provisions of the Bill of Rights . . . did not create by implication novel
25  individual rights overturning accepted political norms.").

26  [16] *See Skoien*, 614 F.3d at 640–41 ("The first federal statute disqualifying felons from possessing
firearms was not enacted until 1938 . . . .  [T]he ban on possession by all felons was not
27  enacted until 1961. . . .  Moreover, legal limits on the possession of firearms by the mentally ill
also are of 20th Century vintage; § 922(g)(4), which forbids possession by a person 'who has
been adjudicated as a mental defective or who has been committed to a mental institution,' was
28  not enacted until 1968." (citations omitted)).

20

1      *Heller* identified the right protected by the 1689 English Declaration of Rights as "the

2  predecessor to our Second Amendment." 554 U.S. at 593.  This document provided, "That the

3  subjects which are Protestants may have arms for their defense suitable to their conditions and *as*

4  *allowed by law*." *Id*. (quoting 1 W. & M., c. 2, § 7, in 3 Eng. Stat. at Large 441 (1689))

5  (emphasis added).  It is undisputed that both before and after its adoption, the English

6  government retained the power to disarm individuals it viewed as dangerous.  *Id*. at 582.

7  Moreover, "like all written English rights," this right to arms "was held only against the Crown,

8  not Parliament," *id*. at 593, and thus its scope was only "as allowed by law."  Significantly, the

9  English Declaration of Rights did not repeal the 1662 Militia Act, which authorized lieutenants

10 of the militia (appointed by the King) to disarm "any person or persons" judged "*dangerous to*

11 *the Peace of the Kingdome*," 13 & 14 Car. 2, c. 3, § 1 (1662) (Eng.) (emphasis added), and "was

12 to remain in force with only insignificant changes for many years to come," Joyce Lee Malcolm,

13 *To Keep and Bear Arms* 123 (1994) [App. at Tab 4]; *accord* Patrick J.  Charles, "*Arms for Their*

14 *Defence"?: An Historical, Legal, and Textual Analysis of the English Right to Have Arms and*

15 *Whether the Second Amendment Should Be Incorporated in* McDonald v. City of Chicago, 57

16 Clev. State L.  Rev. 351, 373, 376, 382–83, 405 (2009).  Since the act was employed against

17 those viewed as "disaffected or dangerous," Charles, 57 Clev. State L.  Rev. at 376–78,

18 individuals could be disarmed without any adjudication of wrongdoing.

19      The documentary record surrounding the adoption of the Constitution similarly confirms

20 that the right to keep and bear arms was limited to "law-abiding and responsible" citizens.  In

21 other words, "it is clear that the colonists, at least in some manner, carried on the English

22 tradition of disarming those viewed as 'disaffected and dangerous.'"  *United States v. Tooley*, 717

23 F. Supp. 2d 580, 590 (S.D. W. Va. 2010).  Notably, "*Heller* identified as a 'highly influential'

24 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the

25 Convention of the State of Pennsylvania to Their Constituents" (the "Pennsylvania proposal"),

26 which "asserted that citizens have a personal right to bear arms '*unless for crimes committed*, or

27 *real danger of public injury from individuals*.'"  *Skoien*, 614 F.3d at 640 (quoting *Heller*, 554

28 U.S. at 604; 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 665 (1971)

21

1  (emphasis added)).  "One reason for considering this proposal 'highly influential,' is that it

2  represents the view of the Anti-federalists – the folk advocating . . . for a strong Bill of Rights."

3  *Tooley*, 717 F. Supp. 2d at 590.  This proposal demonstrates that, at the time the Constitution was

4  adopted, even ardent supporters of guaranteeing an individual right to keep and bear arms

5  recognized that criminals and other dangerous individuals should not enjoy its benefits.

6  Although the Second Amendment itself proved more "succinct[]" than the Pennsylvania

7  proposal, *Heller*, 554 U.S. at 659 (Stevens, J., dissenting), the latter remains probative of how the

8  Amendment's supporters viewed the balance between public security and the right to keep and

9  bear arms.  *See id*. at 605 (reaffirming that "the Bill of Rights codified venerable, widely

10  understood liberties").

11        The Pennsylvania proposal, moreover, supports the view that "the right to arms does not

12  preclude laws disarming the unvirtuous citizens (i.e., criminals) or those who, like children or the

13  mentally unbalanced, are deemed incapable of virtue."  Don B. Kates & Clayton E. Cramer,

14  *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1360

15  (2009); *see also* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-*

16  *Defense: An Analytical Framework and Research Agenda*, 56 UCLA L. Rev. 1443, 1497 (2009)

17  ("[A]ny textual or original-meaning limitations on who possesses the right will often stem from

18  the perception that certain people aren't trustworthy enough to possess firearms."); *id*. at 1510

19  (opining that "those whose judgment is seen as compromised by mental illness, mental

20  retardation, or drug or alcohol addiction have historically been seen as less than full

21  rightholders"); Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American*

22  *Origins of Gun Control*, 73 Fordham L.  Rev. 487, 492 (2004); Robert E. Shalhope, *The Armed*

23  *Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125, 130 (1986).  Additional historical

24  support for this understanding of the right is found in nineteenth-century cases upholding state

25  legislation restricting firearm possession by certain classes of people perceived to be dangerous.

26  For example, the Missouri Supreme Court held in 1886 that a state law prohibiting intoxicated

27  persons from carrying firearms did not violate the state constitutional right to keep and bear

28  arms.  *State v. Shelby*, 2 S.W. 468, 468–69 (Mo. 1886).

1    Courts interpreting the Second Amendment after *Heller* have recognized the importance

2    of the Amendment's historical limitations.  *See, e.g.*, *Heller II*, 670 F.3d at 1252.  For example,

3    the First Circuit relied, in part, on historical sources in holding that the right to keep arms does

4    not extend to juveniles.  *United States v. Rene E.*, 583 F.3d 8, 15-16 (1st Cir. 2009), *cert. denied*,

5    130 S. Ct. 1109 (Jan. 11, 2010).  The Ninth Circuit has recognized this history as well, noting

6    that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably

7    . . . tied to' the concept of a 'virtuous citizen[ry]' . . . and that 'the right to bear arms does not

8    preclude laws disarming the unvirtuous citizens (*i.e.*, criminals)."  *United States v. Vongxay*, 594

9    F.3d 1111, 1118 (9th Cir. 2010) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*,

10   49 Law & Contemp. Probs. 143, 146 (1986)).  This history is sufficient to resolve Plaintiff's

11   challenge to § 922(g)(3).  Simply put, unlawful drug users—a category that includes *all*

12   marijuana users—are outside the class of "law-abiding, responsible" citizens historically

13   protected by the Second Amendment.  Because the right to keep arms does not extend to those

14   who are actively engaged in illegal activity, § 922(g)(3), as interpreted by ATF, cannot violate the

15   Second Amendment.  *See United States v. Hendrix*, 2010 WL 1372663, at *3 (W.D. Wis. Apr. 6,

16   2010) ("Preventing criminal users of controlled substances from possessing guns is not a

17   restriction on the values that the Second Amendment protects, which, to repeat, is the right of

18   law-abiding citizens to possess handguns in their homes for self-protection.").

19          **3.  In Any Event, 18 U.S.C. § 922(g)(3) Substantially Relates to the Important**

20   **Governmental Interest in Protecting Public Safety and Combating Violent Crime.**

21       Even if the Court were to find that § 922(g)(3) impinges upon a right protected by the

22   Second Amendment (or declines to reach the issue), it should still uphold § 922(g)(3), as applied

23   to all marijuana users, because the statute easily survives heightened review.  In *Heller*, the

24   Supreme Court did not specify which standard of review should be applied in Second

25   Amendment cases, other than to rule out the use of rational-basis scrutiny.  554 U.S. at 628 &

26   n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis,

27   the Second Amendment would be redundant with the separate constitutional prohibitions on

28   irrational laws, and would have no effect.").  The question of the proper standard of

23

1    constitutional scrutiny is still unsettled in the Ninth Circuit.  A panel of the Ninth Circuit moved

2    towards resolving this issue by holding that "only regulations which substantially burden the

3    right to keep and to bear arms trigger heightened scrutiny under the Second Amendment,"

4    although declining to decide "precisely what type of heightened scrutiny applies to laws that

5    substantially burden Second Amendment rights."  *Nordyke v. King*, 644 F.3d 776, 786 & n.9 (9th

6    Cir. 2011).  However, that decision was vacated by a subsequent *en banc* decision.  681 F.3d

7    1041 (9th Cir. 2012).  The *en banc* decision specifically declined to adopt a specific level of

8    scrutiny.  *Id*. at 1044-45; *see id*. at 1045 (O'Scannlain, J., concurring in judgment) (noting that

9    the majority "fails to explain the standard of scrutiny" under which it evaluated the Second

10   Amendment challenge).[17]

11        The other courts of appeals that have addressed the standard-of-review issue have

12   uniformly concluded that this type of regulation is, at most, subject to intermediate scrutiny.  The

13   Fourth Circuit, for example, declined to decide whether firearm possession by unlawful drug

14   users was understood to be within the scope of the Second Amendment's guarantee at the time of

15   ratification, but then rejected the defendant's claim that strict scrutiny should apply to his

16   challenge because he purchased the guns at issue for self-defense in the home.  *United States v.*

17   *Carter*, 669 F.3d 411, 416-17 (4th Cir. 2012).  Instead, the court applied intermediate scrutiny,

18   explaining that "[w]hile we have noted that the application of strict scrutiny is important to

19   protect the core right of self-defense identified in *Heller* . . . that core right is only enjoyed, as

20   *Heller* made clear, by 'law-abiding, responsible citizens,'" which unlawful drug users "cannot

21   claim to be."  *Id*. at 416.  The court noted that it was "join[ing] the other courts of appeals that

22   have rejected the application of strict scrutiny in reviewing the enforcement of § 922(g)(3), or,

23   for that matter, any other subsection of § 922(g)."  *Id*. at 417.  *See Yancey*, 621 F.3d at 683

24   (applying intermediate scrutiny to uphold § 922(g)(3) against a Second Amendment challenge);

25

―――――――――――――――
26   [17] The *en banc* opinion arguably held that strict scrutiny would not apply.  As noted by Judge
     O'Scannlain's concurrence, strict scrutiny "requires the government to show that it has taken the
27   least restrictive means to serve a compelling government interest."  *Id*. at 1045 n.2.  Because the
     Government did not have the opportunity to make such a showing, the majority could not have
28   applied strict scrutiny.  *Id*.

1   *see also Marzzarella*, 614 F.3d at 96-97 (applying intermediate scrutiny to 922(k)); *Reese*, 627

2   F.3d at 802 (applying intermediate scrutiny to § 922(g)(8)); *Heller II*, 670 F.3d at 1257 (applying

3   intermediate scrutiny to review novel gun registration laws).

4           Notably, intermediate scrutiny is appropriate here because Plaintiff can avoid the

5   restriction of § 922(g)(3) simply by relinquishing her marijuana registry card and refraining from

6   using marijuana.  The severity of the restriction is therefore not particularly substantial.  *See*

7   *Heller II*, 670 F.3d at 1257 ("[A] regulation that imposes a substantial burden upon the core right

8   of self-defense protected by the Second Amendment must have a strong justification, whereas a

9   regulation that imposes a less substantial burden should be proportionately easier to justify.");

10  *Yancey*, 621 F.3d at 686-87 (because § 922(g)(3) prohibits only *current* drug users from

11  possessing firearms, it is "far less onerous than those affecting felons and the mentally ill").  The

12  weight of this authority confirms that if the Court deems it necessary to apply a constitutional

13  means-end analysis, it should apply no more than intermediate scrutiny.

14          There can be no doubt that § 922(g)(3), as applied to marijuana users, satisfies

15  intermediate scrutiny.  Under intermediate scrutiny, "a regulation must be substantially related to

16  an important governmental objective."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1134 (9th Cir.

17  2009).  An important—indeed, compelling—governmental interest is at stake here—namely, the

18  government's interest in protecting public safety and preventing violent crime.  *See United States*

19  *v. Salerno*, 481 U.S. 739, 748, 750 (1987) (noting that the Supreme Court has "repeatedly held

20  that the Government's regulatory interest in community safety can, in appropriate circumstances,

21  outweigh an individual's liberty interest" and that the "[g]overnment's general interest in

22  preventing crime is compelling"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The 'legitimate

23  and compelling state interest' in protecting the community from crime cannot be doubted."); *see*

24  *also Carter*, 669 F.3d at 417 ("We readily conclude in this case that the government's interest in

25  'protecting the community from crime' by keeping guns out of the hands of dangerous persons is

26  an important governmental interest."); *Yancey*, 621 F.3d at 684 ("The broad objective of § 922(g)

27  —suppressing armed violence—is without doubt an important one.").

28          In evaluating the fit between the indisputably important objectives at stake and the

25

*238*

1   prohibition in § 922(g)(3), several relevant considerations affect the analysis.  First, intermediate

2   scrutiny, "by definition, allows [the government] to paint with a broader brush" than strict

3   scrutiny.  *Peruta v. Cnty. of San Diego*, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) (internal

4   quotation marks and citation omitted).  Second, in order to advance its compelling interests in

5   combating crime and protecting public safety, Congress may need to make "predictive

6   judgments" about the risk of dangerous behavior.  *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 665

7   (1994).  Such judgments are entitled to "substantial deference" by the courts because Congress is

8   "far better equipped than the judiciary" to collect, weigh, and evaluate the relevant evidence and

9   to formulate appropriate firearms policy in response.  *Id.* at 665–66; *Kachalsky v. Cnty. of*

10  *Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (legislatures are better equipped to make sensitive

11  policy judgments concerning the "dangers in carrying firearms and the manner to combat those

12  risks").  Third, "the nature and quantity of any showing required by the government 'to satisfy

13  heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and

14  plausibility of the justification raised.'"  *Carter*, 669 F.3d at 418 (quoting *Nixon v. Shrink Mo.*

15  *Gov't PAC*, 528 U.S. 377, 391 (2000)).  Since it is hardly novel—and entirely plausible—that

16  mixing guns and drugs poses a severe risk to public safety, the government's burden here is

17  relatively low.  Finally, the government may carry its burden by relying on "a wide range of

18  sources, such as legislative text and history, empirical evidence, case law, and common sense, as

19  circumstances and context require."  *Id.*

20      All of these sources point inexorably to the conclusion that a substantial relationship

21  exists between § 922(g)(3), as applied to marijuana users, and Congress's goals of protecting

22  public safety and combatting violent crime.  Congress enacted the precursor to what is now §

23  922(g)(3) in the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213.  Congressional

24  action was prompted by the "increasing rate of crime and lawlessness and the growing use of

25  firearms in violent crime."  H.R. Rep. No. 90-1577, at 7 (1968), *reprinted in* 1968 U.S.C.C.A.N.

26  4410, 4412.  To meet this growing problem, Congress banned certain classes of individuals from

27  receiving firearms shipped in interstate commerce based on its determination that access to guns

28  by these individuals was generally contrary to the public interest.  *See Huddleston v. United*

26

1   *States*, 415 U.S. 814, 824 (1974) ("The principal purpose of the federal gun control legislation . .

2   . was to [curb] crime by keeping 'firearms out of the hands of those not legally entitled to

3   possess them because of age, criminal background, or incompetency.'" (quoting S. Rep.  No.  90-

4   1501, at 22 (1968))).  As the House manager stated during debate on the legislation:

5           [W]e are convinced that a strengthened [firearms control system] can significantly
            contribute to reducing the danger of crime in the United States.  No one can dispute the
6           need to prevent drug addicts, mental incompetents, persons with a history of mental
            disturbances, and persons convicted of certain offenses from buying, owning, or
7           possessing firearms.  This bill seeks to maximize the possibility of keeping firearms out
            of the hands of such persons.

8   114 Cong. Rec. 21657, 21784 (1968) (quoted in *Huddleston*, 415 U.S. at 828; *Yancey*, 621 F.3d

9   at 686).  Moreover, Congress evidenced a particular concern with marijuana use: "[w]hile the

10  statute swept in users of several different categories of drugs, marijuana was the only drug

11  specifically listed by name." *Carter*, 669 F.3d at 417 (citing 82 Stat. 1213, 1220-21, which

12  prohibited receipt of firearms by any person who is "'an unlawful user of or addicted to

13  marihuana or any depressant or stimulant drug . . . or narcotic drug'").[18]

14          Congress is not the only legislative body to draw the conclusion that guns and drugs do

15  not mix.  Rather, as the court in *Yancey* found significant, "many states have restricted the right

16  of habitual drug abusers or alcoholics to possess or carry firearms."  621 F.3d at 684.[19]  As noted

17  previously, Nevada is among the states that have codified an analogue to § 922(g)(3).  *See* Nev.

18  Rev. Stat. § 202.360(1)(c).  The state legislation "demonstrate[s] that Congress was not alone in

19  concluding that habitual drug abusers are unfit to possess firearms." *Yancey*, 621 F.3d at 684.

20

21  _____

22  [18] As *Carter* notes in recounting § 922(g)(3)'s legislative history, the "the 1968 enactment . . .
    contained a number of loopholes." *Id*. at 417.  The provision took its current shape with the
    enactment of the Firearm Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449, 452 (1986).

23  [19] *See* Ala. Code § 13A-11-72(b); Ark. Code Ann. § 5-73-309(7), (8); Cal. Penal Code
    § 12021(a)(1); Colo. Rev. Stat. § 18-12-203(1)(e), (f); Del. Code Ann. tit. 11, § 1448(a)(3); D.C.
24  Code § 22-4503(a)(4); Fla. Stat. § 790.25(2)(b)(1); Ga. Code Ann. § 16-11-129(b)(2)(F), (I), (J);
    Haw. Rev. Stat. § 134-7(c)(1); Idaho Code Ann. § 18-3302(1)(e); 720 Ill. Comp. Stat.
25  5/24-3.1(a)(3); Ind. Code § 35-47-1-7(5); Kan. Stat. Ann. § 21-4204(a)(1); Ky. Rev. Stat. Ann.
    § 237.110(4)(d), (e); Md. Code Ann., Public Safety, 5-133(b)(4), (5); Mass. Gen. Laws ch. 140,
26  § 129B(1)(iv); Minn. Stat. § 624.713(1)(10)(iii); Mo. Rev. Stat. § 571.070(1)(1); Nev. Rev. Stat.
    § 202.360(1)(c); N.H. Rev. Stat. Ann. § 159:3(b)(3); N.J. Stat. Ann. § 2C:58-3(c)(2); N.C. Gev.
27  Stat. § 14-404(c)(3); Ohio Rev. Code Ann. § 2923.13(A)(4); R.I. Gen. Laws § 11-47-6; S.C.
    Code Ann. § 16-23-30(A)(1); S.D. Codified Laws § 23-7-7.1(3); W. Va. Code § 61-7-7(a)(2),
28  (3).

27

1    This shared legislative judgment is amply supported by academic research and empirical

2  studies demonstrating the heightened risk to the public safety posed by the possession of firearms

3  by marijuana users.  According to the Bureau of Justice Statistics, a 2004 survey found that

4  "32% of state prisoners and 26% of federal prisoners said they had committed their current

5  offense while under the influence of drugs."  Bureau of Justice Statistics, *Drugs and Crime*

6  *Facts*, *available at* http://www.bjs.gov/content/pub/pdf/dcf.pdf [App. at Tab 5].  Marijuana,

7  moreover, was the most frequent drug of choice: a 2002 survey of convicted jail inmates found

8  that marijuana was the most common drug used at the time of the offense, and similar results

9  were found among probationers.  *Id*.  Moreover, the Office of National Drug Control Policy's

10  ("ONDCP's") arrestee drug abuse monitoring program, which collects data in 10 cities from

11  males 18 years and older at the point of their involvement in the criminal justice system, found

12  that "[m]arijuana was the most commonly detected drug in all of the . . . sites in 2010."  ONDCP,

13  *ADAM II 2010 Annual Report*, at 20 (2010), *available at* http://www.whitehouse.gov/sites/

14  default/files/ondcp/policyand-research/adam2010.pdf [App.  at Tab 6].  In the ten years that

15  ONDCP has been collecting data, "the proportion of arrestees testing positive for marijuana has

16  never been less than 30 percent of the sample in any of the current 10 sites."  *Id*. Indeed, "[i]n

17  2010, in 9 of the 10 sites, 40 percent or more of the arrestees reported [marijuana] use in the

18  prior 30 days."  *Id*. at 22.  This correlation between marijuana use and crime is unsurprising

19  given the well-documented deleterious effects regular marijuana use has on an individual.

20  Marijuana use is associated with impaired cognitive functioning, dependence, mental illness, and

21  poor motor performance.  *See* ONDCP, *Fact Sheet: Marijuana Legalization*, at 1 (Oct.  2010),

22  *available at* http://www.whitehouse.gov/sites/default/files/ondcp/Fact_Sheets/

23  marijuana_legalization_fact_sheet_3-3-11.pdf [App. at Tab 7].  Marijuana intoxication "can

24  cause distorted perceptions, difficulty in thinking and problem solving," and "[s]tudies have

25  shown an association between chronic marijuana use and increased rates of anxiety, depression,

26  suicidal thoughts, and schizophrenia."  *Id*. at 2; *see also* National Institute of Drug Abuse, *Topics*

27  *in Brief: Marijuana*, at 1 (Dec.  2011), *available at* https://www.drugabuse.gov/sites/default/

28  files/marijuana_3.pdf [App.  at Tab 8] (noting that marijuana can have wide-ranging effects,

1   including impaired short term memory, slowed reaction time and impaired motor coordination,

2   altered judgment and decision-making, and altered mood); *Id*. at 2 ("Population studies reveal an

3   association between cannabis use and increased risk of schizophrenia and, to a lesser extent,

4   depression and anxiety.").

5          The potential risks posed by the possession of a firearm by someone who uses this mind-

6   altering substance are clear.  Moreover, nothing in these studies indicates that the effects of

7   marijuana that make it dangerous for a user to possess a firearm are somehow mitigated when a

8   doctor has indicated that "use of marijuana may mitigate the symptoms or effects of [a chronic or

9   debilitating medical] condition."  Nev. Rev. Stat. § 453A.210(2)(a)(2).  The documented effects

10  of marijuana use thus corroborate the substantial relationship between § 922(g)(3) and

11  Congress's goal of protecting the public's safety.  *See Yancey*, 621 F.3d at 685 (recognizing that

12  "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-

13  control, making it dangerous for them to possess deadly firearms.").

14         In addition, the limited temporal reach of § 922(g)(3) helps ensure that it bears a

15  reasonable fit to the ends that it serves.  Unlike most of § 922(g)'s other firearm exclusions,

16  which may operate as lifetime bans, § 922(g)(3) only applies to those who are currently unlawful

17  users.  *See* 27 C.F.R. § 478.11 (defining "unlawful user" so that any unlawful use must have

18  "occurred recently enough to indicate that the individual is actively engaged in such conduct").

19  Through this feature, "Congress tailored the prohibition to cover only the time period during

20  which it deemed such persons to be dangerous."  *Carter*, 669 F.3d at 419.  Moreover, §

21  922(g)(3) "enables a drug user who places a high value on the right to bear arms to regain that

22  right by parting ways with illicit drug use."  *Id*.  The choice is the user's, and nothing in the

23  Second Amendment "require[s] Congress to allow [the unlawful user] to simultaneously choose

24  both gun possession and drug abuse."  *Yancey*, 621 F.3d at 687.

25         Given the "substantial deference" afforded to "predictive judgments" made by Congress

26  in order to advance the nation's interests, *Turner Broad. Sys.*, 512 U.S. at 665, these sources

27  demonstrate that § 922(g)(3), as applied to marijuana users, satisfies intermediate scrutiny.  That

28  Plaintiff has registered to use marijuana for purported medical purposes, as opposed to

29

1  recreational purposes, does nothing to change the result.  Plaintiff may attempt to argue (and did

2  so in response to Defendants' first Motion to Dismiss) that § 922(g)(3) is unconstitutional as

3  applied to her because she is a responsible marijuana user who poses no genuine threat to public

4  safety.  But such an argument is clearly precluded by the Supreme Court's recognition in *Heller*

5  that "some categorical disqualifications are permissible" and that "Congress is not limited to

6  case-by-case exclusions of persons who have been shown to be untrustworthy with weapons."

7  *Skoien*, 614 F.3d at 641 (emphasis added); *see also Tooley*, 717 F. Supp. 2d at 597 ("Section

8  922(g)(9) is of course overbroad in the sense that not every domestic violence misdemeanant

9  who loses his or her right to keep and bear arms would have misused them against a domestic

10  partner or other family member.  Under intermediate scrutiny, however, the fit does not need to

11  be perfect, but only be reasonably tailored in proportion to the important interest it attempts to

12  further.  As such, intermediate scrutiny tolerates laws that are somewhat overinclusive."

13  (citations omitted)).

14       Nor can Plaintiff succeed on a Second Amendment challenge by "disagree[ing] with

15  Congress' policy decision to link the firearms prohibition in § 922(g)(3) to the Controlled

16  Substances Act."  *Carter*, 669 F.3d at 421.  As the Fourth Circuit recognized, "[i]n enacting

17  § 922(g)(3), Congress could have chosen to reexamine the foundations of national drug policy

18  and to identify precisely what kinds of drug users ought to be prohibited from possessing

19  firearms.  Instead, it opted, quite reasonably, to connect § 922(g)(3)'s prohibition on the carefully

20  studied and regularly updated list of substances contained in the Controlled Substances Act."  *Id*.

21  Given that § 922(g)(3)'s means need only be reasonably tailored to its ends, this reasonable

22  legislative judgment is entirely consistent with the Second Amendment.

23       In sum, a variety of sources, including legislative text and history, empirical evidence,

24  case law, and common sense, demonstrate that § 922(g)(3), as applied to marijuana users,

25  substantially relates to the indisputably important government interest in protecting public safety

26  and preventing crime.  It therefore satisfies the requirements of intermediate-scrutiny review.

27  Consequently, even if the Court deems it necessary to apply a constitutional means-end analysis,

28  Plaintiff's challenge to § 922(g)(3), as interpreted by ATF, must fail.

30

**B. 18 U.S.C. § 922(d)(3), as Implemented and Interpreted by ATF, Does Not Violate the Second Amendment.**

Given that § 922(g)(3) is consistent with the Second Amendment, Plaintiff's challenge to § 922(d)(3) is similarly unavailing.  First, § 922(d)(3)'s restriction is directed toward firearm sellers, not the putative purchaser.  Nothing in *Heller* suggests that the Constitution protects a right to sell firearms; indeed, *Heller*'s language, indicating that "nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms," strongly suggests otherwise.  554 U.S. at 626–27.  Only one court to date appears to have considered a Second Amendment challenge to § 922(d)(3), and it found that there was no authority indicating that, "at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm."  *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. Apr. 13, 2011) (unpublished).  Second, the right of "law-abiding, responsible citizens to use arms in defense of hearth and home" that is at the "core" of the Second Amendment, *Heller*, at 634–35, "does not necessarily give rise to a corresponding right to sell a firearm," *Chafin*, 423 F. App'x at 344.

This is not to say that restrictions on the sale of firearms could never implicate Second Amendment concerns.  But § 922(d)(3) cannot not run afoul of the Second Amendment because, for all the reasons discussed above, unlawful drug users who are precluded from acquiring firearms by the statute's operation may constitutionally be prohibited from possessing firearms.  In other words, because § 922(g)(3)'s prohibition of the *possession* of firearms by unlawful drug users is consistent with the Second Amendment, § 922(d)(3)'s prohibition of the *acquisition* of firearms by these same individuals is equally consistent.

**C. 27 C.F.R. § 478.11 Does Not Violate the Second Amendment**

Similarly, nothing in the ATF's definition of the term "unlawful user of or addicted to any controlled substance" contained in 27 C.F.R. § 478.11 runs afoul of the Second Amendment.  The regulation survives for all of the reasons that the statutes survive—that is, *Dugan*'s reasoning applies, users of medical marijuana fall outside the historical understanding of the Second Amendment, and the regulation survives intermediate scrutiny.  *See* Parts II.A.-II.B.

31

1     **D.  The Open Letter Does Not Violate the Second Amendment**

2        Finally, for the same reasons that defeat Plaintiff's Second Amendment challenge to the

3 firearm laws, Plaintiff's challenge to the Open Letter must also fail.  As an initial matter, the

4 Open Letter does not create any "new" restrictions on the possession or sale of firearms, but

5 rather summarizes the interplay between state medical marijuana laws and the applicable federal

6 firearm laws (§ 922(g)(3), § 922(d)(3), and 27 C.F.R. § 478.11).  The Letter restates the existing

7 law and provides guidance to FFLs in their application of the laws to new circumstances.

8 Accordingly, all of the reasons that support the constitutionality of the firearm laws apply with

9 equal force to the Letter.  *See supra* Parts II.A.-II.C.

10        Even if the court were to treat the letter as an agency action independent of the statutes

11 and the regulation, it would survive a Second Amendment challenge.  Applying intermediate

12 scrutiny, the Letter is "substantially related to an important government objective."  *Stormans*,

13 586 F.3d at 1134.  The purpose of the Letter (as with the statutes and the regulation) is the

14 important government interest in protecting public safety and preventing violent crime in

15 general, and in particular, "keeping guns out of the hands of dangerous persons."  *Carter*, 669

16 F.3d at 417.[20]  Protecting public safety is a "compelling" interest, *Salerno*, 481 U.S. at 748, and

17 is not in any way diminished by the fact that the particular marijuana users addressed by the

18 letter do so in compliance with state law.

19        The Letter is "substantially related" to that objective for several reasons.  First, the Letter

20 preserves the temporal scope of § 922(g)(3) and § 922(d)(3)—effectively limiting the restriction

21 to cardholders who currently possess a valid card—which several courts have found persuasive

22 in the intermediate scrutiny analysis.  *See Carter*, 669 F.3d at 418; *Yancey*, 621 F.3d at 687.  In

23 order to obtain a firearm, a holder of a medical marijuana registry card need only surrender the

24

---

25 [20] To the extent that Plaintiff intends to challenge the policy judgment regarding the use of
firearms by marijuana users, as she did earlier in this case, her contentions would be better

26 addressed to Congress, as "[u]nder the system of government created by our Constitution, it is up
to legislatures, not courts, to decide on the wisdom and utility of legislation." *Ferguson v.*

27 *Skrupa*, 372 U.S. 726, 729 (1963); *see also Turner Broad. Sys.*, 512 U.S. at 665-66 (noting that
"Congress is far better equipped than the judiciary to 'amass and evaluate the vast amounts of

28 data' bearing upon" complex and dynamic issues).

card.  If the cardholder uses marijuana, then he cannot possess a firearm; if the cardholder does

not use marijuana, then he possesses a useless card, and can immediately surrender the card in

order to obtain the firearm.  This limiting feature—which is entirely within the individual's

control—keeps the prohibitory sweep exceedingly narrow.

Second, ATF's interpretation of the firearm laws expressed in the Letter is reasonable and

furthers the underlying goals of the statutes in a sufficiently targeted manner.  Section 922(d)(3)

requires that a seller cannot sell a firearm to an individual "knowing *or having reasonable cause*

*to believe*" that the individual is an unlawful user of a controlled substance.  Congress did not

define "knowing" or "having reasonable cause to believe."  Reasonable cause "is often proven

largely through circumstantial evidence and inferences," *United States v. Jae Gab Kim*, 449 F.3d

933, 943 (9th Cir. 2006) (emphasis omitted), and as used in § 922(d)(3) does not require "actual,

subjective knowledge of the purchaser's intended illegal use."  *United States v. Johal*, 428 F.3d

823, 827 (9th Cir. 2005).  Section 478.11 provides that current use can be *inferred* from

"evidence of a recent use or possession" or a "pattern of use or possession that reasonably covers

the present time[.]"  With that background in mind, possession of a medical marijuana card gives

rise to a seller's "reasonable cause to believe" that the potential buyer is a "current user" of

marijuana because:  (1) the card is only issued to persons who have a "chronic or debilitating

medical condition," Nev. Rev. Stat. § 453A.050, which implies a consistent pattern of use; (2)

the cardholder must obtain from her physician documentation stating that the "[t]he medical use

of marijuana may mitigate the symptoms or effects of [the patient's] condition" and that "[t]he

attending physician has explained the possible risks and benefits of the medical use of

marijuana," and then submit that documentation to Nevada, Nev. Rev. Stat. § 453A.210(a)(2)-

(3), indicating an intent to use marijuana to alleviate the symptoms of the condition; (3) the card

is only valid for one year, Nev. Rev. Stat. § 453A.220(4), which implies recent use; and (4) if the

cardholder no longer has the "chronic and debilitating" condition, the cardholder must return the

card to the State of Nevada within seven days, Nev. Rev. Stat. § 453A.240, which means that a

valid cardholder has an immediate justification for using marijuana (under Nevada law).  For

33

1   these reasons, the Letter supports the underlying purpose of § 922(g)(3) and § 922(d)(3).[21]

2       To the extent that the Open Letter might be considered overinclusive—in the sense that

3   not every possessor of a medical marijuana card will use marijuana and then, under the

4   influence, recklessly use a firearm—intermediate scrutiny does not require a perfect fit.  The fit

5   need only be tailored in proportion to the interest it attempts to further; in other words,

6   intermediate scrutiny tolerates a certain level of overinclusivity.  *See, e.g.*, *Tooley*, 717 F. Supp.

7   2d at 597 (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 490 (1989)).  This is

8   especially the case with firearm laws, which are necessarily predictive.  *See Kachalsky*, 701 F.3d

9   at 97 ("In the context of firearm regulation, the legislature is 'far better equipped than the

10  judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the

11  dangers in carrying firearms and the manner to combat those risks.") (quoting *Turner Broad.*

12  *Sys.*, 512 U.S. at 665); *United States v. Miller*, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009)

13  ("[T]he nature of the threat posed by gun violence makes narrowing the scope of gun regulation

14  impracticable.").  "Sound policymaking often requires legislators to forecast future events and to

15  anticipate the likely impact of these events based on deductions and inferences for which

16  complete empirical support may be unavailable."  *Turner Broad. Sys.*, 512 U.S. at 665.  Congress

17  has made the reasoned judgment that combining firearm possession with marijuana use—*any*

18  marijuana use—will inevitably lead to heightened risk of acts of violence and threats to public

19  safety.  This "predictive judgment" is "accord[ed] substantial deference."  *Id*.; *see also Skoien*,

20  614 F.3d at 640 ("That some categorical limits are proper is part of the original meaning [of the

21  Second Amendment], leaving to the people's elected representatives the filling in of details.").

22  The Open Letter furthers that purpose by ensuring that federally-licensed sellers are not

---

[21] Because this is a civil pre-enforcement action brought by plaintiff rather than a criminal prosecution brought by the Government, whether Plaintiff actually uses marijuana is irrelevant for the purposes of Defendants' motion to dismiss.  What *is* relevant is whether it was appropriate for Mr.  Hauseur to rely on Plaintiff's possession of a medical marijuana card in determining that he had "reasonable cause to believe" that Plaintiff was an "unlawful user."  Mr. Hauesur knew that Plaintiff possessed the card and therefore "refused to sell Ms. Wilson the firearm that she requested on the grounds that she was 'an unlawful user of a controlled substance.'"  FAC Ex. 2, ¶ 13.  That judgment was entirely reasonable, because possession of a card that allows one to use marijuana to treat a chronic condition certainly gives rise to a "reasonable cause to believe" that the person does, in fact, use marijuana.

34

1    erroneously transferring firearms to certain types of marijuana users, and does so without

2    overextending the scope of the statutes and regulation.

3         Finally, as a more general matter, ATF's interpretation of § 922(g)(3), § 922(d)(3) and 27

4    C.F.R. § 478.11, as set forth in the Open Letter, is entitled to deference under *Skidmore v. Swift &*

5    *Co.*, 323 U.S. 134, 140 (1944).  The Open Letter merely clarifies or explains the law already in

6    existence, and therefore is considered an "interpretative rule."  *See Mora-Meraz v. Thomas*, 601

7    F.3d 933, 939-40 (9th Cir. 2010).[22]  Such interpretations are "entitled to respect" under *Skidmore*,

8    to the extent that it has the "power to persuade."  *Christensen v. Harris County*, 529 U.S. 576,

9    587 (2000).  As noted above, the agency's interpretation is well-considered and reasonable, and

10   should be entitled to *Skidmore* deference.  In addition, the Open Letter also interprets the

11   application of 27 C.F.R. § 478.11, and an agency's interpretation of its own regulation is entitled

12   to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *See Price v. Stevedoring Servs. of*

13   *Am., Inc.*, 697 F.3d 820, 828-29 (9th Cir. 2012) ("[S]ubstantial deference must be given to an

14   agency's construction of its own regulations.") (citing *Martin v. Occupational Safety and Health*

15   *Review Comm'n*, 499 U.S. 144, 154-55 (1991)).  For all of these reasons, the Open Letter does

16   not violate the Second Amendment.

17   **III.    PLAINTIFF'S FIRST AMENDMENT RIGHTS HAVE NOT BEEN VIOLATED**

18        Plaintiff's First Amendment claim must also be dismissed.  Plaintiff contends that she has

19   a right to exercise "certain non-verbal and communicative conduct," including the acquisition

20   and possession of a medical marijuana card, and that Defendants actions have deterred her from

21   exercising that right.  FAC ¶ 82, 94.[23]  But this conduct can hardly be considered expressive

22

23   ───────────────
     [22] Though Plaintiff alleges in the FAC that the Letter is legislative, not interpretive, FAC ¶ 69,
24   the Letter more accurately falls into the latter category.  For purposes of this case, the distinction
     is only relevant in determining the amount of deference afforded to the Open Letter.

     [23] Plaintiff incorrectly suggests that her claim may be considered to be a First Amendment
25   "retaliation claim."  *See* AC ¶ 93-94 (apparently alleging that Defendants retaliated against
     Plaintiff for her possession of her medical marijuana card).  Such claims typically arise in the
26   retaliatory prosecution or the § 1983 context.  *See, e.g.*, *Lacey v. Maricopa Co.*, 693 F.3d 896
     (9th Cir. 2012).  Those contexts do not apply here.  Needless to say, Plaintiff has not set forth
27   facts adequate to suggest that the passage of § 922(g)(3), § 922(d)(3), the promulgation of 27
     C.F.R. § 478.11, or the distribution of the Open Letter, was motivated by a retaliation for any
28   communicative conduct by Plaintiff.

                                        35

1   conduct protected by the First Amendment, and even if it were, any free speech limitation is

2   incidental to the compelling government interests underlying the statutes, the regulation, and the

3   Open Letter.

4          The Supreme Court has "rejected the view that an apparently limitless variety of conduct

5   can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express

6   an idea." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation and internal quotation marks

7   omitted).  However, certain conduct "may be sufficiently imbued with elements of

8   communication to fall within the scope of the First and Fourteenth Amendments." *Id*. (citation

9   and internal quotation marks omitted).  Conduct is analyzed as speech under the First

10  Amendment if "[1] [a]n intent to convey a particularized message [is] present, and [2] [whether]

11  the likelihood [is] great that the message would be understood by those who viewed it." *Spence*

12  *v. Washington*, 418 U.S. 405, 410-11 (1974).

13         Under the first of the two *Spence* factors, Plaintiff has not adequately alleged an intent to

14  convey a particularized message through the mere acquisition and possession of her registry

15  card.  As a preliminary matter, acquisition or possession of an item does not typically suggest

16  expressive conduct, though the use of that item in a particular context might.  For example,

17  acquiring or possessing an American flag or a draft card is not typically conduct that rises to the

18  level of speech.  But publicly waving—or burning—the flag or the card could amount to

19  expressive conduct.  *See Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003) (citing *Johnson*,

20  491 U.S. at 404-06); *see also Johnston v. Port Authority of New York and New Jersey*, 2011 WL

21  3235760, at *11 (E.D.N.Y. July 28, 2011) (mere possession of an identification card did not

22  demonstrate an "intent to convey a particularized message").  Plaintiff must show more than

23  mere acquisition or possession of her registry card to bring the conduct into the realm of

24  protected speech.

25         In a similar vein, Plaintiff has not alleged that the act of acquiring or possessing a card

26  was "conveyed" to any third party.  Though she states that she has shared the fact that she has the

27  card "with others," FAC at ¶ 88, that is not sufficient to establish that the acquisition or

28  possession was a communicative act.  Moreover, at no point in Plaintiff's declaration does she

36

249

1    contend that she obtained her card in order to convey a particular message. *See generally* FAC

2    Ex. 1. Rather, Plaintiff states that she suffered from severe and debilitating cramps that could be

3    treated by cannabis, and sought a doctor's recommendation to obtain a medical marijuana

4    registry card. *Id*. at ¶¶ 20-22. Though Plaintiff alleges in the FAC that she is "expressing her

5    support for and advocacy of legalization of medical marijuana" through acquisition and

6    possession of the card, FAC ¶ 86, that allegation cannot trump the intention of her conduct

7    expressed in her declaration.

8           As for the second of the *Spence* factors, it is far from likely that a person who learned that

9    Plaintiff possessed a medical marijuana card would understand any political message to be

10   inherent in that conduct. A person who learned that Plaintiff possessed the registry card would

11   be more likely to assume exactly what Plaintiff set forth in her declaration—that she possesses

12   the card in order to treat a medical condition as allowed under state law—rather than to assume

13   that Plaintiff is an advocate for medical marijuana.

14          But even if the acquisition and possession of a medical marijuana card did constitute

15   "expressive conduct," Plaintiff's First Amendment claim would fail under the appropriate

16   analysis. If the "regulation is related to the suppression of free expression"—that is, if it

17   "proscribe[s] particular conduct *because* it has expressive elements"—strict scrutiny applies.

18   *Johnson*, 491 U.S. at 403, 406. If not, courts apply the less stringent standard from *United States*

19   *v. O'Brien*, 391 U.S. 367, 377 (1968). The statute, regulation, and Open Letter were all aimed at

20   reducing the threat caused by gun violence, not at suppressing advocacy of legalization of

21   medical marijuana or any other form of speech. Accordingly, the *O'Brien* test applies.

22          "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct,

23   a sufficiently important governmental interest in regulating the nonspeech element can justify

24   incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376. In particular:

25          a government regulation is sufficiently justified [1] if it is within the constitutional power of
            the Government; [2] if it furthers an important or substantial governmental interest; [3] if the
26          governmental interest is unrelated to the suppression of free expression; and [4] if the
            incidental restriction on alleged First Amendment freedoms is no greater than is essential to
27          the furtherance of that interest."

28   *Id*. at 377. All of these factors are met here. First, it is indisputable that the United States has the

37

***250***

1   power to regulate the possession and sale of firearms.  Second, the provisions further the

2   compelling government interest in protecting public safety and preventing violent crime.  Third,

3   that interest is unrelated to suppressing speech.  Finally, to the extent Plaintiff's First Amendment

4   freedoms have been restricted, any restriction would be *de minimis* and would be outweighed by

5   the Government's interest in keeping firearms out of the hands of unlawful drug users.

6   **IV.   PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE
        DISMISSED AS DUPLICATIVE OF HER CLAIMS UNDER THE FIRST AND
7       SECOND AMENDMENTS**

8   Plaintiff previously based her substantive due process claim on a purported fundamental

9   right to use marijuana for medical reasons, which was expressly foreclosed by *Raich v. Gonzale*s,

10  500 F.3d 850, 861-66 (9th Cir. 2007).  In her new complaint, Plaintiff now appears to ground her

11  substantive due process claim in her purported "right to possess a handgun under the Second

12  Amendment" and the "fundamental right to free speech under the First Amendment."  FAC ¶ 77.

13  This latest iteration of her claim fares no better, as any infringement of Plaintiff's First and

14  Second Amendment rights cannot provide the basis for a violation of substantive due process.

15  "Where a particular Amendment 'provides an explicit textual source of constitutional

16  protection' against a particular sort of government behavior, 'that Amendment, not the more

17  generalized notion of "substantive due process," must be the guide for analyzing' such a claim."

18  *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395

19  (1989)).  Accordingly, "if a constitutional claim is covered by a specific constitutional provision

20  . . . the claim must be analyzed under the standard appropriate to that specific provision, not

21  under the rubric of substantive due process."  *United States v. Lanier*, 520 U.S. 259, 272 n.7

22  (1997); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001).  Since Plaintiff appears to base her

23  substantive due process claim on rights protected by the First and Second Amendments, the

24  claim amounts to a retread of her claims alleging violations of these specific amendments, and

25  therefore must be dismissed.  *See Denney v. DEA*, 508 F. Supp. 2d 815, 834 (E.D. Cal. 2007)

26  (dismissing substantive due process claim "[s]ince the First Amendment provides explicit

27  protection for the right to free speech . . . [and therefore] plaintiff may not additionally base a due

28  process claim on a violation of his right to free speech."); *cf. Richards v. Cnty. of Yolo*, 821 F.

38

*251*

1   Supp. 2d 1169, 1177 n.8 (E.D. Cal. 2011) ("Though the right to keep and bear arms for self-

2   defense is a fundamental right, that right is more appropriately analyzed under the Second

3   Amendment.") (citation and internal quotations omitted).

4   **V.    PLAINTIFF'S PROCEDURAL DUE PROCESS MUST BE DISMISSED**
        **BECAUSE SHE HAS NOT BEEN DEPRIVED OF A CONSTITUTIONALLY-**
5       **PROTECTED LIBERTY INTEREST**

6          Plaintiff further claims that Defendants "deprived Plaintiff of her protected liberty

7   interest" in a "right to possess a firearm under the Second Amendment."  Plaintiff fails to state a

8   prima facie case to establish a procedural due process claim, which requires that Plaintiff allege

9   facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and

10  (2) a denial of adequate procedural protections."  *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir.

11  2003).

12         Plaintiff's claim cannot survive the threshold inquiry, as she has not been deprived of a

13  constitutionally-protected liberty or property interest.  *See Erickson v. United States*, 67 F.3d 858,

14  861 (9th Cir. 1995) (finding that the guarantee of procedural due process applies only when a

15  constitutionally protected liberty or property interest is at stake).  Plaintiff does not have a

16  constitutional right to use marijuana.  *Raich II*, 500 F.3d 850, 861-66; *see also Marin Alliance for*

17  *Medical Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1157 (2011) ("Finally—and significantly—

18  it is difficult to reconcile the purported existence of a fundamental right to use marijuana for

19  medical reasons with Congress' pronouncement that 'for purposes of the [CSA], marijuana has

20  no currently accepted medical use at all.'" (citing *Oakland Cannabis*, 532 U.S. at 491)).

21  Moreover, as stated, users of marijuana for medical purposes, like all users of controlled

22  substances in violation of federal law, fall outside of the scope of the Second Amendment.

23  Plaintiff, therefore, has not shown that the government has deprived her of any constitutionally-

24  protected liberty or property interest, and the claim must be dismissed.  *See Clark K. v. Willden*,

25  616 F. Supp. 2d 1038, 1041-42 (D. Nev. 2007) (dismissing procedural due process claims where

26  plaintiffs failed to set forth a proper constitutionally-protected interest).

27

28

1    **VI.    PLAINTIFF'S EQUAL PROTECTION MUST BE DISMISSED BECAUSE SHE
2          HAS NOT IDENTIFIED SIMILARLY SITUATED INDIVIDUALS THAT
          DEFENDANTS HAVE TREATED DIFFERENTLY**

3          Plaintiff's equal protection claim is also meritless.  Plaintiff alleges that §§ 922(g)(3) and

4    922(d)(3), as implemented and interpreted by ATF, violate the equal protection component of the

5    Due Process Clause.  FAC ¶¶ 58-66.  The Equal Protection Clause provides that "[n]o state shall

6    . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const.

7    amend. XIV, § 1.  Although this clause expressly applies only to the States, the Supreme Court

8    has found that its protections are encompassed by the Due Process Clause of the Fifth

9    Amendment and therefore apply to the federal government.  *Bolling v. Sharpe*, 347 U.S. 497

10   (1954).  Congress is presumed to act within its powers when it passes legislation, however, and

11   federal statutes challenged for denial of equal protection are entitled to deferential review as long

12   as the "legislative classification or distinction 'neither burdens a fundamental right nor targets a

13   suspect class.'"  *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (quoting *Romer v. Evans*, 517 U.S.

14   620, 631 (1996)).

15         In evaluating an equal protection challenge, a court must first determine whether a

16   plaintiff is being treated differently from similarly situated individuals.  *Gonzalez-Medina v.*

17   *Holder*, 641 F.3d 333, 336 (9th Cir. 2011).  The equal protection component of the Due Process

18   Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City*

19   *of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  As a result, "[t]o establish

20   an equal protection violation, [the plaintiff] must show that she is being treated differently from

21   similarly situated individuals."  *Gonzalez-Medina*, 641 F.3d at 336.

22         Plaintiff first claims that she is similarly situated to "persons who are prescribed medical

23   marijuana in states where the obtainment of a state-issued medical marijuana card is not

24   required."  FAC ¶ 62.  According to Plaintiff, because some states allow medical marijuana use

25   without issuing registry identification cards, those medical marijuana users will be able to buy

26   firearms more easily than people who live in states that require medical marijuana registry cards.

27   *Id*.  This claim cannot proceed.  As a threshold matter, Plaintiff has not supported these

28   conclusory allegations with any facts regarding the supposed (easier) registration requirements in

40

1    other states.  *See Marin Alliance For Medical Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1158-

2    59 (N.D. Cal. 2011) (rejecting equal protection claim where, *inter alia*, Plaintiff failed to present

3    facts supporting allegations regarding differences in state medical marijuana laws).

4         In any event, even if Plaintiff could overcome this pleading defect, the claim would still

5    fail.  Plaintiff does not claim (because she cannot) that the "law is applied in a discriminatory

6    manner or imposes different burdens on different classes of people."  *Freeman v. City of Santa*

7    *Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).  The law applies equally to all users of medical

8    marijuana, and nothing in § 922(g)(3), 27 C.F.R. § 478.11, or the Open Letter suggests

9    otherwise.  Instead, Plaintiff's argument is that medical marijuana users in certain states may

10   more easily evade the law by purchasing firearms without notifying sellers that they use

11   marijuana.  This is not a proper equal protection claim, as the law facially applies to every

12   marijuana user, even if some people are able—through deceit or fraud—to avoid prosecution or

13   obtain a firearm.  *See United States v. Hendrickson*, 664 F. Supp. 2d 793, 798 (E.D. Mich.

14   2009) ("There is no right under the Constitution to have the law go unenforced against you, even

15   if you are the first person against whom it is enforced . . . . The law does not need to be enforced

16   everywhere to be legitimately enforced somewhere." (internal quotation omitted)).[24]

17         Plaintiff also claims that she is "being treated differently from similarly situated persons

18   with similar medical conditions to those of the Plaintiff."  FAC ¶ 63.  According to Plaintiff,

19   individuals who pursue methods of treatment other than the use of marijuana "have not been

20   denied their ability to obtain handguns."  *Id*.  But the class of citizens that use marijuana pursuant

21   to state law are not similarly situated to law-abiding individuals, including those who seek

22   treatment in compliance with federal law.  It is entirely reasonable for the government to infer

23   that those individuals who have affirmatively registered to use marijuana on the basis of chronic

24   medical conditions are, in fact, marijuana users.  And because all users of marijuana are violating

25   federal law, they are not similarly situated to those citizens who seek medical treatment in a

26

27   [24] Furthermore, a marijuana registration card is only one of many pieces of evidence that an FFL
located in any state can consider in determining whether a particular buyer is an "unlawful user

28   of or addicted to a controlled substance," regardless of the state in which the sale takes place.  *Id*.

1   manner that does not violate federal law.  *See Marin Alliance*, 866 F. Supp. 2d at 1158-59

2   (finding that individuals whose drug use violates the Controlled Substances Act are not similarly

3   situated to those whose use is permitted by that law).  Because Plaintiff does not adequately

4   allege that she has been "treated differently from similarly situated individuals," *Gonzalez-*

5   *Medina*, 641 F.3d at 336, she fails to state an equal protection claim.[25]

6   **VII.   AS PLAINTIFF PREVIOUSLY CONCEDED, SHE CANNOT SEEK MONETARY
        DAMAGES AGAINST THE UNITED STATES**

7

8           Plaintiff's First Amended Complaint purports to seek claims against the United States for

9   monetary relief, even though Plaintiff previously conceded that claims for damages cannot

10  proceed.  *See* FAC  ¶¶ 56, 65, 72, 79, 96 (alleging that Plaintiff has suffered damages "[a]s a

11  direct and proximate result" of Defendants' actions); Prayer for Relief ¶ 6 (seeking an award of

12  "compensatory and punitive damages").

13          The waiver of sovereign immunity claimed by Plaintiff does not apply to actions for

14  money damages.  The United States, as a sovereign, is immune from suit unless it has waived its

15  immunity.  *Dep't of Army v. Blue Fox, Inc*., 525 U.S. 255, 260 (1999); *Levin v. United States*, 663

16  F.3d 1059, 1061 (9th Cir. 2011).  The United States has not waived its sovereign immunity for

17  damages claims based on constitutional violations.  *See Dyer v. United States*, 166 F. App'x 908,

18  909 (9th Cir. 2006) ("To the extent [plaintiff] sought damages from the United States for

19  allegedly violating his constitutional rights, his claim was barred by sovereign immunity.").  "A

20  waiver of the Federal Government's sovereign immunity must be unequivocally expressed in

21  statutory text."  *Lane v. Peña*, 518 U.S. 187, 192 (1996).

22

23  ───────────────────
    [25] Even if Plaintiff could establish that she is being treated differently from other similarly-
24  situated individuals, her equal protection claim would still fail because she cannot show that
    Defendants' actions were irrational.  Because the purported classifications do not target a suspect
25  class, only rational basis would apply.  *Romer*, 517 U.S. at 631.  Under rational basis review, a
    law must be rationally related to the furtherance of a legitimate governmental interest.  *Id*.  As
26  explained above, the challenged government actions satisfy the requirements of intermediate
    scrutiny.  *See supra* Part II.A.3.  By definition, then, they also satisfy the more relaxed standards
27  of rational basis review.  *See Dearth v. Holder*, --- F. Supp. 2d ----, 2012 WL 4458447, at *12
    (D.D.C. Sep. 12, 2012) (finding that because the challenged restriction survived a Second
28  Amendment challenge under intermediate scrutiny, the restriction also survived an equal
    protection challenge under rational basis review).

1    Plaintiff seeks to avail herself of the waiver of sovereign immunity contained in Section

2   702 of the Administrative Procedure Act.  FAC ¶ 11 (alleging that the United States "is a proper

3   defendant in this action pursuant to 5 U.S.C. § 702").  But this waiver only applies to

4   constitutional claims for non-monetary relief.  *See* 5 U.S.C. § 702 ("An action in a court of the

5   United States seeking relief *other than monetary damages* . . ." (emphasis added)).  Plaintiff

6   previously conceded that she could not seek money damages against the United States.  *See*

7   Reply to Def. Mot. to Dismiss (Dkt. 17) at 25 ("To the extent that the Prayer for Relief contained

8   in Plaintiff's Complaint seeks monetary damages, Plaintiff agrees that 5 U.S.C. § 702 does not

9   provide for such damages.").  Accordingly, any claims seeking monetary relief from the United

10  States, ATF, or the individual defendants in their official capacity must be dismissed.

11                                          **CONCLUSION**

12    For the reasons stated herein, Plaintiff's First Amended Complaint should be dismissed in

13  its entirety, or, in the alternative, summary judgment should be entered in the favor of the United

14  States on all of Plaintiff's claims.

15  Dated: January 31, 2013                      Respectfully submitted,

16                                               STUART F. DELERY
                                                 Principal Deputy Assistant Attorney General
17
                                                 DANIEL G. BOGDEN
18                                               United States Attorney

19                                               DIANE KELLEHER
                                                 Assistant Director
20
                                                 /s/ *John K. Theis*
21                                               JOHN K. THEIS
                                                 Trial Attorney
22                                               United States Department of Justice
                                                 Civil Division, Federal Programs Branch
23
                                                 *Attorneys for Defendants*
24

25

26

27

28

                                            43

1  CHARLES C. RAINEY
   Nevada Bar No. 10723
2  DC Bar No. 989628
   chaz@raineydevine.com
3  JENNIFER J. HURLEY, ESQ.
   Nevada Bar No. 11817
4  Jennifer@raineydevine.com
   RAINEY DEVINE, ATTORNEYS AT LAW
5  8915 S. Pecos Road, Ste. 20A
   Henderson, Nevada 89052
6  Telephone:  (702) 425.5100
   Facsimile:  (888) 867.5734
7
   *Attorneys for Plaintiff Rowan S. Wilson*
8
9

10                    **UNITED STATES DISTRICT COURT**

11                       **DISTRICT OF NEVADA**

12
   S. ROWAN WILSON, an individual,          Case No.  2:11-cv-1679-GMN-(PAL)
13
                        Plaintiff,
14
   v.
15
   ERIC HOLDER, Attorney General of the     **RESPONSE TO DEFENDANTS'**
16 United States, et al.,                    **MOTION TO DISMISS**
                                             **PLAINTIFF'S FIRST AMENDED**
17                      Defendants.          **COMPLAINT OR, IN THE**
                                             **ALTERNATIVE, FOR SUMMARY**
18                                           **JUDGMENT**

19                                           **HEARING REQUESTED**

20        COMES NOW Plaintiff S. ROWAN WILSON (the "Plaintiff") by and through her

21 counsel Charles C. Rainey of the THE LAW FIRM OF RAINEY DEVINE, and hereby submits her

22 RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED

23 COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1    This Response is made and based upon the Memorandum of Points and Authorities

2    attached hereto, the pleadings and papers on file herein, and any arguments to be had at the

3    hearing of this matter.

4    DATED: February 25, 2013.                    Respectfully submitted:

                                                  THE LAW FIRM OF RAINEY DEVINE
5                                         By:     /s/ Chaz Rainey
                                                  Charles C. Rainey, Esq.
6                                                 Nevada Bar No. 10723
                                                  chaz@raineydevine.com
7                                                 Jennifer J. Hurley, Esq.
                                                  Nevada Bar No. 11817
8                                                 Jennifer@raineydevine.com
                                                  8915 South Pecos Road, Ste. 20A
9                                                 Henderson, Nevada 89052
                                                  Telephone:  +1.702.425.5100
10                                                Facsimile:  +1.888.867.5734
                                                  *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................i

INTRODUCTION ......................................................................................................1

STATEMENT OF FACTS .............................................................................................1

PROCEDURAL HISTORY ............................................................................................2

LEGAL STANDARDS ................................................................................................2

LEGAL ARGUMENT3

I.     DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1)
MUST BE DENIED BECAUSE THE PLAINTIFF HAS ARTICLE III
STANDING ON EACH OF HER CLAIMS. ...................................................4

    A.  Plaintiff has Suffered, and is Continuing to Suffer, an "Injury in Fact" ................5

    B.  Plaintiff Meets the Traceability Element as Her Harm is Not "Self-Inflicted" ......7

    C.  Plaintiff's Harm Will be Redressed by the Relief Requested................................8

II.    DEFENDANTS VIOLATED PLAINTIFF'S SECOND AMENDMENT
RIGHTS ...........................................................................................................9

    A.  The ATF's Issuance of the Open Letter Violated the APA Because it
Made Substantive Changes to the Law Without the Requisite Notice and
Comment Period.. .........................................................................................9

    B.  If the ATF's Letter Was Merely Interpreting Existing Law, Then the
Underlying Law Violates the Second Amendment. ..............................................13

        1.  The ATF's Overbroad Interpretation of 18 U.S.C. §§ 922(d)(3)
and (g)(3) Unconstitutionally Violates Second Amendment
Rights, Failing Under Both Strict Scrutiny and Intermediate
Scrutiny Analysis ...............................................................................14

            a.  The Applicable Standard of Scrutiny for Second Amendment
cases is Unclear and Unsettled ........................................................15

            b.  The ATF's Interpretation of §§ 922(d)(3) and (g)(3) Fails
Under a Strict Scrutiny Analysis Because it is Not Narrowly
Tailored to Satisfy a Compelling Government Interest and
the Government has Far Less Restrictive Means of Achieving
its Goals ........................................................................................17

            c.  Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. §§
922(d)(3) and (g)(3) is Unconstitutional Because the
Expansive Scope of the Law, Covering More than Half of the
U.S. Population, is Not Substantially Related to Any
Important Government Interest........................................................19

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-i-

        d.  *United States v. Dugan* does Not Foreclose a Constitutional
           Challenge to 18 U.S.C §§ 922(d)(3) and (g)(3)...............................22

III.    DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT
      RIGHTS..................................................................................................23

    A.  The Constitutionality of the ATF's Enforcement Actions, as Applied
       to the First Amendment, Should be Examined Under a Strict Scrutiny
       Standard. ...........................................................................................24

    B.  The ATF's Enforcement Actions, as Set Forth in the Open Letter, Fail
       to Meet Strict Scrutiny Standards .........................................................26

    C.  Even Examined Under the Less Restrictive O'Brien Test, the ATF's
       Universal Ban on the Sale of Firearms to Registry Cardholders
       Amounts to an Unconstitutional Restriction on Free Speech. ...................27

IV.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE
      DUE PROCESS......................................................................................28

V.     DEFENDANTS VIOLATED PLAINTIFF'S RIGHT OT PROCEDURAL
      DUE PROCESS......................................................................................30

VI.    DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO EQUAL
      PROTECTION .......................................................................................32

VII.   PLAINTIFF DOES NOT SEEK MONETARY DAMAGES AGAINST THE
      UNITED STATES, OTHER THAN COSTS AND FEES ALLOWED, BUT
      INSTEAD SEEKS DECLARATORY AND INJUNCTIVE RELEIF.......................34

CONCLUSION...............................................................................................35

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-ii-

**TABLE OF AUTHORITIES**

**U.S. SUPREME COURT CASES** <u>PAGE</u>

*Albright v. Oliver*, 510 U.S. 266 (1994) ..................................................29

*Allen v. Wright*, 468 U.S. 737, 751 (1984) ...............................................4

*Armstrong v. Manzo*, 380 U.S. 545 (1965)...............................................31

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986)................................3

*Bolling v. Sharpe*, 347 U.S. 497 (1954) .....................................................32

*Celotex Corp. v. Catrett*, 47 U.S. 317 (1986) .............................................3

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557(1980)....................19

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) .....................32

*Clark v. Jeter*, 486 U.S. 456 (1988).........................................................16

*Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530 (1980). ....................19

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) .............................30

*Dickerson v. New Banner, Inc.*, 460 U.S. 103 (1983). ..................................18

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008)................................16

*Ex Parte Wall*, 107 U.S. 265 (1883). .........................................................30

*Goldberg v. Kelly*, 397 U.S. 254 (1970). .....................................................31

*Graham v. Richardson Sailer v. Leger*, 403 U.S. 365 (1971) .....................16

*Grannis v. Ordean*, 234 U.S. 385 (1914). ..................................................31

*Griswold v. Connecticut*, 381 U.S. 479 (1965)..................................17, 29

*Hein v. Freedom From Religion Found.*, 551 U.S. 587 (2007)......................4

*Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123 (1951). .......................30

*Kramer v. Union Free School District*, 395 U. S. 621 (1969)......................17

*Lawrence v. Texas*, 539 U.S. 558 (2003).....................................................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992).....................5, 7, 9

*Margan v. United States*, 304 U.S. 1 (1938). ...............................................31

*Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270 (1941) ...................4

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) ................................16

RAINEY / DeVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-iii-

*Meyer v. Nebraska*, 262 U.S. 390 (1923). ..................................................................29

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ....................................................................32

*Opp Cotton Mills v. Administrator*, 312 U.S. 126 (1941). ......................................31

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ..................................................29

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). ...........16, 29

*Poe v. Ullman*, 367 U.S. 497 (1961)........................................................................29

*Robertson v. Baldwin*, 165 U. S. 275 (1897) ..........................................................16

*Roe v. Wade*, 410 U.S. 113 (1973) ....................................................................*passim*

*Schneider v. State*, 308 U.S. 147 (1939)..................................................................17

*Secretary of State v. Hoseph H. Munson Co.*, 467 U.S. 947 (1984)...........................5

*Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87 (1995)..................................10

*Shelton v. Tucker Carr v. Young*, 364 U.S. 479 (1960)............................................17

*Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269 ..................................5, 7, 9

*United States v. Virginia*, 518 U.S. 515 (1996) .......................................................16

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988); ........................5

*Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950)..................................................31

**FEDERAL CIRCUIT COURT CASES**

*American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106
(D.C.Cir.1993) .....................................................................................................10, 11

*Appalachian Power Co v. Envtl. Protection Agency*, 208 F.3d 1015 (D.C. Cir., 2000) ..............13

*Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726 (9th Cir. 1994) ...............19

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).............................4

*Chief Prob. Officers of California v. Shalala*, 118 F.3d 1327, 1329 (9th Cir.1997). ...............10

*Compassion in Dying v. State of Washington*, 79 F.3d 790 (9th Cir. 1996)....................29

*Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991)...................................19

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)......................................4

*Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2004)................................................10

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1999). .................................3

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-iv-

*Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082 (9th Cir., 2003). ..........10, 11

*Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037 (9th Cir. 2002). ....................................32

*Jacobs v. Clark County School Dist.*, 526 F.3d 419 (9th Cir. 2008). ......................19, 24

*San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ................................5

*Sequoia Orange Co. v. Yeutter*, 973 F.2d 752 (9th Cir.1992) .....................................10

*United States v. Carter*, 669 F.3d 411 (4th Cir. 2012) ......................................16

*United States v. Dugan*, 657 F.3d 998 (9th Cir 2011). .................................*passim*

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) ...............................16

*United States v. Seay*, 620 F.3d 919 (8th Cir 2010) ..........................................22

*United States. v Yancey*, 621 F.3d 681 (7th Cir 2010). .............................*passim*

**FEDERAL DISTRICT COURT CASES**

*Mirin v. Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976) ............3, 4

**UNITED STATES CONSTITUTION**

U.S. Const. Amend. I........................................................................*passim*

U.S. Const. Amend. II.......................................................................*passim*

U.S. Const. Amend. V .......................................................................*passim*

**STATUTES**

5 U.S.C § 553...................................................................................10

5 U.S.C § 702...................................................................................34

18 U.S.C. § 922(g)(3). ...................................................................*passim*

18 U.S.C. § 922(d)(3). ...................................................................*passim*

21 U.S.C. § 802..........................................................................11, 14

28 U.S.C. § 2412............................................................................34

**FEDERAL RULES AND REGULATIONS**

27 C.F.R. § 478.11..........................................................................*passim*

Fed. R. Civ. Pro. 12(d).........................................................................3

Fed. R. Civ. Pro. 12(b)(1).................................................................3, 4, 5

Fed. R. Civ. Pro. 12(b)(6) .................................................................*passim*

-v-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Fed. R. Civ. Pro. 56 ...................................................................................................3

**MISCELLANEOUS**

2010 United States Health Report, as compiled by the National Center for Health Statistics (http://www.cdc.gov/nchs/data/hus/hus10.pdf)............................................14

National Institute on Alcohol Abuse and Alcoholism No. 38 October 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm .........................................................20

National Survey on Drug Use and Health, 2010, Substance Abuse & Mental Health Death Archive, available at http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=32722&ds=1&file_id=1094507 ...............................14, 21

Order List: 565 U.S. (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf)............13

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-vi-

**INTRODUCTION**

Defendants' Motion to Dismiss attempts to bury the fundamental and meritorious issues of this case inside a myriad of irrelevant facts and arguments. Plaintiff does not dispute that the possession of marijuana remains prohibited under federal law despite a growing number of states legalizing the possession and use of marijuana for the treatment of medical conditions. Nor is Plaintiff, by this case, attempting to claim that Defendants may not advise federal firearms licensees ("FFLs") that possession of marijuana remains illegal under federal law. Instead, Plaintiff is asserting that the Defendants' explicit direction to FFLs that they "may not transfer firearms or ammunition to [a] person" who "is in possession of a card authorizing the possession and use of marijuana under State law," is unconstitutional. *See* First Amended Complaint ("FAC"), Dkt. No. 34, Ex. 2-B. The mere fact that a person possesses a document, validly issued under the laws of his or her state and authorizing some act not compatible with federal law, without more, cannot constitute grounds for the deprivation of fundamental constitutional rights.

The Defendants have deprived the Plaintiff of her fundamental constitutional rights. Through 18 U.S.C. §§ 992(d)(3), 922(g)(3), and their Open Letter to all FFLs, the Defendants have deprived the Plaintiff of her rights under the First, Second, and Fifth Amendments. Dismissal of Plaintiff's claims is unwarranted as Plaintiff properly alleges each required element of her claims. Defendants' Motion to Dismiss sets forth virtually no arguments concerning Plaintiff's alleged failure to state a claim for which relief can be granted, but instead argues almost exclusively that summary judgment is appropriate because, the Defendants contend, Plaintiff's claims fail as a matter of law under *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). *Dugan*, however, is factually distinguishable from the present case in a number of important respects, which Defendants fail to address. Furthermore, summary judgment is inappropriate as genuine issues of fact remain in dispute regarding Plaintiff's claims. Therefore, Defendants' Motion must be denied and this case must be allowed to move forward.

**STATEMENT OF FACTS**

In connection with their Motion to Dismiss, Defendants' filed a Statement of Undisputed Facts (the "Statement"). Dkt. No. 37-2. Plaintiff does not dispute the Statement to the extent that

-1-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

it sets forth the laws governing this dispute; however, Plaintiff does dispute several other items set forth in the Statement. First, Paragraph 4 of the Statement alleges that "marijuana cannot be legally prescribed for medical use." *Id*. at p. 3, line 3. Plaintiff agrees that marijuana cannot be legal prescribed for medical use under federal law but asserts that marijuana can be legally prescribed under many state laws. Second, Plaintiff disagrees with Paragraph 5 of the Statement to the extent that it implies Nevada's statutes regarding medical marijuana only apply when the Registry Cardholder actually "engages in the medical use of marijuana." *Id*. at p. 3, lines 8-10. There is no requirement in the Nevada statutes that a Registry Cardholder ever use or possess marijuana; nor is there any determination that a Cardholder will in fact obtain and use marijuana.

Additionally, further factual disputes exist in this matter. Specifically, factual disputes exist as to the Defendants' intent in issuing the Open Letter and Plaintiff's intent in obtaining a Registry Card. Plaintiff contends that by issuing the Open Letter, Defendants intended to curtail certain speech and to damage the political movement regarding the legalization of medical marijuana. Defendants' contend that there was no such intent, alleging instead that the sole purpose in issuing the Open Letter was preventing the threat of gun crime caused by persons possessing Registry Cards. There is further dispute as to Plaintiff's intent in obtaining her Registry Card. Plaintiff alleges that she obtained the Registry Card as part of her advocacy for the use of medical marijuana, while Defendants claim that Plaintiff obtained the Registry Card solely for medical reasons.

## PROCEDURAL HISTORY

Plaintiff does not dispute the procedural history set forth in Defendants' Motion. In regards to the four issues which the Court requested be briefed by the parties during the November 2, 2012 hearing, Plaintiff addresses such issues as follows: the level of scrutiny for Second Amendment challenges is addressed at page 16; whether the Open Letter is legislative or interpretive is addressed at page 11; whether Plaintiff has standing to challenge 922(d)(3) is addressed at page 4, note 1; and whether Plaintiff's claim is "ripe" is addressed at page 4, note 1.

## LEGAL STANDARDS

Defendants' Motion purports to be a Motion to Dismiss made pursuant to F.R.C.P.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-2-

12(b)(1) and 12(b)(6) and, in the alternative, a Motion for Summary Judgment made pursuant to F.R.C.P. 56. Rules 12(b)(1) and 12(b)(6) provide, respectively, that defenses of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted can be raised by motion before a responsive pleading is filed. Fed. R. Civ. Pro. 12(b). In considering a motion under Rule 12(b)(1) or 12(b)(6), the Court must accept all factual allegations as true and draw all reasonable inferences in favor of plaintiff. *Mirin v. Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Additionally, "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d).

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). Material facts are only those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247, 106 S.Ct. 2505 (1986). The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 47 U.S. 317, 325 106 S.Ct. 2548 (1986).

Here, Defendants' Motion should be considered as a motion for summary judgment rather than a motion to dismiss under Rule 12(b)(6) because the Defendants rely on matters outside of the FAC throughout the Motion. These extrinsic matters cannot be separated from the Motion so as to allow the Court to consider the Motion under Rule 12(b)(6). Defendants' Motion only seeks dismissal under Rule 12(b)(1) in that it claims Plaintiff lacks standing under Article III. As such, the Defendants' Motion is, for all intents and purposes, a motion for summary judgment and not a motion for dismissal under Rule 12(b)(6).

## **LEGAL ARGUMENT**

Defendants' Motion must be denied on each and every ground set forth therein. First, Plaintiff has clearly satisfied the requirement to establish Article III standing. Second, Defendants' fail to establish that there are no genuine disputes of material fact and that they are entitled to summary judgment as a matter of law. Defendants are not entitled to summary

-3-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1 judgment because they have violated Plaintiff's Second and Fifth Amendment rights and, at the

2 very least, a question of fact exists as to whether Defendants have violated Plaintiff's First

3 Amendment rights.

## I. DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1) MUST BE DENIED BECAUSE PLAINTIFF HAS STANDING TO CHALLENGE THE STATUTES, THE REGULATION, AND THE OPEN LETTER.

6 Plaintiff possesses standing under Article III because she has suffered an injury in fact

7 that is fairly traceable to the Defendants' conduct and likely to be redressed by the relief

8 requested in this case.[1] In order to satisfy the requirement of standing, "[a] plaintiff must allege

9 personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

10 redressed by the requested relief." *Hein v. Freedom From Religion Found.*, 551 U.S. 587, 127

11 S.Ct. 2553 (2007), *quoting Allen v. Wright*, 468 U.S. 737, 751 (1984). The question of standing

12 is "a factual one in which we view the facts pled in the light most favorable to Plaintiff." *Mirin v.*

13 *Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976), citing *Maryland*

14 *Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).

15 Furthermore, the Supreme Court has instructed lower courts to take a broad view of

16 constitutional standing in civil rights case, especially where private enforcement suits are the

17 primary method of obtaining redress. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 93

18 S.Ct. 364 (1972); *see Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008); *Chapman v.*

19 *Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).

20 Here, the facts pled, when viewed in the light most favorable to the Plaintiff and in light

21 of the broad view of standing dictated by the Supreme Court, demonstrate that Plaintiff clearly

22 has standing under Article III. As discussed in further detail below, Plaintiff suffered an injury

23 through the Defendants' implementation of the policy set forth in the Open Letter, which

---

[1] At the November 2, 2012 hearing, the Court asked the parties to brief whether Plaintiff has standing to challenge 18 U.S.C. § 922(d)(3). In their Motion to Dismiss, Defendants admit that if Plaintiff has standing under § 922(g)(3), she also has standing under § 922(d)(3). DEF MOTION TO DISMISS, p. 11, n. 9, citing *Dearth v. Holder*, 641 F.3d 499, 500-03 (D.C. Cir. 2011). For the reasons set forth in this section, Plaintiff has standing under § 922(g)(3) and thus also has standing to challenge § 922(d)(3). Defendants have also admitted that this case is ripe. DEF MOTION TO DISMISS, p. 11, n. 9. Plaintiff agrees with the Defendants assertion that there is no ripeness problem in this case regardless of any incomplete information on Form 4473 because Mr. Hauseur denied the Plaintiff's purchase of the firearm based on his knowledge that Plaintiff possessed a Registry Card and the explicit instruction in the Open Letter than he was prohibited from transferring a firearm to anyone he knew possessed a Registry Card.

-4-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

conclusively and irrefutably labels Plaintiff as an unlawful user of a controlled substance and thereby prohibits Plaintiff from exercising her Second Amendment right to purchase and possess a handgun. In the same respect, Plaintiff also suffered injury to her First Amendment right to free speech and Fifth Amendment right to due process. These injuries are directly traceable to the Defendants' actions complained of in the FAC and can only be redressed by the granting of the relief requested by Plaintiff. Therefore, Defendants' Motion to Dismiss under Rule 12(b)(1) must be denied as Plaintiff has Article III standing.

**A. Plaintiff has Suffered, and is Continuing to Suffer, an "Injury in Fact."**

The first element of Article III standing is "an injury in fact (i.e. a 'concrete and particularized' invasion of a 'legally protected interest.'" *Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992). The Supreme Court has recognized that in First Amendment challenges, "chilling effect [is] an adequate injury for establishing standing because the alleged danger . . . is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129, *quoting Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393, 108S.Ct. 636, 643 (1988) (internal quotations omitted); *see also Secretary of State v. Hoseph H. Munson Co.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2847 (1984) ("when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statutes challenged").

As a preliminary matter, Defendants' argument that Plaintiff is suffering no injury because her Registry Card expired is cut off by the fact that Plaintiff did renew her Registry Card and currently possesses an unexpired Registry Card. *See* **RENEWED REGISTRY CARD**, attached hereto as Exhibit "**A**" and incorporated herein by reference. The Registry Card attached to the FAC is the card Plaintiff possessed when she was initially denied her right to purchase a handgun, which was valid at the time of the attempted purchase and at the time of the filing of

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

the Complaint.[2] Plaintiff has at all times relevant hereto possessed a valid and unexpired Registry Card and will continue to possess such a Card. The fact that the unexpired Registry Card was not attached to the FAC does not mean that the Plaintiff has failed to allege an injury in fact.

Even if Plaintiff's Registry Card had expired, she would still have sufficiently alleged an injury in fact. Where an issue is "capable of repetition, but evading review," standing exists even if the injury may be seen as not continuing at some point in the case. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705 (1973). In *Roe v. Wade*, a pregnant woman, Roe, challenged the constitutionality of Texas laws criminalizing abortion. *Id.* at 120. In both the district court and on appeal it was argued that Roe did not have standing because her pregnancy had naturally ended before the case was decided. On appeal, the Supreme Court upheld the district court's finding that Roe had standing because Roe could potentially become pregnant again; thus the same issue would be presented again but, because the normal human gestation period is so short, the pregnancy would again end before the appellate process could be completed. *Id.* at 124-25.

Here, even if Plaintiff had not maintained a valid Registry Card, the harm suffered by Plaintiff is capable of repetition but evading review. Under Nevada law, a Registry Card is only valid for a period of one year, which is a much shorter time period than what is typically required to litigate a case of this nature. N.R.S. 453A.220(4). Even if Plaintiff let her Registry Card expire, she would still have an injury in fact giving rise to standing because she could potentially obtain a new Registry Card in the future and again be denied the purchase of a firearm as a result of her possession of the Card. Under *Roe*, the mere possibility that the harm will continue but

---

[2] The card was valid until March 10, 2012. The purchase was attempted on October 4, 2011 and the Complaint was filed on October 18, 2011. While not applicable to the facts of the present case, Defendants argue that if an FFL used an expired registration card to deny the purchase of a firearm, "Plaintiff's injury would stem from the actions of the FFL, not the Government." However, the Defendants' Open Letter does not at any point inform the FFL that it may not use an expired registration card to deny the transfer of a handgun. In fact, the Open Letter actually states that "if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law . . . the person is an unlawful user of a controlled substance . . . [and] you may not transfer firearms or ammunition to the person." A reasonable FFL would take the Open Letter to mean that it cannot transfer a firearm or ammunition to a person who possesses a Registry Card, regardless of whether the card has recently expired. This seems especially clear in light of the definition of "unlawful user" set forth in 27 CFR 478.11, which provides that the use giving rise to a determination that a person is a current unlawful user of a controlled substance "is not limited to . . . use . . . within a matter of days or weeks before, but rather . . . use [that] has occurred recently enough to indicate that the individual is actively engaged in such conduct . . . [and an] inference of current use may be drawn from evidence of a recent use or possession . . . or a pattern of use or possession that reasonably covers the present time." Thus, FFLs would understand the Open Letter and regulation to mean that they could not transfer a firearm or ammunition to someone who they were aware possessed a recently expired Registry Card.

-6-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

evade review is sufficient to satisfy the "injury in fact" element of standing.

Plaintiff was and continues to be denied her right to purchase a firearm as a result of her possession of a Registry Card. Through the Open Letter, Defendants have deemed the possession of a Registry Card to be conclusive and irrefutable evidence that the holder is an "unlawful user" of marijuana and have directed all FFLs not to sell firearms to anyone possessing such a card. Plaintiff has been injured by the denial of her Second Amendment right to purchase and possess a handgun. Furthermore, Plaintiff has experienced a chilling effect on her free speech as a result of the Defendants' actions. Specifically, Plaintiff's possession of the Registry Card is a form of protected speech, the exercise of which has led to the denial of her Second Amendment rights. The harm suffered by Plaintiff is a concrete and particularized invasion of a legally protected interest as Defendants deprived Plaintiff of her constitutional rights based solely on the fact that she possesses a Registry Card. Moreover, the harm suffered by Plaintiff is capable of repetition but evading review. As such, the Court should find that Plaintiff has alleged an injury in fact that will continue regardless of whether Plaintiff maintains her Registry Card.

**B. Plaintiff Meets the Traceability Element as Her Harm is Not "Self-Inflicted."**

The second element of standing is that there be "a 'fairly . . . traceable' connection between the alleged injury in fact and the alleged conduct of the defendant." *Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992).

Here, a fairly traceable connection clearly exists between the Plaintiff's alleged injury in fact and the alleged conduct of the Defendants. By issuing the Open Letter, Defendants deprived Plaintiff of her Second Amendment right to acquire a firearm and other related constitutional rights. Defendants argue that Plaintiff's injury does not stem from their actions but rather from Plaintiff's own decision making, i.e., Plaintiff's decision to obtain a Registry Card in accordance with the rights provided by her State's constitution and statutes. Defendant's argument is analogous to arguing that a pregnant woman may not challenge laws restricting access to abortions because the woman's own decision making is what caused her to become pregnant. Defendants' allegation that Plaintiff can simply chose an option that causes her no harm by

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-7-

relinquishing her Registry Card fails in two respects: (1) it fails to address the harm that would then be caused to Plaintiff by the loss of her state law rights and (2) it fails to address the very real possibility that even if she relinquished her Registry Card, the Defendants' actions would still prevent Plaintiff from obtaining a firearm.[3]

Through their actions, Defendants are attempting to force Plaintiff to choose between her state law right to possess a Registry Card and her federal right to possess a firearm. However, there is no actual conflict between these rights as there is no federal law making it illegal to possess a Registry Card. The only conflict between the rights is the Defendants' unilateral determination, as set forth in the Open Letter, that the mere possession of a Registry Card constitutes conclusive and irrefutable evidence of unlawful drug use. Defendants completely foreclose the possibility that persons may possess a Registry Card and yet not use or possess marijuana, claiming that these persons would be "holding cards that serve them no purpose." DEF MOTION TO DISMISS at p. 13, lines 19-20. Defendants' opinion that no one would possess a Registry Card without also consistently invoking the corresponding right to possess and use marijuana is not based in reality and cannot be used as a grounds to deny the Plaintiff her Constitutional rights.

Furthermore, Defendants' argument that Plaintiff's injury is self-inflicted, and therefore not traceable to Defendants, is disingenuous. Initially, the "self-inflicted" harm standard set forth in Defendants' Motion is found almost exclusively in cases dealing with disputes between two states.[4] Defendants also rely on *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010). However, *Yancey* is inapplicable because Yancey actually was in possession of marijuana and confessed that he had smoked marijuana daily for about 2 years.[5] In the present case, Plaintiff's harm is clearly and directly traceable to the Defendants' actions.

### C. Plaintiff's Harm Will Be Redressed by the Relief Requested.

The third element of standing is whether it is "'likely' and not 'merely speculative' that

---

[3] As set forth in Note 2 above, it appears that if Plaintiff relinquished her Registry Card, she would still be denied her right to purchase and possess a handgun based on the definition of an "unlawful user" set forth in 27 C.F.R. 478.11 and the policy set forth in the Open Letter.
[4] *See e.g., Pennsylvania v. New Jersey*, 426 U.S. 660, 96 S.Ct. 2333.
[5] Moreover, *Yancey* did not even consider the issue of whether Yancey had standing to challenge 922(g)(3).

-8-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Sprint Commc'ns Co. v. APCC Servs., Inc*. 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992). Defendants' assertion that Plaintiff does not satisfy the redressability element of standing is without merit. The redressability element only requires that it is 'likely' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit. The remedy sought by Plaintiff in this matter is to declare 922(d)(3), 922(g)(3), 27 CFR 478.11, and the Open Letter unconstitutional as they violate the First Amendment, Second Amendment, and Fifth Amendment. If they are declared unconstitutional, Plaintiff will be able to purchase and possess a firearm.

Defendants argue that even if 922(d)(3), 922(g)(3), 27 CFR 478.11, and the Open Letter were all declared unconstitutional, Plaintiff still would be unable to purchase a handgun under Nevada law because they contend Plaintiff would still be an unlawful user of, or addicted to, a controlled substance. This argument is fundamentally flawed and, indeed, evidences the same flaw running through most of Defendants' arguments – that is, the unilateral, conclusive, and irrefutable determination that Plaintiff is an unlawful user of a controlled substance based solely on her possession of a card that gives her a right to possess and use marijuana if she chooses. There is no provision of Nevada law that deems Plaintiff an unlawful user of or addicted to a controlled substance based on her possession of a Registry Card. The Nevada laws only affect Plaintiff to the extent that they incorporate the federal laws challenged by Plaintiff in this suit. If the federal laws were removed, Nevada laws would not pose a barrier to Plaintiff obtaining and possessing a handgun.

## II. DEFENDANTS VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS.

### A. The ATF's Issuance of the Open Letter Violated the APA, Because it Made Substantive Changes to the Law Without the Requisite Notice and Comment Period.

The ATF's Issuance of the Open Letter was an unlawful abuse of authority, given that the Letter made substantive changes to existing law and did so without the requisite period for notice and comment, as required under the Administrative Procedure Act (the "APA"). The APA

-9-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

requires agencies to advise the public through a notice in the Federal Register of the terms or substance of a proposed substantive rule, allowing the public a period to comment. *See* 5 U.S.C. § 553(b) and (c). This is termed the "notice and comment" requirement of the APA. "Th[e] requirement is designed to give interested persons, through written submissions and oral presentations, an opportunity to participate in the rulemaking process." *Chief Prob. Officers of California v. Shalala* ["*Probation Officers*"], 118 F.3d 1327, 1329 (9th Cir.1997). Generally, "[t]he procedural safeguards of the APA help ensure that government agencies are accountable and their decisions are reasoned." *Sequoia Orange Co. v. Yeutter,* 973 F.2d 752, 758 (9th Cir.1992); *Erringer v. Thompson*, 371 F.3d 625 at 629-630. The only instances where agency rulings don't require notice and an opportunity for public comment are where such rulings are merely "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A); *see also Erringer*, 371 F.3d 625 at 629.

In the present case, the Defendant seeks to justify the ATF's failure to follow the APA's Notice and Comment Requirement by asserting that the Open Letter was merely interpretive. However, the mere fact that an agency claims that its rule is interpretive does not by itself render the law interpretive. *Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1088 (9th Cir., 2003). Not surprisingly, the Defendants fail to apply the appropriate legal standard in determining whether the Open Letter was interpretive. If the Defendants had applied the proper standard, as set forth in the Ninth Circuit case *Hemp Industries*, the Defendants would have had no choice but to acknowledge that the Open Letter was, indeed, a substantive agency ruling, clearly subject to the Notice and Comment Requirement.

In *Hemp Industries*, the Ninth Circuit adopted the framework previously set down by the DC Circuit, noting that an agency ruling is "legislative," as opposed to "interpretive" whenever the rule is delivered with the "force of law." *Id*. at 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993); *see also Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99, 115 S.Ct. 1232 (1995). The Court then identified the following three circumstances in which a rule has the "force of law":

      (1)    when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action;

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

(2)     when the agency has explicitly invoked its general legislative authority; or

(3)     when the rule effectively amends a prior legislative rule.

*Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993).

Here, the Open Letter was issued with the force of law, because: (a) without the Open Letter, there is no legislative basis for enforcing a blanket ban on the sale of firearms to Registry Cardholders and (b) the Open Letter effectively amended ATF's prior regulation on this matter, codified at 27 CFR 478.11. Despite the Defendants' somewhat forced attempt to paint the Open Letter as "interpretive," the simple fact is this: were it not for the Open Letter, there would be no legal basis for holding FFLs criminally liable under Section 922(d)(3) for selling a firearm to a Registry Cardholder. Indeed, after an exhaustive search of federal cases dating back to the original passage of Section 922(d)(3), the Plaintiff was unable to find a single case anywhere in the United States where an FFL was charged, let alone convicted, of violating Section 922(d)(3) for selling a firearm to a Registry Cardholder. Such a criminal charge has never occurred because, neither the statute nor the corresponding regulation provide any basis for such a charge.

Section 922(d)(3) reads in relevant part:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

[....]

(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

While the statute does point to a definition for the term "Controlled Substances," citing 21 U.S.C 802, the statute fails to provide any definition for the term "unlawful user." Taken on its plain meaning, the logical definition of the term "unlawful user" would mean an individual convicted of unlawfully using a Controlled Substance (whether convicted of a felony or a misdemeanor). However, the ATF took a somewhat broader interpretation of the term, when it in enacted 27 CFR 478.11, in which the agency provided the following definition of "unlawful user or addicted to a Controlled Substance":

A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-11-

1  who is a current user of a controlled substance in a manner other than as
prescribed by a licensed physician […].

2  27 CFR 478.11.

3      The foregoing regulation immediately contradicts the language of the Open Letter, since

4  the Open Letter specifically prohibits the sale of firearms to Registry Cardholders, who would

5  have by necessity consulted a licensed physician prior to obtaining a Registry Card. As already

6  pointed out in this brief, the process of obtaining a Registry Card requires under State Law a

7  recommendation from a licensed physician. Meanwhile, 27 CFR 478.11 specifically defines

8  "unlawful user" as a person who failed to obtain a prescription from a physician.  This plain

9  reading of the regulation would provide a simple and decisive defense for any firearms licensee

10 wrongfully charged with a violation of Section 922(d)(3).  However, the Open Letter changes the

11 rule, providing the force of law necessary to charge and even convict any FFL that sells a firearm

12 to a Registry Cardholder.

13     While this obvious distinction between the regulation and the Open Letter is sufficient

14 grounds for triggering the Notice and Comment Requirements of the APA, a further reading of

15 the entire regulation 27 CFR 478.11 gives us even more cause for concern.   27 CFR 478.11

16 includes a further explanation of the term "unlawful use," along with a list of illustrative

17 examples, none of which would come close to justifying a blanket ban on the sale of firearms to

18 Registry Cardholders.  27 CFR 478.11 further states:

19         [Unlawful use] is not limited to the use of drugs on a particular day, or
           within a matter of days or weeks before, but rather that the unlawful use
20         has occurred recently enough to indicate that the individual is actively
           engaged in such conduct. A person may be an unlawful current user of a
21         controlled substance even though the substance is not being used at the
           precise time the person seeks to acquire a firearm or receives or possesses
22         a firearm. An inference of current use may be drawn from evidence of a
           recent use or possession of a controlled substance or a pattern of use or
23         possession that reasonably covers the present time, e.g., a conviction for
           use or possession of a controlled substance within the past year; multiple
24         arrests for such offenses within the past 5 years if the most recent arrest
           occurred within the past year; or persons found through a drug test to use a
25         controlled substance unlawfully, provided that the test was administered
           within the past year. For a current or former member of the Armed Forces,
26         an inference of current use may be drawn from recent disciplinary or other
           administrative action based on confirmed drug use, e.g., court-martial
27         conviction, nonjudicial punishment, or an administrative discharge based
           on drug use or drug rehabilitation failure.

28
   27 CFR 478.11

-12-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Nothing within the foregoing regulation states or even suggests that a Registry Cardholder would be automatically and irrefutably deemed an "unlawful user" and therefore denied her Second Amendment Rights. All of the examples provided above presume some level of fact-finding due process carried out to determine whether the person is, in fact, an unlawful user: "a conviction for use or possession [...]; multiple arrests within the past 5 years [...]; a drug test [...]; court-martial conviction." *Id*. Each and every one of these bases for an "inference" requires some level of investigation or due process. However, the Open Letter simply makes the blanket assertion that any person with a Registry Card is *per se* a criminal and therefore shall be automatically deprived of her constitutionally guaranteed rights, without any notice, without any hearing, and without any due process.

The Open Letter represents a substantive change in the law, amending a prior regulation and creating criminal liability for FFLs where such liability did not previously exist. Yet, the Defendant failed to provide any opportunity for the public to review and comment upon this proposed rule, as required under the APA. Accordingly, the Open Letter is an unlawful abuse of the ATF's authority and must be declared invalid.

### B. If the ATF's Letter was Merely Interpreting Existing Law, Then the Underlying Law Violates the Second Amendment.

A quote from the DC Circuit seems especially relevant to this case:

> The phenomenon we see in this case is familiar. Congress passes a broadly worded statute. The agency follows with regulations containing broad language, open-ended phrases, ambiguous standards and the like. Then as years pass, the agency issues circulars or guidance or memoranda, explaining, interpreting, defining and often expanding the commands in the regulations.

*Appalachian Power Co v. Envtl. Protection Agency*, 208 F.3d 1015, 1020 (D.C. Cir., 2000).

Here, we have an instance where a federal agency has so broadly interpreted a federal statute as to render that statute unconstitutional. If this Court were to accept the extraordinary breadth with which the ATF has interpreted § 922(d)(3), and by implication § 922(g)(3), then between 10% and 50% of adult-aged US citizens would be precluded from possessing,

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

purchasing, transporting or even receiving any firearm or ammunition.[6]  In effect, the law, if enforced to the extent argued by the ATF, could deprive half of our adult-aged citizens of their fundamental constitutional right to keep and bear arms.  Moreover, the ATF's interpretation of these statutes, as espoused in the Open Letter, seeks to create a means of automatically labeling entire groups of people with medical conditions as criminals, without any notice, without any hearing, and without any means of refuting or overturning what is, in effect, a criminal punishment.

**1. The ATF's Overbroad Interpretation of §§ 922(d)(3) and (g)(3) Unconstitutionally Violates Second Amendment Rights, failing under both a strict scrutiny and an intermediate scrutiny analysis.**

18 U.S.C § 922(d)(3) reads as follows:

> (d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> [...]
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))

Meanwhile, 21 U.S.C § 802(6), the law defining "controlled substances," reads as follows:

> The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

If § 922(d)(3) were narrowly construed, such that the definition of an "unlawful user" encompassed only persons recently convicted of drug-related crimes (both misdemeanors and felonies), then the statute would satisfy constitutional standards.  Similarly § 922(g)(3), which imposes criminal liability upon "unlawful users" who acquire or possess firearms, is constitutionally sound, if we assume that the determination of whether a person is an "unlawful

---

[6] According to data from the Substance Abuse and Mental Health Services Administration, dated 2011, out of a random sample of 58,397 people surveyed, 11.5% admitted to smoking marijuana within the last 12 months and an additional 30.4% admitted to smoking marijuana at some point preceding the last 12 months; as a representative statistic of the entire United States, this indicates that  approximately 29.6 million people within the United States have used marijuana within the last year, while an additional 78.3 million people have smoked marijuana within their  lifetimes  (http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=34481&ds=1&file_id=1098647);  *see also* 2010 UNITED STATES HEALTH REPORT, as compiled by the National Center for Health Statistics, available at http://www.cdc.gov/nchs/data/hus/hus10.pdf (reporting that nearly half of all persons within the United States have taken prescription drugs within the last 30 days).

-14-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  user" requires some level of judicial review (i.e., the criminal charges and proceedings filed

2  against the accused party).

3       However, the ATF has deliberately sought to broaden the definition of "unlawful user" to

4  include, not only persons with prior drug-related criminal convictions, but also any person that

5  an FFL may by inference think is an "unlawful user." As already noted, under 27 C.F.R. §

6  478.11, the ATF broadly defines the term "[u]nlawful user of or addicted to any controlled

7  substance." *See full definition at p. 12, infra.* Then, in the Open Letter, the ATF further expanded

8  the meaning of "unlawful user" to include any person with a Registry Card, dictating to all FFLs

9  "if you are aware that the potential transferee is in possession of a card authorizing the

10  possession and use of marijuana, then you have 'reasonable cause to believe' that the person is

11  an unlawful user of a controlled substance. As such, you may not transfer firearms or

12  ammunition to the person."

13       The definition of "unlawful user" is disturbingly over-broad, attempting to circumvent all

14  judicial review of alleged "unlawful" activity and merely labeling large groups of people as

15  automatically and irrefutably engaged in criminal conduct, so as to deprive those individuals of

16  their Second Amendment rights and do so without providing any notice, hearing or other

17  procedural due process. This is a constitutionally untenable position, which is especially

18  concerning, given the political underpinnings of the Government's action.[7] This overbroad

19  "interpretation" of §§ 922(d)(3) and (g)(3) is simply far too overreaching to pass constitutional

20  muster, regardless of the level of scrutiny applied by this Court.

21       **a.  The Applicable Standard of Scrutiny for Second Amendment Cases is Unclear and Unsettled.**

22       As noted by the Defendant, neither the US Supreme Court nor the Ninth Circuit has

23  adopted a specific standard of scrutiny for Second Amendment cases. DEF MOTION TO DISMISS at

24  pp. 36-37.  While other Circuits have addressed this issue, the Defendants offer only a cursory

25  analysis of those court opinions and makes the broad assertion that all circuits have uniformly

26

27  ───────────────

28  [7] As referenced in the introduction and addressed in more detail in Section III below, it is the Plaintiff's position that the Open Letter was issued as a means of suppressing a growing pro-cannabis political movement and not actually aimed at the same policy issues that gave rise to the legislative enactment of §§ 922(d)(3) and (g)(3).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-15-

decided that Intermediate Scrutiny applies. *Id*. p. at 37, lines 11-12. While some circuits have openly adopted an intermediate scrutiny standard, most circuits have elected a more nuanced, case-by-case approach. *See e.g.*, *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir., 2010) (court applied intermediate scrutiny to the case at hand, but expressly stated that a different level of scrutiny may be applicable to other Second Amendment cases); *see also United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir., 2010) (court noted that Second Amendment cases should be treated similarly to first amendment cases, in that, different levels of scrutiny may apply depending upon the threat posed to the right); *see also United States v. Carter*, 669 F.3d 411 (4th Cir., 2012) (referencing the same standard enunciated by the Seventh Circuit, suggesting that different levels of scrutiny shall apply, depending upon the extent to which the Second Amendment right is curtailed under the law).[8]

Moreover, the wholesale adoption of an intermediate scrutiny standard for all Second Amendment cases is deeply problematic given that the Supreme Court has made clear that the Second Amendment is a "fundamental" personal right. *District of Columbia v. Heller*, 554 US 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)[9]; *see also McDonald v. City of Chicago*, 130 S.Ct. 3020, 3042 (2010) ("It is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty"). If the Second Amendment is a "fundamental" right, as posited by the Supreme Court, then our nation's case law directs that the Strict Scrutiny standard is the appropriate standard for analyzing laws aimed at stripping individuals of these rights. *See e.g.*, *Graham v. Richardson Sailer v. Leger*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *United States v. Virginia*,

---

[8] It should also be noted that, while there is a debate as to whether strict or intermediate scrutiny applies to Second Amendment cases, the Supreme Court did rule out the rational basis standard of scrutiny. *DC v. Heller*, 554 US 570, n. 27, 628, 128 S. Ct. 2783, n. 27, 2783 (2008); *see also US v. Carter*, 669 F.3d 411, 415 (4th Cir., 2012) (acknowledging the Supreme Court's foreclosure of rational basis scrutiny in Second Amendment cases).

[9] Specifically, the Court stated that "By the time of the founding [of the United States], the right to have arms had become fundamental for English subjects" then states that the Second Amendment was "a codified right 'inherited from our English ancestors.'" 128 S. Ct. 2783 (*quoting Robertson v. Baldwin*, 165 U. S. 275, 281 (1897)).

-16-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (J. Scalia *dissenting* notes that "strict scrutiny will be applied to the deprivation of whatever sort of right we consider 'fundamental'"). "Even though the governmental purpose [may] be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). "Where legislative abridgment of 'fundamental personal rights and liberties' is asserted, 'the courts should be astute to examine the effect of the challenged legislation." *Id*. (*quoting Schneider v. State*, 308 U.S. 147, 161, 60 S.Ct. 146, 151 (1939).

Nevertheless, regardless of which standard this Court ultimately decides to employ, §§ 922(d)(3) and (g)(3), as interpreted and promulgated by the ATF, fail to pass constitutional muster under any applicable standard. As explained in more detail below, the ATFs overbroad construction of §§ 922(d)(3) and (g)(3) is impossibly expansive, to the point that it utterly fails to comport with constitutional standards.

> **b. The ATF's Interpretation of §§ 922(d)(3) and (g)(3) Fails Under a Strict Scrutiny Analysis because it is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals.**

18 U.S.C §§ 922(d)(3) and (g)(3), as interpreted by the Defendants, plainly fail to survive a strict scrutiny analysis. To survive a strict scrutiny analysis, the law must: (1) further a compelling government interest; (2) be narrowly tailored to achieve that compelling government interest; and (3) be the least restrictive means for achieving that compelling government interest. *See e.g. Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 395 U. S. 627 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 485 (1965).

The ATF's broad interpretation of the term "unlawful user," as embodied in 27 C.F.R. § 478.11, causes §§ 922(d)(3) and (g)(3) to fail on prongs two and three of the above-cited test: the law is <u>not</u> narrowly tailored to achieve the intended government interest, nor is it the least restrictive means of achieving the intended government interest. As noted by the Defendants, in their most recent Motion, §§ 922(d)(3) and (g)(3) were enacted with the intent of keeping firearms "out of the hands of presumptively risky people." DEF MOTION TO DISMISS, p. 3, lines

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-17-

27-28 (*quoting Dickerson v. New Banner, Inc.*, 460 U.S. 103, 112, n. 6 (1983)).  However, in its attempt to deter firearm possession amongst these presumptively risky people, the ATF takes a scorched earth approach, seeking to deprive Second Amendment rights to a phenomenally large contingent of the American population – any and all persons that *may* have a physical addiction to any Controlled Substance and any all persons that *may* have taken a Controlled Substance without a physician's prescription.  Based on numbers from the Centers for Disease Control and the Substance Abuse and Mental Health Services Administration, this accounts for roughly rough fifty percent (50%) of all adults in the United States.[10]

18 U.S.C §§ 922(d)(3) and (g)(3), as interpreted by the ATF, are just too impossibly broad to survive strict scrutiny (or intermediate scrutiny for that matter).  The law aims to deprive over one hundred million people of their constitutional right to keep and bear arms, just to target an infinitesimal subset of potentially dangerous individuals.  Even if §§ 922(d)(3) and (g)(3) were solely concerned with illicit substance abuse (which they are not) and even if we were to assume that every single person who committed a violent crime within the last year was an illicit substance abuser (which is a quantum leap of an assumption), the violent persons targeted by §§ 922(d)(3) and (g)(3) would <u>still</u> only account for 3.2% of the total people actually affected by the law,[11] meaning that the law attacks the constitutional rights of more than thirty times the number of people that it is intended to affect. This is like leveling the entire rainforest just to take down a single rotting tree.

What's more, it is Plaintiff's contention that the Open Letter fails to even satisfy the first prong of the strict scrutiny standard; the Plaintiff asserts that the Open Letter, unlike the underlying statute, was <u>not</u> issued to further a compelling government interest, but rather was issued as a means of putting down a growing grassroots political movement.  The Open Letter was part of an effort within the federal government to undermine the increasing groundswell of

---

[10] *Supra* at note 5.

[11] This statistic is based on a combination of two statistical sources.  First, the Substance Abuse and Mental Health Services Administration calculates that 38,806,000 Americans had taken illicit drugs in 2010. Second, statistics compiled by the Federal Bureau of Investigation estimate that in that same year there were approximately 1,240,000 instances of violent crime. *See Crime in the United States*, available at <u>http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/violent-crime/violent-crime</u>.  Taken together, if we assume that each instance of violent crime was committed by a separate and distinct individual, and that each and every violent assailant was an illicit drug user, then only 3.2% of illicit drug users account for all violent crimes committed in the United States.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

state-level support for the legalization of medical marijuana. The Open Letter was a straightforward abuse of agency authority, aimed at undermining the constitutional rights of our citizens. The Open Letter must be struck down as unconstitutional, together with the ATF's unconstitutionally broad interpretation of §§ 922(d)(3) and (g)(3)

   **c. Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. §§ 922(d)(3) and (g)(3) is Unconstitutional Because the Expansive Scope of the Law, Covering More than Half of the U.S. Population, is Not Substantially Related to Any Important Government Interest.**

   To overcome intermediate scrutiny, the asserted governmental interest must be "substantial," rather than "compelling," and the regulation adopted must have "a direct, substantial relationship between the objective and the means chosen to accomplish the objective." *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991); *see also Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530, 540, 100 S.Ct. 2326, 2334-35, 65 L.Ed.2d 319 (1980). As noted by the Ninth Circuit, "[i]ntermediate scrutiny's precise contours vary slightly depending upon which constitutional right is at issue." *Jacobs v. Clark County School Dist.*, 526 F.3d 419, n. 23 (9th Cir. 2008). Neither the Ninth Circuit, nor the Supreme Court has set down a system of intermediate scrutiny as applied to Second Amendment issues.

   While the Plaintiff agrees that §§ 922(d)(3) and (g)(3) were enacted to further a "substantial" government interest, the Plaintiff contends that the Open Letter was not enacted for such a purpose. As previously noted in this brief, it is the Plaintiff's contention that the Open Letter was specifically authorized and issued for the purposes of suppressing a growing political movement. The DOJ, and by extension the ATF, endeavored to quash the medical cannabis movement by manipulating the enforcement of existing law to curtail the constitutional rights of individuals involved in the movement. This is a material factual allegation that precludes any summary judgment on this matter.

   Moreover, due to the extraordinary breadth and scope with which the ATF has interpreted §§ 922(d)(3) and (g)(3), even prior to the issuance of the Open Letter, the law fails to provide a

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-19-

direct, substantial relationship between the law's objective and the means chosen to accomplish that objective. As previously noted, the ATF has taken a scorched earth approach in its interpretation of these laws, seeking to stretch §§ 922(d)(3) and (g)(3) beyond the boundaries of constitutionality and deprive Second Amendment rights to as many people as possible. The overwhelming impact of the law, as interpreted by the ATF, falls on the shoulders of non-violent, harmless individuals, depriving those individuals of their Second Amendment rights. The law does not merely apply to thieving, violent scoundrels. As applied by the ATF, §§ 922(d)(3) and (g)(3) prohibits the sick, the elderly,[12] and tens of millions others.

Meanwhile, the law allows a specific exception for alcohol abuse. Curiously, alcoholism, a condition that is widely known to increase aggression and violent tendencies[13] is exempted from prosecution under § 922(d)(3). If the law were truly constructed for the purpose of curtailing the ownership of firearms amongst potentially violent people, then why would it apply to all suspected drug users, but specifically exclude alcoholics? In a 1997 report from the National Institute of Health, it was noted that, as a direct effect of the consumption of alcohol, "[a]lcohol may encourage aggression or violence by disrupting normal brain function."[14] Nevertheless, § 922(d)(3), a law allegedly designed to keep firearms out of the hands of potentially dangerous people makes no attempt to keep guns from alcoholics.

Inversely, there is no viable evidence to suggest that marijuana use is correlated with violent crime (or any other crime beyond illegal drug use). While the Government makes a feeble attempt to tie drug use to criminal behavior, the statistics that the Government points to fail to take into account the large number of non-criminal drug users. The statistics cited by the Government merely analyze the number of prison inmates who admit to having been on narcotic substances at the time of arrest. However, those individuals account for a miniscule fraction of the total number of drug users in the United States.

At the end of 2010, state and federal prison populations totaled 1,518,104. Correctional

---

[12] *See supra* note 5 (90.1% of persons over the age of 65 report having taken prescription medications within the last thirty days).
[13] *See* NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM NO. 38 OCTOBER 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm
[14] *Id.*

-20-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Population in the United States, 2011. Bureau of Justice Statistics. This figure equals approximately 0.5% of the U.S. population. *Id*.; 2010 Census. Federal prisons housed 206,968 prisoners while state prisons housed 1,311,136. The 2004 DOJ study relied upon by Defendants indicates that 32% of state prisoners and 26% of federal prisoners committed their current offense while under the influence of drugs.[15] However, only 15% of state prisoners and 14% of federal prisoners used marijuana at the time of their offense.[16] Thus, approximately 196,670 state inmates and 28,975 federal inmates committed their crimes while using marijuana. This equates to approximately 0.07% of the U.S. population having committed a crime while under the influence of marijuana. When this number is compared with the total number of Americans who report using marijuana, it is clear that marijuana use has no causal link to crime. Approximately 106,232,000 Americans (or 34.4% of the total U.S. population) report having using marijuana in their lifetime.[17] Approximately 17,373,000 Americans (or 5.6% of the total U.S. population) report having used marijuana in the past month. Thus, the number of incarcerated persons who were using marijuana at the time of their crime equals only 0.2% of all persons who have used marijuana and 1.2% of all persons who are habitual users of marijuana.

Additionally, the 2004 DOJ study reports that violent offenders were less likely than other offenders to have used drugs in the month prior to their offense.[18] The report states "Violent offenders in State prison (50%) were less likely than drug (72%) and property (64%) offenders to have used drugs in the month prior to their offense."

The Defendants also rely on a 2010 report by the Office of National Drug Control Policy. However, this report is not a good indicator of any supposed link between marijuana and crime because it only reports incidents of marijuana use in males arrested in 10 cities. Additionally, the ONDCP is not an independent research organization but rather a cabinet level component of the Executive Office with the stated objective of eradicating drug use. As such, any studies conducted by the ONDCP are inherently biased.

There is no viable link between the use of cannabis and violent behavior; meanwhile,

---

[15] *See* http://bjs.ojp.usdoj.gov/content/dcf/duc.cfm.
[16] *Id.*
[17] *See* http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=32722&ds=1&file_id=1094507
[18] *See* http://bjs.ojp.usdoj.gov/content/pub/pdf/dudsfp04.pdf.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

there is clear and well-established evidence that alcohol is directly linked with violent behavior. Nevertheless, the ATF's application of §§ 922(d)(3) and (g)(3) arbitrarily preclude users of cannabis (or any other controlled substance for that matter) from exercising their fundamental constitutional rights. Sections 922(d)(3) and (g)(3), as interpreted by the ATF, fails to provide a direct, substantial relationship between the law's objective and the means chosen to accomplish the objective. The ATF's interpretation of this law is untenable, unenforceable, unconstitutional and utterly unrealistic; it must be declared unconstitutional.

### d. United State v Dugan does not foreclose a constitutional challenge to 18 U.S.C §§ 922(d)(3) and (g)(3).

In seeking to validate the constitutionality of §§ 922(d)(3) and (g)(3), the Defendants rely heavily, almost exclusively, upon the Ninth Circuit case *United States v. Dugan*, 657 F.3d 998 (9th Cir 2011). However, *Dugan* is a deeply flawed opinion, lacking any meaningful legal analysis, and is not, in fact, applicable to the current case. Indeed, the Defendant's discussion of *Dugan* is longer than the actual court opinion.

Consisting of just four short paragraphs, *Dugan* makes the sweeping assertion that § 922(g)(3) is constitutional, without even bothering to examine the law under a strict scrutiny, intermediate scrutiny or even rational basis analysis. Indeed, *Dugan* provides no substantive analysis of the law's constitutionality and appears to base its entire decision upon two similarly brief and similarly flawed opinions from sister circuit courts.[19]

Meanwhile, the facts of *Dugan* are so prejudicial that they fail to provide a proper framework for analyzing the constitutionality of §§ 922(d)(3) or (g)(3). In *Dugan,* the party challenging the law's constitutionality, Kevin Dugan, was arrested during a domestic violence complaint, when officers discovered an illegal marijuana "operation" in Mr. Dugan's home. Mr. Dugan was the very sort of person that § 922(g)(3) was designed for—a dangerous criminal. Based on the facts represented in the *Dugan* opinion, Kevin Dugan was possibly a wife beating, drug dealing, drug using, arms dealer. As the old saying goes: "Bad facts make bad law."

Indeed, §§ 922(d)(3) or (g)(3) don't merely affect the rights of the Kevin Dugans of this

---

[19] *Dugan* cites to only two cases in support of its proposition that 922(d)(3) is constitutional, *U.S v. Seay*, 620 F.3d 919 (8th Cir 2010), and *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1 world; these laws, as interpreted by the ATF, threaten the fundamental constitutional rights of

2 nearly half of the U.S. population.[20]  Even though §§ 922(d)(3) or (g)(3) are intended to keep

3 guns out of the hands of a small subset of the population, the ATF has radically over-reached the

4 limits of this goal and sought to unilaterally categorize enormous swaths of the population as

5 criminals, without the need for any judge, any jury or any due process.

6　　　　The *Dugan* opinion does <u>not</u> so much as reference the ATF, let alone address the

7 expansive manner with which this agency has sought to enforce §§ 922(d)(3) or (g)(3).  In fact,

8 the *Dugan* opinion pre-dates the Open Letter, so it naturally fails to address the constitutionality

9 of that letter.  The *Dugan* opinion does not even address the constitutionality § 922(d)(3), but

10 rather only addresses § 922(g)(3).  Meanwhile, it is actually under § 922(d)(3) that the ATF

11 seeks to deprive individuals of their Second Amendment rights.

12　　　　For the foregoing reasons, the *Dugan* Opinion is a flawed, short-cited opinion that simply

13 does not apply to the current case.

14　　**III.　　DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS.**

15　　　　The ATF's Blanket prohibition on the sale of firearms to Registry Cardholders

16 violates such cardholders' First Amendment rights to free speech and expression.  By

17 automatically labeling the Plaintiff as a criminal (an "unlawful user"), based purely upon her

18 choice to acquire and maintain a State-issued Registry Card, the Defendants have deliberately

19 sought to curtail the Plaintiff's right to free speech.  The Plaintiff's procurement and possession

20 of her Registry Card is a form expressive conduct protected under the First Amendment.　　And

21 yet, the Defendants have endeavored to deter the Plaintiff from exercising those First

22 Amendment Rights.  The Defendants have effectively given the Plaintiff a Hobson's Choice

23 between her First and Second Amendment Rights: *you can either exercise your right to free*

24 *expression, or you can exercise your right to keep and bear arms, but you can't have both*.  This

25 is an unacceptable and unconstitutional proposition.

26　　　　"As a general matter, the First Amendment means that the government has no power to

27 restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v.*

28

---

[20] *Supra* note 5.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-23-

*Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). Nevertheless, in the present case, the ATF sought to do just that.

### A. The Plaintiff's Procurement and Possession of a Registry Card Constitutes a Form of Speech Protected Under the First Amendment.

It is well settled that the free speech protections of the First Amendment cover more than mere verbal communication. *See, e.g., Jacobs v. Clark Cnty. School Dist.*, 373 F.Supp.2d 1162, 1171 (D. Nev. 2005) ("we have long recognized that [the First Amendment's] protection does not end at the spoken or written word"). If an activity is "sufficiently imbued with elements of communication" it will "fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington*, 418 U.S. 405, 409 (1974). In determining whether conduct falls within the ambit of the First Amendment, the Court should consider "the nature of [the] activity, combined with the factual context and environment in which it was undertaken." *Id*. at 410.

In *Spence v. Washington*, the Supreme Court held that an activity is protected by the First Amendment when "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id*. at 410-11. Both prongs of the *Spence* test are fact intensive, and both are met in the present case.[21]

Here, the Plaintiff intended to convey a particularized message by possessing a Registry Card and her message was understood by those who viewed it. The message was: *I am a proponent for the medical use of marijuana*. The Defendant wrongly tries to portray the Registry Card as a purely utilitarian instrument, merely a reflection of the Plaintiff's medical condition. However, the card is a powerful statement of how the Plaintiff wishes to treat her medical condition. The Card reflects the Plaintiff's deep seeded belief in the efficacy of medical marijuana, not just for her ailment, but also for a host of ailments. By undergoing the lengthy application process, the Plaintiff has made an affirmative expression of her belief that cannabis is a viable form of medicine.

The mere fact that the Card has a utilitarian purpose does not foreclose the prospect of the

---

[21] While the Plaintiff asserts that the facts inherent in one's possession of a Registry Card conclusively satisfy the Spence test for speech, the Plaintiff also points out that the fact specific nature

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-24-

Card serving as a form of political speech.  On the contrary, the underlying application process and purpose of the Card makes it, in fact, a more potent form of political speech.   Obtaining a medical marijuana registry card in the State of Nevada is an exceedingly difficult and lengthy process.[22] Due in large part to the extreme divergent opinions on the efficacy of medical marijuana, the procedure for obtaining a Registry Card requires that the registrant undergo a series of application steps that take many months to complete. The Card is itself a badge of honor that, despite the many close-minded forces intent on taking away her right to possess the card, the Plaintiff endured and successfully navigated this needless bureaucracy.

The Plaintiff's intent to convey a particularized message is irrefutable at this stage of the litigation.  Determining the Plaintiff's intent is a subjective inquiry. *See e.g., O.S.C & Assoc. v. Comm'r Of Internal Revenue*, 187 F.3d 1116, 1120  (9th Cir. 1999) (stating "intent is subjective," *citing Elliotts, Inc. v. C.I.R.*, 716 F.2d 1241, 1243 (9th Cir. 1983). The Plaintiff avers that she intended, through her procurement of a Registry Card, and through her informing others that she possessed a Registry Card, to convey a message that marijuana is a valid medical treatment and that the use of medical marijuana for medical purposes should be legal.

Meanwhile, the use of marijuana for medical purposes is, and has been, at all times relevant hereto, a hotly debated political issue with tensions between the states and federal government growing stronger. In such circumstances, anyone who viewed Plaintiff's Registry Card or became aware that Plaintiff possessed the Registry Card, would understand the Plaintiff's intent to message her support for medical marijuana. Thus, Plaintiff's obtainment and possession of the Registry Card is a form of expressive activity protected by the First Amendment.

Moreover, even if Plaintiff's conduct could somehow be labeled as non-expressive activity, she still holds a valid First Amendment claim. "[W]here a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive conduct, the statute may be subject to First Amendment scrutiny." *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996), *quoting Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986)

---

[22] FAC at Ex. 1, ¶¶ 21-24.

-25-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

(internal quotations omitted).  The Open Letter deliberately singles out all Registry Cardholders, a subset of the population that necessarily includes the most zealous and outspoken of medical marijuana advocates, those persons that the law most directly affects: medical marijuana patients. As such, the Open Letter inevitably singles out the medical marijuana lobby and seeks to suppress their outspoken criticism of the government by curtailing their Second Amendment Rights.

**A. The Constitutionality of the ATF's Enforcement Actions, as Applied to the First Amendment, Should be Examined Under a Strict Scrutiny Standard.**

Because the Plaintiff's activities in obtaining, possessing and informing others that she possess a Registry Card are protected by the First Amendment, any direct restraint on such activities must meet strict scrutiny. *Texas v. Johnson*, 491 U.S. 397, 406 (1989). "The purpose of the First Amendment is to protect private expression." *United States v. American Library Assn., Inc.*, 539 U.S. 194, 211 (2003), *quoting Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U. S. 94, 139 (1973). Strict scrutiny applies to regulations that are "related to the suppression of free expression." *Johnson*, 491 U.S. at 406.

While the Defendants have argued for the less stringent standard set forth in *United States v. O'Brien*, insisting that the Open Letter was not intended to inhibit speech, the Plaintiff contends that the Open Letter was indeed directly aimed at hindering speech.  It is the Plaintiff's assertion that the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to suppress the growing medical marijuana movement.  It is no coincidence that the Open Letter was issued by a bureau of the same agency that was, at the same time, in the process of coordinating a massive crackdown on medical marijuana growers and dispensaries in multiple states.  It is no coincidence that the Open Letter was issued within days of an IRS' ruling that prohibited marijuana growers and dispensaries from writing off business expenses. It is no coincidence that the Open Letter was issued just a few weeks before the four US Attorneys of California dispatched a series of letters to California dispensaries, giving them 45 days to shut down or face criminal prosecution.  The Open Letter was part of a coordinated effort to intimidate and suppress a political movement.

Given that the Open Letter was squarely aimed at curtailing individuals' freedom of

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-26-

speech and expression, a judicial review of the Letter's constitutionality is subject to a strict scrutiny analysis.

### B. The ATF's Enforcement Actions, as Set Forth in the Open Letter, Fail to Meet Strict Scrutiny Standards.

In order for a law to survive judicial review under a strict scrutiny analysis, the law must be (1) justified by a compelling governmental interest; (2) narrowly tailored to achieve that goal or interest; and (3) the least restrictive means of achieving that interest. *R.A.V. v. City of St Paul, Minnesota*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Here, the Open Letter fails on all three of the foregoing points. First, the letter was NOT issued to serve any compelling government interest, but rather was issued for the purpose of intimidating and suppressing a growing political movement. Second, even if this Court were to believe the Defendants' asserted purpose for the Open Letter, the Letter was not narrowly tailored to effectuate that purpose. Automatically classifying all Registry Cardholders as criminals effectively deprives an enormous cross section of the public of their Second Amendment rights without any real policy justification. Finally, there are a myriad of less restrictive methods of curtailing gun violence and preventing presumptively dangerous people from possessing firearms.

There is no constitutional justification for the Open Letter. The ATF's issuance of the Letter was an abusive of its authority, designed to chill the advocacy efforts of medical marijuana activists.

### C. Even Examined Under the Less Restrictive O'Brien Test, the ATF's Universal Ban on the Sale of Firearms to Registry Cardholders Amounts to an Unconstitutional Restriction on Free Speech.

Even if this Court were to employ the *O'Brien* test, as argued for by the Defendants, the ATF's pronouncement that all Registry Cardholders are *per se* criminals, as set forth in the Open Letter, is still a clear violation of First Amendment rights. *O'Brien* requires that the regulation (1) be "within the constitutional power of the Government," (2) "further an important or substantial government interest," (3) "the government interest is unrelated to the suppression of free expression," and (4) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 367

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-27-

(1968)

In the present case, the ATF's interpretation of §§ 922(d)(3) and (g)(3), as set forth in the Open Letter, does not merely place an incidental restriction on First Amendment freedoms. On the contrary, the Open Letter completely precludes Registry Cardholder's from exercising their right to free speech, unless they are willing to relinquish their right to bear arms. As mentioned earlier, this is an unconstitutional Hobson's Choice, where the Registry Cardholders are forced to decide between Constitutional rights. The ATF's Open Letter was directly related to suppressing a political movement. It did not further any important or substantial government interest. It was merely an attack on the civil liberties of the medical marijuana lobby.

Meanwhile, The restriction placed on First Amendment freedoms was far greater than what was essential to the furtherance of Defendants' alleged purpose of keeping guns out of the hands of potentially dangerous people. While there is very little, if any, meaningful evidence to suggest that marijuana users are more violent than the rest of the community, there is most definitely no evidence to connect Registry Cardholders with gun violence. Examining the final prong of *O'Brien* test, it is plain to see that the ATF's interpretation of §§ 922(d)(3) and (g)(3) posed a far greater threat upon the First Amendment freedoms of Registry Cardholders than it furthered any gun control efforts.

Accordingly, even under the *O'Brien* test, which is less stringent than the strict scrutiny analysis required in this case, the Defendants' universal ban on the sale of firearms to Registry Cardholders is unconstitutional.

## IV. DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE DUE PROCESS.

Plaintiff has asserted a substantive due process claim and such claim does not merge with Plaintiff's claims under the First and Second Amendments as argued by Defendants. In her Complaint, Plaintiff alleged one cause of action for violation of her 5th Amendment Due Process rights, which contained both a procedural and substantive aspect. As explained in Plaintiff's Response and Cross-Motion (Dkt. No. 17), Plaintiff possesses a liberty right in the ability to choose a course of medical treatment. In the FAC, Plaintiff split her Due Process claim into separate causes of action for the violations of procedural due process and the violations of

-28-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

substantive due process. In the FAC, Plaintiff sets forth under her substantive due process claim that Defendants have deprived her of her First and Second Amendment rights. However, such provisions in the FAC do not waive Plaintiff's previous assertion that she possess a liberty right in the ability to choose a course of medical treatment nor do they merge Plaintiff's substantive due process claim with her First and Second Amendment claims as Defendants allege.[23]

The Fifth Amendment of the United States Constitution provides, in relevant part that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. The right to substantive due process concerns the right to liberty under the Fifth and Fourteenth Amendments. Essentially, the question of substantive due process asks whether a person is free to engage in certain conduct in the exercise of their liberty under the Due Process Clause. *See Lawrence v. Texas*, 539 U.S. 558, 564 (2003). The broad substantive reach of liberty under the Due Process Clause has been noted in a number of U.S. Supreme Court Cases. *Id.; see also Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923); and *Griswold v. Connecticut*, 381 U.S. 479 (1965). "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Albright v. Oliver*, 510 U.S. 266, 287 (1994) (concurring opinion), *quoting Poe v. Ullman*, 367 U.S. 497, 543 (1961) (internal quotations omitted). The U.S. Supreme Court has found that:

> "[Matters] involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."

*Lawrence*, 539 U.S. at 574, *quoting Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). "[T]he ultimate question is whether sufficient justification exists for the intrusion by the government into the realm of a person's 'liberty, dignity, and freedom.'" *Compassion in*

---

[23] While Plaintiff maintains her claim that substantive due process protects her right to choose a course of medical treatment without interference from the Government, in the interests of brevity, this Response will not go into a detailed discussion of that right because it is not addressed in Defendants' Motion. However, Plaintiff maintains the right as it is set forth in her Response and Cross-Motion, Dkt. No. 17.

-29-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

*Dying v. State of Washington*, 79 F.3d 790, 799 (9th Cir. 1996), *quoting Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 287, 289, 110 S.Ct. 2841, 2856, 2857 (1990) (O'Connor, J., concurring).

The argument that Plaintiff's substantive due process claim fails because Plaintiff has alleged a deprivation of her First and Second Amendment rights is without merit. A plaintiff may allege both violations of the substantive due process clause and violations of another Constitutional Amendment without losing her substantive due process claim. While the Supreme Court has held that claims against law enforcement officers for use of excessive force must be brought under the Fourth Amendment rather than the substantive due process provision of the Fifth Amendment "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct," it does not follow that no substantive due process claim can ever been had where there is a corresponding violation of another Constitutional Amendment. Here, Plaintiff has alleged a substantive due process claim as a result of Defendants' actions and such claim is not foreclosed by the fact that Plaintiff also alleges violations of her First and Second Amendment rights.

## V. DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS.

The United States Constitution requires that whenever a governmental body acts to injure an individual, that act must be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved. "In all cases, that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts." *Ex Parte Wall*, 107 U.S. 265, 289 (1883).[24]   With respect to action taken by

---

[24] Justice Frankfurter's concurring opinion in *Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123, 163 (1951), further elaborated upon this understanding as follows:

> "The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished - these are some of the considerations that must enter into the judicial judgment."

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-30-

administrative agencies, the Supreme Court has held that notice must be given and a hearing must be held before a final order becomes effective. *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152, 153 (1941). "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). When the Constitution requires a hearing, the hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Generally, these provisions require that the hearing be held before a tribunal which meets currently prevailing standards of impartiality and a party must be given an opportunity not only to present evidence, but also to know the claims of the opposing party and to meet them. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950); *see also Goldberg*, 397 U.S. at 267-268. Furthermore, those who are brought into contest with the government in a quasi-judicial proceeding aimed at control of their activities are entitled to be fairly advised of what the government proposes and to be heard upon the proposal before the final command is issued. *Margan v. United States*, 304 U.S. 1, 18-19 (1938).

Here, the Defendants have deprived the Plaintiff of a fundamental right without any notice or opportunity to be heard. The Defendants have adopted and are enforcing a policy, through their Open Letter, whereby a distinct group of individuals are automatically precluded from exercising their fundamental rights under the U.S. Constitution based solely upon an FFLs reasonable belief that these persons are exercising their State granted rights. The Defendants have conclusively and irrefutably determined that the mere fact that an FFL is aware a "potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then [the FFL has] 'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and must deny the transfer of firearms or ammunition to that person.

However, such a determination that holders of a Registry Card are automatically prohibited from obtaining a firearm deprives the Plaintiff of her Second Amendment rights without any due process. Prior to the issuance of the Open Letter, Plaintiff was not given any opportunity to comment on the policy set forth in the Open Letter. Additionally, Defendants have not even provided a post-termination procedure whereby persons who hold Registry Cards can argue that they are not "unlawful users of or addicted to" a controlled substance. While the exact

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-31-

number of medical marijuana users is uncertain, it is estimated that roughly 600,000 persons in the U.S. are using medical marijuana in the nine states where registration is mandatory. By virtue of their issuance and enforcement of the policy set forth in the Open Letter, the Defendants have willfully deprived a large class of U.S. citizens, including the Plaintiff, of their fundamental rights in direct violation of the procedural requirements of the Due Process Clause. Defendants cannot be allowed, simply on their conclusory opinion that Registry Cardholders are always drug users, to avoid the procedural due process requirements of the Fifth Amendment.

## VI. DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the law." This provision of the Fourteenth Amendment has been held by the United States Supreme Court to apply to the federal government by virtue of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693 (1954). The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.")

Here, Defendants have violated Plaintiff's equal protection rights by treating Plaintiff differently from persons to whom she is similarly situated. The FAC alleges that Plaintiff is being treated differently than similarly situated individuals, which must be accepted as true for purposes of Defendants' Motion. Additionally, the determination of whether Plaintiff is being treated differently than similarly situated persons is inherently an issue of fact. Because there is a genuine dispute as to the material fact of whether Plaintiff is being treated differently than similarly situated persons, Defendants cannot be granted to Defendants on Plaintiff's Equal Protection claim.

In the FAC, Plaintiff specifically alleges that she is being treated differently from persons who are prescribed medical marijuana in states where obtainment of a Registry Card is not

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-32-

required because Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana based solely on her obtainment of a Registry Card as required by her state; Defendants have not issued any directive to FFLs that a person who gains access to medical marijuana in a state where a Registry Card is not required is an "unlawful user" of marijuana. In their Motion, Defendants completely misrepresent the allegations set forth in Plaintiff's FAC and incorrectly assert that Plaintiff's Equal Protection Claim rests on a supposed argument that "because some states allow medical marijuana use without issuing registry identification cards, those medical marijuana users will be able to buy firearms more easily than people who live in states that require medical marijuana registry cards." Motion to Dismiss at p. 40, lines24-26. However, this argument does not appear anywhere in the FAC.

  As additional grounds for her Equal Protection claim, Plaintiff's FAC also alleges that Plaintiff is being treated differently from persons with similar medical conditions. Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana simply because she has followed state laws for the obtainment of treatment for her medical condition; the Defendants have not issued directives to FFLs deeming any person who pursues any method of treatment other than medical marijuana an "unlawful user" of a controlled substance. Defendants, without any basis, allege that it is "entirely reasonable for the government to infer that those individuals who have affirmatively registered to use marijuana on the basis of chronic medical conditions are, in fact, marijuana users."[25] Motion to Dismiss at p. 41. Such conclusion is not "entirely reasonable" and completely ignores the reality that many people may register for a card and then not use or possess marijuana.[26]

  The Defendants' policy set forth in the Open Letter thus discriminates against persons

[25] Defendants' assertion that those who "have affirmatively registered to use marijuana . . . are, in fact, marijuana users" actually raises an important question about when a person pursuing the right to use medical marijuana may be deemed an "unlawful user." The Open Letter directs FFLs to deny firearm purchases based on a person's possession of a Registry Card but Defendants assert that a person may be deemed an "unlawful user" from the time they "affirmatively register." In Nevada, and many other states, there are typically many months between the time that a person registers and the time they receive their registration card. In the present case, it took seven (7) months from the time Plaintiff submitted her paperwork until she received her Registry Card. Would Defendants label her an "unlawful user" during those seven months?

[26] For example, many persons obtain Registry Cards prior to their condition becoming so debilitating that the person can no longer deal with the pain without the use of marijuana. The difficulty and length of time required to obtain a Registry Card in Nevada and other states actually encourages that persons prescribed medical marijuana take action to obtain their Registry Card as soon as possible, even if they may not use or possess marijuana in the near future.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-33-

who live in a state that requires a registry identification card because any knowledge of the person's possession of that card can be used as conclusive and irrefutable evidence to deny their attempt to purchase firearms and/or ammunition. Meanwhile, persons entitled to use medical marijuana in a state that does not issue registry identification cards will avoid the policies set forth in the Open Letter simply because their state does not issue registry identification cards. As such, the policies adopted and promulgated by the Defendants, as set forth in the Open Letter, violate the Plaintiff's right to equal protection.

## VII. PLAINTIFF DOES NOT SEEK MONETARY DAMAGES AGAINST THE UNITED STATES, OTHER THAN COSTS AND FEES ALLOWED, BUT INSTEAD SEEKS DECLARATORY AND INJUNCTIVE RELEIF.

Plaintiff does not dispute that 5 U.S.C § 702 does not provide for monetary damages against the United States, the ATF or the individual Defendants in their official capacities. The primary purpose of this case is, and has always been, to obtain declaratory and injunctive relief against the Defendants. Plaintiff has already asserted that she is not seeking monetary relief in this action other than various fees and costs associated with pursuing this case as provided for in 28 U.S.C. § 2412 and similar statutes. The Prayer for Relief contained in Plaintiff's FAC requesting "compensatory and punitive damages" should not be read as requesting a monetary award against Defendants other than a monetary award of costs and fees to which Plaintiff is entitled by statute. 5 U.S.C. § 702 provides that in "[a]n action in a court of the United States seeking relief other than monetary damages . . . [t]he United States may be named as a defendant." Here, the Plaintiff seeks both declaratory and injunctive relief, which is, relief other than monetary damages. Thus, the United States is a proper defendant in this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-34-

**CONCLUSION**

Based upon the authorities set forth herein, Defendants are neither entitled to dismissal under F.R.C.P. 12(b)(1) and F.R.C.P. 12(b)(6), nor are they entitled to summary judgment on the causes of action set forth in Plaintiff's First Amended Complaint. Plaintiff therefore respectfully requests that Defendants' Motion be DENIED.

Dated this 25th day of February 2013.

Respectfully Submitted by:

RAINEY DEVINE, ATTORNEYS AT LAW

By:     /s/ Chaz Rainey
        Charles C. Rainey, Esq.
        Nevada Bar No. 10723
        Jennifer J. Hurley, Esq.
        Nevada Bar No. 11817
        8915 S. Pecos Road, Ste. 20A
        Henderson, Nevada 89074
        Telephone:  +1.702.425.5100
        Facsimile:  +1.888.867.5734
        *Attorney for Plaintiff*

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1

**PROOF OF SERVICE**

2

I, Jennifer J. Hurley, an employee of The Law Firm of Rainey Devine, certify that the

3 following individuals were served with PLAINTIFF'S RESPONSE TO THE UNITED

4 STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY

5 JUDGMENT, on this date by the below identified method of service:

6 **Electronic Case Filing**

7 TONY WEST
DANIEL G. BOGDEN
8 SANDRA SCHRAIBMAN
ALICIA N. ELLINGTON
9 JOHN K. THEIS
Trial Attorneys, Federal Programs Branch
10 United States Department of Justice, Civil Division
20 Massachusetts Ave, N.W. Rm 7226
11 Washington, DC 20530

12 Zachary Richter
Trial Attorney, Constitutional Torts Staff
13 United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
14 Washington, DC 20044

15

16 DATED this 25th day of February 2012.

17

18 /s/ Jennifer J. Hurley
An employee of The Law Firm of Rainey Devine.

19

20

21

22

23

24

25

26

27

28

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-36-

300

1
2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

| | |
|---|---|
| S. ROWAN WILSON, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| ERIC HOLDER, individually and as Attorney | )   Case No.: 2:11-cv-01679-GMN-PAL |
| General of the United States; THE U.S. | ) |
| BUREAU OF ALCOHOL, TOBACCO, | )               **ORDER** |
| FIREARMS, AND EXPLOSIVES; B. TODD | ) |
| JONES, individually and as Acting Director of | ) |
| the U.S. Bureau of Alcohol, Tobacco, | ) |
| Firearms, and Explosives; ARTHUR | ) |
| HERBERT, individually and as Assistant | ) |
| Director of the U.S. Bureau of Alcohol, | ) |
| Tobacco, Firearms, and Explosives; and THE | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

15        Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint

16   (ECF No. 37) filed by the United States of America, the Bureau of Alcohol, Tobacco, Firearms,

17   and Explosives ("BATFE"), U.S. Attorney General Eric Holder, Acting BATFE Director B.

18   Todd Jones, and Assistant BATFE Director Arthur Herbert's (collectively, "Defendants").

19   Plaintiff S. Rowan Wilson ("Plaintiff") filed a Response (ECF No. 41) and Defendants filed a

20   Reply (ECF No. 47).

21   **I.        BACKGROUND**

22        This case arises from an asserted conflict between the right secured by the Second

23   Amendment, certain provisions of the federal Gun Control Act that prohibit the users of

24   controlled substances from procuring firearms, and the recent wave of state legislation

25   legalizing the medical use of marijuana.  In 2001, the Nevada legislature enacted legislation

Page 1 of 27

exempting the medical use of marijuana from state criminal prosecution in certain limited circumstances. *See* Nev. Rev. Stat. § 453A.  Specifically, the legislation permits individuals who obtain a state-issued registry identification card ("state marijuana registry card") to use marijuana for medicinal purposes. Nev. Rev. Stat. § 453A.200(1)(f).

However, under the Controlled Substances Act, marijuana is listed as a controlled substance that cannot be lawfully prescribed and that the general public may not lawfully possess. 21 U.S.C. § 802(6); 21 U.S.C. § 812(c), Sched. I(c)(10).  There is no provision under Federal law that permits any class of the general public to lawfully possess marijuana, including those wishing to use marijuana for medical purposes. *See* 21 U.S.C. § 823(f) (providing an exception to the ban on possession of Schedule I drugs for federally approved research projects); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the . . . possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration pre-approved research study.").  In contrast, the Controlled Substances Act expressly recognizes that "there is a lack of accepted safety for use of [marijuana] under medical supervision." 21 U.S.C. § 812(b)(1)(A)–(C).  *See* 21 U.S.C. § 829; *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001) ("Whereas some other drugs can be dispensed and prescribed for medical use, . . . the same is not true for marijuana.").

Furthermore, the Federal Gun Control Act of 1968 ("Gun Control Act") prohibits "any person . . . who is an unlawful user of or addicted to any controlled substance . . . [to] possess . . . any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(3).  Additionally, § 922(d)(3) prohibits any person from selling or otherwise disposing of "any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance . . . ." 18 U.S.C. § 922(d)(3).

Page 2 of 27

*302*

In September 2011, because of the growing number of states that permit the medicinal use of marijuana, the ATF issued an "Open Letter." Bureau of Alcohol, Tobacco, Firearms and Explosives, Open Letter, *Open Letter to All Federal Firearms Licensees – The use of marijuana for medical purpose and its applicability to Federal firearms laws* (Sept. 26, 2011), *available at* http://www.atf.gov/press/releases/2011/09/ 092611-atf-open-letter-to-all-ffls-marijuana-for-medicinal-purposes.pdf  [hereinafter *"ATF Open Letter"*].  Notably, this letter informed all individuals licensed to sell firearms ("Federal Firearms Licensees" or "FFLs") that "if [the seller is] aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance." *Id*.  Thus, the letter advised FFLs and provided them notice that the agency which issues their license (the BATFE) interpreted § 922 as not only criminalizing the *possession* of a firearm by a registry card holder, but also the *sale* of a firearm to a registry card holder.

In the fall of 2010, due to her struggle with severe dysmenorrhea, Plaintiff applied for and obtained a state marijuana registry card. (First Am. Compl. ("FAC") ¶¶ 35–36, ECF No. 34.)  Plaintiff subsequently applied to purchase a firearm at a gun store in Mound House, Nevada. (*Id*. ¶¶ 17–24.)  However, the store's proprietor prevented her from completing her application he knew she carried a state marijuana registry card. (*Id*. ¶ 22.)

As a result, Plaintiff filed this lawsuit in October 2011. (Compl., ECF No. 1.)  In her suit, Plaintiff challenges the constitutionality of the two provisions of the Gun Control Act that effectively criminalize the sale and possession of a firearm by the holder of a registry card: 18 U.S.C. §§ 922(d)(3) and (g)(3). (FAC ¶¶ 51–56.)  Plaintiff also challenges the constitutionality of one of the accompanying regulations, 27 C.F.R. § 478.11, that defines the term "unlawful user of or addicted to any controlled substance" as used in §§ 922(d)(3) and (g)(3). (*Id*.)  Finally, Plaintiff challenges the ATF policy that federal firearms licensees may not sell a

firearm to persons they know are "in possession of a card authorizing the possession and use of marijuana under State law . . .." *ATF Open Letter*.  Plaintiff claims that these provisions, along with the ATF policy, violate her Second Amendment right to "keep and bear Arms"; her First Amendment right to free speech; as well as her rights to substantive due process, procedural due process and equal protection as secured by the Fifth Amendment.

In response to Plaintiff's initiating this action, Defendant filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 10.)  Thereafter, on November 11, 2012, the Court held a hearing at which the Court ordered supplemental briefing on several issues. (Minutes of Proceedings, ECF No. 30.)  Prior to the deadline for filing the supplemental briefing, the parties filed a Joint Motion to Amend/Correct Complaint. (ECF No. 31; *see* First Am. Compl. ("FAC"), ECF No. 34.)  After the Court granted this Motion, the Court denied Defendants' previously filed Motion to Dismiss as moot. (ECF No. 32.)  In response to Plaintiff's First Amended Complaint, (ECF No. 34), Defendants filed the instant Motion to Dismiss (ECF No. 37), which, for the reasons discussed below, the Court grants.

## II.    **JURISDICTION**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Therefore, before a federal court may consider the merits of a case, it must first determine whether it has proper subject matter jurisdiction. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653–54 (9th Cir. 2002); *see also Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

For the reasons discussed below, the Court concludes that Plaintiff has, at this stage of the litigation, adequately established that she has standing to assert these causes of action.  In

addition, the Court determines that this case is not rendered moot by the absence of a currently valid medical marijuana registry card from the record.  Accordingly, the Court does not lack jurisdiction to consider the merits of this case.

### A.   Standing

Article III of the United States Constitution limits the power of the judiciary to hear only "cases" and "controversies." U.S. Const. art. III, § 2; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).  Standing is a core component of the Article III case or controversy requirement and focuses on whether the action was *initiated by* the proper plaintiff. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[T]he party invoking federal jurisdiction [must] have standing—the 'personal interest that must exist at the commencement of the litigation.'")); *see also Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007) ("Standing ensures that, no matter the academic merits of the claim, the suit has been brought by a proper party.").  The "irreducible constitutional minimum of standing" requires that a plaintiff demonstrate three elements. *Lujan*, 504 U.S. at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal quotation marks and citations omitted).

### 1.   Injury in Fact

Defendants' argument that Plaintiff has failed to establish an injury in fact rests solely on the fact that Plaintiff's state marijuana registry card expired during litigation and the absence of a new non-expired registry card from the record. (Mot. to Dismiss 12:3–16, ECF No. 37.)

However, the standing inquiry relies upon the facts as they existed when Plaintiff initiated this action.[1]  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (noting that the limits on federal judicial power in Article III require "that the party invoking federal jurisdiction have standing—the personal interest that must exist *at the commencement* of the litigation." (emphasis added) (internal quotation marks omitted)).

In this case, at the time that Plaintiff initiated this action, she held a valid state marijuana registry card. (FAC ¶ 41, ECF No. 34; FAC Ex. 1-B, ECF No. 34-1.)  It is precisely because she held this card that the owner of the firearms store informed Plaintiff that "he could not sell her a firearm without jeopardizing his federal firearms license." (FAC ¶¶ 22–23.)  As a result, Plaintiff claims that she was deprived of several of her constitutional rights. (FAC ¶¶ 50–97.)  Therefore, Plaintiff has adequately alleged "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61.

### 2.   *Causal Connection*

The causation element of standing requires that "the injury . . . be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61.  Defendants argue that Plaintiff cannot satisfy the causation requirement of standing because her injury is "self-inflicted." (Mot. to Dismiss 13:3–4.)  The Court disagrees.

True enough, injuries that are truly "self-inflicted" cannot serve as the basis for standing because they are not fairly traceable to any action other than action by the plaintiff. *See, e.g.*, *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (concluding that States that extended tax

---

[1] Defendants' "standing" argument is more appropriately characterized as a mootness argument, which the Court addresses in Section II.B, below. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (observing that the "central question" in a mootness analysis is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief" (quotation marks omitted)).

Page 6 of 27

credits to their residents for income taxes paid in other states were suffering from self-inflicted

injuries, "resulting from decisions by their respective state legislatures").  In this case,

Defendants assert that their Open Letter advising FFLs to restrict the class of citizens with

medical marijuana cards from purchasing firearms is an injury that these citizens are inflicting

upon themselves. (Mot. to Dismiss 13:1–24.)  Plaintiff alleges that her injury is her inability to

purchase a firearm. (FAC ¶ 42, ECF No. 34.)  Plaintiff further alleges that this injury resulted

solely from the gun store owner's reliance on the BATFE's "open letter . . . [that] instructed

firearms licensees to deny the sale of firearms or ammunition to any person whom the licensee

is aware possesses a card authorizing such person to possess and use marijuana under state

law." (*Id*. ¶¶ 42–43.)

Thus, it appears to the Court that the causal connection between Defendants' actions and

Plaintiff's alleged injury remains intact and Defendant has failed to provide the Court with any

controlling or adequately persuasive legal authority to support a conclusion that the injury is

self-inflicted or an independent action of some third party not before the court. *See, e.g.*,

*Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding a self-inflicted injury when the

injury resulted from the plaintiff state's legislature's decision to provide a tax refund for

income taxes paid by residents to a different state); *Nat'l Family Planning & Reproductive

Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (concluding the injury was self-

inflicted when the association could have resolved an alleged conflict between a statute and a

regulation by inquiring about the conflict with the agency responsible for administering the

regulation); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental

Retardation Center Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an

organization redirects some of its resources to litigation and legal counseling in response to

actions or inactions of another party is insufficient to impart standing upon the organization.").

### 3.    *Redressability*

Defendant finally argues that Plaintiff's claims would not be redressable by a declaration on the constitutionality of the challenged statutes, regulations and policies because an unchallenged statute, 18 U.S.C.  922(b)(2), would still act to prevent FFLs from selling a firearm to Plaintiff. (Mot. to Dismiss 13:25–14:10, ECF No. 37.)  Specifically, § 922(b)(2) prohibits a FFL from selling a firearm "to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law . . .." 18 U.S.C. § 922(b)(2).

There is a similar state law, § 202.360(1)(c) of the Nevada Revised Statute, which prohibits an individual from possessing a firearm if that individual "[i]s an unlawful user of, or addicted to, any controlled substance." Nev. Rev. Stat. § 202.360(1)(c).  Furthermore, § 202.360 incorporates its definition of "controlled substance" from the federal Controlled Substances Act, which, as discussed above, includes marijuana. Nev. Rev. Stat. § 202.360(3)(a) ("'Controlled substance' has the meaning ascribed to it in 21 U.S.C. § 802(6)."). *See generally* 21 U.S.C. § 802(6) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V . . .."); 21 U.S.C. § 812(b)(1) (defining a Schedule I controlled substance as a "drug or substance [with] a high potential for abuse"; "a drug or substance [that] has no currently accepted medical use in treatment in the United States"; and a drug or substance for which "[t]here is a lack of accepted safety for use . . . under medical supervision"); 21 U.S.C. § 812(b)(1)(Sched. I)(c)(10) (listing "marihuana" as a Schedule I controlled substance).

However, Defendants have failed to provide any Nevada state law or regulation whereby state marijuana registry cardholders have been similarly interpreted to be prohibited from purchasing firearms under state law solely based on the buyer's possession of a registry card. Furthermore, these state statutes fail to address the heart of the issue in this case: whether the

1  BATFE's policy interpreting the possession of a state marijuana registry card as providing an

2  FFL with "reasonable cause to believe" that the holder of the card is a user of a controlled

3  substance, thus prohibiting any sale of firearms or ammunition to Plaintiff, is a violation of her

4  constitutional rights. (*See* FAC ¶¶ 43–44, ECF No. 34; FAC Ex. 2-B, ECF No. 34-2.)

5  Therefore, Defendants argument fails and the Court finds that the relief that Plaintiff seeks in

6  this action would likely remedy her alleged injury.

7     **B.     Mootness**

8        Although Defendants presented their jurisdiction-based argument as relating to standing,

9  the Court finds this argument is more properly characterized as one directed to the doctrine of

10  mootness.  The Supreme Court often defines mootness as "the doctrine of standing set in a time

11  frame: The requisite personal interest that must exist at the commencement of the litigation

12  (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v.*

13  *Geraghty*, 445 U.S. 388, 397 (1980) (quotation marks omitted).  When faced with the question

14  of whether a case has been rendered moot, the "central question" is "whether changes in the

15  circumstances that prevailed at the beginning of the litigation have forestalled any occasion for

16  meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007).

17        At first glance, the issues that Plaintiff raises would appear moot because the record

18  lacks a currently valid registry card.  Specifically, the state marijuana registry card that Plaintiff

19  attached to the FAC expired on March 10, 2012. (FAC Ex. 1-B, ECF No. 34-1.)  In an effort to

20  cure this defect, Plaintiff attached a renewed registry card to her Response to Defendants'

21  Motion to Dismiss, however, due to the duration of litigation in this case, that registry card has

22  now also expired as well; it expired on March 10, 2013. (Resp. Ex. A, ECF No. 41-1.)  Plaintiff

23  has failed to further supplement the record with an additional registry card and, thus, there is no

24  valid registry card currently on the record.  Accordingly, this defect would appear to render this

25  case technically moot.

1   However, the Supreme Court has established an exception to the general principles of

2   mootness for cases that implicate wrongs that are "capable of repetition yet evad[e] review." *S.*

3   *Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–15 (1911); *Weinstein v. Bradford*, 423 U.S. 148–

4   49 (1975).  This exception applies when two elements are satisfied: "(1) the challenged action

5   was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there

6   [is] a reasonable expectation that the same complaining party would be subjected to the same

7   action again." *Weinstein*, 423 U.S. at 149.

8   As discussed below, the Court finds that Plaintiff has established each of the two

9   elements of the "capable of repetition yet evading review" exception.

10   ### *1.   Duration*

11   To determine whether an issue "evades review," the Ninth Circuit has instructed courts

12   to consider whether "the underlying action is almost certain to run its course before [the federal

13   courts] can give the case full consideration." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189

14   F.3d 851, 855 (9th Cir. 1999).  The Supreme Court has previously held that eighteen months

15   was insufficient time to accommodate complete judicial review. *See First Nat'l Bank v. Belloti*,

16   435 U.S. 765, 774 (1978).  Similarly, the Ninth Circuit has held that the issuance of a two-year

17   permit is sufficiently short in duration to evade review. *Alaska Ctr. For Env't*, 189 F.3d at 855.

18   Nevada law provides for the issuance of registry cards that expire one year after the

19   issuance. *See* Nev. Rev. Stat. § 453A.230 (providing that a registry card "shall be deemed

20   expired" if the holder fails to, among other things, submit annual updates from the holder's

21   attending physician).  Because the duration of the validity of the registry card is too short to

22   allow full litigation before the registry card expires, the Court concludes that the duration

23   element of the exception is satisfied.

24

25

Page 10 of 27

*310*

### 2. *Repetition*

"The second prong of the repetition/evasion exception requires some indication that the challenged conduct will be repeated." *Alaska Ctr. For Env't v. U.S. Forest Serv*., 189 F.3d 851, 856 (9th Cir. 1999). More recently, the Ninth Circuit has articulated that the prong requires a "reasonable expectation that the same party will confront the same controversy again." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks omitted).

In the present case, Plaintiff's FAC alleges sufficient facts from which the Court can conclude that Plaintiff will confront this issue again in the future. Specifically, the FAC alleges that Plaintiff has exhibited a sincere interest in "the use of cannabis for medical purposes" for at least three years. (FAC ¶¶ 27–28, ECF No. 34.) The FAC further alleges that Plaintiff first applied for a registry card for treatment of her dysmenorrhea, a condition with which she has struggled since she was ten years of age. (*Id*. ¶ 35.) Plaintiff has battled this condition for more than three decades. (*See* FAC Ex. 1-B.) Finally, neither party has provided any indication that Plaintiff's dysmenorrhea has subsided to the point that she no longer qualifies for a state marijuana registry card.

Because Plaintiff's FAC alleges sufficient facts to satisfy both prongs, the Court concludes that this case meets the "capable of repetition yet evading review" exception to the mootness doctrine. Therefore, the Court finds that the issues presented by this action are not mooted by the expiration of Plaintiff's state marijuana registry card or the absence of a currently valid state marijuana registry card from the record. The fact that Plaintiff possessed a valid card at the time of the alleged injury and renewed the card for at least one more year is sufficient. Accordingly, the Court may properly assert subject matter jurisdiction over this action.

III.    **MOTION TO DISMISS**

    **A.    Legal Standard**

    When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

    The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

    If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

    **B.    Second Amendment Claim**

    The Second Amendment protects "the right of the people to keep and bear Arms" from government infringement. U.S. Const. amend. II. Moreover, the Supreme Court has held that this right is an individual right. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

1  However, the Court also held that this individual right is "not unlimited" and that, for example,

2  prohibitions on the possession of firearms by felons and the mentally ill are presumptively

3  lawful. *Id.* at 626–27; *see also id.* at 627 n.26 ("We identify these presumptively lawful

4  regulatory measures only as examples; our list does not purport to be exhaustive.").

5       In this case, Plaintiff challenges both § 922(d)(3) and § 922(g)(3) under the Second

6  Amendment.  The Court analyzes each section individually.

7         ***1.   Section 922(g)(3)***

8       Section 922(g)(3) prohibits users of a controlled substance from possessing a firearm. 18

9  U.S.C. § 922(g)(3).  Plaintiff's FAC states that this law infringes upon her right to keep and

10  bear arms under the Second Amendment. (FAC ¶ 54, ECF No. 34.)  However, Plaintiff's FAC

11  fails as a matter of law because the Ninth Circuit has already upheld the constitutionality of

12  § 922(g)(3). *United States v. Dugan*, 657 F.3d 998, 999–1000 (9th Cir. 2011).  In *Dugan*, based

13  on the Supreme Court's acknowledgement that the individual right to possess and carry

14  weapons is not unlimited, the Ninth Circuit observed that "[h]abitual drug users, like career

15  criminals and the mentally ill, more likely will have difficulty exercising self-control,

16  particularly when they are under the influence of controlled substances." *Id.* at 999 (citing

17  *Heller*, 554 U.S. at 592).  The court further noted an important distinction between the

18  subsections of § 922 expressly discussed by the Supreme Court in *Heller* and 922(g)(3):

19       [U]nlike people who have been convicted of a felony or committed to a mental
20       institution and so face a lifetime ban, an unlawful drug user may regain his right
        to possess a firearm simply by ending his drug abuse. The restriction in
21       § 922(g)(3) is far less onerous than those affecting felons and the mentally ill.

22  *Dugan*, 657 F.3d at 999.  Therefore, given this distinction and the danger presented by users of

23  controlled substances, the Ninth Circuit joined the Seventh and Eighth Circuits by broadly

24  holding that "Congress may . . . prohibit illegal drug users from possessing firearms." *Id.* at

25  999–1000.

Page 13 of 27

**313**

1    Plaintiff first feebly attempts to discredit *Dugan* by stating that *Dugan* "is a deeply

2  flawed opinion, lacking any meaningful legal analysis . . . ." (Resp. 22:11–13, ECF No. 41.)

3  However, *Dugan* remains controlling authority on this Court.  Furthermore, this Court lacks the

4  authority to overrule a Ninth Circuit decision.

5    Next, Plaintiff unpersuasively attempts to distinguish her case from the facts in *Dugan*.

6  Specifically, Plaintiff argues that "Mr. Dugan was the very sort of person that § 922(g)(3) was

7  designed for—a dangerous criminal." (Resp. 22:22–24.)  Plaintiff argues that this law is

8  overbroad because it affects "nearly half of the U.S. population." (*Id*. 22:26–23:2.)  However,

9  Plaintiff's argument is "deeply flawed."  Whether nearly half of the U.S. population engages in

10  conduct that is illegal under federal law does not affect the illegality of that conduct. *ATF Open*

11  *Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine); *see*

12  *also* 21 U.S.C. § 812(b)(1), Sched. I(c)(10) (listing "marihuana" as a Schedule I illegal

13  controlled substance).

14    Because *Dugan* resolves Plaintiff's Second Amendment attack of § 922(g)(3), the Court

15  need not undergo an independent constitutional analysis.  Therefore, the Court dismisses

16  Plaintiff's Second Amendment challenge to § 922(g)(3).  In light of *Dugan*, any amendment of

17  this claim would be futile and, thus, Plaintiff's Second Amendment challenge to § 922(g)(3) is

18  dismissed with prejudice.

19      ***2.     Section 922(d)(3)***

20    Section 922(d)(3) prohibits the sale of a firearm to any person whom the seller knows or

21  has "reasonable cause to believe . . . is an unlawful user of . . . a controlled substance . . . ." 18

22  U.S.C. § 922(d)(3).   In addition, the BATFE Open Letter at issue in this case advised that an

23  FFL has "reasonable cause to believe" that a potential buyer is an unlawful user of a controlled

24  substance within the meaning of the Gun Control Act if the FFL is aware that the potential

25  buyer or transferee possesses a registry card. *See ATF Open Letter*.  Thus, under the BATFE's

Page 14 of 27

*314*

interpretation of "reasonable cause to believe," FFLs are prohibited from selling or transferring firearms or ammunition to the holder of a registry card. *ATF Open Letter*; *see also* 18 U.S.C. § 922(d)(3).

In Plaintiff's FAC, she alleges that this law infringes and imposes an impermissible burden on her right to keep and bear arms under the Second Amendment. (FAC ¶¶ 54–55, ECF No. 34.)  The Court recognizes that, in *Dugan*, the Ninth Circuit addressed only the constitutionality of § 922(g)(3). *See Dugan*, 657 F.3d at 999–1000.  However, the reasoning that supports the Court's determination that Plaintiff's FAC fails to state a plausible claim challenging § 922(g)(3) applies equally to Plaintiff's challenge to section (d)(3) of the same statute.  Just as Congress may constitutionally preclude illegal drug users from *possessing* a firearm, Congress likewise may preclude FFLs from *selling* firearms to illegal drug users and thereby prevent such prohibited persons from *acquiring* firearms. *See Dugan*, 657 F.3d at 999-1000.

For these reasons, the Court dismisses Plaintiff's Second Amendment challenge to § 922(d)(3).  Because the Court concludes that amendment of this claim would be futile, Plaintiff's Second Amendment challenge to § 922(d)(3) is dismissed with prejudice.

### 3.   *27 C.F.R. 478.11*

In addition to challenging the two subsections of § 922, Plaintiff also claims that the BATFE's policies and regulations impermissibly infringe on her Second Amendment right. (FAC ¶¶ 54–55, ECF No. 34.)  Plaintiff identifies 27 C.F.R. § 478.11 and alleges the definition of "unlawful user…" contained therein imposes an impermissible burden on her Second Amendment right.[2]  However, Plaintiff fails to plead any facts establishing that the term

---

[2] 27 C.F.R. § 478.11 expressly defines "[u]nlawful user of or addicted to any controlled substance" as:
> A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful

1    "unlawful user," as defined in 27 C.F.R. § 478.11, itself, imposes an impermissible burden on

2    her Second Amendment right. (*See* FAC ¶¶ 54–55.)  Thus, in reality, Plaintiff's FAC appears to

3    target only the BATFE's Open Letter.  In addition, Plaintiff's Opposition fails to object to

4    Defendants' assertions that Plaintiff failed to adequately plead a constitutional challenge to

5    § 478.11.  Rather, Plaintiff's Opposition merely references alleged contradictions between 27

6    C.F.R. § 478.11 and the BATFE's Open Letter in her attempt to establish the

7    unconstitutionality of the policy announced in the Open Letter. (Resp. 11:25–12:28, ECF No.

8    41.)  For this reason, the Court GRANTS Defendant's Motion to Dismiss as it relates to the

9    constitutionality of 27 C.F.R. § 478.11.

10        Even to the extent that Plaintiff does allege that § 478.11 infringes her Second

11    Amendment rights, her claim fails because § 478.11 is consistent with 21 U.S.C. § 802, which

12    provides that the possession and use of marijuana is prohibited by federal law.  Plaintiff

13    correctly notes that the definition of "unlawful user" excludes any person using a controlled

14    substance in a manner "as prescribed by a licensed physician." 27 C.F.R. § 478.11.  However,

15    marijuana is categorized by federal law as a Schedule I controlled substance under 21 U.S.C.

16    §812(c)(Schedule I )(c)(10).  Controlled substances in Schedule I are defined by statute as

17    having "no currently accepted medical use in treatment in the United States." 21 U.S.C.

18    § 812(b)(1)(B); *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491

19    ———————————————————————————————

20    use has occurred recently enough to indicate that the individual is actively engaged in such
      conduct. A person may be an unlawful current user of a controlled substance even though the

21    substance is not being used at the precise time the person seeks to acquire a firearm or receives
      or possesses a firearm. An inference of current use may be drawn from evidence of a recent use

22    or possession of a controlled substance or a pattern of use or possession that reasonably covers
      the present time, e.g., a conviction for use or possession of a controlled substance within the past

23    year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred
      within the past year; or persons found through a drug test to use a controlled substance

24    unlawfully, provided that the test was administered within the past year. For a current or former
      member of the Armed Forces, an inference of current use may be drawn from recent disciplinary

25    or other administrative action based on confirmed drug use, e.g., court-martial conviction,
      nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation
      failure.

(2001) (recognizing the statutory determination that "marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project)").

Therefore, a regulation that prohibits any user of marijuana from possessing a firearm or ammunition is also consistent with 18 U.S.C. § 922(g)(3), which, as discussed above in Section III.B.1, the Ninth Circuit has previously found to be constitutional in *Dugan*.  Accordingly, all the reasons that support the constitutionality of the statutes related to the sale and possession of firearms equally apply to 27 C.F.R. § 478.11.

### 4.   BATFE's Open Letter[3]

Plaintiff begins her Response to Defendants' Motion to Dismiss her Second Amendment claims by reciting a string of objections to the BATFE's failure to engage in "notice and comment" prior to issuing the Open Letter. (Resp. 9:26–10:12, ECF No. 41.)  The Court recognizes that citizens may seek review of an agency's action that allegedly violates the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 702 (waiving sovereign immunity and providing a private cause of action for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute").  However, Plaintiff's argument is puzzling given her failure to include a cause of action for violations of the APA in her FAC. (*See* FAC ¶¶ 50–97, ECF No. 34.)  Thus, Plaintiff's assertions based on the APA, including any contradiction between the Open Letter and 27 C.F.R. § 478.11, cannot save her Second Amendment claim; a claim alleging violations of the APA is separate from a claim alleging violations of the right secured by the Second

---

[3] Plaintiff's argument that the policy in the Open Letter violates the Second Amendment because "more than half of the U.S. population" uses marijuana is absurd at best.  The mere fact that many people engage in illegal activity does not alter the illegal nature of the activity.  Furthermore, the fact that the use of marijuana may be legal under the laws in some states does not later the illegality of this use under federal law. *See Gonzales v. Raich*, 545 U.S. 1 (2005) (It is well settled that Congress has authority under the Commerce clause to criminalize marijuana possession, even if such possession is not also illegal under state law); *see also Raich v. Gonzales ("Raich II")*, 500 F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the Supreme Court, that there is no Ninth Amendment or substantive due process right to use marijuana for claimed medical purposes).

1  Amendment.[4]

2  ## C.   First Amendment Claim

3         In Plaintiff's FAC, she asserts that the First Amendment confers a right to exercise

4  "certain non-verbal and communicative conduct, which, in this case, includes, without

5  limitation, the acquisition, possession, and acknowledgment of possession of a medical

6  marijuana registry card validly issued pursuant to state law." (FAC ¶ 82, ECF No. 34.)  Thus,

7  Plaintiff contends that "[b]y acquiring, possessing, and acknowledging possession of a medical

8  marijuana registry card, Plaintiff is exercising her First Amendment right to free speech." (*Id.*

9  ¶ 85.)  Plaintiff alleges that her possession of a registry card is a "tangible symbol" of her

10 "deeply held beliefs that marijuana should be legal for medical use"; her "belief and opinion

11 that her fellow citizens of Nevada were correct to have forced changes to Nevada law legalizing

12 marijuana for medical use"; and her "belief and opinion that citizens in each state have a right

13 to decide whether marijuana should be legal for medical purposes." (*Id.* ¶¶ 87–90.)  Plaintiff

14 further contends that "Defendants are also attempting to deter her from exercising her First

15 Amendment rights in the future by requiring that she give up her First Amendment rights in

16 exchange for her Second Amendment rights."[5] (*Id.* ¶ 95.)

17 ─────────────────────

18 [4] The Court will not grant leave to amend because the Court holds that amendment would be futile.
   Interpretative rules are excepted from the requirement that an agency provide notice and an opportunity for
19 public comment prior to promulgating a rule. 5 U.S.C. § 553(b)–(c).  Because the statements in the Open Letter
   are textbook interpretative, notice and comment would not be required. *See Shalala v. Guernsey Mem'l Hosp.*,
20 514 U.S. 87, 88 (1995) (describing an interpretative rule as one "issued by an agency to advise the public of the
   agency's construction of the statutes and rules which it administers"); *see also Hepm Indus. Ass'n v. Drug
21 Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) ("[I]nterpretive rules merely explain, but do not add
   to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other
22 hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by
   Congress." (internal citations omitted)).  The Open Letter simply interprets existing law and provides guidance to
23 the FFLs on how the laws, under which the FFLs operate, apply to the new circumstance of states exempting
   from prosecution the use of marijuana for medical purposes.  Furthermore, because the use of marijuana is illegal
24 under federal law, regardless of the user's purpose, the Open Letter cannot be said to change existing law.
   Accordingly, any attempt to amend the FAC to include a cause of action for failure to engage in notice and
25 comment under 5 U.S.C. § 553 would be futile.  Therefore, the Court declines to grant leave to amend.
   [5] Plaintiff's FAC also alleges that "Defendants are retaliating against Plaintiff's exercise of her First Amendment
   rights by denying her Second Amendment right." (FAC ¶ 94, ECF No. 34.)  Defendant categorizes this

### 1.   *Applicable Legal Standards*

It is well-established that the First Amendment's protection "does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  Rather, certain conduct "may be sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]." *Id.* (internal quotation marks omitted).  However, the Supreme Court has repeatedly "rejected 'the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

To determine whether conduct possesses sufficient "elements of communication," courts engage in a two-pronged analysis.  First, courts determine "whether 'an intent to convey a particularized message was present.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)).   Second, courts look to "whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 411).

### 2.   *Discussion*

Even assuming that Plaintiff has adequately pleaded the two prongs of the *Spence* test for when conduct is expressive, Plaintiff's claim fails under the analysis applying the correct

---

allegation as a "First Amendment 'retaliation claim.'" (Mot. to Dismiss 35 n.23, ECF No. 37.)  In Plaintiff's Response brief, she seems to indicate that that this allegation is more related to a claim under the "unconstitutional condition" doctrine. (Resp. 23:22–25, ECF No. 41 ("The Defendants have effectively given the Plaintiff a Hobson's Choice between her First and Second Amendment Rights: *you can either exercise your right to free expression, or you can exercise your right to keep and bear arms, but you can't have both*.")); *see also Speiser v. Randall*, 357 U.S. 513, 518 (1958) (holding that "[t]o deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for this speech.").  Regardless of how this allegation is characterized, the claim fails.  First, Plaintiff has not set forth facts adequate to suggest that the passage of § 922(g)(3), § 922(d)(3), the promulgation of 27 C.F.R. § 478.11, or the distribution of the Open Letter, was motivated by retaliation for any communicative conduct by Plaintiff.  Additionally, *Speiser* cautions that conditions which "have the effect of coercing the claimants to refrain from the proscribed speech" are suspect. 357 U.S. at 519.  However, in this case, any such "condition" does not affect the actual speech, *i.e.*, promoting the medical benefits of marijuana, but relates only to the underlying conduct of obtaining and possessing a medical marijuana registry card.

1  level of scrutiny.

2       Plaintiff asserts that this Court must apply strict scrutiny to the challenged policy.

3  Plaintiff is mistaken.  Strict scrutiny applies only when the government "proscribe[s] particular

4  conduct *because* it has expressive elements" or enforces a "law *directed* at the communicative

5  nature of conduct."[6] *Texas v. Johnson*, 491 U.S. at 406 (quotation marks omitted).  Similarly,

6  the Ninth Circuit has stated that the *O'Brien* analysis, rather than strict scrutiny, applies

7  whenever the "conduct . . . merely contains an expressive component . . . more akin to . . .

8  burning a draft card (an example of conduct that can be used to express an idea but does not

9  necessarily do so)." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010)

10  (citing *O'Brien*, 391 U.S. at 376).  The acts of obtaining and possessing a marijuana registry

11  card are classic examples of "conduct that can be used to express an idea but does not

12  necessarily do so."  Plaintiff may well have obtained her registry card as a form of expression,

13  but that is not necessarily true of all individuals who obtain a medical marijuana registry card.

14  Accordingly, Plaintiff's assertion that strict scrutiny applies is incorrect; the standard

15  announced by the Supreme Court in *O'Brien* supplies the appropriate standard of review for the

16  statutes, regulation, and policy that Plaintiff challenges.

17       Under *O'Brien*, even after a court determines that the conduct at issue implicates the

18  First Amendment, "it does not necessarily follow that [the conduct at issue] is constitutionally

19  protected activity." 391 U.S. at 376.  "[W]hen 'speech' and 'nonspeech' elements are combined

20  in the same course of conduct, a sufficiently important governmental interest in regulating the

21

22  _____

23  [6] Plaintiff asserts that "the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to suppress the growing medical marijuana movement." (Resp. 26:17–19, ECF No. 41.)  For this reason, Plaintiff

24  asserts that the Court must apply strict scrutiny to the challenged policy. (*Id*. 26:28–27:2.)  However, the Supreme Court rejected a similar argument in *O'Brien* because "under settled principles the purpose of

25  Congress . . . is not a basis for declaring this legislation unconstitutional." 391 U.S. at 382–83 (rejecting the argument that a statute prohibiting the destruction or mutilation of selective service registration certificates was unconstitutional because it was the "'purpose' of Congress to 'suppress freedom of speech'").

nonspeech element can justify incidental limitations on First Amendment freedoms." *Id*.  More specifically:

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id*. at 377.

Here, Plaintiff fails to establish that this policy fails the test articulated by the Supreme Court in *O'Brien*.  First, neither party asserts that the Government lacks the constitutional authority to regulate the possession and sale of firearms.  Second, the challenged policy furthers the important governmental interest of protecting public safety and preventing violent crime. *See United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (recognizing the "danger in allowing habitual drug users to traffic in firearms because . . . [they] more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances").  Third, this interest is unrelated to the suppression of free expression.  Finally, any restriction on Plaintiff's First Amendment right is no greater than necessary to further this interest.  Specifically, the policy does not prohibit individuals from advocating for the legalization of marijuana for medicinal purposes.  Similarly, the policy does not prevent any known advocate of the medical benefits of marijuana from obtaining a firearm.  Instead, this policy is tailored to prevent users of marijuana, a controlled substance, from possessing a firearm by presuming that an individual who undertakes the "exceedingly difficult and lengthy process" of obtaining a medical marijuana card, (Resp. 25:2–8), is actually using marijuana.  For these reasons, any infringement of Plaintiff's First Amendment right is incidental to an important governmental interest of reducing the threat caused by gun violence.  Plaintiff cannot show that, under *O'Brien*, these statutes, regulation, and policy impermissibly infringe her right

1   of expression as secured by the First Amendment.  Accordingly, her First Amendment claim

2   fails and must be dismissed with prejudice.

3       **D.**    **Substantive Due Process Claim**

4          Substantive due process refers to the protection of "those fundamental rights and

5   liberties which are, objectively, deeply rooted in this Nation's history and tradition."

6   *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (internal quotation marks omitted).  In

7   Plaintiff's FAC, she asserts that her "right to possess a handgun *under the Second Amendment*

8   is objectively deeply rooted in the Nation's history and tradition and implicit in the concept of

9   ordered liberty such that neither liberty nor justice would exist if they were sacrificed." (FAC

10  ¶ 75, ECF No. 34 (emphasis added).)  Similarly, Plaintiff asserts that she "possesses a

11  fundamental right to free speech *under the First Amendment* which includes certain non-verbal

12  speech . . .." (*Id.* ¶ 77 (emphasis added).)

13         The Supreme Court has long foreclosed this type of claim.  For this reason, Plaintiff's

14  cause of action for violations of the substantive due process clause of the 5th Amendment fails

15  and must be dismissed.  Specifically, more than two decades ago, the Supreme Court first held

16  that "[w]here a particular Amendment provides an explicit textual source of constitutional

17  protection against a particular sort of government behavior, that Amendment, not the more

18  generalized notion of substantive due process, must be the guide for analyzing these claims."

19  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395

20  (1989)) (internal quotation marks omitted).  In fact, the Supreme Court has employed this

21  principle to countless amendments.  For example, in *Stop the Beach Renourishment, Inc. v.*

22  *Florida Department of Environmental Protection*, the Court noted that "[t]he first problem with

23  using Substantive Due Process to do the work of the Takings Clause is that we have held it

24  cannot be done." 560 U.S. 702, 721 (2010) (citing *Albright*, 510 U.S. at 273).  Similarly, in

25  *Turner v. Rogers*, the Court concluded that a criminal defendant could not use the Due Process

Page 22 of 27

1  Clause to assert a claim for violations of his Sixth Amendment right to appointed counsel. 131

2  S. Ct. 2507, 2522 (2011) ("[W]e do not read a general provision to render a specific one

3  superfluous.").

4      Plaintiff attempts to salvage this claim by arguing that the provisions in her FAC that

5  refer to her First and Second Amendment rights, (FAC ¶¶ 75–77), "such provisions in the FAC

6  do not waive Plaintiff's previous assertion that she possess [sic] a liberty right in the ability to

7  choose a course of medical treatment . . .." (Resp. 29:1–5, ECF No. 41.)  This argument is

8  fatally flawed for at least two reasons.  First, Plaintiff cannot attempt to cure defects in her

9  complaint by including the necessary allegations in her opposition brief. *See Broam v. Bogan*,

10  320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting that a court may not look beyond the complaint

11  to plaintiff's briefs when determining the propriety of a motion to dismiss for failure to state a

12  claim).  Second, the Ninth Circuit's opinion in *Raich v. Gonzales*, forecloses any claim that

13  Plaintiff has a fundamental right to use marijuana for medical reasons.[7] 500 F.3d 850, 861–66

14  (9th Cir. 2007).

15      For these reasons, the Court concludes that Plaintiff has not and cannot state a claim for

16  violations of the substantive due process claim.  Because the Court finds that amendment would

17  be futile, this cause of action is dismissed with prejudice.

18      **E.**    **Procedural Due Process Claim**

19      In Plaintiff's FAC, she alleges that "Defendants have denied the Plaintiff adequate

20  _____

21  [7] The Supreme Court has recognized that there are fundamental rights associated with choosing one's medical
   treatment. *See Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992) (recognizing a women's right to
22  an abortion); *Eisenstad v. Baird*, 405 U.S. 438 (1972) (recognizing the right to use contraception); *Cruzan v.
   Dir., Mo. Dept. of Health*, 497 U.S. 267, 279 (1990) (recognizing the right to "refuse lifesaving hydration and
23  nutrition").  However, the Court has never recognized an unqualified constitutional right to any medical
   treatment that a patient desires.  In fact, in *Raich v. Gonzales*, the Ninth Circuit held that there was no
24  constitutionally protected right to use marijuana for medicinal purposes. 500 F.3d 850, 864 (9th Cir. 2007)
   (stating that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a
25  licensed physician to alleviate excruciating pain and human suffering").  Thus, the Ninth Circuit's holding in
   *Raich v. Gonzales* effectively precludes Plaintiff's argument that she has a fundamental right to engage in the
   exact course of treatment that she and her physician deem best.

procedural protections before depriving her of her right to purchase and possess a firearm."

(FAC ¶ 71, ECF No. 34.)  However, because Plaintiff has failed to identify a constitutionally

protected liberty or property interest, as required by the Fifth Amendment, her claim fails and

must be dismissed.

The relevant portion of the Fifth Amendment provides that "No person shall . . . be

deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

To successfully allege a procedural due process claim, plaintiffs must provide sufficient facts

establishing the plausible existence of two elements: "(1) a deprivation of a constitutionally

protected liberty or property interest, and (2) a denial of adequate procedural protections."

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  The

Court need not reach the second element because Plaintiff has not alleged that Defendants

deprived her of a constitutionally protected liberty or property interest. *See Bd. of Regents v.*

*Roth*, 408 U.S. 564, 569 (holding that adequate procedural protections are required only when

the plaintiff has been deprived of a liberty or property interest).

In her opposition brief, Plaintiff first asserts that "[t]he United States Constitution

requires that whenever a governmental body acts to injure an individual, that act must be

consonant with due process of law." (Resp. 30:17–18, ECF No. 41.)  Plaintiff concludes that

Defendants' determination that those persons that possess a registry card fit the definition of an

"unlawful user of a controlled substance" deprives her of a right without adequate procedure.

(*Id.* at 31:14–22.)  However, Plaintiff fails to recognize that she must articulate a

"constitutionally protected *liberty* or *property* interest" before her procedural due process claim

may proceed.  Therefore, Plaintiff's discussion of any procedural inadequacies is insufficient to

defeat Defendants' Motion to Dismiss.  Because Plaintiff cannot identify a constitutionally

protected *liberty* or *property* interest, she cannot state a procedural due process claim and the

Court must dismiss her claim with prejudice.

**F.      Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Although the Fourteenth Amendment applies only to state action, the Due Process Clause of the Fifth Amendment, which does apply to the federal government, encompasses the protections of the Equal Protection Clause. *Bolling v. Sharpe*, 347 U.S. 497 (1954).  The equal protection component of the Due Process Clause is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  To state a valid claim under the equal protection component of the Fifth Amendment, Plaintiff "must show that the statute in question results in members of a certain group being treated differently from other persons based on membership in that group." *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir. 2004) (internal quotation marks omitted); *see also Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011) ("To establish an equal protection violation, [the plaintiff] must show that she is being treated differently from similarly situated individuals.").

Plaintiff's FAC first alleges that she "is being treated differently from persons who are prescribed medical marijuana in states where the obtainment of a state-issued medical marijuana registry card is not required." (FAC ¶ 62, ECF No. 34.)  This statement is insufficient to state an equal protection claim.  The laws, regulation, and policy that Plaintiff challenges are neither "applied in a discriminatory manner," nor does it "impose[] different burdens on different classes of people." *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).  Plaintiff's argument simply acknowledges that marijuana users in states that do not require registry cards may more easily evade and violate federal law. *See United States v. Hendrickson*, 664 F. Supp. 2d 793, 798 (E.D. Mich. 2009) ("There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against

Page 25 of 27

*325*

1   whom it is enforced . . . . The law does not need to be enforced everywhere to be legitimately

2   enforced somewhere." (quotation omitted)).

3          Plaintiff further alleges that she "is also being treated differently from similarly situated

4   persons with similar medical conditions to those of the Plaintiff. . . .   Other similarly situated

5   individuals who likewise pursue different methods of treatment for medical conditions have not

6   been denied their ability to obtain handguns." (*Id.* ¶ 63.)   However, although the use of

7   marijuana for medical purposes may not violate Nevada state law, this same use is still

8   prohibited under federal law. *See e.g.*, 21 U.S.C. § 844(a) (prohibiting possession of controlled

9   substances); *see also ATF Open Letter* (stating that "[t]he Federal government does not

10   recognize marijuana as a medicine").   The fact remains that, by "follow[ing] state laws for the

11   obtainment of treatment for her medical condition," (Resp. 33:12–16), she is pursuing a course

12   of treatment that violates federal law.   Thus, she is not similarly situated to individuals that

13   avail themselves of treatment methods *that comply with federal law. See Marin Alliance for*

14   *Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1158–59 (N.D. Cal. 2011) (concluding that

15   individuals for whom the use of marijuana is prohibited under federal law are not similarly

16   situated to individuals whose use of marijuana is permitted under federal law (in connection

17   with research projects funded by the Government)).   Accordingly, Plaintiff has failed to plead a

18   valid class of persons against whom the government is discriminating in violation of the equal

19   protection component of the Fifth Amendment.[8]

20          For these reasons, Plaintiff's complaint fails to state a plausible claim under the equal

21   protection component of the Fifth Amendment.   Accordingly, the Court dismisses Plaintiff's

---

[8]  Even if Plaintiff had identified an appropriate class of individuals, she certainly has not established her membership in a "suspect class."   Accordingly, "any differential treatment violates equal protection only if it lacks a 'rational basis.'" *Gonzalez-Medina*, 641 F.3d at 336.   As discussed numerous times above, this policy is rationally related to the Government's legitimate interest in preventing violent crime.

Page 26 of 27

equal protection claim with prejudice.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 37) is **GRANTED** with prejudice.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 11th day of March, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

1 | CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
2 | chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
3 | Nevada Bar No. 11817
Jennifer@raineylegal.com
4 | RAINEY LEGAL GROUP PLLC
9340 West Martin Avenue
5 | Las Vegas, Nevada 89148
Telephone: +1.702.425.5100
6 | Facsimile: +1.888.867.5734
*Attorneys for Plaintiff Rowan S. Wilson*

7

8 | **UNITED STATES DISTRICT COURT**

9 | **DISTRICT OF NEVADA**

10

11 | S. ROWAN WILSON, an individual,                Case No.  2:11-cv-1679-GMN-(PAL)

12 |                        Plaintiff,

13 | v.                                             **NOTICE OF APPEAL**

14 | ERIC HOLDER, Attorney General of the
United States, et al.,

15 |                        Defendants.

16

17 |        Notice is hereby given that Plaintiff S. ROWAN WILSON hereby appeals to the United

18 | States Court of Appeals from the Ninth Circuit from the Order entered in this action on the 12th

19 | day of March, 2014, which is attached hereto as Exhibit "**1**."

20 |        DATED: April 10, 2014.

21 |                                                Respectfully submitted:
THE LAW FIRM OF RAINEY DEVINE

22 |                        By:    /s/ Chaz Rainey
Charles C. Rainey, Esq.

23 |                                                Nevada Bar No. 10723
chaz@raineylegal.com

24 |                                                Jennifer J. Hurley, Esq.
Nevada Bar No. 11817

25 |                                                Jennifer@raineylegal.com
9340 West Martin Avenue

26 |                                                Las Vegas, Nevada 89148
Telephone: +1.702.425.5100

27 |                                                Facsimile: +1.888.867.5734
*Attorneys for Plaintiff*

28

1

RAINEY LEGAL GROUP PLLC
9340 West Martin Avenue
Las Vegas, Nevada 89148
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**PROOF OF SERVICE**

I, Jennifer J. Hurley, an employee of Rainey Legal Group PLLC, certify that the following individuals were served with the foregoing **NOTICE OF APPEAL**, on this date by the below identified method of service:

**Electronic Case Filing**

TONY WEST
DANIEL G. BOGDEN
SANDRA SCHRAIBMAN
ALICIA N. ELLINGTON
JOHN K. THEIS
Trial Attorneys, Federal Programs Branch
United States Department of Justice, Civil Division
20 Massachusetts Ave, N.W. Rm 7226
Washington, DC 20530

Zachary Richter
Trial Attorney, Constitutional Torts Staff
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044

DATED this 10th day of April 2014.

/s/ Jennifer J. Hurley
An employee of The Law Firm of Rainey Devine.

RAINEY LEGAL GROUP PLLC
9340 West Martin Avenue
Las Vegas, Nevada 89148
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

2

329

Exhibit "1"

Exhibit "1"

1
2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3
4

S. ROWAN WILSON, an individual,   )
             )

5

      Plaintiff,   )
  vs.           )

6
7
8
9
10
11
12
13
14

ERIC HOLDER, individually and as Attorney )  Case No.: 2:11-cv-01679-GMN-PAL
General of the United States; THE U.S.   )
BUREAU OF ALCOHOL, TOBACCO,   )  **ORDER**
FIREARMS, AND EXPLOSIVES; B. TODD )
JONES, individually and as Acting Director of )
the U.S. Bureau of Alcohol, Tobacco,   )
Firearms, and Explosives; ARTHUR   )
HERBERT, individually and as Assistant  )
Director of the U.S. Bureau of Alcohol,  )
Tobacco, Firearms, and Explosives; and THE )
UNITED STATES OF AMERICA,    )
             )
      Defendants.   )
             )

15
16
17
18
19
20

   Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 37) filed by the United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"), U.S. Attorney General Eric Holder, Acting BATFE Director B. Todd Jones, and Assistant BATFE Director Arthur Herbert's (collectively, "Defendants"). Plaintiff S. Rowan Wilson ("Plaintiff") filed a Response (ECF No. 41) and Defendants filed a Reply (ECF No. 47).

21

## I.  BACKGROUND

22
23
24
25

   This case arises from an asserted conflict between the right secured by the Second Amendment, certain provisions of the federal Gun Control Act that prohibit the users of controlled substances from procuring firearms, and the recent wave of state legislation legalizing the medical use of marijuana. In 2001, the Nevada legislature enacted legislation

Page 1 of 27

1  exempting the medical use of marijuana from state criminal prosecution in certain limited

2  circumstances. *See* Nev. Rev. Stat. § 453A.  Specifically, the legislation permits individuals

3  who obtain a state-issued registry identification card ("state marijuana registry card") to use

4  marijuana for medicinal purposes. Nev. Rev. Stat. § 453A.200(1)(f).

5       However, under the Controlled Substances Act, marijuana is listed as a controlled

6  substance that cannot be lawfully prescribed and that the general public may not lawfully

7  possess. 21 U.S.C. § 802(6); 21 U.S.C. § 812(c), Sched. I(c)(10).  There is no provision under

8  Federal law that permits any class of the general public to lawfully possess marijuana,

9  including those wishing to use marijuana for medical purposes. *See* 21 U.S.C. § 823(f)

10 (providing an exception to the ban on possession of Schedule I drugs for federally approved

11 research projects); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying

12 marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the . . . possession

13 of marijuana became a criminal offense, with the sole exception being use of the drug as part of

14 a Food and Drug Administration pre-approved research study.").  In contrast, the Controlled

15 Substances Act expressly recognizes that "there is a lack of accepted safety for use of

16 [marijuana] under medical supervision." 21 U.S.C. § 812(b)(1)(A)–(C).  *See* 21 U.S.C. § 829;

17 *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001)

18 ("Whereas some other drugs can be dispensed and prescribed for medical use, . . . the same is

19 not true for marijuana.").

20      Furthermore, the Federal Gun Control Act of 1968 ("Gun Control Act") prohibits "any

21 person . . . who is an unlawful user of or addicted to any controlled substance . . . [to] possess .

22 . . any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(3).  Additionally, § 922(d)(3) prohibits

23 any person from selling or otherwise disposing of "any firearm or ammunition to any person

24 knowing or having reasonable cause to believe that such person . . . is an unlawful user of or

25 addicted to any controlled substance . . . ." 18 U.S.C. § 922(d)(3).

1    In September 2011, because of the growing number of states that permit the medicinal

2  use of marijuana, the ATF issued an "Open Letter." Bureau of Alcohol, Tobacco, Firearms and

3  Explosives, Open Letter, *Open Letter to All Federal Firearms Licensees – The use of*

4  *marijuana for medical purpose and its applicability to Federal firearms laws* (Sept. 26, 2011),

5  *available at* http://www.atf.gov/press/releases/2011/09/ 092611-atf-open-letter-to-all-ffls-

6  marijuana-for-medicinal-purposes.pdf [hereinafter *"ATF Open Letter"*].  Notably, this letter

7  informed all individuals licensed to sell firearms ("Federal Firearms Licensees" or "FFLs") that

8  "if [the seller is] aware that the potential transferee is in possession of a card authorizing the

9  possession and use of marijuana under State law, then you have 'reasonable cause to believe'

10  that the person is an unlawful user of a controlled substance." *Id.*  Thus, the letter advised FFLs

11  and provided them notice that the agency which issues their license (the BATFE) interpreted

12  § 922 as not only criminalizing the *possession* of a firearm by a registry card holder, but also

13  the *sale* of a firearm to a registry card holder.

14    In the fall of 2010, due to her struggle with severe dysmenorrhea, Plaintiff applied for

15  and obtained a state marijuana registry card. (First Am. Compl. ("FAC") ¶¶ 35–36, ECF No.

16  34.)  Plaintiff subsequently applied to purchase a firearm at a gun store in Mound House,

17  Nevada. (*Id.* ¶¶ 17–24.)  However, the store's proprietor prevented her from completing her

18  application he knew she carried a state marijuana registry card. (*Id.* ¶ 22.)

19    As a result, Plaintiff filed this lawsuit in October 2011. (Compl., ECF No. 1.)  In her

20  suit, Plaintiff challenges the constitutionality of the two provisions of the Gun Control Act that

21  effectively criminalize the sale and possession of a firearm by the holder of a registry card: 18

22  U.S.C. §§ 922(d)(3) and (g)(3). (FAC ¶¶ 51–56.)  Plaintiff also challenges the constitutionality

23  of one of the accompanying regulations, 27 C.F.R. § 478.11, that defines the term "unlawful

24  user of or addicted to any controlled substance" as used in §§ 922(d)(3) and (g)(3). (*Id.*)

25  Finally, Plaintiff challenges the ATF policy that federal firearms licensees may not sell a

firearm to persons they know are "in possession of a card authorizing the possession and use of marijuana under State law . . . ." *ATF Open Letter.* Plaintiff claims that these provisions, along with the ATF policy, violate her Second Amendment right to "keep and bear Arms"; her First Amendment right to free speech; as well as her rights to substantive due process, procedural due process and equal protection as secured by the Fifth Amendment.

In response to Plaintiff's initiating this action, Defendant filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 10.) Thereafter, on November 11, 2012, the Court held a hearing at which the Court ordered supplemental briefing on several issues. (Minutes of Proceedings, ECF No. 30.) Prior to the deadline for filing the supplemental briefing, the parties filed a Joint Motion to Amend/Correct Complaint. (ECF No. 31; *see* First Am. Compl. ("FAC"), ECF No. 34.) After the Court granted this Motion, the Court denied Defendants' previously filed Motion to Dismiss as moot. (ECF No. 32.) In response to Plaintiff's First Amended Complaint, (ECF No. 34), Defendants filed the instant Motion to Dismiss (ECF No. 37), which, for the reasons discussed below, the Court grants.

## II.    **JURISDICTION**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, before a federal court may consider the merits of a case, it must first determine whether it has proper subject matter jurisdiction. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653–54 (9th Cir. 2002); *see also Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

For the reasons discussed below, the Court concludes that Plaintiff has, at this stage of the litigation, adequately established that she has standing to assert these causes of action. In

addition, the Court determines that this case is not rendered moot by the absence of a currently valid medical marijuana registry card from the record.  Accordingly, the Court does not lack jurisdiction to consider the merits of this case.

## A.    Standing

Article III of the United States Constitution limits the power of the judiciary to hear only "cases" and "controversies." U.S. Const. art. III, § 2; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).  Standing is a core component of the Article III case or controversy requirement and focuses on whether the action was *initiated by* the proper plaintiff. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[T]he party invoking federal jurisdiction [must] have standing—the 'personal interest that must exist at the commencement of the litigation.'"); *see also Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007) ("Standing ensures that, no matter the academic merits of the claim, the suit has been brought by a proper party.").  The "irreducible constitutional minimum of standing" requires that a plaintiff demonstrate three elements. *Lujan*, 504 U.S. at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal quotation marks and citations omitted).

### 1.    *Injury in Fact*

Defendants' argument that Plaintiff has failed to establish an injury in fact rests solely on the fact that Plaintiff's state marijuana registry card expired during litigation and the absence of a new non-expired registry card from the record. (Mot. to Dismiss 12.3–16, ECF No. 37.)

However, the standing inquiry relies upon the facts as they existed when Plaintiff initiated this action.[1] *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (noting that the limits on federal judicial power in Article III require "that the party invoking federal jurisdiction have standing—the personal interest that must exist *at the commencement* of the litigation." (emphasis added) (internal quotation marks omitted)).

In this case, at the time that Plaintiff initiated this action, she held a valid state marijuana registry card. (FAC ¶ 41, ECF No. 34; FAC Ex. 1-B, ECF No. 34-1.)  It is precisely because she held this card that the owner of the firearms store informed Plaintiff that "he could not sell her a firearm without jeopardizing his federal firearms license." (FAC ¶¶ 22–23.)  As a result, Plaintiff claims that she was deprived of several of her constitutional rights. (FAC ¶¶ 50–97.) Therefore, Plaintiff has adequately alleged "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61.

### 2.    *Causal Connection*

The causation element of standing requires that "the injury . . . be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61.  Defendants argue that Plaintiff cannot satisfy the causation requirement of standing because her injury is "self-inflicted." (Mot. to Dismiss 13:3–4.)  The Court disagrees.

True enough, injuries that are truly "self-inflicted" cannot serve as the basis for standing because they are not fairly traceable to any action other than action by the plaintiff. *See, e.g., Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (concluding that States that extended tax

---

[1] Defendants' "standing" argument is more appropriately characterized as a mootness argument, which the Court addresses in Section II.B, below. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (observing that the "central question" in a mootness analysis is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief" (quotation marks omitted)).

1    credits to their residents for income taxes paid in other states were suffering from self-inflicted

2    injuries, "resulting from decisions by their respective state legislatures"). In this case,

3    Defendants assert that their Open Letter advising FFLs to restrict the class of citizens with

4    medical marijuana cards from purchasing firearms is an injury that these citizens are inflicting

5    upon themselves. (Mot. to Dismiss 13.1–24.) Plaintiff alleges that her injury is her inability to

6    purchase a firearm. (FAC ¶ 42, ECF No. 34.) Plaintiff further alleges that this injury resulted

7    solely from the gun store owner's reliance on the BATFE's "open letter . . . [that] instructed

8    firearms licensees to deny the sale of firearms or ammunition to any person whom the licensee

9    is aware possesses a card authorizing such person to possess and use marijuana under state

10    law." (*Id.* ¶¶ 42–43.)

11        Thus, it appears to the Court that the causal connection between Defendants' actions and

12    Plaintiff's alleged injury remains intact and Defendant has failed to provide the Court with any

13    controlling or adequately persuasive legal authority to support a conclusion that the injury is

14    self-inflicted or an independent action of some third party not before the court. *See, e.g.,*

15    *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding a self-inflicted injury when the

16    injury resulted from the plaintiff state's legislature's decision to provide a tax refund for

17    income taxes paid by residents to a different state); *Nat'l Family Planning & Reproductive*

18    *Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (concluding the injury was self-

19    inflicted when the association could have resolved an alleged conflict between a statute and a

20    regulation by inquiring about the conflict with the agency responsible for administering the

21    regulation); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental*

22    *Retardation Center Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an

23    organization redirects some of its resources to litigation and legal counseling in response to

24    actions or inactions of another party is insufficient to impart standing upon the organization.").

25

### 3.   *Redressability*

Defendant finally argues that Plaintiff's claims would not be redressable by a declaration on the constitutionality of the challenged statutes, regulations and policies because an unchallenged statute, 18 U.S.C. 922(b)(2), would still act to prevent FFLs from selling a firearm to Plaintiff. (Mot. to Dismiss 13:25–14.10, ECF No. 37.)  Specifically, § 922(b)(2) prohibits a FFL from selling a firearm "to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law . . .." 18 U.S.C. § 922(b)(2).

There is a similar state law, § 202.360(1)(c) of the Nevada Revised Statute, which prohibits an individual from possessing a firearm if that individual "[i]s an unlawful user of, or addicted to, any controlled substance." Nev. Rev. Stat. § 202.360(1)(c).  Furthermore, § 202.360 incorporates its definition of "controlled substance" from the federal Controlled Substances Act, which, as discussed above, includes marijuana. Nev. Rev. Stat. § 202.360(3)(a) ("'Controlled substance' has the meaning ascribed to it in 21 U.S.C. § 802(6)."). *See generally* 21 U.S.C. § 802(6) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V . . .."); 21 U.S.C. § 812(b)(1) (defining a Schedule I controlled substance as a "drug or substance [with] a high potential for abuse"; "a drug or substance [that] has no currently accepted medical use in treatment in the United States"; and a drug or substance for which "[t]here is a lack of accepted safety for use . . . under medical supervision"); 21 U.S.C. § 812(b)(1)(Sched. I)(c)(10) (listing "marihuana" as a Schedule I controlled substance).

However, Defendants have failed to provide any Nevada state law or regulation whereby state marijuana registry cardholders have been similarly interpreted to be prohibited from purchasing firearms under state law solely based on the buyer's possession of a registry card. Furthermore, these state statutes fail to address the heart of the issue in this case: whether the

BATFE's policy interpreting the possession of a state marijuana registry card as providing an FFL with "reasonable cause to believe" that the holder of the card is a user of a controlled substance, thus prohibiting any sale of firearms or ammunition to Plaintiff, is a violation of her constitutional rights. (*See* FAC ¶¶ 43–44, ECF No. 34; FAC Ex. 2-B, ECF No. 34-2.) Therefore, Defendants argument fails and the Court finds that the relief that Plaintiff seeks in this action would likely remedy her alleged injury.

**B.    Mootness**

Although Defendants presented their jurisdiction-based argument as relating to standing, the Court finds this argument is more properly characterized as one directed to the doctrine of mootness.  The Supreme Court often defines mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quotation marks omitted).  When faced with the question of whether a case has been rendered moot, the "central question" is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007).

At first glance, the issues that Plaintiff raises would appear moot because the record lacks a currently valid registry card.  Specifically, the state marijuana registry card that Plaintiff attached to the FAC expired on March 10, 2012. (FAC Ex. 1-B, ECF No. 34-1.)  In an effort to cure this defect, Plaintiff attached a renewed registry card to her Response to Defendants' Motion to Dismiss, however, due to the duration of litigation in this case, that registry card has now also expired as well; it expired on March 10, 2013. (Resp. Ex. A, ECF No. 41-1.)  Plaintiff has failed to further supplement the record with an additional registry card and, thus, there is no valid registry card currently on the record.  Accordingly, this defect would appear to render this case technically moot.

However, the Supreme Court has established an exception to the general principles of mootness for cases that implicate wrongs that are "capable of repetition yet evad[e] review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–15 (1911); *Weinstein v. Bradford*, 423 U.S. 148–49 (1975). This exception applies when two elements are satisfied: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149.

As discussed below, the Court finds that Plaintiff has established each of the two elements of the "capable of repetition yet evading review" exception.

### *1.     Duration*

To determine whether an issue "evades review," the Ninth Circuit has instructed courts to consider whether "the underlying action is almost certain to run its course before [the federal courts] can give the case full consideration." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999). The Supreme Court has previously held that eighteen months was insufficient time to accommodate complete judicial review. *See First Nat'l Bank v. Belloti*, 435 U.S. 765, 774 (1978). Similarly, the Ninth Circuit has held that the issuance of a two-year permit is sufficiently short in duration to evade review. *Alaska Ctr. For Env't*, 189 F 3d at 855.

Nevada law provides for the issuance of registry cards that expire one year after the issuance. *See* Nev. Rev. Stat. § 453A.230 (providing that a registry card "shall be deemed expired" if the holder fails to, among other things, submit annual updates from the holder's attending physician). Because the duration of the validity of the registry card is too short to allow full litigation before the registry card expires, the Court concludes that the duration element of the exception is satisfied.

### 2.    *Repetition*

"The second prong of the repetition/evasion exception requires some indication that the challenged conduct will be repeated." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 856 (9th Cir. 1999). More recently, the Ninth Circuit has articulated that the prong requires a "reasonable expectation that the same party will confront the same controversy again." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks omitted).

In the present case, Plaintiff's FAC alleges sufficient facts from which the Court can conclude that Plaintiff will confront this issue again in the future. Specifically, the FAC alleges that Plaintiff has exhibited a sincere interest in "the use of cannabis for medical purposes" for at least three years. (FAC ¶¶ 27–28, ECF No. 34.) The FAC further alleges that Plaintiff first applied for a registry card for treatment of her dysmenorrhea, a condition with which she has struggled since she was ten years of age. (*Id.* ¶ 35.) Plaintiff has battled this condition for more than three decades. (*See* FAC Ex. 1-B.) Finally, neither party has provided any indication that Plaintiff's dysmenorrhea has subsided to the point that she no longer qualifies for a state marijuana registry card.

Because Plaintiff's FAC alleges sufficient facts to satisfy both prongs, the Court concludes that this case meets the "capable of repetition yet evading review" exception to the mootness doctrine. Therefore, the Court finds that the issues presented by this action are not mooted by the expiration of Plaintiff's state marijuana registry card or the absence of a currently valid state marijuana registry card from the record. The fact that Plaintiff possessed a valid card at the time of the alleged injury and renewed the card for at least one more year is sufficient. Accordingly, the Court may properly assert subject matter jurisdiction over this action.

III.   **MOTION TO DISMISS**

    A.   **Legal Standard**

      When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

      The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

      If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

    B.   **Second Amendment Claim**

      The Second Amendment protects "the right of the people to keep and bear Arms" from government infringement. U.S. Const. amend. II. Moreover, the Supreme Court has held that this right is an individual right. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

Page 12 of 27

However, the Court also held that this individual right is "not unlimited" and that, for example, prohibitions on the possession of firearms by felons and the mentally ill are presumptively lawful. *Id.* at 626–27; *see also id.* at 627 n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.").

In this case, Plaintiff challenges both § 922(d)(3) and § 922(g)(3) under the Second Amendment. The Court analyzes each section individually.

### 1. Section 922(g)(3)

Section 922(g)(3) prohibits users of a controlled substance from possessing a firearm. 18 U.S.C. § 922(g)(3). Plaintiff's FAC states that this law infringes upon her right to keep and bear arms under the Second Amendment. (FAC ¶ 54, ECF No. 34.) However, Plaintiff's FAC fails as a matter of law because the Ninth Circuit has already upheld the constitutionality of § 922(g)(3). *United States v. Dugan*, 657 F.3d 998, 999–1000 (9th Cir. 2011). In *Dugan*, based on the Supreme Court's acknowledgement that the individual right to possess and carry weapons is not unlimited, the Ninth Circuit observed that "[h]abitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances." *Id.* at 999 (citing *Heller*, 554 U.S. at 592). The court further noted an important distinction between the subsections of § 922 expressly discussed by the Supreme Court in *Heller* and 922(g)(3):

> [U]nlike people who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse. The restriction in § 922(g)(3) is far less onerous than those affecting felons and the mentally ill.

*Dugan*, 657 F.3d 999. Therefore, given this distinction and the danger presented by users of controlled substances, the Ninth Circuit joined the Seventh and Eighth Circuits by broadly holding that "Congress may . . . prohibit illegal drug users from possessing firearms." *Id.* at 999–1000.

1    Plaintiff first feebly attempts to discredit *Dugan* by stating that *Dugan* "is a deeply

2    flawed opinion, lacking any meaningful legal analysis . . . ." (Resp. 22:11–13, ECF No. 41.)

3    However, *Dugan* remains controlling authority on this Court.  Furthermore, this Court lacks the

4    authority to overrule a Ninth Circuit decision.

5    Next, Plaintiff unpersuasively attempts to distinguish her case from the facts in *Dugan*.

6    Specifically, Plaintiff argues that "Mr. Dugan was the very sort of person that § 922(g)(3) was

7    designed for—a dangerous criminal." (Resp. 22:22–24.)  Plaintiff argues that this law is

8    overbroad because it affects "nearly half of the U.S. population." (*Id.* 22:26–23:2.)  However,

9    Plaintiff's argument is "deeply flawed."  Whether nearly half of the U.S. population engages in

10   conduct that is illegal under federal law does not affect the illegality of that conduct. *ATF Open*

11   *Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine); *see*

12   *also* 21 U.S.C. § 812(b)(1), Sched. I(c)(10) (listing "marihuana" as a Schedule I illegal

13   controlled substance).

14   Because *Dugan* resolves Plaintiff's Second Amendment attack of § 922(g)(3), the Court

15   need not undergo an independent constitutional analysis.  Therefore, the Court dismisses

16   Plaintiff's Second Amendment challenge to § 922(g)(3).  In light of *Dugan*, any amendment of

17   this claim would be futile and, thus, Plaintiff's Second Amendment challenge to § 922(g)(3) is

18   dismissed with prejudice.

19   **2.    *Section 922(d)(3)***

20   Section 922(d)(3) prohibits the sale of a firearm to any person whom the seller knows or

21   has "reasonable cause to believe . . . is an unlawful user of . . . a controlled substance . . . ." 18

22   U.S.C. § 922(d)(3).  In addition, the BATFE Open Letter at issue in this case advised that an

23   FFL has "reasonable cause to believe" that a potential buyer is an unlawful user of a controlled

24   substance within the meaning of the Gun Control Act if the FFL is aware that the potential

25   buyer or transferee possesses a registry card. *See ATF Open Letter*.  Thus, under the BATFE's

Page 14 of 27

interpretation of "reasonable cause to believe," FFLs are prohibited from selling or transferring firearms or ammunition to the holder of a registry card. *ATF Open Letter; see also* 18 U.S.C. § 922(d)(3).

In Plaintiff's FAC, she alleges that this law infringes and imposes an impermissible burden on her right to keep and bear arms under the Second Amendment. (FAC ¶¶ 54–55, ECF No. 34.)  The Court recognizes that, in *Dugan*, the Ninth Circuit addressed only the constitutionality of § 922(g)(3). *See Dugan*, 657 F.3d at 999–1000.  However, the reasoning that supports the Court's determination that Plaintiff's FAC fails to state a plausible claim challenging § 922(g)(3) applies equally to Plaintiff's challenge to section (d)(3) of the same statute.  Just as Congress may constitutionally preclude illegal drug users from *possessing* a firearm, Congress likewise may preclude FFLs from *selling* firearms to illegal drug users and thereby prevent such prohibited persons from *acquiring* firearms. *See Dugan*, 657 F.3d at 999–1000.

For these reasons, the Court dismisses Plaintiff's Second Amendment challenge to § 922(d)(3).  Because the Court concludes that amendment of this claim would be futile, Plaintiff's Second Amendment challenge to § 922(d)(3) is dismissed with prejudice.

### 3. *27 C.F.R. 478.11*

In addition to challenging the two subsections of § 922, Plaintiff also claims that the BATFE's policies and regulations impermissibly infringe on her Second Amendment right. (FAC ¶¶ 54–55, ECF No. 34.)  Plaintiff identifies 27 C.F.R. § 478.11 and alleges the definition of "unlawful user…" contained therein imposes an impermissible burden on her Second Amendment right.[2]  However, Plaintiff fails to plead any facts establishing that the term

---

[2] 27 C.F.R. § 478.11 expressly defines "[u]nlawful user of or addicted to any controlled substance" as:
 A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful

"unlawful user," as defined in 27 C.F.R. § 478.11, itself, imposes an impermissible burden on her Second Amendment right. (*See* FAC ¶¶ 54–55.)  Thus, in reality, Plaintiff's FAC appears to target only the BATFE's Open Letter.  In addition, Plaintiff's Opposition fails to object to Defendants' assertions that Plaintiff failed to adequately plead a constitutional challenge to § 478.11.  Rather, Plaintiff's Opposition merely references alleged contradictions between 27 C.F.R. § 478.11 and the BATFE's Open Letter in her attempt to establish the unconstitutionality of the policy announced in the Open Letter. (Resp. 11:25–12:28, ECF No. 41.)  For this reason, the Court GRANTS Defendant's Motion to Dismiss as it relates to the constitutionality of 27 C.F.R. § 478.11.

Even to the extent that Plaintiff does allege that § 478.11 infringes her Second Amendment rights, her claim fails because § 478.11 is consistent with 21 U.S.C. § 802, which provides that the possession and use of marijuana is prohibited by federal law.  Plaintiff correctly notes that the definition of "unlawful user" excludes any person using a controlled substance in a manner "as prescribed by a licensed physician." 27 C.F.R. § 478.11.  However, marijuana is categorized by federal law as a Schedule I controlled substance under 21 U.S.C. §812(c)(Schedule I )(c)(10).  Controlled substances in Schedule I are defined by statute as having "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1)(B); *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491

---

use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. For a current or former member of the Armed Forces, an inference of current use may be drawn from recent disciplinary or other administrative action based on confirmed drug use, e.g., court-martial conviction, nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation failure.

1   (2001) (recognizing the statutory determination that "marijuana has no medical benefits worthy

2   of an exception (outside the confines of a Government-approved research project)").

3   Therefore, a regulation that prohibits any user of marijuana from possessing a firearm or

4   ammunition is also consistent with 18 U.S.C. § 922(g)(3), which, as discussed above in Section

5   III.B.1, the Ninth Circuit has previously found to be constitutional in *Dugan*   Accordingly, all

6   the reasons that support the constitutionality of the statutes related to the sale and possession of

7   firearms equally apply to 27 C.F.R. § 478.11.

8        *4.      BATFE's Open Letter[3]*

9        Plaintiff begins her Response to Defendants' Motion to Dismiss her Second Amendment

10   claims by reciting a string of objections to the BATFE's failure to engage in "notice and

11   comment" prior to issuing the Open Letter. (Resp. 9:26–10:12, ECF No. 41.)  The Court

12   recognizes that citizens may seek review of an agency's action that allegedly violates the

13   Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 702 (waiving sovereign immunity and

14   providing a private cause of action for "[a] person suffering legal wrong because of agency

15   action, or adversely affected or aggrieved by agency action within the meaning of a relevant

16   statute").  However, Plaintiff's argument is puzzling given her failure to include a cause of

17   action for violations of the APA in her FAC. (*See* FAC ¶¶ 50–97, ECF No. 34.)  Thus,

18   Plaintiff's assertions based on the APA, including any contradiction between the Open Letter

19   and 27 C.F.R. § 478.11, cannot save her Second Amendment claim; a claim alleging violations

20   of the APA is separate from a claim alleging violations of the right secured by the Second

21

22   _____

23   [3] Plaintiff's argument that the policy in the Open Letter violates the Second Amendment because "more than half
     of the U.S. population" uses marijuana is absurd at best.  The mere fact that many people engage in illegal
     activity does not alter the illegal nature of the activity.  Furthermore, the fact that the use of marijuana may be

24   legal under the laws in some states does not later the illegality of this use under federal law. *See Gonzales v.
     Raich*, 545 U.S. 1 (2005) (It is well settled that Congress has authority under the Commerce clause to criminalize

25   marijuana possession, even if such possession is not also illegal under state law); *see also Raich v. Gonzales*
     ("*Raich II*"), 500 F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the Supreme Court, that there is no
     Ninth Amendment or substantive due process right to use marijuana for claimed medical purposes).

1    Amendment.[4]

2        **C.    First Amendment Claim**

3        In Plaintiff's FAC, she asserts that the First Amendment confers a right to exercise

4    "certain non-verbal and communicative conduct, which, in this case, includes, without

5    limitation, the acquisition, possession, and acknowledgment of possession of a medical

6    marijuana registry card validly issued pursuant to state law." (FAC ¶ 82, ECF No. 34.)  Thus,

7    Plaintiff contends that "[b]y acquiring, possessing, and acknowledging possession of a medical

8    marijuana registry card, Plaintiff is exercising her First Amendment right to free speech." (*Id.*

9    ¶ 85.)  Plaintiff alleges that her possession of a registry card is a "tangible symbol" of her

10   "deeply held beliefs that marijuana should be legal for medical use"; her "belief and opinion

11   that her fellow citizens of Nevada were correct to have forced changes to Nevada law legalizing

12   marijuana for medical use", and her "belief and opinion that citizens in each state have a right

13   to decide whether marijuana should be legal for medical purposes." (*Id.* ¶¶ 87–90.)  Plaintiff

14   further contends that "Defendants are also attempting to deter her from exercising her First

15   Amendment rights in the future by requiring that she give up her First Amendment rights in

16   exchange for her Second Amendment rights."[5] (*Id.* ¶ 95.)

17   ────────────────────

18   [4] The Court will not grant leave to amend because the Court holds that amendment would be futile.
     Interpretative rules are excepted from the requirement that an agency provide notice and an opportunity for
19   public comment prior to promulgating a rule. 5 U.S.C. § 553(b)–(e).  Because the statements in the Open Letter
     are textbook interpretative, notice and comment would not be required. *See Shalala v. Guernsey Mem'l Hosp.*,
20   514 U.S. 87, 88 (1995) (describing an interpretative rule as one "issued by an agency to advise the public of the
     agency's construction of the statutes and rules which it administers"); *see also Hepp Indus. Ass'n v. Drug*
21   *Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) ("[I]nterpretive rules merely explain, but do not add
     to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other
22   hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by
     Congress." (internal citations omitted)).  The Open Letter simply interprets existing law and provides guidance to
23   the FFLs on how the laws, under which the FFLs operate, apply to the new circumstance of states exempting
     from prosecution the use of marijuana for medical purposes.  Furthermore, because the use of marijuana is illegal
24   under federal law, regardless of the user's purpose, the Open Letter cannot be said to change existing law.
     Accordingly, any attempt to amend the FAC to include a cause of action for failure to engage in notice and
25   comment under 5 U.S.C. § 553 would be futile.  Therefore, the Court declines to grant leave to amend.
     [5] Plaintiff's FAC also alleges that "Defendants are retaliating against Plaintiff's exercise of her First Amendment
     rights by denying her Second Amendment right." (FAC ¶ 94, ECF No. 34.)  Defendant categorizes this

### 1.   *Applicable Legal Standards*

It is well-established that the First Amendment's protection "does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Rather, certain conduct "may be sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]." *Id.* (internal quotation marks omitted). However, the Supreme Court has repeatedly "rejected 'the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

To determine whether conduct possesses sufficient "elements of communication," courts engage in a two-pronged analysis. First, courts determine "whether 'an intent to convey a particularized message was present.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)). Second, courts look to "whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 411).

### 2.   *Discussion*

Even assuming that Plaintiff has adequately pleaded the two prongs of the *Spence* test for when conduct is expressive, Plaintiff's claim fails under the analysis applying the correct

---

allegation as a "First Amendment 'retaliation claim.'" (Mot. to Dismiss 35 n.23, ECF No. 37.) In Plaintiff's Response brief, she seems to indicate that that this allegation is more related to a claim under the "unconstitutional condition" doctrine. (Resp. 23:22–25, ECF No. 41 ("The Defendants have effectively given the Plaintiff a Hobson's Choice between her First and Second Amendment Rights: *you can either exercise your right to free expression, or you can exercise your right to keep and bear arms, but you can't have both.*")); *see also Speiser v. Randall*, 357 U.S. 513, 518 (1958) (holding that "[t]o deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for this speech."). Regardless of how this allegation is characterized, the claim fails. First, Plaintiff has not set forth facts adequate to suggest that the passage of § 922(g)(3), § 922(d)(3), the promulgation of 27 C.F.R. § 478.11, or the distribution of the Open Letter, was motivated by retaliation for any communicative conduct by Plaintiff. Additionally, *Speiser* cautions that conditions which "have the effect of coercing the claimants to refrain from the proscribed speech" are suspect. 357 U.S. at 519. However, in this case, any such "condition" does not affect the actual speech, *i.e.*, promoting the medical benefits of marijuana, but relates only to the underlying conduct of obtaining and possessing a medical marijuana registry card.

1    level of scrutiny.

2        Plaintiff asserts that this Court must apply strict scrutiny to the challenged policy.

3    Plaintiff is mistaken.  Strict scrutiny applies only when the government "proscribe[s] particular

4    conduct *because* it has expressive elements" or enforces a "law *directed* at the communicative

5    nature of conduct."[6] *Texas v. Johnson*, 491 U.S. at 406 (quotation marks omitted).  Similarly,

6    the Ninth Circuit has stated that the *O'Brien* analysis, rather than strict scrutiny, applies

7    whenever the "conduct . . . merely contains an expressive component . . . more akin to . . .

8    burning a draft card (an example of conduct that can be used to express an idea but does not

9    necessarily do so)." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010)

10   (citing *O'Brien*, 391 U.S. at 376).  The acts of obtaining and possessing a marijuana registry

11   card are classic examples of "conduct that can be used to express an idea but does not

12   necessarily do so."  Plaintiff may well have obtained her registry card as a form of expression,

13   but that is not necessarily true of all individuals who obtain a medical marijuana registry card.

14   Accordingly, Plaintiff's assertion that strict scrutiny applies is incorrect; the standard

15   announced by the Supreme Court in *O'Brien* supplies the appropriate standard of review for the

16   statutes, regulation, and policy that Plaintiff challenges.

17       Under *O'Brien*, even after a court determines that the conduct at issue implicates the

18   First Amendment, "it does not necessarily follow that [the conduct at issue] is constitutionally

19   protected activity." 391 U.S. at 376.  "[W]hen 'speech' and 'nonspeech' elements are combined

20   in the same course of conduct, a sufficiently important governmental interest in regulating the

21

22
_____

23   [6] Plaintiff asserts that "the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to
     suppress the growing medical marijuana movement." (Resp. 26:17–19, ECF No. 41.)  For this reason, Plaintiff

24   asserts that the Court must apply strict scrutiny to the challenged policy. (*Id.* 26:28–27:2.)  However, the
     Supreme Court rejected a similar argument in *O'Brien* because "under settled principles the purpose of

25   Congress . . . is not a basis for declaring this legislation unconstitutional." 391 U.S. at 382–83 (rejecting the
     argument that a statute prohibiting the destruction or mutilation of selective service registration certificates was
     unconstitutional because it was the "'purpose' of Congress to 'suppress freedom of speech'").

                                          Page 20 of 27

nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* More specifically:

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377.

Here, Plaintiff fails to establish that this policy fails the test articulated by the Supreme Court in *O'Brien*. First, neither party asserts that the Government lacks the constitutional authority to regulate the possession and sale of firearms. Second, the challenged policy furthers the important governmental interest of protecting public safety and preventing violent crime. *See United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (recognizing the "danger in allowing habitual drug users to traffic in firearms because . . . [they] more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances"). Third, this interest is unrelated to the suppression of free expression. Finally, any restriction on Plaintiff's First Amendment right is no greater than necessary to further this interest. Specifically, the policy does not prohibit individuals from advocating for the legalization of marijuana for medicinal purposes. Similarly, the policy does not prevent any known advocate of the medical benefits of marijuana from obtaining a firearm. Instead, this policy is tailored to prevent users of marijuana, a controlled substance, from possessing a firearm by presuming that an individual who undertakes the "exceedingly difficult and lengthy process" of obtaining a medical marijuana card, (Resp. 25:2–8), is actually using marijuana. For these reasons, any infringement of Plaintiff's First Amendment right is incidental to an important governmental interest of reducing the threat caused by gun violence. Plaintiff cannot show that, under *O'Brien*, these statutes, regulation, and policy impermissibly infringe her right

of expression as secured by the First Amendment.  Accordingly, her First Amendment claim

fails and must be dismissed with prejudice.

**D.    Substantive Due Process Claim**

Substantive due process refers to the protection of "those fundamental rights and

liberties which are, objectively, deeply rooted in this Nation's history and tradition."

*Washington v. Glucksberg*, 521 U.S. 702, 720–21 (internal quotation marks omitted).  In

Plaintiff's FAC, she asserts that her "right to possess a handgun *under the Second Amendment*

is objectively deeply rooted in the Nation's history and tradition and implicit in the concept of

ordered liberty such that neither liberty nor justice would exist if they were sacrificed." (FAC

¶ 75, ECF No. 34 (emphasis added).)  Similarly, Plaintiff asserts that she "possesses a

fundamental right to free speech *under the First Amendment* which includes certain non-verbal

speech . . . ." (*Id.* ¶ 77 (emphasis added).)

The Supreme Court has long foreclosed this type of claim.  For this reason, Plaintiff's

cause of action for violations of the substantive due process clause of the 5th Amendment fails

and must be dismissed.  Specifically, more than two decades ago, the Supreme Court first held

that "[w]here a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing these claims."

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395

(1989)) (internal quotation marks omitted).  In fact, the Supreme Court has employed this

principle to countless amendments.  For example, in *Stop the Beach Renourishment, Inc. v.

Florida Department of Environmental Protection*, the Court noted that "[t]he first problem with

using Substantive Due Process to do the work of the Takings Clause is that we have held it

cannot be done." 560 U.S. 702, 721 (2010) (citing *Albright*, 510 U.S. at 273).  Similarly, in

*Turner v. Rogers*, the Court concluded that a criminal defendant could not use the Due Process

Page 22 of 27

Clause to assert a claim for violations of his Sixth Amendment right to appointed counsel. 131

S. Ct. 2507, 2522 (2011) ("[W]e do not read a general provision to render a specific one

superfluous.").

Plaintiff attempts to salvage this claim by arguing that the provisions in her FAC that

refer to her First and Second Amendment rights, (FAC ¶¶ 75–77), "such provisions in the FAC

do not waive Plaintiff's previous assertion that she possess [sic] a liberty right in the ability to

choose a course of medical treatment . . . ." (Resp. 29:1–5, ECF No. 41.) This argument is

fatally flawed for at least two reasons. First, Plaintiff cannot attempt to cure defects in her

complaint by including the necessary allegations in her opposition brief. *See Broam v. Bogan*,

320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting that a court may not look beyond the complaint

to plaintiff's briefs when determining the propriety of a motion to dismiss for failure to state a

claim). Second, the Ninth Circuit's opinion in *Raich v. Gonzales*, forecloses any claim that

Plaintiff has a fundamental right to use marijuana for medical reasons.[7] 500 F.3d 850, 861–66

(9th Cir. 2007).

For these reasons, the Court concludes that Plaintiff has not and cannot state a claim for

violations of the substantive due process claim. Because the Court finds that amendment would

be futile, this cause of action is dismissed with prejudice.

**E.     Procedural Due Process Claim**

In Plaintiff's FAC, she alleges that "Defendants have denied the Plaintiff adequate

---

[7] The Supreme Court has recognized that there are fundamental rights associated with choosing one's medical treatment. *See Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992) (recognizing a women's right to an abortion); *Eisenstad v. Baird*, 405 U.S. 438 (1972) (recognizing the right to use contraception); *Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 267, 279 (1990) (recognizing the right to "refuse lifesaving hydration and nutrition"). However, the Court has never recognized an unqualified constitutional right to any medical treatment that a patient desires. In fact, in *Raich v. Gonzales*, the Ninth Circuit held that there was no constitutionally protected right to use marijuana for medicinal purposes. 500 F.3d 850, 864 (9th Cir. 2007) (stating that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering"). Thus, the Ninth Circuit's holding in *Raich v. Gonzales* effectively precludes Plaintiff's argument that she has a fundamental right to engage in the exact course of treatment that she and her physician deem best.

Page 23 of 27

procedural protections before depriving her of her right to purchase and possess a firearm." (FAC ¶ 71, ECF No. 34.)  However, because Plaintiff has failed to identify a constitutionally protected liberty or property interest, as required by the Fifth Amendment, her claim fails and must be dismissed.

The relevant portion of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. To successfully allege a procedural due process claim, plaintiffs must provide sufficient facts establishing the plausible existence of two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  The Court need not reach the second element because Plaintiff has not alleged that Defendants deprived her of a constitutionally protected liberty or property interest. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569 (holding that adequate procedural protections are required only when the plaintiff has been deprived of a liberty or property interest).

In her opposition brief, Plaintiff first asserts that "[t]he United States Constitution requires that whenever a governmental body acts to injure an individual, that act must be consonant with due process of law." (Resp. 30:17–18, ECF No. 41.)  Plaintiff concludes that Defendants' determination that those persons that possess a registry card fit the definition of an "unlawful user of a controlled substance" deprives her of a right without adequate procedure. (*Id.* at 31:14–22.)  However, Plaintiff fails to recognize that she must articulate a "constitutionally protected *liberty* or *property* interest" before her procedural due process claim may proceed.  Therefore, Plaintiff's discussion of any procedural inadequacies is insufficient to defeat Defendants' Motion to Dismiss.  Because Plaintiff cannot identify a constitutionally protected *liberty* or *property* interest, she cannot state a procedural due process claim and the Court must dismiss her claim with prejudice.

### F.     Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Although the Fourteenth Amendment applies only to state action, the Due Process Clause of the Fifth Amendment, which does apply to the federal government, encompasses the protections of the Equal Protection Clause. *Bolling v. Sharpe*, 347 U.S. 497 (1954). The equal protection component of the Due Process Clause is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a valid claim under the equal protection component of the Fifth Amendment, Plaintiff "must show that the statute in question results in members of a certain group being treated differently from other persons based on membership in that group." *Sagana v. Tenorio*, 384 F.3d 731, 740 (9th Cir. 2004) (internal quotation marks omitted); *see also Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011) ("To establish an equal protection violation, [the plaintiff] must show that she is being treated differently from similarly situated individuals.").

Plaintiff's FAC first alleges that she "is being treated differently from persons who are prescribed medical marijuana in states where the obtainment of a state-issued medical marijuana registry card is not required." (FAC ¶ 62, ECF No. 34.) This statement is insufficient to state an equal protection claim. The laws, regulation, and policy that Plaintiff challenges are neither "applied in a discriminatory manner," nor does it "impose[] different burdens on different classes of people." *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). Plaintiff's argument simply acknowledges that marijuana users in states that do not require registry cards may more easily evade and violate federal law. *See United States v. Hendrickson*, 664 F. Supp. 2d 793, 798 (E.D. Mich. 2009) ("There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against

whom it is enforced . . . . The law does not need to be enforced everywhere to be legitimately enforced somewhere." (quotation omitted)).

Plaintiff further alleges that she "is also being treated differently from similarly situated persons with similar medical conditions to those of the Plaintiff. . . .  Other similarly situated individuals who likewise pursue different methods of treatment for medical conditions have not been denied their ability to obtain handguns." (*Id.* ¶ 63.)   However, although the use of marijuana for medical purposes may not violate Nevada state law, this same use is still prohibited under federal law. *See e.g.*, 21 U.S.C. § 844(a) (prohibiting possession of controlled substances); *see also ATF Open Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine").  The fact remains that, by "follow[ing] state laws for the obtainment of treatment for her medical condition," (Resp. 33:12–16), she is pursuing a course of treatment that violates federal law.  Thus, she is not similarly situated to individuals that avail themselves of treatment methods *that comply with federal law. See Marin Alliance for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1158–59 (N.D. Cal. 2011) (concluding that individuals for whom the use of marijuana is prohibited under federal law are not similarly situated to individuals whose use of marijuana is permitted under federal law (in connection with research projects funded by the Government))  Accordingly, Plaintiff has failed to plead a valid class of persons against whom the government is discriminating in violation of the equal protection component of the Fifth Amendment.[8]

For these reasons, Plaintiff's complaint fails to state a plausible claim under the equal protection component of the Fifth Amendment.  Accordingly, the Court dismisses Plaintiff's

---

[8] Even if Plaintiff had identified an appropriate class of individuals, she certainly has not established her membership in a "suspect class." Accordingly, "any differential treatment violates equal protection only if it lacks a 'rational basis.'" *Gonzalez-Medina*, 641 F.3d at 336.  As discussed numerous times above, this policy is rationally related to the Government's legitimate interest in preventing violent crime.

Page 26 of 27

equal protection claim with prejudice.

**IV.**   **CONCLUSION**

    **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 37) is **GRANTED** with prejudice.

    The Clerk of the Court shall enter judgment accordingly.

    **DATED** this 11th day of March, 2014.

 

 

                                        _____

                                        Gloria M. Navarro, Chief Judge
                                        United States District Judge

CLOSED,APPEAL

# United States District Court
## District of Nevada (Las Vegas)
## CIVIL DOCKET FOR CASE #: 2:11–cv–01679–GMN–PAL

Wilson v. Holder et al
Assigned to: Judge Gloria M. Navarro
Referred to: Magistrate Judge Peggy A. Leen
Case in other court:  Ninth Circuit, 14–15700
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 10/18/2011
Date Terminated: 03/12/2014
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**S Rowan Wilson**                             represented by   **Charles C. Rainey**
Rainey Legal Group, PLLC
9340 W. Martin Ave
Las Vegas, NV 89148
702–425–5100
Fax: 888–867–5734
Email: chaz@raineylegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Eric H. Holder, Jr.**                         represented by   **Zachary C Richter**
United States Department of Justice, Civil
Division
P.O. Box 7146
Washington, DC 20044
(202)616–4199
Fax: (202)616–4314
Email: Zachary.Richter@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia N. Ellington**
U.S. Department of Justice, Civil Division,
Federal Programs
20 Massachusetts Ave., NW
Washington, D. 20530
202–305–8550
Email: alicia.n.ellington@usdoj.gov
*ATTORNEY TO BE NOTICED*

**John Kenneth Theis**
U.S. Department of Justice, Federal
Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
202–305–7632
Email: john.k.theis@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Bureau of Alcohol, Tobacco,**           represented by   **Zachary C Richter**
**Firearms, and Explosives**                                    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia N. Ellington**

(See above for address)
*ATTORNEY TO BE NOTICED*

**John Kenneth Theis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**B Todd Jones**                    represented by **Zachary C Richter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia N. Ellington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Kenneth Theis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Arthur Herbert**                    represented by **Zachary C Richter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia N. Ellington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Kenneth Theis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America**                    represented by **Justin E Pingel**
United States Attorney's Office
333 Las Vegas Boulevard So., Ste 5000
Las Vegas, NV 89101
702−388−6336
Fax: 702−388−6787
Email: justin.pingel@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia N. Ellington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Kenneth Theis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zachary C Richter**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2011 | 1 | COMPLAINT against Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America |

| | | |
|---|---|---|
| | | (Filing fee $ 350 receipt number 0978–2152851), filed by S Rowan Wilson. Certificate of Interested Parties due by 10/28/2011. Proof of service due by 2/15/2012. (Attachments: #_1 Exhibit, #_2 Exhibit, #_3 Civil Cover Sheet, #_4 Summons, #_5 Summons, #_6 Summons, #_7 Summons, #_8 Summons) (Rainey, Charles) (Entered: 10/18/2011) |
| 10/18/2011 | | Case assigned to Judge Gloria M. Navarro and Magistrate Judge Peggy A. Leen. (EDS) (Entered: 10/18/2011) |
| 10/18/2011 | 2 | NOTICE PURSUANT TO LOCAL RULE IB 2–2: In accordance with 28 USC § 636(c) and FRCP 73, the parties in this action are provided with a link to the "AO 85 Notice of Availability, Consent, and Order of Reference – Exercise of Jurisdiction by a U.S. Magistrate Judge" form on the Court's website – www.nvd.uscourts.gov. **Consent forms should NOT be electronically filed.** Upon consent of all parties, counsel are advised to manually file the form with the Clerk's Office. **(no image attached)** (EDS) (Entered: 10/18/2011) |
| 10/18/2011 | 3 | SUMMONS Issued as to Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, U.S. Attorney and U.S. Attorney General. (Attachments: #_1 Summons Issued as to Arthur Hebert, #_2 Summons Issued as to B. Todd Jones, #_3 Summons Issued as to Eric Holder, #_4 Summons Issued as to USA)(EDS) (Entered: 10/18/2011) |
| 10/25/2011 | 4 | CERTIFICATE of Interested Parties filed by S Rowan Wilson. There are no known interested parties other than those participating in the case. (Rainey, Charles) (Entered: 10/25/2011) |
| 11/03/2011 | 5 | CERTIFICATE OF SERVICE for Summons and Complaint by Plaintiff S Rowan Wilson re_1 Complaint,. (Attachments: #_1 Affidavit, #_2 Affidavit, #_3 Affidavit, #_4 Affidavit, #_5 Affidavit)(Rainey, Charles) (Entered: 11/03/2011) |
| 01/02/2012 | 6 | CERTIFICATE OF SERVICE for Summons and Complaint by Plaintiff S Rowan Wilson. (Rainey, Charles) (Entered: 01/02/2012) |
| 01/23/2012 | 7 | MOTION for Leave to Appear Government Attorney. Attorney: Alicia N. Ellington, Zachary Richter, John K. Theis. by Defendant United States of America. Motion ripe 1/23/2012. (Pingel, Justin) (Entered: 01/23/2012) |
| 01/24/2012 | 8 | ORDER Granting_7 Motion for Leave to Appear for Attorney Alicia N. Ellington,Zachary C Richter, and John K. Theis for United States of America. Signed by Judge Gloria M. Navarro on 1/24/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 01/25/2012) |
| 02/03/2012 | 9 | MOTION to Dismiss *Individual–Capacity Claims* by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones. Responses due by 2/20/2012. Certificate of Interested Parties due by 2/13/2012. Discovery Plan/Scheduling Order due by 3/19/2012. (Attachments: #_1 Certification of Scope of Employment)(Richter, Zachary) (Entered: 02/03/2012) |
| 02/03/2012 | 10 | MOTION to Dismiss *or, in the Alternative, for Summary Judgment* by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. Responses due by 2/20/2012. (Attachments: #_1 Appendix, #_2 Statement of Undisputed Material Facts)(Ellington, Alicia) (Entered: 02/03/2012) |
| 02/03/2012 | 11 | Unopposed MOTION for Leave to File Excess Pages by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. Motion ripe 2/3/2012. (Ellington, Alicia) (Entered: 02/03/2012) |
| 02/06/2012 | 12 | Joint MOTION to Extend Time regarding dispositive matter (First Request) *(Request for Entry of Briefing Schedule)* by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. Motion ripe 2/6/2012. (Ellington, Alicia) (Entered: 02/06/2012) |

| | | |
|---|---|---|
| 02/06/2012 | 13 | ORDER Granting 11 Motion for Leave to File Excess Pages. Signed by Judge Gloria M. Navarro on 2/6/12. (Copies have been distributed pursuant to the NEF – ASB) (Entered: 02/07/2012) |
| 02/07/2012 | 14 | STIPULATION of Dismissal *of Individual Defendants* by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. (Richter, Zachary) (Entered: 02/07/2012) |
| 02/07/2012 | 15 | ORDER Granting 12 Motion for Briefing Schedule re 10 MOTION to Dismiss *or, in the Alternative, for Summary Judgment*, 9 MOTION to Dismiss *Individual–Capacity Claims*. Responses due by 3/9/2012. Replies due by 3/30/2012. Signed by Judge Gloria M. Navarro on 2/7/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 02/08/2012) |
| 02/07/2012 | 16 | ORDER ON STIPULATION Granting 14 Stipulation of of Individual Defendants. Plaintiffs claims against Defendants Holder, Jones, and Herbert in their individual capacities are DISMISSED WITHOUT PREJUDICE. Signed by Judge Gloria M. Navarro on 2/7/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 02/08/2012) |
| 03/09/2012 | 17 | RESPONSE to 10 MOTION to Dismiss *or, in the Alternative, for Summary Judgment*, filed by Plaintiff S Rowan Wilson. Replies due by 3/19/2012. (Attachments: # 1 Exhibit)(Rainey, Charles) (Entered: 03/09/2012) |
| 03/24/2012 | 18 | NOTICE of Change of Address by Charles C. Rainey. (Rainey, Charles) (Entered: 03/24/2012) |
| 03/27/2012 | 19 | SCHEDULING ORDER. Discovery due by 8/1/2012. Motions due by 8/31/2012. Proposed Joint Pretrial Order due by 10/1/2012. Signed by Magistrate Judge Peggy A. Leen on 3/26/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 03/27/2012) |
| 03/30/2012 | 20 | REPLY to Response to 10 MOTION to Dismiss *or, in the Alternative, for Summary Judgment* ; filed by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. (Attachments: # 1 Exhibit Exhibit A)(Theis, John) (Entered: 03/30/2012) |
| 03/30/2012 | 21 | UNOPPOSED MOTION Enlargement of Page Limit by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. Motion ripe 3/30/2012. (Theis, John) (Entered: 03/30/2012) |
| 04/03/2012 | 22 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Gloria M. Navarro, on 4/3/2012.<br><br>IT IS HEREBY ORDERED that Defendants Unopposed Motion for Enlargement of Page Limit 21 is GRANTED.<br><br>(Copies have been distributed pursuant to the NEF – RMH) (Entered: 04/03/2012) |
| 04/18/2012 | 23 | Joint STATUS REPORT *Regarding Rule 26(f) Conference* by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. (Theis, John) (Entered: 04/18/2012) |
| 05/31/2012 | 24 | STIPULATION FOR EXTENSION OF TIME (First Request) by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. (Theis, John) (Entered: 05/31/2012) |
| 06/01/2012 | 25 | ORDER ON STIPULATION Granting 24 Stipulation Regarding Extension of Discovery Schedule. Signed by Magistrate Judge Peggy A. Leen on 6/1/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 06/04/2012) |
| 06/21/2012 | 26 | ORDER Granting 9 Motion to Dismiss Individual–Capacity Claims. Plaintiffs claims against Defendants Holder, Jones, and Herbert in their individual capacities |

| | | |
|---|---|---|
| | | are DISMISSED WITHOUT PREJUDICE. Signed by Judge Gloria M. Navarro on 6/21/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 06/22/2012) |
| 09/19/2012 | 27 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Gloria M. Navarro, on 9/19/2012. By Deputy Clerk: Michael Zadina. RE: 10 MOTION to Dismiss. <br><br> IT IS HEREBY ORDERED that Motion Hearing is set for 10/5/2012 at 10:30 AM in LV Courtroom 7D before Judge Gloria M. Navarro. <br><br> (**no image attached**) (Copies have been distributed pursuant to the NEF – MJZ) (Entered: 09/19/2012) |
| 09/24/2012 | 28 | STIPULATION FOR EXTENSION OF TIME (First Request) to Continue Hearing on 10 MOTION to Dismiss filed by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. (Theis, John) (Entered: 09/24/2012) |
| 09/25/2012 | 29 | ORDER ON STIPULATION Granting 28 Stipulation For Extension of Time to Continue Hearing on 10 MOTION to Dismiss. Motion Hearing set for 11/2/2012 09:00 AM in LV Courtroom 7D before Judge Gloria M. Navarro. Signed by Judge Gloria M. Navarro on 9/25/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 09/26/2012) |
| 11/02/2012 | 30 | MINUTES OF PROCEEDINGS – Motion Hearing held on 11/2/2012 before Judge Gloria M. Navarro. Crtrm Administrator: *Michael Zadina*; Pla Counsel: *Charles Rainey*; Def Counsel: *John Theis*; Court Reporter/FTR #: *Araceli Bareng*; Time of Hearing: *9:14–10:43 am*; Courtroom: *7D*; <br><br> The Court makes preliminary remarks and hears representations from counsel on the 10 Motion to Dismiss. The parties request leave to court to file supplemental briefs. IT IS ORDERED the parties' oral request for leave to file supplemental briefs is granted. The parties have until the close of business on 12/17/2012 at 4:00 PM to file their supplemental briefs. The matter is taken under submission. Written order to follow. <br><br> (**no image attached**) (Copies have been distributed pursuant to the NEF – MJZ) (Entered: 11/05/2012) |
| 11/16/2012 | 31 | Joint MOTION to Amend/Correct Complaint by Plaintiff S Rowan Wilson. Responses due by 12/3/2012. (Attachments: # 1 Exhibit)(Rainey, Charles) (Entered: 11/16/2012) |
| 12/12/2012 | 32 | ORDER finding as moot 10 Motion to Dismiss. Motion to Amend Complaint 31 having been granted, **IT IS ORDERED** that 10 Motion to Dismiss is denied as moot. Signed by Judge Gloria M. Navarro on 12/12/12. (Copies have been distributed pursuant to the NEF – DLM) (Entered: 12/12/2012) |
| 12/12/2012 | 33 | ORDER Granting 31 Motion to File First Amended Complaint. Amended Complaint due within 14 days. Motions due within 45 days after service of the amended pleading. Signed by Judge Gloria M. Navarro on 12/12/2012. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 12/12/2012) |
| 12/17/2012 | 34 | AMENDED COMPLAINT against All Defendants, filed by S Rowan Wilson. No changes to parties. Proof of service due by 4/16/2013. (Attachments: # 1 Exhibit, # 2 Exhibit) (Rainey, Charles) (Entered: 12/17/2012) |
| 01/18/2013 | 35 | TRANSCRIPT of Proceedings, 30 Motion Hearing held on 11/2/2012, before Judge Gloria M. Navarro. Court Reporter/Transcriber: ELLEN L. FORD, 702–366–0635. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/8/2013. Redacted Transcript Deadline set for 2/18/2013. Release of Transcript Restriction set for 4/18/2013. (ABB) (Entered: 01/18/2013) |

| 01/28/2013 | 36 | Unopposed MOTION for Leave to File Excess Pages by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. Motion ripe 1/28/2013. (Theis, John) (Entered: 01/28/2013) |
|---|---|---|
| 01/31/2013 | 37 | MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment* by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. Responses due by 2/17/2013. (Attachments: # 1 Appendix, # 2 Statement of Undisputed Facts)(Theis, John) (Entered: 01/31/2013) |
| 02/13/2013 | 38 | STIPULATION FOR EXTENSION OF TIME (First Request) re 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment* ; by Plaintiff S Rowan Wilson. (Rainey, Charles) (Entered: 02/13/2013) |
| 02/13/2013 | 39 | ORDER ON STIPULATION Granting 38 Stipulation for an Extension of Time to File a Response to 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment*. Responses due by 2/25/2013. Signed by Judge Gloria M. Navarro on 2/13/2013. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 02/14/2013) |
| 02/19/2013 | 40 | ORDER Granting 36 Motion for an Enlargement of Page Limit. Defendants Motion to Dismiss the First Amended Complaint and memorandum in support shall be no more than forty–five (45) pages in length. Signed by Judge Gloria M. Navarro on 2/19/2013. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 02/19/2013) |
| 02/25/2013 | 41 | RESPONSE to 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment*, filed by Plaintiff S Rowan Wilson. Replies due by 3/7/2013. (Attachments: # 1 Exhibit)(Rainey, Charles) (Entered: 02/25/2013) |
| 02/28/2013 | 42 | STIPULATION FOR EXTENSION OF TIME (First Request) re 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment* ; by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. (Theis, John) (Entered: 02/28/2013) |
| 02/28/2013 | 43 | ORDER ON STIPULATION Granting 42 Stipulation to Extend Time to File a Reply to 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment*. Replies due by 3/22/2013. Signed by Judge Gloria M. Navarro on 2/28/2013. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 02/28/2013) |
| 03/21/2013 | 44 | STIPULATION FOR EXTENSION OF TIME (Second Request) re 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment* ; by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Plaintiff S Rowan Wilson. (Theis, John) (Entered: 03/21/2013) |
| 03/26/2013 | 45 | ORDER ON STIPULATION Granting 44 Stipulation to Extend Time to File a Reply in Support of 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment*. Replies due by 3/29/2013. Signed by Judge Gloria M. Navarro on 3/26/2013. (Copies have been distributed pursuant to the NEF – SLR) (Entered: 03/26/2013) |
| 03/29/2013 | 46 | Unopposed MOTION for Leave to File Excess Pages by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. Motion ripe 3/29/2013. (Theis, John) (Entered: 03/29/2013) |
| 03/29/2013 | 47 | REPLY to Response to 37 MOTION to Dismiss *the First Amended Complaint, or in the Alternative, for Summary Judgment* filed by Defendants Arthur Herbert, Eric H. Holder, Jr, B Todd Jones, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America. (Theis, John) (Entered: 03/29/2013) |
| 01/27/2014 | 48 | ORDER Granting Defendants' 46 Unopposed Motion for Leave to File Excess Pages. Defendants' Reply in Support of Their Motion to Dismiss the First |

| | | |
|---|---|---|
| | | Amended Complaint shall be no more than 25 pages in length. Signed by Chief Judge Gloria M. Navarro on 1/27/2014. (Copies have been distributed pursuant to the NEF – SLD) (Entered: 01/27/2014) |
| 03/12/2014 | 49 | ORDER Granting 37 Defendants' Motion to Dismiss the First Amended Complaint with prejudice. The Clerk of the Court shall enter judgment accordingly. Signed by Chief Judge Gloria M. Navarro on 03/11/2014. (Copies have been distributed pursuant to the NEF – AC) (Entered: 03/12/2014) |
| 03/12/2014 | 50 | CLERK'S JUDGMENT in favor of Defendants U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, United States of America, Arthur Herbert, B Todd Jones and Eric H. Holder, Jr and against Plaintiff S Rowan Wilson with prejudice. Signed by Clerk of Court, Lance S. Wilson on 03/12/2014. (Copies have been distributed pursuant to the NEF – AC) (Entered: 03/12/2014) |
| 04/10/2014 | 51 | NOTICE OF APPEAL as to 49 Order on Motion to Dismiss, by Plaintiff S Rowan Wilson. Filing fee $ 505, receipt number 0978–3200045. E–mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (Rainey, Charles) (Entered: 04/10/2014) |
| 04/11/2014 | 52 | Designation of Transcripts and Transcript Order forms and instructions for 51 Notice of Appeal. The forms may also be obtained on the Court's website at www.nvd.uscourts.gov/Forms.aspx. (ASB) (Entered: 04/11/2014) |
| 04/11/2014 | 53 | ORDER for Time Schedule as to 51 Notice of Appeal filed by S Rowan Wilson. **USCA Case Number 14–15700.** (MMM) (Entered: 04/11/2014) |
| 05/12/2014 | 54 | TRANSCRIPT DESIGNATION by Plaintiff S Rowan Wilson re 51 Notice of Appeal, 35 Transcript,,. (Rainey, Charles) (Entered: 05/12/2014) |
| 08/07/2014 | 55 | ORDER of USCA, Ninth Circuit, as to 51 Notice of Appeal filed by S Rowan Wilson. Motion for Leave to File an Oversized Brief is DENIED as unnecessary. (EDS) (Entered: 08/08/2014) |