No. 14-15700

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————

### S. ROWAN WILSON,

Plaintiff-Appellant,

v.

**ERIC H. HOLDER, JR., as Attorney General of the United States; THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS and EXPLOSIVES; B. TODD JONES, as Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; ARTHUR HERBERT, as Assistant Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; and THE UNITED STATES OF AMERICA,**

Defendants-Appellees.

———————————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

———————————————

### BRIEF FOR APPELLEES

———————————————

STUART F. DELERY
 *Assistant Attorney General*

DANIEL G. BOGDEN
 *United States Attorney*

MICHAEL S. RAAB
 (202) 514-4053
ABBY C. WRIGHT
 (202) 514-0664
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7252*
 *Department of Justice*
 *950 Pennsylvania Avenue, N.W.*
 *Washington, D.C. 20530*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION .............................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE................................................................2

    A.    Federal and State Regulation of Marijuana ....................................2

    B.    The Gun Control Act..................................................................6

    C.    Factual Background and Prior Proceedings...................................8

SUMMARY OF ARGUMENT...............................................................11

STANDARD OF REVIEW ...................................................................13

ARGUMENT ...................................................................................13

    I.    The Open Letter Interpreted the Gun Control Act Provision
        That Prohibits Sales Where a Dealer Has "Reasonable Cause
        To Believe" an Individual Is Using a Controlled Substance....................13

    II.    The Prohibition on Firearm Sales to Unlawful Users of Controlled
        Substances Does Not Violate the Second Amendment...........................18

        A.    This Court has held that § 922(g)(3) is constitutional,
            and the same analysis applies to the corresponding
            prohibition on firearm sales............................................................18

        B.    Even assuming Dugan does not control this case, at most
            intermediate scrutiny applies, and § 922(d)(3) easily
            survives such scrutiny.......................................................................20

III.    Plaintiff's Remaining Constitutional Claims Are Without Merit..............27

      A.    Plaintiff's First Amendment rights have not been violated..........27

      B.    Plaintiff's Fifth Amendment challenges lack merit........................30

CONCLUSION ....................................................................................................33

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Page**

*Dickerson v. New Banner Inst., Inc.,*
   460 U.S. 103 (1983) ........................................................................................6

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ................................................................................ 18, 21

*Greater New Orleans Broad. Ass'n v. United States,*
   527 U.S. 173 (1999) ......................................................................................18

*Green v. United States,*
   630 F.3d 1245 (9th Cir. 2011) ......................................................................13

*In re Rogers,*
   66 P.2d 1237 (Cal. Dist. Ct. App. 1937)......................................................22

*Kimel v. Fla. Bd. of Regents,*
   528 U.S. 62 (2000) ........................................................................................33

*Mass. Bd. of Ret. v. Murgia,*
   427 U.S. 307 (1976) ......................................................................................32

*Nat'l Rifle Ass'n of Am. v. ATF,,*
   700 F.3d 185 (5th Cir. 2012), *cert. denied,* 134 S Ct. 1364 (2014)............ 21, 23

*Nordyke v. King,*
   681 F.3d 1041 (9th Cir. 2012), *cert. denied,* 133 S. Ct. 840 (2013)................32

*Orin v. Barclay,*
   272 F.3d 1207 (9th Cir. 2001) ......................................................................30

*Raich v. Gonzales,*
   500 F.3d 850 (9th Cir. 2007) ........................................................................11

*S. Pac. Terminal Co. v. ICC,*
   219 U.S. 498 (1911) ......................................................................................10

*State v. Shelby*,
  2 S.W. 468 (Mo. 1886) ...................................................................22

*Texas v. Johnson*,
  491 U.S. 397 (1989) ............................................................... 27, 29

*United States v. Carter:*

  669 F.3d 411 (4th Cir. 2012), *aff'd*, 750 F.3d 462 (4th Cir. 2014)...................23, 25, 26

  750 F.3d 462 (4th Cir. 2014), *petition for cert. pending* (filed
    July 29, 2014)................................................................ 23, 24

*United States v. Chafin*,
  423 F. App'x 342 (4th Cir. 2011) ...................................................20

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013), *petition for cert. pending*
    (filed June 26, 2014) ..............................................12, 20, 21, 22, 24, 32

*United States v. Dugan*,
  657 F.3d 998 (9th Cir. 2011) ................................................ 10, 12, 18, 19, 21

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010) ...........................................................23

*United States v. May*,
  538 F. App'x 465 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 804 (2013) ...........................29

*United States v. O'Brien*,
  391 U.S. 367 (1968) ............................................................11, 27, 28

*United States v. Reese*,
  627 F.3d 792 (10th Cir. 2010)........................................................23

*United States v. Seay*,
  620 F.3d 919 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1027 (2011)................................18

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) (en banc) .................................................. 22, 26

*United States v. Yancey*,
  621 F.3d 681 (7th Cir. 2010) .................................................................. 18, 19, 23, 25, 26

*Weinstein v. Bradford*,
  423 U.S. 147 (1975) ...................................................................................................14


**Constitution:**

Nev. Const. art. IV, § 38(1)(a) ...........................................................................................3


**Statutes:**

5 U.S.C. § 553(b)(3)(A) ...................................................................................................15

18 U.S.C. § 922(d)(3) .............................................................................................*passim*

18 U.S.C. § 922(g) ............................................................................................................6

18 U.S.C. § 922(g)(3) .............................................................................................*passim*

21 U.S.C. § 801 ................................................................................................................2

21 U.S.C. § 801 *et seq.* .....................................................................................................2

21 U.S.C. § 812(b)(1) .......................................................................................................3

21 U.S.C. § 812(b)(1)-(5) ................................................................................................2

21 U.S.C. § 812(c) ............................................................................................................3

28 U.S.C. § 1291 ..............................................................................................................1

28 U.S.C. § 1331 ..............................................................................................................1

Gun Control Act of 1968, Pub. L. No. 90-618,
  82 Stat. 1213 ............................................................................................................ 6, 25

Pub. L. No. 91-513 § 202(c), 84 Stat. 1236, 1249 ...........................................................3

Ala. Code § 13A-11-72(b) ...............................................................25

Ark. Code Ann. § 5-73-309(7) .......................................................25

Ark. Code Ann. § 5-73-309(8) .......................................................25

Cal. Penal Code § 12021(a)(1) ......................................................25

Colo. Rev. Stat. § 18-12-203(1)(e) ...............................................25

Colo. Rev. Stat. § 18-12-203(1)(f) ...............................................25

Del. Code Ann. tit. 11, § 1448(a)(3) .............................................25

D.C. Code § 22-4503(a)(4) ...........................................................25

Fla. Stat. § 790.25(2)(b)(1) ..........................................................25

Ga. Code Ann. § 16-11-129(b)(2)(F) ...........................................25

Ga. Code Ann. § 16-11-129(b)(2)(I) ............................................25

Ga. Code Ann. § 16-11-129(b)(2)(J) ............................................25

Haw. Rev. Stat. § 134-7(c)(1) .......................................................25

Idaho Code Ann. § 18-3302(1)(e) ................................................25

720 Ill. Comp. Stat. 5/24-3.1(a)(3) ..............................................25

Ind. Code § 35-47-1-7(5) ..............................................................25

Kan. Stat. Ann. § 21-4204(a)(1) ...................................................25

Ky. Rev. Stat. Ann. § 237.110(4)(d) .............................................25

Ky. Rev. Stat. Ann. § 237.110(4)(e) .............................................25

Md. Code Ann., Pub. Safety, 5-133(b)(4) .....................................25

Md. Code Ann., Pub. Safety, 5-133(b)(5) .....................................25

Mass. Gen. Laws ch. 140, § 129B(1)(iv)................................................25

Minn. Stat. § 624.713(1)(10)(iii)......................................................25

Mo. Rev. Stat. § 571.070(1)(1)..........................................................25

Nev. Rev. Stat. § 202.360(1)(c).........................................................25

Nev. Rev. Stat. § 453.336.................................................................3

Nev. Rev. Stat. ch. 453A.................................................................3

Nev. Rev. Stat. § 453A.200(1)(f).......................................................4

Nev. Rev. Stat. § 453A.200(3)...........................................................4

Nev. Rev. Stat. § 453A.210(2)(a)(1)....................................................4

Nev. Rev. Stat. § 453A.210(2)(a)(2)-(3)...............................................4

Nev. Rev. Stat. § 453A.220(4)...........................................................5

Nev. Rev. Stat. § 453A.230...............................................................5

Nev. Rev. Stat. § 453A.240..........................................................4, 15

N.H. Rev. Stat. Ann. § 159:3(b)(3)...................................................25

N.J. Stat. Ann. § 2C:58-3(c)(2).......................................................25

N.C. Gen. Stat. § 14-404(c)(3).........................................................25

Ohio Rev. Code Ann. § 2923.13(A)(4)................................................25

R.I. Gen. Laws § 11-47-6................................................................25

S.C. Code Ann. § 16-23-30(A)(1).....................................................25

S.D. Codified Laws § 23-7-7.1(3).....................................................25

W. Va. Code § 61-7-7(a)(2)............................................................25

W. Va. Code § 61-7-7(a)(2) ...............................................................25

W. Va. Code § 61-7-7(a)(3) ...............................................................25

**Regulation:**

27 C.F.R. § 478.11 ...................................................................*passim*

**Other Authorities:**

Nev. Div. of Pub. & Behavioral Health:

> *Medical Marijuana, Frequently Asked Questions,* http://health.nv.gov/ MedicalMarijuana_FAQ.htm (last visited Sept. 2, 2014) ............................................5

> *Program Facts,* http://health.nv.gov/ MedicalMarijuana/ ProgramFacts.pdf (last visited Sept. 2, 2014) ................................5

U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, "Open Letter to All Federal Firearms Licensees," https://www.atf.gov/files/press/ releases/2011/09/092611-atf-open-letter-to-all-ffls-marijuana-for- medicinal-purposes.pdf (Sept. 21, 2011) ...............................................7, 8, 14

No. 14-15700

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

S. ROWAN WILSON,

Plaintiff-Appellant,

v.

ERIC H. HOLDER, JR., as Attorney General of the United States; THE U.S.
BUREAU OF ALCOHOL, TOBACCO, FIREARMS and EXPLOSIVES; B. TODD
JONES, as Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and
Explosives; ARTHUR HERBERT, as Assistant Director of the U.S. Bureau of
Alcohol, Tobacco, Firearms and Explosives; and THE UNITED STATES OF
AMERICA,

Defendants-Appellees.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

———————————

BRIEF FOR APPELLEES

———————————

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331.

ER 113. The district court dismissed the case for failure to state a claim on March 12,

2014. ER 301-27. A notice of appeal was filed on April 10, 2014. ER 330. This Court

has jurisdiction pursuant to 28 U.S.C. § 1291.

1

The Gun Control Act of 1968 prohibits firearms sales to any individual the seller has "reasonable cause to believe" is an unlawful user of a controlled substance, including marijuana. In September 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), sent an open letter to federal firearms licensees informing them that possession of a state medical marijuana card gave "reasonable cause to believe" that a firearms purchaser was an unlawful user of a controlled substance. Plaintiff holds such a card and attempted to purchase a firearm from a federal firearms licensee. Based on ATF's open letter, the firearms licensee refused to sell plaintiff a firearm. The issues presented are:

1. Whether ATF's open letter violated the Administrative Procedure Act.

2. Whether the Gun Control Act's prohibition on selling firearms to unlawful users of controlled substances violates the First, Second, or Fifth Amendments of the United States Constitution.

## STATEMENT OF THE CASE

### A. Federal and State Regulation of Marijuana

Congress enacted the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, to establish a comprehensive federal system to regulate the traffic in drugs that are subject to abuse. *See* 21 U.S.C. § 801 (Congressional findings and declarations regarding controlled substances). The CSA classifies drugs and other substances that have a "potential for abuse" in five "schedules." *Id.* § 812(b)(1)-(5). Congress placed

marijuana in Schedule I when the CSA was enacted. Pub. L. No. 91-513 § 202(c) (Schedule I(c)(10)), 84 Stat. 1236, 1249; 21 U.S.C. § 812(c) (Schedule I(c)(10)). Schedule I drugs have "a high potential for abuse"; do not have a "currently accepted medical use in treatment in the United States"; and lack "accepted safety for use . . . under medical supervision." 21 U.S.C. § 812(b)(1). Because marijuana is a Schedule I drug, it cannot be prescribed for medical use, and individuals cannot use marijuana legally under federal law.

The State of Nevada also criminalizes the possession of marijuana. *See* Nev. Rev. Stat. § 453.336. In 2000, however, Nevada's Constitution was amended by initiative petition to add the following provision regarding the medical use of marijuana: "The legislature shall provide by law for . . . [t]he use by a patient, upon the advice of his physician, of a plant of the genus Cannabis for the treatment or alleviation of cancer, glaucoma, acquired immunodeficiency syndrome; severe, persistent nausea of cachexia resulting from these or other chronic or debilitating medical conditions; epilepsy and other disorders characterized by seizure; multiple sclerosis and other disorders characterized by muscular spasticity;  or other conditions approved pursuant to law for such treatment." Nev. Const. art. IV, § 38(1)(a). Pursuant to this constitutional amendment, Nevada enacted legislation in 2001 that exempts the medical use of marijuana from state prosecution in certain circumstances. *See* Nev. Rev. Stat. ch. 453A.

The Nevada law provides that "a person who holds a valid registry identification card . . . is exempt from state prosecution for . . . [a]ny . . . criminal offense in which the possession, delivery or production of marijuana . . . is an element." Nev. Rev. Stat. § 453A.200(1)(f). This exemption only applies to the extent that the holder of a registry identification card engages in "the medical use of marijuana in accordance with the provisions of this chapter as justified to mitigate the symptoms or effects of the person's chronic or debilitating medical condition" and possesses only a small amount of marijuana (currently 2.5 ounces in a 14-day period) and fewer than 12 marijuana plants. *Id.* § 453A.200(3).

The law also specifies who is eligible to receive a state-issued registry identification card, requiring applicants to provide "[v]alid, written documentation from the person's attending physician stating that . . . [t]he person has been diagnosed with a chronic or debilitating medical condition." Nev. Rev. Stat. § 453A.210(2)(a)(1). The applicant must also provide documentation from his or her physician stating that "[t]he medical use of marijuana may mitigate the symptoms or effects of that condition" and that "[t]he attending physician has explained the possible risks and benefits of the medical use of marijuana." *Id.* § 453A.210(2)(a)(2)–(3). If a cardholder is "diagnosed by the person's attending physician as no longer having a chronic or debilitating medical condition, the person . . . shall return the[] registry identification card[] to the [State] within 7 days after notification of the diagnosis." *Id.* § 453A.240.

The state-issued registry identification card is valid for one year and must be renewed annually by submitting updated written documentation from the cardholder's attending physician, including proof that the individual continues to suffer from a chronic or debilitating medical condition. Nev. Rev. Stat. §§ 453A.220(4), 453A.230. The cost to register or renew a card is currently $75. *See* Nev. Div. of Pub. & Behavioral Health, *Program Facts*, http://health.nv.gov/MedicalMarijuana/ ProgramFacts.pdf (last visited Sept. 2, 2014).

Nevada explains to registry cardholders that "[i]ssuance of a Nevada Medical Marijuana Registry card does not exempt the holder from prosecution under the state or federal laws that apply to marijuana and is not recognized by the federal government. NRS 453A is a state law; it does not address federal laws. It is recommended you discuss the limitations and liabilities that are associated with existing federal laws with your personal attorney." *Program Facts*. A section of the Nevada Health Division's website answering frequently asked questions also informs the public that cardholders cannot fill a prescription for medical marijuana at a pharmacy because "[t]he federal government classifies marijuana as a Schedule I drug, which means licensed medical practitioners cannot prescribe it." Nev. Div. of Pub. & Behavioral Health, *Medical Marijuana, Frequently Asked Questions*, No. 8, http://health.nv.gov/MedicalMarijuana_FAQ.htm  (last visited Sept. 2, 2014).

**B.     The Gun Control Act**

The Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, aims "to keep firearms out of the hands of presumptively risky people," including felons, the mentally ill, fugitives from justice, and unlawful drug users. *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 112 n.6 (1983).

As relevant here, 18 U.S.C. § 922(g)(3) provides that it is unlawful for any person who is "an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))" to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* § 922(g). To help effectuate this firearm exclusion, Congress also made it "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance." *Id.* § 922(d)(3).

ATF has promulgated a regulation concerning sales to unlawful users of controlled substances. The regulation defines "[u]nlawful user of or addicted to any controlled substance" as "[a] person who uses a controlled substance and has lost the power of self-control with reference to the use of [the] controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician." 27 C.F.R. § 478.11. The regulation explains that

"[s]uch use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." *Ibid.* And the regulation further provides that "[a] person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm." *Ibid.* The regulation also explains that "[a]n inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time." *Ibid.*

On September 21, 2011, ATF issued an "Open Letter to All Federal Firearms Licensees." *See* https://www.atf.gov/files/press/releases/2011/09/092611-atf-open-letter-to-all-ffls-marijuana-for-medicinal-purposes.pdf (ATF Open Letter). The open letter's primary objective was to address the large number of inquiries ATF had received "regarding the use of marijuana for medicinal purposes and its applicability to Federal firearms laws." *Ibid.* (footnote omitted). The letter states that its purpose is "to provide guidance on the issue and to assist [dealers] in complying with Federal firearms laws and regulations" and to explain that because *any* marijuana use is illegal under federal law, users of marijuana are "unlawful users" under the Gun Control Act *Ibid.* The open letter thus affirms that "any person who uses or is addicted to marijuana, regardless of whether his or her State has passed legislation authorizing marijuana use for medicinal purposes, is an unlawful user of or addicted to a

controlled substance, and is prohibited by Federal law from possessing firearms or ammunition." *Ibid.*

Second, the letter explains that 18 U.S.C. § 922(d)(3) makes it unlawful for any person to sell a firearm to a person knowing or "having reasonable cause to believe that such person is an unlawful user" of a controlled substance like marijuana and that 27 C.F.R. § 478.11 provides that "an inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time." ATF Open Letter (emphasis omitted). Thus, if a dealer is "aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then [the dealer] ha[s] 'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and "may not transfer firearms or ammunition to the person." *Ibid.*

## C.    Factual Background and Prior Proceedings

1. Plaintiff experiences dysmenorrhea, which she describes as "often debilitating, even leading to further painful side effects, such as severe nausea and cachexia." ER 115, ¶ 35. Plaintiff "obtained a doctor's recommendation for the use of medical marijuana," ER 116, ¶ 40, and, in October 2010, applied for a medical marijuana registry card from the State of Nevada. The card was issued in May 2011. *Id.* ¶ 41.

On October 4, 2011, plaintiff visited Custom Firearms & Gunsmithing, a federally licensed gun store in Moundhouse, Nevada, to purchase a handgun. In filling

out the required ATF Form 4473, plaintiff left question 11(e), concerning drug use,[1]

blank. ER 117, ¶ 47. Plaintiff alleges that her "natural inclination" was to answer "No"

to question 11(e), but that the store's proprietor informed her that ATF had

"promulgated a policy whereby any person holding a medical marijuana registry card is

automatically considered an 'unlawful user of, or addicted to marijuana.'" *Id.* ¶ 46. The

store owner was personally aware that plaintiff possessed a state-issued medical

marijuana registry card, and he declined to sell plaintiff a firearm. *Id.* ¶ 48.

2. Fourteen days after the failed gun purchase, plaintiff filed suit against the

federal government in district court. Plaintiff alleged that the relevant provisions of

the Gun Control Act, the relevant ATF regulation, and the ATF open letter violate

her right to keep and bear arms under the Second Amendment, her due process and

equal protection rights under the Fifth Amendment, and her free speech rights under

the First Amendment. ER 117-124, ¶¶ 50-97. Plaintiff sought a declaration "that 18

U.S.C. §§ 922(g)(3) and 922(d)(3) and all derivative regulations, such as 27 C.F.R.

§ 478.11," violate the Constitution, as well as an injunction preventing the

enforcement of these laws and regulations. ER 125, Prayer for Relief, ¶¶ 1–5. She also

sought compensatory and punitive damages. *Id.* ¶ 6.

3. The district court granted the government's motion to dismiss, or, in the

---

[1] Question 11(e) on ATF Form 4473 asks, "Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance?" *See* ER 116-17, ¶ 45.

alternative, for summary judgment. ER 301-27. The court held that plaintiff had the

requisite standing to bring suit and that the suit was not moot. ER 305-11. Although it

was not clear from the record whether plaintiff maintained a current medical

marijuana registry card, the court concluded that the claim fell within the mootness

exception for claims "capable of repetition yet evading review." ER 310 (quoting *S.*

*Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514-15 (1911)).

Turning to the merits, the district court held that this Court's decision in *United*

*States v. Dugan*, 657 F.3d 998, 999-1000 (9th Cir. 2011), which rejected a Second

Amendment challenge to the ban on firearm possession by unlawful drug users, is

controlling here and that § 922(g)(3) and § 922(d)(3) are therefore constitutional. ER

313-15. The court also rejected any Second Amendment challenge to 27 C.F.R.

§ 478.11, which goes no further than the statute. ER 316.

The court then considered plaintiff's Administrative Procedure Act (APA)

challenge to ATF's open letter. The court explained that plaintiff had not properly

pleaded a cause of action under the APA, but concluded that, in any event, the open

letter was "textbook interpretive" and therefore "notice and comment would not be

required." ER 317-18 & n.4. The court explained that "[t]he Open Letter simply

interprets existing law and provides guidance to the [federal firearms licensees] on

how the laws, under which the [federal firearms licensees] operate, apply to the new

circumstance of states exempting from prosecution the use of marijuana for medical

purposes." ER 318 n.4. The court further noted that "because the use of marijuana is

illegal under federal law, regardless of the user's purpose, the Open Letter cannot be said to change existing law." *Ibid.*

The court also rejected plaintiff's remaining constitutional arguments. With respect to the First Amendment claim, the court held that the letter withstood intermediate scrutiny under *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968); *see* ER 320-21. The court explained that any restriction on plaintiff's First Amendment interests was no greater than necessary to further the government's important interest in protecting public safety. ER 321. The court also rejected plaintiff's substantive due process claim, holding that plaintiff had no fundamental right to use medical marijuana. ER 322-23 (citing *Raich v. Gonzales*, 500 F.3d 850, 861-66 (9th Cir. 2007)). And the court determined that plaintiff's procedural due process claim failed for failure to identify the infringement of any protected property or liberty interest. ER 324. The court also rejected plaintiff's equal protection claim, stating that "[p]laintiff's argument simply acknowledges that marijuana users in states that do not require registry cards may more easily evade and violate federal law." ER 325.

## SUMMARY OF ARGUMENT

Plaintiff's suit rests on a fundamental misunderstanding of ATF's open letter and the regulatory scheme established under the Gun Control Act. The statute prohibits unlawful users of controlled substances, including marijuana, from possessing firearms. It likewise prohibits firearms dealers from selling firearms to persons they know, or have reasonable cause to believe, are using controlled

substances. Thus, individuals who use marijuana on a regular basis are unlawful users of a controlled substance under the Gun Control Act and may not possess a firearm, regardless of whether those individuals use marijuana for medical reasons and whether a particular State exempts such use from state prosecution.

ATF's open letter clarified the operation of the Gun Control Act in States with medical marijuana laws and also explained that where a State has issued a medical marijuana registry card to an individual, a firearms dealer aware of the registry card has reasonable cause to believe that such an individual is a user of marijuana. The wholly reasonable inference that a person who has undergone the arduous process of obtaining state approval for marijuana use will actually use marijuana creates no new law and thus ATF's interpretation was not required to be promulgated through notice-and-comment rulemaking.

Plaintiff's constitutional arguments also fail. This Court has sustained the constitutionality of the Gun Control Act's prohibition on firearm possession by drug users. *United States v. Dugan*, 657 F.3d 998, 999-1000 (9th Cir. 2011). And even if this Court were to consider the issue anew, at most intermediate scrutiny would apply. *See United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013), *petition for cert. pending* (filed June 26, 2014). Plaintiff does not question the government's important interest in preventing gun injuries, and the prohibition on drug users possessing firearms is reasonably tied to that objective. For similar reasons, the district court correctly rejected plaintiff's First Amendment challenges. And plaintiff's other constitutional

challenges are equally unavailing: plaintiff's due process claim is simply a repackaging of her challenge to ATF's open letter, and plaintiff has failed to make out the elements of an equal protection claim, which, in any event, would be properly rejected under rational basis review.

## STANDARD OF REVIEW

The grant of a motion to dismiss is reviewed de novo. *Green v. United States*, 630 F.3d 1245, 1248 (9th Cir. 2011).

## ARGUMENT

## I. The Open Letter Interpreted the Gun Control Act Provision That Prohibits Sales Where a Dealer Has "Reasonable Cause To Believe" an Individual Is Using a Controlled Substance.

Plaintiff's brief displays a general misunderstanding of the ATF open letter and the relevant statutory scheme, and this error infects plaintiff's APA and constitutional arguments. The open letter was an interpretation of the statutory language of the Gun Control Act. The open letter did not create a new class of unlawful drug users, as plaintiff asserts, and ATF was therefore not required to promulgate the open letter through notice-and-comment rulemaking.[2]

---

[2] There is a question whether this case is moot, as it is not clear from the record whether plaintiff currently possesses a valid registry card. The complaint concerns only the registry card issued in May 2011, which expired in 2012. ER 116, ¶ 41. Plaintiff states on appeal that she has "routinely renewed her Registry Card in accordance with Nevada law." Pl. Br. 8. If that representation is accurate, it would appear that this case is likely not moot, although plaintiff has not stated definitively that she currently holds a registry card. If, however, plaintiff has failed to follow the renewal procedures in Nevada for her registry card, we do not believe the exception

A. As explained, the Gun Control Act makes it "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance." 18 U.S.C. § 922(d)(3). Marijuana is a controlled substance under the CSA, and regardless of whether a state implements a program to exempt medical marijuana use (or any marijuana use) from state prosecution, marijuana use is still illegal under federal law. Despite the clear language of § 922(d)(3), some federal firearms licensees were not sure how the statute interacted with state medical marijuana laws. The primary purpose of the open letter was thus to clarify that any user of marijuana in the United States is an "unlawful user" of a controlled substance and is prohibited from possessing or purchasing a gun under the Gun Control Act.

The open letter also addressed the Gun Control Act's prohibition on firearms sales where the firearms dealer has "reasonable cause to believe" that a purchaser is an unlawful drug user. *See* ATF Open Letter, *available at* https://www.atf.gov/files/press/releases/2011/09/092611-atf-open-letter-to-all-ffls-marijuana-for-medicinal-purposes.pdf. Interpreting the phrase "reasonable cause to believe," ATF explained that knowledge of the possession of a state medical marijuana registry card would

---

for cases capable of repetition but evading review applies. *See* ER 310 (citing *Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975)). If the plaintiff fails to follow Nevada's renewal procedures and the card lapses for a significant period of time, any "evaded review" would be properly attributed to plaintiff's own conduct (her failure to maintain a registry card) rather than to the limited time period in which validly issued cards remain in effect.

provide a firearms dealer with reasonable cause to believe that the cardholder was a user of a controlled substance and was therefore prohibited from purchasing a firearm under the Gun Control Act.

B. As the district court explained, the open letter was "textbook" interpretive because it did not go beyond the language of the statute and therefore did not require notice-and-comment rulemaking. *See* 5 U.S.C. § 553(b)(3)(A); ER 318 n.4. Moreover, ATF's interpretation of the phrase "reasonable cause to believe" to include the fact that a person holds a medical marijuana registry card is backed by common sense. The holder of such a card must undergo a medical examination, be determined to have a chronic or debilitating condition that the doctor believes marijuana will improve, submit detailed paperwork, undergo a criminal background check, and pay Nevada $75. ATF did not break any new legal ground in explaining that a firearms dealer has reasonable cause to believe that a person who has jumped through these multiple hoops to obtain a registry card—a process that plaintiff characterizes as "impossibly difficult," Pl. Br. 24—is using marijuana. Moreover, the specifics of the Nevada law underscore that the State intends the card to be held by marijuana users. If a cardholder no longer suffers from the chronic or debilitating condition for which she obtained the card, she must return it to the State within seven days. Nev. Rev. Stat. § 453A.240.

That the open letter was not a "legislative" act is especially clear given that the letter says nothing about 18 U.S.C. § 922(g)(3), which prohibits users of controlled

substances from possessing firearms. Thus, even if this Court were to invalidate the open letter, plaintiff would still be barred from possessing a firearm if she uses marijuana. *See* Pl. Br. 2-3. ATF's open letter did not alter plaintiff's ability to possess a firearm.

Plaintiff's amended complaint and opening brief assert that plaintiff does not believe herself to be an "unlawful user" of marijuana. *See, e.g.,* Pl. Br. 9. For the reasons explained, this assertion is incorrect as a matter of federal law. Notably, plaintiff falls short of asserting that she does not actually use marijuana, suggesting only that there is no "evidence" that she has used marijuana. *Ibid.* Such an assertion would be difficult to reconcile with the lengths to which plaintiff has gone to obtain the medical marijuana registry card, including undergoing a medical exam to determine her eligibility for use, and does nothing to undermine the reasonableness of the inference that she in fact uses marijuana. Such a failure of pleading also undermines plaintiff's attempt to present this as an as-applied challenge on behalf of those medical marijuana registry cardholders who do not use marijuana.

In any event, if plaintiff does not in fact use marijuana, she is not prohibited from possessing a firearm. *See* 18 U.S.C. § 922(g)(3). Nor would a federal firearms licensee be prohibited from selling plaintiff a firearm if the licensee did not know she held a medical marijuana registry card or if plaintiff presented concrete evidence sufficient to convince the licensee that despite holding the card, she did so only for political or expressive reasons and did not use marijuana.

16

C. The open letter also fully comports with 27 C.F.R. § 478.11, which defines "unlawful user" as "any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician." *See* Pl. Br. 15. Contrary to plaintiff's contention, a licensed physician may not prescribe marijuana, and Nevada's medical marijuana registry card does not purport to authorize a physician to do so. A physician's determination that an applicant has the requisite medical condition to receive a registry card under state law is not a "prescription for marijuana." Indeed, because it is a Schedule I controlled substance, marijuana may not lawfully be prescribed.

That the examples set forth in 27 C.F.R. § 478.11 as providing "reasonable cause to believe" a person is an unlawful drug user involve a drug conviction and a drug test does not change the analysis. Pl. Br. 16. The holding of a medical marijuana registry card is equally a fact that points to one's status as a user of marijuana. A plaintiff who failed a drug test could argue that the test results were wrong or contaminated, but the fact of a failed drug test would still provide "reasonable cause to believe" that the person was an unlawful drug user, just as the holding of a medical marijuana registry card does.

D. If this Court disagrees with the government's analysis and concludes that ATF's open letter goes beyond the statute and regulation to substantively alter the law, this Court should hold only that the letter is vacated under the APA and allow ATF to remedy any perceived deficiencies. Despite plaintiff's invitation, the Court

need not weigh in on plaintiff's constitutional challenges to the open letter. *See Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999) ("It is, however, an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground.").

## II.    The Prohibition on Firearm Sales to Unlawful Users of Controlled Substances Does Not Violate the Second Amendment.

### A.    This Court has held that § 922(g)(3) is constitutional, and the same analysis applies to the corresponding prohibition on firearm sales.

As the district court correctly recognized, the Second Amendment issue in this case is controlled by *United States v. Dugan*, 657 F.3d 998, 999-1000 (9th Cir. 2011), which rejected a constitutional challenge to the ban on firearm possession by unlawful drug users. In so holding, this Court explained that the individual right to bear arms in the Second Amendment "is not unlimited." *Id.* at 999 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)). This Court explained that *Heller* did not "cast doubt" on longstanding prohibitions on possession by felons and the mentally ill. *Ibid.* This Court recognized that *Heller* likewise did not cast doubt on the constitutionality of the prohibition on possession by unlawful drug users, and that two other courts of appeals had reached the same conclusion. *Ibid.* (citing *United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010) (per curiam); *United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1027 (2011)).

This Court explained that it saw "the same amount of danger in allowing habitual drug users to traffic in firearms as we see in allowing felons and mentally ill people to do so. Habitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances." *Dugan*, 657 F.3d at 999. The Court noted that "an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse" and thus "[t]he restriction in § 922(g)(3) is far less onerous than those affecting felons and the mentally ill." *Ibid.* (citing *Yancey*, 621 F.3d at 686–87).

Plaintiff's attempts to distinguish *Dugan* fail. First, the fact that *Dugan* was decided before the ATF open letter was issued makes no difference to the constitutionality of § 922(g)(3) and § 922(d)(3). Pl. Br 39. The open letter cannot alter the constitutionality of the underlying prohibitions. As explained above (at 17-18), if the open letter extends the statute beyond its proper scope (a contention the district court correctly found to be without basis), the remedy would be to vacate the open letter, not to hold that a provision of the Gun Control Act is unconstitutional.

Second, contrary to plaintiff's assertion, the facts of *Dugan* are quite similar to the facts here. The appellate briefs in that case made clear that Dugan also argued that because he was authorized under state law to use medical marijuana, the statute should not apply to him. *See* Br. for Appellant at 59, *Dugan*, 657 F.3d 998, No. 08-10579 (9th Cir. Sept. 22, 2010) ("Here, Mr. Dugan was . . . licensed to grow and use medical marijuana.").

Finally, there is no reason to believe that the reasoning underlying this Court's holding that § 922(g)(3) is constitutional would not apply to § 922(d)(3), the ban on firearms sales. Pl. Br. 39. If it does not violate the Second Amendment to restrict ownership of firearms by unlawful drug users, it likewise cannot violate the Second Amendment to have a corresponding ban on sales to such persons. Moreover, it is not clear that the Second Amendment confers a right to sell firearms. As the one court of appeals to address § 922(d)(3) explained: "[A]lthough the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (unpublished). It is also unclear what plaintiff would gain by this Court holding that § 922(d)(3) is unconstitutional, as she would still be barred from possessing a firearm under § 922(g)(3).

**B.     Even assuming *Dugan* does not control this case, at most intermediate scrutiny applies, and § 922(d)(3) easily survives such scrutiny.**

As explained, plaintiff's Second Amendment challenge is controlled by this Court's decision in *Dugan*. But even assuming an independent analysis of § 922(d)(3) were warranted, plaintiff's challenge fails.

1. Plaintiff is incorrect that strict scrutiny applies to her Second Amendment challenge. *See* Pl. Br. 42-47. This Court has adopted a two-step approach to analyzing Second Amendment challenges to federal statutes and regulations. *See United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), *petition for cert. pending* (filed June 26, 2014).

Under that approach, the Court first "asks whether the challenged law burdens conduct protected by the Second Amendment"; if so, the Court determines the "appropriate level of scrutiny." *Id.* at 1136.

In *Chovan*, this Court considered a constitutional challenge to the prohibition on domestic violence misdemeanants possessing firearms. At step one, the Court held that the government had not proved "that domestic violence misdemeanants in particular have historically been restricted from bearing arms." 735 F.3d at 1137 (emphasis omitted). Moving to the second step, the Court concluded that intermediate scrutiny was appropriate because regulations of "firearm possession for individuals with criminal convictions" do not implicate the core Second Amendment "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 1138 (quoting *Heller*, 554 U.S. at 635).

Plaintiff's Second Amendment claim fails because unlawful drug users, like domestic violence misdemeanants, are not within the class of law-abiding, responsible citizens historically protected by the Second Amendment. *See Dugan,* 657 F.3d at 999-1000. Although *Heller* did not list unlawful drug users when it discussed the longstanding firearms prohibitions on which it did not cast doubt, the Court expressly stated that its "list does not purport to be exhaustive." *Heller*, 554 U.S. at 627 n.26. And it has long been understood that the government can keep guns out of the hands of those more likely to be dangerous or irresponsible. *See, e.g., Nat'l Rifle Ass'n of Am. v. ATF*, 700 F.3d 185, 205 (5th Cir. 2012) ("Like the federal bans targeting felons and

the mentally ill, the federal laws targeting minors under 21 are an outgrowth of an American tradition of regulating certain groups' access to arms for the sake of public safety."), *cert. denied*, 134 S. Ct. 1364 (2014); *see also State v. Shelby*, 2 S.W. 468, 468–69 (Mo. 1886) (applying state ban on firearm possession by intoxicated persons)*; In re Rogers,* 66 P.2d 1237 (Cal. Dist. Ct. App. 1937) (applying state ban on firearm possession by drug addicts). Exclusions from the right to bear arms "need not mirror limits that were on the books in 1791." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc); *see also id.* at 640 ("[*Heller*] tell[s] us that statutory prohibitions on the possession of weapons by some persons are proper—and . . . [t]hat *some* categorical limits are proper is part of the original meaning, leaving to the people's elected representatives the filling in of details.").

In any event, it is plain that, under step two of the analysis, at most intermediate scrutiny applies. Plaintiff acts in violation of federal law when using marijuana, whether or not state law exempts that conduct. Thus, plaintiff here is not a law-abiding citizen, and a restriction on her gun ownership does not implicate the "core Second Amendment right." *See Chovan,* 735 F.3d at 1138. Strict scrutiny is thus inappropriate here. *Id.* at 1138 (applying intermediate scrutiny).

Plaintiff's arguments in favor of strict scrutiny are unavailing. Plaintiff urges that because unlawful drug users are prohibited from possessing and purchasing firearms entirely, strict scrutiny must apply. But this Court has already rejected that line of reasoning in *Chovan*, and should do so here as well.

Moreover, the other courts of appeals that have addressed the standard-of-review issue have uniformly concluded that this type of regulation is, at most, subject to intermediate scrutiny. The Fourth Circuit, for example, has applied intermediate scrutiny to § 922(g)(3). *United States v. Carter*, 669 F.3d 411, 416-17 (4th Cir. 2012) (*Carter I*); *see also United States v. Carter*, 750 F.3d 462 (4th Cir. 2014), (*Carter II*) (holding statute constitutional), *petition for cert. pending* (filed July 29, 2014). The court explained that "[w]hile we have noted that the application of strict scrutiny is important to protect the core right of self-defense identified in *Heller* . . . that core right is only enjoyed, as *Heller* made clear, by 'law-abiding, responsible citizens,'" which unlawful drug users "cannot claim to be." *Carter I*, 669 F.3d at 416 (citation omitted). The court noted that it was "join[ing] the other courts of appeals that have rejected the application of strict scrutiny in reviewing the enforcement of § 922(g)(3)." *Id.* at 417; *see also Nat'l Rifle Ass'n of Am.,* 700 F.3d at 205 (applying intermediate scrutiny to challenge to age restrictions on firearm sales); *Yancey*, 621 F.3d at 683 (applying intermediate scrutiny to uphold § 922(g)(3)); *United States v. Marzzarella*, 614 F.3d 85, 96-97 (3d Cir. 2010) (applying intermediate scrutiny to § 922(k)); *United States v. Reese,* 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to § 922(g)(8)).

2. There can be no doubt that § 922(g)(3), the prohibition on firearm possession, and § 922(d)(3), the corresponding prohibition on firearm sales, satisfy intermediate scrutiny. Under intermediate scrutiny, the law will be upheld where "(1) the government's stated objective [is] significant, substantial, or important; and

(2) a reasonable fit [exists] between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139.

The Fourth Circuit recently upheld § 922(g)(3) under intermediate scrutiny. In *Carter I*, the court concluded that the government had presented an important government interest in protecting the community from gun crime. In *Carter II*, the court had "little trouble concluding that the studies presented to the district court by both the government and Carter indicate a strong link between drug use and violence." 750 F.3d at 467. The court went on to explain that "[w]hile the empirical data alone are sufficient to justify the constitutionality of § 922(g)(3), we find that common sense provides further support," noting that drug users are more likely to have run-ins with law enforcement officers, participate in a black market that leads to violence, and even with respect to marijuana users claiming benign use, suffer from "impair[ed] mental function [that might] subject others (and themselves) to irrational and unpredictable behavior." *Id.* at 469 (internal quotation marks omitted).

Plaintiff here does not contest the important government interest at stake. Pl. Br. 47. Instead plaintiff argues that that the "extraordinary breadth and scope" of the regulation and the open letter means that there is no fit between the statute and regulation and the government's interest. Pl. Br. 48. Plaintiff ignores, however, that an exact fit between the government's interest and the means to obtain it is not necessary under intermediate scrutiny. In order to advance its compelling interests in combating crime and protecting public safety, Congress may need to make predictive judgments

about the risk of dangerous behavior. To achieve this purpose, Congress has chosen a categorical firearm ban for unlawful users of drugs without exceptions for those controlled substances a State chooses to exempt from *State* prosecution.

Such judgments on the part of Congress are entitled to substantial deference by the courts. And Congress has evidenced a particular concern with marijuana use: "[w]hile the statute swept in users of several different categories of drugs, marijuana was the only drug specifically listed by name." *Carter I*, 669 F.3d at 417 (citing 82 Stat. 1213, 1220-21). Supporting Congress's legislative judgments in this area, Nevada and many other States have laws similar to § 922(g)(3). *See* Nev. Rev. Stat. § 202.360(1)(c). This state legislation "demonstrate[s] that Congress was not alone in concluding that habitual drug abusers are unfit to possess firearms." *Yancey*, 621 F.3d at 684.[3]

In addition, the prohibitions at issue here apply only to those who are currently unlawful users. *See* 27 C.F.R. § 478.11 (defining "unlawful user" so that any unlawful use must have "occurred recently enough to indicate that the individual is actively

---

[3] *See* Ala. Code § 13A-11-72(b); Ark. Code Ann. § 5-73-309(7), (8); Cal. Penal Code § 12021(a)(1); Colo. Rev. Stat. § 18-12-203(1)(e), (f); Del. Code Ann. tit. 11, § 1448(a)(3); D.C. Code § 22-4503(a)(4); Fla. Stat. § 790.25(2)(b)(1); Ga. Code Ann. § 16-11-129(b)(2)(F), (I), (J); Haw. Rev. Stat. § 134-7(c)(1); Idaho Code Ann. § 18-3302(1)(e); 720 Ill. Comp. Stat. 5/24-3.1(a)(3); Ind. Code § 35-47-1-7(5); Kan. Stat. Ann. § 21-4204(a)(1); Ky. Rev. Stat. Ann. § 237.110(4)(d), (e); Md. Code Ann., Pub. Safety, 5-133(b)(4), (5); Mass. Gen. Laws ch. 140, § 129B(1)(iv); Minn. Stat. § 624.713(1)(10)(iii); Mo. Rev. Stat. § 571.070(1)(1); Nev. Rev. Stat. § 202.360(1)(c); N.H. Rev. Stat. Ann. § 159:3(b)(3); N.J. Stat. Ann. § 2C:58-3(c)(2); N.C. Gen. Stat. § 14-404(c)(3); Ohio Rev. Code Ann. § 2923.13(A)(4); R.I. Gen. Laws § 11-47-6; S.C. Code Ann. § 16-23-30(A)(1); S.D. Codified Laws § 23-7-7.1(3); W. Va. Code § 61-7-7(a)(2), (3).

engaged in such conduct").[4] Through this feature, "Congress tailored the prohibition to cover only the time period during which it deemed such persons to be dangerous." *Carter I*, 669 F.3d at 419. Thus "a drug user who places a high value on the right to bear arms [may] regain that right by parting ways with illicit drug use." *Ibid.* Nothing in the Second Amendment "require[s] Congress to allow [the unlawful user] to simultaneously choose both gun possession and drug abuse." *Yancey*, 621 F.3d at 687.

That plaintiff has registered to use marijuana for medical purposes, as opposed to recreational purposes, does nothing to change the result. The Supreme Court recognized in *Heller* that "some categorical disqualifications are permissible" and that "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Skoien*, 614 F.3d at 641. Moreover, plaintiff's argument that she is not a violent criminal ignores the other concerns at stake in reducing gun violence. *See* Pl. Br. 25, 48. Marijuana is a mind-altering substance, and even someone with the best intentions may, while under the influence of mind-altering drugs, use a firearm or allow it to be used in such a way that leads to accidental injury or death.

---

[4] We do not understand plaintiff to argue that 27 C.F.R. § 478.11 is independently unconstitutional. In any event, the regulation properly interprets the statute and is constitutional for the reasons discussed above.

III.  **Plaintiff's Remaining Constitutional Claims Are Without Merit.**

A.  **Plaintiff's First Amendment rights have not been violated.**

Plaintiff urges that the open letter violates her First Amendment rights because it explains that her medical marijuana registry card gives a dealer "reasonable cause to believe" that she is an unlawful user of marijuana under federal law. As explained above, if plaintiff uses marijuana she is in fact barred by the Gun Control Act from possessing a firearm. If she does not use marijuana she is not barred from possessing a firearm under § 922(g)(3). Her First Amendment claims are thus based on her misunderstanding of the interaction of the open letter and the Gun Control Act.

Plaintiff is in any event incorrect that strict scrutiny would apply to her First Amendment challenge. It is only if a "regulation is related to the suppression of free expression" and "proscribe[s] particular conduct *because* it has expressive elements" that strict scrutiny applies. *Texas v. Johnson*, 491 U.S. 397, 403, 406 (1989). The statute, regulation, and open letter are all aimed at reducing the threat caused by gun violence, not at suppressing advocacy of legalization of medical marijuana or any other form of speech. Accordingly, the test set forth in *United States v. O'Brien*, 391 U.S. 367, 377 (1968), applies.

"[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376. The focus is on whether (1) the government regulation "furthers an

important or substantial governmental interest"; (2) "the governmental interest is unrelated to the suppression of free expression"; and (3) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377.

All of these factors are met here. The United States has the power to regulate the possession and sale of firearms, and the provisions further the compelling government interest in protecting public safety and preventing violent crime. As explained, that interest is unrelated to suppressing speech and to the extent plaintiffs' First Amendment freedoms have been restricted, any restriction would be outweighed by the government's interest in keeping firearms out of the hands of unlawful drug users.

Plaintiff's contention that strict scrutiny applies is without merit. The prohibition of firearm sales to unlawful users of controlled substances is not directed at speech; nor is the open letter's statement that a medical marijuana registry card provides reasonable cause to believe that a person is an unlawful user of marijuana. Plaintiff's argument for strict scrutiny is premised on the contention that because the registry card is an expressive act, any government action that affects that expressive act requires strict scrutiny. Pl. Br. 28. But by this logic, *all* restrictions that affect expressive conduct would be subject to strict scrutiny, and the *O'Brien* test would have no application. Nor do plaintiff's conspiracy theories advance her argument. Pl. Br. 29. As explained above, marijuana use is illegal under federal law. The fact that federal

authorities enforce that prohibition is not evidence of a conspiracy to inhibit the expression of support for amendments to the laws governing marijuana. *Cf. United States v. May*, 538 F. App'x 465 (5th Cir. 2013) (unpublished) ("But aside from May's *ipse dixit*, there is nothing in the record to suggest that the Government targeted May for any reason other than his illegal conduct."), *cert. denied,* 134 S. Ct. 804 (2013).

Plaintiff's reliance on *Texas v. Johnson* is wholly misplaced. 491 U.S. at 407. The Supreme Court in *Johnson* held that it was implausible that the respondent's conviction for flag burning was unrelated to the suppression of expression. *Id.* at 420 ("Johnson was convicted for engaging in expressive conduct."). Here, the government is not enforcing the laws prohibiting drug users from possessing and obtaining firearms in order to restrain expression, nor would any conviction under the Gun Control Act be based on the holding of a registry card if the person did not use marijuana. The Gun Control Act prohibits firearms sales to unlawful users of controlled substances. This law does not target expression, but actions.

Plaintiff also misapplies the *O'Brien* test. Plaintiff urges that because Congress has considered bills to exempt state medical marijuana programs from enforcement, the ban on firearm possession for users of medical marijuana does not further a substantial government interest. Pl. Br. 35. The CSA has not, however, been amended, nor has defunding legislation been enacted. And, in any event, any defunding of enforcement actions would not be the equivalent of federal approval or the rescheduling of marijuana under the CSA.

Plaintiff's tailoring arguments similarly fail to advance her claim. Plaintiff misunderstands the open letter, which simply provided an example of "reasonable cause to believe" that someone is an unlawful user. If a person truly did not use marijuana and had the card only for expressive purposes—despite the "impossibly difficult" process to obtain one, which makes the existence of such a person highly unlikely—that person would not be prohibited from possessing firearms and a federal firearms licensee would not be liable for selling to the individual. *See supra* p. 16. It is the use of marijuana, not the holding of the registry card, that restricts plaintiff's firearm rights.

**B.      Plaintiff's Fifth Amendment challenges lack merit.**

Plaintiff contends that the government has violated the Fifth Amendment by failing to provide procedural due process and equal protection of the laws. Pl. Br. 20-25, 50-54. Those arguments lack merit.

1. Plaintiff's due process claim is simply a repackaging of her challenge to the open letter. *Cf. Orin v. Barclay,* 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) (concluding that the equal protection claim in that case was "no more than a First Amendment claim dressed in equal protection clothing" and was therefore "subsumed by, and co-extensive with" the former). Plaintiff does not dispute that she holds (or held, *see supra* p. 13 note 2) a medical marijuana registry card. Nor does she allege that more process is required to demonstrate that fact. Instead she argues that the ATF should not have stated that possession of a medical marijuana registry card was reasonable cause to

believe that a person was an unlawful user of marijuana. For the reasons described above, that was a wholly reasonable analysis and her contrary position hinges on a misunderstanding of "unlawful user." *See supra* p. 16. Every registry cardholder who uses marijuana does so in violation of federal law; these card holders may be acting consistently with state law, but for purposes of federal law they are not "law abiding," a fact that Nevada conveys directly to cardholders through its website. Pl. Br. 24-25. Insofar as plaintiff believes that Congress's decision to prohibit firearm sales to unlawful users of controlled substances is unconstitutional, that is properly presented as a Second Amendment challenge, which lacks merit for the reasons discussed above.

Moreover, plaintiff overlooks that a person prosecuted under § 922(g)(3), which criminalizes the possession of a firearm by an unlawful drug user, would receive the usual constitutional protections provided to those accused of a crime. The government would be required to prove that the person used marijuana and could not rely exclusively on a medical marijuana card. The open letter says nothing to the contrary. Pl. Br. 40.

2. Plaintiff's equal protection claim is similarly without merit. Plaintiff urges that she is similarly situated to medical marijuana users and advocates in other states who need not obtain a registry card to use medical marijuana. She also urges that she is being treated differently from individuals who choose not to use medical marijuana. Both claims fail.

As for the latter claim, plaintiff is not similarly situated to individuals who

choose not to use medical marijuana and therefore are not unlawful users of a controlled substance. As for the former claim, the district court correctly explained that the law is not applied in a discriminatory manner. ER 325. The law prohibits firearms sales to any individual a seller has reasonable cause to believe is an unlawful user of a controlled substance. That there are different bases for that belief in different locations does not amount to a discriminatory application of the law, even if some individuals in states outside of Nevada are able—through deceit or fraud—to avoid prosecution or obtain a firearm.

Moreover, even assuming the existence of an equal protection claim, plaintiff is wrong that heightened scrutiny would apply in this case. "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). There are no suspect classes involved and, as this Court has explained, where a law does not violate the Second Amendment (and § 922(d)(3) and 27 C.F.R. § 478.11 do not, *see supra* p. 18-26 and note 4), there is no interference with the exercise of a fundamental right. *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (en banc), *cert. denied,* 133 S. Ct. 840 (2013); *see also Chovan,* 735 F.3d at 1132-33 (applying rational basis review to equal protection claim). Plaintiff here cannot meet her burden of showing that the belief that those holding a medical marijuana registry card were more likely to use marijuana "could not reasonably be conceived to be true by the

governmental decisionmaker." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

STUART F. DELERY
  *Acting Assistant Attorney General*

DANIEL G. BOGDEN
  *United States Attorney*

MICHAEL S. RAAB
  (202) 514-4053
  s/ ABBY C. WRIGHT
ABBY C. WRIGHT
  (202) 514-1500
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

SEPTEMBER 2014

## STATEMENT OF RELATED CASES

Counsel for appellees are not aware of any related cases as defined in Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with the requirements of Fed. R. App.

P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a

proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed.

R. App. P. 32(a)(7)(B) because it contains 8,022 words excluding the parts of the brief

exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.


s/*Abby C. Wright*
ABBY C. WRIGHT
Counsel for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2014, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system.

The plaintiff in this case is a registered CM/ECF user.


    s/*Abby C. Wright*
ABBY C. WRIGHT
Counsel for Appellees