CASE NO. 14-15700

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

S. ROWAN WILSON,

Plaintiff-Appellant,

v.

ERIC HOLDER, as Attorney General of the United States; THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; B. TODD JONES, as Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; ARTHUR HERBERT, as Assistant Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; and THE UNITED STATES OF AMERICA,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT,
DISTRICT COURT OF NEVADA

**REPLY BRIEF OF PLAINTIFF S. ROWAN WILSON**

Rainey Legal Group PLLC
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone: +1.702.425.5100
Facsimile: +1.888.867.5734
Attorneys for Plaintiff/Appellant

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

LEGAL ARGUMENT ..........................................................................................2

    **I.**    The Open Letter Did Not Merely Interpret the Gun Control Act But Instead Created New Legislation in Violation of the APA.......2

    **II.**    The ATF's Prohibition of Firearms Sales to Registry Cardholders Violates the Second Amendment Because Prohibiting Firearm Sales to Registry Cardholders Bears No Relation to Reducing Gun Violence. ...............................................3

        **A.** Because Registry Cardholders are Not Analogous to Convicted Drug Users or Violent Convicts, the Categorical Restriction on All Firearms Sales to Registry Cardholders, Promulgated through the Open Letter and §§ 922(d)(3) and (g)(3), Violates Plaintiff's Core Second Amendment Right to Bear Arms .........................................4

        **B.** The Court Should Apply Strict Scrutiny here Because the Open Letter and §§ 922(d)(3) and (g)(3) Preclude Law-Abiding and Responsible Citizens from Possessing or Purchasing Firearms, Solely Due to their Symbolical Choice to Obtain a Registry Card. .......................................9

        **C.** The Court Should Strike Down §§ 922(d)(3) and (g)(3) and the Open Letter under Strict Scrutiny Because the they

Substantially Restrict Second Amendment Rights Without Even Marginally Reducing Illegal Gun Violence. ............ 12

**D.** Alternatively, the Regulation Should Fail Even if Intermediate Scrutiny Applies Because the ATF Fails to Show How Precluding Registry Cardholders from Exercising their Second Amendment Rights could Tangibly Reduce Illegal Gun Violence. ............................ 14

**III.** The Open Letter and §§ 922(D)(3)and (G)(3) Impermissibly Curtail Plaintiff's First Amendment Rights Because they Prevent Plaintiff from Simultaneously Exercising Both her First and Second Amendment Rights. ........................................................ 15

**A.** The O'Brien Test Does Not Apply and the Court Should Strike Down §§ 922(d)(3) and (g)(3) and the Open Letter as Applied to Plaintiff Because the Government Fails to Allege A Proper Interest Unrelated to Their Desire to Deny Plaintiff's First Amendment Rights Simply Because She Holds A Registry Card.................................................. 17

**B.** The Court Should Apply Strict Scrutiny Here Because §§ 922 (d)(3) & (g)(3), And The Open Letter Deny Plaintiff's First Amendment Rights Solely Because She Uses A Registry Card To Express Her Political Viewpoint Pertaining To Laws Pertaining To Marijuana Use And Possession. ........................................................................ 18

**C.** The Court Should Strike Down §§ 922(d)(3) and (g)(3) and the Open Letter under Strict Scrutiny Because they do Not Serve a Compelling Interest, are Not Narrowly Tailored, and are Not the Least Restrictive Means Available. ........................................................................... 22

    **1.** The Open Letter Exceeds the ATF's Constitutional Power. ...................................................................... 23

    **2.** The Open Letter does Not Further an Important or Substantial Governmental Interest Because Registry Card Holders Do Not Affect Gun Violence. ................................................................... 23

    **3.** The Open Letter is Not Unrelated to the Suppression of Free Expression. .............................. 25

    **4.** The Open Letter is a Greater Restriction on First Amendment Rights than is Essential to the Furtherance of any Governmental Interest Because Categorically Disarming Registry Card Holders Does Not Meaningfully Impact Illegal Gun Violence. ................................................................... 26

**D.** Plaintiff's Fifth Amendment Claims are Meritorious......... 27

**CONCLUSION**....................................................................................28

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

Central Hudson Gas v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557 (1980)………15

Clark v. Community for Creative Non-Violence, 468 U.S. 288 (1984)…………..24

Cons. Edison Co. v. Public Service Comm'n of N.Y., 447 U.S. 530 (1980)……..15

District of Columbia v. Heller, 554 U.S. 570 (2008)…………………………....4,9

Griswold v. Connecticut, 381 U.S. 485 (1965)…………………………………...13

Kramer v. Union Free School District, 395 U. S. 621 (1969)…………………….13

R.A.V. v. City of St Paul, Minnesota, 505 U.S. 377 (1992)……………………..19

Roe v. Wade, 410 U.S. 113 (1973) ………………………………………………13

Spence v. State of Wash., 418 U.S. 405 (1974) ………………………………16,17

Texas v. Johnson, 491 U.S. 397 (1989)………………………………… ….16,17

Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503 (1969)…… 16, 19, 21

United States v. O'Brien, 391 U.S. 367 (1968) ……………………………..*passim*

United States v. Robel, 389 U.S. 258 (1967) ……………………………...19,22,23

**United States Court of Appeals Cases**

Association of Nat. Advertisers, Inc. v. Lungren, 44 F.3d 726 (9th Cir. 1994)…..15

Coral Const. Co. v. King County, 941 F.2d 910 (9th Cir. 1991)…………………15

Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011)…………………………. 10

Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002) ………………………………….9

U.S. v. Chester, 628 F.3d 673 (4th Cir. 2010)……………………………………….6

United States v. Chovan, 735 F.3d 1127 (9th Cir. 2013)………………..……*passim*

United States v. Dugan, 657 F.3d 998 (9th Cir. 2011) …………………….*passim*

United States v. Huitron-Guizar, 678 F.3d 1164 (10th Cir. 2012) ………………10

United States v. Carter, 750 F.3d 462 (4th Cir. 2014)……………………………15

**United States Statutes**

18 U.S.C. § 922 (g)(3) (2012) ………………………………………………*passim*

18 U.S.C. § 922 (d)(3) (2012) ………………………………………………*passim*

# INTRODUCTION

The overarching issue in this case is Appellees' failure to acknowledge that there is a fundamental difference between a person who is actually using marijuana and a person who merely possesses card verifying her right to use marijuana in accordance with state law. Appellees make the wholly unsubstantiated claim that mere possession of a Registry Card is conclusive proof of actual use of marijuana. The logic behind Appellees' argument is akin to saying that everyone who obtains a hunting license is currently engaged in hunting or that everyone who obtains a permit to carry a concealed handgun is always carrying that concealed handgun. Appellees' position that mere possession of a Registry Card means the possessor is an unlawful drug user is wholly insupportable and defies reality.

Additionally, the Answering brief is full of circular reasoning rather than rational arguments. For instance, Appellees assert that due process is not implicated here because Appellees have unilaterally determined that no due process is required. Likewise, Appellees also ignore arguments set forth in the Opening Brief and misrepresent Plaintiff's arguments in a failed attempt to bolster their case. Appellees have violated the APA by creating new legislation which deprives the Plaintiff and a huge section of the population of their Second Amendment Rights without due process of the law. The Open Letter and corresponding regulations likewise violate the Plaintiff's fundamental rights under the First and Fifth Amendments.

# LEGAL ARGUMENT

## I. The Open Letter Did Not Merely Interpret the Gun Control Act But Instead Created New Legislation in Violation of the APA.

In their Answering Brief, Appellees assert that the Open Letter merely interpreted the Gun Control Act Provision prohibiting sales where a dealer has "reasonable cause to believe" that an individual is using a controlled substance. Appellees go on to claim that the primary purpose of the Open Letter was to clarify that "any user of marijuana in the United States is an 'unlawful user' of a controlled substance. However, when the Open Letter is read in its entirety it is clear that the primary purpose of the Open Letter is actually to inform firearms dealers that they cannot sell firearms to any person they know or suspect to possess a validly issued Registry Card. Appellees then makes the absurd claim that the Open Letter "did not alter plaintiff's ability to possess a firearm" despite the fact that Plaintiff is not prohibited from possessing a firearm under any law or regulation other than the Open Letter. Appellees also contend for the first time in their Answering Brief that the Open Letter would not prevent Plaintiff from obtaining a firearm if Plaintiff "presented concrete evidence sufficient to convince the licensee that despite holding the card, she did so only for political or expressive reasons and did not use marijuana." Appellees' argument is in direct opposition to the clear and ambiguous language of the Open Letter, which expressly provides that no licensee can sell a firearm to a person he knows or suspects to possess a Registry Card.

Additionally, Appellees' assertion that Plaintiff must be using medical marijuana simply because she possesses a Registry Card is a huge jump in logic that defies both common sense and the realities of obtaining marijuana for medicinal use. Although Plaintiff currently possesses the right to use medical marijuana under state law, state law also severely restricts the means by which Plaintiff can obtain medical marijuana suitable for her use. Plaintiff cannot simply buy medical marijuana at her local pharmacy or from a drug dealer on the street as Appellees seem to believe. Nevada is just now beginning to create a system for Registry Cardholders to legally obtain medical marijuana. Simply put, even if the Plaintiff wished to exercise the right to use medicinal marijuana conferred on her by her Registry Card, it is extremely unlikely that she would actually be able to obtain the medical marijuana through the authorized legal channels. As a result, Plaintiff has not used, has not been able to use, and is not currently using medicinal marijuana

**II.    The ATF's Prohibition of Firearms Sales to Registry Cardholders Violates the Second Amendment Because Prohibiting Firearm Sales to Registry Cardholders Bears No Relation to Reducing Gun Violence.**

The Appellees have failed to demonstrate that prohibiting all Registry Cardholders from purchasing and possessing fire arms has any established connection to reducing gun crime. As set forth in more detail below, it is clear that a person who merely possesses a Registry Card cannot and should not be subjected to the same restrictions as a person who has actually been convicted of a criminal

offense. While Plaintiff asserts that a strict scrutiny analysis should apply here and Appellees argue for intermediate scrutiny, regardless of which level applies, the Open Letter and §§ 922(d)(3) and (g)(3) must fail.

### A. Because Registry Cardholders are Not Analogous to Convicted Drug Users or Violent Convicts, the Categorical Restriction on All Firearms Sales to Registry Cardholders, Promulgated through the Open Letter and §§ 922(d)(3) and (g)(3), Violates Plaintiff's Core Second Amendment Right to Bear Arms.

A government improperly infringes upon the Second Amendment's core right when it curtails a law-abiding and responsible citizen's right to bear arms for self-defense in the home.[1] "Law-abiding" and "responsible" citizens are mentally sound citizens who are not subject to criminal convictions nor otherwise engaged in illegal activity, such as unlawful drug use or violence.[2] Pursuant to *Chovan*, the government may never regulate a law-abiding and responsible citizen's right to purchase and possess firearms for self-defense in the home, unless the regulation survives heightened, or even strict scrutiny.[3] Moreover, even where the government seeks to regulate the Second Amendment rights of non-law-abiding citizens, such as convicted drug users, the standard of scrutiny must exceed rational basis.[4]

---

[1] *District of Columbia v. Heller*, 128 S. Ct. 2783, 2821 (2008).
[2] *See U.S. v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013).
[3] *See Id.* at 1137.
[4] *See generally Chovan*, 735 F.3d. 1127 (*Heller* did not determine the appropriate level of scrutiny for Second Amendment cases and stated only that a complete restriction for a lawful and responsible citizen to bear arms in the hearth and home could not survive any level scrutiny. Thus, the Supreme Court has NOT yet determined the exact level of scrutiny, leaving open the possibility that strict scrutiny may, indeed, be the appropriate standard in ALL cases; however, the Ninth

Furthermore, a government may never categorically preclude the right to bear arms from an entire class of persons, without a proper showing that the class is non-law-abiding or irresponsible.[5] This Court places a burden upon the government to establish a reasonable link between a non law-abiding and/or irresponsible class and some government interest, such as reducing illegal gun violence, in order for a categorical restriction on the right to bear arms to stand.[6] For instance, in *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011), this Court found that a convicted individual, drug-user, drug-dealer, and weapons trafficker lacked sufficient self-control to properly bear arms, and held that, pursuant to 18 U.S.C. § 922(g)(3), the government could properly deny such individuals their Second Amendment rights. Respondent improperly attempts to expand the holding of *Dugan* to prop up §§922(d)(3) and (g)(3), all corresponding regulations, and all corresponding administrative actions as inviolably Constitutional in all conceivable circumstances and settings, while improperly ignoring the factual issue of whether or not a person constitutes a lawful-abiding, responsible citizen.

However, Respondent's attempt to expand *Dugan*'s holding is improper. *Dugan* was a four-paragraph decision that very narrowly addressed the

---

Circuit has indicated that intermediate scrutiny may apply for regulations targeting convicted criminals.)
[5] *See id.* at 1138.
[6] *Id.* at 1140.

constitutionality of § 922(d)(3) within the specific context of a regular and long-time drug dealer and user, who also participated in dangerous weapons trafficking.[7] Rather than address whether a government may restrict an entire class of persons' Second Amendment rights, *Dugan*'s holding remains limited to persons that have been convicted or are participating in highly dangerous and illegal activities.[8]

Under similar circumstances, this Court has held that the denial of Second Amendment rights to persons adjudicated as guilty of certain crimes, such as those convicted for domestic violence misdemeanors may be justified under an intermediate scrutiny analysis.[9] However, even in these cases, where the Court is addressing the possible deprivation of the Second Amendment rights of convicted, violent criminals, the Court has consistently held that the government must assert a significant, substantial, or important government interest, and must also prove a reasonable fit between the regulation and the asserted objective.[10]

In the present case, the Open Letter and its expansion of §§ 922(d)(3) and (g)(3) violate the Plaintiff's core Second Amendment right by completely precluding Plaintiff from possessing a handgun solely based upon her status as a Registry

---

[7] *See Dugan*, 657 F.3d at 999.

[8] *See Id.*

[9] *See Chovan*, 735 F.3d at 1131-32; 1137 (holding that the government could restrict Second Amendment rights from those persons previously convicted of violent misdemeanors under intermediate scrutiny); *See also U.S. v. Chester*, 628 F.3d 673, 677 (4th Cir. 2010) (holding that the government could restrict Second Amendment rights of those persons convicted for domestic violence misdemeanors under intermediate scrutiny).

[10] *Chovan*, 735 F.3d at 1139.

Cardholder, without making any remote determination as to whether she is a non-law-abiding or irresponsible citizen. Contrary to ATF's assertion that the Open Letter merely defines circumstances that contribute to proving "unlawful drug use," the letter actually states "you may not transfer firearms or ammunition to the [Registry Cardholder]." Thus, the Open Letter conclusively determines that any person in possession of a Registry Card is automatically and categorically adjudicated as an "unlawful user" under §922(g)(3) and therefore barred from purchasing or possessing any firearm.[11] This is a drastic departure from the previously cited cases, where this Court found that the government could lawfully restrict convicted criminals' access to firearms.[12] Indeed, this Court has NEVER held it to be Constitutional for the government to unilaterally categorize citizens as criminals and pre-emptively deprive them of their Constitutional rights without any hearing, notice or even the remotest semblance of due process. Make no mistake, the holding that the Appellees seek from this Court, if granted, would have far-reaching implications that threaten our most fundamental conceptions of liberty and justice.

---

[11] The Open Letter reads "If you are aware that a potential transferee is in possession of a card authorizing the use and possession of marijuana under State law, then you have the "reasonable cause to believe" that the person is an unlawful user of a controlled substance. As such, you may not transfer firearms or ammunition to that person."

[12] *See Chovan*, 735 F.3d at 1131-32; 1137 (holding that the government could restrict Second Amendment rights from those persons previously convicted of violent misdemeanors under intermediate scrutiny); *See also Dugan*, 657 F.3d at 999 (holding that the government could lawfully restrict Second Amendment rights from convicted drug users, sellers, and weapon's traffickers).

The Appellees err when claiming that *Dugan* forecloses Plaintiff's challenge, improperly equating Plaintiff's conduct (following state procedures to obtain a Registry Card) with a criminal conviction for illegal drug use and trafficking. This Court can distinguish Plaintiff's conduct from the holding in *Dugan* because Plaintiff is a law-abiding and responsible citizen, rather than a convicted and habitual drug user and trafficker. None of *Dugan's* concerns about reducing violence or weapons trafficking apply here, and Appellees fail to establish that Registry Cardholders pose the same types of societal dangers that convicted drug users and weapons traffickers pose. In fact, Plaintiff's conduct here, in following Nevada's procedures and her doctor's suggestion to acquire a Registry Card, bears absolutely no relation to a convicted person's demonstrated potential for recidivist violent activities. Appellees make an unwarranted leap in logic when they equate Registry Cardholders to convicted drug users, absent any evidence whatsoever that tends to show actual drug use by the Registry Cardholder.

Furthermore, the Open Letter's preclusion of Registry Cardholders' exercise of their Second Amendment rights improperly equates political expression with convictions for unlawful drug use. Here, Plaintiff properly followed Nevada's procedures to obtain a Registry Card, with the intention to use it as a symbol of her political support to reform federal and state laws pertaining to marijuana use. In their Brief, Appellees assert that marijuana remains illegal under federal law. However,

this tends to show that Plaintiff's only reasonable purpose in obtaining the Registry Card is to symbolically express her political viewpoint supporting reform in marijuana law, rather than to actually acquire and use marijuana. The criminalization of marijuana use under federal law does not automatically entitle the government to penalize persons who lawfully obtain a Registry Card.

Furthermore, the Open Letter forbids gun merchants from selling arms to those persons merely possessing a Registry Card, which exceeds the directives of §§ 922 (d)(3) and (g)(3) that forbid gun sales to unlawful drug users. Plaintiff cannot be deemed an "unlawful drug user" under any reading of any federal statute, regulation, or case law; this fact supports Plaintiff's position that the Open Letter merely concludes without justification that Plaintiff is an "unlawful drug user" to improperly attempt to suppress political expression by Plaintiff and other Registry Cardholders. Although Appellees may interpret and enforce the laws of the United States, the Open Letter goes too far because it is purposefully suppresses Plaintiff's political expression, rather than combatting a legitimate societal danger.

**B. The Court Should Apply Strict Scrutiny here Because the Open Letter and §§ 922(d)(3) and (g)(3) Preclude Law-Abiding and Responsible Citizens from Possessing or Purchasing Firearms, Solely Due to their Symbolical Choice to Obtain a Registry Card.**

Under *Heller*, whether strict scrutiny should apply depends firstly on how closely the government infringes on the "core right" to bear arms, and secondly on

how severely the law burdens the right.[13] All regulations that categorically preclude the right to bear arms from law-abiding and responsible citizens violate the core right and should receive strict scrutiny.[14] Furthermore, *Chovan* suggests that Courts could properly draw comparisons between First and Second Amendment precedent related to the appropriate scrutiny level.[15] Thus, Second Amendment scrutiny should arguably vary based on "the nature of the conduct being regulated."[16]

The Circuit Courts have used First Amendment jurisprudence analogues to determine the appropriate scrutiny level concerning Second Amendment Constitutional violations.[17] Based upon First Amendment jurisprudents, regulations that limit the "core" Second Amendment right to bear arms should receive strict scrutiny because categorical restrictions upon law-abiding and responsible citizens closely relate to restrictions on viewpoint or subject matter, which presumptively require strict scrutiny.[18] Only tangential restrictions, such as those upon time, place, and manner, require intermediate scrutiny and less governmental justification. As a result, a government's categorical restriction on a law-abiding and responsible citizen's Second Amendment rights should receive strict scrutiny.

---

[13] *Chovan*, 735 F.3d at 1138.
[14] *See Id.*
[15] *Id.* at 1145.
[16] See *Chovan*, 735 F.3d at 1138.
[17] *Id.*; *See also Ezell v. City of Chicago*, 651 F.3d 684, 706 (7th Cir. 2011).
[18] <u>*Chovan*</u>, 735 F.3d 1127, 1145-46 (9th Cir. 2013); *U.S. v. Huitron-Guizar*, 678 F.3d 1164, 1166 (10th Cir. 2012) <u>cert. denied,</u> 133 S. Ct. 289 (U.S. 2012).

Moreover, a government may not categorically regulate non law-abiding or irresponsible citizens' gun rights without implicating the Second Amendment right.[19] For example, in *Chovan*, domestic violent misdemeanants failed to constitute law-abiding and responsible citizens because they had received criminal convictions, and thus the government could curtail their rights to bear arms only after meeting intermediate scrutiny.[20] *Chovan* thus required the government to present a "substantial showing" that a link existed between convicted violent misdemeanants and illegal gun violence.[21]

In the present case, the Open Letter implicates the core Second Amendment right and justifies strict scrutiny because it categorically precludes Plaintiff, and all Registry Cardholders, from purchasing a handgun for self-defense, despite the fact that Plaintiff is not actually using marijuana. Plaintiff retains a presumption that she is a law-abiding and responsible citizen, absent a conviction to the contrary, and this means the Open Letter implicates the core Second Amendment right. It would be practically impossible for this Court to require all individuals to prove themselves to be law-abiding and responsible; the more appropriate standard presumes citizens to be lawful and responsible until the government has proven otherwise. No evidence

---

[19] *Chovan*, 735 F.3d at 1137.
[20] *Id.*
[21] *Id.* (*Chovan* specifically noted the strong and independent correlation between increased homicide risks and the presence of guns in homes of domestic violence misdemeanants, thereby justifying the "substantial showing" the Court required).

in the record even purportedly shows that Plaintiff is an unlawful drug user.[22]  Thus, Plaintiff retains the core Second Amendment right, and the government may not deprive her of this right without first satisfying strict scrutiny.

Furthermore, the Appellees improperly lump law-abiding and responsible Registry Cardholders together with non-law abiding and irresponsible violent misdemeanants and convicted drug users. Registry Cardholders constitute law-abiding and responsible citizens because the government cannot simply claim they are drug users solely because they obtained a Registry Card. It is improper for the Appellees to brush off this meaningful and complex political movement, and to choose instead to mercilessly stereotype Plaintiff as an unlawful drug user without any evidence or due process. As will be more thoroughly discussed below, Plaintiff obtained her Registry Card to symbolically express her political opinion and Plaintiff has no criminal record. Therefore, Plaintiff cannot be placed on par with violent convicts when considering restrictions to her Second Amendment rights. Thus, the Court must apply strict scrutiny here.

**C. The Court Should Strike Down §§ 922(d)(3) and (g)(3) and the Open Letter under Strict Scrutiny Because they do Not Serve a Compelling Interest, are Not Narrowly Tailored, and are Not the Least Restrictive Means Available.**

---

[22] Appellees contend that the Plaintiff's mere possession of a Registry Card allows them to determine that she is an unlawful user of a controlled substance, without any further information. Notably, however, the possession of a Registry Card is not a criminal offense under any federal law or regulation.

As discussed above, whenever a regulation categorically precludes law-abiding and responsible citizens from bearing arms, the Court will utilize strict scrutiny. Strict scrutiny requires that the regulation (1) further a compelling government interest; (2) be narrowly tailored to achieve that compelling interest; and (3) be the least restrictive means of achieving that interest.[23]

Here, the ATF's Open Letter and §§ 922(d)(3) and (g)(3) include millions of persons who are unrelated to the risk of illegal gun violence, meaning the regulation remains fatally over-inclusive. Plaintiff contends that the ATF's regulation improperly and illegally restricts her Constitutional right to keep and bear arms but she does not dispute that the government holds a compelling interest to reduce illegal gun violence. In their Brief, the Appellees fail to respond to statements made in the Opening Brief that show the Open Letter would deprive between 37 million people and upwards of 100 million people of their Second Amendment right without any actual evidence of illegal drug use. This shows that the regulations are grossly over inclusive because the Appellees fail to demonstrate how disarming these persons (most of whom are likely law-abiding and responsible) can be linked to even a marginal reduction in illegal gun violence. Therefore, the Court should strike down the Open Letter and §§ 922(d)(3) and (g)(3) as unconstitutional.

---

[23] *See e.g. Roe v. Wade*, 410 U.S. 113 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 395 U. S. 627 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 485 (1965).

Moreover, the regulations fail to be narrowly tailored because they deprive all Registry Cardholders of their Second Amendment rights solely based on the Appellees' flawed and unsubstantiated claim of a link between Registry Cardholders possessing weapons and increased illegal gun violence. For example, these regulations may categorically restrict Second Amendment rights to millions of persons, despite the fact that ATF can reduce gun violence in less burdensome and more effective ways. For example, the ATF can easily promulgate proper enforcement of § 922(d)(3) and (g)(3) if they require potential customers to disclose whether they have actually used or been convicted of using any illegal drugs. Further, the ATF may even help gun merchants identify signs and circumstances that tend to show potential customers' unlawful drug use. Both these aforementioned methods constitute significantly more effective and less restrictive means that show the Open Letter and §§922(d)(3) and (g)(3) fail strict scrutiny.

> **D. Alternatively, if Intermediate Scrutiny Applies, the Regulations Still Fail Because Appellee's have Failed to Show a Direct, Substantial Relationship Between §§ 922(d)(3) and (g)(3) and the Open Letter and Decreasing Gun Violence.**

Assuming *arguendo* that intermediate scrutiny applies, the government's asserted interest must be "substantial" and the regulation adopted must have "a direct, substantial relationship between the objective and the means chosen to

accomplish the objective."[24] To determine whether the government's means achieves a direct and substantial relationship with the proposed end, the government can rely upon statistics, research studies or data, and correlational evidence to make its case.[25] It is uncontested that the ATF holds a substantial interest in reducing gun violence. However, Appellees have failed to meet their burden of showing that prohibiting all persons who possess a Registry Card bears a direct and substantial relationship to reducing gun violence.

Here, the Appellees failed to provide any data to demonstrate that Registry Cardholders pose some threat to society if they exercise their Second Amendment rights. Rather, the ATF repeats over and over again that marijuana use is illegal. While the ATF is correct that marijuana use is illegal under federal law, this fact does not tend to make a Registry Cardholder more likely to engage in violent crime than any other people. Thus, the ATF's categorical restriction upon Plaintiff's rights are not sufficiently directly and substantially related to the objective of reducing gun violence to meet even intermediate scrutiny.

III. **The Open Letter and §§ 922(D)(3) and (G)(3) Impermissibly Curtail Plaintiff's First Amendment Rights Because they Prevent Plaintiff from Simultaneously Exercising Both her First and Second Amendment Rights.**

---

[24] *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991); *see also Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, (1980)); *Consolidated Edison Co. v. Public Service Comm'n of N.Y.*, 447 U.S. 530, 540 (1980).
[25] *See United States v. Carter*, 750 F.3d 462, 465 (4th Cir. 2014).

This First Amendment protects expressive, symbolic conduct.[26] For expressive, symbolic conduct to be protected under the First Amendment there need only be an intent to convey a particularized message and a likelihood that under the surrounding circumstances the message would be understood by those who viewed it.[27] A government may never restrict symbolic conduct where that conduct merely expresses an unpopular idea.[28]

In the present case, the Appellees argue that Plaintiff can either exercise her First Amendment right to engage in expressive conduct or she can exercise her Second Amendment right to bear arms but not both. Both Plaintiff and Appellees concede that obtaining a Registry Card constitutes an onerous process and that subsequently obtaining marijuana is illegal under federal law. The Appellees fail, however, to recognize how difficult it is for Registry Cardholders to obtain marijuana legally under State law, even after they have been granted a Registry Card. Plaintiff was well aware of these issues at the time she obtained her Registry card and obtained her Registry Card despite such issues in order to express her political support to reform state and federal marijuana law. Plaintiff's actions would have been well understood by Nevadans, and especially by those involved with the

---

[26] *Texas v. Johnson*, 491 U.S. 397, 406 (1989).
[27] *Spence v. State of Wash.*, 418 U.S. 405, 410-11 (1974).
[28] *Texas v. Johnson*, 491 U.S. at 414; *see, e.g.*, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509-10, 514 (1969) (holding that the state could not prohibit wearing black armbands in school despite the fact that the armbands symbolized opposition to America's foreign policy).

legalization of medical marijuana. At the time Plaintiff obtained her Registry Card, and since that time, it has been well known by Nevadans that the State's Constitutionally protected right to use medical marijuana was seriously flawed in that it provided no legal mechanism for Registry Cardholders to actually obtain marijuana. As such, Plaintiff's conduct in obtaining and continuing to possess a Registry Card is expressive conduct protected by the First Amendment.

### A. The O'Brien Test Does Not Apply and the Court Should Strike Down §§ 922(d)(3) and (g)(3) and the Open Letter as Applied to Plaintiff Because the Government Fails to Allege A Proper Interest Unrelated to Their Desire to Deny Plaintiff's First Amendment Rights Simply Because She Holds A Registry Card.

To decide whether the *O'Brien* test applies, a court must first decide whether the government has asserted an interest that is unrelated to the suppression of expression.[29] If the interest asserted by the government is not implicated on the facts before the court, then the court need not apply the *O'Brien* test.[30] The *O'Brien* test is inapplicable when the asserted government interest is "directly related to expression in the context of activity." Thus, strict scrutiny always applies to regulations that relate to the suppression of free expression.[31] When applied to symbolic conduct, governments may never proscribe such conduct because it has expressive elements, and any government action directed at that conduct's

---

[29] *Texas v. Johnson* 491 U.S. 397, 407 (1989).
[30] *Id., and see Spence v. Washington*, at 414, n. 8, 94 S.Ct., at 2732, n. 8.
[31] *Texas v. Johnson*, 491 U.S. 397, 406 (1989).

communicative nature must receive strict scrutiny review.[32] Furthermore, whether the government has a legitimate interest turns on whether a substantial showing that law or regulations combats a legitimate harm, unrelated to, and independent from, expressive conduct.[33]

Here, §§ 922 (d)(3) and (g)(3), as applied to Plaintiff, relate to the suppression of expression because they exclusively target her political opinions, expressed with her Registry Card, while failing to substantiate the purported link between illegal gun violence and Registry Cardholders. Appellees have not made any logical or substantiated allegations to link Registry Cardholders with increased illegal gun violence. In addition, the ATF engaged in a massive crackdown against medical marijuana growers and dispensaries around the time it issued the Open Letter. Together, these two facts show the ATF intended to target expressive conduct when they issued the Open Letter. In the present case, not a single iota of evidence indicates that the Plaintiff ever used any illegal drugs or ever constituted a danger to any person in her community. The facts simply do not support the conclusion that possession of a Registry Card causes or proliferates illegal gun crimes in any way.

### B. The Court Should Apply Strict Scrutiny Here Because §§ 922 (d)(3) & (g)(3), And The Open Letter Deny Plaintiff's First Amendment

---

[32] *Id.*
[33] *Id.* at 407.

**Rights Solely Because She Uses A Registry Card To Express Her Political Viewpoint Pertaining To Laws Pertaining To Marijuana Use And Possession.**

For a law to survive judicial review under strict scrutiny, the law must be (1) justified by a compelling governmental interest; (2) narrowly tailored to achieve that goal or interest; and (3) the least restrictive means of achieving that interest.[34] Additionally, statutes that establish guilt merely by association are presumptively invalid.[35] For example, in *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 508 (1969), the Court subjected a school to strict scrutiny because they "banned and sought to punish petitioners for a silent, passive expression …unaccompanied by any disorder," where the students wore black armbands to protest the Vietnam War. The Court noted that the government could never justify prohibiting expression of a political opinion merely because they find the opinion undesirable or uncomfortable.[36]

Here, the Open Letter fails to justify a compelling state interest and is not narrowly tailored because there no link exists between Registry Cardholders and illegal gun violence. Appellees fail to mention any plausible evidence indicating that Registry Cardholders might even marginally contribute to violent gun crime. Although reducing gun violence is a compelling interest, §§ 922 (g)(3) and (d)(3),

---

[34] *R.A.V. v. City of St Paul, Minnesota*, 505 U.S. 377 (1992).
[35] *See United States v. Robel*, 389 U.S. 258, 265-66 (1967).
[36] *Tinker*, 393 U.S. at 509.

as applied to the Plaintiff, cannot justify disarming a Registry Cardholder who has not demonstrated any conceivable potential for violence or crime. The Open Letter is merely a thinly-veiled attempt to suppress persons with viewpoints contrary to those of the federal government. Thus, the Open Letter violates Plaintiff's First Amendment rights.

Furthermore, accepting arguendo that the Open Letter merely interprets §§ 922(g)(3) and (d)(3), then those sections are not narrowly tailored because they severely burden Registry Cardholders' constitutional rights, while unreasonably and ineffectively combatting illegal gun violence. Generally, The Open Letter places an onerous burden upon Registry Cardholders, forcing them to choose between exercising their First or Second Amendment rights.[37] A government should never burden its citizens with this impermissible choice, and it would be absurd to think the Framers envisioned a government using one Constitutional protection to deprive its citizens of another. Additionally, the Open Letter improperly analogizes violent criminals and convicted habitual drug users to Registry Cardholders, who are law-abiding and responsible citizens. Although courts sympathize to dangers that

---

[37] Appellees has asserted that citizens can either exercise their right to free expression under the First Amendment by obtaining a Registry Card or citizens can exercise their Second Amendment right to bear arms by forego obtaining a Registry Card (even if state law permits them to obtain a Registry Card and federal law does not prohibit obtaining a Registry Card.) The Appellees have made a catch-22 situation for people who both want to exercise their Second Amendment rights and engage in expressive, political conduct protected under the First Amendment by obtaining a Registry Card.

convicted and violent misdemeanants pose to their communities, the ATF improperly places Registry Cardholders in the same class as such criminals, despite a lack of evidence showing that a Registry Cardholder has ever committed a crime, or is any more likely to commit a crime than any other person. Thus, no demonstrable link exists to show that completely restricting all gun rights from Registry Cardholders could conceivably impact illegal gun violence.

Moreover, myriad other proper alternatives exist which would allow the Appellees to achieve their interest through less restrictive means. For example, the ATF could require a person to disclose whether they are currently using drugs before they can purchase a gun, or the ATF could issue a letter that helps gun-store owners identify signs of recent drug use. These two methods, along with criminal history checks, can help keep guns away from "unlawful drug users" without categorically precluding Constitutional rights from entire classes of persons. Because there are several less restrictive and more efficient ways the ATF can enforce a restriction on firearms sales to unlawful drug users, this Court should strike the Open Letter, §922 (d)(3) and (g)(3).

Alternatively, the ATF's classification and persecution against Registry Cardholders is presumptively invalid because it establishes guilt by association. Like *Tinker*, where the Court struck down a prohibition on black armbands because the school could not demonstrate a link between the armbands and any potential harm,

this Court should strike down the Open Letter and §922 (d)(3) and (g)(3). Here, the ATF fails to demonstrate any reason to believe that Registry Cardholders are more dangerous than any other person in the community, or that they pose any danger at all. Furthermore, the Open Letter makes a Registry Cardholder automatically subject to a felony conviction for no other reason than association with this particular unpopular and controversial group. Like the Court held in *Robel* concerning persons joining communist groups, the government may not deem every person who joins a particular group, such as Registry Cardholders, as a criminal, especially without any hearing or due process.

### C. Even Examined Under the *O'Brien* Test, §§ 922 (d)(3) & (g)(3) Amount to Unconstitutional Restrictions on Free Speech Because They Substantially Restrict First Amendment Rights, While Only Marginally Implicating A Proper Government Interest To Reduce Illegal Gun Violence.

Alternatively, if the Court holds *O'Brien* applies, the ATF's Open Letter and §§ 922 (d)(3) & (g)(3) improperly burden Plaintiff's because they substantially limit her First Amendment right to free speech, without establishing a cogent connection between increased gun violence and Registry Cardholders. To balance both government and free speech interests, *O'Brien* weighs the following four factors; (1) whether the regulation is within the constitutional power of the government; (2) whether it furthers an important or substantial governmental interest; (3) whether the governmental interest is unrelated to the suppression of free expression; and (4)

whether the incidental restriction on alleged First Amendment Freedoms is no greater than is essential to the furtherance of that interest.

### 1. The Open Letter Exceeds the ATF's Constitutional Power.

A government may never automatically categorize a person as a criminal, merely because that person chooses to express support for their political views.[38] In *Robel*, the Court held the First Amendment protected a person's right to remain free from guilt by association, created merely due to group membership.[39] In fact, the statute was presumptively invalid, despite that the group concerned the much maligned and feared communist party.[40]

Here, the ATF improperly concludes that Plaintiff is guilty by association solely because she, like many other persons, possesses a Registry Card to symbolize political support for marijuana law reform. Similarly to how the government may never punish an individual merely for being a member of the communist party, a state may never punish an individual merely for being a member of a political movement that advocates legalization of marijuana under federal and state law.

### 2. The Open Letter does Not Further an Important or Substantial Governmental Interest Because Registry Card Holders Do Not Affect Gun Violence.

---

[38] *Robel*, 389 U.S. at 265-66.
[39] *Id.* at 263.
[40] *See Id.* at 265-66.

To further an important or substantial government interest, the government must connect the harm it seeks to prevent, and the means used to prevent it.[41] To assert this interest, a state may use any empirical evidence, studies, correlational evidence, or common sense to indicate a substantial link between the means used and the ends sought.[42]

Here, although the government holds an interest to reduce illegal gun violence, §§ 922 (d)(3) and (g)(3) deny Plaintiff her constitutional rights, while failing to reduce gun violence in any meaningful way. Overall, the ATF's reasoning fails because it automatically equates an individual holding a Registry Card with current and active unlawful drug use, subject to a felony conviction.[43] This flies in the face of traditional ideas of affording every person proper notice, hearing, and due process, before the government can adjudicate that person a criminal and substantially restrict their constitutionally guaranteed rights. Furthermore, the ATF's conclusion lacks support from any independent evidence to show that Plaintiff or other Registry Cardholders actually use or used drugs. This shows that the Court should not entertain the ATF's jumps in logic, solely because they attached their arguments to a valid, but entirely unrelated interest in reducing illegal gun violence.

---

[41] *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984).
[42] *See U.S. v. Carter*, 750 F.3d 462, 465 (4th Cir. 2014).
[43] *See* Open Letter and §§ 922(d) (3) & (g)(3).

Furthermore, ATF's unfittingly argues that drug users have less control or poorer judgment than other persons, because this mischaracterizes the present situation as a case about drug use, despite that no allegations or evidence of drug use exists on the record. This Court should not allow the ATF to use an individual's Registry Card as a proxy for unlawful drug use, absent any additional evidence. Finally, the State's reply brief fails to address statistics that show marijuana users only marginally contribute to illegal gun crimes, and this casts doubt on the State's purported motive for disarming Registry Cardholders.

### 3. The Open Letter is Not Unrelated to the Suppression of Free Expression.

Plaintiff has sufficiently pled that the Appellees issued the Open Letter to suppress free expression related to medical marijuana reform. The recent heated debate between state and federal governments concerning medical marijuana legalization tends to show the Open Letter's attack on Registry Cardholders relates to free expression because it targets and antagonizes those that promote marijuana legislation reform. Furthermore, the government must produce some data or allege some common sense to back its theory that a high correlation exists between gun violence and Registry Card Holders, to show the policy is unrelated to the suppression of expression. However, the ATF fails to do this. Rather, the ATF merely purports to protect against gun violence to veil a sustained and organized attack against the medical marijuana movement. Therefore, the government interest

is not clearly unrelated to the suppression of free expression and thus the Open Letter fails to meet the third *O'Brien* requirement.

**4. The Open Letter is a Greater Restriction on First Amendment Rights than is Essential to the Furtherance of any Governmental Interest Because Categorically Disarming Registry Card Holders Does Not Meaningfully Impact Illegal Gun Violence.**

Finally, the Open Letter fails to meet the fourth *O'Brien* requirement because the restriction on First Amendment (and Second Amendment) freedoms is onerous and greater than is essential to reducing illegal gun violence. Despite the State's assertion that the open letter and §§ 922(g)(3) and (d)(3) aim to reduce illegal gun violence, the ATF fails to provide any data that Registry Card holders will contribute to gun violence at all. This shows that the regulation, as interpreted by the Open Letter, more truly aims at suppressing Appellant's view, rather than at meaningfully reducing illegal gun violence.

Moreover, the restriction is overly burdensome because it completely precludes Appellants right to bear arms, despite that this restriction greatly outweighs the ATF's asserted public safety interests. This is important because the ATF forces a Registry Cardholder to choose which Constitutional right to forfeit, constituting an onerous burden upon each person, forcing them to decide whether they value their right to bear arms more than their right to advocate political change. As a result, the Court should hold that the government's restriction fails because it

does not substantiate a link between Registry Cardholders and illegal violence, despite that it substantially restricts fundamental constitutional rights. Accordingly, even under the *O'Brien* test, which is less stringent than the strict scrutiny analysis required in this case, the Defendants' universal ban on firearms sales to Registry Cardholders is unconstitutional.

### D. Plaintiff's Fifth Amendment Claims are Meritorious.

Plaintiff has asserted claims for violations of the Due Process Clause and the Equal Protection Clause of the Fifth Amendment. Appellees argue that Plaintiff's Fifth Amendment claims are without merit because Plaintiff is an unlawful drug user. Again, Appellee' argument assumes that Plaintiff must be using marijuana because she possesses a registry card. Appellees Answering Brief even admits that "a cardholder that uses marijuana does so in violation of federal law" but then glosses over the issue of whether Plaintiff actually has used marijuana. By the position set forth in their Brief, Appellees appear to be asserting that Plaintiff would not be an unlawful user of a controlled substance, despite her possession of a Registry Card, if she did not actually use marijuana. Appellees' statements directly contradict the clear and unambiguous language in the Open Letter that mere possession of a Registry Card causes a person to be categorized by the Appellees as an "unlawful user of a controlled substance." Again, Plaintiff has consistently alleged that she is not using marijuana, which Appellees ignore.

Appellees' arguments concerning Plaintiff's Equal Protection claim is likewise flawed. Appellees use their own unjustified conclusion that the Plaintiff's Second Amendment rights have not been violated to claim that they have not interfered with Plaintiff's fundamental rights and thus Equal Protection is not applicable here. Here, however, the Appellee's have clearly deprived Plaintiff of her fundamental Second Amendment rights through their issuance of the Open Letter and their enforcement of §§ 922(g)(3) and (d)(3). As such, Plaintiff has asserted an Equal Protection claim which must be considered under a strict scrutiny standard.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court REVERSE the lower Court's decision in this matter and REMAND for further trial-level proceedings.

DATED: October 29, 2014.　　　　Respectfully Submitted by:

/s/Charles C. Rainey_____
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
Attorneys for Plaintiff/Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

I, the undersigned, certify that this Brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Court Rule and is 6,732 words, 617 lines of text on 28 pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

DATED: October 29, 2014.            Respectfully Submitted by:

/s/Charles C. Rainey_____
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Chaz@raineylegal.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineylegal.com
9340 West Martin Avenue
Las Vegas, Nevada 89148
Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
Attorneys for Plaintiff/Appellant

## <u>CERTIFICATE OF SERVICES</u>

I, Jennifer J. Hurley, an employee of Rainey Legal Group PLLC, certify that the following individuals were served with the foregoing **REPLY BRIEF OF PLAINTIFF S. ROWAN WILSON**, on this date by the below identified method of service:

    Electronic Case Filing

    TONY WEST
    DANIEL G. BOGDEN
    SANDRA SCHRAIBMAN
    ALICIA N. ELLINGTON
    JOHN K. THEIS
    Trial Attorneys, Federal Programs Branch
    United States Department of Justice, Civil Division
    20 Massachusetts Ave, N.W. Rm 7226
    Washington, DC 20530

    Zachary Richter
    Trial Attorney, Constitutional Torts Staff
    United States Department of Justice, Civil Division
    P.O. Box 7146, Ben Franklin Station
    Washington, DC 20044

    DATED this 29th day of October 2014.

                    /s/Jennifer J. Hurley_____
                    An employee of Rainey Legal Group PLLC